UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
In re                                                        Chapter 11

      11 East 36th LLC,                              Case no.  13-11506

                Debtor.
-----------------------------------------------------------x
In re                                                        Chapter 11

      Morgan Lofts, LLC                              Case no.  13-11507

                Debtor.
-----------------------------------------------------------x
11 East 36 Note Buyer LLC and Griffon V LLC,

                Plaintiffs,

v.                                                           Adv. Proc. 13-01360-61

11 East 36th LLC and Morgan Lofts, LLC,

                Defendants.

-----------------------------------------------------------x


## REPLY TO OBJECTION TO MOTION TO CONTINUE MORTGAGEES IN POSSESSION AND FOR INJUNCTIVE RELIEF


      11 East 36 Note Buyer LLC ("Mortgagee") and Griffin V LLC ("Griffon,"

collectively with the Mortgagee, the "Mortgagees") by their attorneys, Backenroth Frankel &

Krinsky, LLP, as and for their Reply to the objection to the Mortgagee's application for (a) an

order excusing the Mortgagees from compliance with 11 U.S.C. § 543(a) and (b)(1) and (c), (b),

as mortgagees in possession of those certain residential condominium units known as units701,

801, 803, 804, 903, 904, 1003, 1004, 1103, 1104, 201, 202, 203, 204, 205, 206, 306, 406, 606,

1206, CSI-CS35  and the 2.8% interest in the commercial units 101 and 102 (the "Mortgagee

Units") and units 1001, 1006, 1101, 1203, 1204 (the "Griffon Units," collectively with the

Mortgagee Units, the "Units" or the "Property") at 11 East 36th Street, New York, New York and

granting preliminary relief enjoining the Debtor from collecting or disbursing rental proceeds in

connection therewith, respectfully represent as follows:

### THE MORTGAGEES SHOULD CONTINUE IN POSSESSION

1.      The Mortgagees have made no secret of the Debtors' finances.

2.      Annexed hereto as Exhibit A is a proposed budget for the Chapter 11

period.  The Mortgagees will collect rent and make disbursements for taxes insurance, common

charges and management fees.

3.      Annexed hereto as Exhibit B is a compilation of all of the income

collected and funds disbursed since the Mortgagees assumed control.  The expenses categories

are generally the same.

4.      As indicated, the Mortgagees used a large percentage of the cash flow for

legal expenses.  While the amounts are large relative to the rents collected, they are more than

reasonable relative to the necessary litigation, including two foreclosures, a suit on a guarantee,

an appeal, collection efforts, and the Bay Condos bankruptcy.  All of these proceedings were

vigorously contested every step of the way by the Debtors.

5.      The Mortgagees and Condominium Association are the only creditors in

this case and neither want the Debtors in control of the money.

2

6.      Under N.Y. Gen. Bus. Law § 352-l(3) and Real Prop. Law § 339-kk(c) a condominium association is entitled to collect rent from a sponsor's residential subtenants if the sponsor fails to pay common charges.  Upon information and belief, following the Debtors failure to pay common charges, the Condominium Association exercised such rights several years ago but the Debtors frustrated such collection from their subtenants.

7.      Subsequently the Mortgagees exercised their rights under their Mortgages and were able to collect rent from almost all subtenants.  Units 1206 and 606 are still paying rent to the Debtors.  Presumably, the Debtors' principals have continued the practice of pocketing subtenant rents since they have not been paying debt service, common charges or taxes.

8.      In their objection, the Debtors contend that the Mortgagees are subject to section 543 of the Code as custodians.  The Mortgagees concede the issue.  Section 543 applies. The Debtors' principals' pre-petition practice of pocketing subtenant rents is reason alone to grant relief under section 543(d) of the Code.  As will be shown below, the Debtors objections as to why the relief should not be granted under section 543(d) of the Code do not hold water.

## THE ATTORNEY GENERAL WILL NOT PERMIT
## THE DEBTORS TO SELL UNITS TO RETAIL BUYERS

9.      In their Application, the Mortgagees argued that the Debtors have no possible exit strategy because they refuse to allow a bulk sale of the Units.  The Debtors responded that they have every right to sell residential units to owner occupants to fund a plan. That is not true.  A Condominium plan amendment is necessary for such sales.  Annexed hereto as Exhibit C is a posting on the Attorney General's website indicating that no plan amendments

3

will be accepted.  The New York Attorney General has effectively barred the Debtors from selling units to owner-occupants.

10.    The Debtors nonetheless contend that they only have to make a routine plan update with the Attorney General to start selling.

11.    The Mortgagees called the Attorney General's office and asked why the web site says no plan amendments were being accepted.  This is the response from Jeffrey R. Rendin, Chief of Enforcement, Real Estate Finance Bureau, Office of the Attorney General of the State of New York, as set forth in the email annexed hereto as Exhibit D:

> We closed an investigation into the Morgan Lofts several years ago, as I explained to your paralegal.  If I recall, there was a problem with the plan sponsor failing to build some units, and further failing to pay common charges on those unbuilt, unsold units.  I direct you to Aaron Shmulewitz, counsel to the Board, for further background.
>
> If your client were to take title to the unsold units of the plan sponsor, and tender an amendment updating the plan in conformity with the Condominium Act, the GBL and our regulations, we would, after appropriate review, accept such an amendment.

12.    The Mortgagees also spoke to the Condominium board.  Based upon those conversations, the Mortgagees understand that the misconduct referred to by the Attorney General includes, but is not limited to, (a) failure to pay common charges on units the Debtors as sponsors are leasing to subtenants, (b) failure to pay common charges on un-built units that the Debtors as sponsors promised to build and thus included in the offering plan, and (c) use of the basement space as rent-free Bobker family offices, rather than an exercise area as promised in the Debtors' offering plan.

4

13.     That last item is not insignificant.  In the offering plan, the Debtors promised condominium buyers that the Debtors would build an exercise facility in the basement common area.  This was to be a valuable amenity.  Instead of building a gym, the Bobkers maintain offices in the space.  They occupy the space rent free and run any number of businesses from the location.  They pay no rent.  Simply put, the Debtors are squatting in the Condominium's basement.

14.     In all events, it appears that as a result of the Debtors' failure to comply with their offering plan, they cannot make new filings.  To the extent that Debtors refuse to accept the fact that their Property can, therefore, only be sold by way of a bulk sale, the Debtors' plan prospects are illusory.

15.     Since the Debtors' plan prospects are illusory, it would be an exercise in futility to turnover possession to the Debtors since it will only be a matter of time before possession must be turned back to the Mortgagee or new buyer in the inevitable bulk sale that the Debtors are committed to avoid.

## THE DEBTORS' CONVERSION OF RENTAL PROCEEDS IS UNDENIABLE

16.     The Debtors admit that in the Bay Condos case they improperly transferred estate funds into an illegal account.  They don't deny that the account was frozen by Supreme Court order as the repository of ill-gotten gains from any number of unrelated real estate schemes.

5

17.     The Debtors nonetheless argue first that it does not matter that Bay Condos' rental proceeds were diverted into an improper account because the Mortgagees ended up collecting the funds anyway.  It was no thanks to the Bobkers that Notebuyer recovered the funds.  There is a long line of creditors chasing the Bobkers.  Notebuyer just happened to win the race to the courthouse.  Indeed, the charging order was itself issued in a case brought by another creditor.  *See* Exhibit E.

18.     In the alternative, the Debtors argue second that the Court should overlook the Bay Condos diversion of funds because once they were caught, the Bobkers subsequently deposited all funds in the Bay Condos DIP account.

19.     The Mortgagees submit that obeying the law after being caught is not exactly evidence of integrity.  Indeed, as the Attorney General recalls, and as the Condominium Association confirmed, there is a very long history of defalcation in these cases pre-dating the Bay Condos case.

20.     Significantly, the Debtors have failed and refused to account for any of the pre-petition funds they collected.  Upon information and belief, almost none of it was paid to the Condominium for common charges.  To this day, the Bobkers continue to collect rent from units 1206 and 606 notwithstanding the Mortgagees possession and they appear to be pocketing all of it.

21.     It is impossible to know.  The Bobkers refuse to disclose anything.  To them, subpoenas are junk mail to be discarded in the nearest garbage can.  The Debtors, their principals and affiliates have not responded to discovery subpoenas in this case regarding this

6

motion, nor did they respond in the Bay Condos case to discovery subpoenas relating to the

many motions and objections they filed in those proceedings.

22.    In summary, the Debtors historic failure to pay common charges, the

actions of the New York State Supreme Court and the Attorney General of the State of New

York, together with the Debtors' failure to follow the rules of this Court regarding use of cash

collateral and responding to subpoenas all constitute cause to grant the Mortgagees' motion.

## **CONCLUSION**

WHEREFORE, the Mortgagees respectfully requests that the Court grant the

relief sought in the Application, and that the Court grant such other relief as may be just and

proper.

