UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------x
In re                                              Chapter 11

       11 East 36 LLC, et al.                    Case no.  13-11506-7

                  Debtor.
---------------------------------------------------------x

## <u>NOTICE OF HEARING</u>

        PLEASE TAKE NOTICE, a hearing will be held on September 17, 2013 at 10:00

a.m. (the "Hearing") before the Honorable James M. Peck, at the United States Bankruptcy

Court, One Bowling Green, New York, New York 10004 to consider the annexed application

("Application") of 11 East 36 Note Buyer LLC and Griffon V LLC (collectively, the

"Mortgagees") in the 11 East 36 LLC and Morgan Lofts LLC, (the "Debtors") Chapter 11 cases,

for the entry of an order substantially in the form annexed hereto, pursuant to section 362 of the

Bankruptcy Code lifting the automatic stay with respect to the Debtors' real property located at

11 East 36th Street, New York, New York.

        PLEASE TAKE FURTHER NOTICE, that objections, if any, must be in writing,

served upon the undersigned proposed Proponent's counsel, and filed with the Clerk of the

Bankruptcy Court, with a courtesy copy to the Judge Peck's chambers, so as to be received at

least seven (7) days prior to the Hearing date.

Dated: New York, New York
       August 15, 2013

                                BACKENROTH FRANKEL & KRINSKY,
                                LLP

                By:    <u>s/ Mark Frankel</u>
                      489 Fifth Avenue
                      New York, New York  10017
                      (212) 593-1100

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
In re                                              Chapter 11

      11 East 36 LLC et al.              Case no.  13-11506-7

                Debtor.
------------------------------------------------------------x

## MOTION TO LIFT THE AUTOMATIC STAY

      11 East 36 Note Buyer LLC ("Mortgagee") and Griffin V LLC ("Griffon,"

collectively with the Mortgagee, the "Mortgagees") by their attorneys, Backenroth Frankel &

Krinsky, LLP, as and for their application for an order determining the each of the Debtor's cases

is a single asset real estate case, and lifting the automatic stay to permit the Mortgagees to pursue

their remedies under New York law with respect to those certain at certain residential

condominium units known as units701, 801, 803, 804, 903, 904, 1003, 1004, 1103, 1104, 201,

202, 203, 204, 205, 206, 306, 406, 606, 1206, CSI-CS35  and the 2.8% interest in the

commercial units 101 and 102 (the "Mortgagee Units") and units 1001, 1006, 1101, 1203, 1204

(the "Griffon Units," collectively with the Mortgagee Units, the "Units" or the "Property") at 11

East 36th Street, New York, New York, respectfully represent as follows:

## BACKGROUND

      1.      On May 8, 2013 ("Filing Date"), 11 East 36th LLC and Morgan Lofts

LLC (the "Debtors") each filed a partial petition under Chapter 11 of the Bankruptcy Code.  The

Debtor has defaulted in completing the filing.

2.      This bankruptcy is similar to the associated Bay Condos case in that the only scheduled and presently known creditors are the Mortgagees and the Condominium Association.

3.      As of September 1, 2013, the Mortgagee's claim totals $14,511,843 and Griffon V's claims totals $3,203,815, for a grand total of $17,715,659, jointly and severally against each Debtor.  Supporting documents are annexed hereto as Exhibit A.

4.      After taking into account the projected $6,075,000 Bay Condos sale proceeds, as of September 1, 2013, the total amount due to the Mortgagees is approximately $11,715,659.  The Condominium Association claim totals approximately $376,858.33.

5.      In their local rule affidavit, the Debtors estimated that the Property has a collective $11 million value.  That valuation, however, appears to be based upon the mistaken assumption that the Debtor can sell the units to potential owner-occupants.

6.      Due to the Debtors' apparent misconduct as sponsor of the Condominium, the New York Attorney General has effectively made it impossible for the Debtors to sell residential Units to potential owner-occupants, and it is unlikely that they ever will be.

7.      And without sales of Units to individual unit purchasers under a New York State approved condominium plan, the Mortgagees the Debtors cannot even begin to satisfy their obligations to the Mortgagees and the Condominium Association because the Units generate insufficient cash flow.

2

8.      When the Mortgagees first raised this issue in their motion to continue as mortgagees in possession, the Debtors responded that they have every right to sell residential units to owner occupants to fund a plan.  That is not true.  A Condominium plan amendment is necessary for such sales.  Annexed hereto as Exhibit B is a posting on the Attorney General's website indicating that no plan amendments will be accepted.

9.      The Debtors nonetheless contend that they only have to make a routine plan update with the Attorney General to start selling.

10.      The Mortgagees called the Attorney General's office and asked why the web site says no plan amendments were being accepted.  This is the response from Jeffrey R. Rendin, Chief of Enforcement, Real Estate Finance Bureau, Office of the Attorney General of the State of New York, as set forth in the email annexed hereto as Exhibit C:

> We closed an investigation into the Morgan Lofts several years ago, as I explained to your paralegal.  If I recall, there was a problem with the plan sponsor failing to build some units, and further failing to pay common charges on those unbuilt, unsold units.  I direct you to Aaron Shmulewitz, counsel to the Board, for further background.
>
> If your client were to take title to the unsold units of the plan sponsor, and tender an amendment updating the plan in conformity with the Condominium Act, the GBL and our regulations, we would, after appropriate review, accept such an amendment.

11.      The Mortgagees also spoke to the Condominium board.  Based upon those conversations, the Mortgagees understand that the misconduct referred to by the Attorney General includes, but is not limited to, (a) failure to pay common charges on units the Debtors as sponsors are leasing to subtenants, (b) failure to pay common charges on un-built units that the Debtors as sponsors promised to build and thus included in the offering plan, and (c) failure to

3

build units that the sponsors promised in the offering plan to build (d) use of the basement space
as rent-free Bobker family offices, rather than an exercise area as promised in the Debtors'
offering plan.

12.     That last item is not insignificant.  In the offering plan, the Debtors
promised condominium buyers that the Debtors would build an exercise facility in the basement
common area.  This was to be a valuable amenity that affected the price at which units were sold.
Instead of building a gym, the Bobkers maintain offices in the space.  They occupy the space rent
free and run any number of businesses from the location.  They pay no rent.  Simply put, the
Debtors are squatting in the Condominium's basement.

13.     In all events, it appears that as a result of the Debtors' failure to comply
with their offering plan, they cannot make new filings.  To the extent that the Debtors refuse to
accept the fact that their Property can, therefore, only be sold by way of a bulk sale, the Debtors'
plan prospects are illusory.

14.     Thus, the Debtors' only feasible exit strategy appears to be a bulk sale of
the Units to a buyer who can gain New York Attorney General approval for future retail sales.

15.     Incidentally, the New York Attorney General is not the Debtors' only
obstacle to retail sales of the Units.  As a result of the Debtors' principals' misconduct, the value
of the units owned by homeowners in the building is depressed because the condominium
finances are in such turmoil that those units cannot be financed with conventional financing.  The
Condominium Association has informed the Mortgagees that it also opposes any further
involvement by the Debtors' principals with the Units or the building.

4

16.    The Debtors nonetheless filed this case to avoid the Mortgagee's bulk sheriff's sale of the Units and foreclosure actions.  But the Debtors have articulated no alternative to a bulk sale.

17.    Accordingly, the Mortgagees believe that the ultimate solution to the Debtors' problems is either stay relief to permit a sale under New York law and/or a liquidating plan in the Bankruptcy Court.

18.    In the meantime, under a stipulation with the Debtor, the Mortgagees collect rents from the Debtors' tenants and use such proceeds to pay (a) the ordinary and necessary post-petition costs and expenses incurred in the ordinary course of the operation and maintenance of the Units (the "Permitted Operating Expenses"), (b) the fees required to be paid to the United States Trustee on a quarterly basis and (c) debt service, to the extent funds are available.

19.    Unfortunately, despite subpoenas served by the undersigned, the Debtors have never accounted for the rental proceeds generated before the Mortgagees took possession. Neither Condominium charges, debt service nor real estate taxes were being paid, yet the Debtors had no money in the bank when they filed these cases.

## RELIEF REQUESTED HEREIN

20.     Pursuant to Section 362(d)(3) of the Bankruptcy Code, in single asset real

estate cases such as this case, relief from the automatic stay must be granted unless within 90

days of the Petition Date, the debtor has filed a reorganization plan that has a reasonable

possibility of being confirmed within a reasonable time, or the debtor has commenced monthly

interest payments to the lienholders.

21.     Each of the Debtor's cases are single asset real estate ("SARE") cases.  11

U.S.C. § 101(51B) defines a SARE as follows:

> real property constituting a single property or project, other than residential real
> property with fewer than 4 residential units, which generates substantially all of
> the gross income of a debtor who is not a family farmer and on which no
> substantial business is being conducted by a debtor other than the business of
> operating the real property and activities incidental thereto.

22.     Each of these three elements is present here, and, thus, the Debtor should

be deemed to be a SARE.

23.     First, the Property is composed of numerous jointly owned, managed and

financed condominium units in the same building.  Although each Debtor owns particular units

(or tenants in common interests in the case of the commercial units) the units are are part of a

single project   This satisfies the first element of the SARE test. *E.g In re JJMM Int'l Corp.*, 467

B.R. 275, 278 (Bankr. E.D.N.Y. 2012) (holding that "the question is whether the debtor treats its

property as a single project or property by virtue of a common plan or purpose").  The units are

owned, managed and financed together in connection with the sponsorship of a condominium.

6

Second, there can be no dispute that the Property generates all of the Debtor's income.  Third the Debtor has no business apart from the Property.

24.    Thus, all three elements of the SARE test are satisfied.

25.    In this case, the 90 SARE deadline under section 362(d)(3) expired on August 6, 2013 and the Debtor has failed to satisfy the requirements of section 362(d)(3).

26.    Accordingly, Movants respectfully submit that they are entitled to relief from the automatic stay.  Indeed, in enacting section 362(d)(3), the legislative history indicates that the purpose of this section is to shorten the time single asset real estate cases remain in bankruptcy when there is little chance of a reorganization.  *S. Rep. No. 168*, 103d Cong., 1st Sess. (1993), *In re 652 West 160th LLC*, 330 B.R. 455 (Bankr. S.D.N.Y. 2005).

27.    Thus, as stated by *Collier on Bankruptcy,* "it appears that the legislative intention was to terminate the stay when the debtor neither proposes a viable plan nor makes payments to the secured party."  3 *Collier on Bankruptcy* para. 362.07[5][b] (16th Ed. Matthew Bender, 2012); *accord, NationsBank, N.A. v. LDN Corp.* (In re LDN Corp.), 191 B.R. 320, 326 (Bankr.E.D.Va.1996); *In re Heather Apts. Ltd. P'ship*, 366 B.R. 45, 50 (Bankr.D.Minn.2007).

28.    Alternatively, section 362(d)(1) of the Bankruptcy Code provides for a lifting of the automatic stay for "cause," including lack of adequate protection, and section 362(d)(2) of the Bankruptcy Code provides for a lifting of the automatic stay where the Debtor has no equity in the Property and the Property is not necessary for an effective reorganization in prospect.

29.     In this case, "cause" also exists under section 362(d)(1) of the Code because the Debtor has neglected its obligations under the Bankruptcy Code, including its obligation to file complete schedules.  In addition, the Debtor has disregarded the Mortgagees' subpoenas.

30.     Furthermore, the Units generate insufficient cash flow to cover post-petition interest and real estate taxes, and by the Debtor's own admission, the Debtor lacks equity in the Units.  Accordingly, the Mortgagees are not adequately protected.

31.     Similarly, under section 362(d)(2) of the Bankruptcy Code the liens against the Property exceed the value of the Property.

32.     And for the reasons stated above, the Debtors have no prospects for a successful reorganization:  Again, there are only three creditors in this case.  The Mortgagees and the Condominium Association.  The Mortgagees want to sever their relationship with the Debtors due to the Debtors' intransigence and litigiousness.  Upon information and belief the Condominium Association wants to sever its relationship with the Debtors because the Debtors not only do not pay maintenance, they have undermined the investments that the residential unit owners made in their homes, which is some cases represents their life savings – all the while the Debtors' and their principals occupy the building basement as rent free squatters.

33.     Against this background, the Debtors' only plan option would appear to be payment in full to the Mortgagees and Condominium Association on confirmation.  In that regard, the Debtors and the Bay Condo co-debtor have been touting an impending refinance.  Predictably, given the Debtors' status with the Attorney General's office, the financing has not

8

materialized.  In short, the Debtor's prospects for reorganization are remote at best, and certainly

not "in prospect."

34.    Based upon the foregoing, Movants respectfully submits that cause exists

to vacate the automatic stay under any of sections 362(d)(1), (2) or (3) of the Bankruptcy Code.

## CONCLUSION

WHEREFORE, the Mortgagees respectfully request that the Court grant the relief

sought herein, and that the Court grant such other relief as may be just and proper.

Dated: New York, New York
        August 14, 2013

**BACKENROTH FRANKEL & KRINSKY, LLP**
Attorneys for the Mortgagees


By:    s/Mark A. Frankel
       489 Fifth Avenue
       New York, New York 10017
       (212) 593-1100

9

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------x

In re                                                    Chapter 11

      11 East 36 LLC et al.                       Case no.  13-11506-7

                Debtor.

---------------------------------------------------------x

## ORDER LIFTING AUTOMATIC STAY

      Upon the Application of 11 East 36 Note Buyer LLC  and Griffin V LLC (the

"Mortgagees") for an order determining the each of  11 East 36th LLC and Morgan Lofts LLC

(the "Debtors") Chapter 11 cases is a single asset real estate case, and lifting the automatic stay

to permit the Mortgagees to pursue their remedies under New York law with respect to those

certain at certain residential condominium units known as units701, 801, 803, 804, 903, 904,

1003, 1004, 1103, 1104, 201, 202, 203, 204, 205, 206, 306, 406, 606, 1206, CSI-CS35  and the

2.8% interest in the commercial units 101 and 102 and units 1001, 1006, 1101, 1203, 1204

(collectively the "Property") at 11 East 36th Street, New York, New York, and upon the hearing

held before this Court on September 17, 2013 (the "Hearing"), and upon the entire record of this

case, and after due deliberation and sufficient cause appearing therefor, it is

      ORDERED, that each of the Debtor's cases is a single asset real estate case as

defined by the Bankruptcy Code, and it is further

ORDERED, that the automatic stay under 11 U.S.C. § 362 be, and it hereby is,

vacated to permit each of the Mortgagees to exercise all rights available to it under applicable

law with respect to each of the Debtor's interests in the Property.

