AJ Gallo Associates, P.C.
445 Northern Blvd., Suite 11
Great Neck, New York 11021
Tel: 516-342-5880

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x

    Chapter 11
    Case No. 13- 11506 (JMP)

In Re

    11 EAST 36th, LLC,

             Debtor,
-------------------------------------------------------------x

    Chapter 11
    Case No. 13-11507 (JMP)

In Re

    MORGAN LOFTS, LLC,

             Debtor,
-------------------------------------------------------------x

## OPPOSITION TO MOTION TO LIFT STAY

    11 East 36th LLC ("11 East") and Morgan Lofts, LLC ("Morgan") (collectively, "Debtors"), as and for their opposition to the motion to lift stay filed by 11 East 36 Note Buyer LLC ("Note Buyer") and Griffon V LLC. ("Griffon"), respectfully represents as follows:

1. The motion to lift the stay should be denied for among other reasons, Note Buyer and Griffon are adequately protected by the blanket mortgage and judgment encumbering the subject units of the debtors and Note Buyer is in fact receiving post-petition interest payments, in excess of the contract rate.

## BACKGROUND

2. As more fully set forth herein, the blanket mortgage held by Note Buyer and Judgment held by Griffon are fully secured by twenty eight (28) condominium units, having an estimated value in excess of $21,000,000.00, which are owned by Debtors.

3. By Order of this Court dated June 25th, 2013, Note Buyer and Griffon are collecting the rental income generated from the subject units in the amount of approximately $81,915.00 per month.

4. From the rental income, Note Buyer is apparently paying the real estate taxes, common charges and management fees of $50,355.00 per month, leaving a net to be applied towards post-petition interest payments of $35,656.00 per month. Annexed hereto as Exhibit "A" appears a copy of the relevant Court Order dated June 25th, 2003 and the creditor's budget.

5. Although Note Buyer claims in its moving papers that it is owed the sum of $14,511,843.00, it has now filed a proof of claim for $13,725,516.00, a difference of $786,327.00. Exhibit "B".

6. Further, Note Buyer lists the sum due in its budget of $13,971, 400.00, on which a debt service amount of $74,223.06 is calculated. It is respectfully submitted, however, that the debt service amount due Note Buyer should be calculated, as outlined below, on the principal balance due under the subject note of $9,909,897.76, and as reduced by the net proceeds to be realized from the sale of

2

the commercial units in the *Bay Condos* case, from which it is anticipated that Note Buyer will receive the sum of approximately $5,900,000.00.

7. In addition, Griffon also alleges in its moving papers that it is owed the sum of $3,203,815.00, but has also filed a proof of claim for the sum of $3,132,482.00, a difference of $71,333.00.

8. The difference between the amounts alleged in the moving papers and the amounts alleged in the proofs of claim is $857,660.00.

9. It is debtors' position that the claim of Note Buyer, which is based on a 24% default rate of interest, among other miscellaneous and obscure charges, is grossly inflated, and the debtors intend to file an objection to the claim filed by Note Buyer. It is also respectfully submitted that the instant motion cannot be fairly decided until this claim objection is resolved.

10. Apart from the foregoing, it is crucial to the determination of this motion that the allocation of the proceeds from the *Bay Condos* sale be considered in arriving at the amount of post-petition interest due to Note Buyer. Note Buyer completely glosses over this major infusion of capital in arriving at its numbers.

11. The debtors have filed a Joint Plan and Disclosure Statement on September 4, 2013, which provide for the pay-off of the allowed claims of Note Buyer and Griffon on the effective date. Further, as all are aware, the debtors have obtained financing from G4 Capital with an anticipated net after closing costs and escrow reserves of not less than $9,000,000.00. It is debtors' position that the net proceeds from the refinance, in addition to the proceeds realized from the sale of

the *Bay Condos* units, will be sufficient to satisfy all claims including the Board of Managers.

12. Note Buyer also erroneously alleges, without foundation, that the units owned by the debtors cannot be sold because of a alleged New York State Attorney General prohibition. Again, this is nothing but self-serving hyperbole. In fact, as is evident from a review of the emails from the Attorney General's office annexed as Exhibit "C" to Note Buyer's papers, no such wholesale prohibition exists and it appears therefrom that all that the debtors are required to do is file certain condo plan updates with the Attorney General's office in order to sell the sponsor owned units.

13. However, even assuming that Note Buyer is correct, a bulk sale of units under a purportedly faulty Condo Plan will not come close to realizing fair market value for the units. Instead, allowing the debtors the reasonable opportunity to correct any deficiencies in Sponsor's Plan will maximize the eventual sale value of the units and only inure to the benefit of the debtors' estate and, thus, to Note Buyer and Griffon.

**THE DEBTORS ARE IN COMPLIANCE WITH SECTION 362(d)(3) OF THE BANKRUPTCY CODE AND THUS THE STAY SHOULD REMAIN IN EFFECT**

14. Note Buyer also contends that the automatic stay in this case must be lifted because the debtors, as single assets real estate entities, did not file a plan of reorganization within 90 days pursuant to Section 362(d)(3).

