UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x

Chapter 11
Case No. 13- 11506 (JMP)


In Re

     11 EAST 36th, LLC,

                   Debtor,
-------------------------------------------------------------x

Chapter 11
Case No. 13-11507 (JMP)

In Re

     MORGAN LOFTS, LLC,

                   Debtor,
-------------------------------------------------------------x

THIS IS NOT A SOLICIATION OF ACCEPTANCE OR REJECTION OF THE PLAN.
ACCEPTANCES OR REJECTIONS MAY NOT BE SOLICIETED UNTIL A
DISCLOSURE STATEMENT HAS BEEN APPROVED BY THE BANKRUPTCY
COURT. THIS DISCLOSURE STATEMENT IS BEING SUBMITTED FOR
APPROVAL BUT HAS NOT BEEN APPROVED BY THE COURT.

## DEBTORS' AMENDED JOINT DISCLOSURE STATEMENT

I.     INTRODUCTION

1.   The above-captioned Debtors submit this Amended Disclosure Statement

(hereinafter the "Disclosure Statement") pursuant to Section 1125 of the

Bankruptcy Code to its known creditors in order to disclose that information

deemed by the Debtors to be material, important and necessary for the Creditors

and Holders of Stock Interest to arrive at a reasonably informed decision in

exercising their right to vote for acceptance or rejection of the Amended Joint

Plan of Reorganization dated September 26th, 2013 (hereinafter the "Joint Plan"),

filed simultaneously herewith with the Bankruptcy Court. Only "impaired"

Creditors, as the term is defined in the Bankruptcy Code, are entitled to vote for the Joint Plan or reject the Joint Plan. A full definition of what constitutes "impairment" is contained in Section 1124 of the Bankruptcy Code.

2. A copy of the Joint Plan accompanies this Joint Disclosure Statement, as well as a Ballot Form for the acceptance or rejection of the Joint Plan, and Notice and Order approving the adequacy of the information contained in the Joint Disclosure Statement, fixing the time for filing acceptances and rejections to the Joint Plan and for a hearing on Confirmation of the Plan.

3. The Court has set_____at_____a.m. for a hearing on the acceptance or rejection and confirmation of the Joint Plan. Creditors who are entitled to vote may vote on the Plan by filling out and mailing, on or before_____, 2013, the accompanying Ballot to Counsel for the Debtor, AJ Gallo Associates, P.C. 445 Northern Blvd., Suite 11, Great Neck, New York 11021.

4. As a Creditor, your vote is important. In order for the Joint Plan to be deemed accepted, members of each impaired Class designated in the Joint Plan that hold at least two-thirds (2/3) in amount and more than one-half (1/2) in number of the Claims of the Class that vote must vote for the Joint Plan. A claim or interest is impaired unless the Joint Plan: (1) leaves unaltered the legal, equitable, and contractual rights to which such claim or interest entitles the holder of such claim or interest; (2) notwithstanding any contractual provisions or applicable law that entitles the holder of such claim or interest to be deemed or receive acceleration payment of such claim or interest after the occurrence of a default; (A) cures or

provides for a cure subject to Court approval of any such default that occurred

before or after the commencement of the case under this title, other than a default

of a kind specified in Section 365 (b)(2) of this title; (B) reinstates the maturity of

such claim or interest as such maturity existed before such default; (c)

compensates the holder of such claim or interest for any damages incurred as a

result of any reasonable reliance by such holder on such contractual provision or

such applicable law; and (D) does not otherwise alter the legal, equitable, or

contractual rights to which such claim or interest entitles the holder of such claim

or interest.`

NO REPRESENTATIONS CONCERNING THE DEBTORS ARE
AUTHORIZED BY THE DEBTORS OTHER THAN AS SET
FORTH IN THIS STATEMENT. ANY REPRESENTATION
OR INDUCEMENTS MADE TO SECURE YOUR
ACCEPTANCE WHICH IS OTHER THAN AS CONTAINED IN
THIS STATEMENT SHOULD NOT BE RELIED UPON BY
YOU IN ARRIVING AT YOUR DECISION, AND SUCH
ADDITIONAL REPRESENTATIONS AND INDUCEMENTS
SHOULD BE REPORTED TO COUNSEL FOR THE DEBTORS,
WHO IN TURN SHALL DELIVER SUCH INFORMATION TO
THE BANKRUPTCY COURT FOR SUCH ACTION AS MAY BE
DEEMED APPROPRIATE.