Dated:  New York, New York
         June 19, 2013

**BACKENROTH FRANKEL & KRINSKY, LLP**
Attorneys for the Mortgagees


By:    s/Mark A. Frankel
       489 Fifth Avenue
       New York, New York 10017
       (212) 593-1100

# Exhibit A

**11 EAST 36th MONTHLY BUDGET BY CREDITOR**

|  |  |  |  | Contract Rate | Pmt / Mo. |
|---|---|---|---|---|---|
| Total Common Charge Budge | | | $ 894,800 | | |
| Note Buyer Amount Outstanding | | | $ 13,971,400 | 6.375% | $ 74,223.06 |
| Griffon V Judgement | | | $ 3,241,560 | 9.000% | $ 24,311.70 |

| Unit | Block / Lot | Debtor | Creditor | Rent / Mo. | Common % | Common Charge | Vacancy Loss 4% | Credit Loss 2% | RE Taxes |
|---|---|---|---|---|---|---|---|---|---|
| 201-206 | , 1205, 1206, 1207, 111 | 11 East 36th, LLC | Note Buyer | $ 14,262 | 7.52% | $ 5,607 | $ 570 | $ 285 | $ 5,726 |
| 306 | 866 / 1215 | 11 36th, LLC | Note Buyer | $ 4,200 | 1.60% | $ 1,193 | $ 168 | $ 84 | $ 1,219 |
| 406 | 866 / 1220 | 11 East 36th, LLC | Note Buyer | $ 4,000 | 1.60% | $ 1,193 | $ 160 | $ 80 | $ 1,218 |
| 606 | 866 / 1232 | 11 East 36th, LLC | Note Buyer | $ 4,700 | 1.60% | $ 1,193 | $ 188 | $ 94 | $ 1,218 |
| 701 | 866 / 1233 | Morgan Lofts, LLC | Note Buyer | $ 4,300 | 1.43% | $ 1,066 | $ 172 | $ 86 | $ 1,089 |
| 801 | 866 / 1239 | Morgan Lofts, LLC | Note Buyer | $ 3,392 | 1.41% | $ 1,051 | $ 136 | $ 68 | $ 1,074 |
| 803 | 866 / 1241 | Morgan Lofts, LLC | Note Buyer | $ 2,400 | 0.73% | $ 544 | $ 96 | $ 48 | $ 556 |
| 804 | 866 / 1242 | Morgan Lofts, LLC | Note Buyer | $ 3,275 | 1.01% | $ 753 | $ 131 | $ 66 | $ 769 |
| 903 | 866 / 1247 | Morgan Lofts, LLC | Note Buyer | $ 2,450 | 0.77% | $ 574 | $ 98 | $ 49 | $ 586 |
| 904 | 866 / 1248 | Morgan Lofts, LLC | Note Buyer | $ 3,200 | 1.01% | $ 753 | $ 128 | $ 64 | $ 769 |
| 1003 | 866 / 1253 | Morgan Lofts, LLC | Note Buyer | $ 2,450 | 0.73% | $ 544 | $ 98 | $ 49 | $ 556 |
| 1004 | 866 / 1254 | Morgan Lofts, LLC | Note Buyer | $ 3,200 | 1.01% | $ 753 | $ 128 | $ 64 | $ 769 |
| 1103 | 866 / 1259 | Morgan Lofts, LLC | Note Buyer | $ 2,630 | 0.77% | $ 574 | $ 105 | $ 53 | $ 586 |
| 1104 | 866 / 1260 | Morgan Lofts, LLC | Note Buyer | $ 3,434 | 1.01% | $ 753 | $ 137 | $ 69 | $ 769 |
| 1206 | 866 / 1268 | 11 East 36th, LLC | Note Buyer | $ 3,800 | 1.60% | $ 1,193 | $ 152 | $ 76 | $ 1,218 |
| CS1 | | 11 East 36th, LLC | Note Buyer | $ - | 0.05% | $ 34 | $ - | $ - | |
| CS2 | | 11 East 36th, LLC | Note Buyer | $ - | 0.05% | $ 34 | $ - | $ - | |
| CS3 | | 11 East 36th, LLC | Note Buyer | $ - | 0.05% | $ 34 | $ - | $ - | |
| CS4 | | 11 East 36th, LLC | Note Buyer | $ - | 0.05% | $ 34 | $ - | $ - | |
| CS5 | | 11 East 36th, LLC | Note Buyer | $ - | 0.05% | $ 34 | $ - | $ - | |
| CS6 | | 11 East 36th, LLC | Note Buyer | $ - | 0.05% | $ 34 | $ - | $ - | |
| CS7 | | 11 East 36th, LLC | Note Buyer | $ - | 0.05% | $ 34 | $ - | $ - | |
| CS8 | | 11 East 36th, LLC | Note Buyer | $ - | 0.05% | $ 34 | $ - | $ - | |
| CS9 | | 11 East 36th, LLC | Note Buyer | $ - | 0.05% | $ 34 | $ - | $ - | |
| CS10 | | 11 East 36th, LLC | Note Buyer | $ - | 0.05% | $ 34 | $ - | $ - | |
| CS11 | | 11 East 36th, LLC | Note Buyer | $ - | 0.05% | $ 34 | $ - | $ - | |
| CS12 | | 11 East 36th, LLC | Note Buyer | $ - | 0.05% | $ 34 | $ - | $ - | |
| CS13 | | 11 East 36th, LLC | Note Buyer | $ - | 0.05% | $ 34 | $ - | $ - | |
| CS14 | | 11 East 36th, LLC | Note Buyer | $ - | 0.05% | $ 34 | $ - | $ - | |
| CS15 | | 11 East 36th, LLC | Note Buyer | $ - | 0.05% | $ 34 | $ - | $ - | |
| CS16 | | 11 East 36th, LLC | Note Buyer | $ - | 0.05% | $ 34 | $ - | $ - | |
| CS17 | | 11 East 36th, LLC | Note Buyer | $ - | 0.05% | $ 34 | $ - | $ - | |
| CS18 | | 11 East 36th, LLC | Note Buyer | $ - | 0.05% | $ 34 | $ - | $ - | |
| CS19 | | 11 East 36th, LLC | Note Buyer | $ - | 0.05% | $ 34 | $ - | $ - | |
| CS20 | | 11 East 36th, LLC | Note Buyer | $ - | 0.05% | $ 34 | $ - | $ - | |
| CS21 | | 11 East 36th, LLC | Note Buyer | $ - | 0.05% | $ 34 | $ - | $ - | |
| CS22 | | 11 East 36th, LLC | Note Buyer | $ - | 0.05% | $ 34 | $ - | $ - | |
| CS23 | | 11 East 36th, LLC | Note Buyer | $ - | 0.05% | $ 34 | $ - | $ - | |
| CS24 | | 11 East 36th, LLC | Note Buyer | $ - | 0.05% | $ 34 | $ - | $ - | |
| CS25 | | 11 East 36th, LLC | Note Buyer | $ - | 0.05% | $ 34 | $ - | $ - | |
| CS26 | | 11 East 36th, LLC | Note Buyer | $ - | 0.05% | $ 34 | $ - | $ - | |
| CS27 | | 11 East 36th, LLC | Note Buyer | $ - | 0.05% | $ 34 | $ - | $ - | |
| CS28 | | 11 East 36th, LLC | Note Buyer | $ - | 0.05% | $ 34 | $ - | $ - | |
| CS29 | | 11 East 36th, LLC | Note Buyer | $ - | 0.05% | $ 34 | $ - | $ - | |
| CS30 | | 11 East 36th, LLC | Note Buyer | $ - | 0.05% | $ 34 | $ - | $ - | |
| CS31 | | 11 East 36th, LLC | Note Buyer | $ - | 0.05% | $ 34 | $ - | $ - | |
| CS32 | | 11 East 36th, LLC | Note Buyer | $ - | 0.05% | $ 34 | $ - | $ - | |
| CS33 | | 11 East 36th, LLC | Note Buyer | $ - | 0.05% | $ 34 | $ - | $ - | |
| CS34 | | 11 East 36th, LLC | Note Buyer | $ - | 0.05% | $ 34 | $ - | $ - | |
| CS35 | | 11 East 36th, LLC | Note Buyer | $ - | 0.05% | $ 34 | $ - | $ - | |
| 1001 | 866 / 1251 | Morgan Lofts, LLC | Griffon V | $ 4,991 | 1.41% | $ 1,051 | $ 200 | $ 100 | $ 1,064 |
| 1006 | 866 / 1256 | 11 East 36th, LLC | Griffon V | $ 3,995 | 1.60% | $ 1,193 | $ 160 | $ 80 | $ 1,178 |
| 1101 | 866 / 1257 | 11 East 36th, LLC | Griffon V | $ 4,991 | 1.41% | $ 1,051 | $ 200 | $ 100 | $ 1,064 |
| 1203 | 866 / 1265 | Morgan Lofts, LLC | Griffon V | $ 2,708 | 0.73% | $ 544 | $ 108 | $ 54 | $ 551 |
| 1204 | 866 / 1266 | Morgan Lofts, LLC | Griffon V | $ 3,537 | 1.01% | $ 753 | $ 141 | $ 71 | $ 762 |
| **TOTAL** | | | | $ 81,915 | 31.54% | $ 23,518 | $ 3,277 | $ 1,638 | $ 22,741 |

**11 EAST 36th MONTHLY BUDGET BY CREDITOR**

| | | TOTAL | | NOTE BUYER | | GRIFFON V |
|---|---|---|---|---|---|---|
| **INCOME** | | | | | | |
| MONTHLY RENT | $ | 81,915 | $ | 61,693 | $ | 20,222 |
| Less: VACANCY ALLOWANCE | $ | 3,277 | $ | 2,468 | $ | 809 |
| Less: CREDIT LOSS ALLOWANCE | $ | 1,638 | $ | 1,234 | $ | 404 |
| **NET RENT** | $ | **77,000** | $ | **57,991** | $ | **19,009** |
| | | | | | | |
| **EXPENSES** | | | | | | |
| COMMON CHARGES | $ | 23,518 | $ | 18,925 | $ | 4,593 |
| RE TAXES | $ | 22,741 | $ | 18,122 | $ | 4,619 |
| MANAGEMENT FEE | $ | 4,096 | $ | 3,085 | $ | 1,011 |
| **TOTAL EXPENSES** | $ | **50,355** | $ | **40,132** | $ | **10,223** |
| | | | | | | |
| **NET OPERATING INCOME** | $ | **26,644** | $ | **17,859** | $ | **8,785** |
| | | | | | | |
| **MONTHLY DEBT SERVICE CONTRACT RATE** | | | | | | |
| Note Buyer | $ | 74,223 | $ | 74,223 | $ | - |
| Griffon V | $ | 24,312 | $ | - | $ | 24,312 |
| **TOTAL DEBT SERVICE** | $ | **98,535** | $ | **74,223** | $ | **24,312** |
| | | | | | | |
| **TOTAL CASH FLOW** | $ | **(71,890)** | $ | **(56,364)** | $ | **(15,526)** |

| 5% |
| --- |
| **Mgmt. Fee** |
| $ 713 |
| $ 210 |
| $ 200 |
| $ 235 |
| $ 215 |
| $ 170 |
| $ 120 |
| $ 164 |
| $ 123 |
| $ 160 |
| $ 123 |
| $ 160 |
| $ 132 |
| $ 172 |
| $ 190 |
| $ - |
| $ - |
| $ - |
| $ - |
| $ - |
| $ - |
| $ - |
| $ - |
| $ - |
| $ - |
| $ - |
| $ - |
| $ - |
| $ - |
| $ - |
| $ - |
| $ - |
| $ - |
| $ - |
| $ - |
| $ - |
| $ - |
| $ - |
| $ - |
| $ - |
| $ - |
| $ - |
| $ - |
| $ 250 |
| $ 200 |
| $ 250 |
| $ 135 |
| $ 177 |
| $ 4,096 |