Dated: New York, New York
          September       , 2013


_____
UNITED STATES BANKRUPTCY JUDGE

Exhibit A

# AMOUNT DUE ON 11 EAST 36 NOTE BUYER NOTE

## DEFAULT

| | | | | |
|---|---|---|---|---|
| Principal Amount | $ | 9,909,879.79 | | |
| Beginning Date | | 03/01/09 | | |
| Acceleration Date | | 06/16/09 | | |
| Interest Rate | | 6.375% | | |
| Days | | 107 | | |
| Per Diem Interest | $ | 1,754.87 | | |
| Interest Due | | | $ | 187,771.58 |
| Interest Paid Rate | | 5.00% | | |
| Less: Interest Paid | | | $ | (147,271.82) |
| **Total Interest Due** | | | **$** | **40,499.75** |

## ACCELERATION

| | | | | |
|---|---|---|---|---|
| Modification Date | | 10/13/09 | | |
| Acceleration Interest Rate | | 6.375% | | |
| Days | | 119 | | |
| Per Diem Interest | $ | 1,754.87 | | |
| Interest Due | | | $ | 208,830.07 |
| Interest Paid Rate | | 5.00% | | |
| Less: Interest Paid | | | $ | (163,788.29) |
| **Total Interest Due** | | | **$** | **45,041.78** |

## MODIFICATION

| | | | | |
|---|---|---|---|---|
| Modification Principal Amoun | $ | 9,836,240.19 | | |
| Interest Rate | | 6.375% | | |
| End Date | | 12/22/11 | | |
| Days | | 800 | | |
| Per Diem Interest | $ | 1,741.83 | | |
| Total Interest Due | | | $ | 1,393,467.36 |
| Interest Paid Through | | 11/30/11 | | |
| Interest Paid Rate | | 5.00% | | |
| Less: Interest Paid | | | $ | (1,062,860.40) |
| **Total Interest** | | | **$** | **330,606.96** |

## ACCELERATION THROUGH TODAY

| | | | | |
|---|---|---|---|---|
| Ending Date | | 09/01/13 | | |
| Principal Amount | | 9,836,240 | | |
| Acceleration Interest Rate | | 24.0% | | |
| Days | | 619 | | |
| Per Diem Interest | $ | 6,557.49 | | |
| Interest Due (including on shortfall | | | $ | 4,059,088.45 |
| **Total Interest** | | | **$** | **4,059,088.45** |

| | | |
|---|---|---|
| **Total Amount Due on Note** | | **14,311,477.14** |

## 11 EAST 36 NOTE BUYER

| | | | |
|---|---|---|---|
| **Plus: Prepayment Fee (Due on Acceleration)** | 2% | $ | 196,724.80 |
| **Plus: Protective Advances** | | $ | 684,548.63 |
| **Plus: Interest on Protective Advances** | | $ | 117,224.95 |
| **Less: Rents Received** | | $ | (795,808.43) |
| **Total Note Payoff Amount** | | | **14,514,167.08** |

## AMOUNT DUE ON GRIFFON V JUDGEMENT

| JUDGEMENT | | | |
|---|---|---|---|
| Judgement Amount | $ 2,899,340.95 | | |
| Beginning Date | 07/11/12 | | |
| End Date | 09/01/13 | | |
| Interest Rate | 9% | | |
| Days | 417 | | |
| Per Diem Interest | $ 724.84 | | |
| Interest Due | | $ | 302,256.29 |
| **Total Interest Due** | | **$** | **302,256.29** |
| **GRIFFON V** | | | |
| **Judgment Amount** | | $ | 2,899,340.95 |
| **Plus: Interest on Judgement** | | $ | 302,256.29 |
| **Plus: Protective Advances** | | $ | 344,226.87 |
| **Plus: Interest on Protective Advances** | | $ | 60,922.86 |
| **Less: Rents Received** | | $ | (402,395.40) |
| **Total Judgement Payoff Amount** | | **$** | **3,204,351.57** |

## INCOME/EXPENSES FOR 11 EAST 36 NOTE BUYER

| 11 East 36th Note Buyer | | |
|---|---|---|
| **Rents Collected** | | |
| May | $ | 47,792.93 |
| June | $ | 56,445.05 |
| July | $ | 59,587.96 |
| August | $ | 57,892.13 |
| September | $ | 56,592.13 |
| October | $ | 54,458.50 |
| November | $ | 64,592.13 |
| December | $ | 50,766.80 |
| Jan '13 | $ | 49,193.00 |
| Feb '13 | $ | 57,393.00 |
| Mar '13 | $ | 52,361.00 |
| Apr '13 | $ | 49,193.00 |
| May '13 | $ | 54,001.20 |
| June '13 | $ | 31,538.40 |
| July '13 | $ | 54,001.20 |
| Aug '13 | $ | - |
| **Total** | | **$ 795,808.43** |

| 11 East 36th Note Buyer | Through | 8/13/2013 | | | |
|---|---|---|---|---|---|
| **Advances** | **Date** | **Amount** | | **Interest** | |
| Control Agreement Fee | 8/14/2012 | $ 1,000.00 | $ | 255.33 | |
| Supplies | 10/9/2012 | $ 99.61 | $ | 21.71 | |
| Condo Maintenance Fee | 10/2/2012 | $ 25,000.00 | $ | 5,566.67 | |
| Condo Maintenance Fee | 12/1/2012 | $ 17,682.76 | $ | 3,230.05 | |
| Condo Maintenance Fee | 1/1/2013 | $ 17,682.76 | $ | 2,864.61 | |
| Condo Maintenance Fee | 2/1/2013 | $ 17,682.76 | $ | 2,499.16 | |
| Condo Maintenance Fee | 3/1/2013 | $ 17,682.76 | $ | 2,169.09 | |
| Condo Maintenance Fee | 4/1/2013 | $ 9,062.26 | $ | 924.35 | |
| Condo Maintenance Fee | 5/1/2013 | $ 9,062.26 | $ | 743.11 | |
| Condo Maintenance Fee | 6/1/2013 | $ 9,062.26 | $ | 555.82 | |
| Condo Maintenance Fee | 7/1/2013 | $ 9,062.26 | $ | 374.57 | |
| Condo Maintenance Fee | 8/1/2013 | $ 9,062.26 | $ | 187.29 | |
| Management Fee | 5/31/2012 | $ 1,792.24 | $ | 547.23 | Adjusted to 3.75% |
| Management Fee | 6/30/2012 | $ 2,116.69 | $ | 603.96 | |
| Management Fee | 7/31/2012 | $ 2,234.55 | $ | 591.41 | |
| Management Fee | 8/31/2012 | $ 2,170.95 | $ | 529.71 | |
| Management Fee | 9/30/2012 | $ 2,122.21 | $ | 475.37 | |
| Management Fee | 10/31/2012 | $ 2,037.18 | $ | 414.23 | |
| Management Fee | 11/30/2012 | $ 2,422.21 | $ | 444.07 | |
| Management Fee | 12/31/2012 | $ 1,903.76 | $ | 309.68 | |
| Management Fee | 1/31/2013 | $ 1,844.74 | $ | 261.95 | |
| Management Fee | 2/28/2013 | $ 2,152.24 | $ | 265.44 | |
| Management Fee | 3/31/2013 | $ 1,963.54 | $ | 201.59 | |
| Management Fee | 4/30/2013 | $ 1,844.74 | $ | 152.50 | |
| Management Fee | 5/31/2013 | $ 2,025.05 | $ | 125.55 | |
| Management Fee | 6/30/2013 | $ 1,182.69 | $ | 49.67 | |
| Management Fee | 7/31/2013 | $ 2,025.05 | $ | 43.20 | |
| Legal Expense L&T | 3/12/2013 | $ 350.00 | $ | 40.37 | |
| Legal Expense L&T | 4/3/2013 | $ 1,500.00 | $ | 151.00 | |
| Legal Expense L&T | 4/11/2013 | $ 18,533.00 | $ | 1,766.81 | |
| Legal Expense L&T | 5/2/2012 | $ 8,000.00 | $ | 2,597.33 | |
| Legal Expense L&T | 5/3/2012 | $ 12,000.00 | $ | 3,888.00 | |
| Legal Expense-Other | 8/8/2012 | $ 27,578.95 | $ | 7,152.14 | |
| Legal Expense Other | 2/13/2013 | $ 7,500.00 | $ | 1,000.00 | |
| Legal Expense Other | 8/5/2013 | $ 12,030.00 | $ | 216.54 | |
| Inspection/Filing/Licensing | 5/17/2012 | $ 3,125.00 | $ | 983.33 | |
| Inspection/Filing/Licensing | 6/4/2013 | $ 462.50 | $ | 27.44 | |
| Real Estate Taxes | 9/20/2012 | $ 184,233.96 | $ | 42,496.63 | |
| Real Estate Taxes | 9/24/2012 | $ 18,058.39 | $ | 4,117.31 | |
| Real Estate Taxes | 1/4/2013 | $ 139,545.55 | $ | 22,327.29 | |
| Real Estate Taxes | 5/8/2013 | $ 56,267.80 | $ | 4,351.38 | |
| Real Estate Taxes | 7/1/2013 | $ 16,318.33 | $ | 674.49 | |
| Property Insurance | 3/13/2013 | $ 680.05 | $ | 77.98 | |
| Other Renting Expenses | 10/9/2012 | $ 133.63 | $ | 29.13 | |
| Other Renting Expenses | 1/16/2013 | $ 5,319.76 | $ | 808.60 | |
| Other Renting Expenses | 3/5/2013 | $ 931.95 | $ | 111.83 | |
| **Total** | | **$ 684,548.63** | **$** | **117,224.95** | **$ 801,773.57** |

# INCOME/EXPENSES FOR GRIFFON V

**Griffon V**

## Rents Collected

| | | |
|---|---|---|
| January | $ | 16,227.00 |
| February | $ | 16,227.00 |
| March | $ | 16,227.00 |
| April | $ | 21,612.00 |
| May | $ | 20,177.00 |
| June | $ | 20,222.00 |
| July | $ | 20,222.00 |
| August | $ | 58,756.00 |
| September | $ | 19,777.00 |
| October | $ | 18,889.00 |
| November | $ | 20,052.00 |
| December | $ | 12,475.60 |
| Jan '13 | $ | 20,177.00 |
| Feb '13 | $ | 20,217.00 |
| Mar '13 | $ | 24,217.00 |
| Apr '13 | $ | 20,222.00 |
| May '13 | $ | 20,222.00 |
| June '13 | $ | 16,788.20 |
| July '13 | $ | 19,688.60 |
| Aug '13 | $ | - |
| **Total** | **$** | **402,395.40** |

**Griffon V**    Through    8/13/2013

| Advances | | Amount | | Interest | |
|---|---|---|---|---|---|
| Other Renting Expenses | 1/11/2013 | $ | 3,751.39 | $ | 582.72 |
| Other Renting Expenses | 7/24/2013 | $ | 1,998.00 | $ | 51.95 |
| Other Renting Expenses | 8/2/2013 | $ | 2,578.78 | $ | 51.58 |
| Condo Maintenance Fee | 1/11/2012 | $ | 2,370.64 | $ | 946.68 |
| Condo Maintenance Fee | 2/1/2012 | $ | 2,370.64 | $ | 913.49 |
| Condo Maintenance Fee | 3/1/2012 | $ | 2,370.64 | $ | 867.65 |
| Condo Maintenance Fee | 4/2/2012 | $ | 2,370.64 | $ | 817.08 |
| Condo Maintenance Fee | 5/2/2012 | $ | 2,370.64 | $ | 769.67 |
| Condo Maintenance Fee | 6/2/2012 | $ | 2,370.64 | $ | 720.67 |
| Condo Maintenance Fee | 7/2/2012 | $ | 2,370.64 | $ | 673.26 |
| Condo Maintenance Fee | 8/1/2012 | $ | 2,370.64 | $ | 625.85 |
| Condo Maintenance Fee | 9/1/2012 | $ | 2,370.64 | $ | 576.86 |
| Condo Maintenance Fee | 10/1/2012 | $ | 2,370.64 | $ | 529.44 |
| Condo Maintenance Fee | 11/1/2012 | $ | 2,370.64 | $ | 480.45 |
| Condo Maintenance Fee | 12/1/2012 | $ | 2,370.64 | $ | 433.04 |
| Condo Maintenance Fee | 1/1/2013 | $ | 2,370.64 | $ | 384.04 |
| Condo Maintenance Fee | 2/1/2013 | $ | 2,370.64 | $ | 335.05 |
| Condo Maintenance Fee | 3/1/2013 | $ | 2,370.64 | $ | 290.80 |
| Condo Maintenance Fee | 4/1/2013 | $ | 2,370.64 | $ | 241.81 |
| Condo Maintenance Fee | 5/1/2013 | $ | 2,370.64 | $ | 194.39 |
| Condo Maintenance Fee | 6/1/2013 | $ | 2,370.64 | $ | 145.40 |
| Condo Maintenance Fee | 7/1/2013 | $ | 2,370.64 | $ | 97.99 |
| Condo Maintenance Fee | 8/1/2013 | $ | 2,370.64 | $ | 48.99 |
| Management Fee | 9/30/2012 | $ | 6,409.24 | $ | 1,435.67 | Adjusted to 3.75% |
| Management Fee | 10/31/2012 | $ | 708.34 | $ | 144.03 |
| Management Fee | 11/30/2012 | $ | 751.95 | $ | 137.86 |
| Management Fee | 12/31/2012 | $ | 467.84 | $ | 76.10 |
| Management Fee | 1/31/2013 | $ | 756.64 | $ | 107.44 |
| Management Fee | 2/28/2013 | $ | 758.14 | $ | 93.50 |
| Management Fee | 3/31/2013 | $ | 908.14 | $ | 93.24 |
| Management Fee | 4/30/2013 | $ | 758.33 | $ | 62.69 |
| Management Fee | 5/31/2013 | $ | 758.33 | $ | 47.02 |
| Management Fee | 6/30/2013 | $ | 629.56 | $ | 26.44 |
| Management Fee | 7/31/2013 | $ | 738.32 | $ | 15.75 |
| Legal Expense - L&T | 1/30/2013 | $ | 44,978.01 | $ | 6,416.86 |
| Legal Expense - L&T | 4/3/2013 | $ | 1,500.00 | $ | 151.00 |
| Legal Expense - Other | 2/13/2012 | $ | 2,265.00 | $ | 854.66 |
| Legal Expense - Other | 3/5/2012 | $ | 9,920.00 | $ | 3,604.27 |
| Legal Expense - Other | 4/30/2012 | $ | 11,445.95 | $ | 3,731.38 |
| Legal Expense - Other | 8/28/2012 | $ | 10,139.50 | $ | 2,494.32 |
| Legal Expense - Other | 9/4/2012 | $ | 10,000.00 | $ | 2,413.33 |
| Legal Expense - Other | 9/5/2012 | $ | 20,000.00 | $ | 4,813.33 |
| Legal Expense - Other | 10/1/2012 | $ | 10,000.00 | $ | 2,233.33 |
| Legal Expense - Other | 11/13/2012 | $ | 10,000.00 | $ | 1,946.67 |
| Legal Expense - Other | 12/1/2012 | $ | 10,000.00 | $ | 1,826.67 |
| Legal Expense - Other | 1/1/2013 | $ | 10,000.00 | $ | 1,620.00 |
| Legal Expense - Other | 2/1/2013 | $ | 10,000.00 | $ | 1,413.33 |
| Legal Expense - Other | 2/6/2013 | $ | 8,628.49 | $ | 1,190.73 |
| Legal Expense - Other | 3/1/2013 | $ | 10,000.00 | $ | 1,226.67 |
| Legal Expense - Other | 4/1/2013 | $ | 10,000.00 | $ | 1,020.00 |
| Legal Expense - Other | 4/3/2013 | $ | 2,021.00 | $ | 203.45 |
| Legal Expense - Other | 5/1/2013 | $ | 10,000.00 | $ | 820.00 |
| Legal Expense - Other | 5/9/2013 | $ | 3,375.00 | $ | 258.75 |
| Legal Expense - Other | 6/1/2013 | $ | 10,000.00 | $ | 613.33 |
| Legal Expense - Other | 7/1/2013 | $ | 10,000.00 | $ | 413.33 |
| Legal Expense - Other | 7/23/2013 | $ | 1,446.68 | $ | 38.58 |
| Legal Expense - Other | 8/1/2013 | $ | 10,000.00 | $ | 206.67 |
| Legal Expense - Other | 8/5/2013 | $ | 4,937.50 | $ | 88.88 |
| Property Taxes | 2/24/2012 | $ | 10,160.42 | $ | 3,759.36 |
| Property Taxes | 6/8/2012 | $ | 10,791.53 | $ | 3,237.46 |
| Property Taxes | 8/17/2012 | $ | 10,723.99 | $ | 2,716.74 |
| Property Taxes | 8/21/2012 | $ | 11,394.49 | $ | 2,856.22 |
| Property Taxes | 8/30/2012 | $ | 3,848.97 | $ | 941.71 |
| Property Taxes | 11/30/2012 | $ | 13,943.14 | $ | 2,556.24 |
| Property Taxes | 2/22/2013 | $ | 14,008.75 | $ | 1,783.78 |
| Property Taxes | 6/7/2013 | $ | 15,118.88 | $ | 866.82 |
| Insurance | 1/9/2012 | $ | 3,132.00 | $ | 1,254.89 |
| Insurance | 12/20/2012 | $ | 3,212.00 | $ | 546.04 |
| **Total** | | **$** | **344,226.87** | **$** | **60,922.86** | **$ 405,149.72** |

## ASSIGNMENT OF MORTGAGE

First Central Savings Bank (the "Assignor"), with offices at 70 Glen Street, Glen Cove, New York 11542, the Mortgagee named in the Mortgage described below (or the successor, by merger or change of name, to the original Mortgagee named below), for and in consideration of the sum of TEN DOLLARS ($10.00) lawful money of the United States of America, paid to it by 11 East 36 Note Buyer LLC (the "Assignee"), 114 East 13th Street, Front 1, New York, New York 10003, the receipt of which is hereby acknowledged, has granted, bargained, sold, assigned, transferred and set over, and by these presents does grant, bargain, sell, assign, transfer and set over unto the Assignee and without recourse, representations or warranties of any kind whatsoever by the Assignor other than as specified in the Loan Sale Agreement dated February 27, 2012 between First Central Savings Bank and Delshah Capital LLC, all of the Assignor's right, title and interest in and to the mortgages listed on Schedule A annexed hereto and being secured by all that certain lot, tract, parcel or piece of ground, together with the improvements erected thereon, situate in New York County, New York, and more particularly described in said Mortgages; and also the Note or other obligations recited in the said Mortgages and thereby intended to be secured, and all monies, whether principal, interest or otherwise, past due, due and to become due thereon.