15. Assuming this Court should find that the debtors fall within the statutory definition of a Single Asset Real Estate case under Section 101(51B), pursuant to Section 362(d)(3)(B), the debtors are nonetheless entitled to the protections afforded by the automatic stay.

16. Under said section, a debtor who has not filed a reasonably viable plan of reorganization within 90 days of the case's filing, <u>or within 30 days after the Court determines that the debtor is subject to this section</u>, can avoid termination of the automatic stay under Section 362(d)(3) by commencing monthly payments to each creditor whose claim is secured by the subject property (other than a claim secured by a judgment lien) in an amount equal to interest at the non-default, contract rate.

17. Firstly, the debtors have not designated themselves as SARE entities and there has been no finding in this case that the 90 day period applies. Accordingly, it is the contention of debtors' that a plan or reorganization would not have been due to be filed under 362(d)(3) until 30 days after this Court's eventual determination that the debtors fall into the category of SARE entities. As mentioned above, debtors filed a Plan and Disclosure statement on September 4, 2013, prior to any determination by this Court that the shortened deadlines of 362(d)(3) apply.

18. Apart from the foregoing, even if debtors are held to be SARE entities, the stay should nonetheless remain in effect because Note Buyer has been receiving post-petition interest payments as called for under section 362(d)(3). Griffon, on the other hand, as a judgment creditor, is not entitled to receive post-petition interest payments under said section.

19. As mentioned above, post petition payments have been made in this case to Note Buyer via the rents Note Buyer and Griffon have been collecting from the subject units since the inception of this case. It is the debtors' contention that the amounts collected by Note Buyer and Griffon are sufficient to cover post-petition interest, real estate taxes and common charges. To date, Note Buyer and Griffon have collected an amount in excess of $346,000.00, approximately.

20. Based upon the documentation submitted by Note Buyer, Note Buyer has been receiving the sum of $81,915.00 per month in rent. The expenses listed by Note Buyer on its filed budget for common charges, real estate taxes and management fees total $50,355.00 per month, leaving a net available towards post petition interest of $31,560.00 per month.

21. Again, based on the documentation provided by Note Buyer, the principal balance outstanding on the subject note is $9,909,897.76. Taking into account the approximate net proceeds of $5,900,000.00 to be realized from the *Bay Condos'* sale, leaves a principal balance $4,009,897.76.

22. Applying the contract rate of 6.875% as required by Section 362(d)(3), would yield a monthly interest payment due Note Buyer of $22,973.26, well below the $31,560.00 Note Buyer has been netting form the rents they have collected.

23. In light of the foregoing, its is respectfully submitted that Note Buyer has been in fact receiving post-petition interest payments which brings the debtors into the "Safe Harbor" provisions of 362(d)(3).

6

## RELIEF FROM THE AUTOMATIC STAY UNDER 362 (d)(3)

24. Courts have held that the unconditional lifting of the stay is no mandatory under Section 362(d)(3). Instead, courts are free to modify or condition the stay in the court's discretion to "tailor the appropriate relief for failure to strictly comply with the requirements of Section 362(d)(3). *In re Archway Apartments, Ltd.*, 206 B.R. 463 (Bankr. M.D. Tenn. 1997). *In re Terraces Subdivision, LLC*, 2007 WL 2220448 (Bankr. D. Alaska, 2007).

25. Furthermore, contrary to Note Buyer's unfounded contentions, apart from receiving the payments listed above, it must be noted that the debtors have sufficient equity in the units so that the secured creditors are in fact adequately protected.

26. In this regard, it is important to note that in enacting Section 362(d)(3), Congress intended to ensure that the automatic stay provision is not abused, while giving the debtor the opportunity to create a workable plan of reorganization. In addition, Congress was motivated by a desire to afford relief in situations where 1) the owner of an encumbered building is attempting to avoid the loss of a building to a grossly underscored lender and 2) there is no real hope that a viable and confirmable plan can be confirmed. *In Re Kkemko, Inc.*, 181 B.R. 47, 51 (Bankr. S.D. Ohio 1995). For the reasons set forth above, it is clear that this is certainly not the situation in the case at bar.

27. Based on the foregoing, it is respectfully submitted that debtors are entitled to the continued protection afforded by the automatic stay, and are entitled to pursue confirmation of the plan of reorganization filed.

## **CONCLUSION**

**WHEREFORE**, the Debtor respectfully requests that the Motion to Lift Stay be denied and for such other and further relief as this Court may deem just and proper.

Dated: Great Neck, New York
       September 12, 2013

                                       A J Gallo Associates, P.C.
                                       Attorneys for the Debtors
                                       445 Northern Blvd., Suite 11
                                       Great Neck, New York 11021
                                       Tel.: 516-342-5880
                               By:   /s/ Anthony J. Gallo, Esq.
                                         Anthony J. Gallo (ag7746)