THE INFORMATION CONTAINED HEREIN HAS NOT BEEN
SUBJECT TO A CERTIFIED AUDIT. THE DEBTORS ARE
UNABLE TO WARRANT OR REPRESENT THAT THE
INFORMATION CONTAINED HEREIN IS WITHOUT ANY
INACCURACY, ALTHOUGH GREAT EFFORT HAS BEEN
MADE  TO BE ACCURATE.

APPROVAL OF THE ADEQUACY OF THE INFORMATION
CONTAINED IN THIS DISCLOSURE STATEMENT BY THE
COURT DOES NOT CONSTITUTE A RECOMMENDATION
BY THE COURT AS TO THE MERITS OF THE JOINT PLAN.
THE COURT DOES NOT RENDER ANY OPINION AS TO
WHETHER THE JOINT PLAN SHOULD BE ACCEPTED OR

REJECTED BY THE CREDITORS.

CREDITORS ARE URGED TO READ THE PLAN IN FULL. THE PLAN REPRESENTS A PROPOSED LEGAL BINDING AGREEMENT BETWEEN THE DEBTOR AND ITS CREDITORS AND SHAREHOLDERS AND INTERESTED PARTIES, AND IT SHOULD BE READ TOGETHER WITH THIS JOINT DISCLOSURE STATEMENT SO THAT AN INTELLIGENT AND INFORMED JUDGMENT CONCERNING THE JOINT PLAN CAN BE MADE.

II.    <u>OVERVIEW</u>

5. On May 8th, 2013 the Debtors commenced their respective voluntary Chapter 11 cases in the United States Bankruptcy for the Southern District of New York. The Debtors, subject to an order of this court authorizing 11 East Note Buyer LLC's collection of rents and various disbursements as permitted by said order, continued in their business and operated as a Debtors-in-Possession pursuant to §§ 1107 and 1108 of the Bankruptcy Code. No Receiver, examiner or creditor's committee had been appointed.

6. The Debtor 11 East 36th, LLC was formed on November 23rd, 2004 and is the owner of fifteen  (15) condominium units are located at 11 East 36th Street, New York, New York. Morgan Lofts LLC was formed on April 17th, 2007, and is the owner of thirteen (13) condominium units located at 11 East 36th Street, New York, New York.

7. The filing of these Chapter 11 cases was caused by the downturn in the real estate market which inhibited the Debtor's ability to keep up with the real estate taxes. The Debtors' objectives  in these jointly administered Chapter 11 cases is to

stabilize the Debtors' finances, so that ultimately the subject properties could be refinanced or sold for the benefit of all interested parties.

8. The units are presently rented. The units are encumbered by a blanket mortgage in the principal sum of approximately $9,836,240.14, held by 11 East 36 Note Buyer, LLC, and encumbered by a judgment held by Griffon V in the approximate principal amount $2,889,340.95.

9. The building within which the relevant units are located is known as The Morgan Lofts Condominium and is a 12 story building located in the Murray Hill section of Manhattan. The building was purchased in 2004 and developed into a premier condo conversion. The residential apartments owned by the Debtors offer privacy, comfort and luxury and were designed by renowned interior designer Andres Escobar. The units are carefully crafted loft homes some with private elevator entrances and Empire State Building views. Among the many amenities, are 24 hour doorman and rooftop workout facility.

10. The twenty eight (28) units owned by the Debtors, are occupied by tenants under leases.

11. The Debtors' Joint Plan provides for pay – off of the Mortgagee's note and mortgage pursuant to section 1124(1) of the Bankruptcy Code by payment in full in, cash in an amount as fixed and allowed by this Court on the Effective Date. The plan also provides for the payment of monthly payments to Board of Managers of the Morgan Lofts Condominium and to unsecured creditors. The Joint Plan also contemplates the utilization of the net proceeds realized from the sale of both of the commercial units in the related Bay Condos LLC case as well

5

as the use of the net proceeds of the post petition financing to be proved by G4

Capital pursuant to Section 364 of the Code. The Debtors believe that this Joint

Plan is in the best interest of all creditors and will allow a greater distribution than

would otherwise be available.

BACKGROUND

12. The principals of the Debtors successfully developed The Morgan Lofts

   Condominium and the offering went into effect in 2006.  The premises consist of

   residential and commercial retail units.