Exhibit B

**Griffon V - RENTS & PROTECTIVE ADVANCES**

| | | |
|---|---|---|
| Through | 05/08/13 | |
| Interest Rate | 24.0% | |

**GRIFFON V**

| Advances | Date | Amount | | Interest | |
|---|---|---|---|---|---|
| Insurance | 01/09/12 | $ | 3,132.00 | $ | 1,012.68 |
| Condo Maintenance Fee | 01/11/12 | $ | 2,370.64 | $ | 763.35 |
| Condo Maintenance Fee | 02/01/12 | $ | 2,370.64 | $ | 730.16 |
| Legal Expense | 02/13/12 | $ | 2,265.00 | $ | 679.50 |
| Property Taxes | 02/24/12 | $ | 10,160.42 | $ | 2,973.62 |
| Condo Maintenance Fee | 03/01/12 | $ | 2,370.64 | $ | 684.32 |
| Legal Expense | 03/05/12 | $ | 9,920.00 | $ | 2,837.12 |
| Condo Maintenance Fee | 04/02/12 | $ | 2,370.64 | $ | 633.75 |
| Legal Expense | 04/30/12 | $ | 11,445.95 | $ | 2,846.23 |
| Condo Maintenance Fee | 05/02/12 | $ | 2,370.64 | $ | 586.34 |
| Condo Maintenance Fee | 06/02/12 | $ | 2,370.64 | $ | 537.35 |
| Property Taxes | 06/08/12 | $ | 10,791.53 | $ | 2,402.91 |
| Condo Maintenance Fee | 07/02/12 | $ | 2,370.64 | $ | 489.93 |
| Condo Maintenance Fee | 08/01/12 | $ | 2,370.64 | $ | 442.52 |
| Property Taxes | 08/17/12 | $ | 10,723.99 | $ | 1,887.42 |
| Property Taxes | 08/21/12 | $ | 11,394.49 | $ | 1,975.04 |
| Legal Expense | 08/28/12 | $ | 10,139.50 | $ | 1,710.20 |
| Property Taxes | 08/30/12 | $ | 3,848.97 | $ | 644.06 |
| Condo Maintenance Fee | 09/01/12 | $ | 2,370.64 | $ | 393.53 |
| Legal Expense | 09/04/12 | $ | 10,000.00 | $ | 1,640.00 |
| Legal Expense | 09/05/12 | $ | 20,000.00 | $ | 3,266.67 |
| Legal Expense | 10/01/12 | $ | 10,000.00 | $ | 1,460.00 |
| Condo Maintenance Fee | 10/01/12 | $ | 2,370.64 | $ | 346.11 |
| Consultants | 10/16/12 | $ | 350.00 | $ | 47.60 |
| Title Services | 10/16/12 | $ | 796.44 | $ | 108.32 |
| Condo Maintenance Fee | 11/01/12 | $ | 2,370.64 | $ | 297.12 |
| Legal Expense | 11/13/12 | $ | 10,000.00 | $ | 1,173.33 |
| Property Taxes | 11/30/12 | $ | 17,792.11 | $ | 1,885.96 |
| Legal Expense | 12/01/12 | $ | 10,000.00 | $ | 1,053.33 |
| Condo Maintenance Fee | 12/01/12 | $ | 2,370.64 | $ | 249.71 |
| | | | | | |
| Mgmt Fee - DelShah Mgmt. | 01/31/13 | $ | 1,008.85 | $ | 65.24 |
| Other Renting Expenses | 01/11/13 | $ | 3,751.39 | $ | 292.61 |
| Bank Service Fees | 01/04/13 | $ | 190.00 | $ | 15.71 |
| Bank Service Fees | 01/07/13 | $ | 26.76 | $ | 2.16 |

**GRIFFON V**

| Rents Collected | | |
|---|---|---|
| Jan '12 | $ | - |
| February '12 | $ | - |
| March '12 | $ | - |
| April '12 | $ | 5,385.00 |
| May '12 | $ | 3,950.00 |
| Jun '12 | $ | 40,444.00 |
| Jul '12 | $ | 16,227.00 |
| Aug '12 | $ | 20,222.00 |
| Sep '12 | $ | 19,777.00 |
| Oct '12 | $ | 18,889.00 |
| Nov '12 | $ | 20,052.00 |
| Dec '12 | $ | 12,475.61 |
| Jan '13 | $ | 20,177.00 |
| Feb '13 | $ | 20,217.00 |
| Mar '13 | $ | 24,217.00 |
| Apr '13 | $ | 20,222.00 |
| | | |
| **Total** | **$** | **242,254.61** |

| | | | | | |
|---|---|---|---|---|---|
| Legal Fees | 03/30/13 | $ | 4,370.49 | $ | 228.55 |
| Lorenzo Deluca Esq. | 01/01/13 | $ | 2,370.64 | | 200.71 |
| Mgmt Fee - DelShah Mgmt. | 02/28/13 | $ | 1,010.85 | $ | 46.50 |
| Bank Service Fees | 02/05/13 | $ | 95.00 | $ | 5.83 |
| Bank Service Fees | 02/06/13 | $ | 31.33 | $ | 1.90 |
| Lorenzo Deluca Esq. | 02/01/13 | $ | 10,000.00 | $ | 640.00 |
| Cordova & Schwartzmar | 02/06/13 | $ | 8,628.49 | $ | 523.46 |
| Condo Maintenance Fee | 02/01/13 | $ | 2,370.64 | $ | 151.72 |
| Real Estate Taxes - 1257 | 02/22/13 | $ | 3,215.47 | $ | 160.77 |
| Real Estate Taxes - 1251 | 02/22/13 | $ | 3,233.00 | $ | 161.65 |
| Real Estate Taxes - 1256 | 02/22/13 | $ | 3,621.48 | $ | 181.07 |
| Real Estate Taxes - 1265 | 02/22/13 | $ | 1,652.53 | $ | 82.63 |
| Real Estate Taxes - 1266 | 02/22/13 | $ | 2,286.27 | $ | 114.31 |
| Mgmt Fee - DelShah Mgmt. | 03/31/13 | $ | 1,210.85 | $ | 30.67 |
| Bank Service Fees | 03/05/13 | $ | 285.00 | $ | 12.16 |
| Bank Service Fees | 03/06/13 | $ | 2.70 | $ | 0.11 |
| Lorenzo Deluca Esq. | 03/01/13 | $ | 10,000.00 | $ | 453.33 |
| Condo Maintenance Fee | 03/01/13 | $ | 2,370.64 | $ | 107.47 |
| State & Other Tax | 03/01/13 | $ | 50.00 | $ | 2.27 |
| Mgmt Fee - DelShah Mgmt. | 04/30/13 | $ | 1,011.10 | $ | 5.39 |
| Retainer for Girffon V & Note Buyer - Wenig Saltie | 04/03/13 | $ | 1,500.00 | $ | 35.00 |
| Lorenzo Deluca Esq. | 04/01/13 | $ | 10,000.00 | $ | 246.67 |
| Condo Maintenance Fee | 04/01/13 | $ | 2,340.64 | $ | 57.74 |
| Cordova & Schwartzmar | 04/03/13 | $ | 2,021.00 | $ | 47.16 |
| **Total** | | $ | **310,470.72** | $ | **42,340.98** | $ | **226,966.25** |

# 11 EAST 36 NOTE BUYER - RENTS & PROTECTIVE ADVANCES

| | | | |
|---|---|---|---|
| Through | 05/08/13 | | |
| Interest Rate | 24.0% | | |