This assignment is not subject to the requirements of Section 275 of the Real Property Law because it is an assignment within the secondary mortgage market.

[REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK]

Document Number: 272552

**TO HAVE, HOLD, RECEIVE AND TAKE**, the same unto the Assignee, and to the successors, legal representatives and assigns of the Assignee forever.

**WITNESS** the due execution hereof as of this _24th_ day of April, 2012.

FIRST CENTRAL SAVINGS BANK

By: _Salvatore Di Martino_

Name: _Salvatore Di Martino_

Title: _Executive Vice President_

STATE OF NEW YORK    )
                     )    ss:
COUNTY OF NASSAU     )

On the _24th_ day of April in the year 2012 before me, the undersigned, personally appeared _Salvatore Di Martino_, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

_Donna M. DeLauro_

Notary Public

DONNA M. DeLAURO
Notary Public, State of New York
Registration #01DE6220604
Qualified in Nassau County
Commission Expires April 19, 2014

Document Number: 272552

## SCHEDULE A
## MORTGAGE SCHEDULE

1) Mortgagor:    11 East 36th , LLC and Carnegie Holdings LLC
   Mortgagee:    Grand Pacific Finance Corp.
   Amount:       $2,300,000.00
   Dated:        11/23/04
   Recorded:     7/25/05
   CRFN#:        2005000415069
   Tax Paid:     $63,250.00

2) Mortgagor:    11 East 36th , LLC and Carnegie Holdings LLC
   Mortgagee:    Grand Pacific Finance Corp.
   Amount:       $700,000.00
   Dated:        08/16/2006
   Recorded:     12/08/06
   CRFN#:        2006000675708
   Tax Paid:     $19,600.00
   Which mortgage by its terms consolidates mortgages 1 & 2 into a single first lien
   in the sum of $3,000,000.00.

   Which mortgages as consolidated were thereafter assigned by Grand Pacific
   Finance Corp. to Chinatrust Bank (U.S.A.) by assignment dated 3/28/07 and
   recorded with the New York City Register on 4/20/07 in CRFN# 2007000205934.

   Which mortgage as consolidated was thereafter amended and restated pursuant to
   an Amended and Restated Acquisition Mortgage agreement between 11 East 36th
   ,LLC and Carnegie Holdings LLC and Chinatrust Bank (U.S.A.) in the sum of
   $3,000,000.00 by agreement dated 03/26/07 and recorded with the New York City
   Register on 04/20/07 in CRFN#: 2007000205935.

   Which mortgages as amended and restated were thereafter assigned in the
   principal balance of $3,000,000.00 by Chinatrust Bank (U.S.A.) to First Central
   Savings Bank by assignment dated March 18, 2008 and recorded with the New
   York City Register on May 27, 2008 in CRFN# 2008000213142.

   **(Building Loan Mortgage)**
3) Mortgagor:    11 East 36th , LLC and Carnegie Holdings LLC
   Mortgagee:    Chinatrust Bank (U.S.A.)
   Amount:       $11,761,150.00
   Dated:        08/18/2006
   Recorded:     12/08/06
   CRFN#:        2006000675701
   Tax Paid:     $329,310.81

Document Number: 272552

Which mortgage in the reduced principal balance of $2,915,562.52 was thereafter assigned by Chinatrust Bank (U.S.A.) to First Central Savings Bank by assignment dated March 18, 2008 and recorded with the New York City Register on May 27, 2008 in CRFN# 2008000213141.

**(Project Loan Mortgage)**
4) Mortgagor:    11 East 36th, LLC and Carnegie Holdings LLC
   Mortgagee:   Chinatrust Bank (U.S.A.)
   Amount:       $4,500,000.00
   Dated:          03/28/2007
   Recorded:    04/20/07
   CRFN#:        2007000205936
   Tax Paid:      $126,000.00

Which mortgage was severed and split into two separate mortgage liens (i) Substitute Mortgage A in the sum of $3,620,000.00 and (ii) Substitute Mortgage B in the sum of $880,000.00 pursuant to a splitter agreement between 11 East 36th, LLC, Morgan Lofts, LLC and Bay Condos, LLC and Chinatrust Bank (U.S.A.) by agreement dated March 18, 2008 and recorded with the New York City Register on May 27, 2008 in CRFN# 2008000213143.

**(Substitute Mortgage A)**
5) Mortgagor:    11 East 36th, LLC, Morgan Lofts, LLC and Bay Condos, LLC
   Mortgagee:   Chinatrust Bank (U.S.A.)
   Amount:       $3,620,000.00
   Dated:          03/18/2008
   Recorded:    05/27/08
   CRFN#:        2008000213144

Which Substitute Mortgage A was thereafter assigned by Chinatrust Bank (U.S.A.) to First Central Savings Bank by assignment dated March 18, 2008 and recorded with the New York City Register on May 27, 2008 in CRFN# 2008000213146.

6) Mortgagor:    11 East 36th, LLC, Morgan Lofts, LLC and Bay Condos, LLC
   Mortgagee:   First Central Savings Bank
   Amount:       $464,437.48
   Dated:          03/20/2008
   Recorded:    05/27/08
   CRFN#:        2008000213147
   Tax Paid:      $13,003.20

7) Which mortgages 1-6 were thereafter consolidated to form a single first lien in the sum of $10,000,000.00 pursuant to a Modification, Extension and Consolidation Agreement between 11 East 36th, LLC, Morgan Lofts, LLC and Bay Condos,

LLC and First Central Savings Bank dated March 20, 2008 and recorded with the
New York City Register on May 27, 2008 in CRFN# 2008000213148.

Which mortgages as consolidated were thereafter modified pursuant to a Omnibus
First Amendment to Modification Agreement, Substitute Note and Other Loan
Documents between 11 East 36th , LLC, Morgan Lofts, LLC, Bay Condos, LLC,
Ben Bobker a/k/a Benny Boruch Bobker and Eli Bobker and First Central Savings
Bank dated October 13, 2009 and recorded with the New York City Register on
October 28, 2009 in CRFN# 2009000353140.

REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK

## ASSIGNMENT OF MORTGAGE

### FIRST CENTRAL SAVINGS BANK

### TO

### 11 EAST 36 NOTE BUYER LLC

| | |
|---|---|
| Address: | 11 East 36th Street, units 101,102,701,801, 803, 804, 903, 904, 1003, 1004, 1103, 1104, 201, 202, 203, 204, 205, 206, 306, 406, 606, 1206, and CS1-CS35, New York, New York 10016 |
| Section: | 3 |
| Block: | 866 |
| Lots: | 1202, 1203, 1204, 1205, 1206, 1207, 1208, 1209, 1215, 1220, 1232, 1233, 1239, 1241, 1242, 1247, 1248, 1253, 1254, 1259, 1260, 1268, 1271-1305 |
| County: | New York |
| State: | New York |

*RECORD AND RETURN BY MAIL TO:*
Michael Bush, Esq.
Einig & Bush, LLP
420 Lexington Avenue, Suite 2320
New York, New York 10170

Document Number: 272552

## OMNIBUS FIRST AMENDMENT TO
## MODIFICATION AGREEMENT, SUBSTITUTE NOTE
## AND OTHER LOAN DOCUMENTS

This Omnibus First Amendment to Modification Agreement, Substitute Note and other Loan Documents (the "Modification Agreement"), dated as of this [15] day of October, 2009 by and between **11 East 36th, LLC**, a New York limited liability company having its principal place of business located at 11 East 36th Street, Suite 1101, New York, New York, **Morgan Lofts, LLC**, a New York limited liability company having its principal place of business located at 11 East 36th Street, Suite 1101, New York, New York, and **Bay Condos, LLC**, a New York limited liability company having its principal place of business located at 11 East 36th Street, Suite 1101, New York, New York (collectively the "Borrower"), **Ben Bobker a/k/a Benny Boruch Bobker**, an individual residing at 28 Wedgewood Lane, Lawrence, New York 11559 and **Eli Bobker**, an individual residing at 1039 New McNeil Avenue, Lawrence, New York 11559, (hereinafter jointly and severally the "Guarantors") and **First Central Savings Bank** (the "Bank") a New York State chartered savings bank having its principal place of business at 70 Glen Street, Glen Cove, New York 11542.

## WITNESSETH

**WHEREAS**, the Bank is the owner of the prior mortgages listed on the annexed schedule of mortgages attached to this agreement as Schedule A; and

**WHEREAS**, on March 20, 2008 the Borrower borrowed the sum of Ten Million Dollars ($10,000,000.00) from the Bank; and

**WHEREAS**, the Borrower executed and delivered to the Bank a substitute note (the "Note") in the sum of Ten Million Dollars ($10,000,000.00) dated March 20, 2008; and

**WHEREAS**, as security for the obligations of the Borrower to the Bank under the Note, the Borrower executed, among other documents, a modification, extension and consolidation agreement in the sum of Ten Million Dollars ($10,000,000.00) (the "Agreement") dated March 20, 2008 and recorded on May 27, 2008 with the New York City Register bearing CRFN number 2008000213148 against the real property located at 11 East 36th Street, condominium units 101, 102, 701, 801, 803, 804, 903, 904, 1003, 1004, 1103, 1104, 201, 202, 203, 204, 205, 206, 306, 406, 606, 1206,and CS1-CS35, New York, New York 10016 (the "Premises") and more particularly described on Schedule B annexed hereto and made a part hereof; and

**WHEREAS**, on March 20, 2008, Ben Bobker a/k/a Benny Boruch Bobker executed and delivered to the Bank a limited guaranty (the "Original Guaranty") of the obligations of the Borrower to the Bank under the Note, Agreement and Loan Documents; and

249369

**WHEREAS**, the Borrower defaulted on its obligations to the Bank under the Note and Agreement;

**WHEREAS**, on July 8, 2009 the Bank instituted a foreclosure proceeding in New York Supreme Court, New York County entitled First Central Savings Bank v. 11 East 36th LLC, et al., Index No. 109209/2009 to foreclose the Premises;

**WHEREAS**, the Borrower and the Bank have agreed to settle the foreclosure action, to reinstate the loan and to modify the terms of the Note and Agreement as set forth herein; and

**WHEREAS**, as a condition to modifying the Note and Agreement the Bank required the Original Guaranty be replaced with a full personal guaranty of the obligations of the Borrower to the Bank under the Note, Agreement and this Modification Agreement by Ben Bobker a/k/a Benny Boruch Bobker and Eli Bobker;

**WHEREAS**, Ben Bobker  a/k/a Benny Boruch Bobker and Eli Bobker have agreed to execute and deliver to the Bank a full personal guaranty of the obligations of the Borrower to the Bank under this Modification Agreement, the Note and Agreement.

**NOW, THEREFORE**, in consideration of ten ($10.00) dollars paid by the Borrower to the Bank and the mutual covenants and conditions herein contained and other good and valuable consideration paid by the parties to each other, receipt of which is hereby acknowledged, the Bank and Borrower agree as follows:

1. The Note is hereby modified to provide that commencing on September 1, 2009 through February 29, 2012 the Borrower shall make monthly installment payments of interest only at the rate of five (5.00%) percent per annum in addition to one twelfth (1/12th) of the annual real estate taxes for the Premises which are being escrowed by the Bank for future payment.  As of November 1, 2009 the monthly escrow payment due to the bank for real estate taxes shall be $23,627.16 until changed by the Bank in connection with its future analysis of the escrow account.

Commencing on March 1, 2012 through February 29, 2013 the Borrower shall make monthly installment payments to the Bank of principal and interest at the rate of six and five eights (6.625%) percent per annum in addition to one twelfth (1/12th) of the annual real estate taxes for the Premises which are being escrowed by the Bank for future payment.

Commencing on March 1, 2013 through February 28, 2015 the Borrower shall make monthly installment payments of principal and interest at the rate set forth under the Note however the floor recited in the Note shall be increased to six and seven eighths (6.875%) percent per annum in addition to one twelfth (1/12th) of the annual real estate taxes for the Premises which are being escrowed by the Bank for future payment.

2

Commencing on March 1, 2015 through April 1, 2018 the Borrower shall make monthly installment payments of principal and interest under the Note rate however the floor under the Note shall be increased to seven (7.00%) percent per annum in addition to one twelfth (1/12th) of the annual real estate taxes for the Premises which are being escrowed by the Bank for future payment.

.

2. The Note shall be amended to provide that in the event the Note is prepaid at any time in accordance with the terms and conditions of the Note, the Borrower shall pay a 1% prepayment penalty. Any prepayment made during the last six (6) months of the Note term shall not be subject to a prepayment penalty.

3. The Agreement is hereby modified to provide that the Borrower shall establish a lock box (the "Lock Box") and an operating account (the "Operating Account") with the Bank at its main branch located at 70 Glen Street, Glen Cove, New York 11542. Borrower shall immediately upon execution of this Modification Agreement notify in writing each tenant and will thereafter notify each successor tenant occupying space in the Premises to send their monthly rent checks directly to the Lock Box commencing on October 1, 2009. On the eleventh (11th) day of the each month during the Note term the Bank will sweep the Lock Box removing all checks therefrom. The Bank is hereby authorized and instructed by the Borrower to endorse the name of the Borrower on each rent check received in the Lock Box and to deposit same into a clearing account established by the Bank. The Bank is hereby authorized and directed to deduct from the clearing account each month an amount sufficient to pay the Borrower's current monthly payment in accordance with the terms and conditions of this Modification Agreement and to pay one twelfth (1/12th ) of the annual real estate taxes for the Premises. Any surplus funds in the clearing account shall be deposited by the Bank into the Borrower's Operating Account. Borrower may thereafter utilize the funds deposited into the Operating Account for any use. In the event that the funds forwarded to the Lock Box are at any time insufficient to pay the Borrower's then current monthly mortgage payment and one twelfth (1/12th) of the annual real estate taxes the Bank will give the Borrower notice on the eleventh (11th) day of that particular month of said shortfall and the Borrower shall have until the close of business on the fifteenth (15th) days of that month to deposit with the Bank a sum sufficient to make up the shortfall. Failure to deposit with the Bank by the close of business on the fifteenth day of any given month sums sufficient to make up the shortfall shall constitute a default under this Modification Agreement, the Note and the Agreement. In the event that the fifteenth (15th) day of the month occurs on a non-business day the Borrower shall have until the next business day to deposit with the Bank a sum sufficient to make up the shortfall. The Lock Box shall remain in place until the Note is paid in full. In the event that the Borrower receives any rent checks directly from any tenant after the date hereof the Borrower shall immediately forward the check or checks to the Lock Box. It is hereby understood and agreed that all fees and charges associated with the establishment of the Lock Box, clearing account and the Operating Account shall be the sole responsibility of the Borrower.

4. Borrower hereby agrees that it shall indemnify and hold the Bank harmless from and against any and all loss, claims, damages, costs, charges, attorneys fees, payments, expenses and liabilities whatsoever which the Bank may sustain or incur at any time by reason of or in consequence of the Bank's having administered the Lock Box and handling the checks received therein, provided, however the Bank shall not be so indemnified for its own negligence.

5. The Borrower represents and warrants to the Bank that the principal sum of $9,836,240.19 plus interest thereon is currently outstanding under the Note, and that there are no offsets or defenses to the Note as hereby modified and secured by the Agreement.