13. On or about March 20th, 2008 the Debtors entered into a Consolidated and

   Extended Mortgage with First Central Savings Bank ("FCSB") to secure the debt

   in the principal amount of $10,000,000.00.

14. On or about October 13th, 2009 the Debtors entered into a First Modification

   agreement of the FCSB Mortgage.

15. On or about April 27th, 2012, FSBC assigned the Mortgage and Note to 11 East

   36 Note Buyer, LLC.

16. The monthly mortgage payment to 11 East 36 Note Buyer, LLC, is $54,304.00,

   plus real estate taxes on the subject units in the sum of $24,819.00 per month. In

   addition, common charges payable with respect to the subject units amount to

   $23,310.00 per month.

17. As a consequence of an increase in the real estate taxes and the general decline in

   the real estate market, the Debtors and their affiliates were unable to keep current

   on the escrow payment portion of the monthly payment.

18. In or about November 2011, although current on the monthly mortgage payment, the Debtors were in arrears of approximately $225,000.00 in past due real estate taxes.

DEBTORS' JOINT PLAN OF REORGANIZATION
CLASSIFICATION AND TREATMENT OF CLAIMS

CLASS 1

19. Classification- Internal Revenue Service and the New York City real estate taxes and other liens. Claims total approximately $70,000.00.

20. Treatment- Payment  in cash commencing on the Effective date in an amount plus interest at the statutory rate through the date of payment.

21. Voting- Unimpaired and deemed to have accepted the Plan.

CLASS 2

22. Classification- 11 East 36 Street Note Buyer, LLC and Griffon V Secured Claims total approximately $10,962,742.74 and $3,171,051.84, respectively, less any rents collected.

23. Treatment- Payment of the amount necessary to payoff  the Lender's note and mortgage under *Section 1124 (1) of the Bankruptcy Code*, in full in cash on the Effective Date. Payment pursuant to the Lender's note and mortgage thereafter.

24. Voting- Unimpaired and deemed to have accepted the Plan.

CLASS 3

25. Classification- Board of Managers of the Morgan Lofts Condominium, claim totals approximately $563,022.63.

26. Treatment- - Payment of the amount necessary to payoff the lien in full in cash

on the Effective Date.

27. Voting- Unimpaired and deemed to have accepted the Plan.

## CLASS 4

28. Classification- Unsecured Claims.

29. Treatment- Payment in full in cash of Allowed Amount on the effective date.

30. Voting- Unimpaired and deemed to have accepted the Plan.

## CLASS 5

31. Classification-Priority Claims under Sections 507 (a)(2),(3),(4),(5),(6),(7) and (8)

of the Bankruptcy Code.

32. Treatment- Payment in full in cash of Allowed Amount on the effective date.

33. Voting- Unimpaired and deemed to have accepted the Plan.

## CLASS 6

34. Classification- Equity Interest.

35. Treatment- holders shall be entitled to continue to own their Interests.

36. Voting- Impaired and entitled to vote to accept or reject the Plan.

## DEBTORS' OPERATIONS

During the Chapter 11 case, the Debtors have generated rental income in the

approximate amount of $304,000.00 through August, 2013. Said rents have been

collected however, by Note Buyer and Griffon V.

## SOURCE OF FUNDS FOR PLAN

37. The Debtors will have obtained the necessary funds for Confirmation from

operations of the Debtors, its affiliates, the sale of unit 101 and 102, in the related

8

Bay Condos case, and the net proceeds from the financing to be provided by G4

Capital pursuant to Section 364 of the Bankruptcy Code.

## SUMMARY OF PLAN

38. The Plan is composed of 6 classes of creditors. Class 4 representing unsecured

creditors will only constitute a class if this Court determines that the value of the

Real Property is less than the total of the claims of 11 East 36 Note Buyer, LLC

and Griffon V.

39. 11 East Note Buyer, LLC,  and the allowed Class 2 claims shall be paid in full,

commencing upon the Effective Date of the Allowed Claim, plus all accrued

interest and other charges accrued under the loan documents, as allowed by the

Court, less all amounts collected by Note Buyer pursuant to the applicable

Assignment of Rents & Leases. All payments shall first be applied to interest,

other fees allowed by the Court and to principal. The Court shall determine the

amount of the Allowed claim, and if appropriate, the amount of the Allowed

Secured claim and Allowed Unsecured claim of such creditor.