**11 East 36th Note Buyer**

| Protective Advances | Date | Amount | Interest | | Rents Collected | | |
|---|---|---|---|---|---|---|---|
| Real Estate Taxes (Paid at closing) | 04/27/12 | $ 178,008.38 | $ 44,620.77 | | May '12 | $ | 47,792.93 |
| Legal Expense L&T | 05/02/12 | $ 20,000.00 | $ 4,946.67 | | Jun '12 | $ | 56,445.05 |
| Inspection/Filing/Licensing | 05/17/12 | $ 3,125.00 | $ 741.67 | | Jul '12 | $ | 59,587.96 |
| Legal Expense-Other | 08/08/12 | $ 27,578.95 | $ 5,019.37 | | Aug '12 | $ | 57,892.13 |
| Control Agreement Fee | 08/14/12 | $ 1,000.00 | $ 178.00 | | Sep '12 | $ | 56,592.13 |
| Real Estate Taxes | 09/20/12 | $ 184,233.96 | $ 28,249.21 | | Oct '12 | $ | 54,458.50 |
| Real Estate Taxes | 09/24/12 | $ 18,058.39 | $ 2,720.80 | | Nov '12 | $ | 64,592.13 |
| Condo Maintenance Fee | 10/02/12 | $ 25,000.00 | $ 3,633.33 | | Dec '12 | $ | 50,766.85 |
| Supplies | 10/09/12 | $ 99.61 | $ 14.01 | | Jan '13 | $ | 49,192.93 |
| Renting Expense | 10/09/12 | $ 133.63 | $ 18.80 | | Feb '13 | $ | 57,392.93 |
| | | | | | Mar '13 | $ | 52,360.98 |
| Condo Maintenance Fee | 01/01/13 | $ 17,682.76 | $ 1,497.14 | | Apr '13 | $ | 49,192.93 |
| Travel | 01/07/13 | $ 29.00 | $ 2.34 | | **Total** | **$** | **656,267.45** |
| Real Estate Taxes - 1018 | 01/07/13 | $ 66,324.24 | $ 5,350.16 | | | | |
| Real Estate Taxes - 1019 | 01/07/13 | $ 17,450.13 | $ 1,407.64 | | | | |
| Real Estate Taxes - 1020 | 01/07/13 | $ 3,374.33 | $ 272.20 | | | | |
| Real Estate Taxes - 1021 | 01/07/13 | $ 2,718.03 | $ 219.25 | | | | |
| Real Estate Taxes - 1022 | 01/07/13 | $ 1,609.24 | $ 129.81 | | | | |
| Real Estate Taxes - 1023 | 01/07/13 | $ 2,288.27 | $ 184.59 | | | | |
| Real Estate Taxes - 1024 | 01/07/13 | $ 3,419.95 | $ 275.88 | | | | |
| Real Estate Taxes - 1025 | 01/07/13 | $ 3,623.48 | $ 292.29 | | | | |
| Real Estate Taxes - 1026 | 01/07/13 | $ 2,288.27 | $ 184.59 | | | | |
| Real Estate Taxes - 1027 | 01/07/13 | $ 2,288.27 | $ 184.59 | | | | |
| Real Estate Taxes - 1028 | 01/07/13 | $ 34,161.34 | $ 2,755.68 | | | | |
| Other Renting Expenses | 01/16/13 | $ 5,319.76 | $ 397.21 | | | | |
| Mgmt Fee - DelShah Mgmt | 01/31/13 | $ 2,459.65 | $ 159.06 | | | | |
| Condo Maintenance Fee | 02/01/13 | $ 17,682.76 | $ 1,131.70 | | | | |
| State & Other Tax | 02/18/13 | $ 50.00 | $ 2.63 | | | | |
| State & Other Tax | 02/19/13 | $ 50.00 | $ 2.60 | | | | |
| Mgmt Fee - DelShah Mgmt | 02/28/13 | $ 2,869.65 | $ 132.00 | | | | |
| Damon Morey | 02/28/13 | $ 7,500.00 | $ 345.00 | | | | |
| Condo Maintenance Fee | 03/01/13 | $ 17,682.76 | $ 801.62 | | | | |
| Other Renting Expenses | 03/05/13 | $ 931.95 | $ 39.76 | | | | |
| Legal Expense - L&T | 03/12/13 | $ 350.00 | $ 13.30 | | | | |
| Property & Liability Insurance | 03/13/13 | $ 680.55 | $ 25.41 | | | | |
| Software Expense | 03/20/13 | $ 373.66 | $ 12.21 | | | | |

| | | | | | |
|---|---|---|---|---|---|
| Mgmt Fee - DelShah Mgmt | 03/31/13 | $ | 2,401.85 | $ | 46.96 |
| Condo Maintenance Fee | 04/01/13 | $ | 9,062.26 | $ | 223.54 |
| Retainer for Griffon V & Note Buyer - Wenig Saltiel | 04/03/13 | $ | 1,500.00 | $ | 35.00 |
| Backenroth, Frankel, & Krinsky LLP | 04/11/13 | $ | 18,533.03 | $ | 333.59 |
| Software Expense | 04/24/13 | $ | 603.60 | $ | 5.63 |
| Mgmt Fee - DelShah Mgmt | 04/30/13 | $ | 2,459.65 | $ | 13.12 |
| Damon Morey - Invoice 6/1 - 7/31/12 | 04/30/13 | $ | 9,785.00 | $ | 52.19 |
| Damon Morey - Invoice 8/1 - 10/31/12 | 04/30/13 | $ | 5,794.16 | $ | 30.90 |
| Real Estate Taxes | 05/08/13 | $ | 52,611.33 | $ | - |
| **Total** | | **$** | **773,413.05** | **$** | **106,721.56** |

Exhibit C



*Home* » *Divisions* » *Economic Justice* » *Real Estate Finance Bureau*

# Real Estate
## FINANCE BUREAU

**Welcome to the Real Estate Finance Bureau Website**

| 11 East 36th Street | [ Search ] |

Search by plan ID, name or address: ⊙          Search by sponsor or principal name: ○

**To View a Plan, Select One Below:**

| ID | Name | Address | Type |
|---|---|---|---|
| C830012 | 111 EAST 36TH STREET | 111 EAST 36TH STREET, NEW YORK, NY, 10016 | COOPERATIVE |
| CD050128 | MORGAN LOFTS CONDO** SEE JEFFREY RENDIN** | 11 EAST 36TH STREET **NO AMENDMENTS ACCEPTED*, NEW YORK, NY, 10016 | CONDOMINIUM |

**Searching data:**

This database has a search mechanism to assist you in finding information quickly and easily. You have several search options:

**1. Quick Search:**

This is the simplest option. It allows you to enter broad search criteria quickly. Simply enter either a portion of the name of the Plan or the Plan's address. This kind of search is the quickest but may result in a large number of returns. You may scroll through the returned information or you can refine the search criteria. For example, if you enter *sara* the search would return all records in which those characters are found anywhere in either the Plan name or Plan address.

NOTE: The search mechanism is not case sensitive.

**2. Restricted search:**

This search option will allow you to zero in on a smaller group of returns for your search. If your quick search consists of a small number of letters you can add additional letters to narrow the search. For instance, if you used the search criteria **sara** in your first search, this would return any Plan name or Plan address with variations of **sara**. Returns would include things such as Sarasota and Saratoga. If you are searching for Saratoga, entering the entire word would limit the returns to only data including the entire word Saratoga.

**3. Wild Card Search:**

Another method of searching is the use of the wild card. You may perform this type of search by using the percent (%) character.

For Quick searches and Restricted searches, use of a wild card is not necessary because the search mechanism automatically employs wild cards at the beginning and end of entered search terms which results in a return of any data containing the letters entered in the search. This is good enough for most searches but in rare instances a more restrictive search is necessary to enable a return of a manageable set of data.

For instance, if you were searching for 530-536 Broadway, you could enter 530. This would return all rows with a 530 anywhere in the Plan name or Plan street. This search would return over 30 possible hits, one of which is 530-536 Broadway. Entering Broadway would return all rows with Broadway anywhere in the Plan name or Plan street. This search would return over 400 possible hits, one of which is 530-536 Broadway. Choosing to use the wild card character, you would enter **530%Broadway**. This search would return exactly 1 record containing 530-536 Broadway.

Exhibit D

**From:** Jeffrey Rendin [mailto:Jeffrey.Rendin@ag.ny.gov]
**Sent:** Friday, June 07, 2013 3:45 PM
**To:** Martin Shaw
**Subject:** RE: Morgan Lofts

Mr. Shaw,

First off, let me apologize for my hyperactive spam filter intercepting this message.

We closed an investigation into the Morgan Lofts several years ago, as I explained to your paralegal.  If I recall, there was a problem with the plan sponsor failing to build some units, and further failing to pay common charges on those unbuilt, unsold units.  I direct you to Aaron Shmulewitz, counsel to the Board, for further background.

If your client were to take title to the unsold units of the plan sponsor, and tender an amendment updating the plan in conformity with the Condominium Act, the GBL and our regulations, we would, after appropriate review, accept such an amendment.

In future, please contact me directly, preferably by email.  Numerous frantic phone calls from a paralegal aren't always a priority for Section Chief in this Office.

Thank you,


**Jeffrey R. Rendin**
Chief of Enforcement
Real Estate Finance Bureau
Office of the Attorney General of the State of New York

**From:** Martin Shaw [mailto:mshaw@shawbleckner.com]
**Sent:** Wednesday, June 05, 2013 3:18 PM
**To:** Jeffrey Rendin
**Subject:** RE: Morgan Lofts

Mr. Rendin,

In accordance with your e-mail below, I called your office and left voice-mails earlier this afternoon.

I represent 11 East 36 Note Buyer LLC, the current owner and holder of a certain Note given by 11 East 36th LLC, Morgan Lofts, LLC and Bay Condos, LLC.  The Note and Mortgage was assigned to 11 East 36 Note Buyer LLC by assignment dated April 27, 2012.  My client has indicated to me that Morgan Lofts, LLC and 11 East 36th, LLC have been in default of their obligations under the Note and Mortgage, and that, on May 10, 2013, 11 East 36th LLC and Morgan Lofts, LLC filed a partial bankruptcy petition in U. S. Bankruptcy Court.

As per Yolanda's e-mails to you, we were inquiring as to the reason(s) the Real Estate Finance Bureau's website indicates "No Amendments Accepted"  regarding the Morgan Lofts Condominium.  My client, as holder of the Note and Mortgage for approximately 25 of the condominium units, would like to know the current status of the Offering Plan, the reasons that no amendments are being accepted, whether the Real Estate Finance Bureau is prohibiting further amendments or whether the Bureau will permit amendments so that the condominium units subject to my client's mortgage may be sold and, if so, the required parameters of such an amendment.

Please let me know whether you would be available to discuss this matter and the questions I have raised.  Thank you..

Martin Shaw, Esq.

Shaw & Associates

350 Fifth Avenue

Suite 2816

New York, New York 10118

Tel: (212) 279-4490

Fax: (212) 279-4495

Notice: This communication, including attachments, may contain information that is confidential and protected by the attorney/client or other privileges. It constitutes non-public information intended to be conveyed only to the designated recipient(s). If the reader or recipient of this communication is not the intended recipient, an employee or agent of the intended recipient who is responsible for delivering it to the intended recipient, or you believe that you have received this communication in error, please notify the sender immediately by return e-mail and promptly delete this e-mail, including attachments without reading or saving them in any manner. The unauthorized use, dissemination, distribution, or reproduction of this e-mail, including attachments, is prohibited and may be unlawful. Receipt by anyone other than the intended recipient(s) is not a waiver of any attorney/client or other privilege.