6. On October 21, 2008 Century Verticle Systems d/b/a Pro Elevator filed a mechanics lien in the sum of $3,306.49 against 11 East 36th LLC and the Premises (the "Mechanics Lien"). The Borrower has deposited the sum of $3,306.49 with the Bank (the "Mechanics Lien Escrow") which sum shall be retained by the Bank until such time as the Borrower shall provide to the Bank either (i) a bond and certificate of discharge of the Mechanics Lien duly filed with the New Your County Clerk or (ii) a satisfaction of the Mechanics Lien and proof of its filing with the New York County Clerk. Upon receipt of either proof that the Mechanics Lien has been bonded and discharged or the delivery and recording of a proper satisfaction of the Mechanics Lien the Bank will refund the Mechanics Lien Escrow to the Borrower. Borrower acknowledges and agrees that in the event of a default under the terms and conditions of this Modification Agreement or the Note and Agreement the Bank may use the Mechanics Lien Escrow funds to payoff the Mechanics Lien and obtain a satisfaction. Borrower hereby waives any rights it may have in and to the Mechanics Lien Escrow in the event of a default under the terms of this Modification Agreement or the Note and Agreement.

7. On February 26, 2009 a judgment was docketed against the Premises by the New York State Workers Compensation Board in the sum of $51,000.00 (the "Workers Comp Judgment"). The Borrower has obtained a reduction in the amount of the Workers Comp judgment to Eight Thousand Dollars ($8,000.00). Borrower has deposited the sum of Eight Thousand Dollars ($8,000.00) into escrow with the Bank (the "Workers Comp Escrow") which sum shall be retained by the Bank until such time as the Borrower delivers a satisfaction of the Workers Comp Judgment to the Bank along with proof of its filing with the New York County Clerk. Upon receipt of a satisfaction of the Workers Comp Judgment and confirmation that same has been duly filed with the New York City Register the Bank shall release the Judgment Escrow to the Borrower. Borrower acknowledges and agrees that in the event of a default under the terms and conditions of either this Modification Agreement or the Note and Agreement the Borrower hereby waives any and all rights in and to the Workers Comp Escrow and the Bank shall have the right to use the Judgment Escrow to Satisfy the Workers Comp Judgment.

8. Section 8(o) of the Agreement is hereby amended to include the following: Notwithstanding the foregoing, in the event a judgment or lien (other than a mechanics lien) is filed against the Premises due solely to the actions or inactions of an entity or individual that is unrelated to the Borrower or Guarantor and the Borrower is dependent

4

solely upon the actions of such unrelated individual or entity to cure, satisfy, bond or discharge the judgment or lien the Borrower will have ninety (90) days from the date upon which the Borrower has constructive notice of such judgment or lien to cure or discharge same. If the Borrower fails to cure the default within the allotted cure period the Bank shall be entitled to recover ninety (90%) percent of the total amount of scheduled interest due and owing under the terms of the Note and the Agreement at the time of the default, in addition to all outstanding principal, interest and other amounts owed by the Borrower to the Bank under this Modification Agreement.

9. Borrower represents and warrants that except for the common charges claimed to have been unpaid by the Board of Managers of the Morgan Lofts Condominium in the action entitled Board of Managers of the Morgan Lofts Condominium v. 11 East 36th, LLC pending in the Supreme Court of the State of New York, New York County under index number 110528/09 the Borrower has paid all common charges due to the Board of Managers for all units comprising the Premises to and through the date hereof.

10. Borrower represents and warrants that there is currently in place a temporary certificate of occupancy for the Premises which is set to expire on September 30, 2009. Borrower represents and warrants that it has applied for a new temporary certificate of occupancy on September 20, 2009 from the New York City Department of Buildings. Borrower represents and warrants that it shall deliver to the Bank no later than October 9, 2009 a new temporary certificate of occupancy good for an additional three months. It shall constitute a default under the terms of this Agreement and the Note should the Borrower fail to deliver to the Bank a new temporary certificate of occupancy for the Premises on or before October 9, 2009.

11. Except and to the extent modified hereby, the Note and the Agreement shall remain in full force and effect, without modification or change.

12. Ben Bobker a/k/a Benny Boruch Bobker and Eli Bobker have this day executed and delivered to the Bank an unconditional full personal guaranty (the "Guaranty") of the obligations of the Borrower to the Bank under the Note, Agreement and this Modification Agreement.

13. Borrower and Guarantors hereby confirm, affirm and ratify the Note, Agreement and other loan documents, as amended hereby, and further hereby represent, warrant, covenant and agree that said loan documents shall continue to apply and shall remain in full force and effect until all sums due or to become due to the Bank thereunder, including, without limitation, the principal amounts outstanding under the loan documents, together with all accrued interest, penalties, costs, fees and late charges, if any, shall be indefeasibly paid and all of the other obligations of the Borrower and the Guarantors to the Bank under the loan documents have been satisfied in full. By executing this Amendment, Borrower and each of the Guarantors shall be deemed to repeat, re-utter, confirm and affirm each and every representation, warranty, covenant and agreement set forth and made in the loan documents, as amended hereby.

14. In the event of a default under the terms and conditions of this Modification Agreement the terms and conditions of this Modification Agreement shall cease to be applicable and the obligations of the Borrower to the Bank shall revert back to the original obligations as set forth in the Note and Agreement. In the event of a default hereunder the Bank shall have the right to immediately seek to have a receiver appointed to collect rent and profits for the Premises. The Borrower hereby irrevocably consents to and waives any right it may have to object the appointment of a receiver in the event of a default hereunder.

15. This Amendment may not be modified or terminated orally and shall be binding and inure to the benefit of the heirs, successors and assigns of the Borrower and the Bank.

16. The Borrowers each individually represent and warrant to the Bank that this Amendment has been duly authorized by all necessary limited liability company action of each individual borrower and is duly executed as the act and deed of each individual borrower and therefore is binding on the Borrower in accordance with its terms and conditions.

17. This Amendment shall be governed and construed in accordance with the laws of the State of New York (without regard to the conflicts of law principals). The Borrower and Guarantors hereby irrevocably agree that all actions, suits or proceedings arising out of, in connection with or relating to the Amendment, or the interpretation, performance or breach thereof, shall be litigated in the Supreme Court of the State of New York, County of New York.

**IN WITNESS WHEREOF,** the parties hereby have duly executed this Modification Agreement as of the day and year first written above.

**First Central Savings Bank**

By: _____
A/A. Rescigno
Sr. Vice President and
Chief Operating Officer

**11 East 36th, LLC, a New York limited liability company**

By: **By: Madison Condos, LLC, its Sole Member**

**By: Bluebell Assets, LLC, its managing member**

By: _____
 Ben Bobker a/k/a Benny Boruch Bobker,
**Sole Member**

**Morgan Lofts, LLC, a New York limited liability company**

**By: 11 East 36th, LLC, its Sole Member**

6

By: **Madison Condos, LLC, its Sole
Member**

By: **Bluebell Assets, LLC, its Managing
Member**

By: _____

**Ben Bobker a/k/a Benny Boruch Bobker,
Sole Member**

**Bay Condos, LLC, a New York limited
liability company**

By: **Hancock Park, LLC, its Manager**

By: _____

**Avi Bobker, Managing Member**

STATE OF NEW YORK        )
                         ) ss:
COUNTY OF NASSAU         )

   On the 15th day of October in the year 2009 before me, the undersigned,
personally appeared **A.A. Rescigno**, personally known to me or proved to me on the
basis of satisfactory evidence to be the individual whose name is subscribed to the within
instrument and acknowledged to me that he executed the same in his capacity, and that by
his signature on the instrument, the individual, or the person upon behalf of which the
individual acted, executed the instrument.

                                        _____
                                        Notary Public
                                        JOSEPH V. BROWN
                                        Notary Public, State of New York
                                        Registration #01BR6079293
                                        Qualified In Nassau County
                                        Commission Expires August 19, 2010

STATE OF NEW YORK        )
                         ) ss:
COUNTY OF NEW YORK       )

   On the 9th day of October in the year 2009 before me, the undersigned,
personally appeared **Ben Bobker a/k/a Benny Boruch Bobker and Avi Bobker**,
personally known to me or proved to me on the basis of satisfactory evidence to be the
individuals whose names are subscribed to the within instrument and acknowledged to
me that they executed the same in their capacities, and that by their signatures on the
instrument, the individuals, or the persons upon behalf of which the individuals acted,
executed the instrument.

                                        _____
                                        Notary Public
                                        ABIGAIL PATTERSON
                                        Notary Public, State of New York
                                        No. 02PA6195254
                                        Qualified in Kings County
                                        Commission Expires October 20, 2012

7

EXHIBIT A
Mortgage Schedule

1. Mortgage dated 11/23/2004, mahde by 11 East 36th, LLC and Carnegie Holdings LLC in favor of Chinatrust Bank (U.S.A.), in the sum of $858,933, which Mortgage 1, by its terms, is consolidated with prior mortgages taken by assignment to form a single lien in the principal sum of $14,700,000, and recorded 7/25/2005 with said City Register's Office under CRFN 2005000 415067; **(MORTGAGE TAX $23,619.75 PAID)**

   - which Mortgage 1 was modified and extended by agreement, dated 8/18/2006, and recorded 12/8/2006 with said City Register's Office under CRFN 2006000675700;

2. Building Loan Mortgage dated 7/14/2005, made by 11 East 36th, LLC and Carnegie Holdings LLC in favor of Chinatrust Bank (U.S.A.) and Grand Pacific Finance Corp., in the sum of $10,000,000, and recorded 1/23/2006 with said City Register's Office under CRFN 2006000038681; **(MORTGAGE TAX $280,000 PAID)**

   - which Mortgage 2, as pertaining to the mortgagee interest of Grand Pacific Finance Corp., was assigned to Chinatrust Bank (U.S.A.) by assignment, dated 8/18/2006, and recorded 12/8/2006 with said City Register's Office under CRFN 2006000675705;

   - which Mortgage 2, was modified and extended by agreement, dated 8/18/2006, and recorded 12/8/2006 with said City Register's Office under CRFN 2006000675706;

3. Supplemental Building Loan Mortgage dated 8/18/2006, made by 11 East 36th, LLC and Carnegie Holdings LLC in favor of Chinatrust Bank (U.S.A.), in the sum of $11,761,150, and recorded 12/8/2006 with said City Register's Office under CRFN 2006000675701; **(MORTGAGE TAX $329,310.81 PAID)**

4. Project Loan Mortgage dated 8/18/2006, made by 11 East 36th, LLC and Carnegie Holdings LLC in favor of Chinatrust Bank (U.S.A.), in the sum of $1,538,850, and recorded 12/8/2006 with said City Register's Office under CRFN 2006000675702; **(MORTGAGE TAX $43,086.40 PAID)**

5. Mortgage dated 11/23/04, made by 11 East 36th, LLC and Carnegie Holdings LLC in favor of Grand Pacific Finance Corp., in the sum of $2,300,000, and recorded 7/25/2005 with said City Register's Office under CRFN 2005000415069; **(MORTGAGE TAX $63,250 PAID)**

6. Mortgage dated 8/18/06, made by 11 East 36th, LLC and Carnegie Holdings LLC in favor of Grand Pacific Finance Corp., in the sum of $700,000, which Mortgage 6, by its terms, is consolidated with Mortgage 5 to form a single lien in the principal sum of $3,000,000, and recorded 12/8/2006 with said City Register's Office under CRFN 2006000675708; **(MORTGAGE TAX $19,600 PAID)**

   - which Mortgages 5 and 6 were assigned to Chinatrust Bank (U.S.A.) by assignment, dated 3/30/07, and recorded on 4/20/2007 with said City Register's Office under CRFN 2007000205934; and

   - which Mortgages 5 and 6 as assigned, were amended and restated by agreement dated 3/30/2007, and recorded 4/20/2007 with said City Register's Office under CRFN 2007000205935; and

7. Supplemental Project Loan Mortgage dated 3/30/2007, made by 11 East 36th, LLC and Carnegie Holdings LLC in favor of Chinatrust Bank (U.S.A.), in the sum of $4,500,000, and recorded 4/20/2007 with said City Register's Office under CRFN 2007000205936. **(MORTGAGE TAX $126,000 PAID)**

## MORTGAGE SCHEDULE

1.  Mortgage
    Mortgagor:      11 East 36th, LLC and Carnegie Holdings LLC
    Mortgagee:      Grand Pacific Finance Corp.
    Amount:         $2,300,000.00
    Dated:          11/23/2004
    Recorded:       07/25/2005
    CRFN#:          2005000415069
    Tax Paid:       $63,250.00

    a.  Subordination and Inter creditor Agreement
        Mortgagor:      Grand Pacific Finance Corp.
        Mortgagee:      Chinatrust Bank (U.S.A.)
        Dated:          08/18/2006
        Recorded:       12/08/2006
        CRFN#:          2006000675707

2.  Mortgage and Consolidation Agreement
    Mortgagor:      11 East 36th, LLC and Carnegie Holdings LLC
    Mortgagee:      Grand Pacific Corp.
    Amount:         $700,000.00
    Dated:          08/16/2006
    Recorded:       12/08/2006
    CRFN#:          2006000675708
    Tax Paid:       $19,600.00
    This Mortgage by its terms consolidates Mortgages 1 and 2 to form a single lien of $3,000,000.00

    a.  Assignment of Mortgage
        Assignor:       Grand Pacific Finance Corp.
        Assignee:       Chinatrust Bank (U.S.A.)
        Dated:          03/28/2007
        Recorded:       04/20/2007
        CRFN#:          2007000205934

    b.  Amended and Restated Mortgage
        Mortgagor:      11 East 36, LLC and Carnegie Holdings LLC
        Mortgagee:      Chinatrust Bank (U.S.A.)
        Amount:         $3,000,000.00
        Dated:          03/28/2007
        Recorded:       04/20/2007
        CRFN#:          2007000205935

9

   c.     Assignment of Mortgage
            Assignor:    Chinatrust Bank (U.S.A.)
            Assignee:    First Central Savings Bank
            Dated:       03/18/2008
            Recorded:   05/27/2008
            CRFN#:     2008000213142

3.    Building Loan Mortgage
      Mortgagor:   11 East 36th, LLC and Carnegie Holdings LLC
      Mortgagee:   Chinatrust Bank (U.S.A.)
      Amount:      $11,761,150.00
      Dated:        08/18/2006
      Recorded:    12/08/2006
      CRFN#:      2006000675701
      Tax Paid:     $329,310.81

   a.     Assignment of Mortgage
            Assignor:    Chinatrust Bank (U.S.A.)
            Assignee:    First Central Savings Bank
            Dated:       03/18/2008
            Recorded:   05/27/2008
            CRFN#:     2008000213141

4.    Project Loan Mortgage
      Mortgagor:   11 East 36th LLC and Carnegie Holdings LLC
      Mortgagee:   Chinatrust Bank (U.S.A)
      Amount:      $4,500,000.00
      Dated:        03/28/2007
      Recorded:    04/20/2007
      CRFN#:      2007000205936
      Tax Paid:     $126,000.00
      Covers premises under examination and more.

   a.     Splitter Agreement
            Mortgagor:    11 East 36th, LLC, Morgan Lofts, LLC and Bay Condos, LLC
            Mortgagee:    Chinatrust Bank (U.S.A.)
            Dated:       03/18/2008
            Recorded:   05/27/2008
            CRFN#:     2008000213143
        Splits and severs lien into two separate liens:
        Substitute Mortgage A in the amount of $3,620,000.00
        Substitute Mortgage B in the amount of $880,000.00 to cover premises not under examination

10

5.   Substitute Mortgage A
     Mortgagor:   11 East 36th, LLC Morgan Lofts, LLC and Bay Condos, LLC
     Mortgagee:   Chinatrust Bank (U.S.A.)
     Amount:      $3,620,000.00
     Dated:       03/18/2008
     Recorded:    05/27/2008
     CRFN#:       2008000213144

     a.   Assignment of Mortgage
          Assignor:    Chinatrust Bank (U.S.A.)
          Assignee:    First Central Savings Bank
          Dated:       03/18/2008
          Recorded:    05/27/2008
          CRFN#:       2008000213146

6.   Mortgage
     Mortgagor:   11 East 36th, LLC, Morgan Lofts, LLC and Bay Condos, LLC
     Mortgagee:   First Central Savings Bank
     Amount:      $464,437.48
     Dated:       03/20/2008
     Recorded:    05/27/2008
     CRFN#:       2008000213147
     Tax Paid:    $13,003.20

     a.   Modification, Extension and Consolidation Agreement
          Mortgagor:   11 East 36th, LLC, Morgan Lofts, LLC and Bay Condos, LLC
          Mortgagee:   First Central Savings Bank
          Dated:       03/20/2008
          Recorded:    05/27/2008
          CRFN#:       2008000213148
          Consolidates Mortgages 1-6 to form a single lien of $10,000,000.00

     b.   Assignment of Leases and Rents
          Assignor:      11 East 36th, LLC, Morgan Lofts, LLC and Bay Condos, LLC
          Assignee: First Central Savings Bank
          Dated:       03/20/2008
          Recorded:    05/27/2008
          CRFN#:       2008000213149

# Old Republic National Title Insurance Company

Title No.: MTANY-054490

## SCHEDULE B CONTINUED

### LEGAL DESCRIPTION

The Condominium Units known as Units No. (See Schedule of Units attached) (the Units) in the premises known as The Morgan Lofts Condominium, said Unit being designated and described as Unit No. (See Schedule of Units attached) in the Declaration made by 11 East 36th, LLC, pursuant to Article 9-B of the Real Property Law of The State of New York (the Condominium Act) establishing a plan for condominium ownership of said premises, which Declaration was recorded in the Office of the Register of the County of New York on 11/22/2006 in CRFN 2006000650189, as amended by First Amendment to Declaration in CRFN 2008000335962 and said units being also designated as Tax Lots Nos. (See Schedule of Units attached) in Block 866 on the tax map of The City of New York for the Borough of New York in the Real Property Assessment Department of The City of New York and on the Floor Plans of the building (the Building) in which the Unit is contained, and filed with the Real Property Assessment Department of the City of New York on 11/22/2006, as Condominium Plan No. 1617 and also filed in the said Register's Office on 11/22/2006, as Map in CRFN 2006000650188.