## ADMINISTRATIVE EXPENSES

40. Allowed Administration Expenses shall be paid in full, in cash on the Effective

Date, or the date such Administration Expense becomes Allowed or as soon as

practicable thereafter, except to the extent that the holder of an Allowed

Administration Expense agrees to a different treatment; provided, however, that

Allowed Administration Expenses representing obligations incurred in the

ordinary course of business or assumed by the Debtors shall be paid in full or

performed by the Debtors in the ordinary course of business or pursuant to the

terms and conditions of the particular transaction. Unpaid Chapter 11

professional fees will total approximately $130,000.00 for Debtors' counsel.

41. All outstanding United States Trustee fees shall be paid as they come due.


MEANS OF IMPLEMENTATION


42. Source of Funds— Effective Date payments under the Plan will be paid from the

net proceeds realized from the sale of units 101 and 102 in connection with the

related *Bay Condos, LLC* case, in the approximate amount of $6,075,000.00, less

administrative and transaction costs and; the net proceeds realized from the

financing provided by G4 Capital pursuant to *Section 364(d)(1) of the*

*Bankruptcy Code and Fed. Rule B.P. 4001(c) (1)*, in the approximate net amount

of $9,000,000.00, which funds collectively shall be applied to the payment of the

claims as above mentioned and to *Note Buyer's* allowed claim as fixed by the

Court, less any amounts heretofore collected by Note Buyer pursuant the

applicable *Assignment of Leases and Rents*; to all amounts due to *Griffon V*, as a

judgment creditor; and to Administrative and other Claims as allowed by this

Court in the anticipated amount of $200,000.00.

43.  All outstanding United States Trustee fees shall be paid as they come due.

44. Except as otherwise provided for in the Plan, on the Effective Date, (a) each

holder of a Secured Claim, shall on the Effective Date (i) turn over and release to

the Reorganized Debtors any and all Collateral that secures or purportedly

secures such Claim, as they pertain to the properties currently owned by the

Debtors or such Lien shall automatically, and without further action by the

Debtors or the Reorganized Debtors, be deemed released, and (ii) execute such

documents and instruments as the Reorganized Debtors requests to evidence such

Claim holder's release of such property or Lien.

45. Stamp Tax—Under the Plan, pursuant to Bankruptcy Code § 1146(c),(a) the

issuance, transfer or exchange of any securities, instruments or documents, (b)

the creation of any other Lien, mortgage, deed of trust or other security interest,

(c) the making or assignment of any lease or sublease or the making or delivery

of any deed or other instrument of transfer under, pursuant to, in furtherance of,

or in connection with, the Plan, including, without limitation, any deeds, bills of

sale or assignments executed in connection with the purchase of the Property by

the Purchase and any other transaction contemplated under the Plan or the re-

vesting, transfer or sale of any real or personal property of the Debtors pursuant

to, in implementation of, or as contemplated in the Plan, and (d) the issuance,

renewal, modification or securing of indebtedness by such means, and the

making, delivery or recording of any deed or other instrument of transfer under,

in furtherance of, or in connection with, the Plan, including without limitation,

the Confirmation Order, shall not be subject to any applicable document

recording tax, stamp tax, conveyance fee or other similar tax, mortgage tax, real

estate transfer tax, or other similar tax or government assessment including

without limitation New York City Real Property Transfer Tax and New York

State Documentary Tax.

46. Except as otherwise provided in the Plan, on the effective Date all assets and properties of the Estate shall vest in the Debtors free and clear of all liens, Claims and encumbrances and any and all liens, claims and encumbrances that have not been expressly preserved under the Plan be deemed extinguished as of such date. Except as otherwise provided herein, as of the Effective Date, all property of the Debtors shall be free and clear of all Claims and Interests of Creditors, except for the obligations that are imposed under the Joint Plan or by Final Order of the Bankruptcy Court.

47. Execution of Documents—The Debtors shall be authorized to execute, in the name of any necessary party, any notice of satisfaction, release or discharge of any Lien, Claim or encumbrance not expressly preserved in the Joint Plan and delivery such notices to any and all federal, state and local governmental agencies or departments for filing and recordation.