**From:** Jeffrey Rendin [Jeffrey.Rendin@ag.ny.gov]

**Sent:** Wednesday, June 05, 2013 12:58 PM

**To:** Yolanda DeArteaga

**Subject:** RE: Morgan Lofts

Please have Mr. Shaw himself  contact me.

**Jeffrey R. Rendin**
Chief of Enforcement
Real Estate Finance Bureau
Office of the Attorney General of the State of New York

**From:** Yolanda DeArteaga [mailto:yolanda@shawbleckner.com]
**Sent:** Wednesday, June 05, 2013 12:58 PM
**To:** Jeffrey Rendin
**Subject:** RE: Morgan Lofts

Mr. Rendin: Please bear with me again because I missed including an important fact that our office represents the mortgagee and that we have no relationship with Mr. Shmulewitz.

If there is no ongoing investigation of the Sponsor, then why would the AG bar any further amendments to the Plan (as noted in the records)?

Thank you again for your help.

Yolanda DeArteaga

**From:** Jeffrey Rendin [Jeffrey.Rendin@ag.ny.gov]

**Sent:** Wednesday, June 05, 2013 12:19 PM

**To:** Yolanda DeArteaga

**Subject:** Morgan Lofts

Ms. Ortega,

We do not presently have an investigation open into the sponsor of the Morgan Lofts.  We did work, several years ago, to facilitate a resolution of some issues brought to us by the attention of the Board's attorney, Aaron Shmulewitz of Belkin Burden.  To the extent you have any questions about the building, I'd reach out to Mr. Shmulewitz.

**Jeffrey R. Rendin**
Chief of Enforcement
Real Estate Finance Bureau
Office of the Attorney General of the State of New York

Exhibit E

# SUPREME COURT OF THE STATE OF NEW YORK
## NEW YORK COUNTY

PRESENT: ───── HON. PAUL G. FEINMAN ─────         PART __12__
                                    *Justice*

Index Number : 601164/2009                         INDEX NO. _____
GRAND PACIFIC FINANCE
vs.                                                 MOTION DATE _____
97-111 HALE, LLC
SEQUENCE NUMBER : 008                               MOTION SEQ. NO. _____
AMEND SUPPLEMENT PLEADINGS

The following papers, numbered 1 to _____ , were read on this motion to/for _____

Notice of Motion/Order to Show Cause — Affidavits — Exhibits   _____   | No(s)._____

Answering Affidavits — Exhibits _____   | No(s)._____

Replying Affidavits _____   | No(s). _____

Upon the foregoing papers, it is ordered that this motion is

**MOTION AND CROSS MOTION(S) ARE DECIDED
IN ACCORDANCE WITH ANNEXED DECISION AND ORDER.**

MOTION/CASE IS RESPECTFULLY REFERRED TO JUSTICE
FOR THE FOLLOWING REASON(S):

Dated: __9/29/2012__                              _____, J.S.C.

1. CHECK ONE: ....................................... ☒ CASE DISPOSED    ☐ NON-FINAL DISPOSITION
                                                      CROSS MOTION    MOTION
2. CHECK AS APPROPRIATE: ...................MOTION IS: ☒ GRANTED ☒ DENIED ☐ GRANTED IN PART ☐ OTHER
3. CHECK IF APPROPRIATE: ................................. ☐ SETTLE ORDER        ☐ SUBMIT ORDER
                                                      ☐ DO NOT POST  ☐ FIDUCIARY APPOINTMENT  ☐ REFERENCE

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK: CIVIL TERM: PART 12
----------------------------------------------------------------X
GRAND PACIFIC FINANCE CORP.,

                    Plaintiff,

        -against-

97-111 HALE, LLC, 100-114 HALE, LLC, HALE
CLUB, LLC, ELI BOBKER, BEN BOBKER and
JOE BOBKER,

                    Defendants.
----------------------------------------------------------------X
97-111 HALE, LLC, 100-114 HALE, LLC, HALE
CLUB, LLC, ELI BOBKER, BEN BOBKER and
JOE BOBKER,

                    Counterclaim-Plaintiffs/
                    Cross claim-Plaintiffs,

        -against-

GRAND PACIFIC FINANCE CORP.,

                    Counterclaim-Defendant,

        -and-

FINANCIAL ONE GROUP, GLOBAL ONE CORP.,
GRAND PACIFIC HOLDINGS, N.V., 366
MADISON, INC., UNITED ASIAN FUNDS, LLC,
ROBERT W. HEINEMANN, JOHN HUANG,
KENNY HUANG, ANDRE J.L. KOO, C.C. LIN,
and MICHAEL LIN,

                    Crossclaim-Defendants.
----------------------------------------------------------------X

Index No.       <u>601164/2009E</u>
Mot. Seq. Nos. <u>008, 009 & 011</u>

**DECISION AND ORDER**

Appearances:

| | For Plaintiff: | For Defendants: |
|---|---|---|
| | Herrick, Feinstein LLP | Marc M. Coupey, Esq. |
| | By: Scott T. Tross, Esq. | By: Marc M. Coupey, Esq. |
| | 2 Park Ave. | 11 E. 36th St., ste. 100-B |
| | New York, NY 10016 | New York, NY 10016 |
| | (212) 592-1400 | (914) 426-0661 |

**Papers considered in review of these motions and cross motions:**

| PAPERS | NYSCEFS DOCUMENT NUMBERS |
|---|---|
| Motion Sequence No. 008 | |
| Defendants' notice of motion to amend, Coupey affirmation and annexed exhibits A - K | 92 - 92-11 |
| Plaintiff's notice of cross motion, Tross affirmation and annexed exhibits A - M | 94 - 95-13 |
| Coupey reply affirmation and annexed exhibit A | 102 - 102-1 |
| Transcript of oral argument | 116 |

Motion Sequence No. 009
    Plaintiff's notice of motion to quash, Tross affirmation and annexed        98 - 101-33
        exhibits A - GG
    Coupey affirmation in opposition and annexed exhibit A        103 - 103-1
    Transcript of oral argument        116
Motion Sequence No. 011
    Signed order to show cause, Schafhauser affirmation and annexed        121 - 125
        exhibits A - S, Schafhauser emergency affirmation
    Coupey opposition affirmation        126
    Interim order, dated July 10, 2012        127
    Transcript of oral argument        129

**PAUL G. FEINMAN, J.:**

The motions filed under sequence numbers 008, 009 and 011 are consolidated for purposes of disposition.

Defendants/counterclaim/cross claim plaintiffs 97-111 Hale, LLC, 100-114 Hale, LLC, Eli Bobker, Ben Bobker and Joe Bobker (collectively "defendants") move pursuant to CPLR 1002 and CPLR 3025 (b) and (c) to amend their verified amended answer with affirmative defenses, counterclaims and cross claims to add eight additional cross claim defendants (motion sequence number 008). Plaintiff, Grand Pacific Finance Corp., opposes and cross-moves to dismiss the action pursuant to CPLR 3211 (a) (4) or, alternatively, pursuant to CPLR 3211 (a) (4) and CPLR 2201 to stay the action pending resolution of a related action in Westchester County (cross motion sequence number 008x). Defendants oppose the cross motion.

Separately, plaintiff moves pursuant to CPLR 2304 and CPLR 3103 to quash or limit the 23 subpoenas served by defendants in this action and seek an award of attorneys' fees, costs and disbursements incurred in making this motion (motion sequence number 009). Defendants oppose.

Finally, plaintiff moves pursuant to Limited Liability Company Law § 607 (a) to charge the membership interests owned by defendants in nine limited liability companies with the entire

unsatisfied amount of the judgment entered against defendants and now due and owing, plus

interest from the date of entry, so that plaintiff will be entitled, as an assignee, to defendants'

membership interests in any profits made by these limited liability companies. Plaintiff also

seeks, pursuant to CPLR 6301, for an order restraining and enjoining defendants from conveying,

transferring, assigning, encumbering or otherwise disposing of defendants' respective membership

interests in these limited liability companies (motion sequence number 011). Defendants oppose.

By interim order dated July 10, 2012, this court continued a previously issued temporary

restraining order only as to Checkmate Holdings, LLC and Bluebell Assets,LLC.

For the reasons set forth below, plaintiff's cross motion filed under sequence number 008x

is granted and the defendants' motion filed under sequence number 008 is denied. In light

of this, plaintiff's motion filed under sequence number 009 is denied as academic. Finally, the

plaintiff's motion filed under sequence number 011 is granted to the extent provided herein..

***BACKGROUND***

1.    Facts as Alleged by Defendants

This matter arises out of the alleged default by defendants on three loans which were

secured by various mortgage and security agreements and personal guaranties. Defendants consist

of three limited liability companies, 97-111 Hale, LLC, 100-114 Hale, LLC and Hale Club, LLC

and three related individuals, Eli Bobker, Ben Bobker and Joe Bobker. In July 2005, defendants

obtained $5,500,000.00 million in senior financing from Sterling Bank and retired existing

acquisition loans of $2,375,000.00 from Chinatrust, which plaintiff Grand Pacific arranged, and

retired a $1,650,000 loan from plaintiff. Early in 2006, defendants obtained approval from the

City of White Plains to construct two condominium buildings on the property (the "Hale

Page 3 of 21

Project"), but defendants were interested in selling the properties. According to defendants, in

May of 2006, they received an offer from nonparty Alexander Gurevich, a developer, to purchase

the Hale Project for approximately $18,500,000.00 (Doc. 92-2, ex. A, Proposed am. answer at ¶

105). Defendants claim to have accepted Gurevich's offer and instructed their attorney to prepare

a contract. They claim to have advised an individual working for plaintiff and another individual

from Chinatrust, who allegedly asked defendants not to proceed with the Gurevich offer and

instead enter into a "joint venture" with plaintiff in connection with the Hale Project (*id.* at ¶ 106).