Together with undivided interest in the common elements (See Schedule of Units attached);

The land on which said Building is located is bounded and described as follows:

ALL that certain plot, piece or parcel of land, situate, lying and being in the Borough of Manhattan, City, County and State of New York, bounded and described as follows:

BEGINNING at a point on the southerly side of East 37th Street, distant 202 feet easterly from the corner formed by the intersection of the southerly side of 37th Street and the easterly side of 5th Avenue;

RUNNING THENCE easterly along the southerly side of 37th Street, 24 feet;

THENCE southerly parallel with the easterly side of 5th Avenue and part of the distance through a party wall, 98 feet 9 inches to the center line of the block;

THENCE easterly along the center line of the block, 24 feet;

THENCE southerly parallel with the easterly side of 5th Avenue, 98 feet 9 inches to the northerly side of East 36th Street;

THENCE westerly along the northerly side of East 36th Street, 50 feet;

THENCE northerly parallel with the easterly side of 5th Avenue, 98 feet 9 inches to the center line of the block;

THENCE easterly along said center line of the block, 2 feet;

THENCE northerly again parallel with the easterly side of 5th Avenue, 98 feet 9 inches to the southerly side of 37th Street at the point or place of BEGINNING.

NOTE: Being District , Section 3, Block(s) 866, Lot(s) 1202, 1203, 1204, 1205, 1206, 1207, 1208, 1209, 1215, 1220, 1232, 1233, 1239, 1241, 1242, 1247, 1248, 1253, 1254, 1259, 1260, 1268, 1271-1305, Tax Map of the Borough of New York, County of New York.

NOTE: Lot and Block shown for informational purposes only.

Issued by:

**Madison Title Agency, LLC**
**1125 Ocean Avenue, Lakewood, NJ 08701**
Telephone: 212-808-9400 Fax: 212-808-9420

(054490.PFD/054490/114)

12

MTANY-054490
SCHEDULE OF UNITS

| Unit No. | Lot No. | % Interest in Common Elements |
|---|---|---|
| 101 | 1202 | 7.26% |
| 102 | 1203 | 1.91% |
| 201 | 1204 | 1.49% |
| 202 | 1205 | 1.20% |
| 203 | 1206 | 0.71% |
| 204 | 1207 | 1.01% |
| 205 | 1208 | 1.51% |
| 206 | 1209 | 1.60% |
| 306 | 1215 | 1.60% |
| 406 | 1220 | 1.60% |
| 606 | 1232 | 1.60% |
| 701 | 1233 | 1.43% |
| 801 | 1239 | 1.41% |
| 803 | 1241 | 0.73% |
| 804 | 1242 | 1.01% |
| 903 | 1247 | 0.77% |
| 904 | 1248 | 1.01% |
| 1003 | 1253 | 0.73% |
| 1004 | 1254 | 1.01% |
| 1103 | 1259 | 0.77% |
| 1104 | 1260 | 1.01% |
| 1206 | 1268 | 1.60% |
| CS1 | 1271 | 0.045% |
| CS2 | 1272 | 0.045% |
| CS3 | 1273 | 0.045% |
| CS4 | 1274 | 0.045% |
| CS5 | 1275 | 0.045% |
| CS6 | 1276 | 0.045% |
| CS7 | 1277 | 0.045% |
| CS8 | 1278 | 0.045% |
| CS9 | 1279 | 0.045% |
| CS10 | 1280 | 0.045% |
| CS11 | 1281 | 0.045% |
| CS12 | 1282 | 0.045% |
| CS13 | 1283 | 0.045% |
| CS14 | 1284 | 0.045% |
| CS15 | 1285 | 0.045% |
| CS16 | 1286 | 0.045% |
| CS17 | 1287 | 0.045% |
| CS18 | 1288 | 0.045% |
| CS19 | 1289 | 0.045% |
| CS20 | 1290 | 0.045% |
| CS21 | 1291 | 0.045% |

13

| | | |
|---|---|---|
| CS22 | 1292 | 0.045% |
| CS23 | 1293 | 0.045% |
| CS24 | 1294 | 0.045% |
| CS25 | 1295 | 0.045% |
| CS26 | 1296 | 0.045% |
| CS27 | 1297 | 0.045% |
| CS28 | 1298 | 0.045% |
| CS29 | 1299 | 0.045% |
| CS30 | 1300 | 0.045% |
| CS31 | 1301 | 0.045% |
| CS32 | 1302 | 0.045% |
| CS33 | 1303 | 0.045% |
| CS34 | 1304 | 0.045% |
| CS35 | 1305 | 0.045% |



14

# OMNIBUS FIRST AMENDMENT TO MODIFICATION AGREEMENT, SUBSTITUTE NOTE AND OTHER LOAN DOCUMENTS

## 11 EAST 36TH, LLC, MORGAN LOFTS, LLC
## BAY CONDOS, LLC

### TO

### FIRST CENTRAL SAVINGS BANK

**ADDRESS: 11 East 36th Street, units 101. 102, 701, 801, 803, 804, 903, 904, 1003, 1004, 1103, 1104, 201, 202, 203, 204, 205, 206, 306, 406, 606, 1206, and CS1-CS35, New York, New York 10016**
**SECTION: 3**
**BLOCK: 866**
**LOTS: 1202, 1203, 1204, 1205, 1206, 1207, 1208, 1209, 1215, 1220, 1232, 1233, 1239, 1241, 1242, 1247, 1248, 1253, 1254, 1259, 1260, 1268, 1271-1305**
**CITY: New York**
**STATE: New York**

*Record and Return by mail to:*
Donna M. Cusimano, Esq.
Todtman, Nachamie, Spizz & Johns, P.C.
425 Park Avenue, 5th Floor
New York, New York 10022
(212)754-9400

***THIS NOTE SUBSTITUTES AND REPLACES THOSE NOTES, BONDS AND OBLIGATIONS SET FORTH IN SCHEDULE A ANNEXED HERETO.***

### AMENDED AND RESTATED
### PROMISSORY NOTE
### (Line of Credit)

Amount: $2,200,000.00                                    Date: April 30, 2008

FOR VALUE RECEIVED, 11 EAST 36TH, LLC, a New York limited liability company with its principal offices at 11 East 36th Street, Suite 1101, New York, New York 10016 ("Maker"), promises to pay to the order of CHINATRUST BANK (U.S.A.) ("Bank"), a California banking corporation having an office at 366 Madison Avenue, New York, New York 10017, the aggregate principal sum of loans not exceeding TWO MILLION TWO HUNDRED THOUSAND AND 00/100 ($2,200,000.00) DOLLARS, as may be advanced and re-advanced by Bank to Maker from time to time ("Loan"), together with interest thereon computed from the date of each drawdown at the "Applicable Rate of Interest" (as hereinafter defined), pursuant to that certain Revolving Line of Credit Agreement of even date herewith between Maker and Bank ("Agreement"), the terms and provisions thereof are incorporated herein as if set forth hereto in its entirety. In the event of any conflict or inconsistency in the terms of this Note and the terms of the Agreement, the terms of the Agreement shall prevail.

The Loan shall be used for the purpose of general working capital to finance real estate investment and development by Maker. The unpaid principal balance and interest accrued of each drawdown shall be due and payable in accordance with the terms of the Agreement. In any event, the entire unpaid principal balance together with all accrued interest shall be due and payable on March 14, 2009 ("Maturity Date").

All payments shall be made at the office of Chinatrust Bank (U.S.A.), 366 Madison Avenue, New York, New York 10017, or at a different place if required by Bank provided, however, that any payment which would otherwise be payable on a day on which Bank is not open for the regular conduct of business shall be payable on the next day on which Bank is open for the regular conduct of business, such extension of time being included in the period for computation of interest.

This Note is secured by and issued together with, among other things, a mortgage lien on five (5) residential condominium units (collectively the "Mortgaged Property") located at 11 East 36th Street, New York, New York ("Mortgage"), a collateral assignment of leases and rents for the Mortgaged Property ("Assignment of Rents"), and the unlimited and conditional guaranties of Ben Baruch Bobker, Eli Mordecai Bobker, Madison Condos, LLC and Bluebell Assets, LLC (collectively, the "Guaranty"). The unpaid principal sum of this Note, and all interest accrued thereon may, at Bank's option, become immediately due and payable upon the happening of any Event of Default (as defined herein) or event by which, under the terms of this Note, the Agreement, the Guaranty, the Assignment of Rents, and/or the Mortgage, gives Bank the right to declare said principal balance and accrued interest immediately due and payable. Reference is made to the Agreement, the Guaranty, the Assignment of Rents, and the Mortgage for a further description of the rights and remedies of Bank, as holder of this Note.

1

Maker and Bank hereby further agree as follows:

1.    For the purposes of this Note, the following terms shall have the following meanings:

    (a)    "Applicable Rate of Interest" shall be, as long as no "Event of Default" (as defined below) shall have occurred and then be continuing, one-half percent (0.5%) per annum over of the prime rate as published from time to time in the Wall Street Journal, with a floor rate of six (6%) percent per annum for the entire term of this Note.

    (b)    "Dollars" or "$" shall mean dollars in lawful money of the United States of America.

    (c)    "Event of Default" shall have the meaning ascribed to it in the Agreement, the Guaranty, the Assignment of Rents, and/or the Mortgage.

    (d)    "Loan" shall mean the aggregate principal amount of $2,200,000.00 advanced by Bank to Maker or, where the context may require, the amount thereof then outstanding.

    (e)    "Default Rate" shall be, from and after the occurrence of any Event of Default and until the sooner to occur of the curing of such Event of Default (and all subsequent Events of Default occurring prior to such cure) or payment in full of the unpaid principal sum of this Note, any interest accrued thereon and any other amounts owed hereunder, under the Agreement and the Guaranty, seven percent (7%) per annum over the then interest rate as charged by Bank or its successor on this Note.

2.    Maker shall promptly and diligently perform its obligations under the Agreement, and Maker's failure or refusal to do so shall be deemed an Event of Default hereunder.

3.    If any payment due hereunder is more than ten (10) days late, Maker shall pay a late charge in an amount equal to five percent (5%) of the payment then due and owing. All interest due and payable hereunder shall be calculated at the then Applicable Rate of Interest and such calculation shall be based on the actual number of days elapsed and a 360-day year. All sums payable to Bank hereunder shall be payable in U.S. Dollars, without set-off or counterclaim, on the day in question, to Bank at its address set forth above, or to such address as Bank may from time to time designate in a written notice to Maker.

4.    If at any time Maker is required by any federal or applicable state law to make any deduction or withholding in respect of any taxes, duties or other charges from any payment due hereunder, the sum due from Maker in respect of such payment shall be increased to the extent necessary to ensure that, after the making of such deduction or withholding, Bank receives and retains a net sum equal to the sum which it would have received had no such deduction or withholding been required to be made. Maker shall promptly deliver to Bank receipts, certificates or other proof evidencing the amounts (if any) paid or payable in respect of such deduction or withholding.

5.    If this Note shall be placed with an attorney for collection, Maker shall pay all costs of collection, including, without limitation, court costs and reasonable attorneys' fees and disbursements.

6.    Each and every maker, endorser, guarantor and surety of this Note, and all others who may become liable for the payment of all or any part of the obligation evidenced hereby, do hereby waive diligence, presentment and demand for payment, notice of nonpayment, protest, notice of protest and notice of dishonor of this Note, and do hereby consent to any number of renewals of this Note and extensions of the time for payment hereof, and agree that any such renewals or extensions may be made without notice to any of said parties and without affecting their liability hereon, and further consent to the release of any part or all of the security for the payment hereof and to the release of any party liable hereon, all without affecting the liability of the other persons or entities liable for the payment of this Note.

7.    Unless otherwise agreed to by Bank to the contrary, no release of any security of the principal indebtedness due under this Note or extension of time for payment under this Note, or any installment, hereof, and no alteration, amendment or waiver of any provision of this Note, the Guaranty, the Mortgage and the Agreement made by agreement between Bank and any other person or party, shall release discharge, modify, change or affect the liability of Maker under this Note, the Agreement, the Mortgage, and the Guaranty.

8.    This Note is subject to the express conditions that (a) at no time shall Maker be obligated or required to pay interest (whether denominated as interest or other charges which might be characterized as interest) on the unpaid principal sum of this Note at a rate which would (i) void this Note or any of Maker's obligations hereunder, (ii) subject Bank to a forfeiture of the principal amount of, or any interest earned under, this Note, or (iii) subject Bank to either civil or criminal liability, as a result of such rate being in excess of the maximum rate of interest which Maker is permitted by law to contract or agree to pay, and (b) if, by the terms of this Note, Maker is at any time required or obligated to pay interest (whether denominated as interest or other charges which might be characterized as interest) on the unpaid principal sum of this Note at a rate in excess of such maximum rate, (x) the rate of interest under this Note shall be deemed to be immediately reduced to such maximum rate, (y) interest payable hereunder shall be computed at such maximum rate and (z) the portion of all prior interest payments in excess of such maximum rate shall have been, and shall be deemed to have been, made in error and shall be refunded to Maker by Bank.

9.    If any change in any law, regulation or treaty or the interpretation or administration thereof, or compliance by Bank with any request or directive (whether or not having the force of law) of any authority charged with the interpretation or administration thereof, as documented to Maker, shall in the reasonable determination of Bank:

(a)    subject Bank to any tax, levy or other governmental charge with respect to the Loan or change the basis of taxation of payment by Maker to Bank in respect of the Loan (other than any tax on or measured by the overall net income of Bank); or

(b)    impose, modify or hold applicable any reserve, special deposit, capital adequacy or similar requirement against assets, deposits or other liabilities

of, or for, the account thereof, or loans or commitments by, Bank with respect to the Loan; or

(c)    impose on Bank any other condition with respect to the Loan that is or would be materially adverse to Bank and its rights hereunder and/or under the Agreement;

and the result of any of the foregoing is to increase the cost to Bank of making or maintaining the Loan or to reduce (x) Bank's rate of return of its capital or (y) the amount of any sum received or receivable by Bank under this Note, then Maker shall pay to Bank on demand from time to time such additional amounts as may be necessary to reimburse Bank for such increased costs or to compensate Bank for such reduced amounts.

10.    Notwithstanding any other provision of this Note, if Bank reasonably determines that the adoption of any applicable law, regulation or treaty, or any change therein or in the interpretation thereof, makes it unlawful to maintain the Loan or to receive any amount payable under this Note. Maker shall on demand prepay the Loan in full, together with interest accrued to the date of prepayment.

11.    This Note shall in all respects be governed by, and interpreted in accordance with, the laws of the State of New York applicable to similar instruments made and to be performed wholly in New York.   This Note shall be construed without regard to any presumption or rule requiring construction against the party causing this Note to be drafted.   All terms and words used in this Note, regardless of the number or gender in which they are used, shall be deemed to include any other number and any other gender as the context may require.