48. Recording Documents—Each and every federal, state and local governmental agency or department shall be authorized to accept and record any and all documents and instruments necessary, useful or appropriate to effectuate, implement and consummate the transaction contemplated by the Joint Plan, including, but not limited to any and all notices of satisfaction, release or discharge of any Lien, Claim or encumbrance not expressly preserved by the Plan, and the Confirmation Order.

## LIQUIDATION ANALYSIS

49. In liquidation under Chapter 7 of the Bankruptcy Code, the Debtors' assets would be sold and the sale proceeds distributed to creditors in their order of priority.

The Debtors believes that the Joint Plan provides a far better return for the Debtors' estate than could be achieved in liquidation.

50. In addition, a Chapter 7 Trustee represents an additional layer of administration legal expenses and commissions, which the Debtors estimate would total at least 15% of the sale proceeds.


## LITIGATION ANALYSIS

51.  The Debtors are currently involved in the following litigation:

a)  11 East 36th LLC v. Jaspan, Sclesinginger, New York County Supreme Court, Index No.: 112776/2010. Legal malpractice claim. Case is in discovery phase.

b)  Philadelphia Indemnity Insurance Co. of New York, LLC v. Jenny Lin, 11 East 36th LLC, Morgan Lofts, LLC, et al, New York County Supreme Court Index No.: 111846/2010. Insurance indemnity claim. Plaintiff amenable to settlement of claims against Debtors in exchange for the sum of $2,500.00. Case is in the discovery phase.

c)  11 East 36 Note Buyer, LLC and Yellow Brick Real Estate Capital, LLC v. Morgan Lofts, LLC, 11 East 36th LLC, et al, New York County Supreme Court Index No.: 850079/2012. Foreclosure Action. Case is in pre-computation stage.

d)  Griffon V, LLC v. 11 east 36th LLC, et al, New York County Supreme Court Index No.: 654177/2012. Conveyance Action. Case is in preliminary discovery stage.

### PAYMENT OF CLAIMS AND OBJECTIONS TO CLAIMS

52. The Debtors shall be the disbursing agent under the Plan. The Debtors have not completed its claims review and reserves its right to file objections to claims in the event grounds exist to object to particular claims. The Debtors may file objections to Claims for a period of 120 days after the Effective Date. On the initial distribution date and on each distribution date as may thereafter be necessary, the Debtors shall maintain an undetermined claims distribution reserve for the holders of undetermined claims as of such date in a sum not less than the amount required to pay each such undetermined claim if such claim was allowed in full. To the extent that an undetermined claim becomes an Allowed Claim, the distribution reserved for such Allowed Claim, shall be released from the undetermined claim distribution reserve and paid to the holder of such Allowed Claim. After all the amounts of all undetermined claims have been fixed, the balance of the undetermined claims distribution reserve shall thereafter be paid in accordance with the Plan.

### EXECUTORY CONTRACTS AND UNEXPIRED LEASES

53. All unexpired leases and executory contracts not rejected prior to the Effective Date shall be assumed under the Plan. In the event of a rejection of an Executory Contract which results in damage to the other party or parties to the Executory Contract, a Proof of Claim for such damages must be filed by the damaged party with the Court within sixty (60) days after the Effective Date. All Allowed Claims arising from the rejection of any Executory Contract shall be treated as an Unsecured Claim. Any Claim arising from the rejection of any Executory

Contract not filed with the Court within the time period provided in the preceding

paragraph above shall be deemed discharged and shall not be entitled to

participate in any distribution under the Joint Plan.

## MANAGEMENT OF THE DEBTORS

59. The Debtors properties are managed by 11 East 36 Note Buyer LLC who is

currently collecting rents under an Assignment of Leases and Rents. Post

confirmation management will revert back to Ben Bobker, the managing member of

the Debtor entities. However the Debtors may hire a new managing agent for the

property.

## TAX CONSEQUENSES

60. The Debtors do not believe that there will be any negative tax consequences to

the Debtors or to Creditors under the Plan. To the extent that a creditor is not paid

in full under the Plan, such creditor may be entitled to a bad debt deduction. To

the extent that a creditor has taken a bad debt deduction, Plan distribution may be

taxable as income.

61. THE DEBTORS DO NOT PURPORT, THROUGH THIS DISCLOSURE

STATEMENT, TO ADVISE THE CREDITORS OR INTEREST HOLDERS

REGARDING THE TAX CONSEQUENCES OF THE TREATMENT THAT

CREDITORS AND INTEREST HOLDERS UNDER THE JOINT PLAN.