Plaintiff allegedly told defendants that plaintiff would provide funds in the form of an equity

infusion equivalent to match Gurevich's offer, and would obtain construction financing from

Chinatrust, which defendants needed in order to complete the Hale Project. Defendants claim that

originally plaintiff had proposed that part of the proceeds from the Hale Project "joint venture

closing" be used to pay off a $2,300,000.00 loan from plaintiff related to the "Morgan Lofts,"

another construction project involving the Bobkers and Chinatrust as the construction lender).

However, in the summer of 2006, plaintiff's senior vice-president allegedly demanded that part of

the proceeds from the "joint venture closing" now be used to pay off Fifth Field and Global One

investments on an unrelated real estate development project (*id.* at ¶ 109). Defendants claim that

given their need for financing for developing the "Morgan Lofts," and plaintiff's threat to use its

influence with Chinatrust, they had no choice but to comply with plaintiff's demands regarding

the use of the proceeds.

    Defendants allege that plaintiff originally had agreed to "invest" $10 million into the "joint

venture" but shortly before closing, informed defendants that it would only be making a

$7,000,000.00 "investment." However, plaintiff informed defendants that an "outside investor"

would provide the additional $3,000,000.00 "in capital for the joint venture" (*id.* at ¶ 116). The

"outside investor" was United Asian Funds, LLC, which would then assign its interest in the Hale

project to two other investors selected by plaintiff called Global One and 366 Madison.

According to defendants, plaintiff insisted that neither Global One nor 366 Madison be listed in

the operating agreements for the Hale Project (*id.* at ¶ 116). Defendants allege that they were

unaware that United Asian Funds, LLC's "partners," Global One and 366 Madison, were actually

family members or staff of plaintiff. They claim that had this information been disclosed, they

would not have agreed to the "joint venture."

     In addition, defendants allege that during the "partnership negotiations," plaintiff

convinced defendants to "paper the transaction as loans despite agreeing that the monies invested

in the Hale properties were actually not loans" (*id.* at ¶ 120). Defendants claim that they had no

choice but to agree, but did so "on condition that the parties would proceed as if Grand Pacific

were an equity member with respect to the Hale Project ... [and plaintiff] would not take any

action that harmed the success of the Project or the partnership notwithstanding the provisions of

the loan documents" (*id.* at ¶ 122). While plaintiff demanded that Joe Bobker sign a guaranty

regarding these funds, defendants allege that plaintiff did not require any supporting financial

information or his social security number, and claim that plaintiff gave assurance and promise that

Bobker's guaranty was "just for the files" and "would never be enforced" (*id.* at ¶ 123).

     In August of 2006, plaintiff and defendants closed on "Hale Project joint venture funding"

(*id.* at ¶ 124). According to defendants, plaintiff contributed a total of $7,000,000.00 in

"investments/loans" in the form of a "second-lien loan and a mezzanine loan, both of which were

subordinated to the prior first-lien mortgage and the additional $1 million provided to the Bobker

Group by Sterling Bank for the Hale Project" (*id.*). An equity contribution of $3,000,000.00 was

provided by United Asian Funds, LLC. However, defendants allege that plaintiff withheld

approximately $1,230,000.00, representing fees, costs and an interest reserve and demanded that

an additional $5,250,000.00 go towards plaintiff and companies controlled or owned by plaintiff's

senior employees for other projects, including the "Morgan Lofts," in which defendants had been

involved.

In June of 2007, defendants requested that plaintiff arrange for construction financing from

Chinatrust for the Hale Project. In response, according to defendants, plaintiff and Chinatrust

"made multiple excuses, ranging from the loan request being too high to their sudden concern

about the neighborhood" (*id.* at ¶ 137). Defendant also allege that Chinatrust and plaintiff really

knew all along that Chinatrust could not make the loan because on July 21, 2006, Chinatrust's

chairman had been forced to resign and was being pursued by regulators.

Later in 2007, as the Sterling senior loan for the Hale Project was about to mature,

defendants issued a "capital call" to their members, which included United Asian Funds, LLC,

and, according to defendants, Global One and 366 Madison, notwithstanding the fact that they are

not mentioned in the operating agreement. When these investors failed to respond, defendants

requested that plaintiff advance additional capital for the Sterling indebtedness, which it refused to

do. Instead, defendants allege that plaintiff entered into an agreement directly with Sterling Bank

and began paying Sterling's senior loan directly to prevent foreclosure and the loss of plaintiff's

$7,000,000.00 and United Asian Funds, LLC's $3,000,000.00. Plaintiff continued to pay interest

on the Sterling debt until January 2008, when it acquired the $1,000,000.00 Sterling loan, and

June 2008, when it acquired the $5.500,000.00 Sterling loan. At that point, defendants allege that

plaintiff could choose whether the classify the Sterling payments as capital to the partnership or as

additional debt (*id.* at ¶ 145). Plaintiff chose to acquire the notes as additional debt and "in a

breathtaking act of bad faith," declared the loans in default and "initiated this foreclosure action,[1]

and another action in New York Supreme Court" (*id.*).

In late 2007 and early 2008, defendants attempted to negotiate a restructuring of plaintiff's

$7,000,000.00 loan. Defendants entered negotiations that would allow Gurevich and Lehman

Brothers to join the Hale Project "as partners in return for sufficient capital to prevent foreclosure

of the Sterling acquisition notes, and provide construction financing" (*id.* at ¶ 153). These

negotiations failed, according to defendants, when plaintiff demanded that United Asian Funds,

LLC's $3,000,000.00 equity investment be paid first before any restructuring of plaintiff's

$7,000,000.00 loan took place (*id.* at ¶ 155). Later, in October of 2007 through February of 2008,

defendants tried to negotiate a "deed in lieu" settlement with plaintiff, which would have entailed

an exchange of the deeds to the Hale properties for satisfaction of the mortgage term and

mezzanine loans. That settlement fell through, according to defendants, because plaintiff's new

leadership was concerned that it would attract unwanted attention from regulators (*id.* at ¶ 165).

Plaintiff then commenced the instant action and the related action in Westchester County.

2.    <u>Westchester County Action</u>

The day after plaintiff commenced this action, it also started a separate action in the

Supreme Court, Westchester County, titled *Grand Pac. Fin. Corp. v 97-11 Hale, LLC, et. al.*

(index no. 008084/2009), naming defendants 97-111 Hale, LLC, 100-114 Hale, LLC and Joe

---

[1] It appears that defendants' reference to "this action" actually means the action pending in Westchester
County.

Bobker, as well as the City of White Plains, the County of Westchester, the People of the State of

New York and "John Doe" Nos. 1-25 as defendants. In that action, plaintiff sought to foreclose

the mortgage given as security for the $5,500,000.00 Sterling loan, of which $5,362,500.00

remained due. Because the loan was secured by property located in White Plains, New York, the

foreclosure action was commenced in Westchester County.

3.    Plaintiff's Motion for Summary Judgment in this Action

By decision and order dated June 7, 2010, plaintiff's motion for summary judgment was

granted on the first, second, fourth, fifth, seventh and eighth causes of action asserted in the

complaint, and a referee was appointed to compute the amounts owed upon the notes at issue

(*Grand Pac. Fin. Corp. v 97-11 Hale, LLC, et. al.*, Sup Ct, NY County, June 7, 2010, Feinman, J.,

index no. 601164/2009). Defendants' cross claims and counterclaims were severed. On March

22, 2011, the court issued an order granting plaintiff's motion to confirm the Referee's report and

judgment was entered thereon.

On December 20, 2011, the court's June 2010 and March 2011 orders were affirmed by

the Appellate Division, First Department (*see Grand Pac. Fin. Corp. v 97-111 Hale, LLC*, 90

AD3d 534 [1st Dept 2011]). In holding that defendants failed to raise a triable issue of fact

sufficient to defeat summary judgment, the Appellate Division emphasized that the "notes and

related guarantees prohibited defendants from bringing any counterclaims in an action to collect

under the notes, and absolutely and unconditionally guaranteed payment of the debt irrespective of

any lack of validity or enforceability of any loan document" (*id.* at 535). As such, "regardless of

the merit of the counterclaims and cross claims, the guarantees effectively barred the defenses"

(*id.*; citing *Banco do Estado de Sao Paulo v Mendes Jr. Intl. Co.*, 249 AD2d 137, 138 [1st Dept

Page 8 of 21

1998]). In addition, the Court held that "the claims of fraudulent inducement by plaintiff were

irrelevant to the two loans originally made by a nonparty, from whom plaintiff acquired the notes,

and the third loan was made to defendant Hale Club, which did not claim that it was defrauded"

(*id.*). The Court also affirmed the portion of this court's decision which struck and refused to

consider portions of defendants' surreply that went beyond the scope of the permitted surreply,

and confirmed that defendants were not entitled to discovery before the Referee's hearing because

"any documentation of payment on the loans would have been within their possession or could

have been obtained from their financial institutions" (*id.* at 536).

4.    Plaintiff's Motion for Summary Judgment in Westchester Action

Plaintiff had also moved for summary judgment in the Westchester County action. That

motion, however, was denied by decision and order dated September 17, 2010, based on the

court's determination that defendants had raised sufficient issues of fact to avoid summary

judgment (Doc. 95-10, ex. J, *Grand Pac. Fin. Corp. v 97-111 Hale, LLC et. al.*, Sup Ct,

Westchester County, Sept. 17, 2010, Smith, J., index no. 008084/2009). The court recited the

allegations asserted by defendants, which are set forth earlier in this decision and order, and

opined that if such allegations were true, they would "tend to support defendants' claims of

plaintiff's oppressive conduct, self-dealing, bad faith, breach of the duty of fair dealing and breach

of fiduciary duty, and may operate to relieve defendants of their default" (*id.* at *9).