12.    Maker hereby irrevocably consents that any legal action or proceeding against it hereunder may be brought in any court of the State of New York or any Federal Court of the United States of America located in the Borough of Manhattan, in the City and State of New York, United States of America, as Bank may elect; and by execution and delivery of this Note, Maker hereby submits to and accepts with regard to any such action or proceeding, for itself and in respect of its property, generally and unconditionally, the jurisdiction of the aforesaid courts.

13.    Maker hereby irrevocably waives any objection which it may now or hereafter have to the laying of the venue of any suit, action or proceeding arising out of or relating to the Loan and/or this Note in the Borough of Manhattan, in the City and State of New York, and hereby further irrevocably waives any claim that the Borough of Manhattan, in the City and State of New York is not a convenient forum for any such suit, action or proceeding.

14.    If any one or more of the provisions contained in this Note or in any document executed in connection herewith shall be invalid, illegal or unenforceable in any respect under any applicable law, the validity, legality and enforceability of the remaining provisions contained herein shall not in any way be affected or impaired.

15.    This Note may not be changed or terminated orally, but only by an agreement in writing signed by Maker and Bank.

4

16.     This Note, and the rights and obligations of Maker hereunder, are not assignable in whole or in part by Maker. The provisions of this Note shall bind Maker, its successors and assigns and shall inure to the benefit of Bank, subsequent holders of this Note and their respective successors and assigns.

IN WITNESS WHEREOF, Maker has duly executed this Note on the day and year first above written.

11 EAST 36TH LLC
By: Madison Condos, LLC, Manager
    By: Bluebell Assets, LLC, Manager

By: _____
    Ben Bobker, Manager

STATE OF NEW YORK        )
                         )ss.:
COUNTY OF NEW YORK       )

On the 30th day of April in the year 2008 before me, the undersigned, a notary public in and for the said State, personally appeared BEN BOBKER, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual, or the person on behalf of which the individual acted, executed the instrument.

_____
Notary Public

MARILYN J. McCARTHY
NOTARY PUBLIC, State of New York
No 30 4840587
Qualified in Nassau County
Commission Expires November 30 2009

## SCHEDULE A

## PRIOR NOTES

1. Substitute Note B, dated March 18, 2008, in the original principal sum of $880,000.00, made by 11 East 36th, LLC and Morgan Lofts, LLC, in favor of Chinatrust Bank (U.S.A.).

2. Gap Promissory Note, dated April 30, 2008, in the original principal sum of $1,320,000.00, made by 11 East 36th, LLC, in favor of Chinatrust Bank (U.S.A.).

## OMNIBUS ASSIGNMENT OF LENDER'S RIGHTS

THE UNDERSIGNED, for good and valuable consideration from GRIFFON V, LLC ("Assignee"), receipt of which is hereby acknowledged, hereby assigns to the Assignee,

ALL OF THE UNDERSIGNED'S rights, title and interests in all those documents related to that certain Amended and Restated Promissory Note, dated April 30, 2008, made by 11 East 36th, LLC in favor of Chinatrust Bank (U.S.A.), in the principal amount of $2,200,000.00, and/or affecting real properties located at 11 East 36th Street, Residential Condominium Units 1001, 1006, 1101, 1203 and 1204, New York, New York (Block 866, Lots 1251, 1256, 1257, 1265 and 1266, New York County), and as specifically itemized in Schedule A annexed hereto and forming a part hereof,

TO HAVE AND TO HOLD the same unto the assigns and to the successors, legal representatives and assigns of the Assignee forever.

THIS ASSIGNMENT IS MADE WITHOUT ANY COVENANT, REPRESENTATION, WARRANTY, OR GUARANTY, EITHER EXPRESS OR IMPLIED, AND WITHOUT RECOURSE TO THE UNDERSIGNED IN ANY EVENT WHATSOEVER.

Dated: October 14, 2009.

CHINATRUST BANK (U.S.A.)

By _____
Yintung (Tony) Chang
Senior Vice President

STATE OF NEW YORK    )
                     )SS.:
COUNTY OF NEW YORK   )

On the 14th day of October in the year 2009, before me, the undersigned, a notary public in and for the said State, personally appeared YINTUNG (TONY) CHANG, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is(are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person on behalf of which the individual(s) acted, executed the instrument.

_____
Notary Public

LUCY WING LING LO
Notary Public, State of New York
Qualified in Queens County
No. 01LO6085677
My Commission Expires December 30, 20\_\_

**SCHEDULE A**
**TO OMNIBUS ASSIGNMENT**

**"LOAN DOCUMENTS"**

1.  Amended and Restated Promissory Note
2.  Gap Promissory Note (Line of Credit)
3.  Revolving Line of Credit Agreement
4.  General and Continuing Guaranty of Morgan Lofts, LLC
5.  General and Continuing Guaranty of Madison Condos, LLC
6.  General and Continuing Guaranty of Bluebell Assets, LLC
7.  General and Continuing Guaranty of Eli Mordechai Bobker
8.  General and Continuing Guaranty of Ben Baruch Bobker
9.  Recorded Collateral Mortgage and Consolidation, Modification and Extension Agreement
10. Recorded Collateral Assignment of Leases and Rents
11. Acknowledgement of Single Asset Entity
12. Member Resolution of 11 East 36th LLC
13. Member Resolution of Morgan Lofts, LLC
14. Member Resolution of Madison Condos, LLC
15. Member Resolution of Bluebell Assets, LLC
16. Borrower's Estoppel Affidavit
17. Escrow Agreement for Notice to Tenants
18. Attorney Escrow Agreement
19. Closing Certificate
20. Flood Certificate
21. Recorded UCC-1
22. Title Policy
23. Certificate of Title

**ENDORSEMENT AND ALLONGE TO PROMISSORY NOTE**

       Pay to the order of 11 East 36 Note Buyer LLC without warranty, representation or recourse of any kind, that certain Mortgage Note dated November 23, 2004 in the original amount of $2,300,000.00 executed by 11 East 36th, LLC, a New York limited liability company in favor of Grand Pacific Finance Corp.

First Central Savings Bank

By: _Salvatore Di Martino_

/Name: Salvatore Di Martino

Title: Executive Vice President

## ENDORSEMENT AND ALLONGE TO PROMISSORY NOTE

Pay to the order of 11 East 36 Note Buyer LLC without warranty, representation or recourse of any kind, that certain Promissory Note dated August 16, 2006 in the original amount of $700,000.00 executed by 11 East 36th, LLC, a New York limited liability company in favor of Grand Pacific Finance Corp.

First Central Savings Bank

By: _Salvatore Di Martino_
Name: Salvatore Di Martino
Title: Executive Vice President

Document Number: 272551

## ENDORSEMENT AND ALLONGE TO PROMISSORY NOTE

Pay to the order of 11 East 36 Note Buyer LLC without warranty, representation or recourse of any kind, that certain Amended and Restated Promissory Note dated August 16, 2006 in the original amount of $3,000,000.00 executed by 11 East 36th, LLC, a New York limited liability company in favor of Grand Pacific Finance Corp.

First Central Savings Bank

By: _Salvatore Di Martino_
Name: Salvatore Di Martino
Title: Executive Vice President

Document Number: 272551

**ENDORSEMENT AND ALLONGE TO PROMISSORY NOTE**

       Pay to the order of 11 East 36 Note Buyer LLC without warranty, representation or recourse of any kind, that certain Amended and Restated Acquisition Loan Note dated March 28, 2007 in the original amount of $3,000,000.00 executed by 11 East 36th, LLC, a New York limited liability company in favor of Chinatrust Bank (U.S.A.).

                     First Central Savings Bank

                     By: *Salvatore Di Martino*
                     Name: *Salvatore Di Martino*
                     Title: *Executive Vice President*

## ENDORSEMENT AND ALLONGE TO PROMISSORY NOTE

Pay to the order of 11 East 36 Note Buyer LLC without warranty, representation or recourse of any kind, that certain Second Project Loan Note dated March 28, 2007 in the original amount of $4,500,000.00 executed by 11 East 36th, LLC, a New York limited liability company in favor of Chinatrust Bank (U.S.A.).

First Central Savings Bank

By: _Salvatore Di Martino_
Name: Salvatore Di Martino
Title: Executive Vice President

Document Number: 272551

## ENDORSEMENT AND ALLONGE TO PROMISSORY NOTE

Pay to the order of 11 East 36 Note Buyer LLC without warranty, representation or recourse of any kind, that certain Substitute Note A dated March 18, 2008 in the original amount of $3,620,000.00 executed by 11 East 36th, LLC, Morgan Lofts, LLC, and Bay Condos, LLC, each a New York limited liability company in favor of Chinatrust Bank (U.S.A.).

First Central Savings Bank

By: _Salvatore Di Martino_
Name: Salvatore Di Martino
Title: Executive Vice President

Document Number: 272551

## ENDORSEMENT AND ALLONGE TO PROMISSORY NOTE

Pay to the order of 11 East 36 Note Buyer LLC without warranty, representation or recourse of any kind, that certain Mortgage Note dated March 20, 2008 in the original amount of $464,437.48 executed by 11 East 36th, LLC, Morgan Lofts, LLC, and Bay Condos, LLC, each a New York limited liability company in favor of First Central Savings Bank.

First Central Savings Bank

By: *Salvatore Di Martino*
/Name: *Salvatore Di Martino*
Title: *Executive Vice President*

Document Number: 272551

## ENDORSEMENT AND ALLONGE TO PROMISSORY NOTE

Pay to the order of 11 East 36 Note Buyer LLC without warranty, representation or recourse of any kind, that certain Substitute Mortgage Note dated March 20, 2008 in the original amount of $10,000,000.00 executed by 11 East 36th, LLC, Morgan Lofts, LLC, and Bay Condos, LLC, each a New York limited liability company in favor of First Central Savings Bank.

First Central Savings Bank

By: *Salvatore Di Martin*
Name: *Salvatore Di Martino*
Title: *Executive Vice President*

Document Number: 272551

**ENDORSEMENT AND ALLONGE TO PROMISSORY NOTE**

Pay to the order of 11 East 36 Note Buyer LLC without warranty, representation or recourse of any kind, that certain Note dated October 9, 2009 in the original amount of $38,972.41 executed by 11 East 36th, LLC, Morgan Lofts, LLC, and Bay Condos, LLC, each a New York limited liability company in favor of First Central Savings Bank.

First Central Savings Bank

By: _Salatore Di Martino_

Name: Salvatore Di Martino.

Title: Executive Vice President

Document Number: 272551



**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**

This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument. The information on this page will control for indexing purposes in the event of any conflict with the rest of the document.

2007100300854001001E088F

## RECORDING AND ENDORSEMENT COVER PAGE    PAGE 1 OF 9

| Document ID: 2007100300854001 | Document Date: 09-28-2007 | Preparation Date: 10-03-2007 |
|---|---|---|

Document Type: DEED
Document Page Count: 8

| PRESENTER: | RETURN TO: |
|---|---|
| BRUCE PAYNE ASSOCIATES, INC. PICKUP -GAIL | MELODY A. CHANG, ESQ. |
| STEWART TITLE -24504BNY-KP | 11 EAST 36TH STREET |
| 121 WEST OAK STREET | 11TH FLOOR |
| AMITYVILLE, NY 11701 | NEW YORK, NY 10016 |
| 631-598-2200 | |

### PROPERTY DATA

| Borough | Block | Lot | | Unit | Address |
|---|---|---|---|---|---|
| MANHATTAN | 866 | 1202 | Entire Lot | 101 | 11 EAST 36TH STREET |

Property Type: COMMERCIAL CONDO UNIT(S)

| Borough | Block | Lot | | Unit | Address |
|---|---|---|---|---|---|
| MANHATTAN | 866 | 1203 | Entire Lot | 102 | 11 EAST 36TH STREET |

Property Type: COMMERCIAL CONDO UNIT(S)

### CROSS REFERENCE DATA

CRFN_____ or Document ID_____ or _____ Year____ Reel ___ Page ____ or File Number_____

### PARTIES

| GRANTOR/SELLER: | GRANTEE/BUYER: |
|---|---|
| 11 EAST 36TH, LLC | BAY CONDOS |
| 11 EAST 36TH STREET, 10TH FLOOR | 11 EAST 36TH STREET, 10TH FLOOR |
| NEW YORK, NY 10016 | NEW YORK, NY 10016 |

### FEES AND TAXES

| Mortgage | | | Filing Fee: | |
|---|---|---|---|---|
| Mortgage Amount: | $ | 0.00 | $ | 165.00 |
| Taxable Mortgage Amount: | $ | 0.00 | NYC Real Property Transfer Tax: | |
| Exemption: | | | $ | 51,993.87 |
| TAXES: County (Basic): | $ | 0.00 | NYS Real Estate Transfer Tax: | |
| City (Additional): | $ | 0.00 | $ | 7,924.00 |
| Spec (Additional): | $ | 0.00 | | |
| TASF: | $ | 0.00 | | |
| MTA: | $ | 0.00 | | |
| NYCTA: | $ | 0.00 | | |
| Additional MRT: | $ | 0.00 | | |
| TOTAL: | $ | 0.00 | | |
| Recording Fee: | $ | 80.00 | | |
| Affidavit Fee: | $ | 0.00 | | |

**RECORDED OR FILED IN THE OFFICE**
**OF THE CITY REGISTER OF THE**
**CITY OF NEW YORK**
Recorded/Filed    10-15-2007 10:30
City Register File No.(CRFN):
2007000519095

*Annette M Hill*

*City Register Official Signature*

24504 BNY

## UNIT DEED

Date of Delivery 9/28/07 MC

THIS INDENTURE made this 22nd day of November, 2006, between **11 EAST 36TH, LLC**, existing under the laws of the State of New York, having a place of business at 11 East 36th Street, New York, New York 10016, as party of the first part, and **BAY CONDOS, LLC**, existing under the laws of the State of New York, having a place of business at 11 East 36th Street, New York, New York 10016, as party of the second part;

T.T. 7924

## WITNESSETH:

That the party of the first part, in consideration of Ten ($10.00) Dollars, lawful money of the United States, and other good and valuable considerations, paid by the party of the second part, does hereby grant and release unto the party of the second part, the heirs or successors and assigns of the party of the second part forever;

BLK 866

NINETY-SEVEN AND TWO-TENTHS (97.2%) PERCENT UNDIVIDED INTEREST in all that certain piece or parcel of real property, with the improvements therein contained and known as:

LOTS 1202 & 1203

The Condominium Unit Nos. 101 and 102 (collectively, the "Unit) in the building designated as THE MORGAN LOFTS CONDOMINIUM in the Declaration establishing a plan for Condominium Ownership of said premises under Article 9-B of the Real Property Law of the State of New York (the "New York Condominium Act"), dated October 23, 2006 and recorded in the Office of the Register of New York County (the "Register's Office") on November 22, 2006 under CRFN 2006000650189, and also designated as Tax Lots 1202 and 1203 in Block 866, of the Borough of Manhattan on the Tax Map of the Real Property Assessment Department of The City of New York and on the floor plans of said building, certified by Steven Krachtman, Architect, and filed with the Real Property Assessment Department of the City of New York as Condominium Plan No. 1617, and also filed in the City Register's Office on November 22, 2006 as Map No. _____ in said Condominium,

**TOGETHER** with an undivided 7.10% (as to Unit 101) and 1.90% (as to Unit 102) interest in the Common Elements representing the Unit,

The premises within which the Unit is located are more particularly described as follows:

*ALL that certain plot, piece or parcel of land, situate, lying and being the Borough of Manhattan, County of New York, City and State of New York, designated on the Tax Map of the City of New York; for the County of New York, as Block 866, Lot 11, known as 11 East 36th Street, New York, New York and more particularly bounded and described on Schedule A annexed hereto.*

1

Morgan Lofts Deed - Unit 101 and 102-final

SUBJECT TO: The provisions of the Declaration, By-Laws, site plan and floor plans of the Condominium recorded or filed simultaneously with and as part of the Declaration, as the same may be amended from time to time by instruments recorded or filed in the Office of the Clerk of the County of New York, which provisions, together with any amendments thereto, shall bind any person having at any time any interest or estate in the unit, as though such provisions were recited at length herein.

SUBJECT TO: The terms and conditions of the mortgage liens of record presently encumbering the Unit, held by Chinatrust Bank (U.S.A.) and Grand Pacific Finance Corp., and of the Limited Consent to Unit Transfer, dated of even date herewith, and annexed hereto as Schedule B.