CREDITORS AND INTEREST HOLDER SHOULD SEEK INDEPENDENT

COUNSEL CONCERNING THE TAX CONSEQUENCES OF THEIR

TREATMENT UNDER THE PALN.

## VOTING PROCEDURES AND REQUIRMENTS

62. A ballot to be used for voting to accept or reject the Joint Plan is enclosed with
this Disclosure Statement. Each creditor is entitled to execute the ballot, and
return it to the undersigned to be considered for voting purposes. The Bankruptcy
Court has directed that, in order to be counted for voting purposes, ballots for the
acceptance or rejection of the Plan must be received no later than_____,
2013, at the following address: AJ Gallo Associates, P.C., 445 Northern Blvd.,
Suite 11, Great Neck, New York 11021.

63. Each Creditor of the Debtors whose Claim is impaired under the Plan is entitled
to vote, if either (i) its Claim has been scheduled by the Debtors, or (ii) it has
filed a Proof of Claim on or before the last date set by the Bankruptcy Court for
such filing.

64. Any Claim as to which an objection has been filed (and such objection is still
pending) is not entitled to vote, unless the Bankruptcy Court temporarily allows
the Claim in an amount which it deems proper for the purpose of accepting  or
rejecting the Plan upon motion by a Creditor whose Claim is subject to an
objection. Such motion must be heard and determined by the Bankruptcy Court
prior to the date established by the Court to confirm the Plan.

65. A Creditor's vote may be disregarded if the Bankruptcy Court determines that the
Creditor's acceptance or rejection was not solicited or procured in good faith or
in accordance with the provisions of the Bankruptcy Code.

66. The Bankruptcy Code defines acceptance of a Plan by a class of Creditors as
acceptance by holders of two-thirds in dollar amount and a majority in number of

the Claims of that class which actually cast ballots for acceptance or rejection of
the Plan.

67. The Bankruptcy Code defines acceptance of a Joint Plan by a class held by a
class of Interests as acceptance by holders of two-thirds in amount of the allowed
Interests of such class held by holders of such interests.

## CONFIRMATION OF THE PLAN

68. Section 1128(a) of the Bankruptcy Code requires that the Bankruptcy Court, after
notice, hold a hearing on confirmation of the Plan (the "Confirmation Hearing").
Section 1128(b) provides that a party in interest may object to confirmation of the
Plan.

69. By order of the Bankruptcy Court dated _____, 2013, the Confirmation
Hearing has been scheduled for_____, 2013 at ____.m., in the Honorable
James M. Peck's Courtroom, United States Bankruptcy Court, One Bowling
Green, New York, New York. The Confirmation Hearing may be adjourned from
time to time by the Bankruptcy Court without further notice except an
announcement made at the Confirmation Hearing or any adjourned Confirmation
Hearing. Any objection to confirmation of the Joint Plan must be made in writing
and filed with the Bankruptcy Court with proof of service and served upon the
following on or before _____, 2013: AJ Gallo Associates, P.C., 445 Northern
Blvd., Suite 11, Great Neck, New York 11021. Objections to confirmation of the
Plan are governed by Bankruptcy Rule 9014.

70. At the Confirmation Hearing, the Bankruptcy Court will determine whether the
requirements of Section 1129 of the Bankruptcy Code have been satisfied to

enter an order confirming the Joint Plan. The applicable requirements are as

follows: (a) The Joint Plan complies with the applicable provisions of the

Bankruptcy Code, (b) the Debtors have complied with the applicable provisions

of the Bankruptcy Code; (c) the Joint Plan has been proposed in good faith and

not by any means forbidden by law, (d) any payment made or promised or by a

person issuing securities or acquiring property under the Joint Plan, for services

or for costs and expenses in, or in connection with, Bankruptcy Case, or in

connection with the Plan and incident to the Bankruptcy Case, has been disclosed

to the Bankruptcy Court, and any such payment made before the confirmation of

the Joint Plan is reasonable, or if such payment is to be fixed after confirmation

of the Joint Plan is reasonable, or if such payment is to be fixed after

confirmation of the Joint Plan, such payment is subject to the approval of the

Bankruptcy Court as reasonable, (e) the Debtors have disclosed the identity and

affiliation of any individual proposed to serve, after confirmation of the Joint

Plan, as a director, officer, or voting trustee of the Debtors, an affiliate of the