5.    Amendments to the Pleadings

When plaintiff filed its motion for summary judgment in July of 2009, defendants

responded by amending their answer as of right in both the New York County and Westchester

County actions on or around August 6, 2009. Although the original verified answers did not

include any counterclaims or cross claims, the amended answers each included the same eight

cross claims against ten newly-added cross claim defendants and seven identical counterclaims

(Docs. 95-4 - 95-6; exs. D - F). With very few minor exceptions, the amended answers filed in

both the New York County and Westchester County actions are substantially identical. Each

demands the same relief: (1) damages, both actual and punitive, arising out of plaintiff's alleged

breaches of duty, violations of statutory law and fraudulent inducement; (2) judgment rendering

the Sterling loan documents unenforceable because plaintiff allegedly fraudulently acquire them to

increase defendants' debt instead of purchasing them as equity; (3) dismissal of the complaint

against defendants; and (4) a judicial restructuring of the partnership going forward to reflect the

reality of the venture, including treating defendants' $4,000,000.00 investment as pari passu with

all other investments.

Defendants later moved for leave to file a proposed second amended verified answer

naming additional cross claim defendants in the Westchester action. That motion was granted by

decision and order dated April 19, 2011 (Doc. 95-12, ex. L, *Grand Pac. Fin. Corp. v 97-111 Hale,

LLC et. al.*, Sup Ct, Westchester County, April 19, 2011, Smith, J., index no. 008084/2009). On

September 27, 2011, defendants filed the instant motion seeking leave to serve a proposed second

amended verified answer in this action. According to plaintiff, the proposed second amended

verified answer would essentially make the answer in this action conform with the second

amended verified answer that was the subject of the April 19, 2011 decision in the Westchester

action. Plaintiff claims that the two answers are identical except the proposed second amended

verified answer would contain a few additional paragraphs adding allegations pertaining to

proposed cross claim defendants Jeffrey Koo, Sr., Jeffrey Koo, Jr., Andre J.L. Koo and John

Huang (Doc. 95, Tross opp. affirm. at ¶ 13).  It even contends that the majority of the proposed

answer was simply copied-and-pasted from the Westchester second amended answer, quoting

specific excerpts in the proposed answer where it refers to "the instant foreclosure action, as well

as a breach of contract action regarding additional notes on the Hale properties, presently pending

in the Supreme Court, County of New York ..." (Doc. 92-2, Proposed am. answer at ¶ 45; *see also*

Doc. 95-11, ex. K, Westchester second am. answer at ¶ 45).

6.    <u>Discovery</u>

The parties have never requested a preliminary conference in this action and it appears

from the record that discovery has been somewhat limited.  However, plaintiff has sought

extensive post-judgment discovery from defendants and nonparties in an effort to collect on the

judgment previously entered in its favor.  Defendants did not respond to plaintiff's information

subpoenas until plaintiff moved to compel, at which time defendants cross-moved to quash the

subpoenas and for a protective order.  In a decision and order dated March 15, 2012, the court

granted plaintiff's motion to the extent indicated therein and denied defendants' cross motion in

its entirety.

According to the parties, in the Westchester action, numerous compliance conferences

have been held, documents have been exchanged, depositions have been conducted and the court

has issued several orders regarding discovery (*see e.g.* Doc. 101-33, ex. GG, *Grand Pac. Fin.*

*Corp. v 97-111 Hale, LLC et. al.*, Sup Ct, Westchester County, June 14, 2011, Lefkowitz, J.,

index no. 8084/2009).  In fact, defendants have submitted documents and deposition testimony

from the Westchester action in support of their pending motion for leave to amend their answer.

*ANALYSIS*

1.    Motion for Leave to Amend Answer and Cross Motion to Dismiss

The court first will consider defendants' motion to amend and plaintiff's cross motion to

dismiss or for a stay under CPLR 3211 (a) (4).  "A motion for leave to amend [a pleading]

pursuant to CPLR 3025 (b) should be freely granted unless the proposed amendment is palpably

insufficient to state a cause of action or is patently devoid of merit" (*Bishop v Maurer*, 83 AD3d

483, 485 [1st Dept 2011]; quoting *Smith-Hoy v AMC Prop. Evaluations, Inc.*, 52 AD3d 809, 811

[2d Dept 2008]).

A party may move for judgment dismissing one or more causes of action asserted against

it on the ground that there is another action pending between the same parties for the same cause

of action (CPLR 3211 [a] [4]).  As an alternative to dismissal, the court is empowered to "make

such order as justice requires" (*id.*).  To be entitled to relief under this subsection, "it is necessary

that there be sufficient identity as to both the parties and the causes of action asserted in the

respective actions" (*White Light v On the Scene*, 231 AD2d 90, 93-94 [1st Dept 1997]).  However,

the mere presence of additional parties will not necessarily defeat a motion pursuant to CPLR

3211 (a) (4) where "both suits arise out of the same subject matter or series of alleged wrongs"

(*id.* at 94; quoting *Kent Dev. Co. v Liccione*, 37 N.Y.2d 899, 901 [1975]).  "[W]here another

action is pending, a major concern, as a matter of comity, is to avoid the potential for conflicts

that might result from rulings issued by courts of concurrent jurisdiction" (*id.* at 93).

Plaintiff opposes amendment and seeks dismissal or a stay under CPLR 3211 (a) (4) of the

cross claims and counterclaims, arguing that the allegations asserted in the proposed second

amended complaint are identical to those being litigated in the Westchester foreclosure action.  In

Page 12 of 21

reply, defendants first attempt to highlight the differences between this action and the one pending in Westchester. They argue that although the "factual events constituting Defendants' defenses to [the two] actions and the basis of its counterclaims may be similar, the actual dollar amounts and legal documents underpinning each action are distinct and consequently Defendants' claims ... must be preserved in this action" (Doc. 102, Coupey reply affirm. at ¶ 5). Defendants contend that it is evident from this court's June 2010 order that "judgment in this action was not granted on the merits but was granted as a result of errors made by Defendants' original counsel in allegedly admitting in its answer that Defendants defaulted on the notes in question (which alleged admission is inconsistent with the cross and counterclaims set forth therein)" (*id.* at ¶ 6). They also claim that judgment was based on former counsel's error in failing to submit affidavits from all persons with first hand knowledge (*id.*). Thus, defendants contend that this court has "determined to adjudicate Defendants' claims in this action on their merits" (*id.*). Defendants further argue that their claims have already been determined to be both sufficient and viable, quoting an excerpt from the court's decision which denied plaintiff's summary judgment motion in the Westchester action (*id.* at ¶ 7). The second proposed amended complaint only "seeks to achieve substantial justice, on the merits, by the complete adjudication of the facts and issues regarding every party involved in [p]laintiff's claims and every party involved in [p]laintiff's 'oppressive conduct, self-dealing, bad faith, breach of the duty of fair dealing and breach of fiduciary duty'" (*id.* at ¶ 8). The parties that defendants seek to add are described as employees, officers or owners of existing parties, or companies owned and operated by those employees, officers or owners.

Addressing first plaintiff's cross motion for dismissal or a stay under CPLR 3211 (a) (4),

defendants correctly point out that it was plaintiff that initially chose to bring its claims in two different courts, and that the instant action was commenced one day before the Westchester action was commenced. The initial claims asserted and relief sought by plaintiff in the two actions were not completely identical, as they involved different loan agreements. Whereas here plaintiff sought to recover the amounts due under three notes, in Westchester, plaintiff sought to foreclose a mortgage given as security to a different note. It is possible that these differences could explain why plaintiff was able to successfully obtain summary judgment on its claims in this action, which was unanimously affirmed on appeal, while plaintiff's motion was denied in the Westchester action. In any case, entry of judgment in plaintiff's favor meant that the distinguishing features between this action and the Westchester action -- the specific note agreements at issue and relief sought -- are no longer present. All that remains in this action are the cross claims and counterclaims asserted by defendants, which are substantially identical to those asserted in the Westchester action.

Even defendants argue that the two actions involve the "same parties, ... the same properties, ... [and] the same period of time" (Doc. 102, Coupey reply affirm. at ¶ 3). Defendants rely on deposition testimony and documents produced in the Westchester action in support of their instant motion to amend. As plaintiff points out, an examination of the proposed answer and the answer in the Westchester action reveals that the proposed amendment is an exact duplicate of the second amended answer in the Westchester action other than a few additional paragraphs that have been added to defendants' proposed answer. As mentioned above, defendants have simply copied-and-pasted the bulk of their second amended answer from the Westchester action into the proposed second amended answer here. The relief demanded in both actions is exactly the same. Thus, if

the court were to grant defendants' motion for leave to amend and deny plaintiff's motion to

dismiss under CPLR 3211 (a) (4), the same cross claims and counterclaims seeking the exact same

relief would be litigated by the same parties at the same time in two different courts. This is

precisely the type of situation that CPLR 3211 (a) (4) was designed to avoid.

The fact that it was plaintiff who originally choose to pursue its claims against defendants

in two different courts, and that it commenced this action one day before commencing the

Westchester action should not be dispositive. It is well established that "[d]etermining the priority

of pending actions by dates of filing is a general rule that should not be applied in a 'mechanical'

way, and that special circumstances may warrant deviation from this rule ..." (*L-3 Communications

v Safenet*, 45 AD3d 1, 7 [1st Dept 2007]; citing *White Light*, 231 AD2d at 97). Furthermore, since

the claims asserted by plaintiff in this action have now been disposed of and only defendants' cross

claims and counterclaims remain, the court notes that defendants' original cross claims and

counterclaims were asserted on the same date in both actions. Defendants successfully moved for

leave to file their second amended answer in the Westchester action in April 2011, and only now

have sought to confirm their cross claims and counterclaims in this action to those asserted in the

Westchester action.