*THE GRANTOR IS THE SAME PERSON AS GRANTEE in DEED RECORDED in CRFN. No. 2005000415062 and CRFN No 2007000243388.*

TO HAVE AND TO HOLD the premises herein granted unto the party of the second part, the heirs or successors and assigns of the party of the second part forever.

*Premises herein described are part of the same and intended to be part of the same as those described in deed CRFN. 2005000415062 and CRFN. 2007000243388.*

AND the party of the first part covenants that the party of the first part has not done or suffered anything whereby the said premises have been encumbered in any way whatever, except as aforesaid.

AND the party of the first part, in compliance with Section 13 of the Lien Law, covenants that the party of the first part will receive the consideration for this conveyance and will hold the right to receive such consideration as a trust fund to be applied first for the purpose of paying the cost of the improvement before using any part of the total of the same for any other purpose.

The use for which the Unit is intended is that of a commercial occupancy, subject to the applicable governmental regulations and the restrictions contained in the Declaration.

This conveyance has been made in the regular course of business actually conducted by the party of the first part. ✓

The word "party" shall be construed as if it read "parties" whenever the sense of this indenture so requires.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

2

IN WITNESS WHEREOF, the party of the first part has duly executed this deed and the party of the second part has duly assumed the obligations therein referred to, the day and year first above written.

In presence of:

**Party of the First Part:**    11 EAST 36th, LLC
By: Madison Condos, LLC, Manager
By: Bluebell Assets, LLC, Manager


By: _____
            Ben Bobker
            Managing Member


**Party of the Second Part:**    BAY CONDOS, LLC


By: _____
            Avi Bobker
            Managing Member

ACKNOWLEDGMENT

**STATE OF NEW YORK**              )
                                  ) ss:
**COUNTY OF NEW YORK**            )

On the 22nd day of November in the year 2006, before me the undersigned, personally appeared BEN BOBKER AND AVI BOBKER, personally known to me to or proved to me on the basis of satisfactory evidence to be the individuals whose names are subscribed to the within instrument and acknowledged to me that they executed the same in their capacities and that by their signatures on the instrument, the individuals, or the persons upon behalf of which the individuals acted, executed the instrument.

Notary Public

SEAL

MELODY CHANG
Notary Public, State of New York
No. 31-5007889
Qualified in New York County
Commission Expires February 8, 18__

7/29/09

**Record & Return to:**

Melody A. Chang, Esq.
11 East 36th Street, 16th Floor
New York, New York 10016

## <u>SCHEDULE A</u>

**ALL** that certain plot, piece or parcel of land, situated, lying and being in the Borough of Manhattan, City, County and State of New York, bounded and described as follows:

**BEGINNING** at a point on the southerly side of East 37th Street, distant 202 feet easterly from the corner formed by the intersection of the southerly side of 37th Street and the easterly side of 5th Avenue;

**RUNNING THENCE** easterly along the southerly side of 37th Street, 24 feet;

**THENCE** southerly parallel with the easterly side of 5th Avenue and part of the distance through a party wall, 98 feet 9 inches to the center line of the block;

**THENCE** easterly along the center line of the block, 24 feet;

**THENCE** southerly parallel with the easterly side of 5th Avenue, 98 feet 9 inches to the northerly side of East 36th Street;

**THENCE** westerly along the northerly side of East 36th Street, 50 feet;

**THENCE** northerly parallel with the easterly side of 5th Avenue, 98 feet 9 inches to the center line of the block;

**THENCE** easterly along said center line of the block, 2 feet;

**THENCE** northerly again parallel with the easterly side of 5th Avenue, 98 feet 9 inches to the southerly side of 37th Street at the point or place of **BEGINNING.**

5

## SCHEDULE B

### LIMITED CONSENT TO UNIT TRANSFER
(Morgan Lofts Condominium – Units 101 and 102)

THE UNDERSIGNED, in consideration of commercial mortgage loans granted by CHINATRUST BANK (U.S.A.) AND GRAND PACIFIC FINANCE CORP. (collectively, the "Lender"), in favor of 11 EAST 36TH, LLC, a New York limited liability company with its principal offices at 11 East 36th Street, 10th Floor, New York, New York 10016 ("Borrower"), which obligations of Borrower under said loans are secured by certain mortgage liens, dated as of November 23, 2004, July 14, 2005, and August 16, 2006 respectively (collectively, the "Mortgage"), encumbering real property located at 11 East 36th Street a/k/a 10 East 37th Street, New York, New York ("Premises"), hereby acknowledge and affirmatively agree to the following:

1.      Borrower and New Owner (as defined herein) have requested the consent of Lender for the transfer of title, without partial paydown of the principal indebtedness secured by the Mortgage, of Commercial Condominium Units 101 and 102 (collectively, the "Units") at the Premises, to Bay Condos, LLC, a New York limited liability company in good standing and having its principal place of business at 11 East 36th Street, New York, New York 10016 ("New Owner"), for the purchase price of $1,980,819.00.

2.      Borrower and New Owner hereby represent to Lender that (a) the principals of Borrower and New Owner are immediate family members; (b) New Owner is acquiring title to the Units for the sole purpose of completing the acquisition phase of its tax deferral exchange pursuant to §1031 of the Internal Revenue Code; and (c) Borrower intends to enter into a tax deferral exchange pursuant to §1031 of the Internal Revenue Code ("IRC") with the entire net sale proceeds derived from the transfer of the Units to New Owner.

3.      Borrower hereby acknowledges that, notwithstanding such transfer of title of the Units to New Owner, Borrower shall remain liable for the repayment of loans secured by the Mortgage, and the liens of the Mortgage shall continue to encumber the Units.

4.      New Owner hereby acknowledges that, notwithstanding any consent granted for the transfer of title of the Units to New Owner, New Owner shall take title to the Units subject to the liens of the Mortgage. New Owner shall comply with the terms of the Mortgage to the extent they are applicable to the mortgagor therein. New Owner shall, upon its sale of the Units (one or both), comply with the terms of the Mortgage with respect to the remittance of the net sale proceeds therefrom towards the paydown of the outstanding principal balance under the Mortgage. Notwithstanding any consent granted for the transfer of title of the Units to New Owner, Lender shall have no obligation to release the Units (one or both) from the liens of the Mortgage unless Lender is in receipt from New Owner and/or Borrower the necessary paydown amount(s) as required under the Mortgage.

5.    Borrower and New Owner hereby acknowledge that any consent granted by Lender for the transfer of title of the Units to New Owner is merely an accommodation to Borrower and New Owner for their respective IRC §1031 tax deferred exchanges.  Borrower and New Owner shall, jointly and severally, hold Lender harmless and indemnify Lender against any claims arising out of the transfer of title of the Units (including any expenses incurred by Lender for such transfer of title) and/or audits by the Internal Revenue Service in connection with their respective IRC §1031 tax deferred exchanges.

6.    In the event any legal proceedings are commenced against New Owner, including but not limited to bankruptcy filings whether voluntary or involuntary, Borrower shall immediately and without notice "redeem" the Units from New Owner.  Redemption of the Units shall be construed as follows: New Owner shall convey title to the Units back to Borrower for no consideration, and Borrower shall accept title to the Units as conveyed by New Owner.  Both New Owner and Borrower shall cooperate and execute all necessary transfer documents (including deed instrument and transfer tax forms) to effectuate the aforesaid redemption, and all expenses of such redemption transaction shall be borne by New Owner and Borrower, jointly and severally.  Lender shall have the right, but not the obligation, to advance payment of such redemption expenses, and such advance shall be deemed a permitted advance under the Mortgage and secured thereby.  Moreover, Borrower and New Owner expressly agree that it shall be a material event of default of the loans secured by the Mortgage if such redemption transaction is not completed within thirty (30) days of demand from Lender.

7.    Borrower and New Owner further acknowledge that Lender reserves all of its rights and remedies under the Mortgage and all other related documents executed by Borrower in favor of Lender, in the event Borrower and/or New Owner fail to perform as set forth herein.

8.    Borrower and New Owner shall cause this instrument to be recorded simultaneously with the deed vesting title to the Units in New Owner.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

7

*Morgan Lofts Deed - Unit 101 and 102-final*

**[SIGNATURE PAGE OF LIMITED CONSENT TO UNIT TRANSFER]**
**(Morgan Lofts Condominium – Units 101 and 102)**

Dated as of:    November 22, 2006
                New York, New York

11 East 36th, LLC
By: Madison Condos, LLC, Manager
    By: Bluebell Assets, LLC, Manager

By: _____
    Ben Bobker, Manager

Bay Condos, LLC

By: _____
    Avi Bobker, Manager

THE FOREGOING IS
CONSENTED TO BY:

Chinatrust Bank (U.S.A.)

By: _____
    Yintung (Tony) Chang
    First Vice President

Grand Pacific Finance Corp.

By: _____
    Robert W. Heinemann, Jr.
    Senior Executive Vice President

8

**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**



2007100300854001001SC60E

| SUPPORTING DOCUMENT COVER PAGE | | PAGE 1 OF 1 |
|---|---|---|
| Document ID: 2007100300854001 | Document Date: 09-28-2007 | Preparation Date: 10-03-2007 |
| Document Type: DEED | | |

**ASSOCIATED TAX FORM ID: 2007100300191**

**SUPPORTING DOCUMENTS SUBMITTED:**

|  | Page Count |
|---|---|
| RP - 5217 REAL PROPERTY TRANSFER REPORT | 1 |

13-11506-jmp    Doc 1584-4 Filed 08/15/13    Entered 07/31/13 20:31:36 Main Document
Pg 66 of 79

**REAL PROPERTY TRANSFER REPORT**

STATE OF NEW YORK
STATE BOARD OF REAL PROPERTY SERVICES

**RP - 5217NYC**
(Rev 11/2003)

### FOR CITY USE ONLY

| C1. County Code | | C2. Date Deed Recorded | | | |
|---|---|---|---|---|---|
| | | | Month | Day | Year |

C3. Book OR
C5. CRFN

C4. Page

### PROPERTY INFORMATION

**1. Property Location**
11 — STREET NUMBER
EAST 36TH STREET 101 — STREET NAME
MANHATTAN — BOROUGH
10016 — ZIP CODE

**2. Buyer Name**
BAY CONDOS, LLC — LAST NAME / COMPANY    FIRST NAME
LAST NAME / COMPANY    FIRST NAME

**3. Tax Billing Address**
Indicate where future Tax Bills are to be sent if other than buyer address (at bottom of form)
LAST NAME / COMPANY    FIRST NAME
STREET NUMBER AND STREET NAME    CITY OR TOWN    STATE    ZIP CODE

**4. Indicate the number of Assessment Roll parcels transferred on the deed** __2__ # of Parcels OR ☐ Part of a Parcel

**5. Deed Property Size** _____ FRONT FEET X _____ DEPTH OR _____ ACRES

**8. Seller Name**
11 EAST 36TH, LLC — LAST NAME / COMPANY    FIRST NAME
LAST NAME / COMPANY    FIRST NAME

4A. Planning Board Approval - N/A for NYC
4B. Agricultural District Notice - N/A for NYC
Check the boxes below as they apply:
6. Ownership Type is Condominium ☑
7. New Construction on Vacant Land ☐

**8. Check the box below which most accurately describes the use of the property at the time of sale:**

| A | ☐ One Family Residential | C | ☐ Residential Vacant Land | E | ☑ Commercial | G | ☐ Entertainment / Amusement | I | ☐ Industrial |
|---|---|---|---|---|---|---|---|---|---|
| B | ☐ 2 or 3 Family Residential | D | ☐ Non-Residential Vacant Land | F | ☐ Apartment | H | ☐ Community Service | J | ☐ Public Service |

### SALE INFORMATION

**10. Sale Contract Date** 11 / 17 / 2006
Month  Day  Year

**11. Date of Sale / Transfer** 11 / 22 / 2006
Month  Day  Year

**12. Full Sale Price $** 1,980,719.

( Full Sale Price is the total amount paid for the property including personal property. This payment may be in the form of cash, other property or goods, or the assumption of mortgages or other obligations.) Please round to the nearest whole dollar amount.

**13. Indicate the value of personal property included in the sale** _____

**14. Check one or more of these conditions as applicable to transfer:**

| A | ☐ Sale Between Relatives or Former Relatives |
|---|---|
| B | ☐ Sale Between Related Companies or Partners in Business |
| C | ☐ One of the Buyers is also a Seller |
| D | ☐ Buyer or Seller is Government Agency or Lending Institution |
| E | ☐ Deed Type not Warranty or Bargain and Sale (Specify Below) |
| F | ☑ Sale of Fractional or Less than Fee Interest (Specify Below) |
| G | ☐ Significant Change in Property Between Taxable Status and Sale Dates |
| H | ☐ Sale of Business is Included in Sale Price |
| I | ☐ Other Unusual Factors Affecting Sale Price (Specify Below) |
| J | ☐ None |

### ASSESSMENT INFORMATION - Data should reflect the latest Final Assessment Roll and Tax Bill

**15. Building Class** O,9

**16. Total Assessed Value** (of all parcels in transfer) 4,950,000.

**17. Borough, Block and Lot / Roll Identifier(s)** ( if more than three, attach sheet with additional Identifier(s) )

MANHATTAN 866 1202   MANHATTAN 866 1203

### CERTIFICATION

I certify that all of the items of information entered on this form are true and correct (to the best of my knowledge and belief) and I understand that the making of any willful false statement of material fact herein will subject me to the provisions of the penal law relative to the making and filing of false instruments.

**BUYER**

BUYER SIGNATURE    DATE 11/22/06

STREET NUMBER (AFTER SALE) 11 EAST 36th Street

CITY OR TOWN New York    STATE N.Y.    ZIP CODE 10016

**BUYER'S ATTORNEY**

LAST NAME CHANG    FIRST NAME MELODY

AREA CODE 212    TELEPHONE NUMBER 962-0114

**SELLER**

SELLER SIGNATURE    DATE 11/22/06

200612200081720I

| CERTIFICATION | I certify that all of the items of information entered on this form are true and correct (to the best of my knowledge and belief) and understand that the making of any willful false statement of material fact herein will subject me to the provisions of the penal law relative to the making and filing of false instruments. |
|---|---|

| BUYER SIGNATURE | DATE 11/22/06 | LAST NAME Chang | BUYER'S ATTORNEY FIRST NAME Melody |
|---|---|---|---|

| STREET NUMBER 11 | STREET NAME (AFTER SALE) East 36th Street | AREA CODE 212 | TELEPHONE NUMBER 962-0114 |
|---|---|---|---|

| CITY OR TOWN New York | STATE N.Y. | ZIP CODE 10016 | SELLER SIGNATURE | SELLER DATE 11/22/06 |
|---|---|---|---|---|

2006122000817201

**REAL PROPERTY TRANSFER REPORT**
STATE OF NEW YORK
STATE BOARD OF REAL PROPERTY SERVICES

**RP - 5217NYC**
(Rev 11/2002)

| FOR CITY USE ONLY | |
|---|---|
| C1. County Code | C2. Date Deed Recorded ___/___/___ (Month Day Year) |
| C3. Book ____ OR C4. Page ____ | |
| C5. CRFN ____ | |

**PROPERTY INFORMATION**

**1. Property Location**  11  EAST 36TH STREET 101  MANHATTAN  10016
STREET NUMBER / STREET NAME / BOROUGH / ZIP CODE

**2. Buyer Name**  BAY CONDOS
LAST NAME / COMPANY / FIRST NAME

**3. Tax Billing Address**  Indicate where future Tax Bills are to be sent if other than buyer address (at bottom of form)
LAST NAME / COMPANY / FIRST NAME
STREET NUMBER AND STREET NAME / CITY OR TOWN / STATE / ZIP CODE

**4. Indicate the number of Assessment Roll parcels transferred on the deed**  2  # of Parcels  OR  ☐ Part of a Parcel

**4A. Planning Board Approval - N/A for NYC**
**4B. Agricultural District Notice - N/A for NYC**

**5. Deed Property Size**  ____ FRONT FEET  X  ____ DEPTH  OR  ____ ACRES

Check the boxes below as they apply:
6. Ownership Type is Condominium  ☑
7. New Construction on Vacant Land

**8. Seller Name**  11 EAST 36TH, LLC
LAST NAME / COMPANY / FIRST NAME
LAST NAME / COMPANY / FIRST NAME

**9. Check the box below which most accurately describes the use of the property at the time of sale:**

| A ☐ One Family Residential | C ☐ Residential Vacant Land | E ☑ Commercial | G ☐ Entertainment / Amusement | I ☐ Industrial |
|---|---|---|---|---|
| B ☐ 2 or 3 Family Residential | D ☐ Non-Residential Vacant Land | F ☐ Apartment | H ☐ Community Service | J ☐ Public Service |

**SALE INFORMATION**

**10. Sale Contract Date**  11 / 17 / 2006 (Month Day Year)

**11. Date of Sale / Transfer**  11 / 22 / 2006 (Month Day Year)

**12. Full Sale Price** $  19,807,119

( Full Sale Price is the total amount paid for the property including personal property. This payment may be in the form of cash, other property or goods, or the assumption of mortgages or other obligations.)  Please round to the nearest whole dollar amount.