Debtors participating in the Joint Plan with the Debtors, or a successor to the

Debtors under the Joint Plan, and the appointment to, or continuance in, such

office of such individual, is consistent with the interests of Creditors and equity

security holders and with public policy, and the Debtors have disclosed the

identity of any insider that will be employed or retained by the reorganized

Debtors, and the nature of any compensation for such insider, (f) with respect to

each class of impaired Claims, either each holder of a Claim or interest of such

class has accepted the Joint Plan, or will receive or retain under the Joint Plan on

18

account of such Claim or interest property of a value, as of the Effective Date of the Joint Plan, an amount that is not less than the amount that such holder would so receive or retain if the Debtors was liquidated on such date under Chapter 7 of the bankruptcy Code, (g) each class of Claims or interests has either accepted the Plan or is not impaired under the Plan, (h) except to the extent that a holder of a particular Claim has agreed to a different treatment of such Claim, the Joint Plan provides that Administrative Expenses and priority Claims will be paid in full on the Effective Date, (i) at least one class of impaired Claims has accepted the Plan, determined without including any acceptance of the Joint Plan by any insider holding a Claim of such class, and (j) confirmation of the Joint Plan is not likely to be followed by the liquidation, or the need for further financial reorganization of the Debtors or any successor to the Debtors under the Joint Plan unless such liquidation or reorganization is proposed in the Joint Plan.

71. The Debtors believe that the Joint Plan satisfies all of the statutory requirements of Chapter 11 of the Bankruptcy Code, that the Debtors have complied or will have complied with all of the requirements of Chapter 11, and that the proposals contained in the Joint Plan are made in good faith.

72. The Debtors contend that the holders of all Claims impaired under the Joint Plan will receive payments under the Plan having a present value as of the Effective Date in amounts not less than the amounts likely to be received if the Debtors were liquidated under Chapter 7 of the Bankruptcy Code.

CRAMDOWN

73. In the event that any impaired class of Claims do not accept the Plan, the Bankruptcy Court may still confirm the Joint Plan at the request of the Debtors if, as to each impaired class which has not accepted the Joint Plan, the Plan "does not discriminate unfairly" and is "fair and equitable."

74. The Debtors intend to invoke the "cramdown" provisions of section 1129(b) as to any impaired class that does not accept the Joint Plan.

75. A plan of reorganization does not discriminate unfairly within the meaning of the Bankruptcy Code if no class receives less than it is legally entitles to receive for its Claims or equity interest. "fair and equitable" has different meanings for Secured and Unsecured Claims.

76. With respect to a Secured Claim, "fair and equitable" means either: (a) the impaired Secured Creditor retains its Lien to the extent of its Allowed Claim and receives deferred cash payments at least equal to the allowed amount of its Claim with a present value as of the Effective date at least equal to the value of such Creditor's interest in the property securing its Liens; (b) property subject to the Lien of the impaired Secured Creditor is sold free and clear of that Lien, with that lien attaching to the proceeds of the sale; or (c) the impaired Secured Creditor realizes the "indubitable equivalent" of its Claim under the Joint Plan.

77. With respect to an Unsecured Claim, Fair and equitable" means either: (a) each impaired Unsecured Creditor receives or retains property of a value equal to the amount of its Allowed Claim; or (b) the holder of Claims and Interests that are junior to the Claims of the dissenting class will not receive any property under the Joint Plan.

78. In the event one or more classes of impaired Claims rejects the Joint Plan, the

Bankruptcy Court will determine at the Confirmation Hearing whether the Plan is

fair and equitable and does not discriminate unfairly against any rejecting

impaired class of Claims.

CONCLUSION

79. The Debtors urge the Debtors' Creditors to vote to accept the Joint Plan and to

evidence such acceptance by returning their ballots so that they will be received

no later than_____.


**Dated:**  Great Neck, New York
          September 26th, 2013


                              11 EAST 36th, LLC,
                              MORGAN LOFTS, LLC,

                          By: /s/ Ben Bobker_____
                              Ben Bobker, Managing Member


                              A J Gallo Associates, P.C.
                              Attorneys for the Debtors
                              445 Northern Blvd., Suite 11
                              Great Neck, New York 11021
                              Tel. No. 516-342-5880


                          By: /s/ Anthony J. Gallo, Esq.
                              Anthony J. Gallo, Esq. (AG7746)