Given that there has been very little discovery regarding defendants' cross claims and

counterclaims in this action, but extensive discovery into these issues, including numerous

depositions, nonparty subpoenas and document productions in the Westchester action, allowing

defendants to pursue the same cross claims and counterclaims in both actions will result in

substantial and costly duplication of effort. Furthermore, it would give a party the opportunity to

relitigate objections and demands that have already been the subject of court orders in Westchester,

to the prejudice of the opposing party. This imposes unnecessary burdens not only on the parties, but also on the courts. These risks are not purely speculative; plaintiff has pointed out that many of the various subpoenas which are currently the subject of a pending motion in this court have already been the subject of a motion and related decision and order in the Westchester action. Under these circumstances, the court finds that dismissal, rather than a stay, is the appropriate relief under CPLR 3211 (a) (4). This diminishes the possibility that the losing party in the Westchester action will return to this court and attempt to relitigate the case.

The court also notes several of the proposed cross claims/counterclaims seek "expungement of all mortgage-related notes with respect to the Hale Project" or a declaration that the guaranty and note agreements entered by plaintiff and defendants are "of no force or effect" (*see e.g.* Doc. 92-2, ex. A, Proposed answer at ¶ 177; ¶ 191). In effect, defendants are attempting to use their proposed cross claims/counterclaims to attack the validity of the agreements which formed the basis of the judgment previously entered against them. The allegations asserted in support of the proposed cross claims/counterclaims were previously asserted in opposition to plaintiff's motion for summary judgment and were found insufficient to raise a triable issue of fact by this court and the Appellate Division, First Department. Thus, were the court to review the merits of defendants' motion for leave to amend their answer, the court would find that at least a portion of the proposed second amended verified answer is "palpably insufficient to state a cause of action [and] patently devoid of merit" (*see Bishop*, 83 AD3d at 485). Since the court in the Westchester action has permitted defendants to amend their answer to assert essentially the same claims, defendants would suffer no prejudice from this court dismissing the instant action in favor of litigating the cross claims and counterclaims in Westchester.

Page 16 of 21

Defendants concede that litigating the outstanding claims in two courts has resulted in

"vexatious litigation," required the parties to engage in "duplication of effort," and has produced

"divergent ruling on similar issues," including summary judgment (Doc. 102, Coupey affirm. at ¶

16). They argue however, that plaintiff created these problems by commencing two separate

actions and, as such, is estopped from arguing that this action should be dismissed or stayed on the

basis of CPLR 3211 (a) (4) (*id.* at ¶ 17). While the court is cognizant of plaintiff's initial role in

setting the stage for the problems mentioned above, the court fails to see, and defendants fail to

identify, how plaintiff would benefit from having to litigate the cross claims and counterclaims in

the Westchester court.

The court notes that the outcome of this decision has no bearing on any outstanding

motions pertaining to post-judgment discovery. Those proceedings will remain in this court. Only

the cross claims and counterclaims are dismissed due to their substantial identity with those

asserted in the Westchester action.

Accordingly, plaintiff's cross motion under CPLR 3211 (a) (4) is granted and defendants'

cross claims and counterclaims are dismissed. Defendants' motion to amend is denied.

2.    <u>Motion to Quash</u>

Counsel for defendants agreed on the record at oral argument to withdraw the 23 nonparty

subpoenas issued to various banks and financial institutions identified in records previously

produced by plaintiff, while reserving the right to seek these materials at a later time if necessary

(Doc. 116, transcript at 10). Accordingly, plaintiff's motion to quash is denied as having been

rendered academic by defendants' withdrawal of the 23 nonparty subpoenas. Alternatively, the

motion is denied as having been rendered academic by the court's grant of plaintiff's cross motion

to dismiss under CPLR 3211 (a) (4).

3.    Application under Limited Liability Company Law § 607 (a)

Pursuant to Limited Liability Company Law § 607 (a), upon application to the court, a

judgment creditor of a member of a limited liability company may charge the membership interest

of the member with payment of the unsatisfied amount of the judgment with interest.  This gives

the judgment creditor only the rights of an assignee of the membership interest (LLCL § 607 [a]).

LLCL § 607 [b] provides that "[n]o creditor of a member shall have any right to obtain possession

of, or otherwise exercise legal or equitable remedies with respect to, the property of the limited

liability company."

Pursuant to this provision, plaintiff seeks an order charging defendants' alleged

membership interests in Checkmate Holdings, LLC, Bluebell Assets, LLC, 97-11 Hale LLC,

Wadsworth Holdings, LLC, 100-14 Hale, LLC, Sterling Third, LLC, Madison Condos, LLC,

Quentin Condos, LLC and Quentin Condos II, LLC, together with all other limited liability

companies in which defendants hold membership interests, with the entire unsatisfied amount of

the judgment plus interest.  This application is the latest effort by plaintiff to enforce the judgment

obtained against defendants which appears to remain completely unpaid at this time.

Defendants oppose the application arguing that plaintiff has failed, other than with respect

to Bluebell Assets, LLC and Checkmate Holdings, LLC, "to establish that the judgment debtors

hold actual, realizable interests in the alleged LLC's distinguishable from those assets held by the

LLC's themselves" (Doc. 126, Coupey opp. affirm. at ¶ 4; citing LLCL § 607 [b]; *Angelino v*

*Francis J. Angelino, D.D.S., PC*, 83 AD3d 1186 [3d Dept 2011]).  Citing deposition testimony in

the Westchester action, defendants claim that defendants Eli Bobker and Ben Bobker are managing

members and employees of Checkmate and Bluebell, and that the only salary and income either of

these individuals receive is that which they receive from Checkmate and Bluebell. Defendants

further argue that plaintiff has not shown that defendants claimed "interests" in the various limited

liability companies is capable of being assigned or transferred as required by CPLR 5201. They

next contend that assignment of the interests in the limited liability companies may be a breach of

the limited liability companies' operating agreements, so the other members of those companies

should be given an opportunity to respond or object to any assignment.

The documents submitted by plaintiff with the instant application for a charging order

provide support for plaintiff's claim that defendants own membership interests in the limited

liability companies listed in plaintiff's order to show cause. For example, tax records for

Checkmate Holdings, LLC from 2008 show that defendant Eli Bobker owned a 99% interest in that

company, and indicates that he received a share of the company's investment in certain

passthrough entities, including 97-111 Hale LLC, Wadsworth Holdings LLC and 100-14 Hale,

LLC (Doc. 122-12, ex. L, Checkmate tax records). Similarly, the 2009 tax records of Bluebell

Assets, LLC list Ben Bobker as owning a 99% interest in the company, and showing that received

a share of the company's investment in four passthrough entities, "Striling Third, LLC FKA

Westbury Condo," Madison Condos, LLC, Quentin Condos II, LLC and Quentin Condos, LLC

(Doc. 122-14, ex. N, Bluebell tax records).

Defendants do not dispute that no part of the judgment entered against them more than a

year ago has been paid. The evidence submitted on the record provides a sufficient basis for

plaintiff's claim that defendants own a membership interest in the specified limited liability

companies. Defendants do not specifically dispute such ownership, but only raise hypothetical

Page 19 of 21

issues regarding the precise nature of those interests. Defendants' contention that any assignment

of defendants' interests in these limited liability companies could constitute a breach of the

relevant operating agreements is purely speculative and not supported by any competent proof.

Moreover, the records submitted by plaintiff show that particular individual defendants own 99%

of either Checkmate Holdings, LLC or Bluebell Assets, LLC, with the remaining 1% being held by

that individual's wife. Accordingly, plaintiff's application for an order charging defendants'

membership interests in Checkmate Holdings, LLC, Bluebell Assets, LLC, 97-11 Hale LLC,

Wadsworth Holdings, LLC, 100-14 Hale, LLC, Sterling Third, LLC, Madison Condos, LLC,

Quentin Condos, LLC and Quentin Condos II, LLC with the entire unsatisfied amount of the

judgment now due and owing is granted. As agreed by the parties on the record at oral argument

(Doc. 129, July 10, 2012 transcript at 25), the court's decision to grant plaintiff's application for a

charging order renders the branch of plaintiff's motion for a preliminary injunction pursuant to

CPLR 6301 academic, and accordingly, that branch of plaintiff's motion is denied as academic.

Accordingly, it is

ORDERED that defendants' motion, filed under sequence number 008, seeking leave to

amend defendants' verified amended answer, is denied; and it is further

ORDERED that plaintiff's cross motion, filed under sequence number 008X, to dismiss or

for a stay under CPLR 3211 (a) (4) is granted to the extent that defendants' cross claims and

counterclaims are dismissed; and it is further

ORDERED that plaintiff's motion, filed under sequence number 009, to quash 23 nonparty

subpoenas is denied as having been rendered academic by the court's decision on motion sequence

numbers 008 and 008X, or, alternatively, by defendants' withdrawal of such subpoenas; and it is

further

ORDERED that plaintiff's motion, filed under sequence number 011, for an order pursuant

to Limited Liability Company Law § 607 (a) charging defendants' membership interests in

Checkmate Holdings, LLC, Bluebell Assets, LLC, 97-11 Hale LLC, Wadsworth Holdings, LLC,

100-14 Hale, LLC, Sterling Third, LLC, Madison Condos, LLC, Quentin Condos, LLC and

Quentin Condos II, LLC with the entire unsatisfied amount of the judgment entered against

defendants on March 22, 2011, that is now due and owing is granted, and as stipulated by the

parties on the record at oral argument (Doc. 129, July 10, 2012 transcript at 25), the court's

decision to grant plaintiff's application for a charging order renders the branch of plaintiff's motion

for a preliminary injunction pursuant to CPLR 6301 academic, and accordingly, that branch of

plaintiff's motion is denied.

This constitutes the decision and order of the court.

Dated: September 29, 2012
       New York, New York

_____
                    J.S.C.

2012 Pt 12 D&O 601164_2009_008_009_011_daz(Amend_MTD3211[a][4]_quash_charging_orderLLC)