**13. Indicate the value of personal property included in the sale**

**14. Check one or more of these conditions as applicable to transfer:**
A ☐ Sale Between Relatives or Former Relatives
B ☐ Sale Between Related Companies or Partners in Business
C ☐ One of the Buyers is also a Seller
D ☐ Buyer or Seller is Government Agency or Lending Institution
E ☐ Deed Type not Warranty or Bargain and Sale (Specify Below)
F ☑ Sale of Fractional or Less than Fee Interest ( Specify Below )
G ☐ Significant Change in Property Between Taxable Status and Sale Dates
H ☐ Sale of Business is Included in Sale Price
I ☐ Other Unusual Factors Affecting Sale Price ( Specify Below )
J ☐ None

**ASSESSMENT INFORMATION - Data should reflect the latest Final Assessment Roll and Tax Bill**

**15. Building Class**  R 5

**16. Total Assessed Value (of all parcels in transfer)**  4,539,39

**17. Borough, Block and Lot / Roll Identifier(s) ( If more than three, attach sheet with additional Identifier(s) )**
MANHATTAN 866 1202    MANHATTAN 866 1203

**CERTIFICATION**  I certify that all of the items of information entered on this form are true and correct (to the best of my knowledge and belief) and I understand that the making of any willful false statement of material fact herein will subject me to the provisions of the penal law relative to the making and filing of false instruments.

| BUYER | BUYER'S ATTORNEY |
|---|---|
| BUYER SIGNATURE      DATE | LAST NAME      FIRST NAME |
| STREET NUMBER   STREET NAME (AFTER SALE) | 212   962-0114 AREA CODE   TELEPHONE NUMBER |
| | SELLER |
| CITY OR TOWN   STATE   ZIP CODE | SELLER SIGNATURE      DATE |

2007100300191201



| CERTIFICATION | I certify that all of the items of information entered on this form are true and correct (to the best of my knowledge and belief) and understand that the making of any willful false statement of material fact herein will subject me to the provisions of the penal law relative to the making and filing of false instruments. |
|---|---|

| BUYER | | | BUYER'S ATTORNEY | |
|---|---|---|---|---|
| BUYER SIGNATURE | DATE | LAST NAME | | FIRST NAME |
| | | 212 | 962-0114 | |
| STREET NUMBER | STREET NAME (AFTER SALE) | AREA CODE | TELEPHONE NUMBER | |
| | | | SELLER | |
| CITY OR TOWN | STATE | ZIP CODE | SELLER SIGNATURE | DATE |

2007100300191201

# Exhibit K

## SCHEDULE B

### LIMITED CONSENT TO UNIT TRANSFER
(Morgan Lofts Condominium – Units 101 and 102)

THE UNDERSIGNED, in consideration of commercial mortgage loans granted by CHINATRUST BANK (U.S.A.) AND GRAND PACIFIC FINANCE CORP. (collectively, the "Lender"), in favor of 11 EAST 36TH, LLC, a New York limited liability company with its principal offices at 11 East 36th Street, 10th Floor, New York, New York 10016 ("Borrower"), which obligations of Borrower under said loans are secured by certain mortgage liens, dated as of November 23, 2004, July 14, 2005, and August 16, 2006 respectively (collectively, the "Mortgage"), encumbering real property located at 11 East 36th Street a/k/a 10 East 37th Street, New York, New York ("Premises"), hereby acknowledge and affirmatively agree to the following:

      1.    Borrower and New Owner (as defined herein) have requested the consent of Lender for the transfer of title, without partial paydown of the principal indebtedness secured by the Mortgage, of Commercial Condominium Units 101 and 102 (collectively, the "Units") at the Premises, to Bay Condos, LLC, a New York limited liability company in good standing and having its principal place of business at 11 East 36th Street, New York, New York 10016 ("New Owner"), for the purchase price of $1,980,819.00.

      2.    Borrower and New Owner hereby represent to Lender that (a) the principals of Borrower and New Owner are immediate family members; (b) New Owner is acquiring title to the Units for the sole purpose of completing the acquisition phase of its tax deferral exchange pursuant to §1031 of the Internal Revenue Code; and (c) Borrower intends to enter into a tax deferral exchange pursuant to §1031 of the Internal Revenue Code ("IRC") with the entire net sale proceeds derived from the transfer of the Units to New Owner.

      3.    Borrower hereby acknowledges that, notwithstanding such transfer of title of the Units to New Owner, Borrower shall remain liable for the repayment of loans secured by the Mortgage, and the liens of the Mortgage shall continue to encumber the Units.

      4.    New Owner hereby acknowledges that, notwithstanding any consent granted for the transfer of title of the Units to New Owner, New Owner shall take title to the Units subject to the liens of the Mortgage. New Owner shall comply with the terms of the Mortgage to the extent they are applicable to the mortgagor therein. New Owner shall, upon its sale of the Units (one or both), comply with the terms of the Mortgage with respect to the remittance of the net sale proceeds therefrom towards the paydown of the outstanding principal balance under the Mortgage. Notwithstanding any consent granted for the transfer of title of the Units to New Owner, Lender shall have no obligation to release the Units (one or both) from the liens of the Mortgage unless Lender is in receipt from New Owner and/or Borrower the necessary paydown amount(s) as required under the Mortgage.

5.    Borrower and New Owner hereby acknowledge that any consent granted by Lender for the transfer of title of the Units to New Owner is merely an accommodation to Borrower and New Owner for their respective IRC §1031 tax deferred exchanges. Borrower and New Owner shall, jointly and severally, hold Lender harmless and indemnify Lender against any claims arising out of the transfer of title of the Units (including any expenses incurred by Lender for such transfer of title) and/or audits by the Internal Revenue Service in connection with their respective IRC §1031 tax deferred exchanges.

6.    In the event any legal proceedings are commenced against New Owner, including but not limited to bankruptcy filings whether voluntary or involuntary, Borrower shall immediately and without notice "redeem" the Units from New Owner. Redemption of the Units shall be construed as follows: New Owner shall convey title to the Units back to Borrower for no consideration, and Borrower shall accept title to the Units as conveyed by New Owner. Both New Owner and Borrower shall cooperate and execute all necessary transfer documents (including deed instrument and transfer tax forms) to effectuate the aforesaid redemption, and all expenses of such redemption transaction shall be borne by New Owner and Borrower, jointly and severally. Lender shall have the right, but not the obligation, to advance payment of such redemption expenses, and such advance shall be deemed a permitted advance under the Mortgage and secured thereby. Moreover, Borrower and New Owner expressly agree that it shall be a material event of default of the loans secured by the Mortgage if such redemption transaction is not completed within thirty (30) days of demand from Lender.

7.    Borrower and New Owner further acknowledge that Lender reserves all of its rights and remedies under the Mortgage and all other related documents executed by Borrower in favor of Lender, in the event Borrower and/or New Owner fail to perform as set forth herein.

8.    Borrower and New Owner shall cause this instrument to be recorded simultaneously with the deed vesting title to the Units in New Owner.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

*Morgan Lofts Deed - Unit 101 and 102-final*

[SIGNATURE PAGE OF LIMITED CONSENT TO UNIT TRANSFER]
(Morgan Lofts Condominium – Units 101 and 102)

Dated as of:     November 22, 2006
                 New York, New York

                                      11 East 36th, LLC
                                      By:  Madison Condos, LLC, Manager
                                           By:  Bluebell Assets, LLC, Manager

                                      By: _____
                                           Ben Bobker, Manager


                                      Bay Condos, LLC

                                      By: _____
                                           Avi Bobker, Manager

THE FOREGOING IS
CONSENTED TO BY:

Chinatrust Bank (U.S.A.)

By: _____
    Yintung (Tony) Chang
    First Vice President


Grand Pacific Finance Corp.

By: _____
    Robert W. Heinemann, Jr.
    Senior Executive Vice President

                              8

Morgan Lofts Deed - Unit 101 and 102-final

Exhibit B



Translate to Another Language

Attorney General
Eric T. Schneiderman

*Home » Divisions » Economic Justice » Real Estate Finance Bureau*

# Real Estate
## FINANCE BUREAU

### Welcome to the Real Estate Finance Bureau Website

11 East 36th Street        Search

Search by plan ID, name        Search by sponsor or
or address: ⦿        principal name: ○

**To View a Plan, Select One Below:**

| ID | Name | Address | Type |
|---|---|---|---|
| C830012 | 111 EAST 36TH STREET | 111 EAST 36TH STREET, NEW YORK, NY, 10016 | COOPERATIVE |
| CD050128 | MORGAN LOFTS CONDO** SEE JEFFREY RENDIN** | 11 EAST 36TH STREET **NO AMENDMENTS ACCEPTED*, NEW YORK, NY, 10016 | CONDOMINIUM |

**Searching data:**

This database has a search mechanism to assist you in finding information quickly and easily. You have several search options:

**1. Quick Search:**

This is the simplest option. It allows you to enter broad search criteria quickly. Simply enter either a portion of the name of the Plan or the Plan's address. This kind of search is the quickest but may result in a large number of returns. You may scroll through the returned information or you can refine the search criteria. For example, if you enter sara the search would return all records in which those characters are found anywhere in either the Plan name or Plan address.

NOTE: The search mechanism is not case sensitive.

**2. Restricted search:**

This search option will allow you to zero in on a smaller group of returns for your search. If your quick search consists of a small number of letters you can add additional letters to narrow the search. For instance, if you used the search criteria **sara** in your first search, this would return any Plan name or Plan address with variations of **sara**. Returns would include things such as Sarasota and Saratoga. If you are searching for Saratoga, entering the entire word would limit the returns to only data including the entire word Saratoga.

**3. Wild Card Search:**

Another method of searching is the use of the wild card. You may perform this type of search by using the percent (%) character.

For Quick searches and Restricted searches, use of a wild card is not necessary because the search mechanism automatically employs wild cards at the beginning and end of entered search terms which results in a return of any data containing the letters entered in the search. This is good enough for most searches but in rare instances a more restrictive search is necessary to enable a return of a manageable set of data.

For instance, if you were searching for 530-536 Broadway, you could enter 530. This would return all rows with a 530 anywhere in the Plan name or Plan street. This search would return over 30 possible hits, one of which is 530-536 Broadway. Entering Broadway would return all rows with Broadway anywhere in the Plan name or Plan street. This search would return over 400 possible hits, one of which is 530-536 Broadway. Choosing to use the wild card character, you would enter **530%Broadway**. This search would return exactly 1 record containing 530-536 Broadway.

Exhibit C

**From:** Jeffrey Rendin [mailto:Jeffrey.Rendin@ag.ny.gov]
**Sent:** Friday, June 07, 2013 3:45 PM
**To:** Martin Shaw
**Subject:** RE: Morgan Lofts

Mr. Shaw,

First off, let me apologize for my hyperactive spam filter intercepting this message.

We closed an investigation into the Morgan Lofts several years ago, as I explained to your paralegal.  If I recall, there was a problem with the plan sponsor failing to build some units, and further failing to pay common charges on those unbuilt, unsold units.  I direct you to Aaron Shmulewitz, counsel to the Board, for further background.

If your client were to take title to the unsold units of the plan sponsor, and tender an amendment updating the plan in conformity with the Condominium Act, the GBL and our regulations, we would, after appropriate review, accept such an amendment.

In future, please contact me directly, preferably by email.  Numerous frantic phone calls from a paralegal aren't always a priority for Section Chief in this Office.

Thank you,


**Jeffrey R. Rendin**
Chief of Enforcement
Real Estate Finance Bureau
Office of the Attorney General of the State of New York

**From:** Martin Shaw [mailto:mshaw@shawbleckner.com]
**Sent:** Wednesday, June 05, 2013 3:18 PM
**To:** Jeffrey Rendin
**Subject:** RE: Morgan Lofts

Mr. Rendin,

In accordance with your e-mail below, I called your office and left voice-mails earlier this afternoon.

I represent 11 East 36 Note Buyer LLC, the current owner and holder of a certain Note given by 11 East 36th LLC, Morgan Lofts, LLC and Bay Condos, LLC. The Note and Mortgage was assigned to 11 East 36 Note Buyer LLC by assignment dated April 27, 2012. My client has indicated to me that Morgan Lofts, LLC and 11 East 36th, LLC have been in default of their obligations under the Note and Mortgage, and that, on May 10, 2013, 11 East 36th LLC and Morgan Lofts, LLC filed a partial bankruptcy petition in U. S. Bankruptcy Court.

As per Yolanda's e-mails to you, we were inquiring as to the reason(s) the Real Estate Finance Bureau's website indicates "No Amendments Accepted" regarding the Morgan Lofts Condominium. My client, as holder of the Note and Mortgage for approximately 25 of the condominium units, would like to know the current status of the Offering Plan, the reasons that no amendments are being accepted, whether the Real Estate Finance Bureau is prohibiting further amendments or whether the Bureau will permit amendments so that the condominium units subject to my client's mortgage may be sold and, if so, the required parameters of such an amendment.

Please let me know whether you would be available to discuss this matter and the questions I have raised. Thank you..

Martin Shaw, Esq.

Shaw & Associates

350 Fifth Avenue

Suite 2816

New York, New York 10118

Tel: (212) 279-4490

Fax: (212) 279-4495

Notice: This communication, including attachments, may contain information that is confidential and protected by the attorney/client or other privileges. It constitutes non-public information intended to be conveyed only to the designated recipient(s). If the reader or recipient of this communication is not the intended recipient, an employee or agent of the intended recipient who is responsible for delivering it to the intended recipient, or you believe that you have received this communication in error, please notify the sender immediately by return e-mail and promptly delete this e-mail, including attachments without reading or saving them in any manner. The unauthorized use, dissemination, distribution, or reproduction of this e-mail, including attachments, is prohibited and may be unlawful. Receipt by anyone other than the intended recipient(s) is not a waiver of any attorney/client or other privilege.

**From:** Jeffrey Rendin [Jeffrey.Rendin@ag.ny.gov]

**Sent:** Wednesday, June 05, 2013 12:58 PM

**To:** Yolanda DeArteaga

**Subject:** RE: Morgan Lofts

Please have Mr. Shaw himself  contact me.

**Jeffrey R. Rendin**
Chief of Enforcement
Real Estate Finance Bureau
Office of the Attorney General of the State of New York

**From:** Yolanda DeArteaga [mailto:yolanda@shawbleckner.com]
**Sent:** Wednesday, June 05, 2013 12:58 PM
**To:** Jeffrey Rendin
**Subject:** RE: Morgan Lofts

Mr. Rendin: Please bear with me again because I missed including an important fact that our office
represents the mortgagee and that we have no relationship with Mr. Shmulewitz.

If there is no ongoing investigation of the Sponsor, then why would the AG bar any further amendments
to the Plan (as noted in the records)?

Thank you again for your help.

Yolanda DeArteaga

**From:** Jeffrey Rendin [Jeffrey.Rendin@ag.ny.gov]

**Sent:** Wednesday, June 05, 2013 12:19 PM

**To:** Yolanda DeArteaga

**Subject:** Morgan Lofts

Ms. Ortega,

We do not presently have an investigation open into the sponsor of the Morgan Lofts.  We did
work, several years ago, to facilitate a resolution of some issues brought to us by the attention of
the Board's attorney, Aaron Shmulewitz of Belkin Burden.  To the extent you have any questions
about the building, I'd reach out to Mr. Shmulewitz.

**Jeffrey R. Rendin**
Chief of Enforcement
Real Estate Finance Bureau
Office of the Attorney General of the State of New York