UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------x

In re                                                        Chapter 11

        11 East 36 LLC, et al.                               Case no.  13-11506-7

                        Debtors.

---------------------------------------------------------x

## NOTICE OF HEARING

        PLEASE TAKE NOTICE, a hearing will be held on March 18, 2014 at 10:00 a.m.
(the "Hearing") before the Honorable Robert E. Grossman, at the United States Bankruptcy
Court, One Bowling Green, New York, New York 10004 to consider the annexed application
("Application") of 11 East 36 Note Buyer LLC and Griffon V LLC ("Movants") in the 11 East
36 LLC, et al. (the "Debtors") Chapter 11 cases, for the entry of an order estimating the claims of
the Movants and Victoria Guthrie for plan purposes under section 502(c) of the Bankruptcy
Code.

        PLEASE TAKE FURTHER NOTICE, that a copy of the exhibits to the
Application is filed with the Clerk of the Bankruptcy Court and may be obtained through the
Bankruptcy Court's ECF/PACER electronic filing system, or upon request made to the
undersigned.

        PLEASE TAKE FURTHER NOTICE, that objections, if any, must be in writing,
served upon the undersigned, and filed with the Clerk of the Bankruptcy Court, with a courtesy
copy to the Judge Grossman's chambers, so as to be received at least seven (7) days prior to the
Hearing date.

Dated: New York, New York
        February 25, 2014

                                        BACKENROTH FRANKEL & KRINSKY,
                                        LLP

                            By:     s/ Mark Frankel
                                    800 Third Avenue
                                    New York, New York  10022
                                    (212) 593-1100

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
In re                                                               Chapter 11

11 East 36th LLC and Morgan Lofts LLC,                              Case no.  13-11506-7

                                    Debtor.
-------------------------------------------------------------x


## **MOTION TO ESTIMATE CLAIMS FOR PLAN PURPOSES**

        11 East 36 Note Buyer LLC and Griffon V LLC (the "Mortgagees"), as and for

their motion to (a) estimate the Mortgagees' claims for plan and credit bidding purposes and (b)

estimate the claim of Victoria Guthrie for voting purposes, in the cases of 11 East 36th LLC and

Morgan Lofts LLC ("Debtors"), respectfully represent as follows:

(a) **No notice was required to trigger default interest under the Mortgagee's loan documents,**

(b) **The weight of Second Circuit authority holds that there is no basis to reduce default interest for the purpose of benefitting equity holders; in this case, the Mortgagees have agreed, as part of a mortgagee proposed plan, to subordinate $376,858 of their default interest to general unsecured creditor claims, which appears to be sufficient to pay the legitimate general unsecured claims in full,**

(c) **The Debtors' argument that the Mortgagees' predecessor engaged in misconduct is contradicted by the correspondence they rely upon, and in all events, the Debtors' own unclean hands forecloses any demand for such equitable relief,**

(d) **The Mortgagees' loan documents provide for payment of attorneys' fees, and the amounts sought are reasonable relative to the staggering amount of litigation the Debtors and their affiliates have generated; and as to interest on advances, the loan documents authorize the Mortgagees to apply payments in their discretion, and**

(e) **For Plan estimation purposes, Victoria Guthrie's claim should be expunged because the documents she annexed to her proof of claim fail to show any obligation by either of the Debtors.**

## BACKGROUND

1.      On May 8, 2013, each Debtor filed a Chapter 11 petition under Title 11 of
the United States Code, 11 U.S.C. "101 et seq. (the "Bankruptcy Code").

The Estates' Assets

2.      11 East 36 LLC owns those certain residential condominium units known
as units 306, 406, 606, 1006, 1101, 1206, unbuilt storage units CS1-CS35 used as offices by the
Debtors, units 201, 202, 203, 204, 205, and 206 which have been combined into a leased office
suite, and a 2.8% interest in commercial units 101 and 102 located at 11 East 36th Street, New
York, New York (the "11 East 36 Units").  11 East 36 LLC also owns 100% of the membership
interests in Morgan Lofts LLC.

3.      Morgan Lofts LLC owns those certain residential condominium units
known as units 701, 801, 803, 804, 903, 904, 1003, 1004, 1103, and 1104 located at 11 East 36th
Street, New York, New York the (the "Morgan Lofts Units," and collectively with the 11 East 36
Units, the "Property").

4.      The Debtors state in their local rule affidavits that the value of the 11 East
36 Units is $11,375,000 and that the value of the Morgan Lofts Units is $9,700,000, for a grand
total of $21,075,000.  This value is almost certainly overstated because the Debtors have
incorrectly assumed that the Property can be sold by way of retail sales.  In fact the Property
cannot be sold to homeowners because, among other things, the offering plan needs to be
amended due to misrepresentations made by the Debtors as to the number of units that it could

2

build.  This, and various instances of Debtors' misconduct led to shortfalls in common charges and the decision by the Attorney General to prohibit the Debtors from even submitting offering plan amendments.

5.      In any event, given the volatile New York real estate market, including the unexpected bidding war in the related Bay Condos bankruptcy case, no one will know the value of the Property until it is sold.

<u>The Estates' Liabilities</u>

6.      As of the Petition Date, 11 East 36 Note Buyer LLC and Griffon V LLC (the "Proponent" or the "Mortgagee") assert first mortgage claims.  11 East 36 Note Buyer LLC asserts a first mortgage claim against certain of the units in the amount of approximately $13,725,516, and Griffon V LLC asserts a first mortgage judgment claim against other units in the amount of $3,132,482.00.  The Grand total of the Petition Date Mortgagee claims is $16,857,998.00.

7.      As set forth on Exhibit A hereto, the total amount due as of February 10, 2014 is $19,267,236, plus interest accruing in the amount of $8,035 per day, plus accruing fees and expenses.

8.      After taking into account the projected $6,075,000 Bay Condos sale proceeds, there may very well be equity in the Property.

9.      The general unsecured creditors include the Condominium Association for the Property which asserts a $376,858.33 claim for unpaid common as of the Petition Date, and

3

Victoria Guthrie who asserts an $877,500 claim. A copy of Ms. Guthrie's claim is annexed

hereto as Exhibit B.

10.     Victoria Guthrie was a Marcus & Millichap real estate broker who was an

insider of the Debtors (as that term is defined by New York Cooperative and Condominium law)

at the time the Debtors' Condominium plan was approved. Upon information and belief, she

took certain commissions in the form of one or more condominium units. In order to get the

Condominium plan approved, upon information and belief, she helped the Debtors make it

appear to the New York Attorney General that she was a non-insider retail purchaser in order to

satisfy the threshold requirement for units sold to non-insiders.

11.     Then she made a big mistake. She allowed her apartment to be used as

collateral for a loan taken out by the Bobker controlled Morgan Investment Fund, LLC. Morgan

Investment Fund has no direct relationship to the Debtors. Based upon the loan agreement

attached to her proof of claim, Ms Guthrie's claim is not against either of the Debtors, therefore,

but rather her claim is against the Morgan Investment Fund, LLC.

12.     The Debtor 11 East 36th LLC owns the shares of Debtor Morgan Lofts

LLC. A Pledge agreement attached to her proof of claim indicates that as collateral for the

Morgan Investment Fund obligation to Ms. Guthrie, the 11 East 36th LLC Debtor pledged its

membership interests in Morgan Lofts LLC as follows: "Pledgor hereby pledges and grants to

Pledgee a continuing security interest in all right, title and interest of Pledgor in and to its

membership interest in Morgan Lofts, LLC ("Collateral")."

4

13.     Ms. Guthrie does not appear to have filed a financing statement to perfect an interest in that membership interest so that pledge was never perfected and remains unenforceable in bankruptcy as against the Debtors' creditors.

14.     Instead of filing to perfect her membership interest, Ms. Guthrie filed a financing statement against 11 East 36th LLC claiming a security interest in "11 East 36th, LLC's interest in the Following units owned by Morgan Lofts, LLC  and located at 11 East36th St., NY, NY: 101, 801, 803, 804, 903, 904, 1003,1004, 1103 and 1104."

15.     Since 11 East 36th LLC had no direct interest in the Morgan Lofts units, Ms. Guthrie's UCC filing is ineffective to perfect an interest in that alleged collateral.

16.     Accordingly, Ms. Guthrie has neither a lien nor a claim against either of the Debtors.

17.     Thus, the Debtor's legitimate general unsecured claims appear to be limited to the Condominium Association claim, in the amount of approximately $376,858.

18.     The Mortgagees' plan in these cases proposes to carve out $376,858 as a distribution to general unsecured creditors because the Mortgagees understand the Condominium Association to be the only legitimate creditor and the Mortgagees goal is to pay all legitimate creditors in full.

5

The Chapter 11 Case

19.     The origin of the Debtors' financial problems is unclear. It is known that the Property has never generated sufficient net operating income to service the Debtors' obligations.  The Debtors' primary problem appears to be their inability to sell units to bridge the gap between net operating income and debt service.  There has been no explanation, however, as to what happened to the rents the Debtors were collecting from their subtenants during the time they were failing to pay any expenses whatsoever, including a total default on payment of common charges to the Condominium Association.  The Debtors have refused to respond to the Mortgagees' subpoenas seeking such information.

20.     In any event, as intimated above, it appears that the reason the Debtor could not sell units was the Debtors' apparent misconduct as sponsor of the Condominium.  The New York Attorney General has terminated the Debtors' right to sell units, and based upon information obtained by the Condominium Association, it is unlikely that that the Attorney General will reverse that decision.  Without sales of Units to individual unit purchasers under a New York State approved condominium plan, the Debtors cannot even begin to satisfy their obligations to the Mortgagees and the Condominium Association because the Units generate insufficient cash flow.  By the same token, were the Debtors to make a capital infusion or find a generous new lender to refinance the Mortgagees' debt, the same cash flow problem would repeat itself.

21.     The Mortgagees have spoken to the Condominium board.  Based upon those conversations, the Mortgagees understand that the misconduct that led the Attorney

6

General to bar amendments that would permit retail sales of units includes, but is not limited to,

(a) failure to pay common charges on units the Debtors as sponsors are leasing to subtenants, (b)

failure to pay common charges on un-built units that the Debtors as sponsors promised to build

and thus included in the offering plan, and (c) failure to build units that the sponsors promised in

the offering plan to build (d) use of the basement space as rent-free Bobker family offices, rather

than amenities promised in the Debtors' offering plan.

22.     The last item is not insignificant.  The Debtors promised condominium

buyers that the Debtors would build amenities in the basement common area such as an exercise

area or storage units.  That affected the price at which units were sold.  Instead the Bobkers

maintain offices in the space.  They occupy the space rent free and run any number of businesses

from the location.  They pay no rent.  It is remarkable that Debtors in bankruptcy are actually

squatting in space they have no right to occupy.

23.     In any event, given the hostility that exists between the Condominium

Association and the Attorney General on the one side, and the Bobker family on the other side,

the only exit strategy is a bulk sale of the Property to a buyer who can gain New York Attorney

General approval for future retail sales.

24.     Based upon the foregoing, the Mortgagees made a lift stay motion in these

cases and were granted conditional stay relief, which caused the Debtors to file a sale

application.  The Debtors then sought to withdraw that application.  Ultimately, the Debtors

agreed to work with the Mortgagees on consensual sale procedures.  That effort has again

bogged down due to the Debtors' insistence on retail sales of condominium units, which, as noted above, would be illegal.

25.     Indeed, in August, the Debtors filed their own plan and disclosure statement in this case providing for a refinance of the Mortgagees' obligations with the intention of ultimately selling the units on a retail basis.  The Debtors have failed to schedule their disclosure statement for a hearing.

26.     Accordingly, the Mortgagees submit that the most expedient means by which to solve the Debtors' problems, and the Condominium's problems is through confirmation of the Mortgagee-sponsored Chapter 11 plan that creates a fund for the payment of creditor claims.

27.     In the meantime, under a stipulation with the Debtors, the Mortgagees collect rents from the Debtors' tenants and use such proceeds to pay (a) the ordinary and necessary post-petition costs and expenses incurred in the ordinary course of the operation and maintenance of the Units, (b) the fees required to be paid to the United States Trustee on a quarterly basis and (c) debt service, to the extent funds are available.

## THE NEED TO ESTIMATE THE MORTGAGEES' CLAIMS AND THE GUTHRIE CLAIM

28.     Against this background, the Debtors filed objections to the Mortgagees' claims, and more recently an adversary proceeding based upon substantially the same set of facts.

8

29.     A sale of the Property is likely under the Mortgagees' Plan.  The

Mortgagees intend to credit bid and the parties need to know how much the credit bid will be.

Litigation of the Debtors' challenges to the Mortgagees' claim could delay a sale indefinitely.

30.     Such a delay creates a big problem.  The Property does not generate

positive cash flow.  The Condominium is suffering from deferred maintenance.  Homeowners

are suffering because they cannot sell or refinance at market rates until the finances are

stabilized.  That can only happen through a sale.  The sooner the better for all involved.

31.     Section 502(c) of the Bankruptcy Code provides for the estimation of

unliquidated claims: "(c) There shall be estimated for purposes of allowance under this section

(1) any contingent or unliquidated claim, the fixing or liquidation of which, as the case may be,

would unduly delay the administration of the case. . . . "  11 U.S.C. § 502(c).

32.     Thus, the courts have recognized that the ability to estimate disputed

claims under section 502(c).  *See In re Wallace's Bookstores, Inc.*, 317 B.R. 720, 724 (Bankr.

E.D. Ky. 2004) (holding that a liquidating supervisor had the right under section 502(c) to seek

estimation of disputed claims pursuant to a plan of reorganization); *In re Adelphia Bus.*

*Solutions, Inc.*, 341 B.R. 415, 422-23 (Bankr. S.D.N.Y. 2003) (estimating the disputed

unliquidated amount of an administrative claim under section 502(c)).

33.     The clearly-stated purpose of allowing for estimation of claims is to

"avoid undue delay in the administration of bankruptcy proceedings." *Frito-Lay, Inc. v. LTV*

*Steel Co. (In re Chateaugay Corp.)*, 10 F.3d 944, 957 (2d Cir. 1993). As such, bankruptcy courts

may estimate claims under section 502(c)(1) of the Bankruptcy Code in order: "[t]o avoid the

9

need to await the resolution of outside lawsuits to determine issues of liability or amount owed

by means of anticipating and estimating the likely outcome of these actions, and 2) . . . to

promote a fair distribution to creditors through a realistic assessment of uncertain claims."

*O'Neill v. Cont'l Airlines, Inc. (In re Cont'l Airlines, Inc.)*, 981 F.2d 1450, 1461 (5th Cir. 1993).

In addition, estimation of a claim under section 502(c)(1) is appropriate if liquidating of a claim

"will take too long and unduly delay the distribution of the estate's assets." *In re N.Y. Med.*

*Group, P.C.*, 265 B.R. 408, 415 (Bankr. S.D.N.Y. 2001).  Moreover, section 502(c) uses the

word "shall," and, therefore, estimation is mandatory rather than permissive if the criteria of

section 502(c) are met. *See, e.g., Int'l Bhd. Of Teamsters v. IML Freight, Inc.*, 789 F.2d 1460,

1463 (10th Cir. 1986); *In re Frontier Airlines, Inc.*, 137 B.R. 811, 814 (D. Colo. 1992); *In re*

*Lane*, 68 B.R. 609, 611 (Bankr. D. Haw. 1986); *In re The Nova Real Estate Inv.*, 23 B.R. 62, 65

(Bankr. E.D. Va. 1982).

        34.    The Mortgagees respectfully submit that factors supporting the estimation

of their claims and the Guthrie claim pursuant to sections 502(c)(1) and (c)(2) are present here.

With respect to section 502(c)(1): (a) it will take a significant amount of time for the prosecution

of objections to claims and for the resolution of the Debtors' recently filed adversary proceeding;

and (b) waiting for the liquidation of the Mortgagees' Claims will unduly delay the

administration of the Debtor's estate, particularly because the Mortgagees are prepared to

immediately proceed toward confirmation of their Plan, including the sale of the Property,

however, they do not know how much they are permitted to credit bid.  Similarly, with respect to

the Guthrie claim, in the absence of a claims estimation determination, the Condominium

10

Association would be uncertain as to whether it gets paid in full under the Plan or a fraction of the amount it is due.

35.     The Debtors' creditors including the Condominium Association have waited years to get to a sale.  More importantly, any additional delay would deprive the families that own apartments of their freedom from the sponsor, the collection of long overdue common charges and the chance for the homeowners to move on with their lives.

36.     In conducting a review of a claim for estimation purposes, it is not possible for a court to estimate the value of the claim with absolute certainty; thus, estimation requires only "sufficient evidence on which to base a *reasonable estimate* of the claim." *Bittner v. Borne Chem. Co.*, 691 F.2d 134, 135 (3d Cir. 1982) (emphasis added). Moreover, for purposes of estimating claims under section 502(c) of the Bankruptcy Code, bankruptcy courts may use whatever method is best suited to the particular contingencies at issue, provided that the procedure is consistent with the policy underlying chapter 11, that a "reorganization must be accomplished quickly and efficiently." *Id.* at 135-37.

37.     The Guthrie claim, the Mortgagees' Claims and Debtors' objections are largely document based.  The Mortgagees submit that the Court's review of the documents is should be sufficient for expedited estimation procedures as the documents speak for themselves.

**No notice by the Mortgagee was required to trigger default interest**

38.     The Debtors' argument that the Mortgagee's predecessor failed to comply with the notice provisions of the 11 East 36th LLC note and mortgage does not hold water.

11

Pursuant to the fourth paragraph of the March 20, 2008 Substitute Note (Exhibit C), default interest is triggered by the existence of a default, *not* a notice of default.  The note reads as follows: "Interest after default or maturity hereunder shall be at the rate of twenty-four percent (24%) per annum (the "Default Rate"), and such rate shall continue after judgment until payment of the entire sum owed hereunder."

39.    In this case, the Debtors do not deny that they were in default.  The Debtors argue that the lender failed to provide notice of default as required by the loan documents.  The Debtors reliance on the provision they cite is misplaced.  Paragraph 7 of the Mortgage (Exhibit D) relates solely to the lender's right to *accelerate* payment.  There is no reference in paragraph 7 to any notice requirement with respect to application of the default rate of interest.  Accordingly, the Mortgagee asserts that the Debtor's notice argument is contradicted by the loan documents.

40.    Incidentally, the required notice of acceleration under paragraph 7 of the Mortgage only relates to selected defaults such as non-payment of an installment payment, taxes or insurance.  Paragraph 8 of the Mortgage contains a list of nineteen (19) so-called "Additional Defaults" most of which require no notice to trigger acceleration, including among others, the filing of a bankruptcy in paragraph 8(n), and a final judgment against the Debtor or any guarantor in excess of $25,000 in paragraph 8(o).  In this case, therefore, each of (a) the Condominium judgment lien for common charges in 2009, (b) the subsequent judgment in 2010, (c) the Grand Pacific judgment against the Bobker principals in the amount of $10,000,000 in

12

2010 and (d) the Griffon judgment against 11 East 36th triggered acceleration without the need for further notice.

**In the Second Circuit the general rule is to presume that a lender is entitled to the default rate of interest set forth in the contract between lender and borrower**

41.     In the Second Circuit there is a presumption in favor of applying the default rate of interest set forth in a contract between a lender and a debtor.  *See, e.g., Ruskin v. Griffiths,* 269 F.2d 827 (2d Cir. *1959); In re Urban Communicators PCS Ltd.P'ship,* 394 B.R. *325* (S.D.N.Y. 2008); *In re Adejobi,* 404 B.R. 78 (Bankr. E.D.N.Y. 2009); *In re South Side House*, 451 B.R. 248, 264 (Bankr. E.D.N.Y. 2011); *In re 139-141 Owners Corp.,* 313 B.R. 364 (Bankr. S.D.N.Y. 2004); *In re Vanderveer Estates Holdings, Inc.,* 283 B.R. 122 (Bankr. E.D.N.Y. 2002); *In re Vest Assocs.,* 217 B.R. 696, 702 (Bankr. S.D.N.Y. 1998).

42.     Moreover, even in the context of section 1124(2) of the Bankruptcy Code which a few courts have held allows a debtor to avoid default interest, the weight of Second Circuit case law holds that there is no basis to reduce default interest *for the purpose of benefitting equity holders*,   *E.g. In re General Growth Properties, Inc.,* 451 B.R. 323 (Bankr. .S.D.N.Y., 2011); *accord In re 139-141 Owners Corp.,* 313 B.R. 364 (Bankr. S.D.N.Y. 2004).

43.     In this case, aside from the Mortgagees, the only other creditor that appears to have a legitimate claim is the Condominium Association, which is owed common charges totaling $376,858.  The Mortgagees have both agreed in their proposed plan to subordinate their default interest claims up to $376,858, as that appears to be the extent of

legitimate general unsecured claims in these cases.  As shown above, Victoria Guthrie's claim as a general unsecured creditor against the Debtors should be expunged.

44.     In short under the Mortgagees' plan, payment of default interest does not come out of the pockets of creditors, and in such circumstances, the overwhelming weight of authority holds that there is no basis to change the deal between borrower and lender.

**The Debtors' argument that the Lenders' predecessor engaged in misconduct is contradicted by the correspondence they rely upon, and in all events, the Debtors' own unclean hands forecloses any demand for such equitable relief**

45.     The Mortgagees acknowledge, as explained in *In re P.G. Realty Co.,* 220 B.R. 773, 780 (Bankr. E.D.N.Y. 1998), that in rare instances, the courts may deviate from the application of the contract default interest rate on an equitable basis.  This is not such a rare instance.  Indeed, such relief should only be granted: "where there has been misconduct by the creditor, where application of the statutory interest rate would cause direct harm to the unsecured creditors, where the statutory interest rate is a penalty, or where its application would prevent the Debtor's fresh start."

46.     No equitable basis exists in this case.  Not only would the benefit of such relief flow to owners as opposed to creditors, the statutory rate is presumed to be enforceable and the Debtors' plan for a fresh start is illusory.

47.     In other words, the presumption in favor of the contractual default rate is rebuttable by a debtor based upon equitable considerations, none of which have been enunciated by the Debtor, and none of which are present in this case.

14

48.     In that regard, any discussion of equitable relief in favor of the Debtors needs to begin with the fact that the Debtor has unclean hands.  The Debtors have never accounted for the subtenant rents they were collecting while not paying common charges or debt service.  The Debtors have disregarded subpoenas to elicit such information.  The Debtors have left the Condominium finances in such a state of disarray that the homeowners who bought apartments cannot sell their units or refinance at market rates.  The Debtors and their insiders and their related business continue to squat in the Condominium basement rent-free.

49.     As to the purported lender misconduct alluded to by the Debtor, some background puts the Debtor's story into perspective.  Upon information and belief, in the spring of 2011, FCSB, the Mortgagee's predecessor in interest came under regulatory pressure to clean up its loans.  Subsequently, there appear to have been a series of proposals exchanged between the Debtor and FCSB, to cure the defaults existing by large cure payments and pledging additional collateral.  Upon information and belief, it appeared to FCSB that the Debtor was stringing the bank along hoping that FDIC pressure would increase and that the Debtor could get a discount.  Upon information and belief, in the fourth quarter of 2011, the bank was told to sell its bad loans, and the Bank had lost patience with the Debtors' constant negotiation in any event.

50.     As to FCSB's communications with the Debtors, the documents speak for themselves.

51.     On December 7, 2011, FCSB sent the Debtors an itemized demand letter, a copy of which is annexed hereto as Exhibit E, indicating a $467,078.97 past due amount including interest, late charges, tax escrow payments and reimbursement for taxes paid by the

15

bank.  The Debtors responded by paying $123,000 as they state in their claims objection.  The loan remained in default.  The Debtors had no right to a partial release of collateral while the loan was in default.  Indeed, even if the Debtors had paid the amounts due, the loans were in default for other reasons including the lien claims the Debtors were incurring.

52.    Although the Debtor alleges to have proceeded to present a few purported offers in the form of letters of intent to purchase Unit 101, upon information and belief, the bank essentially responded that it could not release the unit because the Debtor was in default. [1]  In fact, there was still an unpaid balance of $396,000 based upon FCSB's December 15, 2011 letter, a copy of which is annexed hereto as Exhibit F.  FCSB continued to refuse the Debtors' demands to release Unit 101 because the Debtor never cured its arrears.

53.    FCSB continued to send routine demand letters, Exhibit F, but the Debtors never paid those amounts, nor did they make further payments in response to arrears set forth in detail in the more December 7, 2011 detailed accounting.

54.    Thus, the Debtors' attempt to imply some sort of misconduct fails.  After the initial insufficient $123,000 payment, the Debtors ignored all payment demands, from the detailed complete demand letter to the routine missed payment demand letters.  Thus, the Debtors remained in default.

--------

[1] The Debtors were already in arrears and the stated interest rate on the loan was scheduled to increase from 5% to 6.75% in February 2012.   The sale of the unit at the price contemplated would have  made the negative cash flow worse.

16

55.     The Debtor points out that demand letters were inconsistent in the cure amounts demanded.  Generally, the letters sent after the initial December 7, 2011 letter did not include all of the amounts itemized in that letter.  The Debtors suggest that since the demands were inconsistent, they were entitled to pay nothing -- not even monthly mortgage payments.  The Debtors did not make their regular December 2011 and January 2011 monthly mortgage payments.

56.     Making a demand for less than the total amount due cannot be equated with misconduct.  The Debtors failed to pay even the lesser amounts.  Under any analysis, the loans were in default at the time the Debtors sought to sell Unit 101.  Accordingly, there is no basis to find misconduct by the lender and no basis to reduce the amount of default interest due on account of any misconduct.

**The loan documents provide for payment of attorneys' fees, and the amounts sought are reasonable relative to the litigation the Debtors and their affiliates have generated; and as to late fees on advances, the loan documents authorize the Mortgagees to apply payments in their discretion, however, since the amount at stake is not large, the Mortgagees waive their claim for interest on advances**

57.     The total amount incurred for legal fees is high, but the Debtors and their principals have generated a staggering amount of litigations in many courts throughout New York over an extended period of time.  Thus, the amounts sought are reasonable under the circumstances.

58.     Annexed hereto as Exhibit G are invoices documenting the fees incurred.

17

59.     Last but not least, the Debtors argue that the Mortgagees improperly applied the subtenant rents to debt service first, and then to operating expenses.  This resulted in the Mortgagees' need to make protective advances to cover operating expenses and taxes, all of which advances accrued interest at the default rate.

60.     The Debtors' objection to what they describe as a new accounting method ignores the clear language of their loan documents.   The Debtors do not dispute that they defaulted on this Loan in March 2009, that a foreclosure was commenced on July 2009, the Mortgagee's predecessor waived that default in October 2009 and lowered the interest rate on the Loan to 5% upon the express condition that in the event of a subsequent default the original rate of 6.375% would apply.

61.     Furthermore, the loan documents permit the Mortgagees to apply payments received in their sole discretion.  As a matter of accounting practice, the Mortgagees, like their savings bank predecessor, and like all lenders, generally apply payments to outstanding interest charges before anything else.  This resulted in the need for protective advances.  And protective advances incur interest at the default rate.

**Victoria Guthrie's claim should be deemed expunged for Plan purposes because the documents she annexed to her proof of claim fail to show any obligation by either of the Debtors, and the existence of her claim not only dilutes the Condominium Association vote, but calls into question the <u>certainty of a 100% payout to the Condominium Association</u>**

62.     As set forth in detail above, the documentation Victoria Guthrie annexed to her proof of claim indicates no obligation by the Debtors to pay off the loan she made to a

18

Morgan Investment Fund LLC, a non-debtor entity.  Neither Debtor is a co-debtor on that

obligation.  She had a security agreement entitling her to additional collateral in the form of the

Morgan Lofts equity interest.  She did not perfect that interest by recording a lien against the

Morgan Lofts interests she allegedly took as collateral for her loan to Morgan Investment Fund

LLC. so it is not enforceable against the Debtor as the hypothetical lien creditor.  Thus, 11 East

36th LLC's creditors have a senior claim to the Morgan Lofts, LLC interests, to the extent there is

any value in those interests.

63.    Perhaps recognizing the defects in Ms. Guthrie's UCC filings as described

in the Mortgagees' disclosure statement, Ms. Guthrie responded in a pleading filed on December

26, 2013.  Ms. Guthrie now argues that there are grounds to pierce the corporate veil and find

that the Debtors are obligated to pay the loan she made to Morgan Investment Fund LLC.  The

"evidence" to support her veil piercing argument is that the Bobker family has many different

entities, some of which appear to be fellow squatters with the Debtors in the basement of 11 East

36th Street.  The Mortgagees respectfully submit that such speculation is insufficient to indicate a

likelihood of success on a veil piercing theory.

64.    In summary, the documentation Ms. Guthrie produced does not indicate

that she is entitled to a general unsecured claim or a secured claim against either of these

Debtors.

**CONCLUSION**

WHEREFORE, the Mortgagees respectfully requests that the Bankruptcy Court

estimate the Mortgagees claims in the amount of $19,267.235 as of February 10, 2014 plus

accruing amounts, determine that it is likely that Victoria Guthrie's claim will be expunged, and

grant such other and further relief as may be just and proper.

Dated: New York, New York
      February 25, 2014

                                 BACKENROTH FRANKEL & KRINSKY, LLP
                                 Attorneys for the Mortgagees


              By:     s/Mark A. Frankel
                     800 Third Avenue
                     New York, New York 10022
                     (212) 593-1100

Exhibit A

B10 (Official Form 10) (04/13)

| UNITED STATES BANKRUPTCY COURT SOUTHERN DISTRICT OF NEW YORK | | Proof of Claim |
|---|---|---|

| Name of Debtor:<br>**11 East 36th LLC** | Case Number:<br>**13-11506** | |
|---|---|---|

NOTE: *Do not use this form to make a claim for an administrative expense that arises after the bankruptcy filing. You may file a request for payment of an administrative expense according to 11 U.S.C. § 503.*

Name of Creditor (the person or other entity to whom the debtor owes money or property):
**11 East 36 Note Buyer LLC**

**COURT USE ONLY**

Name and address where notices should be sent:
**Backenroth Frankel & Krinsky**
**489 Fifth Avenue**
**New York, NY 10017**
Telephone number: **(212) 593-1100**          email:

☐ Check this box if this claim amends a previously filed claim.

**Court Claim Number:** _____
*(If known)*

Filed on: _____

Name and address where payment should be sent (if different from above):

Telephone number:                    email:

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to this claim. Attach copy of statement giving particulars.

**1. Amount of Claim as of Date Case Filed:**          **$13,725,516.00**

If all or part of your claim is secured, complete item 4.

If all or part of your claim is entitled to priority, complete item 5.

■ Check this box if claim includes interest or other charges in addition to the principal amount of claim. Attach a statement that itemizes interest or charges.

**2. Basis for Claim:    Money loaned**
(See instruction #2)

| **3.** Last four digits of any number by which creditor identifies debtor:<br>_____ | **3a.** Debtor may have scheduled account as:<br><br>(See instruction #3a ) | **3b.** Uniform Claim Identifier (optional):<br><br>(See instruction #3b) |
|---|---|---|

**4. Secured Claim** (See instruction #4)
Check the appropriate box if the claim is secured by a lien on property or a right of setoff, attach required redacted documents, and provide the requested information.

**Nature of property or right of setoff:** ■ Real Estate ☐ Motor Vehicle ☐ Other
Describe: **Debtor's Real Property - Value based upon Debtor's Schedules**

**Value of Property:** $ __11,375,000.00__

**Annual Interest Rate:** __24__ % ■ Fixed or ☐ Variable
**(when case was filed)**

**Amount of arrearage and other charges, as of the time case was filed, included in secured claim, if any:**
$  **13,725,516.00**

**Basis for perfection:**    **Mortgage**

**Amount of Secured Claim:**    $  **11,375,000.00**

**Amount Unsecured:**    $  **2,350,516.00**

**5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a). If any portion of your claim falls into one of the following categories, check the box specifying the priority and state the amount.**

☐ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B).

☐ Wages, salaries, or commissions (up to $12,475*) earned within 180 days before the case was filed or the debtor's business ceased, whichever is earlier - 11 U.S.C. §507(a)(4).

☐ Contributions to an employee benefit plan - 11 U.S.C. §507(a)(5).

**Amount entitled to priority:**

☐ Up to $2,775* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. §507(a)(7).

☐ Taxes or penalties owed to governmental units - 11 U.S.C. §507(a)(8).

☐ Other - Specify applicable paragraph of 11 U.S.C. §507 (a)(___).

$_____

*Amounts are subject to adjustment on 4/01/16 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

**6. Credits.** The amount of all payments on this claim has been credited for the purpose of making this proof of claim. (See instruction #6)

B10 (Official Form 10) (04/13)

| | |
|---|---|
| **7.   Documents:** Attached are **redacted** copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, security agreements, or, in the case of a claim based on an open-end or revolving consumer credit agreement, a statement providing the information required by FRBP 3001(c)(3)(A). If the claim is secured, box 4 has been completed, and **redacted** copies of documents providing evidence of perfection of a security interest are attached. If the claim is secured by the debtor's principal residence, the Mortgage Proof of Claim Attachment is being filed with this claim. (*See instruction #7, and the definition of "**redacted**".*)<br><br>DO NOT SEND ORIGINAL DOCUMENTS.  ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.<br><br>If the documents are not available, please explain: | |

**8.   Signature:**  (See instruction #8)

Check the appropriate box.

☐  I am the creditor.     ☑  I am the creditor's authorized agent.     ☐ I am the trustee, or the debtor, or their authorized agent. (See Bankruptcy Rule 3004.)     ☐ I am a guarantor, surety, indorser, or other codebtor. (See Bankruptcy Rule 3005.)

I declare under penalty of perjury that the information provided in this claim is true and correct to the best of my knowledge, information, and reasonable belief.

| | | | |
|---|---|---|---|
| Print Name: | **Mark Frankel** | | |
| Title: | **Attorney for Claimant** | | |
| Company: | **Backenroth Frankel & Krinsky** | **/s/ Mark Frankel** | **September 12, 2013** |
| Address and telephone number (if different from notice address above): | | (Signature) | (Date) |
| | **489 Fifth Avenue** | | |
| | **New York, NY 10017** | | |
| Telephone number: | **(212) 593-1100** | email: | |

*Penalty for presenting fraudulent claim:*  Fine of up to $500,00 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

## DEFAULT

| | | |
|---|---|---|
| Principal Amount | $ | 9,909,879.79 |
| Beginning Date | | 03/01/09 |
| Acceleration Date | | 06/16/09 |
| Interest Rate | | 6.375% |
| Days | | 107 |
| Per Diem Interest | $ | 1,754.87 |
| Interest Due | | $ 187,771.58 |
| Interest Paid Rate | 5.00% | |
| Less: Interest Paid | | $ (147,271.82) |
| **Total Interest Due** | | **$ 40,499.75** |

## ACCELERATION

| | | |
|---|---|---|
| Modification Date | | 10/13/09 |
| Acceleration Interest Rate | 6.375% | |
| Days | | 119 |
| Per Diem Interest | $ | 1,754.87 |
| Interest Due | | $ 208,830.07 |
| Interest Paid Rate | 5.00% | |
| Less: Interest Paid | | $ (163,788.29) |
| **Total Interest Due** | | **$ 45,041.78** |

## MODIFICATION

| | | |
|---|---|---|
| Modification Principal Amount | $ 9,836,240.19 | |
| Interest Rate | 6.375% | |
| End Date | 12/22/11 | |
| Days | 800 | |
| Per Diem Interest | $ 1,741.83 | |
| Total Interest Due | | $ 1,393,467.36 |
| Interest Paid Through | 11/30/11 | |
| Interest Paid Rate | 5.00% | |
| Less: Interest Paid | | $ (1,062,860.40) |
| **Total Interest** | | **$ 330,606.96** |

## ACCELERATION THROUGH TODAY

| | | |
|---|---|---|
| Ending Date | 05/08/13 | |
| Principal Amount | 9,836,240 | |
| Acceleration Interest Rate | 24.0% | |
| Days | 503 | |
| Per Diem Interest | $ 6,557.49 | |
| Interest Due (including on shortfall) | | $ 3,298,419.21 |
| **Total Interest** | | **$ 3,298,419.21** |

| **Total Amount Due on Note** | | **13,550,807.99** |
|---|---|---|

## 11 EAST 36 NOTE BUYER

| | | |
|---|---|---|
| Plus: Prepayment Fee | 2% $ | 196,724.80 |
| Plus: Protective Advances | | 621,677.90 |
| Plus: Interest on Protective Advances | | 66,574.14 |
| Less: Rents Received | | (710,268.83) |
| **Total Note Payoff Amount** | | **13,725,515.90** |

## GRIFFON V

| | | |
|---|---|---|
| Plus Judgment Amount | $ | 2,899,340.95 |
| Plus: Interest on Judgement | | 218,175.41 |
| Plus: Interest on Protective Advances | | 336,916.20 |
| Less: Rents Received | | (365,918.60) |
| **Total Judgement Payoff Amount** | | **$ 3,132,481.65** |

| **Total Payoff Amount** | | **16,857,997.55** |
|---|---|---|

## JUDGEMENT

| | | |
|---|---|---|
| Judgement Amount | $ | 2,899,340.95 |
| Beginning Date | | 07/11/12 |
| End Date | | 05/08/13 |
| Interest Rate | | 9% |
| Days | | 301 |
| Per Diem Interest | $ | 724.84 |
| Interest Due | | $ 218,175.41 |
| | | |
| **Total Interest Due** | | **$ 218,175.41** |

2% prepayment fee due on acceleration

---

**11 East 36th Note Buyer  Through  9/13/2015**

| Advances | | Amount | Interest | |
|---|---|---|---|---|
| Legal Expense L&T | 5/2/2012 | $ 8,000.00 | $ 1,978.67 | |
| Legal Expense L&T | 5/3/2012 | $ 12,000.00 | $ 2,960.00 | |
| Inspection/Filing/Licensing | 5/17/2012 | $ 3,125.00 | $ 741.67 | |
| Management Fee | 5/31/2012 | $ 1,672.76 | $ 381.39 | |
| Management Fee | 6/30/2012 | $ 1,975.58 | $ 410.92 | |
| Management Fee | 7/31/2012 | $ 2,085.58 | $ 390.70 | |
| Legal Expense Other | 8/8/2012 | $ 27,578.95 | $ 5,019.37 | |
| Control Agreement Fee | 8/14/2012 | $ 1,000.00 | $ 178.00 | |
| Management Fee | 8/31/2012 | $ 2,026.22 | $ 337.70 | |
| Real Estate Taxes | 9/20/2012 | $ 184,233.96 | $ 28,249.21 | |
| Real Estate Taxes | 9/20/2012 | $ 18,058.39 | $ 2,720.80 | |
| Management Fee | 9/30/2012 | $ 1,980.73 | $ 290.51 | |
| Legal Expense Other | 10/2/2012 | $ 25,000.00 | $ 3,633.33 | Adjusted to 3.5% |
| Supplies | 10/9/2012 | $ 99.61 | $ 14.01 | |
| Other Renting Expenses | 10/9/2012 | $ 133.63 | $ 18.80 | |
| Management Fee | 10/31/2012 | $ 1,901.37 | $ 239.57 | |
| Management Fee | 11/30/2012 | $ 2,260.73 | $ 259.64 | |
| Legal Expense L&T | 12/1/2012 | $ 17,682.76 | $ 1,862.58 | |
| Management Fee | 12/31/2012 | $ 1,776.84 | $ 151.62 | |
| Condo Maintenance Fee | 1/3/2012 | $ 17,682.76 | $ 1,497.14 | |
| Real Estate Taxes | 1/4/2013 | $ 139,545.55 | $ 11,535.77 | |
| Other Renting Expenses | 1/16/2013 | $ 5,319.76 | $ 397.21 | |
| Legal Expense L&T | 1/31/2013 | $ 1,721.76 | $ 111.34 | |
| Condo Maintenance Fee | 2/1/2013 | $ 17,682.76 | $ 1,131.70 | |
| Legal Expense Other | 2/13/2013 | $ 7,500.00 | $ 420.00 | |
| Management Fee | 2/28/2013 | $ 2,008.76 | $ 92.40 | |
| Condo Maintenance Fee | 3/1/2013 | $ 17,682.76 | $ 801.62 | |
| Other Renting Expenses | 3/5/2013 | $ 931.95 | $ 39.76 | |
| Property Insurance | 3/13/2013 | $ 680.05 | $ 25.39 | |
| Management Fee | 3/31/2013 | $ 1,832.64 | $ 46.43 | |
| Condo Maintenance Fee | 4/1/2013 | $ 9,062.26 | $ 223.54 | |
| Legal Expense L&T | 4/3/2013 | $ 1,500.00 | $ 35.00 | |
| Legal Expense Other | 4/11/2013 | $ 18,533.00 | $ 333.59 | |
| Condo Maintenance Fee | 4/30/2013 | $ 1,721.76 | $ 9.18 | |
| Condo Maintenance Fee | 5/1/2013 | $ 9,062.26 | $ 42.29 | |
| Real Estate Taxes | 5/8/2013 | $ 56,267.80 | $ - | |
| Management Fee | 5/31/2013 | $ 1,890.04 | $ (26.98) | |
| Condo Maintenance Fee | 6/1/2013 | $ 9,062.26 | $ (145.00) | |
| Inspection/Filing/Licensing | 6/4/2013 | $ 462.50 | $ (8.33) | |
| Management Fee | 6/30/2013 | $ 1,103.84 | $ (39.00) | |
| Condo Maintenance Fee | 7/1/2013 | $ 9,062.26 | $ (326.24) | |
| Real Estate Taxes | 7/1/2013 | $ 16,318.33 | $ (587.46) | |
| Management Fee | 7/31/2013 | $ 2,189.04 | $ (105.84) | |
| Condo Maintenance Fee | 8/1/2013 | $ 9,062.26 | $ (513.53) | |
| Legal Expense Other | 8/5/2013 | $ 12,000.00 | $ (713.79) | |
| **Total** | | **$ 682,599.44** | **$ 64,105.08** | **$ 746,665.42** |

---

**11 East 36th Note Buyer  Through  8/13/2013**

| Advances | | Amount | Interest | |
|---|---|---|---|---|
| May '12 | $ 47,292.93 | | | |
| June | $ 56,445.05 | | | |
| July | $ 59,587.96 | | | |
| August | $ 57,892.13 | | | |
| September | $ 56,592.13 | | | |
| October | $ 54,458.50 | | | |
| November | $ 64,592.13 | | | |
| December | $ 50,766.80 | | | |
| Jan '13 | $ 49,193.00 | | | |
| Feb '13 | $ 57,393.00 | | | |
| Mar '13 | $ 52,361.00 | | | |
| Apr '13 | $ 49,193.00 | | | |
| May '13 | $ 54,001.20 | | | |
| June '13 | $ 31,538.40 | | | |
| July '13 | $ 54,001.20 | | | |
| Aug '13 | | | | |
| **Total** | **$ 795,808.43** | | | |

## Griffon V

**Rents Collected**

| | | |
|---|---|---|
| January | $ | 16,227.00 |
| February | $ | 16,227.00 |
| March | $ | 16,227.00 |
| April | $ | 21,612.00 |
| May | $ | 20,177.00 |
| June | $ | 20,222.00 |
| July | $ | 20,222.00 |
| August | $ | 58,756.00 |
| September | $ | 19,777.00 |
| October | $ | 18,889.00 |
| November | $ | 20,052.00 |
| December | $ | 12,475.60 |
| Jan '13 | $ | 20,177.00 |
| Feb '13 | $ | 20,217.00 |
| Mar '13 | $ | 24,217.00 |
| Apr '13 | $ | 20,222.00 |
| May '13 | $ | 20,222.00 |
| June '13 | $ | 16,788.20 |
| July '13 | $ | 19,688.60 |
| Aug '13 | | |
| **Total** | **$ 402,395.40** | |

---

**Griffon V  Through  8/13/2013**

| Advances | | Amount | Interest | |
|---|---|---|---|---|
| Insurance | 1/9/2012 | $ 3,132.00 | $ 1,012.68 | |
| Condo Maintenance Fee | 1/11/2012 | $ 2,370.64 | $ 763.35 | |
| Condo Maintenance Fee | 2/13/2012 | $ 2,370.64 | $ 730.16 | |
| Legal Expense - Other | 2/13/2012 | $ 2,265.00 | $ 679.50 | |
| Property Taxes | 2/24/2012 | $ 10,160.42 | $ 2,973.62 | |
| Condo Maintenance Fee | 3/1/2012 | $ 2,370.64 | $ 684.32 | |
| Legal Expense - Other | 3/5/2012 | $ 9,920.00 | $ 2,837.12 | |
| Condo Maintenance Fee | 4/2/2012 | $ 2,370.64 | $ 633.75 | |
| Legal Expense - Other | 4/30/2012 | $ 11,445.95 | $ 2,846.23 | |
| Condo Maintenance Fee | 5/2/2012 | $ 2,370.64 | $ 586.34 | |
| Legal Expense - Other | 6/2/2012 | $ 2,370.64 | $ 537.35 | |
| Property Taxes | 6/8/2012 | $ 10,791.53 | $ 2,402.91 | |
| Condo Maintenance Fee | 7/2/2012 | $ 2,370.64 | $ 489.93 | |
| Condo Maintenance Fee | 8/1/2012 | $ 2,370.64 | $ 442.52 | |
| Property Taxes | 8/17/2012 | $ 10,723.99 | $ 1,887.42 | |
| Condo Maintenance Fee | 8/21/2012 | $ 11,394.49 | $ 1,975.04 | |
| Legal Expense - Other | 8/28/2012 | $ 10,139.50 | $ 1,710.20 | |
| Property Taxes | 8/30/2012 | $ 3,848.97 | $ 644.06 | |
| Condo Maintenance Fee | 9/1/2012 | $ 2,370.64 | $ 393.53 | |
| Legal Expense - Other | 9/4/2012 | $ 10,000.00 | $ 1,640.00 | |
| Property Taxes | 9/25/2012 | $ 20,000.00 | $ 3,266.67 | |
| Management Fee | 9/30/2012 | $ 5,981.96 | $ 877.35 | Adjusted to 3.5% |
| Condo Maintenance Fee | 10/1/2012 | $ 2,370.64 | $ 346.11 | |
| Legal Expense - Other | 10/31/2012 | $ 661.12 | $ 83.30 | |
| Management Fee | 10/31/2012 | $ 2,370.64 | $ 297.12 | |
| Legal Expense - Other | 11/13/2012 | $ 10,000.00 | $ 1,173.33 | |
| Management Fee | 11/30/2012 | $ 701.82 | $ 74.39 | |
| Property Taxes | 11/30/2012 | $ 13,943.14 | $ 1,477.97 | |
| Condo Maintenance Fee | 12/1/2012 | $ 2,370.64 | $ 249.71 | |
| Legal Expense - Other | 12/1/2012 | $ 10,000.00 | $ 1,053.33 | |
| Insurance | 12/20/2012 | $ 3,212.00 | $ 297.65 | |
| Management Fee | 12/31/2012 | $ 436.65 | $ 37.26 | |
| Condo Maintenance Fee | 1/1/2013 | $ 2,370.64 | $ 200.71 | |
| Legal Expense - Other | 1/1/2013 | $ 10,000.00 | $ 846.67 | |
| Other Renting Expenses | 1/10/2013 | $ 3,751.39 | $ 292.61 | |
| Legal Expense - L&T | 1/30/2013 | $ 44,978.01 | $ 2,938.56 | |
| Management Fee | 1/31/2013 | $ 706.20 | $ 43.67 | |
| Condo Maintenance Fee | 2/1/2013 | $ 2,370.64 | $ 151.72 | |
| Legal Expense - Other | 2/1/2013 | $ 10,000.00 | $ 640.00 | |
| Property Taxes | 2/22/2013 | $ 14,008.75 | $ 700.44 | |
| Management Fee | 2/28/2013 | $ 707.60 | $ 32.55 | |
| Condo Maintenance Fee | 3/1/2013 | $ 2,370.64 | $ 107.47 | |
| Legal Expense - Other | 3/1/2013 | $ 10,000.00 | $ 453.33 | |
| Management Fee | 3/31/2013 | $ 847.60 | $ 21.47 | |
| Condo Maintenance Fee | 4/1/2013 | $ 2,370.64 | $ 58.48 | |
| Legal Expense - L&T | 4/1/2013 | $ 10,000.00 | $ 246.67 | |
| Legal Expense - Other | 4/3/2013 | $ 1,500.00 | $ 35.00 | |
| Legal Expense - L&T | 4/3/2013 | $ 2,021.00 | $ 47.16 | |
| Management Fee | 4/30/2013 | $ 707.77 | $ 3.77 | |
| Condo Maintenance Fee | 5/1/2013 | $ 2,370.64 | $ 11.06 | |
| Legal Expense - Other | 5/1/2013 | $ 10,000.00 | $ 46.67 | |
| Legal Expense - Other | 5/3/2013 | $ 3,375.00 | $ (2.25) | |
| Management Fee | 5/31/2013 | $ 707.77 | $ (10.85) | |
| Legal Expense - Other | 6/1/2013 | $ 10,000.00 | $ (37.93) | |
| Property Taxes | 6/7/2013 | $ 15,118.88 | $ (302.38) | |
| Management Fee | 6/30/2013 | $ 587.59 | $ (20.76) | |
| Condo Maintenance Fee | 7/1/2013 | $ 2,370.64 | $ (85.34) | |
| Legal Expense - Other | 7/1/2013 | $ 10,000.00 | $ (360.00) | |
| Legal Expense - Other | 7/23/2013 | $ 1,446.68 | $ (73.30) | |
| Other Renting Expenses | 7/24/2013 | $ 1,998.00 | $ (102.56) | |
| Management Fee | 7/31/2013 | $ 689.10 | $ (38.59) | |
| Condo Maintenance Fee | 8/1/2013 | $ 2,370.64 | $ (134.34) | |
| Legal Expense - Other | 8/1/2013 | $ 10,000.00 | $ (566.67) | |
| Other Renting Expenses | 8/2/2013 | $ 2,578.78 | $ (147.85) | |
| Legal Expense - Other | 8/5/2013 | $ 5,183.00 | $ (292.96) | |
| **Total** | | **$ 251,957.21** | **$ 9,811.76** | **$ 261,768.97** |

## ASSIGNMENT OF MORTGAGE

First Central Savings Bank (the "Assignor"), with offices at 70 Glen Street, Glen Cove, New York 11542, the Mortgagee named in the Mortgage described below (or the successor, by merger or change of name, to the original Mortgagee named below), for and in consideration of the sum of TEN DOLLARS ($10.00) lawful money of the United States of America, paid to it by 11 East 36 Note Buyer LLC (the "Assignee"), 114 East 13th Street, Front 1, New York, New York 10003, the receipt of which is hereby acknowledged, has granted, bargained, sold, assigned, transferred and set over, and by these presents does grant, bargain, sell, assign, transfer and set over unto the Assignee and without recourse, representations or warranties of any kind whatsoever by the Assignor other than as specified in the Loan Sale Agreement dated February 27, 2012 between First Central Savings Bank and Delshah Capital LLC, all of the Assignor's right, title and interest in and to the mortgages listed on Schedule A annexed hereto and being secured by all that certain lot, tract, parcel or piece of ground, together with the improvements erected thereon, situate in New York County, New York, and more particularly described in said Mortgages; and also the Note or other obligations recited in the said Mortgages and thereby intended to be secured, and all monies, whether principal, interest or otherwise, past due, due and to become due thereon.

This assignment is not subject to the requirements of Section 275 of the Real Property Law because it is an assignment within the secondary mortgage market.

[REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK]

Document Number: 272552

**TO HAVE, HOLD, RECEIVE AND TAKE**, the same unto the Assignee, and to the successors, legal representatives and assigns of the Assignee forever.

**WITNESS** the due execution hereof as of this _24th_ day of April, 2012.

<div align="right">

FIRST CENTRAL SAVINGS BANK

By: _Salvatore Di Martino_

Name: _Salvatore Di Martino_

Title: _Executive Vice President_

</div>

| | |
|---|---|
| STATE OF NEW YORK | ) |
| | ) ss: |
| COUNTY OF NASSAU | ) |

On the _24th_ day of April in the year 2012 before me, the undersigned, personally appeared _Salvatore Di Martino_, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

_Donna M. DeLauro_

Notary Public

> DONNA M. DeLAURO
> Notary Public, State of New York
> Registration #01DE6220604
> Qualified In Nassau County
> Commission Expires April 19, 2014

Document Number: 272552

## SCHEDULE A
## MORTGAGE SCHEDULE

1) Mortgagor:     11 East 36th, LLC and Carnegie Holdings LLC
   Mortgagee:     Grand Pacific Finance Corp.
   Amount:        $2,300,000.00
   Dated:         11/23/04
   Recorded:      7/25/05
   CRFN#:         2005000415069
   Tax Paid:      $63,250.00

2) Mortgagor:     11 East 36th, LLC and Carnegie Holdings LLC
   Mortgagee:     Grand Pacific Finance Corp.
   Amount:        $700,000.00
   Dated:         08/16/2006
   Recorded:      12/08/06
   CRFN#:         2006000675708
   Tax Paid:      $19,600.00
   Which mortgage by its terms consolidates mortgages 1 & 2 into a single first lien
   in the sum of $3,000,000.00.

   Which mortgages as consolidated were thereafter assigned by Grand Pacific
   Finance Corp. to Chinatrust Bank (U.S.A.) by assignment dated 3/28/07 and
   recorded with the New York City Register on 4/20/07 in CRFN# 2007000205934.

   Which mortgage as consolidated was thereafter amended and restated pursuant to
   an Amended and Restated Acquisition Mortgage agreement between 11 East 36th
   ,LLC and Carnegie Holdings LLC and Chinatrust Bank (U.S.A.) in the sum of
   $3,000,000.00 by agreement dated 03/26/07 and recorded with the New York City
   Register on 04/20/07 in CRFN#: 2007000205935.

   Which mortgages as amended and restated were thereafter assigned in the
   principal balance of $3,000,000.00 by Chinatrust Bank (U.S.A.) to First Central
   Savings Bank by assignment dated March 18, 2008 and recorded with the New
   York City Register on May 27, 2008 in CRFN# 2008000213142.

   **(Building Loan Mortgage)**
3) Mortgagor:     11 East 36th, LLC and Carnegie Holdings LLC
   Mortgagee:     Chinatrust Bank (U.S.A.)
   Amount:        $11,761,150.00
   Dated:         08/18/2006
   Recorded:      12/08/06
   CRFN#:         2006000675701
   Tax Paid:      $329,310.81

Document Number: 272552

Which mortgage in the reduced principal balance of $2,915,562.52 was thereafter assigned by Chinatrust Bank (U.S.A.) to First Central Savings Bank by assignment dated March 18, 2008 and recorded with the New York City Register on May 27, 2008 in CRFN# 2008000213141.

**(Project Loan Mortgage)**

4) Mortgagor:    11 East 36th , LLC and Carnegie Holdings LLC
   Mortgagee:   Chinatrust Bank (U.S.A.)
   Amount:      $4,500,000.00
   Dated:        03/28/2007
   Recorded:    04/20/07
   CRFN#:      2007000205936
   Tax Paid:     $126,000.00

Which mortgage was severed and split into two separate mortgage liens (i) Substitute Mortgage A in the sum of $3,620,000.00 and (ii) Substitute Mortgage B in the sum of $880,000.00 pursuant to a splitter agreement between 11 East 36th, LLC, Morgan Lofts, LLC and Bay Condos, LLC and Chinatrust Bank (U.S.A.) by agreement dated March 18, 2008 and recorded with the New York City Register on May 27, 2008 in CRFN# 2008000213143.

**(Substitute Mortgage A)**

5) Mortgagor:    11 East 36th , LLC, Morgan Lofts, LLC and Bay Condos, LLC
   Mortgagee:   Chinatrust Bank (U.S.A.)
   Amount:      $3,620,000.00
   Dated:        03/18/2008
   Recorded:    05/27/08
   CRFN#:      2008000213144

Which Substitute Mortgage A was thereafter assigned by Chinatrust Bank (U.S.A.) to First Central Savings Bank by assignment dated March 18, 2008 and recorded with the New York City Register on May 27, 2008 in CRFN# 2008000213146.

6) Mortgagor:    11 East 36th , LLC, Morgan Lofts, LLC and Bay Condos, LLC
   Mortgagee:   First Central Savings Bank
   Amount:      $464,437.48
   Dated:        03/20/2008
   Recorded:    05/27/08
   CRFN#:      2008000213147
   Tax Paid:     $13,003.20

7) Which mortgages 1-6 were thereafter consolidated to form a single first lien in the sum of $10,000,000.00 pursuant to a Modification, Extension and Consolidation Agreement between 11 East 36th , LLC, Morgan Lofts, LLC and Bay Condos,

LLC and First Central Savings Bank dated March 20, 2008 and recorded with the New York City Register on May 27, 2008 in CRFN# 2008000213148.

Which mortgages as consolidated were thereafter modified pursuant to a Omnibus First Amendment to Modification Agreement, Substitute Note and Other Loan Documents between 11 East 36th , LLC, Morgan Lofts, LLC, Bay Condos, LLC, Ben Bobker a/k/a Benny Boruch Bobker and Eli Bobker and First Central Savings Bank dated October 13, 2009 and recorded with the New York City Register on October 28, 2009 in CRFN# 2009000353140.

REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK

## ASSIGNMENT OF MORTGAGE

### FIRST CENTRAL SAVINGS BANK

### TO

### 11 EAST 36 NOTE BUYER LLC

| | |
|---|---|
| Address: | 11 East 36th Street, units 101,102,701,801, 803, 804, 903, 904, 1003, 1004, 1103, 1104, 201, 202, 203, 204, 205, 206, 306, 406, 606, 1206, and CS1-CS35, New York, New York 10016 |
| Section: | 3 |
| Block: | 866 |
| Lots: | 1202, 1203, 1204, 1205, 1206, 1207, 1208, 1209, 1215, 1220, 1232, 1233, 1239, 1241, 1242, 1247, 1248, 1253, 1254, 1259, 1260, 1268, 1271-1305 |
| County: | New York |
| State: | New York |

*RECORD AND RETURN BY MAIL TO:*
Michael Bush, Esq.
Einig & Bush, LLP
420 Lexington Avenue, Suite 2320
New York, New York 10170

Document Number: 272552

## OMNIBUS FIRST AMENDMENT TO
## MODIFICATION AGREEMENT, SUBSTITUTE NOTE
## AND OTHER LOAN DOCUMENTS

This Omnibus First Amendment to Modification Agreement, Substitute Note and other Loan Documents (the "Modification Agreement"), dated as of this [5]th day of October, 2009 by and between **11 East 36th, LLC**, a New York limited liability company having its principal place of business located at 11 East 36th Street, Suite 1101, New York, New York, **Morgan Lofts, LLC**, a New York limited liability company having its principal place of business located at 11 East 36th Street, Suite 1101, New York, New York, and **Bay Condos, LLC**, a New York limited liability company having its principal place of business located at 11 East 36th Street, Suite 1101, New York, New York (collectively the "Borrower"), **Ben Bobker a/k/a Benny Boruch Bobker**, an individual residing at 28 Wedgewood Lane, Lawrence, New York 11559 and **Eli Bobker**, an individual residing at 1039 New McNeil Avenue, Lawrence, New York 11559, (hereinafter jointly and severally the "Guarantors") and **First Central Savings Bank** (the "Bank") a New York State chartered savings bank having its principal place of business at 70 Glen Street, Glen Cove, New York 11542.

## WITNESSETH

**WHEREAS**, the Bank is the owner of the prior mortgages listed on the annexed schedule of mortgages attached to this agreement as Schedule A; and

**WHEREAS**, on March 20, 2008 the Borrower borrowed the sum of Ten Million Dollars ($10,000,000.00) from the Bank; and

**WHEREAS**, the Borrower executed and delivered to the Bank a substitute note (the "Note") in the sum of Ten Million Dollars ($10,000,000.00) dated March 20, 2008; and

**WHEREAS**, as security for the obligations of the Borrower to the Bank under the Note, the Borrower executed, among other documents, a modification, extension and consolidation agreement in the sum of Ten Million Dollars ($10,000,000.00) (the "Agreement") dated March 20, 2008 and recorded on May 27, 2008 with the New York City Register bearing CRFN number 2008000213148 against the real property located at 11 East 36th Street, condominium units 101, 102, 701, 801, 803, 804, 903, 904, 1003, 1004, 1103, 1104, 201, 202, 203, 204, 205, 206, 306, 406, 606, 1206,and CS1-CS35, New York, New York 10016 (the "Premises") and more particularly described on Schedule B annexed hereto and made a part hereof; and

**WHEREAS**, on March 20, 2008, Ben Bobker a/k/a Benny Boruch Bobker executed and delivered to the Bank a limited guaranty (the "Original Guaranty") of the obligations of the Borrower to the Bank under the Note, Agreement and Loan Documents; and

249369

**WHEREAS**, the Borrower defaulted on its obligations to the Bank under the Note and Agreement;

**WHEREAS**, on July 8, 2009 the Bank instituted a foreclosure proceeding in New York Supreme Court, New York County entitled First Central Savings Bank v. 11 East 36th LLC, et al., Index No. 109209/2009 to foreclose the Premises;

**WHEREAS**, the Borrower and the Bank have agreed to settle the foreclosure action, to reinstate the loan and to modify the terms of the Note and Agreement as set forth herein; and

**WHEREAS**, as a condition to modifying the Note and Agreement the Bank required the Original Guaranty be replaced with a full personal guaranty of the obligations of the Borrower to the Bank under the Note, Agreement and this Modification Agreement by Ben Bobker a/k/a Benny Boruch Bobker and Eli Bobker;

**WHEREAS**, Ben Bobker a/k/a Benny Boruch Bobker and Eli Bobker have agreed to execute and deliver to the Bank a full personal guaranty of the obligations of the Borrower to the Bank under this Modification Agreement, the Note and Agreement.

**NOW, THEREFORE**, in consideration of ten ($10.00) dollars paid by the Borrower to the Bank and the mutual covenants and conditions herein contained and other good and valuable consideration paid by the parties to each other, receipt of which is hereby acknowledged, the Bank and Borrower agree as follows:

1. The Note is hereby modified to provide that commencing on September 1, 2009 through February 29, 2012 the Borrower shall make monthly installment payments of interest only at the rate of five (5.00%) percent per annum in addition to one twelfth (1/12th) of the annual real estate taxes for the Premises which are being escrowed by the Bank for future payment. As of November 1, 2009 the monthly escrow payment due to the bank for real estate taxes shall be $23,627.16 until changed by the Bank in connection with its future analysis of the escrow account.

Commencing on March 1, 2012 through February 29, 2013 the Borrower shall make monthly installment payments to the Bank of principal and interest at the rate of six and five eights (6.625%) percent per annum in addition to one twelfth (1/12th) of the annual real estate taxes for the Premises which are being escrowed by the Bank for future payment.

Commencing on March 1, 2013 through February 28, 2015 the Borrower shall make monthly installment payments of principal and interest at the rate set forth under the Note however the floor recited in the Note shall be increased to six and seven eighths (6.875%) percent per annum in addition to one twelfth (1/12th) of the annual real estate taxes for the Premises which are being escrowed by the Bank for future payment.

2

Commencing on March 1, 2015 through April 1, 2018 the Borrower shall make monthly installment payments of principal and interest under the Note rate however the floor under the Note shall be increased to seven (7.00%) percent per annum in addition to one twelfth (1/12th) of the annual real estate taxes for the Premises which are being escrowed by the Bank for future payment.

2. The Note shall be amended to provide that in the event the Note is prepaid at any time in accordance with the terms and conditions of the Note, the Borrower shall pay a 1% prepayment penalty. Any prepayment made during the last six (6) months of the Note term shall not be subject to a prepayment penalty.

3. The Agreement is hereby modified to provide that the Borrower shall establish a lock box (the "Lock Box") and an operating account (the "Operating Account") with the Bank at its main branch located at 70 Glen Street, Glen Cove, New York 11542. Borrower shall immediately upon execution of this Modification Agreement notify in writing each tenant and will thereafter notify each successor tenant occupying space in the Premises to send their monthly rent checks directly to the Lock Box commencing on October 1, 2009. On the eleventh (11th) day of the each month during the Note term the Bank will sweep the Lock Box removing all checks therefrom. The Bank is hereby authorized and instructed by the Borrower to endorse the name of the Borrower on each rent check received in the Lock Box and to deposit same into a clearing account established by the Bank. The Bank is hereby authorized and directed to deduct from the clearing account each month an amount sufficient to pay the Borrower's current monthly payment in accordance with the terms and conditions of this Modification Agreement and to pay one twelfth (1/12th ) of the annual real estate taxes for the Premises. Any surplus funds in the clearing account shall be deposited by the Bank into the Borrower's Operating Account. Borrower may thereafter utilize the funds deposited into the Operating Account for any use. In the event that the funds forwarded to the Lock Box are at any time insufficient to pay the Borrower's then current monthly mortgage payment and one twelfth (1/12th) of the annual real estate taxes the Bank will give the Borrower notice on the eleventh (11th) day of that particular month of said shortfall and the Borrower shall have until the close of business on the fifteenth (15th) days of that month to deposit with the Bank a sum sufficient to make up the shortfall. Failure to deposit with the Bank by the close of business on the fifteenth day of any given month sums sufficient to make up the shortfall shall constitute a default under this Modification Agreement, the Note and the Agreement. In the event that the fifteenth (15th) day of the month occurs on a non-business day the Borrower shall have until the next business day to deposit with the Bank a sum sufficient to make up the shortfall. The Lock Box shall remain in place until the Note is paid in full. In the event that the Borrower receives any rent checks directly from any tenant after the date hereof the Borrower shall immediately forward the check or checks to the Lock Box. It is hereby understood and agreed that all fees and charges associated with the establishment of the Lock Box, clearing account and the Operating Account shall be the sole responsibility of the Borrower.

3

4. Borrower hereby agrees that it shall indemnify and hold the Bank harmless from and against any and all loss, claims, damages, costs, charges, attorneys fees, payments, expenses and liabilities whatsoever which the Bank may sustain or incur at any time by reason of or in consequence of the Bank's having administered the Lock Box and handling the checks received therein, provided, however the Bank shall not be so indemnified for its own negligence.

5. The Borrower represents and warrants to the Bank that the principal sum of $9,836,240.19 plus interest thereon is currently outstanding under the Note, and that there are no offsets or defenses to the Note as hereby modified and secured by the Agreement.

6. On October 21, 2008 Century Verticle Systems d/b/a Pro Elevator filed a mechanics lien in the sum of $3,306.49 against 11 East 36th LLC and the Premises (the "Mechanics Lien"). The Borrower has deposited the sum of $3,306.49 with the Bank (the "Mechanics Lien Escrow") which sum shall be retained by the Bank until such time as the Borrower shall provide to the Bank either (i) a bond and certificate of discharge of the Mechanics Lien duly filed with the New Your County Clerk or (ii) a satisfaction of the Mechanics Lien and proof of its filing with the New York County Clerk. Upon receipt of either proof that the Mechanics Lien has been bonded and discharged or the delivery and recording of a proper satisfaction of the Mechanics Lien the Bank will refund the Mechanics Lien Escrow to the Borrower. Borrower acknowledges and agrees that in the event of a default under the terms and conditions of this Modification Agreement or the Note and Agreement the Bank may use the Mechanics Lien Escrow funds to payoff the Mechanics Lien and obtain a satisfaction. Borrower hereby waives any rights it may have in and to the Mechanics Lien Escrow in the event of a default under the terms of this Modification Agreement or the Note and Agreement.

7. On February 26, 2009 a judgment was docketed against the Premises by the New York State Workers Compensation Board in the sum of $51,000.00 (the "Workers Comp Judgment"). The Borrower has obtained a reduction in the amount of the Workers Comp judgment to Eight Thousand Dollars ($8,000.00). Borrower has deposited the sum of Eight Thousand Dollars ($8,000.00) into escrow with the Bank (the "Workers Comp Escrow") which sum shall be retained by the Bank until such time as the Borrower delivers a satisfaction of the Workers Comp Judgment to the Bank along with proof of its filing with the New York County Clerk. Upon receipt of a satisfaction of the Workers Comp Judgment and confirmation that same has been duly filed with the New York City Register the Bank shall release the Judgment Escrow to the Borrower. Borrower acknowledges and agrees that in the event of a default under the terms and conditions of either this Modification Agreement or the Note and Agreement the Borrower hereby waives any and all rights in and to the Workers Comp Escrow and the Bank shall have the right to use the Judgment Escrow to Satisfy the Workers Comp Judgment.

8. Section 8(o) of the Agreement is hereby amended to include the following: Notwithstanding the foregoing, in the event a judgment or lien (other than a mechanics lien) is filed against the Premises due solely to the actions or inactions of an entity or individual that is unrelated to the Borrower or Guarantor and the Borrower is dependent

4

solely upon the actions of such unrelated individual or entity to cure, satisfy, bond or discharge the judgment or lien the Borrower will have ninety (90) days from the date upon which the Borrower has constructive notice of such judgment or lien to cure or discharge same. If the Borrower fails to cure the default within the allotted cure period the Bank shall be entitled to recover ninety (90%) percent of the total amount of scheduled interest due and owning under the terms of the Note and the Agreement at the time of the default, in addition to all outstanding principal, interest and other amounts owed by the Borrower to the Bank under this Modification Agreement.

9. Borrower represents and warrants that except for the common charges claimed to have been unpaid by the Board of Managers of the Morgan Lofts Condominium in the action entitled Board of Managers of the Morgan Lofts Condominium v. 11 East 36th, LLC pending in the Supreme Court of the State of New York, New York County under index number 110528/09 the Borrower has paid all common charges due to the Board of Managers for all units comprising the Premises to and through the date hereof.

10. Borrower represents and warrants that there is currently in place a temporary certificate of occupancy for the Premises which is set to expire on September 30, 2009. Borrower represents and warrants that it has applied for a new temporary certificate of occupancy on September 20, 2009 from the New York City Department of Buildings. Borrower represents and warrants that it shall deliver to the Bank no later than October 9, 2009 a new temporary certificate of occupancy good for an additional three months. It shall constitute a default under the terms of this Agreement and the Note should the Borrower fail to deliver to the Bank a new temporary certificate of occupancy for the Premises on or before October 9, 2009.

11. Except and to the extent modified hereby, the Note and the Agreement shall remain in full force and effect, without modification or change.

12. Ben Bobker a/k/a Benny Boruch Bobker and Eli Bobker have this day executed and delivered to the Bank an unconditional full personal guaranty (the "Guaranty") of the obligations of the Borrower to the Bank under the Note, Agreement and this Modification Agreement.

13. Borrower and Guarantors hereby confirm, affirm and ratify the Note, Agreement and other loan documents, as amended hereby, and further hereby represent, warrant, covenant and agree that said loan documents shall continue to apply and shall remain in full force and effect until all sums due or to become due to the Bank thereunder, including, without limitation, the principal amounts outstanding under the loan documents, together with all accrued interest, penalties, costs, fees and late charges, if any, shall be indefeasibly paid and all of the other obligations of the Borrower and the Guarantors to the Bank under the loan documents have been satisfied in full. By executing this Amendment, Borrower and each of the Guarantors shall be deemed to repeat, re-utter, confirm and affirm each and every representation, warranty, covenant and agreement set forth and made in the loan documents, as amended hereby.

5

14. In the event of a default under the terms and conditions of this Modification Agreement the terms and conditions of this Modification Agreement shall cease to be applicable and the obligations of the Borrower to the Bank shall revert back to the original obligations as set forth in the Note and Agreement. In the event of a default hereunder the Bank shall have the right to immediately seek to have a receiver appointed to collect rent and profits for the Premises. The Borrower hereby irrevocably consents to and waives any right it may have to object the appointment of a receiver in the event of a default hereunder.

15. This Amendment may not be modified or terminated orally and shall be binding and inure to the benefit of the heirs, successors and assigns of the Borrower and the Bank.

16. The Borrowers each individually represent and warrant to the Bank that this Amendment has been duly authorized by all necessary limited liability company action of each individual borrower and is duly executed as the act and deed of each individual borrower and therefore is binding on the Borrower in accordance with its terms and conditions.

17. This Amendment shall be governed and construed in accordance with the laws of the State of New York (without regard to the conflicts of law principals). The Borrower and Guarantors hereby irrevocably agree that all actions, suits or proceedings arising out of, in connection with or relating to the Amendment, or the interpretation, performance or breach thereof, shall be litigated in the Supreme Court of the State of New York, County of New York.

**IN WITNESS WHEREOF**, the parties hereby have duly executed this Modification Agreement as of the day and year first written above.

**First Central Savings Bank**

By: ______________________
A.A. Rescigno
Sr. Vice President and
Chief Operating Officer

**11 East 36th, LLC a New York limited liability company**

By: **By: Madison Condos, LLC, its Sole Member**

**By: Bluebell Assets, LLC, its managing member**

**By:** ______________________
**Ben Bobker a/k/a Benny Boruch Bobker, Sole Member**

**Morgan Lofts, LLC, a New York limited liability company**

**By: 11 East 36th, LLC, its Sole Member**

opened by michael @ delshah.com on Dec 15, 2011 at 10:42:48 PM
Mission Capital Advisors, LLC
CONFIDENTIAL DOCUMENT

By: **Madison Condos, LLC, its Sole
Member**

By: **Bluebell Assets, LLC, its Managing
Member**

By: _____
**Ben Bobker a/k/a Benny Boruch Bobker,
Sole Member**

**Bay Condos, LLC, a New York limited
liability company**

By: **Hancock Park, LLC, its Manager**

By: _____
**Avi Bobker, Managing Member**

STATE OF NEW YORK      )
                             ) ss:
COUNTY OF NASSAU     )

On the 15th day of October in the year 2009 before me, the undersigned, personally appeared **A.A. Rescigno**, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

_____
Notary Public
**JOSEPH V. BROWN**
Notary Public, State of New York
Registration #01BR6079293
Qualified In Nassau County
Commission Expires August 19, 2010

STATE OF NEW YORK      )
                             ) ss:
COUNTY OF NEW YORK   )

On the 9th day of October in the year 2009 before me, the undersigned, personally appeared **Ben Bobker a/k/a Benny Boruch Bobker and Avi Bobker**, personally known to me or proved to me on the basis of satisfactory evidence to be the individuals whose names are subscribed to the within instrument and acknowledged to me that they executed the same in their capacities, and that by their signatures on the instrument, the individuals, or the persons upon behalf of which the individuals acted, executed the instrument.

_____
Notary Public
ABIGAIL PATTERSON
Notary Public, State of New York
No. 02PA6195254
Qualified in Kings County
Commission Expires October 20, 2012

7

<u>EXHIBIT A</u>
Mortgage Schedule

1. Mortgage dated 11/23/2004, mahde by 11 East 36th, LLC and Carnegie Holdings LLC in favor of Chinatrust Bank (U.S.A.), in the sum of $858,933, which Mortgage 1, by its terms, is consolidated with prior mortgages taken by assignment to form a single lien in the principal sum of $14,700,000, and recorded 7/25/2005 with said City Register's Office under CRFN 2005000 415067; **(MORTGAGE TAX $23,619.75 PAID)**

   - which Mortgage 1 was modified and extended by agreement, dated 8/18/2006, and recorded 12/8/2006 with said City Register's Office under CRFN 2006000675700;

2. Building Loan Mortgage dated 7/14/2005, made by 11 East 36th, LLC and Carnegie Holdings LLC in favor of Chinatrust Bank (U.S.A.) and Grand Pacific Finance Corp., in the sum of $10,000,000, and recorded 1/23/2006 with said City Register's Office under CRFN 2006000038681; **(MORTGAGE TAX $280,000 PAID)**

   - which Mortgage 2, as pertaining to the mortgagee interest of Grand Pacific Finance Corp., was assigned to Chinatrust Bank (U.S.A.) by assignment, dated 8/18/2006, and recorded 12/8/2006 with said City Register's Office under CRFN 2006000675705;

   - which Mortgage 2, was modified and extended by agreement, dated 8/18/2006, and recorded 12/8/2006 with said City Register's Office under CRFN 2006000675706;

3. Supplemental Building Loan Mortgage dated 8/18/2006, made by 11 East 36th, LLC and Carnegie Holdings LLC in favor of Chinatrust Bank (U.S.A.), in the sum of $11,761,150, and recorded 12/8/2006 with said City Register's Office under CRFN 2006000675701; **(MORTGAGE TAX $329,310.81 PAID)**

4. Project Loan Mortgage dated 8/18/2006, made by 11 East 36th, LLC and Carnegie Holdings LLC in favor of Chinatrust Bank (U.S.A.), in the sum of $1,538,850, and recorded 12/8/2006 with said City Register's Office under CRFN 2006000675702; **(MORTGAGE TAX $43,086.40 PAID)**

5. Mortgage dated 11/23/04, made by 11 East 36th, LLC and Carnegie Holdings LLC in favor of Grand Pacific Finance Corp., in the sum of $2,300,000, and recorded 7/25/2005 with said City Register's Office under CRFN 2005000415069; **(MORTGAGE TAX $63,250 PAID)**

6. Mortgage dated 8/18/06, made by 11 East 36th, LLC and Carnegie Holdings LLC in favor of Grand Pacific Finance Corp., in the sum of $700,000, which Mortgage 6, by its terms, is consolidated with Mortgage 5 to form a single lien in the principal sum of $3,000,000, and recorded 12/8/2006 with said City Register's Office under CRFN 2006000675708; **(MORTGAGE TAX $19,600 PAID)**

   - which Mortgages 5 and 6 were assigned to Chinatrust Bank (U.S.A.) by assignment, dated 3/30/07, and recorded on 4/20/2007 with said City Register's Office under CRFN 2007000205934; and

   - which Mortgages 5 and 6 as assigned, were amended and restated by agreement dated 3/30/2007, and recorded 4/20/2007 with said City Register's Office under CRFN 2007000205935; and

7. Supplemental Project Loan Mortgage dated 3/30/2007, made by 11 East 36th, LLC and Carnegie Holdings LLC in favor of Chinatrust Bank (U.S.A.), in the sum of $4,500,000, and recorded 4/20/2007 with said City Register's Office under CRFN 2007000205936. **(MORTGAGE TAX $126,000 PAID)**

MORTGAGE SCHEDULE

1. Mortgage
   Mortgagor:     11 East 36th, LLC and Carnegie Holdings LLC
   Mortgagee:     Grand Pacific Finance Corp.
   Amount:        $2,300,000.00
   Dated:         11/23/2004
   Recorded:      07/25/2005
   CRFN#:         2005000415069
   Tax Paid:      $63,250.00

   a.  Subordination and Inter creditor Agreement
       Mortgagor:    Grand Pacific Finance Corp.
       Mortgagee:    Chinatrust Bank (U.S.A.)
       Dated:        08/18/2006
       Recorded:     12/08/2006
       CRFN#:        2006000675707

2. Mortgage and Consolidation Agreement
   Mortgagor:     11 East 36th, LLC and Carnegie Holdings LLC
   Mortgagee:     Grand Pacific Corp.
   Amount:        $700,000.00
   Dated:         08/16/2006
   Recorded:      12/08/2006
   CRFN#:         2006000675708
   Tax Paid:      $19,600.00
   This Mortgage by its terms consolidates Mortgages 1 and 2 to form a single lien of $3,000,000.00

   a.  Assignment of Mortgage
       Assignor:     Grand Pacific Finance Corp.
       Assignee:     Chinatrust Bank (U.S.A.)
       Dated:        03/28/2007
       Recorded:     04/20/2007
       CRFN#:        2007000205934

   b.  Amended and Restated Mortgage
       Mortgagor:    11 East 36, LLC and Carnegie Holdings LLC
       Mortgagee:    Chinatrust Bank (U.S.A.)
       Amount:       $3,000,000.00
       Dated:        03/28/2007
       Recorded:     04/20/2007
       CRFN#:        2007000205935

9

    c.    Assignment of Mortgage
        Assignor:    Chinatrust Bank (U.S.A.)
        Assignee:    First Central Savings Bank
        Dated:    03/18/2008
        Recorded:    05/27/2008
        CRFN#:    2008000213142

3.    Building Loan Mortgage
    Mortgagor:    11 East 36th, LLC and Carnegie Holdings LLC
    Mortgagee:    Chinatrust Bank (U.S.A.)
    Amount:    $11,761,150.00
    Dated:    08/18/2006
    Recorded:    12/08/2006
    CRFN#:    2006000675701
    Tax Paid:    $329,310.81

    a.    Assignment of Mortgage
        Assignor:    Chinatrust Bank (U.S.A.)
        Assignee:    First Central Savings Bank
        Dated:    03/18/2008
        Recorded:    05/27/2008
        CRFN#:    2008000213141

4.    Project Loan Mortgage
    Mortgagor:    11 East 36th LLC and Carnegie Holdings LLC
    Mortgagee:    Chinatrust Bank (U.S.A)
    Amount:    $4,500,000.00
    Dated:    03/28/2007
    Recorded:    04/20/2007
    CRFN#:    2007000205936
    Tax Paid:    $126,000.00
    Covers premises under examination and more.

    a.    Splitter Agreement
        Mortgagor:    11 East 36th, LLC, Morgan Lofts, LLC and Bay Condos, LLC
        Mortgagee:    Chinatrust Bank (U.S.A.)
        Dated:    03/18/2008
        Recorded:    05/27/2008
        CRFN#:    2008000213143
        Splits and severs lien into two separate liens:
        Substitute Mortgage A in the amount of $3,620,000.00
        Substitute Mortgage B in the amount of $880,000.00 to cover premises not under examination

5.   Substitute Mortgage A
     Mortgagor:    11 East 36th, LLC Morgan Lofts, LLC and Bay Condos, LLC
     Mortgagee:    Chinatrust Bank (U.S.A.)
     Amount:       $3,620,000.00
     Dated:        03/18/2008
     Recorded:     05/27/2008
     CRFN#:        2008000213144

     a.   Assignment of Mortgage
          Assignor:     Chinatrust Bank (U.S.A.)
          Assignee:     First Central Savings Bank
          Dated:        03/18/2008
          Recorded:     05/27/2008
          CRFN#:        2008000213146

6.   Mortgage
     Mortgagor:    11 East 36th, LLC, Morgan Lofts, LLC and Bay Condos, LLC
     Mortgagee:    First Central Savings Bank
     Amount:       $464,437.48
     Dated:        03/20/2008
     Recorded:     05/27/2008
     CRFN#:        2008000213147
     Tax Paid:     $13,003.20

     a.   Modification, Extension and Consolidation Agreement
          Mortgagor:    11 East 36th, LLC, Morgan Lofts, LLC and Bay Condos, LLC
          Mortgagee:    First Central Savings Bank
          Dated:        03/20/2008
          Recorded:     05/27/2008
          CRFN#:        2008000213148
          Consolidates Mortgages 1-6 to form a single lien of $10,000,000.00

     b.   Assignment of Leases and Rents
          Assignor:     11 East 36th, LLC, Morgan Lofts, LLC and Bay Condos, LLC
          Assignee: First Central Savings Bank
          Dated:        03/20/2008
          Recorded:     05/27/2008
          CRFN#:        2008000213149

11

# Old Republic National Title Insurance Company

Title No.: MTANY-054490

## SCHEDULE B CONTINUED

### LEGAL DESCRIPTION

The Condominium Units known as Units No. (See Schedule of Units attached) (the Units) in the premises known as The Morgan Lofts Condominium, said Unit being designated and described as Unit No. (See Schedule of Units attached) in the Declaration made by 11 East 36th, LLC, pursuant to Article 9-B of the Real Property Law of The State of New York (the Condominium Act) establishing a plan for condominium ownership of said premises, which Declaration was recorded in the Office of the Register of the County of New York on 11/22/2006 in CRFN 2006000650189, as amended by First Amendment to Declaration in CRFN 2008000335962 and said units being also designated as Tax Lots Nos. (See Schedule of Units attached) in Block 866 on the tax map of The City of New York for the Borough of New York in the Real Property Assessment Department of The City of New York and on the Floor Plans of the building (the Building) in which the Unit is contained, and filed with the Real Property Assessment Department of the City of New York on 11/22/2006, as Condominium Plan No. 1617 and also filed in the said Register's Office on 11/22/2006, as Map in CRFN 2006000650188.

Together with undivided interest in the common elements (See Schedule of Units attached);

The land on which said Building is located is bounded and described as follows:

ALL that certain plot, piece or parcel of land, situate, lying and being in the Borough of Manhattan, City, County and State of New York, bounded and described as follows:

BEGINNING at a point on the southerly side of East 37th Street, distant 202 feet easterly from the corner formed by the intersection of the southerly side of 37th Street and the easterly side of 5th Avenue;

RUNNING THENCE easterly along the southerly side of 37th Street, 24 feet;

THENCE southerly parallel with the easterly side of 5th Avenue and part of the distance through a party wall, 98 feet 9 inches to the center line of the block;

THENCE easterly along the center line of the block, 24 feet;

THENCE southerly parallel with the easterly side of 5th Avenue, 98 feet 9 inches to the northerly side of East 36th Street;

THENCE westerly along the northerly side of East 36th Street, 50 feet;

THENCE northerly parallel with the easterly side of 5th Avenue, 98 feet 9 inches to the center line of the block;

THENCE easterly along said center line of the block, 2 feet;

THENCE northerly again parallel with the easterly side of 5th Avenue, 98 feet 9 inches to the southerly side of 37th Street at the point or place of BEGINNING.

NOTE: Being District , Section 3, Block(s) 866, Lot(s) 1202, 1203, 1204, 1205, 1206, 1207, 1208, 1209, 1215, 1220, 1232, 1233, 1239, 1241, 1242, 1247, 1248, 1253, 1254, 1259, 1260, 1268, 1271-1305, Tax Map of the Borough of New York, County of New York.

NOTE: Lot and Block shown for informational purposes only.

Issued by:

**Madison Title Agency, LLC**
**1125 Ocean Avenue, Lakewood, NJ 08701**
Telephone: 212-808-9400 Fax: 212-808-9420

(054490.PFD/054490/114)

12

MTANY-054490
SCHEDULE OF UNITS

| Unit No. | Lot No. | % Interest in Common Elements |
|---|---|---|
| 101 | 1202 | 7.26% |
| 102 | 1203 | 1.91% |
| 201 | 1204 | 1.49% |
| 202 | 1205 | 1.20% |
| 203 | 1206 | 0.71% |
| 204 | 1207 | 1.01% |
| 205 | 1208 | 1.51% |
| 206 | 1209 | 1.60% |
| 306 | 1215 | 1.60% |
| 406 | 1220 | 1.60% |
| 606 | 1232 | 1.60% |
| 701 | 1233 | 1.43% |
| 801 | 1239 | 1.41% |
| 803 | 1241 | 0.73% |
| 804 | 1242 | 1.01% |
| 903 | 1247 | 0.77% |
| 904 | 1248 | 1.01% |
| 1003 | 1253 | 0.73% |
| 1004 | 1254 | 1.01% |
| 1103 | 1259 | 0.77% |
| 1104 | 1260 | 1.01% |
| 1206 | 1268 | 1.60% |
| CS1 | 1271 | 0.045% |
| CS2 | 1272 | 0.045% |
| CS3 | 1273 | 0.045% |
| CS4 | 1274 | 0.045% |
| CS5 | 1275 | 0.045% |
| CS6 | 1276 | 0.045% |
| CS7 | 1277 | 0.045% |
| CS8 | 1278 | 0.045% |
| CS9 | 1279 | 0.045% |
| CS10 | 1280 | 0.045% |
| CS11 | 1281 | 0.045% |
| CS12 | 1282 | 0.045% |
| CS13 | 1283 | 0.045% |
| CS14 | 1284 | 0.045% |
| CS15 | 1285 | 0.045% |
| CS16 | 1286 | 0.045% |
| CS17 | 1287 | 0.045% |
| CS18 | 1288 | 0.045% |
| CS19 | 1289 | 0.045% |
| CS20 | 1290 | 0.045% |
| CS21 | 1291 | 0.045% |

13



| CS22 | 1292 | 0.045% |
| CS23 | 1293 | 0.045% |
| CS24 | 1294 | 0.045% |
| CS25 | 1295 | 0.045% |
| CS26 | 1296 | 0.045% |
| CS27 | 1297 | 0.045% |
| CS28 | 1298 | 0.045% |
| CS29 | 1299 | 0.045% |
| CS30 | 1300 | 0.045% |
| CS31 | 1301 | 0.045% |
| CS32 | 1302 | 0.045% |
| CS33 | 1303 | 0.045% |
| CS34 | 1304 | 0.045% |
| CS35 | 1305 | 0.045% |

## OMNIBUS FIRST AMENDMENT TO MODIFICATION AGREEMENT, SUBSTITUTE NOTE AND OTHER LOAN DOCUMENTS

### 11 EAST 36TH, LLC, MORGAN LOFTS, LLC BAY CONDOS, LLC

### TO

### FIRST CENTRAL SAVINGS BANK

---

**ADDRESS: 11 East 36th Street, units 101. 102, 701, 801, 803, 804, 903, 904, 1003, 1004, 1103, 1104, 201, 202, 203, 204, 205, 206, 306, 406, 606, 1206, and CS1-CS35, New York, New York 10016**
**SECTION: 3**
**BLOCK: 866**
**LOTS: 1202, 1203, 1204, 1205, 1206, 1207, 1208, 1209, 1215, 1220, 1232, 1233, 1239, 1241, 1242, 1247, 1248, 1253, 1254, 1259, 1260, 1268, 1271-1305**
**CITY: New York**
**STATE: New York**

*Record and Return by mail to:*
Donna M. Cusimano, Esq.
Todtman, Nachamie, Spizz & Johns, P.C.
425 Park Avenue, 5th Floor
New York, New York 10022
(212)754-9400

15

## ENDORSEMENT AND ALLONGE TO PROMISSORY NOTE

Pay to the order of 11 East 36 Note Buyer LLC without warranty, representation or recourse of any kind, that certain Mortgage Note dated November 23, 2004 in the original amount of $2,300,000.00 executed by 11 East 36th, LLC, a New York limited liability company in favor of Grand Pacific Finance Corp.

First Central Savings Bank

By: _Salvatore Di Martino_
/Name: Salvatore Di Martino
Title: Executive Vice President

Document Number: 272551

## ENDORSEMENT AND ALLONGE TO PROMISSORY NOTE

Pay to the order of 11 East 36 Note Buyer LLC without warranty, representation or recourse of any kind, that certain Promissory Note dated August 16, 2006 in the original amount of $700,000.00 executed by 11 East 36th, LLC, a New York limited liability company in favor of Grand Pacific Finance Corp.

First Central Savings Bank

By: *Salvatore Di Martino*
Name: Salvatore Di Martino
Title: Executive Vice President

Document Number: 272551

### ENDORSEMENT AND ALLONGE TO PROMISSORY NOTE

Pay to the order of 11 East 36 Note Buyer LLC without warranty, representation or recourse of any kind, that certain Amended and Restated Promissory Note dated August 16, 2006 in the original amount of $3,000,000.00 executed by 11 East 36th, LLC, a New York limited liability company in favor of Grand Pacific Finance Corp.

First Central Savings Bank

By: *Salvatore Di Martino*

Name: Salvatore Di Martino

Title: Executive Vice President

Document Number: 272551

## ENDORSEMENT AND ALLONGE TO PROMISSORY NOTE

Pay to the order of 11 East 36 Note Buyer LLC without warranty, representation or recourse of any kind, that certain Amended and Restated Acquisition Loan Note dated March 28, 2007 in the original amount of $3,000,000.00 executed by 11 East 36th, LLC, a New York limited liability company in favor of Chinatrust Bank (U.S.A.).

First Central Savings Bank

By: _Salvatore Di Martino_
Name: Salvatore Di Martino
Title: Executive Vice President

Document Number: 272551

## ENDORSEMENT AND ALLONGE TO PROMISSORY NOTE

Pay to the order of 11 East 36 Note Buyer LLC without warranty, representation or recourse of any kind, that certain Second Project Loan Note dated March 28, 2007 in the original amount of $4,500,000.00 executed by 11 East 36th, LLC, a New York limited liability company in favor of Chinatrust Bank (U.S.A.).

First Central Savings Bank

By: _Salvatore Di Martino_

Name: Salvatore Di Martino

Title: Executive Vice President

Document Number: 272551

## ENDORSEMENT AND ALLONGE TO PROMISSORY NOTE

Pay to the order of 11 East 36 Note Buyer LLC without warranty, representation or recourse of any kind, that certain Substitute Note A dated March 18, 2008 in the original amount of $3,620,000.00 executed by 11 East 36th, LLC, Morgan Lofts, LLC, and Bay Condos, LLC, each a New York limited liability company in favor of Chinatrust Bank (U.S.A.).

First Central Savings Bank

By: _Salvatore Di Martino_
Name: Salvatore Di Martino
Title: Executive Vice President

Document Number: 272551

## ENDORSEMENT AND ALLONGE TO PROMISSORY NOTE

Pay to the order of 11 East 36 Note Buyer LLC without warranty, representation or recourse of any kind, that certain Mortgage Note dated March 20, 2008 in the original amount of $464,437.48 executed by 11 East 36th, LLC, Morgan Lofts, LLC, and Bay Condos, LLC, each a New York limited liability company in favor of First Central Savings Bank.

First Central Savings Bank

By: _Salvatore Di Martino_
/Name: _Salvatore Di Martino_
Title: _Executive Vice President_

Document Number: 272551

**ENDORSEMENT AND ALLONGE TO PROMISSORY NOTE**

Pay to the order of 11 East 36 Note Buyer LLC without warranty, representation or recourse of any kind, that certain Substitute Mortgage Note dated March 20, 2008 in the original amount of $10,000,000.00 executed by 11 East 36th, LLC, Morgan Lofts, LLC, and Bay Condos, LLC, each a New York limited liability company in favor of First Central Savings Bank.

First Central Savings Bank

By: *Salvatore Di Martino*
Name: Salvatore Di Martino
Title: Executive Vice President

Document Number: 272551

### ENDORSEMENT AND ALLONGE TO PROMISSORY NOTE

Pay to the order of 11 East 36 Note Buyer LLC without warranty, representation or recourse of any kind, that certain Note dated October 9, 2009 in the original amount of $38,972.41 executed by 11 East 36th, LLC, Morgan Lofts, LLC, and Bay Condos, LLC, each a New York limited liability company in favor of First Central Savings Bank.

First Central Savings Bank

By: _Salvatore Di Martino_

Name: Salvatore Di Martino

Title: Executive Vice President

Document Number: 272551

| NYC DEPARTMENT OF FINANCE OFFICE OF THE CITY REGISTER | |
|---|---|
| This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument. The information on this page will control for indexing purposes in the event of any conflict with the rest of the document. | <br>2007100300854001001E088F |

## RECORDING AND ENDORSEMENT COVER PAGE
PAGE 1 OF 9

**Document ID:** 2007100300854001    **Document Date:** 09-28-2007    **Preparation Date:** 10-03-2007
**Document Type:** DEED
**Document Page Count:** 8

| PRESENTER: | RETURN TO: |
|---|---|
| BRUCE PAYNE ASSOCIATES, INC. PICKUP<br>-GAIL<br>STEWART TITLE -24504BNY-KP<br>121 WEST OAK STREET<br>AMITYVILLE, NY 11701<br>631-598-2200 | MELODY A. CHANG, ESQ.<br>11 EAST 36TH STREET<br>11TH FLOOR<br>NEW YORK, NY 10016 |

### PROPERTY DATA

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| MANHATTAN | 866 | 1202 Entire Lot | 101 | 11 EAST 36TH STREET |
| **Property Type:** COMMERCIAL CONDO UNIT(S) | | | | |
| MANHATTAN | 866 | 1203 Entire Lot | 102 | 11 EAST 36TH STREET |
| **Property Type:** COMMERCIAL CONDO UNIT(S) | | | | |

### CROSS REFERENCE DATA

CRFN_____ or Document ID_____ or _____ Year_____ Reel ___ Page _____ or File Number_____

### PARTIES

| GRANTOR/SELLER: | GRANTEE/BUYER: |
|---|---|
| 11 EAST 36TH, LLC<br>11 EAST 36TH STREET, 10TH FLOOR<br>NEW YORK, NY 10016 | BAY CONDOS<br>11 EAST 36TH STREET, 10TH FLOOR<br>NEW YORK, NY 10016 |

### FEES AND TAXES

| Mortgage | | | Filing Fee: | |
|---|---|---|---|---|
| Mortgage Amount: | $ | 0.00 | | $ 165.00 |
| Taxable Mortgage Amount: | $ | 0.00 | NYC Real Property Transfer Tax: | |
| Exemption: | | | | $ 51,993.87 |
| TAXES: County (Basic): | $ | 0.00 | NYS Real Estate Transfer Tax: | |
| City (Additional): | $ | 0.00 | | $ 7,924.00 |
| Spec (Additional): | $ | 0.00 | | |
| TASF: | $ | 0.00 | | |
| MTA: | $ | 0.00 | | |
| NYCTA: | $ | 0.00 | | |
| Additional MRT: | $ | 0.00 | | |
| TOTAL: | $ | 0.00 | | |
| Recording Fee: | $ | 80.00 | | |
| Affidavit Fee: | $ | 0.00 | | |

RECORDED OR FILED IN THE OFFICE
OF THE CITY REGISTER OF THE
CITY OF NEW YORK
Recorded/Filed   10-15-2007 10:30
City Register File No.(CRFN):
2007000519095

*Annette M Hill*

*City Register Official Signature*

24504BNY

## UNIT DEED

Date of Delivery 9/28/07   MC

THIS INDENTURE made this 22nd day of November, 2006, between **11 EAST 36TH**, **LLC**, existing under the laws of the State of New York, having a place of business at 11 East 36th Street, New York, New York 10016, as party of the first part, and **BAY CONDOS, LLC**, existing under the laws of the State of New York, having a place of business at 11 East 36th Street, New York, New York 10016, as party of the second part;

T.T.
7924

## WITNESSETH:

That the party of the first part, in consideration of Ten ($10.00) Dollars, lawful money of the United States, and other good and valuable considerations, paid by the party of the second part, does hereby grant and release unto the party of the second part, the heirs or successors and assigns of the party of the second part forever;

BLK
866

NINETY-SEVEN AND TWO-TENTHS (97.2%) PERCENT UNDIVIDED INTEREST in all that certain piece or parcel of real property, with the improvements therein contained and known as:

LOTS
1202 &
1203

The Condominium Unit Nos. 101 and 102 (collectively, the "Unit") in the building designated as THE MORGAN LOFTS CONDOMINIUM in the Declaration establishing a plan for Condominium Ownership of said premises under Article 9-B of the Real Property Law of the State of New York (the "New York Condominium Act"), dated October 23, 2006 and recorded in the Office of the Register of New York County (the "Register's Office") on November 22, 2006 under CRFN 2006000650189, and also designated as Tax Lots 1202 and 1203 in Block 866, of the Borough of Manhattan on the Tax Map of the Real Property Assessment Department of The City of New York and on the floor plans of said building, certified by Steven Krachtman, Architect, and filed with the Real Property Assessment Department of the City of New York as Condominium Plan No. 1617, and also filed in the City Register's Office on November 22, 2006 as Map No. _____ in said Condominium,

**TOGETHER** with an undivided 7.10% (as to Unit 101) and 1.90% (as to Unit 102) interest in the Common Elements representing the Unit.

The premises within which the Unit is located are more particularly described as follows:

*ALL that certain plot, piece or parcel of land, situate, lying and being the Borough of Manhattan, County of New York, City and State of New York, designated on the Tax Map of the City of New York; for the County of New York, as Block 866, Lot 11, known as 11 East 36th Street, New York, New York and more particularly bounded and described on Schedule A annexed hereto.*

1

Morgan Lofts Deed - Unit 101 and 102-final

SUBJECT TO: The provisions of the Declaration, By-Laws, site plan and floor plans of the Condominium recorded or filed simultaneously with and as part of the Declaration, as the same may be amended from time to time by instruments recorded or filed in the Office of the Clerk of the County of New York, which provisions, together with any amendments thereto, shall bind any person having at any time any interest or estate in the unit, as though such provisions were recited at length herein.

SUBJECT TO:  The terms and conditions of the mortgage liens of record presently encumbering the Unit, held by Chinatrust Bank (U.S.A.) and Grand Pacific Finance Corp., and of the Limited Consent to Unit Transfer, dated of even date herewith, and annexed hereto as Schedule B.

*THE GRANTOR IS THE SAME PERSON AS GRANTEE in deed Recorded in CRFN. No. 2005000415062 and CRFN No 2007000243388.*

TO HAVE AND TO HOLD the premises herein granted unto the party of the second part, the heirs or successors and assigns of the party of the second part forever.

*Premises herein described are part of the same and intended to be part of the same as those described in deed CRFN. 2005000415062 and CRFN. 2007000243388.*

AND the party of the first part covenants that the party of the first part has not done or suffered anything whereby the said premises have been encumbered in any way whatever, except as aforesaid.

AND the party of the first part, in compliance with Section 13 of the Lien Law, covenants that the party of the first part will receive the consideration for this conveyance and will hold the right to receive such consideration as a trust fund to be applied first for the purpose of paying the cost of the improvement before using any part of the total of the same for any other purpose.

The use for which the Unit is intended is that of a commercial occupancy, subject to the applicable governmental regulations and the restrictions contained in the Declaration.

This conveyance has been made in the regular course of business actually conducted by the party of the first part. ✓

The word "party" shall be construed as if it read "parties" whenever the sense of this indenture so requires.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

2

*Morgan Lofts Deed - Unit 101 and 102-final*

IN WITNESS WHEREOF, the party of the first part has duly executed this deed and the party of the second part has duly assumed the obligations therein referred to, the day and year first above written.

In presence of:

Party of the First Part:  11 EAST 36th, LLC
By: Madison Condos, LLC, Manager
By: Bluebell Assets, LLC, Manager

By: _____

Ben Bobker
Managing Member

Party of the Second Part:  BAY CONDOS, LLC

By: _____

Avi Bobker
Managing Member

3

ACKNOWLEDGMENT

STATE OF NEW YORK          )
                          ) ss:
COUNTY OF NEW YORK         )

On the 22nd day of November in the year 2006, before me the undersigned, personally appeared BEN BOBKER AND AVI BOBKER, personally known to me to or proved to me on the basis of satisfactory evidence to be the individuals whose names are subscribed to the within instrument and acknowledged to me that they executed the same in their capacities and that by their signatures on the instrument, the individuals, or the persons upon behalf of which the individuals acted, executed the instrument.

_____
Notary Public

SEAL

MELODY CHANG
Notary Public, State of New York
No. 31-5007889
Qualified in New York County
Commission Expires February 8, 18__

7/29/09

Record & Return to:

Melody A. Chang, Esq.
11 East 36th Street, 10th Floor
New York, New York 10016

4

Morgan Lofts Deed - Unit 101 and 102-final

## <u>SCHEDULE A</u>

**ALL** that certain plot, piece or parcel of land, situated, lying and being in the Borough of Manhattan, City, County and State of New York, bounded and described as follows:

**BEGINNING** at a point on the southerly side of East 37th Street, distant 202 feet easterly from the corner formed by the intersection of the southerly side of 37th Street and the easterly side of 5th Avenue;

**RUNNING THENCE** easterly along the southerly side of 37th Street, 24 feet;

**THENCE** southerly parallel with the easterly side of 5th Avenue and part of the distance through a party wall, 98 feet 9 inches to the center line of the block;

**THENCE** easterly along the center line of the block, 24 feet;

**THENCE** southerly parallel with the easterly side of 5th Avenue, 98 feet 9 inches to the northerly side of East 36th Street;

**THENCE** westerly along the northerly side of East 36th Street, 50 feet;

**THENCE** northerly parallel with the easterly side of 5th Avenue, 98 feet 9 inches to the center line of the block;

**THENCE** easterly along said center line of the block, 2 feet;

**THENCE** northerly again parallel with the easterly side of 5th Avenue, 98 feet 9 inches to the southerly side of 37th Street at the point or place of **BEGINNING.**

Morgan Lofts Deed - Unit 101 and 102-final

## SCHEDULE B

### LIMITED CONSENT TO UNIT TRANSFER
### (Morgan Lofts Condominium – Units 101 and 102)

THE UNDERSIGNED, in consideration of commercial mortgage loans granted by CHINATRUST BANK (U.S.A.) AND GRAND PACIFIC FINANCE CORP. (collectively, the "Lender"), in favor of 11 EAST 36TH, LLC, a New York limited liability company with its principal offices at 11 East 36th Street, 10th Floor, New York, New York 10016 ("Borrower"), which obligations of Borrower under said loans are secured by certain mortgage liens, dated as of November 23, 2004, July 14, 2005, and August 16, 2006 respectively (collectively, the "Mortgage"), encumbering real property located at 11 East 36th Street a/k/a 10 East 37th Street, New York, New York ("Premises"), hereby acknowledge and affirmatively agree to the following:

1.      Borrower and New Owner (as defined herein) have requested the consent of Lender for the transfer of title, without partial paydown of the principal indebtedness secured by the Mortgage, of Commercial Condominium Units 101 and 102 (collectively, the "Units") at the Premises, to Bay Condos, LLC, a New York limited liability company in good standing and having its principal place of business at 11 East 36th Street, New York, New York 10016 ("New Owner"), for the purchase price of $1,980,819.00.

2.      Borrower and New Owner hereby represent to Lender that (a) the principals of Borrower and New Owner are immediate family members; (b) New Owner is acquiring title to the Units for the sole purpose of completing the acquisition phase of its tax deferral exchange pursuant to §1031 of the Internal Revenue Code; and (c) Borrower intends to enter into a tax deferral exchange pursuant to §1031 of the Internal Revenue Code ("IRC") with the entire net sale proceeds derived from the transfer of the Units to New Owner.

3.      Borrower hereby acknowledges that, notwithstanding such transfer of title of the Units to New Owner, Borrower shall remain liable for the repayment of loans secured by the Mortgage, and the liens of the Mortgage shall continue to encumber the Units.

4.      New Owner hereby acknowledges that, notwithstanding any consent granted for the transfer of title of the Units to New Owner, New Owner shall take title to the Units subject to the liens of the Mortgage. New Owner shall comply with the terms of the Mortgage to the extent they are applicable to the mortgagor therein. New Owner shall, upon its sale of the Units (one or both), comply with the terms of the Mortgage with respect to the remittance of the net sale proceeds therefrom towards the paydown of the outstanding principal balance under the Mortgage. Notwithstanding any consent granted for the transfer of title of the Units to New Owner, Lender shall have no obligation to release the Units (one or both) from the liens of the Mortgage unless Lender is in receipt from New Owner and/or Borrower the necessary paydown amount(s) as required under the Mortgage.

5.      Borrower and New Owner hereby acknowledge that any consent granted by Lender for the transfer of title of the Units to New Owner is merely an accommodation to Borrower and New Owner for their respective IRC §1031 tax deferred exchanges. Borrower and New Owner shall, jointly and severally, hold Lender harmless and indemnify Lender against any claims arising out of the transfer of title of the Units (including any expenses incurred by Lender for such transfer of title) and/or audits by the Internal Revenue Service in connection with their respective IRC §1031 tax deferred exchanges.

6.      In the event any legal proceedings are commenced against New Owner, including but not limited to bankruptcy filings whether voluntary or involuntary, Borrower shall immediately and without notice "redeem" the Units from New Owner. Redemption of the Units shall be construed as follows: New Owner shall convey title to the Units back to Borrower for no consideration, and Borrower shall accept title to the Units as conveyed by New Owner. Both New Owner and Borrower shall cooperate and execute all necessary transfer documents (including deed instrument and transfer tax forms) to effectuate the aforesaid redemption, and all expenses of such redemption transaction shall be borne by New Owner and Borrower, jointly and severally. Lender shall have the right, but not the obligation, to advance payment of such redemption expenses, and such advance shall be deemed a permitted advance under the Mortgage and secured thereby. Moreover, Borrower and New Owner expressly agree that it shall be a material event of default of the loans secured by the Mortgage if such redemption transaction is not completed within thirty (30) days of demand from Lender.

7.      Borrower and New Owner further acknowledge that Lender reserves all of its rights and remedies under the Mortgage and all other related documents executed by Borrower in favor of Lender, in the event Borrower and/or New Owner fail to perform as set forth herein.

8.      Borrower and New Owner shall cause this instrument to be recorded simultaneously with the deed vesting title to the Units in New Owner.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

7

Morgan Lofts Deed - Unit 101 and 102-final

**[SIGNATURE PAGE OF LIMITED CONSENT TO UNIT TRANSFER]**
**(Morgan Lofts Condominium – Units 101 and 102)**

Dated as of:  November 22, 2006
New York, New York

11 East 36th, LLC
By: Madison Condos, LLC, Manager
By: Bluebell Assets, LLC, Manager

By: _____
Ben Bobker, Manager

Bay Condos, LLC

By: _____
Avi Bobker, Manager

THE FOREGOING IS
CONSENTED TO BY:

Chinatrust Bank (U.S.A.)

By: _____
Yintong (Tony) Chang
First Vice President

Grand Pacific Finance Corp.

By: _____
Robert W. Heinemann, Jr.
Senior Executive Vice President

8

Morgan Lofts Deed - Unit 101 and 102-final



2007100300854001001SC60E

| SUPPORTING DOCUMENT COVER PAGE | | PAGE 1 OF 1 |
|---|---|---|
| Document ID: 2007100300854001 | Document Date: 09-28-2007 | Preparation Date: 10-03-2007 |
| Document Type: DEED | | |

**ASSOCIATED TAX FORM ID: 2007100300191**

**SUPPORTING DOCUMENTS SUBMITTED:**

Page Count

RP - 5217 REAL PROPERTY TRANSFER REPORT                                     1

NYC DEPARTMENT OF FINANCE
OFFICE OF THE CITY REGISTER

**REAL PROPERTY TRANSFER REPORT**
STATE OF NEW YORK
STATE BOARD OF REAL PROPERTY SERVICES
**RP - 5217NYC**
(Rev 11/2002)

**FOR CITY USE ONLY**

| C1. County Code | C2. Date Deed Recorded | | |
|---|---|---|---|
| | Month | Day | Year |

C3. Book OR C5. CRFN ___ C4. Page

**PROPERTY INFORMATION**

1. Property Location: 11   EAST 36TH STREET 101   MANHATTAN   10016
   STREET NUMBER   STREET NAME   BOROUGH   ZIP CODE

2. Buyer Name: BAY CONDOS, LLC
   LAST NAME / COMPANY   FIRST NAME

3. Tax Billing Address: Indicate where future Tax Bills are to be sent if other than buyer address (at bottom of form)

4. Indicate the number of Assessment Roll parcels transferred on the deed: 2 # of Parcels OR ☐ Part of a Parcel

4A. Planning Board Approval - N/A for NYC
4B. Agricultural District Notice - N/A for NYC

Check the boxes below as they apply:
6. Ownership Type is Condominium ☑
7. New Construction on Vacant Land ☐

5. Deed Property Size: FRONT FEET X DEPTH OR ACRES

8. Seller Name: 11 EAST 36TH, LLC
   LAST NAME / COMPANY   FIRST NAME

9. Check the box below which most accurately describes the use of the property at the time of sale:

A ☐ One Family Residential
B ☐ 2 or 3 Family Residential
C ☐ Residential Vacant Land
D ☐ Non-Residential Vacant Land
E ☑ Commercial
F ☐ Apartment
G ☐ Entertainment / Amusement
H ☐ Community Service
I ☐ Industrial
J ☐ Public Service

**SALE INFORMATION**

10. Sale Contract Date: 11 / 17 / 2006
11. Date of Sale / Transfer: 11 / 22 / 2006
12. Full Sale Price $ 1,980,719

( Full Sale Price is the total amount paid for the property including personal property. This payment may be in the form of cash, other property or goods, or the assumption of mortgages or other obligations.) Please round to the nearest whole dollar amount.

13. Indicate the value of personal property included in the sale

14. Check one or more of these conditions as applicable to transfer:
A ☐ Sale Between Relatives or Former Relatives
B ☐ Sale Between Related Companies or Partners in Business
C ☐ One of the Buyers is also a Seller
D ☐ Buyer or Seller is Government Agency or Lending Institution
E ☐ Deed Type not Warranty or Bargain and Sale (Specify Below)
F ☑ Sale of Fractional or Less than Fee Interest (Specify Below)
G ☐ Significant Change in Property Between Taxable Status and Sale Dates
H ☐ Sale of Business is Included in Sale Price
I ☐ Other Unusual Factors Affecting Sale Price (Specify Below)
J ☐ None

**ASSESSMENT INFORMATION - Data should reflect the latest Final Assessment Roll and Tax Bill**

15. Building Class O,9
16. Total Assessed Value (of all parcels in transfer) 4,950,000

17. Borough, Block and Lot / Roll Identifier(s) ( If more than three, attach sheet with additional Identifier(s) )
MANHATTAN 866 1202   MANHATTAN 866 1203

**CERTIFICATION**   I certify that all of the items of information entered on this form are true and correct (to the best of my knowledge and belief) and I understand that the making of any willful false statement of material fact herein will subject me to the provisions of the penal law relative to the making and filing of false instruments.

BUYER
BUYER SIGNATURE: [signature] 11/22/06
STREET NUMBER (AFTER SALE): 11 EAST 36TH Street
CITY OR TOWN: New York   STATE: NY   ZIP CODE: 10016

BUYER'S ATTORNEY
LAST NAME: CHANG   FIRST NAME: MELODY
212 962-0114
AREA CODE   TELEPHONE NUMBER

SELLER
SELLER SIGNATURE: [signature]   11/22/06
DATE

200612200081720I

| CERTIFICATION | I certify that all of the items of information entered on this form are true and correct (to the best of my knowledge and belief) and understand that the making of any wilfful false statement of material fact herein will subject me to the provisions of the penal law relative to the making and filing of false instruments. |
|---|---|

| BUYER SIGNATURE | DATE 11/22/06 | LAST NAME Chang | BUYER'S ATTORNEY | FIRST NAME Melody |

| STREET NUMBER 11 | STREET NAME (AFTER SALE) East 36th Street | AREA CODE 212 | TELEPHONE NUMBER 962-0114 | |

| CITY OR TOWN New York | STATE N.Y. | ZIP CODE 10016 | SELLER SIGNATURE | DATE 11/22/06 |

2006122000817201

**FOR CITY USE ONLY**

C1. County Code ___  C2. Date Deed Recorded ___ / ___ / ___
                                           Month  Day  Year

C3. Book ___ OR
C5. CRFN ___    C4. Page ___

**REAL PROPERTY TRANSFER REPORT**
STATE OF NEW YORK
STATE BOARD OF REAL PROPERTY SERVICES

**RP - 5217NYC**
(Rev 11/2002)

## PROPERTY INFORMATION

**1. Property Location**  11 | EAST 36TH STREET 101 | MANHATTAN | 10016
STREET NUMBER | STREET NAME | BOROUGH | ZIP CODE

**2. Buyer Name**  BAY CONDOS
LAST NAME / COMPANY | FIRST NAME

LAST NAME / COMPANY | FIRST NAME

**3. Tax Billing Address**  Indicate where future Tax Bills are to be sent if other than buyer address (at bottom of form)  LAST NAME / COMPANY | FIRST NAME

STREET NUMBER AND STREET NAME | CITY OR TOWN | STATE | ZIP CODE

**4. Indicate the number of Assessment Roll parcels transferred on the deed** ___ 2 ___ # of Parcels OR ☐ Part of a Parcel

4A. Planning Board Approval - N/A for NYC
4B. Agricultural District Notice - N/A for NYC

Check the boxes below as they apply:
6. Ownership Type is Condominium ☑
7. New Construction on Vacant Land ☐

**5. Deed Property Size**  ___ X ___ OR ___
FRONT FEET | DEPTH | ACRES

**6. Seller Name**  11 EAST 36TH, LLC
LAST NAME / COMPANY | FIRST NAME

LAST NAME / COMPANY | FIRST NAME

**9. Check the box below which most accurately describes the use of the property at the time of sale:**

A ☐ One Family Residential  C ☐ Residential Vacant Land  E ☑ Commercial  G ☐ Entertainment / Amusement  I ☐ Industrial
B ☐ 2 or 3 Family Residential  D ☐ Non-Residential Vacant Land  F ☐ Apartment  H ☐ Community Service  J ☐ Public Service

## SALE INFORMATION

**14. Check one or more of these conditions as applicable to transfer:**

**10. Sale Contract Date**  11 / 17 / 2006
Month Day Year

A ☐ Sale Between Relatives or Former Relatives
B ☐ Sale Between Related Companies or Partners in Business
C ☐ One of the Buyers is also a Seller
D ☐ Buyer or Seller is Government Agency or Lending Institution
E ☐ Deed Type not Warranty or Bargain and Sale (Specify Below)
F ☑ Sale of Fractional or Less than Fee Interest ( Specify Below )
G ☐ Significant Change in Property Between Taxable Status and Sale Dates
H ☐ Sale of Business is Included in Sale Price
I ☐ Other Unusual Factors Affecting Sale Price ( Specify Below )
J ☐ None

**11. Date of Sale / Transfer**  11 / 22 / 2006
Month Day Year

**12. Full Sale Price $**  1,9,8,0,7,1,9

( Full Sale Price is the total amount paid for the property including personal property. This payment may be in the form of cash, other property or goods, or the assumption of mortgages or other obligations.)  Please round to the nearest whole dollar amount.

**13. Indicate the value of personal property included in the sale**

## ASSESSMENT INFORMATION - Data should reflect the latest Final Assessment Roll and Tax Bill

**15. Building Class**  R 5    **16. Total Assessed Value (of all parcels in transfer)**  4,5,3,9,3,9

**17. Borough, Block and Lot / Roll Identifier(s) ( If more than three, attach sheet with additional identifier(s) )**

MANHATTAN 866  1202 | MANHATTAN 866  1203

## CERTIFICATION    I certify that all of the items of information entered on this form are true and correct (to the best of my knowledge and belief) and I understand that the making of any willful false statement of material fact herein will subject me to the provisions of the penal law relative to the making and filing of false instruments.

**BUYER**                                **BUYER'S ATTORNEY**

BUYER SIGNATURE | DATE        LAST NAME | FIRST NAME

                              212 | 962-0114
STREET NUMBER | STREET NAME (AFTER SALE)    AREA CODE | TELEPHONE NUMBER

                                        **SELLER**
CITY OR TOWN | STATE | ZIP CODE        SELLER SIGNATURE | DATE

2007100300191201



| CERTIFICATION | I certify that all of the items of information entered on this form are true and correct (to the best of my knowledge and belief) and understand that the making of any willful false statement of material fact herein will subject me to the provisions of the penal law relative to the making and filing of false instruments. |
|---|---|

| BUYER | | | BUYER'S ATTORNEY | |
|---|---|---|---|---|
| BUYER SIGNATURE | DATE | LAST NAME | | FIRST NAME |
| | | 212 | 962-0114 | |
| STREET NUMBER | STREET NAME (AFTER SALE) | AREA CODE | TELEPHONE NUMBER | |
| | | | SELLER | |
| CITY OR TOWN | STATE | ZIP CODE | SELLER SIGNATURE | DATE |

2007100300191201

## SCHEDULE B

### LIMITED CONSENT TO UNIT TRANSFER
### (Morgan Lofts Condominium – Units 101 and 102)

THE UNDERSIGNED, in consideration of commercial mortgage loans granted by
CHINATRUST BANK (U.S.A.) AND GRAND PACIFIC FINANCE CORP. (collectively, the
"Lender"), in favor of 11 EAST 36TH, LLC, a New York limited liability company with its
principal offices at 11 East 36th Street, 10th Floor, New York, New York 10016 ("Borrower"),
which obligations of Borrower under said loans are secured by certain mortgage liens, dated as
of November 23, 2004, July 14, 2005, and August 16, 2006 respectively (collectively, the
"Mortgage"), encumbering real property located at 11 East 36th Street a/k/a 10 East 37th Street,
New York, New York ("Premises"), hereby acknowledge and affirmatively agree to the
following:

    1.    Borrower and New Owner (as defined herein) have requested the consent of Lender
for the transfer of title, without partial paydown of the principal indebtedness secured by the
Mortgage, of Commercial Condominium Units 101 and 102 (collectively, the "Units") at the
Premises, to Bay Condos, LLC, a New York limited liability company in good standing and having
its principal place of business at 11 East 36th Street, New York, New York 10016 ("New Owner"),
for the purchase price of $1,980,819.00.

    2.    Borrower and New Owner hereby represent to Lender that (a) the principals of
Borrower and New Owner are immediate family members; (b) New Owner is acquiring title to the
Units for the sole purpose of completing the acquisition phase of its tax deferral exchange pursuant
to §1031 of the Internal Revenue Code; and (c) Borrower intends to enter into a tax deferral
exchange pursuant to §1031 of the Internal Revenue Code ("IRC") with the entire net sale proceeds
derived from the transfer of the Units to New Owner.

    3.    Borrower hereby acknowledges that, notwithstanding such transfer of title of the
Units to New Owner, Borrower shall remain liable for the repayment of loans secured by the
Mortgage, and the liens of the Mortgage shall continue to encumber the Units.

    4.    New Owner hereby acknowledges that, notwithstanding any consent granted for the
transfer of title of the Units to New Owner, New Owner shall take title to the Units subject to the
liens of the Mortgage. New Owner shall comply with the terms of the Mortgage to the extent they
are applicable to the mortgagor therein. New Owner shall, upon its sale of the Units (one or both),
comply with the terms of the Mortgage with respect to the remittance of the net sale proceeds
therefrom towards the paydown of the outstanding principal balance under the Mortgage.
Notwithstanding any consent granted for the transfer of title of the Units to New Owner, Lender
shall have no obligation to release the Units (one or both) from the liens of the Mortgage unless
Lender is in receipt from New Owner and/or Borrower the necessary paydown amount(s) as
required under the Mortgage.

6

5.    Borrower and New Owner hereby acknowledge that any consent granted by Lender for the transfer of title of the Units to New Owner is merely an accommodation to Borrower and New Owner for their respective IRC §1031 tax deferred exchanges. Borrower and New Owner shall, jointly and severally, hold Lender harmless and indemnify Lender against any claims arising out of the transfer of title of the Units (including any expenses incurred by Lender for such transfer of title) and/or audits by the Internal Revenue Service in connection with their respective IRC §1031 tax deferred exchanges.

6.    In the event any legal proceedings are commenced against New Owner, including but not limited to bankruptcy filings whether voluntary or involuntary, Borrower shall immediately and without notice "redeem" the Units from New Owner. Redemption of the Units shall be construed as follows: New Owner shall convey title to the Units back to Borrower for no consideration, and Borrower shall accept title to the Units as conveyed by New Owner. Both New Owner and Borrower shall cooperate and execute all necessary transfer documents (including deed instrument and transfer tax forms) to effectuate the aforesaid redemption, and all expenses of such redemption transaction shall be borne by New Owner and Borrower, jointly and severally. Lender shall have the right, but not the obligation, to advance payment of such redemption expenses, and such advance shall be deemed a permitted advance under the Mortgage and secured thereby. Moreover, Borrower and New Owner expressly agree that it shall be a material event of default of the loans secured by the Mortgage if such redemption transaction is not completed within thirty (30) days of demand from Lender.

7.    Borrower and New Owner further acknowledge that Lender reserves all of its rights and remedies under the Mortgage and all other related documents executed by Borrower in favor of Lender, in the event Borrower and/or New Owner fail to perform as set forth herein.

8.    Borrower and New Owner shall cause this instrument to be recorded simultaneously with the deed vesting title to the Units in New Owner.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

7

*Morgan Lofts Deed - Unit 101 and 102-final*

[SIGNATURE PAGE OF LIMITED CONSENT TO UNIT TRANSFER]
(Morgan Lofts Condominium – Units 101 and 102)

Dated as of:    November 22, 2006
                New York, New York

11 East 36th, LLC
By: Madison Condos, LLC, Manager
    By: Bluebell Assets, LLC, Manager

By: _____
        Ben Bobker, Manager

Bay Condos, LLC

By: _____
        Avi Bobker, Manager

THE FOREGOING IS
CONSENTED TO BY:

Chinatrust Bank (U.S.A.)

By: _____
        Yinting (Tony) Chang
        First Vice President

Grand Pacific Finance Corp.

By: _____
        Robert W. Heinemann, Jr.
        Senior Executive Vice President

8

Morgan Lofts Deed - Unit 101 and 102-final

B10 (Official Form 10) (04/13)

| UNITED STATES BANKRUPTCY COURT SOUTHERN DISTRICT OF NEW YORK | Proof of Claim |
|---|---|

| Name of Debtor:<br>**Morgan Lofts, LLC** | Case Number:<br>**13-11507** | |
|---|---|---|

NOTE: *Do not use this form to make a claim for an administrative expense that arises after the bankruptcy filing.*
*You may file a request for payment of an administrative expense according to 11 U.S.C. § 503.*

Name of Creditor (the person or other entity to whom the debtor owes money or property):
**Griffon V LLC**

**COURT USE ONLY**

Name and address where notices should be sent:
**Michael Shah**
**Delshah Capital**
**114 E 13th St Front 1**
**New York, NY 10003**
Telephone number:                email:

☐ Check this box if this claim amends a previously filed claim.

**Court Claim Number:**_____
        *(If known)*

Filed on: _____

Name and address where payment should be sent (if different from above):

Telephone number:                email:

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to this claim. Attach copy of statement giving particulars.

**1.  Amount of Claim as of Date Case Filed:**        **$3,132,482.00**

If all or part of your claim is secured, complete item 4.

If all or part of your claim is entitled to priority, complete item 5.

☐ Check this box if claim includes interest or other charges in addition to the principal amount of claim. Attach a statement that itemizes interest or charges.

**2.   Basis for Claim:   Money loaned**
        (See instruction #2)

| **3.   Last four digits of any number by which creditor identifies debtor:**<br>_____ | **3a. Debtor may have scheduled account as:**<br><br>(See instruction #3a ) | **3b. Uniform Claim Identifier (optional):**<br><br>(See instruction #3b) |
|---|---|---|

**4.   Secured Claim** (See instruction #4)
Check the appropriate box if the claim is secured by a lien on property or a right of setoff, attach required redacted documents, and provide the requested information.

**Nature of property or right of setoff:** ■ Real Estate  ☐ Motor Vehicle  ☐ Other
**Describe:** **Debtor's Real Property - Value of Property is based upon Debtor's Schedules**

**Value of Property: $   11,375,000.00**

**Annual Interest Rate:   9   %** ■ Fixed or ☐ Variable
**(when case was filed)**

Amount of arrearage and other charges, as of the time case was filed, included in secured claim, if any:

                                $   3,132,482.00

**Basis for perfection:    Mortgage/Judgment**

**Amount of Secured Claim:    $   3,132,482.00**

**Amount Unsecured:         $_____**

**5.   Amount of Claim Entitled to Priority under 11 U.S.C. §507(a).  If any portion of the claim falls into one of the following categories, check the box specifying the priority and state the amount.**

☐ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B).

☐ Wages, salaries, or commissions (up to $12,475*) earned within 180 days before the case was filed or the debtor's business ceased, whichever is earlier - 11 U.S.C. §507(a)(4).

☐ Contributions to an employee benefit plan - 11 U.S.C. §507(a)(5).

☐ Up to $2,775* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. §507(a)(7).

☐ Taxes or penalties owed to governmental units - 11 U.S.C. §507(a)(8).

☐ Other - Specify applicable paragraph of 11 U.S.C. §507 (a)(___).

**Amount entitled to priority:**

$_____

*Amounts are subject to adjustment on 4/01/16 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

**6.   Credits.**  The amount of all payments on this claim has been credited for the purpose of making this proof of claim. (See instruction #6)

B10 (Official Form 10) (04/13)

---

**7.** **Documents:** Attached are **redacted** copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, security agreements, or, in the case of a claim based on an open-end or revolving consumer credit agreement, a statement providing the information required by FRBP 3001(c)(3)(A). If the claim is secured, box 4 has been completed, and **redacted** copies of documents providing evidence of perfection of a security interest are attached. If the claim is secured by the debtor's principal residence, the Mortgage Proof of Claim Attachment is being filed with this claim. (*See instruction #7, and the definition of "redacted".*)

DO NOT SEND ORIGINAL DOCUMENTS.  ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

---

**8.  Signature:** (See instruction #8)

Check the appropriate box.

☐ I am the creditor.     ☐ I am the creditor's authorized agent.     ☐ I am the trustee, or the debtor, or their authorized agent. (See Bankruptcy Rule 3004.)     ☐ I am a guarantor, surety, indorser, or other codebtor. (See Bankruptcy Rule 3005.)

I declare under penalty of perjury that the information provided in this claim is true and correct to the best of my knowledge, information, and reasonable belief.

Print Name: **Mark Frankel, as Attorney for Creditor**
Title:
Company: **Backenroth Frankel & Krinsky**
Address and telephone number (if different from notice address above):
**489 Fifth Avenue**
**New York, NY 10017**
Telephone number: **(212) 593-1100**      email:

**/s/ Mark Frankel, as Attorney for Creditor** September 12, 2013
(Signature)                    (Date)

*Penalty for presenting fraudulent claim:*  Fine of up to $500,00 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

## DEFAULT

| | | |
|---|---|---|
| Principal Amount | $ | 9,909,879.79 |
| Beginning Date | | 03/01/09 |
| Acceleration Date | | 06/16/09 |
| Interest Rate | | 6.375% |
| Days | | 107 |
| Per Diem Interest | $ | 1,754.87 |
| Interest Due | $ | 187,771.56 |
| Interest Paid Rate | 5.00% | |
| Less: Interest Paid | $ | (147,271.92) |
| **Total Interest Due** | $ | 40,499.75 |

## ACCELERATION

| | | |
|---|---|---|
| Modification Date | | 10/13/09 |
| Acceleration Interest Rate | 6.375% | |
| Days | | 119 |
| Per Diem Interest | $ | 1,754.87 |
| Interest Due | $ | 208,830.07 |
| Interest Rate | 5.00% | |
| Less: Interest Paid | $ | (163,788.29) |
| **Total Interest Due** | $ | 45,041.78 |

## MODIFICATION

| | | |
|---|---|---|
| Modification Principal Amount | $ | 9,836,240.19 |
| Interest Rate | | 6.375% |
| End Date | | 12/22/11 |
| Days | | 800 |
| Per Diem Interest | $ | 1,741.83 |
| Total Interest Due | $ | 1,393,467.36 |
| Interest Paid Through | 11/30/11 | |
| Interest Rate | 5.00% | |
| Less: Interest Paid | $ | (1,062,860.40) |
| **Total Interest** | $ | 330,606.96 |

## ACCELERATION THROUGH TODAY

| | | |
|---|---|---|
| Ending Date | | 05/08/13 |
| Principal Amount | | 9,836,240 |
| Acceleration Interest Rate | 24.0% | |
| Days | | 503 |
| Per Diem Interest | $ | 6,557.49 |
| Interest Due (including on shortfall) | $ | 3,298,419.21 |
| **Total Interest** | $ | 3,298,419.21 |

| | |
|---|---|
| **Total Amount Due on Note** | 13,550,807.99 |

## 11 EAST 36 NOTE BUYER

| | | |
|---|---|---|
| Plus: Prepayment Fee | 2% $ | 196,724.80 |
| Plus: Protective Advances | | 621,677.90 |
| Plus: Interest on Protective Advances | | 66,574.14 |
| Less: Rents Received | | (710,268.83) |
| **Total Note Payoff Amount** | | 13,725,515.90 |

## GRIFFON V

| | | |
|---|---|---|
| Plus Judgment Amount | $ | 2,899,340.95 |
| Plus: Interest on Judgement | $ | 218,175.41 |
| Plus: Protective Advances | | 336,916.20 |
| Plus: Interest on Protective Advances | | 43,967.69 |
| Less: Rents Received | | (365,918.60) |
| **Total Judgement Payoff Amount** | $ | 3,132,481.65 |

| | |
|---|---|
| **Total Payoff Amount** | 16,857,997.55 |

## JUDGEMENT

| | | |
|---|---|---|
| Judgement Amount | $ | 2,899,340.95 |
| Beginning Date | | 07/11/12 |
| End Date | | 05/08/13 |
| Interest Rate | | 9% |
| Days | | 301 |
| Per Diem Interest | $ | 724.84 |
| Interest Due | $ | 218,175.41 |
| | | |
| **Total Interest Due** | $ | 218,175.41 |

2% prepayment fee due on acceleration

## 11 East 36th Note Buyer — Through 9/13/2013

| Advances | Amount | Interest |
|---|---|---|
| May | $ | 42,792.93 |
| June | $ | 56,445.05 |
| July | $ | 59,587.96 |
| August | $ | 57,892.13 |
| September | $ | 56,592.13 |
| October | $ | 54,458.50 |
| November | $ | 64,592.13 |
| December | $ | 50,766.80 |
| Jan '13 | $ | 49,193.00 |
| Feb '13 | $ | 57,393.00 |
| Mar '13 | $ | 52,361.00 |
| Apr '13 | $ | 49,193.00 |
| May '13 | $ | 54,001.20 |
| June '13 | $ | 33,538.40 |
| July '13 | $ | 54,001.20 |
| Aug '13 | | |
| **Total** | $ | 795,808.43 |

## Griffon V — Rents Collected

| | Amount | |
|---|---|---|
| January | $ | 16,227.00 |
| February | $ | 16,227.00 |
| March | $ | 16,227.00 |
| April | $ | 21,612.00 |
| May | $ | 20,177.00 |
| June | $ | 20,222.00 |
| July | $ | 20,222.00 |
| August | $ | 58,756.00 |
| September | $ | 19,977.00 |
| October | $ | 18,889.00 |
| November | $ | 20,052.00 |
| December | $ | 12,475.60 |
| Jan '13 | $ | 20,177.00 |
| Feb '13 | $ | 20,217.00 |
| Mar '13 | $ | 24,217.00 |
| Apr '13 | $ | 20,222.00 |
| May '13 | $ | 20,222.00 |
| June '13 | $ | 16,780.20 |
| July '13 | $ | 19,688.60 |
| Aug '13 | | |
| **Total** | $ | 402,395.40 |

## Griffon V — Through 9/13/2013

| Advances | | Amount | Interest | |
|---|---|---|---|---|
| Legal Expense L&T | 5/2/2012 | $ 8,000.00 | $ 1,979.67 | |
| Legal Expense L&T | 5/3/2012 | $ 12,000.00 | $ 2,960.00 | |
| Inspection/Filing/Licensing | 5/17/2012 | $ 3,125.00 | $ 741.67 | |
| Management Fee | 5/31/2012 | $ 1,672.76 | $ 381.39 | |
| Management Fee | 6/30/2012 | $ 1,975.38 | $ 410.92 | |
| Management Fee | 7/31/2012 | $ 2,085.58 | $ 390.70 | |
| Legal Expense-Other | 8/8/2012 | $ 27,578.95 | $ 5,019.37 | |
| Control Agreement Fee | 8/20/2012 | $ 1,000.00 | $ 178.00 | |
| Management Fee | 8/31/2012 | $ 2,026.32 | $ 337.70 | |
| Real Estate Taxes | 9/20/2012 | $ 184,233.96 | $ 28,249.21 | |
| Real Estate Taxes | 9/20/2012 | $ 18,058.39 | $ 2,720.80 | |
| Management Fee | 9/30/2012 | $ 1,980.73 | $ 290.51 | |
| Real Estate Taxes | 10/2/2012 | $ 25,000.00 | $ 3,633.33 | Adjusted to 3.5% |
| Supplies | 10/9/2012 | $ 99.61 | $ 14.01 | |
| Other Renting Expenses | 10/9/2012 | $ 133.63 | $ 18.80 | |
| Management Fee | 10/31/2012 | $ 1,901.37 | $ 239.57 | |
| Management Fee | 11/30/2012 | $ 2,260.73 | $ 239.64 | |
| Management Fee | 12/1/2012 | $ 17,682.76 | $ 1,862.56 | |
| Management Fee | 12/31/2012 | $ 1,776.84 | $ 151.62 | |
| Condo Maintenance Fee | | $ 17,682.76 | $ 1,497.14 | |
| Real Estate Taxes | 1/4/2013 | $ 139,545.33 | $ 11,535.77 | |
| Other Renting Expenses | 1/16/2013 | $ 5,319.76 | $ 397.21 | |
| Condo Maintenance Fee | 1/31/2013 | $ 1,721.76 | $ 111.34 | |
| Condo Maintenance Fee | 2/1/2013 | $ 17,682.76 | $ 1,131.70 | |
| Legal Expense-Other | 2/13/2013 | $ 7,500.00 | $ 420.00 | |
| Management Fee | 2/28/2013 | $ 2,008.76 | $ 92.40 | |
| Condo Maintenance Fee | 3/1/2013 | $ 17,682.76 | $ 801.62 | |
| Other Renting Expenses | 3/5/2013 | $ 931.95 | $ 39.76 | |
| Property Insurance | 3/13/2013 | $ 680.05 | $ 25.39 | |
| Management Fee | 3/31/2013 | $ 1,832.64 | $ 46.43 | |
| Condo Maintenance Fee | 4/1/2013 | $ 9,062.26 | $ 223.54 | |
| Legal Expense-L&T | 4/3/2013 | $ 1,500.00 | $ 35.00 | |
| Legal Expense-L&T | 4/11/2013 | $ 18,533.00 | $ 333.59 | |
| Condo Maintenance Fee | 4/30/2013 | $ 1,721.76 | $ 9.18 | |
| Condo Maintenance Fee | 5/1/2013 | $ 9,062.26 | $ 4,221.79 | |
| Real Estate Taxes | 5/8/2013 | $ 56,267.80 | $ - | |
| Management Fee | 5/31/2013 | $ 1,890.04 | $ (26.98) | |
| Condo Maintenance Fee | 6/1/2013 | $ 9,062.26 | $ (145.00) | |
| Inspection/Filing/Licensing | 6/4/2013 | $ 462.50 | $ (8.33) | |
| Management Fee | 6/30/2013 | $ 1,103.84 | $ (39.00) | |
| Real Estate Taxes | 7/1/2013 | $ 9,062.26 | $ (326.24) | |
| Real Estate Taxes | 7/1/2013 | $ 16,318.33 | $ (587.46) | |
| Condo Maintenance Fee | 7/31/2013 | $ 1,890.04 | $ (105.84) | |
| Condo Maintenance Fee | 8/1/2013 | $ 9,062.26 | $ (513.53) | |
| Legal Expense-Other | 8/5/2013 | $ 12,000.00 | $ (713.79) | |
| **Total** | | $ 682,599.44 | $ 64,105.98 | $ 746,665.42 |

## Griffon V — Through 8/13/2013

| Advances | | Amount | Interest | |
|---|---|---|---|---|
| Insurance | 1/9/2012 | $ 5,100.00 | $ 1,012.66 | |
| Condo Maintenance Fee | 1/11/2012 | $ 2,370.64 | $ 763.35 | |
| Condo Maintenance Fee | 2/1/2012 | $ 2,370.64 | $ 730.16 | |
| Legal Expense - Other | 2/13/2012 | $ 2,250.00 | $ 679.50 | |
| Property Taxes | 2/24/2012 | $ 10,160.42 | $ 2,973.62 | |
| Condo Maintenance Fee | 3/1/2012 | $ 2,370.64 | $ 684.32 | |
| Legal Expense - Other | 3/9/2012 | $ 9,920.00 | $ 2,837.12 | |
| Condo Maintenance Fee | 4/2/2012 | $ 2,370.64 | $ 633.75 | |
| Legal Expense - Other | 4/30/2012 | $ 11,445.95 | $ 2,846.23 | |
| Condo Maintenance Fee | 5/2/2012 | $ 2,370.64 | $ 586.34 | |
| Condo Maintenance Fee | 6/1/2012 | $ 2,370.64 | $ 537.35 | |
| Property Taxes | 6/8/2012 | $ 10,791.53 | $ 2,402.91 | |
| Condo Maintenance Fee | 7/2/2012 | $ 2,370.64 | $ 489.95 | |
| Condo Maintenance Fee | 8/1/2012 | $ 2,370.64 | $ 442.52 | |
| Property Taxes | 8/17/2012 | $ 10,723.99 | $ 1,887.42 | |
| Condo Maintenance Fee | 8/21/2012 | $ 11,394.49 | $ 1,975.04 | |
| Legal Expense - Other | 8/28/2012 | $ 10,139.50 | $ 1,710.20 | |
| Property Taxes | 8/30/2012 | $ 3,848.97 | $ 644.06 | |
| Condo Maintenance Fee | 9/1/2012 | $ 2,370.64 | $ 393.53 | |
| Legal Expense - Other | 9/4/2012 | $ 20,000.00 | $ 1,640.00 | |
| Legal Expense - Other | 9/5/2012 | $ 20,000.00 | $ 3,266.67 | |
| Management Fee | 9/30/2012 | $ 5,981.96 | $ 877.35 | Adjusted to 3.5% |
| Condo Maintenance Fee | 10/1/2012 | $ 2,370.64 | $ 346.11 | |
| Legal Expense - Other | 10/31/2012 | $ 661.12 | $ 80.30 | |
| Management Fee | 10/31/2012 | $ 2,370.64 | $ 297.12 | |
| Legal Expense - Other | 11/13/2012 | $ 10,000.00 | $ 1,173.33 | |
| Management Fee | 11/30/2012 | $ 701.82 | $ 74.39 | |
| Property Taxes | 11/30/2012 | $ 13,943.14 | $ 1,477.97 | |
| Condo Maintenance Fee | 12/1/2012 | $ 2,370.64 | $ 249.71 | |
| Legal Expense - Other | 12/1/2012 | $ 10,000.00 | $ 1,053.33 | |
| Insurance | 12/20/2012 | $ 3,212.00 | $ 297.65 | |
| Management Fee | 12/31/2012 | $ 436.65 | $ 37.26 | |
| Condo Maintenance Fee | 1/1/2013 | $ 2,370.64 | $ 200.71 | |
| Legal Expense - Other | 1/1/2013 | $ 10,000.00 | $ 846.67 | |
| Other Renting Expenses | 1/10/2013 | $ 3,751.39 | $ 292.61 | |
| Legal Expense - L&T | 1/30/2013 | $ 44,978.01 | $ 2,938.56 | |
| Condo Maintenance Fee | 1/31/2013 | $ 706.20 | $ 43.67 | |
| Legal Expense - Other | 2/1/2013 | $ 2,370.64 | $ 151.72 | |
| Legal Expense - Other | 2/1/2013 | $ 10,000.00 | $ 640.00 | |
| Legal Expense - Other | 2/6/2013 | $ 8,628.49 | $ 523.46 | |
| Property Taxes | 2/22/2013 | $ 14,008.75 | $ 700.44 | |
| Management Fee | 2/28/2013 | $ 707.60 | $ 32.55 | |
| Condo Maintenance Fee | 3/1/2013 | $ 2,370.64 | $ 107.47 | |
| Management Fee | 3/1/2013 | $ 10,000.00 | $ 453.33 | |
| Management Fee | 3/31/2013 | $ 847.60 | $ 21.47 | |
| Condo Maintenance Fee | 4/1/2013 | $ 2,370.64 | $ 58.48 | |
| Legal Expense - L&T | 4/1/2013 | $ 10,000.00 | $ 246.67 | |
| Legal Expense - Other | 4/3/2013 | $ 1,500.00 | $ 35.00 | |
| Legal Expense - Other | 4/3/2013 | $ 2,021.00 | $ 47.16 | |
| Management Fee | 4/30/2013 | $ 707.77 | $ 3.77 | |
| Condo Maintenance Fee | 5/1/2013 | $ 2,370.64 | $ 11.06 | |
| Legal Expense - Other | 5/1/2013 | $ 10,000.00 | $ 46.67 | |
| Legal Expense - Other | 5/3/2013 | $ 3,375.00 | $ (2.25) | |
| Management Fee | 5/31/2013 | $ 707.77 | $ (10.85) | |
| Legal Expense - Other | 6/1/2013 | $ 2,370.64 | $ (37.93) | |
| Legal Expense - Other | 6/1/2013 | $ 10,000.00 | $ (160.00) | |
| Property Taxes | 6/7/2013 | $ 15,118.88 | $ (302.38) | |
| Management Fee | 6/30/2013 | $ 587.59 | $ (20.76) | |
| Condo Maintenance Fee | 7/1/2013 | $ 2,370.64 | $ (85.34) | |
| Legal Expense - Other | 7/1/2013 | $ 10,000.00 | $ (360.00) | |
| Legal Expense - Other | 7/23/2013 | $ 1,446.68 | $ (73.30) | |
| Other Renting Expenses | 7/24/2013 | $ 1,998.00 | $ (102.56) | |
| Management Fee | 7/31/2013 | $ 689.10 | $ (38.59) | |
| Condo Maintenance Fee | 8/1/2013 | $ 2,370.64 | $ (134.34) | |
| Legal Expense - Other | 8/1/2013 | $ 10,000.00 | $ (566.67) | |
| Other Renting Expenses | 8/2/2013 | $ 2,578.78 | $ (147.85) | |
| Legal Expense - Other | 8/5/2013 | $ 2,370.64 | $ (292.96) | |
| **Total** | | $ 251,957.21 | $ 9,811.76 | $ 261,768.97 |

Notice of Filing
Transcript of Judgment

Maureen O'Connell
County Clerk of Nassau County
Nassau County Office Building
Mineola, NY 11501

DATE: 07-16-2012
09--022614
LETTER: 1
20120725011122

TRANSCRIPT OF JUDGMENT                    09--022614

| JUDGMENT DEBTOR & ADDRESS | | TRADE OR PROFESSION | PAGE: 1 OF 3 |
|---|---|---|---|

11 EAST 36TH LLC
11 EAST 36TH STREET
NEW YORK, NY 10016

MORGAN LOFTS LLC
11 EAST 36TH STREET
NEW YORK, NY 10016

JUDGMENT CREDITOR & ADDRESS

GRIFFON V LLC
114 EAST 13TH STREET FRNT 1
NEW YORK, NY 10003

ATTORNEY: FOR JUDGMENT CREDITOR (NAME AND ADDRESS)

CORDOVA & SCHWARTZMAN
666 OLD COUNRY RD
STE 301
GARDEN CITY, NY 11530

REMARKS: DATE AND MANNER OF CHANGE OF STATUS OF JUDGMENT

AMENDS JUDGMENT FILED UNDER CONTROL # 20120501046S

| JUDGMENT DOCKETED | JUDGMENT RENDERED | | AMOUNT |
|---|---|---|---|
| INDEX#: 09--022614 | J DRISCOLL | | |
| TIME: 11:56:21AM | COURT: | DAMAGES: $2,899,340.95 | |
| DATE: 07-16-2012 | DATE: 07-11-2012 | COSTS: $.00 | |
| | | TOTAL: $2,899,340.95 | $2,899,340.95 |

J DRISCOLL

| EXECUTION | | | |
|---|---|---|---|
| RETURNED UNSATISFIED | WHEN | HOW & TO WHAT EXTENT | |
| SATISFIED | | | |

STATE OF NEW YORK ) 
COUNTY OF NASSAU ) SS:
COUNTY CLERK'S OFFICE )

I, MAUREEN O'CONNELL, Clerk of the County of Nassau, hereby certify that the above is a correct transcript from the Docket of Judgments kept in my office.

IN WITNESS WHEREOF, I have hereunto set my name and affixed my official seal at Mineola, NY, this 10th day of August

Do Not Detach

DATE: 07-16-2012

LETTER: 1
09--022614
2012072501122

**Notice of Filing**
**Transcript of Judgment**

**Maureen O'Connell**
County Clerk of Nassau County
Nassau County Office Building
Mineola, NY 11501

Do Not Detach

| JUDGMENT DEBTOR & ADDRESS | TRADE OR PROFESSION |
|---|---|
| MADISON CONDOS LLC<br>11 EAST 36TH STREET<br>NEW YORK, NY 10016<br><br>BLUEBELL ASSETS LLC<br>11 EAST 36TH STREET<br>NEW YORK, NY 10016 | |

**JUDGMENT CREDITOR & ADDRESS**

**ATTORNEY**: FOR JUDGMENT CREDITOR (NAME AND ADDRESS)

**REMARKS**: DATE AND MANNER OF CHANGE OF STATUS OF JUDGMENT

| JUDGMENT DOCKETED | JUDGMENT RENDERED | AMOUNT |
|---|---|---|
| DATE: 07-16-2012<br>TIME: 11:56:21AM<br>INDEX#: 09--022614 | DATE: 07-11-2012<br>COURT: J DRISCOLL | DAMAGES: $2,899,340.95<br>COSTS: $.00<br>TOTAL: $2,899,340.95 |

| EXECUTION RETURNED UNSATISFIED | SATISFIED | |
|---|---|---|
| | WHEN | HOW & TO WHAT EXTENT |
| | | |

STATE OF NEW YORK )
COUNTY OF NASSAU ) SS:
COUNTY CLERK'S OFFICE )

**I, MAUREEN O'CONNELL**, Clerk of the County of Nassau, hereby certify that the above is a correct transcript from the Docket of Judgments kept in my office.

**IN WITNESS WHEREOF**, I have hereunto set my name and affixed my official seal at Mineola, NY,

this 10th day of August 2012 Maureen O'Connell
Maureen O'Connell
County Clerk

DATE: 07-16-2012
LETTER: 1
09--022614
2012072501122

**Notice of Filing**
**Transcript of Judgment**

**Maureen O'Connell**
County Clerk of Nassau County
Nassau County Office Building
Mineola, NY 11501

Do Not Detach

09--022614 **TRANSCRIPT OF JUDGMENT** PAGE: 3 OF 3

| JUDGMENT DEBTOR & ADDRESS | TRADE OR PROFESSION |
|---|---|
| BOBKER, ELI MORDECHAI<br>2 HOLLY LANE<br>LAWRENCE, NY 11559<br><br>BOBKER, BEN BARUCH<br>28 WEDEGWOOD LANE<br>LAWRENCE, NY 11559 | |

**JUDGMENT CREDITOR & ADDRESS**

**ATTORNEY:** FOR JUDGMENT CREDITOR (NAME AND ADDRESS)

**REMARKS:** DATE AND MANNER OF CHANGE OF STATUS OF JUDGMENT

| JUDGMENT DOCKETED | JUDGMENT RENDERED | AMOUNT |
|---|---|---|
| DATE: 07-16-2012<br>TIME: 11:56:21AM<br>INDEX#: 09--022614 | DATE: 07-11-2012<br>COURT: J DRISCOLL | DAMAGES: $2,899,340.95<br>COSTS: $.00<br>TOTAL: $2,899,340.95 |

| EXECUTION RETURNED UNSATISFIED | SATISFIED | |
|---|---|---|
| | WHEN | HOW & TO WHAT EXTENT |
| | | |

STATE OF NEW YORK )
COUNTY OF NASSAU ) SS:
COUNTY CLERK'S OFFICE )

**I, MAUREEN O'CONNELL**, Clerk of the County of Nassau, hereby certify that the above is a correct transcript from the Docket of Judgments kept in my office.

**IN WITNESS WHEREOF**, I have hereunto set my name and affixed my official seal at Mineola, NY,

this 10th day of August 2012

Maureen O'Connell
Maureen O'Connell
County Clerk

*THIS NOTE SUBSTITUTES AND REPLACES THOSE NOTES, BONDS AND
OBLIGATIONS SET FORTH IN SCHEDULE A ANNEXED HERETO.*

### AMENDED AND RESTATED
### PROMISSORY NOTE
### (Line of Credit)

Amount: $2,200,000.00

Date: April 30, 2008

FOR VALUE RECEIVED, 11 EAST 36TH, LLC, a New York limited liability company
with its principal offices at 11 East 36th Street, Suite 1101, New York, New York 10016
("Maker"), promises to pay to the order of CHINATRUST BANK (U.S.A.) ("Bank"), a California
banking corporation having an office at 366 Madison Avenue, New York, New York 10017, the
aggregate principal sum of loans not exceeding TWO MILLION TWO HUNDRED THOUSAND
AND 00/100 ($2,200,000.00) DOLLARS, as may be advanced and re-advanced by Bank to Maker
from time to time ("Loan"), together with interest thereon computed from the date of each
drawdown at the "Applicable Rate of Interest" (as hereinafter defined), pursuant to that certain
Revolving Line of Credit Agreement of even date herewith between Maker and Bank
("Agreement"), the terms and provisions thereof are incorporated herein as if set forth hereto in its
entirety. In the event of any conflict or inconsistency in the terms of this Note and the terms of the
Agreement, the terms of the Agreement shall prevail.

The Loan shall be used for the purpose of general working capital to finance real estate
investment and development by Maker. The unpaid principal balance and interest accrued of each
drawdown shall be due and payable in accordance with the terms of the Agreement. In any event,
the entire unpaid principal balance together with all accrued interest shall be due and payable on
March 14, 2009 ("Maturity Date").

All payments shall be made at the office of Chinatrust Bank (U.S.A.), 366 Madison
Avenue, New York, New York 10017, or at a different place if required by Bank provided,
however, that any payment which would otherwise be payable on a day on which Bank is not open
for the regular conduct of business shall be payable on the next day on which Bank is open for the
regular conduct of business, such extension of time being included in the period for computation of
interest.

This Note is secured by and issued together with, among other things, a mortgage lien on
five (5) residential condominium units (collectively, the "Mortgaged Property") located at 11 East
36th Street, New York, New York ("Mortgage"), a collateral assignment of leases and rents for the
Mortgaged Property ("Assignment of Rents"), and the unlimited and conditional guaranties of Ben
Baruch Bobker, Eli Mordecai Bobker, Madison Condos, LLC and Bluebell Assets, LLC
(collectively, the "Guaranty"). The unpaid principal sum of this Note, and all interest accrued
thereon may, at Bank's option, become immediately due and payable upon the happening of any
Event of Default (as defined herein) or event by which, under the terms of this Note, the
Agreement, the Guaranty, the Assignment of Rents, and/or the Mortgage, gives Bank the right to
declare said principal balance and accrued interest immediately due and payable. Reference is
made to the Agreement, the Guaranty, the Assignment of Rents, and the Mortgage for a further
description of the rights and remedies of Bank, as holder of this Note

1

Maker and Bank hereby further agree as follows:

1.    For the purposes of this Note, the following terms shall have the following meanings:

(a)    "Applicable Rate of Interest" shall be, as long as no "Event of Default" (as defined below) shall have occurred and then be continuing, one-half percent (0.5%) per annum over of the prime rate as published from time to time in the Wall Street Journal, with a floor rate of six (6%) percent per annum for the entire term of this Note.

(b)    "Dollars" or "$" shall mean dollars in lawful money of the United States of America.

(c)    "Event of Default" shall have the meaning ascribed to it in the Agreement, the Guaranty, the Assignment of Rents, and/or the Mortgage.

(d)    "Loan" shall mean the aggregate principal amount of $2,200,000.00 advanced by Bank to Maker or, where the context may require, the amount thereof then outstanding.

(e)    "Default Rate" shall be, from and after the occurrence of any Event of Default and until the sooner to occur of the curing of such Event of Default (and all subsequent Events of Default occurring prior to such cure) or payment in full of the unpaid principal sum of this Note, any interest accrued thereon and any other amounts owed hereunder, under the Agreement and the Guaranty, seven percent (7%) per annum over the then interest rate as charged by Bank or its successor on this Note.

2.    Maker shall promptly and diligently perform its obligations under the Agreement, and Maker's failure or refusal to do so shall be deemed an Event of Default hereunder.

3.    If any payment due hereunder is more than ten (10) days late, Maker shall pay a late charge in an amount equal to five percent (5%) of the payment then due and owing. All interest due and payable hereunder shall be calculated at the then Applicable Rate of Interest and such calculation shall be based on the actual number of days elapsed and a 360-day year. All sums payable to Bank hereunder shall be payable in U.S. Dollars, without set-off or counterclaim, on the day in question, to Bank at its address set forth above, or to such address as Bank may from time to time designate in a written notice to Maker.

4.    If at any time Maker is required by any federal or applicable state law to make any deduction or withholding in respect of any taxes, duties or other charges from any payment due hereunder, the sum due from Maker in respect of such payment shall be increased to the extent necessary to ensure that, after the making of such deduction or withholding, Bank receives and retains a net sum equal to the sum which it would have received had no such deduction or withholding been required to be made. Maker shall promptly deliver to Bank receipts, certificates or other proof evidencing the amounts (if any) paid or payable in respect of such deduction or withholding.

5.      If this Note shall be placed with an attorney for collection, Maker shall pay all costs of collection, including, without limitation, court costs and reasonable attorneys' fees and disbursements.

6.      Each and every maker, endorser, guarantor and surety of this Note, and all others who may become liable for the payment of all or any part of the obligation evidenced hereby, do hereby waive diligence, presentment and demand for payment, notice of nonpayment, protest, notice of protest and notice of dishonor of this Note, and do hereby consent to any number of renewals of this Note and extensions of the time for payment hereof, and agree that any such renewals or extensions may be made without notice to any of said parties and without affecting their liability hereon, and further consent to the release of any part or all of the security for the payment hereof and to the release of any party liable hereon, all without affecting the liability of the other persons or entities liable for the payment of this Note.

7.      Unless otherwise agreed to by Bank to the contrary, no release of any security of the principal indebtedness due under this Note or extension of time for payment under this Note, or any installment, hereof, and no alteration, amendment or waiver of any provision of this Note, the Guaranty, the Mortgage and the Agreement made by agreement between Bank and any other person or party, shall release discharge, modify, change or affect the liability of Maker under this Note, the Agreement, the Mortgage, and the Guaranty.

8.      This Note is subject to the express conditions that (a) at no time shall Maker be obligated or required to pay interest (whether denominated as interest or other charges which might be characterized as interest) on the unpaid principal sum of this Note at a rate which would (i) void this Note or any of Maker's obligations hereunder, (ii) subject Bank to a forfeiture of the principal amount of, or any interest earned under, this Note, or (iii) subject Bank to either civil or criminal liability, as a result of such rate being in excess of the maximum rate of interest which Maker is permitted by law to contract or agree to pay, and (b) if, by the terms of this Note, Maker is at any time required or obligated to pay interest (whether denominated as interest or other charges which might be characterized as interest) on the unpaid principal sum of this Note at a rate in excess of such maximum rate, (x) the rate of interest under this Note shall be deemed to be immediately reduced to such maximum rate, (y) interest payable hereunder shall be computed at such maximum rate and (z) the portion of all prior interest payments in excess of such maximum rate shall have been, and shall be deemed to have been, made in error and shall be refunded to Maker by Bank.

9.      If any change in any law, regulation or treaty or the interpretation or administration thereof, or compliance by Bank with any request or directive (whether or not having the force of law) of any authority charged with the interpretation or administration thereof, as documented to Maker, shall in the reasonable determination of Bank:

(a)     subject Bank to any tax, levy or other governmental charge with respect to the Loan or change the basis of taxation of payment by Maker to Bank in respect of the Loan (other than any tax on or measured by the overall net income of Bank); or

(b)     impose, modify or hold applicable any reserve, special deposit, capital adequacy or similar requirement against assets, deposits or other liabilities

of, or for, the account thereof, or loans or commitments by, Bank with respect to the Loan; or

(c)    impose on Bank any other condition with respect to the Loan that is or would be materially adverse to Bank and its rights hereunder and/or under the Agreement;

and the result of any of the foregoing is to increase the cost to Bank of making or maintaining the Loan or to reduce (x) Bank's rate of return of its capital or (y) the amount of any sum received or receivable by Bank under this Note, then Maker shall pay to Bank on demand from time to time such additional amounts as may be necessary to reimburse Bank for such increased costs or to compensate Bank for such reduced amounts.

10.    Notwithstanding any other provision of this Note, if Bank reasonably determines that the adoption of any applicable law, regulation or treaty, or any change therein or in the interpretation thereof, makes it unlawful to maintain the Loan or to receive any amount payable under this Note, Maker shall on demand prepay the Loan in full, together with interest accrued to the date of prepayment.

11.    This Note shall in all respects be governed by, and interpreted in accordance with, the laws of the State of New York applicable to similar instruments made and to be performed wholly in New York.   This Note shall be construed without regard to any presumption or rule requiring construction against the party causing this Note to be drafted.  All terms and words used in this Note, regardless of the number or gender in which they are used, shall be deemed to include any other number and any other gender as the context may require.

12.    Maker hereby irrevocably consents that any legal action or proceeding against it hereunder may be brought in any court of the State of New York or any Federal Court of the United States of America located in the Borough of Manhattan, in the City and State of New York, United States of America, as Bank may elect; and by execution and delivery of this Note, Maker hereby submits to and accepts with regard to any such action or proceeding, for itself and in respect of its property, generally and unconditionally, the jurisdiction of the aforesaid courts.

13.    Maker hereby irrevocably waives any objection which it may now or hereafter have to the laying of the venue of any suit, action or proceeding arising out of or relating to the Loan and/or this Note in the Borough of Manhattan, in the City and State of New York, and hereby further irrevocably waives any claim that the Borough of Manhattan, in the City and State of New York is not a convenient forum for any such suit, action or proceeding.

14.    If any one or more of the provisions contained in this Note or in any document executed in connection herewith shall be invalid, illegal or unenforceable in any respect under any applicable law, the validity, legality and enforceability of the remaining provisions contained herein shall not in any way be affected or impaired.

15.    This Note may not be changed or terminated orally, but only by an agreement in writing signed by Maker and Bank.

4

16.    This Note, and the rights and obligations of Maker hereunder, are not assignable in whole or in part by Maker. The provisions of this Note shall bind Maker, its successors and assigns and shall inure to the benefit of Bank, subsequent holders of this Note and their respective successors and assigns.

IN WITNESS WHEREOF, Maker has duly executed this Note on the day and year first above written.

11 EAST 36TH LLC
By: Madison Condos, LLC, Manager
    By: Bluebell Assets, LLC, Manager

By: _____
    Ben Bobker, Manager

STATE OF NEW YORK     }
                }ss.:
COUNTY OF NEW YORK   }

On the 30th day of April in the year 2008 before me, the undersigned, a notary public in and for the said State, personally appeared BEN BOBKER, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual, or the person on behalf of which the individual acted, executed the instrument.

Notary Public  _____

MARILYN J. McCARTHY
NOTARY PUBLIC, State of New York
No. 30 4840587
Qualified in Nassau County
Commission Expires November 30, 2009

## SCHEDULE A

### PRIOR NOTES

1   Substitute Note B, dated March 18, 2008, in the original principal sum of $880,000.00, made by 11 East 36th, LLC and Morgan Lofts, LLC, in favor of Chinatrust Bank (U.S.A.).

2.  Gap Promissory Note, dated April 30, 2008, in the original principal sum of $1,320,000.00, made by 11 East 36th, LLC, in favor of Chinatrust Bank (U.S.A.).

## OMNIBUS ASSIGNMENT OF LENDER'S RIGHTS

THE UNDERSIGNED, for good and valuable consideration from GRIFFON V, LLC ("Assignee"), receipt of which is hereby acknowledged, hereby assigns to the Assignee,

ALL OF THE UNDERSIGNED'S rights, title and interests in all those documents related to that certain Amended and Restated Promissory Note, dated April 30, 2008, made by 11 East 36th, LLC in favor of Chinatrust Bank (U.S.A.), in the principal amount of $2,200,000.00, and/or affecting real properties located at 11 East 36th Street, Residential Condominium Units 1001, 1006, 1101, 1203 and 1204, New York, New York (Block 866, Lots 1251, 1256, 1257, 1265 and 1266, New York County), and as specifically itemized in Schedule A annexed hereto and forming a part hereof,

TO HAVE AND TO HOLD the same unto the assigns and to the successors, legal representatives and assigns of the Assignee forever.

THIS ASSIGNMENT IS MADE WITHOUT ANY COVENANT, REPRESENTATION, WARRANTY, OR GUARANTY, EITHER EXPRESS OR IMPLIED, AND WITHOUT RECOURSE TO THE UNDERSIGNED IN ANY EVENT WHATSOEVER.

Dated: October 14, 2009.

> CHINATRUST BANK (U.S.A.)
>
> By _____
> Yintung (Tony) Chang
> Senior Vice President

STATE OF NEW YORK   )
                  )SS.:
COUNTY OF NEW YORK  )

On the 14th day of October in the year 2009, before me, the undersigned, a notary public in and for the said State, personally appeared YINTUNG (TONY) CHANG, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is(are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person on behalf of which the individual(s) acted, executed the instrument.

_____
Notary Public

LUCY WING LING LO
Notary Public, State of New York
Qualified in Queens County
No. 01LO6085577
My Commission Expires December 30, 20__

# SCHEDULE A
## TO OMNIBUS ASSIGNMENT

### "LOAN DOCUMENTS"

1. Amended and Restated Promissory Note
2. Gap Promissory Note (Line of Credit)
3. Revolving Line of Credit Agreement
4. General and Continuing Guaranty of Morgan Lofts, LLC
5. General and Continuing Guaranty of Madison Condos, LLC
6. General and Continuing Guaranty of Bluebell Assets, LLC
7. General and Continuing Guaranty of Eli Mordechai Bobker
8. General and Continuing Guaranty of Ben Baruch Bobker
9. Recorded Collateral Mortgage and Consolidation, Modification and Extension Agreement
10. Recorded Collateral Assignment of Leases and Rents
11. Acknowledgement of Single Asset Entity
12. Member Resolution of 11 East 36th LLC
13. Member Resolution of Morgan Lofts, LLC
14. Member Resolution of Madison Condos, LLC
15. Member Resolution of Bluebell Assets, LLC
16. Borrower's Estoppel Affidavit
17. Escrow Agreement for Notice to Tenants
18. Attorney Escrow Agreement
19. Closing Certificate
20. Flood Certificate
21. Recorded UCC-1
22. Title Policy
23. Certificate of Title

| PAYOFF DATE | | | 2/10/2014 |
|---|---|---|---|
| **11 EAST 36 NOTE BUYER** | | | |
| Principal Amount Outstanding | | $ | 9,836,240.19 |
| Interest Due from 03/01/09 to 06/16/09 | | $ | 40,499.75 |
| Interest Due from 06/16/09 to 10/13/09 | | $ | 45,041.78 |
| Interest Due from 10/13/09 to 12/22/11 | | $ | 330,606.96 |
| Interest Due from 12/22/11 to 02/10/14 | | $ | 5,121,402.39 |
| Plus: Prepayment Fee (Due on Acceleration | 2.0% | $ | 196,724.80 |
| Plus: Protective Advances | | $ | 948,873.18 |
| Plus: Interest on Protective Advances | | $ | 185,945.29 |
| Plus: Legal Fees | | $ | 431,149.63 |
| Less: Rents Received | | $ | (1,086,360.40) |
| **Total Note Payoff Amount** | | | **16,050,123.54** |
| | | | |
| **GRIFFON V** | | | |
| Judgment Amount | | $ | 2,899,340.95 |
| Plus: Interest on Judgement | | $ | 419,679.60 |
| Plus: Protective Advances | | $ | 229,136.65 |
| Plus: Interest on Protective Advances | | $ | 55,853.57 |
| Plus: Legal Fees | | $ | 136,823.66 |
| Less: Rents Received | | $ | (523,722.40) |
| **Total Judgement Payoff Amount** | | $ | **3,217,112.03** |
| | | | |
| **Total Amount Due** | | $ | **19,267,235.57** |
| | | | |
| **GRIFFON V PER DIEM ON JUDGEMENT** | 9.0% | $ | 724.84 |
| **GRIFFON V PER DIEM ON ADVANCES \*** | 24.0% | $ | 120.63 |
| **NOTE BUYER PER DIEM ON PRINCIPAL** | 24.0% | $ | 6,557.49 |
| **NOTE BUYER PER DIEM ON ADVANCES** | 24.0% | $ | 632.58 |
| **TOTAL PER DIEM** | | $ | **8,035.54** |

*\* Rents were first applied to outstanding interest then to legal fees*

## AMOUNT DUE ON 11 EAST 36 NOTE - BUYER NOTE

**DEFAULT**

| | | | | |
|---|---|---|---|---|
| Principal Amount | $ | 9,909,879.79 | | |
| Beginning Date | | 03/01/09 | | |
| Acceleration Date | | 06/16/09 | | |
| Interest Rate | | 6.375% | | |
| Days | | 107 | | |
| Per Diem Interest | $ | 1,754.87 | | |
| Interest Due | | | $ | 187,771.58 |
| Interest Paid Rate | | 5.00% | | |
| Less: Interest Paid | | | $ | (147,271.82) |
| **Total Interest Due** | | | **$** | **40,499.75** |

**ACCELERATION**

| | | | | |
|---|---|---|---|---|
| Modification Date | | 10/13/09 | | |
| Acceleration Interest Rate | | 6.375% | | |
| Days | | 119 | | |
| Per Diem Interest | $ | 1,754.87 | | |
| Interest Due | | | $ | 208,830.07 |
| Interest Paid Rate | | 5.00% | | |
| Less: Interest Paid | | | $ | (163,788.29) |
| **Total Interest Due** | | | **$** | **45,041.78** |

**MODIFICATION**

| | | | | |
|---|---|---|---|---|
| Modification Principal Amoun | $ | 9,836,240.19 | | |
| Interest Rate | | 6.375% | | |
| End Date | | 12/22/11 | | |
| Days | | 800 | | |
| Per Diem Interest | $ | 1,741.83 | | |
| Total Interest Due | | | $ | 1,393,467.36 |
| Interest Paid Through | | 11/30/11 | | |
| Interest Paid Rate | | 5.00% | | |
| Less: Interest Paid | | | $ | (1,062,860.40) |
| **Total Interest** | | | **$** | **330,606.96** |

**ACCELERATION THROUGH TODAY**

| | | | | |
|---|---|---|---|---|
| Ending Date | | 02/10/14 | | |
| Principal Amount | | 9,836,240 | | |
| Acceleration Interest Rate | | 24.0% | | |
| Days | | 781 | | |
| Per Diem Interest | $ | 6,557.49 | | |
| Interest Due (including on shortfall | | | $ | 5,121,402.39 |
| **Total Interest** | | | **$** | **5,121,402.39** |

| | | | | |
|---|---|---|---|---|
| **Total Amount Due on Note** | | | | **15,373,791.08** |

**11 EAST 36 NOTE BUYER**

| | | | | |
|---|---|---|---|---|
| **Plus: Prepayment Fee (Due on Acceleration)** | **2%** | **$** | | **196,724.80** |
| **Plus: Protective Advances** | | **$** | | **948,873.18** |
| **Plus: Interest on Protective Advances** | | **$** | | **185,945.29** |
| **Less: Rents Received** | | **$** | | **(1,086,360.43)** |
| **Total Note Payoff Amount** | | | | **15,618,973.91** |

## INCOME/EXPENSES FOR 11 EAST 36 NOTE BUYER

**11 East 36th Note Buyer**

**Rents Collected**

| | |
|---|---|
| May | $ 47,792.93 |
| June | $ 56,445.05 |
| July | $ 59,587.96 |
| August | $ 57,892.13 |
| September | $ 56,592.13 |
| October | $ 54,458.50 |
| November | $ 64,592.13 |
| December | $ 50,766.80 |
| Jan '13 | $ 49,193.00 |
| Feb '13 | $ 57,393.00 |
| Mar '13 | $ 52,361.00 |
| Apr '13 | $ 49,193.00 |
| May '13 | $ 54,001.20 |
| June '13 | $ 31,538.40 |
| July '13 | $ 54,001.20 |
| Aug '13 | $ 49,601.20 |
| Sep '13 | $ 49,751.20 |
| Oct '13 | $ 45,996.20 |
| Nov '13 | $ 49,996.20 |
| Dec '13 | $ 45,996.20 |
| Jan '14 | $ 49,211.00 |
| Feb '14 | |
| | |
| **Total** | **$ 1,086,360.43** |

**11 East 36th Note Buyer** — Through — 2/1/2014

| Advances | Date | Amount | Interest | |
|---|---|---|---|---|
| Condo Maintenance Fee | 10/02/12 | $ 25,000.00 | $ 8,266.67 | |
| Condo Maintenance Fee | 12/01/12 | $ 17,682.76 | $ 5,139.79 | |
| Condo Maintenance Fee | 01/01/13 | $ 17,682.76 | $ 4,774.35 | |
| Condo Maintenance Fee | 02/01/13 | $ 17,682.76 | $ 4,408.90 | |
| Condo Maintenance Fee | 03/01/13 | $ 17,682.76 | $ 4,078.82 | |
| Condo Maintenance Fee | 04/01/13 | $ 9,062.26 | $ 1,903.07 | |
| Condo Maintenance Fee | 05/01/13 | $ 9,062.26 | $ 1,721.83 | |
| Condo Maintenance Fee | 06/01/13 | $ 9,062.26 | $ 1,534.54 | |
| Condo Maintenance Fee | 07/01/13 | $ 9,062.26 | $ 1,353.30 | |
| Condo Maintenance Fee | 08/01/13 | $ 9,062.26 | $ 1,166.01 | |
| Condo Maintenance Fee | 09/01/13 | $ 9,062.26 | $ 978.72 | |
| Condo Maintenance Fee | 10/01/13 | $ 18,124.51 | $ 1,594.96 | |
| Condo Maintenance Fee | 11/01/13 | $ 18,124.51 | $ 1,220.38 | |
| Condo Maintenance Fee | 12/01/13 | $ 18,124.51 | $ 857.89 | |
| Condo Maintenance Fee | 01/01/14 | $ 18,124.51 | $ 483.32 | |
| Condo Maintenance Fee | 02/01/14 | $ 18,125.51 | $ 108.75 | |
| Control Agreement Fee | 08/14/12 | $ 1,000.00 | $ 363.33 | |
| Inspection/Filing/Licensing | 05/17/12 | $ 3,125.00 | $ 1,320.83 | |
| Inspection/Filing/Licensing | 06/04/13 | $ 462.50 | $ 77.39 | |
| Management Fee | 05/31/12 | $ 1,792.24 | $ 740.79 | Adjusted to 3.75% |
| Management Fee | 06/30/12 | $ 2,116.69 | $ 832.56 | Adjusted to 3.75% |
| Management Fee | 07/31/12 | $ 2,234.55 | $ 832.74 | Adjusted to 3.75% |
| Management Fee | 08/31/12 | $ 2,170.95 | $ 764.17 | Adjusted to 3.75% |
| Management Fee | 09/30/12 | $ 2,122.21 | $ 704.57 | Adjusted to 3.75% |
| Management Fee | 10/31/12 | $ 2,037.18 | $ 634.24 | Adjusted to 3.75% |
| Management Fee | 11/30/12 | $ 2,422.21 | $ 705.67 | Adjusted to 3.75% |
| Management Fee | 12/31/12 | $ 1,903.76 | $ 515.28 | Adjusted to 3.75% |
| Management Fee | 01/31/13 | $ 1,844.74 | $ 461.18 | Adjusted to 3.75% |
| Management Fee | 02/28/13 | $ 2,152.24 | $ 497.88 | Adjusted to 3.75% |
| Management Fee | 03/31/13 | $ 1,963.54 | $ 413.65 | Adjusted to 3.75% |
| Management Fee | 04/30/13 | $ 1,844.74 | $ 351.73 | Adjusted to 3.75% |
| Management Fee | 05/31/13 | $ 2,025.05 | $ 344.26 | Adjusted to 3.75% |
| Management Fee | 06/30/13 | $ 1,182.69 | $ 177.40 | Adjusted to 3.75% |
| Management Fee | 07/31/13 | $ 2,025.05 | $ 261.91 | Adjusted to 3.75% |
| Management Fee | 08/31/13 | $ 1,860.05 | $ 202.12 | Adjusted to 3.75% |
| Management Fee | 09/30/13 | $ 1,865.67 | $ 165.42 | Adjusted to 3.75% |
| Management Fee | 10/31/13 | $ 1,724.86 | $ 117.29 | Adjusted to 3.75% |
| Management Fee | 11/30/13 | $ 1,724.86 | $ 82.79 | Adjusted to 3.75% |
| Management Fee | 12/31/13 | $ 1,724.86 | $ 47.15 | Adjusted to 3.75% |
| Management Fee | 01/31/14 | $ 1,845.41 | $ 12.30 | Adjusted to 3.75% |
| Other Renting Expenses | 10/09/12 | $ 133.63 | $ 43.56 | |
| Other Renting Expenses | 01/16/13 | $ 5,319.76 | $ 1,383.14 | |
| Other Renting Expenses | 03/05/13 | $ 931.95 | $ 212.48 | |
| Other Renting Expenses | 11/01/13 | $ 4,000.00 | $ 269.33 | |
| Other Renting Expenses | 01/01/14 | $ 785.19 | $ 20.94 | |
| Property Insurance | 03/13/13 | $ 680.05 | $ 151.42 | |
| Property Insurance | 12/31/13 | $ 137.35 | $ 3.75 | |
| Property Insurance | 01/22/14 | $ 7,772.13 | $ 98.45 | |
| Real Estate Taxes | 01/04/12 | $ 1,609.24 | $ 823.93 | |
| Real Estate Taxes | 09/20/12 | $ 184,233.96 | $ 62,393.90 | |
| Real Estate Taxes | 09/24/12 | $ 18,058.39 | $ 6,067.62 | |
| Real Estate Taxes | 01/04/13 | $ 137,936.31 | $ 36,966.93 | |
| Real Estate Taxes | 05/08/13 | $ 56,267.80 | $ 10,428.30 | |
| Real Estate Taxes | 07/01/13 | $ 16,318.33 | $ 2,436.87 | |
| Real Estate Taxes | 10/29/13 | $ 104,987.73 | $ 7,279.15 | |
| Real Estate Taxes | 11/05/13 | $ 100,428.62 | $ 6,494.38 | |
| Real Estate Taxes | 01/01/14 | $ 23,273.97 | $ 620.64 | |
| Supplies | 10/09/12 | $ 99.61 | $ 32.47 | |
| | | | | |
| **Total** | | **$ 948,873.18** | **$ 185,945.29** | **$ 1,134,818.46** |

## AMOUNT DUE ON GRIFFON V JUDGEMENT

### JUDGEMENT

| | | |
|---|---|---|
| Judgement Amount | $ 2,899,340.95 | |
| Beginning Date | 07/11/12 | |
| End Date | 02/10/14 | |
| Interest Rate | 9.0% | |
| Days | 579 | |
| Per Diem Interest | $ 724.84 | |
| Interest Due | | $ 419,679.60 |
| | | |
| **Total Interest Due** | | **$ 419,679.60** |

### GRIFFON V

| | | |
|---|---|---|
| **Judgment Amount** | $ | 2,899,340.95 |
| **Plus: Interest on Judgement** | $ | 419,679.60 |
| **Plus: Protective Advances** | $ | 229,136.65 |
| **Plus: Interest on Protective Advances** | $ | 55,853.57 |
| **Less: Rents Received** | $ | (523,722.40) |
| **Total Judgement Payoff Amount** | $ | 3,080,288.37 |

INCOME/EXPENSES FOR GRIFFON V

| Griffon V | | | Griffon V | Through | | 2/1/2014 | | | |
|-----------|---|---|-----------|---------|---|----------|---|---|---|
| **Rents Collected** | | | **Advances** | | | **Amount** | | **Interest** | |
| January | $ | 16,227.00 | Condo Maintenance Fee | 01/11/12 | $ | 2,370.64 | $ | 1,202.70 | |
| February | $ | 16,227.00 | Condo Maintenance Fee | 02/01/12 | $ | 2,370.64 | $ | 1,169.52 | |
| March | $ | 16,227.00 | Condo Maintenance Fee | 03/01/12 | $ | 2,370.64 | $ | 1,123.68 | |
| April | $ | 21,612.00 | Condo Maintenance Fee | 04/02/12 | $ | 2,370.64 | $ | 1,073.11 | |
| May | $ | 20,177.00 | Condo Maintenance Fee | 05/02/12 | $ | 2,370.64 | $ | 1,025.70 | |
| June | $ | 20,222.00 | Condo Maintenance Fee | 06/02/12 | $ | 2,370.64 | $ | 976.70 | |
| July | $ | 20,222.00 | Condo Maintenance Fee | 07/02/12 | $ | 2,370.64 | $ | 929.29 | |
| August | $ | 58,756.00 | Condo Maintenance Fee | 08/01/12 | $ | 2,370.64 | $ | 881.88 | |
| September | $ | 19,777.00 | Condo Maintenance Fee | 09/01/12 | $ | 2,370.64 | $ | 832.88 | |
| October | $ | 18,889.00 | Condo Maintenance Fee | 10/01/12 | $ | 2,370.64 | $ | 785.47 | |
| November | $ | 20,052.00 | Condo Maintenance Fee | 11/01/12 | $ | 2,370.64 | $ | 736.48 | |
| December | $ | 12,475.60 | Condo Maintenance Fee | 12/01/12 | $ | 2,370.64 | $ | 689.07 | |
| Jan '13 | $ | 20,177.00 | Condo Maintenance Fee | 01/01/13 | $ | 2,370.64 | $ | 640.07 | |
| Feb '13 | $ | 20,217.00 | Condo Maintenance Fee | 02/01/13 | $ | 2,370.64 | $ | 591.08 | |
| Mar '13 | $ | 24,217.00 | Condo Maintenance Fee | 03/01/13 | $ | 2,370.64 | $ | 546.83 | |
| Apr '13 | $ | 20,222.00 | Condo Maintenance Fee | 04/01/13 | $ | 2,370.64 | $ | 497.83 | |
| May '13 | $ | 20,222.00 | Condo Maintenance Fee | 05/01/13 | $ | 2,370.64 | $ | 450.42 | |
| June '13 | $ | 16,788.20 | Condo Maintenance Fee | 06/01/13 | $ | 2,370.64 | $ | 401.43 | |
| July '13 | $ | 19,688.60 | Condo Maintenance Fee | 07/01/13 | $ | 2,370.64 | $ | 354.02 | |
| Aug '13 | $ | 19,997.00 | Condo Maintenance Fee | 08/01/13 | $ | 2,370.64 | $ | 305.02 | |
| Sep '13 | $ | 16,207.00 | Condo Maintenance Fee | 09/01/13 | $ | 4,741.28 | $ | 512.06 | |
| Oct '13 | $ | 16,227.00 | Condo Maintenance Fee | 10/01/13 | $ | 4,741.28 | $ | 417.23 | |
| Nov '13 | $ | 28,292.00 | Condo Maintenance Fee | 11/01/13 | $ | 4,741.28 | $ | 319.25 | |
| Dec '13 | $ | 20,302.00 | Condo Maintenance Fee | 12/01/13 | $ | 4,741.28 | $ | 224.42 | |
| Jan '14 | $ | 20,302.00 | Condo Maintenance Fee | 01/01/14 | $ | 4,741.28 | $ | 126.43 | |
| Feb '14 | | | Condo Maintenance Fee | 02/01/14 | $ | 4,741.28 | $ | 28.45 | |
| | | | Insurance | 01/09/12 | $ | 3,132.00 | $ | 1,593.14 | |
| | | | Insurance | 12/20/12 | $ | 3,212.00 | $ | 892.94 | |
| **Total** | $ | 523,722.40 | Management Fee | 09/30/12 | $ | 6,409.24 | $ | 2,127.87 | Adjusted to 3.75% |
| | | | Management Fee | 10/31/12 | $ | 708.34 | $ | 220.53 | Adjusted to 3.75% |
| | | | Management Fee | 11/30/12 | $ | 751.95 | $ | 219.07 | Adjusted to 3.75% |
| | | | Management Fee | 12/31/12 | $ | 467.84 | $ | 126.63 | Adjusted to 3.75% |
| | | | Management Fee | 01/31/13 | $ | 756.64 | $ | 189.16 | Adjusted to 3.75% |
| | | | Management Fee | 02/28/13 | $ | 758.14 | $ | 175.38 | Adjusted to 3.75% |
| | | | Management Fee | 03/31/13 | $ | 908.14 | $ | 191.31 | Adjusted to 3.75% |
| | | | Management Fee | 04/30/13 | $ | 758.33 | $ | 144.59 | Adjusted to 3.75% |
| | | | Management Fee | 05/31/13 | $ | 758.33 | $ | 128.92 | Adjusted to 3.75% |
| | | | Management Fee | 06/30/13 | $ | 629.56 | $ | 94.43 | Adjusted to 3.75% |
| | | | Management Fee | 07/31/13 | $ | 738.32 | $ | 95.49 | Adjusted to 3.75% |
| | | | Management Fee | 08/31/13 | $ | 749.89 | $ | 81.49 | Adjusted to 3.75% |
| | | | Management Fee | 09/30/13 | $ | 607.76 | $ | 53.89 | Adjusted to 3.75% |
| | | | Management Fee | 10/31/13 | $ | 607.76 | $ | 41.33 | Adjusted to 3.75% |
| | | | Management Fee | 11/30/13 | $ | 1,060.95 | $ | 50.93 | Adjusted to 3.75% |
| | | | Management Fee | 12/31/13 | $ | 761.33 | $ | 20.81 | Adjusted to 3.75% |
| | | | Management Fee | 01/31/14 | $ | 761.33 | $ | 5.08 | Adjusted to 3.75% |
| | | | Other Renting Expenses | 01/11/13 | $ | 3,751.39 | $ | 987.87 | |
| | | | Other Renting Expenses | 07/24/13 | $ | 1,998.00 | $ | 267.73 | |
| | | | Other Renting Expenses | 08/02/13 | $ | 2,578.78 | $ | 330.08 | |
| | | | Other Renting Expenses | 11/01/13 | $ | 424.50 | $ | 28.58 | |
| | | | Repairs | 12/16/13 | $ | 125.00 | $ | 4.67 | |
| | | | Property Taxes | 02/24/12 | $ | 10,160.42 | $ | 4,856.68 | |
| | | | Property Taxes | 06/08/12 | $ | 10,791.53 | $ | 4,402.94 | |
| | | | Property Taxes | 08/17/12 | $ | 10,723.99 | $ | 3,874.94 | |
| | | | Property Taxes | 08/21/12 | $ | 11,394.49 | $ | 4,086.82 | |
| | | | Property Taxes | 08/30/12 | $ | 3,848.97 | $ | 1,357.40 | |
| | | | Property Taxes | 11/30/12 | $ | 13,943.14 | $ | 4,062.10 | |
| | | | Property Taxes | 02/22/13 | $ | 14,008.75 | $ | 3,296.73 | |
| | | | Property Taxes | 06/07/13 | $ | 15,118.88 | $ | 2,499.65 | |
| | | | Property Taxes | 08/23/13 | $ | 15,004.65 | $ | 1,710.53 | |
| | | | Property Taxes | 11/22/13 | $ | 14,865.86 | $ | 792.85 | |
| | | | **Total** | | $ | 229,136.65 | $ | 55,853.57 | $ | 284,990.22 |

**11 East 36 Note Buyer - Legal Bills**

| | | |
|---|---|---|
| Damon Morey | $ | 7,500.00 |
| Damon Morey | $ | 24,990.00 |
| Damon Morey | $ | 2,588.95 |
| Damon Morey | $ | 21,770.64 |
| Wenig Saltiel | $ | 1,500.00 |
| Einig & Bush | $ | 12,030.00 |
| Einig & Bush | $ | 4,687.50 |
| Einig & Bush | $ | 12,000.00 |
| Einig & Bush | $ | 8,000.00 |
| Deluca | $ | 25,017.00 |
| Deluca | $ | 90,593.10 |
| Deluca | $ | 26,404.69 |
| Frankel | $ | 136,319.86 |
| Frankel | $ | 57,747.89 |
| **Total** | **$** | **431,149.63** |

**Griffon V - Legal Bills**

| | | |
|---|---|---|
| Deluca | $ | 48,428.55 |
| Deluca | $ | 14,115.31 |
| Frankel | $ | 26,884.26 |
| Frankel | $ | 11,388.72 |
| Wenig Saltiel | $ | 1,500.00 |
| Advance Fee for Marshall | $ | 1,000.00 |
| Cordova & Schwartzman | $ | 2,148.65 |
| Cordova & Schwartzman | $ | 10,139.50 |
| Cordova & Schwartzman | $ | 8,628.49 |
| Cordova & Schwartzman | $ | 2,021.00 |
| Cordova & Schwartzman | $ | 3,375.00 |
| Cordova & Schwartzman | $ | 1,446.68 |
| Cordova & Schwartzman | $ | 810.00 |
| Einig & Bush | $ | 4,937.50 |
| **Total** | **$** | **136,823.66** |

# Exhibit B

B10 (Official Form 10) (04/13)

| UNITED STATES BANKRUPTCY COURT    Southern District of New York | PROOF OF CLAIM |
|---|---|

| Name of Debtor:<br><br>11 EAST 36TH, LLC. | Case Number:<br><br>13-11506 | |

NOTE: *Do not use this form to make a claim for an administrative expense that arises after the bankruptcy filing. You may file a request for payment of an administrative expense according to 11 U.S.C. § 503.*

Name of Creditor (the person or other entity to whom the debtor owes money or property):
VICTORIA GUTHRIE

**COURT USE ONLY**

Name and address where notices should be sent:
LAW OFFICE OF DENNIS MARC REISMAN
11 GRACE AVENUE, SUITE 411
GREAT NECK, NY 11021

Telephone number: (516) 466-2227    email: dennisreisman@aol.com

☐ Check this box if this claim amends a previously filed claim.

**Court Claim Number:** _____
(*If known*)

Filed on: _____

Name and address where payment should be sent (if different from above):
Victoria Guthrie
353 East 53rd Street, Ste 1101
New York, NY 10016

Telephone number: (212) 644-8906    email: vguthrie10@yahoo.com

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to this claim. Attach copy of statement giving particulars.

**1. Amount of Claim as of Date Case Filed:** $ 877,500.00

If all or part of the claim is secured, complete item 4.

If all or part of the claim is entitled to priority, complete item 5.

☑ Check this box if the claim includes interest or other charges in addition to the principal amount of the claim. Attach a statement that itemizes interest or charges.

**2. Basis for Claim:** Loan of $650,000, plus unpaid interest due thereon
(See instruction #2)

| **3. Last four digits of any number by which creditor identifies debtor:** | 3a. Debtor may have scheduled account as:<br><br>(See instruction #3a) | 3b. Uniform Claim Identifier (optional):<br><br>(See instruction #3b) |
|---|---|---|

**4. Secured Claim** (See instruction #4)
Check the appropriate box if the claim is secured by a lien on property or a right of setoff, attach required redacted documents, and provide the requested information.

**Nature of property or right of setoff:** ☑Real Estate ☐Motor Vehicle ☐Other
**Describe:** UCC filing, annexed

**Value of Property:** $ _____

**Annual Interest Rate** _____ % ☐Fixed or ☐Variable
(when case was filed)

Amount of arrearage and other charges, as of the time case was filed, included in secured claim, if any:
$ _____

**Basis for perfection:** _____

**Amount of Secured Claim:** $ _____

**Amount Unsecured:** $ _____

**5. Amount of Claim Entitled to Priority under 11 U.S.C. § 507 (a). If any part of the claim falls into one of the following categories, check the box specifying the priority and state the amount.**

☐ Domestic support obligations under 11 U.S.C. § 507 (a)(1)(A) or (a)(1)(B).

☐ Wages, salaries, or commissions (up to $12,475*) earned within 180 days before the case was filed or the debtor's business ceased, whichever is earlier – 11 U.S.C. § 507 (a)(4).

☐ Contributions to an employee benefit plan – 11 U.S.C. § 507 (a)(5).

**Amount entitled to priority:**
$ _____

☐ Up to $2,775* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. § 507 (a)(7).

☐ Taxes or penalties owed to governmental units – 11 U.S.C. § 507 (a)(8).

☐ Other – Specify applicable paragraph of 11 U.S.C. § 507 (a)(__).

*Amounts are subject to adjustment on 4/01/16 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

**6. Credits.** The amount of all payments on this claim has been credited for the purpose of making this proof of claim. (See instruction #6)

B10 (Official Form 10) (04/13)                                                                                                                    2

**7. Documents:** Attached are **redacted** copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, security agreements, or, in the case of a claim based on an open-end or revolving consumer credit agreement, a statement providing the information required by FRBP 3001(c)(3)(A). If the claim is secured, box 4 has been completed, and **redacted** copies of documents providing evidence of perfection of a security interest are attached. If the claim is secured by the debtor's principal residence, the Mortgage Proof of Claim Attachment is being filed with this claim. *(See instruction #7, and the definition of "redacted".)*

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

**8. Signature:** (See instruction #8)

Check the appropriate box.

☐ I am the creditor.    ☑ I am the creditor's authorized agent.    ☐ I am the trustee, or the debtor, or their authorized agent. (See Bankruptcy Rule 3004.)    ☐ I am a guarantor, surety, indorser, or other codebtor. (See Bankruptcy Rule 3005.)

I declare under penalty of perjury that the information provided in this claim is true and correct to the best of my knowledge, information, and reasonable belief.

Print Name:  Dennis Marc Reisman
Title:  Attorney for creditor, Victoria Guthrie
Company:  Law Office of Dennis Marc Reisman
Address and telephone number (if different from notice address above):
11 Grace Avenue, Suite 411
Great Neck, NY 11021

(Signature)                                                  (Date) 08/13/2013

Telephone number: (516) 466-2227    email: dennisreisman@aol.com
*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

---

**INSTRUCTIONS FOR PROOF OF CLAIM FORM**
*The instructions and definitions below are general explanations of the law. In certain circumstances, such as bankruptcy cases not filed voluntarily by the debtor, exceptions to these general rules may apply.*
**Items to be completed in Proof of Claim form**

**Court, Name of Debtor, and Case Number:**
Fill in the federal judicial district in which the bankruptcy case was filed (for example, Central District of California), the debtor's full name, and the case number. If the creditor received a notice of the case from the bankruptcy court, all of this information is at the top of the notice.

**Creditor's Name and Address:**
Fill in the name of the person or entity asserting a claim and the name and address of the person who should receive notices issued during the bankruptcy case. A separate space is provided for the payment address if it differs from the notice address. The creditor has a continuing obligation to keep the court informed of its current address. See Federal Rule of Bankruptcy Procedure (FRBP) 2002(g).

**1. Amount of Claim as of Date Case Filed:**
State the total amount owed to the creditor on the date of the bankruptcy filing. Follow the instructions concerning whether to complete items 4 and 5. Check the box if interest or other charges are included in the claim.

**2. Basis for Claim:**
State the type of debt or how it was incurred. Examples include goods sold, money loaned, services performed, personal injury/wrongful death, car loan, mortgage note, and credit card. If the claim is based on delivering health care goods or services, limit the disclosure of the goods or services so as to avoid embarrassment or the disclosure of confidential health care information. You may be required to provide additional disclosure if an interested party objects to the claim.

**3. Last Four Digits of Any Number by Which Creditor Identifies Debtor:**
State only the last four digits of the debtor's account or other number used by the creditor to identify the debtor.

**3a. Debtor May Have Scheduled Account As:**
Report any identifier used by the creditor's name, a transferred claim, or any other information that clarifies a difference between this proof of claim and the claim as scheduled by the debtor.

**3b. Uniform Claim Identifier:**
If you use a uniform claim identifier, you may report it here. A uniform claim identifier is an optional 24-character identifier that certain large creditors use to facilitate electronic payment in chapter 13 cases.

**4. Secured Claim:**
Check whether the claim is fully or partially secured. Skip this section if the

claim is entirely unsecured. (See Definitions.) If the claim is secured, check the box for the nature and value of property that secures the claim, attach copies of lien documentation, and state, as of the date of the bankruptcy filing, the annual interest rate (and whether it is fixed or variable), and the amount past due on the claim.

**5. Amount of Claim Entitled to Priority Under 11 U.S.C. § 507 (a).**
If any portion of the claim falls into any category shown, check the appropriate box(es) and state the amount entitled to priority. (See Definitions.) A claim may be partly priority and partly non-priority. For example, in some of the categories, the law limits the amount entitled to priority.

**6. Credits:**
An authorized signature on this proof of claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

**7. Documents:**
Attach redacted copies of any documents that show the debt exists and a lien secures the debt. You must also attach copies of documents that evidence perfection of any security interest and documents required by FRBP 3001(c) for claims based on an open-end or revolving consumer credit agreement or secured by a security interest in the debtor's principal residence. You may also attach a summary in addition to the documents themselves. FRBP 3001(c) and (d). If the claim is based on delivering health care goods or services, limit disclosing confidential health care information. Do not send original documents, as attachments may be destroyed after scanning.

**8. Date and Signature:**
The individual completing this proof of claim must sign and date it. FRBP 9011. If the claim is filed electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what constitutes a signature. If you sign this form, you declare under penalty of perjury that the information provided is true and correct to the best of your knowledge, information, and reasonable belief. Your signature is also a certification that the claim meets the requirements of FRBP 9011(b). Whether the claim is filed electronically or in person, if your name is on the signature line, you are responsible for the declaration. Print the name and title, if any, of the creditor or other person authorized to file this claim. State the filer's address and telephone number if it differs from the address given on the top of the form for purposes of receiving notices. If the claim is filed by an authorized agent, provide both the name of the individual filing the claim and the name of the agent. If the authorized agent is a servicer, identify the corporate servicer as the company. Criminal penalties apply for making a false statement on a proof of claim.

Schedule of Interest

| | |
|---|---:|
| 14 month interest, at 21%, on 325,000.00, from Jan. 1, 2011 to Feb. 1, 2012: | $ 79,625.00 |
| 13 month interest, at 21%, on 650,000.00, from May 1, 2012 to May 1, 2013 | $147,875.00 |
| Total Interest | $227,500.00 |
| Plus Principal | $650,000.00 |
| Total | $877.500.00 |

## LOAN AGREEMENT

THIS AGREEMENT ("Agreement") is made as of the ___5th___ day of November, 2007, by and between THE MORGAN INVESTMENT FUND, LLC, a New York limited liability company having an address at 11 East 36th Street, Suite 1101, New York, New York 10016 ("MIF"), and VICTORIA GUTHRIE, residing at 353 East 53rd Street, New York, New York 10022 ("Guthrie").

WHEREAS, Guthrie is sole member of Carnegie Holdings LLC, the owner of Residential Unit 1102 ("Premises") located at 11 East 36th Street, New York, New York,

WHEREAS, MIF has requested a $600,000.00 bridge loan from Guthrie, and Guthrie has consented to granting such loan to MIF pursuant to the terms hereof,

NOW, THEREFORE, the parties hereto agree to the terms set forth in this Agreement as follows:

1.    In consideration of the sum of $50,000.00, paid by MIF to Guthrie simultaneous to the execution of this Agreement, Guthrie shall arrange, through Joshua Pollack ("Pollack") of First Meridian Mortgage Corp., for a mortgage loan in the sum of $600,000.00, to be secured by a first mortgage lien encumbering the Premises ("Mortgage Loan").

2.    The terms of the Mortgage Loan shall be subject to MIF's prior approval. Guthrie shall not accept any loan commitment issued for the Mortgage Loan without MIF's prior consent thereof.

3.    Guthrie shall, within three (3) days of the date hereof, submit a loan application with Pollack for the Mortgage Loan. Guthrie shall fully cooperate with Pollack, and promptly comply with Pollack's requests, for the application for the Mortgage Loan. MIF shall be responsible for any and all fees incurred by Guthrie for the arrangement and consummation of the Mortgage Loan, including but not limited to loan origination fees, loan applications fees, title insurance costs, mortgage recording tax, lender attorney fees, and recording fees.

4.    At the closing of the Mortgage Loan, Guthrie shall (a) execute and any documents required to transfer the title of the Premises from Carnegie Holdings LLC to Guthrie, to effectuate Guthrie's ownership of the Premises in her name; and (b) authorize the lender granting the Mortgage Loan to disburse the net loan proceeds (after deducting the required closing costs) of the Mortgage Loan directly to MIF, or to MIF's designee. Notwithstanding anything to the contrary, Guthrie (not MIF) shall pay, at the closing of the Mortgage Loan, any and all fees associated with the transfer of title from Carnegie Holdings LLC to Guthrie, including but not limited to attorney fees and recording fees.

5.    After the closing of the Mortgage Loan, MIF shall undertake to make the monthly payments due under the Mortgage Loan, including principal and interest and any required property tax escrows.

1

6.    MIF shall cause or arrange for the full satisfaction and payoff of the ~~~~~~~ Loan within twelve (12) months from the closing of the Mortgage Loan. MIF shall promptly furnish Guthrie with proof of such full satisfaction and payoff.

7.    The obligations of MIF under this Agreement shall be guaranteed by Joseph Bobker, residing at 189 Wildacre, Lawrence, New York. Joseph Bobker shall execute this Agreement to evidence his guaranty obligations hereunder.

8.    This Agreement shall be governed by and construed in accordance with the laws of the State of New York without giving effect to principles of conflicts of law.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date first written above.

THE MORGAN INVEMENT FUND, LLC
By:    Hancock Park, LLC, Manager

By: _____
      Avi Bobker
      Managing Member

_____
VICTORIA GUTHRIE

Paragraph 7 herein guaranteed by:

_____
JOSEPH BOBKER

## SECOND AMENDMENT OF LOAN AGREEMENT

THIS SECOND AMENDMENT ("Amendment") is made as of the _11_ day of March, 2009, by and between THE MORGAN INVESTMENT FUND, LLC, a New York limited liability company having an address at 11 East 36th Street, Suite 100-B, New York, New York 10016 ("MIF"), and VICTORIA GUTHRIE, residing at 353 East 53rd Street, New York, New York 10022 ("Guthrie").

WHEREAS, MIF and Guthrie entered into a Loan Agreement dated November 5, 2007.

WHEREAS, the parties desire to extend the term of such Loan,

NOW, THEREFORE, the parties hereto agree to the terms set forth in this Amendment as follows:

1.    The loan shall be extended for one month from the date of this Amendment.

2.    All other terms and conditions of the Loan Agreement shall remain the same.

IN WITNESS WHEREOF, the parties hereto have executed this Amendment as of the date first written above.

THE MORGAN INVEMENT FUND, LLC
By:    Hancock Park, LLC, Manager

By:    _Avi Bobker_
       Avi Bobker
       Managing Member

_Victoria Guthrie_
VICTORIA GUTHRIE

## SECOND AMENDMENT OF LOAN AGREEMENT

THIS SECOND AMENDMENT ("Amendment") is made as of the __ day of April, 2009, by and between THE MORGAN INVESTMENT FUND, LLC, a New York limited liability company having an address at 11 East 36th Street, Suite 100-B, New York, New York 10016 ("MIF"), and VICTORIA GUTHRIE, residing at 353 East 53rd Street, New York, New York 10022 ("VG").

WHEREAS, MIF and VG entered into a Loan Agreement dated November 5, 2007.

WHEREAS, the parties desire to extend the term of such Loan,

NOW, THEREFORE, the parties hereto agree to the terms set forth in this Amendment as follows:

1. The loan shall be extended for one year from the date of this Amendment. VG shall have the right to call for increments of the loan upon 75-day written notice to MIF. The amounts of these increments shall be ~~mutually agreed upon~~ up to $250,000.00. No call shall overlap another. MIF may pay the loan off, or partially off, at any time with a 30-day notice.

2. VG shall hold as security a pledge of the interest in Morgan Lofts, LLC, 11 East 36th, LLC and Wadsworth Condos, LLC (see attached schedule for assets of LLC's). VG shall have the right to make a UCC filing to record such security interest. VG acknowledges and approves that the Collateral under the Pledge Agreements does not include the five units held by Morgan Lofts and encumbered by ChinaTrustBank and listed on the attached Schedule A, and agrees, on demand, to sign any further documentation that may be necessary to release those units from the Collateral with no payment to VG. Following the full repayment of the loan, **together with any accrued interest due, if any,** such security interest shall automatically be terminated without the requirement of any action on the part of VG and VG shall have no further interest, equity or security in Morgan Lofts, LLC and 11 East 36th, LLC. Simultaneously, VG agrees to perform any task necessary for the termination of such security interest including the termination of the UCC filing.

3. VG may not transfer, assign or sell neither the Loan nor any other of VG's rights under this Loan Agreement. Any such attempted transfer, assignment hypothecation, or sale shall make the loan and this Agreement null and void and terminated.

4. All other terms and conditions of the Loan Agreement shall remain the same.

IN WITNESS WHEREOF, the parties hereto have executed this Amendment as of the date first written above.

THE MORGAN INVESTMENT FUND, LLC
By:   Hancock Park, LLC, Manager

By: _____
      Avi Bobker, Managing Member

_____
VICTORIA GUTHRIE

*[handwritten margin note:]* VG may not call any of the loan amount within 60 days from the date of this Amendment

PLEDGE AGREEMENT

(Limited Liability Company – Article 9 Collateral)

PLEDGE AGREEMENT dated as of April __, 2009 ("Pledge Agreement") made by 11 EAST 36th, LLC ("Pledgor") to VICTORIA GUTHRIE ("Pledgee").

11 East 36th, LLC is a member of Morgan Lofts, LLC, New York limited liability companies.

THE MORGAN INVESTMENT FUND, LLC, a New York limited liability company ("MIF"), and Pledgee entered into a Loan Agreement dated November 5, 2007 for $650,000.00 ("Note").

As security for MIF's payment obligation under the Note, 11 East 36th, LLC agrees to pledge its respective membership interest in Morgan Lofts, LLC as follows:

1. <u>Pledge.</u> Pledgor hereby pledges and grants to Pledgee a continuing security interest in all right, title and interest of Pledgor in and to its membership interest in Morgan Lofts, LLC ("Collateral"). The Collateral secures the payment when due of the Note. Either Pledgor or Pledgee may not transfer, assign or sell any of Pledgor or Pledgee's respective rights under this Pledge Agreement without written permission from Pledgee or Pledgor, as applicable. Any such attempted transfer, assignment hypothecation, or sale shall make the Note and this Agreement null and void and terminated.

2. <u>Disclosure.</u> Pledgee acknowledges that there is a mechanic's lien on the Collateral from WonderWorks, Inc. of (approx) $400,000. Also, Pledgee acknowledges and approves that the Collateral does not include the five units held by Morgan Lofts and encumbered by ChinaTrustBank and listed on the attached Schedule A, and agrees, on demand, to sign any further documentation that may be necessary to release those units from the Collateral with no payment to the Pledgee.

3. <u>Perfection of Security Interest.</u> Subject to the provisions of Section 4 herein, Pledgor agrees and hereby consents to Pledgee filing a UCC statement in accordance herewith.

4. <u>Termination of Pledge Agreement.</u> Following the full repayment of the Note, the security interest in the Collateral shall automatically be terminated without the requirement of any action on the part of Pledgee and Pledgee shall have no further interest, equity or security in the Collateral. Simultaneously, Pledgee agrees to perform any task necessary for the termination of such security interest including the termination of any UCC filing.

IN WITNESS WHEREOF, Pledgor has duly executed this Pledge Agreement as of the date of this Pledge Agreement.

**11 EAST 36TH, LLC**

By: _____

     Ben Bobker
     Managing Member

PLEDGE AGREEMENT

(Limited Liability Company – Article 9 Collateral)

PLEDGE AGREEMENT dated as of April __, 2009 ("Pledge Agreement") made by MADISON CONDOS, LLC ("Pledgor") to VICTORIA GUTHRIE ("Pledgee").

Madison Condos, LLC is a member of 11 East 36th, LLC, New York limited liability companies.

THE MORGAN INVESTMENT FUND, LLC, a New York limited liability company ("MIF"), and Pledgee entered into a Loan Agreement dated November 5, 2007 for $650,000.00 ("Note").

As security for MIF's payment obligation under the Note, Madison Condos, LLC agrees to pledge its membership interest in 11 East 36th, LLC as follows:

1. <u>Pledge.</u>  Pledgor hereby pledges and grants to Pledgee a continuing security interest in all right, title and interest of Pledgor in and to its membership interest in 11 East 36th, LLC ("Collateral"). The Collateral secures the payment when due of the Note. Either Pledgor or Pledgee may not transfer, assign or sell any of Pledgor or Pledgee's respective rights under this Pledge Agreement without written permission from Pledgee or Pledgor, as applicable. Any such attempted transfer, assignment hypothecation, or sale shall make the Note and this Agreement null and void and terminated.

2. <u>Disclosure.</u>  Pledgee acknowledges that there is a mechanic's lien on the Collateral from WonderWorks, Inc. of (approx) $400,000. Also, Pledgee acknowledges and approves that the Collateral does not include the five units held by Morgan Lofts and encumbered by ChinaTrustBank and listed on the attached Schedule A, and agrees, on demand, to sign any further documentation that may be necessary to release those units from the Collateral with no payment to the Pledgee.

3. <u>Perfection of Security Interest.</u>  Subject to the provisions of Section 4 herein, Pledgor agrees and hereby consents to Pledgee filing a UCC statement in accordance herewith.

4. <u>Termination of Pledge Agreement.</u>  Following the full repayment of the Note, the security interest in the Collateral shall automatically be terminated without the requirement of any action on the part of Pledgee and Pledgee shall have no further interest, equity or security in the Collateral. Simultaneously, Pledgee agrees to perform any task necessary for the termination of such security interest including the termination of any UCC filing.

IN WITNESS WHEREOF, Pledgor has duly executed this Pledge Agreement as
of the date of this Pledge Agreement.

**MADISON CONDOS, LLC**
By: Bluebell Assets, LLC, Manager

By: _____

Ben Bobker
Managing Member

PLEDGE AGREEMENT

(Limited Liability Company – Article 9 Collateral)

PLEDGE AGREEMENT dated as of April __, 2009 ("Pledge Agreement") made by WADSWORTH CONDOS, LLC ("Pledgor") to VICTORIA GUTHRIE ("Pledgee").

Wadsworth Condos, LLC is a member of Bay Condos, LLC, New York limited liability companies.

THE MORGAN INVESTMENT FUND, LLC, a New York limited liability company ("MIF"), and Pledgee entered into a Loan Agreement dated November 5, 2007 for $650,000.00 ("Note").

As security for MIF's payment obligation under the Note, Wadsworth Condos, LLC agrees to pledge its membership interest in Bay Condos, LLC as follows:

1. _Pledge._ Pledgor hereby pledges and grants to Pledgee a continuing security interest in all right, title and interest of Pledgor in and to its membership interest in 11 East 36th, LLC ("Collateral"). The Collateral secures the payment when due of the Note. Either Pledgor or Pledgee may not transfer, assign or sell any of Pledgor or Pledgee's respective rights under this Pledge Agreement without written permission from Pledgee or Pledgor, as applicable. Any such attempted transfer, assignment hypothecation, or sale shall make the Note and this Agreement null and void and terminated.

2. _Disclosure._ Pledgee acknowledges that there is a mechanic's lien on the Collateral from WonderWorks, Inc. of (approx) $400,000. Also, Pledgee acknowledges and approves that the Collateral does not include the five units held by Morgan Lofts and encumbered by ChinaTrustBank and listed on the attached Schedule A, and agrees, on demand, to sign any further documentation that may be necessary to release those units from the Collateral with no payment to the Pledgee.

3. _Perfection of Security Interest._ Subject to the provisions of Section 4 herein, Pledgor agrees and hereby consents to Pledgee filing a UCC statement in accordance herewith.

4. _Termination of Pledge Agreement._ Following the full repayment of the Note, the security interest in the Collateral shall automatically be terminated without the requirement of any action on the part of Pledgee and Pledgee shall have no further interest, equity or security in the Collateral. Simultaneously, Pledgee agrees to perform any task necessary for the termination of such security interest including the termination of any UCC filing.

IN WITNESS WHEREOF, Pledgor has duly executed this Pledge Agreement as of the date of this Pledge Agreement.

WADSWORTH CONDOS, LLC

By: _____
Eli Bobker
Managing Member

433812        2009 Oct 20 PM12:00

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER [optional]

B. SEND ACKNOWLEDGMENT TO:  (Name and Address)

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (1a or 1b) - do not abbreviate or combine names

| 1a. ORGANIZATION'S NAME Madison Condos, LLC | | | |
|---|---|---|---|
| OR 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |

| 1c. MAILING ADDRESS 11 East 36th St., Suite 100B | CITY New York | STATE NY | POSTAL CODE 10016 | COUNTRY USA |
|---|---|---|---|---|

| 1d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION Limited Liability Company | 1f. JURISDICTION OF ORGANIZATION New York | 1g. ORGANIZATIONAL ID #, if any | NONE |
|---|---|---|---|---|---|

2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (2a or 2b) - do not abbreviate or combine names

| 2a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| OR 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

| 2d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any | NONE |
|---|---|---|---|---|---|

3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| OR 3b. INDIVIDUAL'S LAST NAME Guthrie | FIRST NAME Victoria | MIDDLE NAME | SUFFIX |

| 3c. MAILING ADDRESS 353 East 53rd St., 1A | CITY New York | STATE NY | POSTAL CODE 10022 | COUNTRY USA |
|---|---|---|---|---|

4. This FINANCING STATEMENT covers the following collateral:

**The collateral secured shall include Madison Condos, LLC interest in the following units owned by 11 East 36th, LLC located at 11 East 36th St., NY, NY: Cellar, Units 201, 202, 203, 204, 205, 206, 306, 406, 606, 701, 801, 803, 804, 903, 904, 1003, 1004, 1103, 1104 and 1206. The collateral shall not include units 1001, 1006, 1101, 1203 and 1204 located at 11 East 36th St. and secured party shall sign anything on demand that is necessary to effectuate this exemption.**

| 5. ALTERNATIVE DESIGNATION [if applicable]: | LESSEE/LESSOR | CONSIGNEE/CONSIGNOR | BAILEE/BAILOR | SELLER/BUYER | AG. LIEN | NON-UCC FILING |
|---|---|---|---|---|---|---|

| 6. This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.    Attach Addendum | [if applicable] | 7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE]    [optional] | All Debtors | Debtor 1 | Debtor 2 |
|---|---|---|---|---|---|

8. OPTIONAL FILER REFERENCE DATA

FILING OFFICE COPY — NATIONAL UCC FINANCING STATEMENT (FORM UCC1) (REV. 05/22/02)

**Filing Number-200910208354555**

433821        2009 Oct 20 PM12:31

# UCC FINANCING STATEMENT

FOLLOW INSTRUCTIONS (front and back) CAREFULLY

**A. NAME & PHONE OF CONTACT AT FILER [optional]**

**B. SEND ACKNOWLEDGMENT TO: (Name and Address)**

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1. DEBTOR'S EXACT FULL LEGAL NAME** - insert only *one* debtor name (1a or 1b) - do not abbreviate or combine names

| 1a. ORGANIZATION'S NAME **11 East 36th, LLC** | | | |
|---|---|---|---|
| OR 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |

| 1c. MAILING ADDRESS **11 East 36th St., Suite 100B** | CITY **New York** | STATE **NY** | POSTAL CODE **10016** | COUNTRY **USA** |
|---|---|---|---|---|

| 1d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION **Limited Liability Company** | 1f. JURISDICTION OF ORGANIZATION **New York** | 1g. ORGANIZATIONAL ID #, if any ☐ NONE |
|---|---|---|---|---|

**2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME** - insert only *one* debtor name (2a or 2b) - do not abbreviate or combine names

| 2a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| OR 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

| 2d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any ☐ NONE |
|---|---|---|---|---|

**3. SECURED PARTY'S NAME** (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only *one* secured party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| OR 3b. INDIVIDUAL'S LAST NAME **Guthrie** | FIRST NAME **Victoria** | MIDDLE NAME | SUFFIX |

| 3c. MAILING ADDRESS **353 East 53rd St., 1A** | CITY **New York** | STATE **NY** | POSTAL CODE **10022** | COUNTRY **USA** |
|---|---|---|---|---|

**4. This FINANCING STATEMENT covers the following collateral:**
The collateral secured shall include 11 East 36th, LLC's interest in the following units owned by Morgan Lofts, LLC and located at 11 East 36th St., NY, NY: 701, 801, 803, 804, 903, 904, 1003, 1004, 1103 and 1104. The collateral shall not include units 1001, 1203, and 1204 located at 11 East 36th St., NY, NY and secured party shall sign anything on demand that is necessary to effectuate this exemption.

| 5. ALTERNATIVE DESIGNATION [if applicable]: | LESSEE/LESSOR | CONSIGNEE/CONSIGNOR | BAILEE/BAILOR | SELLER/BUYER | AG. LIEN | NON-UCC FILING |
|---|---|---|---|---|---|---|
| 6. ☐ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS. Attach Addendum [if applicable] | | 7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE] [optional] | | | All Debtors ☐ Debtor 1 ☐ Debtor 2 |
| 8. OPTIONAL FILER REFERENCE DATA | | | | | |

FILING OFFICE COPY — NATIONAL UCC FINANCING STATEMENT (FORM UCC1) (REV. 05/22/02)

Exhibit C

$10,000,000.00                                               Dated: March 20, 2008

### SUBSTITUTE MORTGAGE NOTE

**SECTION 1. PAYMENT:** For value received, **11 East 36th, LLC, Morgan Lofts, LLC and
Bay Condos, LLC** ("Borrower"), with offices at 11 EAST 36TH STREET, SUITE 1101, NEW
YORK, NEW YORK, promises to pay to the order of **FIRST CENTRAL SAVINGS BANK**
("Bank") at its office at 70 Glen Street, Glen Cove, New York 11542, or at such other place as
the holder hereof may designate in writing, in lawful money of the United States, the principal
sum of Ten Million Dollars ($10,000,000.00), plus interest on the principal sum outstanding
from the date hereof until paid.

The initial rate of interest under this Note shall be six and three eights percent (6.375%)
per annum. The rate of interest hereunder shall change on April 1, 2013. The date on which the
rate of interest shall change is called the "Change Date". On the Change Date, the rate of interest
will be adjusted so that it is equal to 275 basis points (2.75%) (the "Margin") above the monthly
average yield on United States Treasury Securities adjusted to a constant maturity of five (5)
years (the "Index"), as most recently published by the Federal Reserve Board as of the date thirty
(30) days prior to the Change Date, but in no event shall the interest rate during the second five
(5) year period of the note term be less than the initial interest rate hereunder. If the Index is no
longer available, then the holder hereof on the applicable Change Date will choose a new index
which is based upon comparable information.

Interest only shall be payable on the date hereof for the current month. This Note shall
then be repaid in monthly installments of principal and interest, with the first installment due and
payable on May 1, 2008 and all subsequent installment payments will be due and payable on the
first day of each and every month thereafter until April 1, 2018 (the "Maturity Date"), when the
entire remaining principal balance of this Note plus any unpaid interest and all other amounts
owing under this Note or the Agreement (as defined below) will be due and payable in full. Each
installment of principal and interest will be $62,386.99 until changed as set forth in this
paragraph. The amount of the monthly installment will be recalculated as of each Change Date.
The monthly installment payment due beginning with the first payment due after each Change
Date shall be the amount required to repay the then unpaid principal, with interest at the interest
rate then in effect, in substantially equal amounts through a hypothetical amortization period
ending on April 1, 2038. That monthly payment shall continue to be due until the payment is
again changed as set forth in this paragraph.

Interest after default or maturity hereunder shall be at the rate of twenty-four percent
(24%) per annum (the "Default Rate"), and such rate shall continue after judgment until payment
of the entire sum owed hereunder. If the time for payment hereof is extended by operation of
law, interest at the rate set forth above shall be due and payable during any such extension.
Interest shall be calculated based on a 360 day year for the actual number of days elapsed
herefrom.

The term "Bank" as used herein shall include any future holder of this Note.

Payments received hereunder shall be applied first to the payment of any advances, penalties or late charges owed by or made for the account of Borrower whether pursuant to this Note or otherwise and other amounts owed as the result of any default by Borrower, then to interest due on this Note, and then to the reduction of the principal sum due. Borrower agrees to pay forthwith a late charge of five (5%) of each payment or part thereof which is not paid within fifteen (15) days of its due date. Interest shall continue to accrue at the rates provided herein on the principal balance outstanding from time to time until actually paid.

This Note may be prepaid in whole or in part at any time provided, however, that any prepayment shall be accompanied by a prepayment fee. The prepayment fee shall be calculated based upon a percentage of the principal amount prepaid in accordance with the following schedule:

| For prepayments during the following years of the loan | The applicable percentage of the amount prepaid to determine the prepayment fee is: |
|---|---|
| 1 and 6 | 5% |
| 2 and 7 | 4% |
| 3 and 8 | 3% |
| 4 and 9 | 2% |
| 5 and 10 | 1% |

If this Note is dated other than the first day of the month, no prepayment shall be permitted during the first partial calendar month and the years of this loan shall be measured beginning with the first day of the first full month after the date of this Note for the purposes of the preceding table. Any tender of payment by Borrower or any other person or entity of the indebtedness hereunder, other than expressly provided herein shall constitute a prohibited prepayment.  If a prepayment of all or any part of the indebtedness hereunder is made following (i) an event of default and an acceleration of the Maturity Date, (ii) the application of money to the principal of the Loan after a casualty or condemnation, or (iii) in connection with a purchase of the property or a repayment of the indebtedness hereunder at any time before, during or after, a judicial or non-judicial foreclosure or sale of the property, then to compensate the Bank for the loss of the investment, Borrower shall pay an amount equal to the prepayment fee.  Any partial prepayments made shall not relieve the Borrower from the obligation of making the monthly installment payment required under this Note. Any prepayments of principal shall be applied to principal due in inverse order of maturity with the last principal due to be repaid by the first prepayment.  Notwithstanding the foregoing, upon the release of any condominium unit during the term of this Note the Borrower shall pay to the Bank a one (1%) percent prepayment penalty on the amount prepaid in connection with each release.  Prepayment not made in connection with the release of any condominium unit made during the last sixty (60) days of the fifth (5th) and tenth (10th) years of this Note term shall not cause Borrower to incur a prepayment penalty.

2

**SECTION 2. SECURITY:** This Note is secured by all collateral given by Borrower to Bank pursuant to all mortgages, collateral assignments, security agreements, pledges or other similar agreements or by delivery of possession, which collateral shall include, without limitation, a Modification, Extension and Consolidation Agreement dated the date hereof on property at 11 East 36th Street, units 101, 102, 701, 801, 803, 804, 903, 904, 1003, 1004, 1103 1104, 201, 202, 203, 204, 205, 206, 306, 406, 606, 1206 and CS1-CS35, New York, New York 10016 (the "Agreement"). Any default under the Agreement shall constitute an Event of Default hereunder giving the Bank the right of acceleration as specified in Section 3 hereof. In addition, Borrower hereby gives to Bank a lien for the amount hereof on all goods, instruments, documents of title, policies and certificates of insurance, securities, chattel paper, deposits, cash or other property now or hereafter owned by the Borrower or in which it now or hereafter has an interest which may now or hereafter be in the lawful possession or control of Bank as holder, bailee, depositary, agent or otherwise or as to which Bank may now or hereafter control possession by documents of title or otherwise. Pursuant to Section 1-102(3) of the Uniform Commercial Code, the Borrower and each of them agree the following standard of care to be reasonable: (i) Bank shall have no responsibility for ascertaining any maturities, calls, conversions, exchanges, offers, tenders or similar matters relating to any collateral, nor for informing the Borrower with respect to any thereof; (ii) Bank shall not be required to sell any collateral or take any steps or action as may be requested or authorized by the Borrower unless Bank determines, in its sole discretion, that such sale or steps or action will not adversely effect the value of the collateral; (iii) Bank shall, regardless of whether or not there is then a default, be permitted to sell at public or private sale without notice to the Borrower any collateral that threatens to decline in value, and if any such sale is made upon a recognized market, it shall conclusively be deemed reasonable; and (iv) Bank need not keep collateral identifiable, nor, in the case of instruments or chattel paper, take any steps to preserve rights against prior parties.

**SECTION 3. DEFAULT:** An Event of Default shall include any failure to pay any amount due hereunder, or the failure to perform any of the terms, covenants or conditions hereof, of the Agreement, or of any mortgage, security agreement, loan agreement, promissory note, guaranty or other agreement executed by Borrower in connection with this Note or any other loan from Bank either to Borrower or upon the guaranty or collateral of Borrower; or the filing by or against the Borrower or any of them of any petition under the Bankruptcy Code or proceeding for receivership or under any insolvency, dissolution or conservation statute; or the suspension of business, commencement of liquidation, assignment for the benefit of creditors, making of any offer of settlement, extension or composition, appointment of a committee of creditors or a liquidating agent, by or for the Borrower or any of them; or the issuance of an attachment, injunction, execution, tax lien or filing of a judgment or other lien against the Borrower or any of them (except as expressly permitted in writing by Bank); or if the Borrower shall be unable to pay its, his, her or their debts as they mature in the regular course of business or if Borrower's current assets shall be less than Borrower's current liabilities; or if Bank for any reason deems itself, this Note or the security therefor insecure for any reason; or the breach of any representation or warranty made by the Borrower in any document executed in connection with this loan; or the disposition of all or any part or any interest, either legal or equitable, in any

3

collateral by the Borrower. If an Event of Default occurs, then all amounts owing under this Note shall forthwith become due and payable at the option of Bank without notice or demand.

**SECTION 4. COLLECTION AND LITIGATION:** The Borrower agrees to pay any and all costs and expenses incurred by the holder hereof in the collection of this Note or the enforcement or interpretation of any of its provisions (including attorneys fees whether or not litigation is commenced). The Borrower and each of them expressly waive any and every right to impose any counterclaim, setoff or defense in any action or proceeding brought hereunder, except for the defense of payment. This Note shall be governed by and construed in accordance with the laws of the State of New York. The Borrower agrees to submit to the jurisdiction of the Supreme Court of the State of New York and agrees that personal jurisdiction over the Borrower shall rest with such court for all purposes.

**SECTION 5. TRANSFER OF NOTE:** Bank may transfer this Note and may deliver the security or any part thereof to the transferee or transferees, who shall thereupon become vested with all the powers and rights given to Bank under the terms of any agreement executed by Borrower in connection with this Note; and Bank shall thereafter be forever relieved and fully discharged from any liability or responsibility in the matter.

**SECTION 6. COMPLETION, WAIVER AND LIABILITY:** The Borrower and all endorsers hereof waive presentment and demand for payment, notice of dishonor, protest, and notice of protest. This Note and its provisions shall apply to and bind the Borrower jointly and severally.

**SECTION 7. NOTICES AND DEMANDS:** The making of any demand, oral or written, or the giving of any notice, in any one or more instances shall not establish a course of conduct nor constitute a waiver of Bank's rights. When any notice period prior to the sale or disposition of collateral by Bank is required under the New York Uniform Commercial Code, and such notice period is not waived in any agreement between Bank and Borrower, such notice shall be deemed sufficient if sent by regular mail to the address set forth above (or at such other address as the Borrower notifies the Bank in writing) at least five (5) days prior to the time of sale or disposition, which provisions for notice the Borrower agrees are reasonable. No notice need be given with respect to collateral which is perishable or threatens to decline in value or is of a type customarily sold on a recognized market. Any notice to Bank shall be deemed effective when received at its branch, division or department conducting the transactions hereunder. The Borrower agrees that any notice to the Borrower shall be effective when sent to the Borrower at the address set forth above (or at such other address as may be given by Borrower by notice to Bank), and such notice shall be deemed to be notice to all of the Borrowers.

**SECTION 8. WAIVER OR DELAY BY BANK:** Bank shall not by any act, delay, omission or otherwise be deemed to have waived any of its rights or remedies hereunder. No waiver by Bank shall be valid unless signed by Bank. Any waiver by Bank on any occasion shall not bar any right or remedy which Bank would otherwise have had on any future occasion. The failure by Bank to insist upon strict performance of each and all of the terms and conditions hereof shall not be construed or deemed to be a waiver of any such term or condition. No executory agreement

4

unless signed by Bank and no course of dealing or oral agreement between the Borrower and Bank shall be effective to waive, modify or discharge, in whole or in part, this Note or any provision hereof. All rights and remedies of Bank shall be cumulative and may be exercised singly or concurrently.

**SECTION 9. MISCELLANEOUS:** The rights granted to Bank by Borrower hereunder are cumulative and in addition to the rights granted by every other agreement which Borrower has heretofore or may hereafter execute with and deliver to Bank, and no such agreement shall be read or construed to limit, restrict or otherwise modify in any way the rights given hereby, except as the intent to limit is expressly set forth in such agreement, and likewise no provision of this agreement shall be deemed to limit, restrict or otherwise modify in any way any rights granted to Bank by other agreement of Borrower. All agreements herein contained and contained in any such other agreement, whether typed or otherwise, shall be fully effective and fully enforceable in favor of Bank and against Borrower, except that if there be a conflict in the degree of identical items to be provided to Bank, the agreement requiring the higher or greater degree shall prevail, but if there be such conflict in the provision of items which are similar but not identical, they shall be read and interpreted separately and Borrower shall furnish all such items to Bank as required by both or all such provisions. The term "collateral" as used in this Note shall include all collateral granted herein and all other collateral given either directly or indirectly by Borrower or any guarantor pursuant to any written agreement, delivery of possession or by operation of law.

**SECTION 10. SEVERABILITY:** If any provision of this Note is found to be unenforceable by any court, then the remainder of this Note shall remain fully enforceable against the Borrower.

**SECTION 11. COMPLIANCE WITH USURY LAWS:** It is the intention of the parties to conform strictly to the usury laws, whether state or federal, to the extent that they are applicable to this Note. All agreements between Borrower and Bank, whether now existing or hereafter arising and whether oral or written, are hereby expressly limited so that in no contingency or event whatsoever, whether by acceleration of maturity hereof or otherwise, shall the amount paid or agreed to be paid to Bank or the holder hereof, or collected by Bank or such holder, on account of the principal balance hereof or otherwise, or for the payment or performance of any covenant or obligation contained herein, or related hereto, exceed the maximum amount permissible under applicable federal or state usury laws, to the extent that such laws may in fact apply to such payment or any such other covenant or obligation. If under any circumstances whatsoever fulfillment of any provision hereof or of such other covenant or obligation, at the time performance shall be due, shall involve exceeding the limit of validity prescribed by law, then the obligation to be fulfilled shall be reduced to the limit of such validity; and if under any circumstances Bank or other holder hereof shall ever receive an amount deemed interest by applicable law, which would exceed the highest lawful rate, such amount that would be excessive interest under applicable usury laws shall be applied to the reduction of the principal amount owing hereunder and not to the payment of interest, or if such excessive interest exceeds the unpaid balance of principal, the excess shall be deemed to have been a payment made by mistake and shall be refunded to Borrower or to any other person making such payment on

5

Borrower's behalf. All sums paid or agreed to be paid to the holder hereof for the use, forbearance or detention of the indebtedness of Borrower evidenced hereby, outstanding from time to time shall, to the extent permitted by applicable law, and to the extent necessary to preclude exceeding the limit of validity prescribed by law, be amortized, pro-rated, allocated and spread from the date of disbursement of the proceeds of this Note until payment in full of the loan evidenced hereby so that the actual rate of interest on account of such indebtedness is uniform throughout the term hereof and thereof. The terms and provisions of this paragraph shall control and supersede every other provision of all agreements between Borrower, any endorser or guarantor and Bank.

**SECTION 12. SUBSTITUTE NOTE:** This is a substitute note which substitutes for and supercedes (i) the note from 11 East 36th, LLC, Morgan Lofts, LLC and Bay Condos, LLC to Chinatrust Bank (U.S.A.) dated March 18, 2008 in the original amount of $3,620,000.00; (ii) the note from 11 East 36th, LLC to Chinatrust Bank (U.S.A.) dated August 18, 2006 in the original amount of $11,761,150.00; (iii) the note from 11 East 36th LLC to Grand Pacific Finance Corp., dated November 23, 2004 in the original amount of $2,300,000.00, (iv) the note from 11 East 36th LLC to Grand Pacific Finance Corp. dated August 16, 2006 in the original amount of $700,000.00, (v) the amended and restated note from 11 East 36th LLC to Grand Pacific Finance Corp. dated August 16, 2006 in the original sum of $3,000,000.00 and (vi) the amended and restated acquisition loan note from 11 East 36th, LLC to Chinatrust Bank (U.S.A.) in the original sum of $3,000,000.00 and (vii) the note from Borrower to First Central Savings Bank dated the date hereof in the original amount of $464,437.48. The debt represented by those notes is consolidated by this note but those notes shall not be deemed paid hereby.

**SECTION 13. WAIVER OF TRIAL BY JURY: Borrower and Bank hereby expressly waive any and every right to trial by jury in any action on or related to this Note.**

**SECTION 14. RIGHT OF FIRST REFUSAL.** Borrower agrees that, until the Maturity Date, it will (i) within five (5) days of receipt, provide Bank with a copy of any letter of intent or commitment letter from any other lender offering to finance or refinance the Note and (ii) grant Bank the right of first refusal to match the financial terms of such offer from such lender(s). If Bank, within five (5) days of receipt by it of a copy of such letter of intent or commitment letter, informs Borrower that it will meet the financial terms of such offer(s), then the financial terms of the existing financing arrangement will be amended so that they match the terms offered by the other lender. The Bank is not obligated to meet such terms, however, and, if it declines to do so, its decision will not relieve the Borrower from its obligations under this Note and all other Loan Documents in effect between it and the Bank. If the Bank declines to meet such terms of any letter of intent or commitment letter from any other lender and provided the Borrower is not then in default under this Note or the Loan Documents the Bank will prepare an assignment of this Note and Mortgage at the request of the Borrower and Borrower shall be obligated to pay all fees, costs, expenses including but not limited to attorneys fees in connection with such assignment.

6

**SECTION 15. INTEREST RATE INCREASE**: The interest rate under this Note shall increase to sixteen percent (16%) if the Borrower or any guarantor of this Note fails to deliver to the Bank their annual tax returns or certified financial statements as set forth more particularly in paragraph 34 of the modification agreement executed simultaneously herewith. The rate of interest applicable under the Note will be reinstated, effective on the first day of the following month of the Note term after the Borrower or any guarantor of this Note delivers the required tax returns or financial statements to the Bank.

**SECTION 16. CONTINUATION FEE**: Borrower shall pay to Bank not less than thirty (30) days prior to the fifth (5th) anniversary date of this Note a continuation fee of 0.500% of the principal balance then outstanding on the Note to continue the Note through the Maturity Date (the "Continuation Fee").

**11 East 36th, LLC, a New York Limited Liability Company**

By: **Madison Condos, LLC, its Sole Member**

By: **Bluebell Assets, LLC its Managing Member**

By: _____
   **Ben Bobker, Sole Member**

**Morgan Lofts, LLC, a New York Limited Liability Company**

By: **11 East 36th LLC, its Sole Member**

By: **Madison Condos, LLC, its Sole Member**

By: **Bluebell Assets, LLC, its Managing Member**
By: _____
   **Ben Bobker, Sole Member**

7

Bay Condos, LLC, a New York Limited
Liability Company

By: Hancock Park, LLC its Manager

By: _____

Name: Avi Bobker
Title: Managing Member


STATE OF NEW YORK          )
                           ) ss:
COUNTY OF New York         )

On the 20th day of March in the year 2008 before me, the undersigned, personally
appeared **Ben Bobker**, personally known to me or proved to me on the basis of satisfactory
evidence to be the individual whose name is subscribed to the within instrument and
acknowledged to me that he executed the same in his capacity, and that by his signature on the
instrument, the individual, or the person upon behalf of which the individual acted, executed the
instrument.

_____
Notary Public

PATRICIA J. McCARTHY
NOTARY PUBLIC, State of New York
No. 30-4840587
Qualified in Nassau County
Commission Expires November 30, 2009

STATE OF NEW YORK          )
                           ) ss:
COUNTY OF New York         )

On the 20th day of March in the year 2008 before me, the undersigned, personally
appeared **Avi Bobker**, personally known to me or proved to me on the basis of satisfactory
evidence to be the individual whose name is subscribed to the within instrument and
acknowledged to me that he executed the same in his capacity, and that by his signature on the
instrument, the individual, or the person upon behalf of which the individual acted, executed the
instrument.

_____
Notary Public

PATRICIA J. McCARTHY
NOTARY PUBLIC, State of New York
No. 30-4840587
Qualified in Nassau County
Commission Expires November 30, 2009

8

Exhibit D

# NYC DEPARTMENT OF FINANCE
## OFFICE OF THE CITY REGISTER

This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument. The information on this page will control for indexing purposes in the event of any conflict with the rest of the document.



2008032800445019003E30CC

| **RECORDING AND ENDORSEMENT COVER PAGE** | | **PAGE 1 OF 36** |
|---|---|---|
| Document ID: **2008032800445019** | Document Date: 03-20-2008 | Preparation Date: 04-22-2008 |
| Document Type: AGREEMENT | | |
| Document Page Count: 30 | | |

| PRESENTER: | RETURN TO: |
|---|---|
| C.L.E. ABSTRACT SERVICES PICKUP - GAIL | IVAN SERCHUK, ESQ. |
| 121 WEST OAK STREET | TODTMAN NACHAMIE SPIZZ & JOHNS, P.C. |
| FIDELITY NATIONAL - 2735CNY- KP | 425 PARK AVENUE |
| AMITYVILLE, NY  11701 | NEW YORK, NY  10022 |
| 631-598-2200 | |
| karenj@ultimateabstract.com | |

## PROPERTY DATA

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| MANHATTAN | 866 | 1202 | Entire Lot | 101 | 11 EAST 36TH  STREET |

**Property Type:** COMMERCIAL CONDO UNIT(S)

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| MANHATTAN | 866 | 1203 | Entire Lot | 102 | 11 EAST 36TH  STREET |

**Property Type:** COMMERCIAL CONDO UNIT(S)

x   Additional Properties on Continuation Page

## CROSS REFERENCE DATA

Document ID:  2008032800445019

x   Additional  Cross References on Continuation Page

## PARTIES

| PARTY 1: | PARTY 2: |
|---|---|
| FIRST CENTRAL SAVINGS BANK | 11 EAST 36TH, LLC |
| 70 GLEN STREET | C/O THE BOBKER GROUP, 11 EAST 36TH STREET |
| GLEN COVE, NY  11542 | STE 1101 |
| | NEW YORK, NY  10016 |
| x   Additional  Parties Listed on Continuation Page | |

## FEES AND TAXES

| Mortgage | | | Filing Fee: | |
|---|---|---|---|---|
| Mortgage Amount: | $ | 10,000,000.00 | | $ | 0.00 |
| Taxable Mortgage Amount: | $ | 0.00 | NYC Real Property Transfer Tax: | |
| Exemption: | | 255 | | $ | 0.00 |
| TAXES:  County (Basic): | $ | 0.00 | NYS Real Estate Transfer Tax: | |
| City (Additional): | $ | 0.00 | | $ | 0.00 |
| Spec (Additional): | $ | 0.00 | | |
| TASF: | $ | 0.00 | | |
| MTA: | $ | 0.00 | | |
| NYCTA: | $ | 0.00 | | |
| Additional  MRT: | $ | 0.00 | | |
| TOTAL: | $ | 0.00 | | |
| Recording Fee: | $ | 355.00 | | |
| Affidavit Fee: | $ | 8.00 | | |

**RECORDED OR FILED IN THE OFFICE OF THE CITY REGISTER OF THE CITY OF NEW YORK**

Recorded/Filed    05-27-2008 16:21
City Register File No.(CRFN):
**2008000213148**

*Annette M. Hill*

*City Register Official Signature*

| | | | | |
|---|---|---|---|---|
| NYC DEPARTMENT OF FINANCE<br>OFFICE OF THE CITY REGISTER | | | | |



**2008032800445019003C324C**

Document ID: 2008032800445019    Document Date: 03-20-2008    Preparation Date: 04-22-2008
Document Type: AGREEMENT

## PROPERTY DATA

| Borough | Block | Lot | | Unit | Address |
|---|---|---|---|---|---|
| MANHATTAN | 866 | 1204 | Entire Lot | 201 | 11 EAST 36TH STREET |
| Property Type: SINGLE RESIDENTIAL CONDO UNIT | | | | | |
| MANHATTAN | 866 | 1205 | Entire Lot | 202 | 11 EAST 36TH STREET |
| Property Type: SINGLE RESIDENTIAL CONDO UNIT | | | | | |
| MANHATTAN | 866 | 1206 | Entire Lot | 203 | 11 EAST 36TH STREET |
| Property Type: SINGLE RESIDENTIAL CONDO UNIT | | | | | |
| MANHATTAN | 866 | 1207 | Entire Lot | 204 | 11 EAST 36TH STREET |
| Property Type: SINGLE RESIDENTIAL CONDO UNIT | | | | | |
| MANHATTAN | 866 | 1208 | Entire Lot | 205 | 11 EAST 36TH STREET |
| Property Type: SINGLE RESIDENTIAL CONDO UNIT | | | | | |
| MANHATTAN | 866 | 1209 | Entire Lot | 206 | 11 EAST 36TH STREET |
| Property Type: SINGLE RESIDENTIAL CONDO UNIT | | | | | |
| MANHATTAN | 866 | 1215 | Entire Lot | 306 | 11 EAST 36TH STREET |
| Property Type: SINGLE RESIDENTIAL CONDO UNIT | | | | | |
| MANHATTAN | 866 | 1220 | Entire Lot | 406 | 11 EAST 36TH STREET |
| Property Type: SINGLE RESIDENTIAL CONDO UNIT | | | | | |
| MANHATTAN | 866 | 1232 | Entire Lot | 606 | 11 EAST 36TH STREET |
| Property Type: SINGLE RESIDENTIAL CONDO UNIT | | | | | |
| MANHATTAN | 866 | 1233 | Entire Lot | 701 | 11 EAST 36TH STREET |
| Property Type: SINGLE RESIDENTIAL CONDO UNIT | | | | | |
| MANHATTAN | 866 | 1239 | Entire Lot | 801 | 11 EAST 36TH STREET |
| Property Type: SINGLE RESIDENTIAL CONDO UNIT | | | | | |
| MANHATTAN | 866 | 1241 | Entire Lot | 803 | 11 EAST 36TH STREET |
| Property Type: SINGLE RESIDENTIAL CONDO UNIT | | | | | |
| MANHATTAN | 866 | 1242 | Entire Lot | 804 | 11 EAST 36TH STREET |
| Property Type: SINGLE RESIDENTIAL CONDO UNIT | | | | | |
| MANHATTAN | 866 | 1247 | Entire Lot | 903 | 11 EAST 36TH STREET |
| Property Type: SINGLE RESIDENTIAL CONDO UNIT | | | | | |



**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**

2008032800445019003C324C

**RECORDING AND ENDORSEMENT COVER PAGE (CONTINUATION)   PAGE 3 OF 36**

| | |
|---|---|
| Document ID: 2008032800445019 | Document Date: 03-20-2008 | Preparation Date: 04-22-2008 |

Document Type: AGREEMENT

**PROPERTY DATA**

| Borough | Block | Lot | | Unit | Address |
|---|---|---|---|---|---|
| MANHATTAN | 866 | 1248 | Entire Lot | 904 | 11 EAST 36TH STREET |

Property Type: SINGLE RESIDENTIAL CONDO UNIT

| Borough | Block | Lot | | Unit | Address |
|---|---|---|---|---|---|
| MANHATTAN | 866 | 1253 | Entire Lot | 1003 | 11 EAST 36TH STREET |

Property Type: SINGLE RESIDENTIAL CONDO UNIT

| Borough | Block | Lot | | Unit | Address |
|---|---|---|---|---|---|
| MANHATTAN | 866 | 1254 | Entire Lot | 1004 | 11 EAST 36TH STREET |

Property Type: SINGLE RESIDENTIAL CONDO UNIT

| Borough | Block | Lot | | Unit | Address |
|---|---|---|---|---|---|
| MANHATTAN | 866 | 1259 | Entire Lot | 1103 | 11 EAST 36TH STREET |

Property Type: SINGLE RESIDENTIAL CONDO UNIT

| Borough | Block | Lot | | Unit | Address |
|---|---|---|---|---|---|
| MANHATTAN | 866 | 1260 | Entire Lot | 1104 | 11 EAST 36TH STREET |

Property Type: SINGLE RESIDENTIAL CONDO UNIT

| Borough | Block | Lot | | Unit | Address |
|---|---|---|---|---|---|
| MANHATTAN | 866 | 1268 | Entire Lot | 1206 | 11 EAST 36TH STREET |

Property Type: SINGLE RESIDENTIAL CONDO UNIT

| Borough | Block | Lot | | Unit | Address |
|---|---|---|---|---|---|
| MANHATTAN | 866 | 1271 | Entire Lot | CS1 | 11 EAST 36TH STREET |

Property Type: STORAGE ROOM

| Borough | Block | Lot | | Unit | Address |
|---|---|---|---|---|---|
| MANHATTAN | 866 | 1272 | Entire Lot | CS2 | 11 EAST 36TH STREET |

Property Type: STORAGE ROOM

| Borough | Block | Lot | | Unit | Address |
|---|---|---|---|---|---|
| MANHATTAN | 866 | 1273 | Entire Lot | CS3 | 11 EAST 36TH STREET |

Property Type: STORAGE ROOM

| Borough | Block | Lot | | Unit | Address |
|---|---|---|---|---|---|
| MANHATTAN | 866 | 1274 | Entire Lot | CS4 | 11 EAST 36TH STREET |

Property Type: STORAGE ROOM

| Borough | Block | Lot | | Unit | Address |
|---|---|---|---|---|---|
| MANHATTAN | 866 | 1275 | Entire Lot | CS5 | 11 EAST 36TH STREET |

Property Type: STORAGE ROOM

| Borough | Block | Lot | | Unit | Address |
|---|---|---|---|---|---|
| MANHATTAN | 866 | 1276 | Entire Lot | CS6 | 11 EAST 36TH STREET |

Property Type: SINGLE RESIDENTIAL CONDO UNIT

| Borough | Block | Lot | | Unit | Address |
|---|---|---|---|---|---|
| MANHATTAN | 866 | 1277 | Entire Lot | CS7 | 11 EAST 36TH STREET |

Property Type: STORAGE ROOM

| Borough | Block | Lot | | Unit | Address |
|---|---|---|---|---|---|
| MANHATTAN | 866 | 1278 | Entire Lot | CS8 | 11 EAST 36TH STREET |

Property Type: STORAGE ROOM

| NYC DEPARTMENT OF FINANCE<br>OFFICE OF THE CITY REGISTER |  |
|---|---|

2008032800445019003C324C

| **RECORDING AND ENDORSEMENT COVER PAGE (CONTINUATION)** | | **PAGE 4 OF 36** |
|---|---|---|
| Document ID: 2008032800445019 | Document Date: 03-20-2008 | Preparation Date: 04-22-2008 |
| Document Type: AGREEMENT | | |

**PROPERTY DATA**

| Borough | Block | Lot | | Unit | Address |
|---|---|---|---|---|---|
| MANHATTAN | 866 | 1279 | Entire Lot | CS9 | 11 EAST 36TH STREET |
| **Property Type:** STORAGE ROOM | | | | | |
| Borough | Block | Lot | | Unit | Address |
| MANHATTAN | 866 | 1280 | Entire Lot | CS10 | 11 EAST 36TH STREET |
| **Property Type:** STORAGE ROOM | | | | | |
| Borough | Block | Lot | | Unit | Address |
| MANHATTAN | 866 | 1281 | Entire Lot | CS11 | 11 EAST 36TH STREET |
| **Property Type:** STORAGE ROOM | | | | | |
| Borough | Block | Lot | | Unit | Address |
| MANHATTAN | 866 | 1282 | Entire Lot | CS12 | 11 EAST 36TH STREET |
| **Property Type:** STORAGE ROOM | | | | | |
| Borough | Block | Lot | | Unit | Address |
| MANHATTAN | 866 | 1283 | Entire Lot | CS13 | 11 EAST 36TH STREET |
| **Property Type:** STORAGE ROOM | | | | | |
| Borough | Block | Lot | | Unit | Address |
| MANHATTAN | 866 | 1284 | Entire Lot | CS14 | 11 EAST 36TH STREET |
| **Property Type:** STORAGE ROOM | | | | | |
| Borough | Block | Lot | | Unit | Address |
| MANHATTAN | 866 | 1285 | Entire Lot | CS15 | 11 EAST 36TH STREET |
| **Property Type:** STORAGE ROOM | | | | | |
| Borough | Block | Lot | | Unit | Address |
| MANHATTAN | 866 | 1286 | Entire Lot | CS16 | 11 EAST 36TH STREET |
| **Property Type:** STORAGE ROOM | | | | | |
| Borough | Block | Lot | | Unit | Address |
| MANHATTAN | 866 | 1287 | Entire Lot | CS17 | 11 EAST 36TH STREET |
| **Property Type:** STORAGE ROOM | | | | | |
| Borough | Block | Lot | | Unit | Address |
| MANHATTAN | 866 | 1288 | Entire Lot | CS18 | 11 EAST 36TH STREET |
| **Property Type:** STORAGE ROOM | | | | | |
| Borough | Block | Lot | | Unit | Address |
| MANHATTAN | 866 | 1289 | Entire Lot | CS19 | 11 EAST 36TH STREET |
| **Property Type:** STORAGE ROOM | | | | | |
| Borough | Block | Lot | | Unit | Address |
| MANHATTAN | 866 | 1290 | Entire Lot | CS20 | 11 EAST 36TH STREET |
| **Property Type:** STORAGE ROOM | | | | | |
| Borough | Block | Lot | | Unit | Address |
| MANHATTAN | 866 | 1291 | Entire Lot | CS21 | 11 EAST 36TH STREET |
| **Property Type:** STORAGE ROOM | | | | | |
| Borough | Block | Lot | | Unit | Address |
| MANHATTAN | 866 | 1292 | Entire Lot | CS22 | 11 EAST 36TH STREET |
| **Property Type:** STORAGE ROOM | | | | | |

<table>
<tr><td><strong>NYC DEPARTMENT OF FINANCE<br>OFFICE OF THE CITY REGISTER</strong></td><td></td></tr>
</table>

2008032800445019003C324C

## RECORDING AND ENDORSEMENT COVER PAGE (CONTINUATION)   PAGE 5 OF 36

| | | |
|---|---|---|
| **Document ID:** 2008032800445019 | Document Date: 03-20-2008 | Preparation Date: 04-22-2008 |

Document Type: AGREEMENT

---

**PROPERTY DATA**

| Borough | Block | Lot | | Unit | Address |
|---------|-------|-----|--|------|---------|
| MANHATTAN | 866 | 1293 | Entire Lot | CS23 | 11 EAST 36TH STREET |

Property Type: STORAGE ROOM

| Borough | Block | Lot | | Unit | Address |
|---------|-------|-----|--|------|---------|
| MANHATTAN | 866 | 1294 | Entire Lot | CS24 | 11 EAST 36TH STREET |

Property Type: STORAGE ROOM

| Borough | Block | Lot | | Unit | Address |
|---------|-------|-----|--|------|---------|
| MANHATTAN | 866 | 1295 | Entire Lot | CS25 | 11 EAST 36TH STREET |

Property Type: STORAGE ROOM

| Borough | Block | Lot | | Unit | Address |
|---------|-------|-----|--|------|---------|
| MANHATTAN | 866 | 1296 | Entire Lot | CS26 | 11 EAST 36TH STREET |

Property Type: STORAGE ROOM

| Borough | Block | Lot | | Unit | Address |
|---------|-------|-----|--|------|---------|
| MANHATTAN | 866 | 1297 | Entire Lot | CS27 | 11 EAST 36TH STREET |

Property Type: STORAGE ROOM

| Borough | Block | Lot | | Unit | Address |
|---------|-------|-----|--|------|---------|
| MANHATTAN | 866 | 1298 | Entire Lot | CS28 | 11 EAST 36TH STREET |

Property Type: STORAGE ROOM

| Borough | Block | Lot | | Unit | Address |
|---------|-------|-----|--|------|---------|
| MANHATTAN | 866 | 1299 | Entire Lot | CS29 | 11 EAST 36TH STREET |

Property Type: STORAGE ROOM

| Borough | Block | Lot | | Unit | Address |
|---------|-------|-----|--|------|---------|
| MANHATTAN | 866 | 1300 | Entire Lot | CS30 | 11 EAST 36TH STREET |

Property Type: STORAGE ROOM

| Borough | Block | Lot | | Unit | Address |
|---------|-------|-----|--|------|---------|
| MANHATTAN | 866 | 1301 | Entire Lot | CS31 | 11 EAST 36TH STREET |

Property Type: STORAGE ROOM

| Borough | Block | Lot | | Unit | Address |
|---------|-------|-----|--|------|---------|
| MANHATTAN | 866 | 1302 | Entire Lot | CS32 | 11 EAST 36TH STREET |

Property Type: STORAGE ROOM

| Borough | Block | Lot | | Unit | Address |
|---------|-------|-----|--|------|---------|
| MANHATTAN | 866 | 1303 | Entire Lot | CS33 | 11 EAST 36TH STREET |

Property Type: STORAGE ROOM

| Borough | Block | Lot | | Unit | Address |
|---------|-------|-----|--|------|---------|
| MANHATTAN | 866 | 1304 | Entire Lot | CS34 | 11 EAST 36TH STREET |

Property Type: STORAGE ROOM

| Borough | Block | Lot | | Unit | Address |
|---------|-------|-----|--|------|---------|
| MANHATTAN | 866 | 1305 | Entire Lot | CS35 | 11 EAST 36TH STREET |

Property Type: STORAGE ROOM

---

**CROSS REFERENCE DATA**
CRFN: 2007000205936
**Document ID:** 2008032800445016

| **NYC DEPARTMENT OF FINANCE**<br>**OFFICE OF THE CITY REGISTER** |  |
|---|---|

<div align="center">2008032800445019003C324C</div>

| **RECORDING AND ENDORSEMENT COVER PAGE (CONTINUATION)** | | **PAGE 6 OF 36** |
|---|---|---|
| **Document ID: 2008032800445019** | Document Date: 03-20-2008 | Preparation Date: 04-22-2008 |
| **Document Type: AGREEMENT** | | |

**CROSS REFERENCE DATA**
**CRFN:** 2006000675701
**CRFN:** 2005000415069

**PARTIES**

| **PARTY 2:** | **PARTY 2:** |
|---|---|
| MORGAN LOFTS LLC | BAY CONDOS, LLC |
| C/O THE BOBKER GROUP, 11 EAST 36TH STREET | C/O THE BOBKER GROUP, 11 EAST 36TH STREET |
| STE 1101 | STE 1101 |
| NEW YORK, NY 10016 | NEW YORK, NY 10016 |

Modification, Extension and Consolidation Agreement

TITLE NO.: 2735CNY

## 11 East 36th, LLC, Morgan Lofts, LLC and Bay Condos, LLC

To

## First Central Savings Bank

| | |
|---|---|
| Address: | 11 East 36th Street, units 101, 102, 701, 801, 803, 804, 903, 904, 1003, 1004, 1103 1104, 201,202,203, 204, 205, 206, 306, 406, 606, 1206 and CS1-CS35, New York, New York 10016 |
| Section: | 3 |
| Block: | 866 |
| Lot(s): | 1202, 1203, 1204, 1205, 1206, 1207, 1208, 1209, 1215, 1220, 1232, 1233, 1239, 1241, 1242, 1247, 1248, 1253, 1254, 1259, 1260, 1268, 1271-1305 |
| County: | New York |
| City: | New York |

***RECORD AND RETURN BY MAIL TO:***
**Ivan Serchuk, Esq.**
**Todtman, Nachamie, Spizz & Johns, P.C.**
**425 Park Avenue**
**New York, New York 10022**
**(212) 754-9400**

30

## MODIFICATION, EXTENSION AND CONSOLIDATION AGREEMENT

This Agreement (referred to below as "this Agreement") is made this 20th day of March, 2008, by and between

> **First Central Savings Bank**
> 70 Glen Street
> Glen Cove, New York 11542

the "Mortgagee", and

> **11 East 36th, LLC,**
> **Morgan Lofts, LLC and**
> **Bay Condos, LLC**
> 11 EAST 36TH STREET, SUITE 1101
> NEW YORK, NEW YORK

the "Mortgagor".

**WITNESSETH:**

**WHEREAS,** the Mortgagee is the owner and holder of the following mortgages and the bonds or notes secured thereby:

1)     Original named mortgagor: 11 East 36th LLC and Carnegie Holdings LLC
   Original named mortgagee: Chinatown Bank (U.S.A.)
   Dated: March 28, 2007
   Original principal amount of: $4,500,000.00
   Recorded in the office of: New York City Register, New York County
   Recording Date: April 20, 2007
   CRFN No. 2007000205936

   Which mortgage was severed and split by mortgage splitter agreement dated March 18, 2008 between 11 East 36th, LLC, Morgan Lofts, LLC and Bay Condos, LLC and Chinatrust Bank (U.S.A.) into two separate mortgages Substitute Mortgage A in the reduced principal sum of $3,620,000.00 and Substitute Mortgage B in the reduced principal sum of $880,000.00.

2)     Original named mortgagor: 11 East 36th, LLC, Morgan Lofts, LLC and Bay Condos, LLC
   Original named mortgagee: Chinatrust Bank (U.S.A.)
   Dated: March 18, 2008
   Original principal amount: $3,620,000.00
   To be recorded in the New York City Registers Office immediately prior hereto.

   Which mortgage 2 in the reduced principal balance of $3,620,000.00 is being assigned by Chinatrust Bank (U.S.A.) to First Central Savings Bank by assignment dated March 18,

2008 to be immediately recorded prior hereto with the New York City Register, New York County.

3)   Original named mortgagor: 11 East 36th, LLC and Carnegie Holdings LLC
     Original named mortgagee: Chinatrust Bank (U.S.A.)
     Dated: August 18, 2006
     Original principal amount: 11,761,150.00
     Recorded in the office of: New York City Register, New York County
     Recording date: 12/08/06
     CRFN No. 2006000675701

     Which mortgage in the reduced principal balance of $ 2,915,562.52 is being assigned by Chinatrust Bank (U.S.A.) to First Central Savings Bank by assignment dated March 18, 2008 to be immediately recorded prior hereto with the New York City Register, New York County.

4)   Original named mortgagor: 11 East 36th, LLC and Carnegie Holdings LLC
     Original named mortgagee: Grand Pacific Finance Corp.
     Dated: November 23, 2004
     Original principal amount: 2,300,000.00
     Recorded in the office of: New York City Register, New York County
     Recording date: July 25, 2005
     CRFN No. 2005000415069

Which mortgage by its terms was modified consolidated and extended by Mortgage, Assignment of Leases and Rents, security Agreement and Fixture Filing, Consolidation, Modification and Extension Agreement dated August 16, 2006 between 11 East 36th, LLC and Carnegie Holdings LLC and Grand Pacific Finance Corp., in the consolidated amount of $3,000,000.00 recorded on December 8, 2006 with the New York City Register in CRFN No. 2006000675708.

Which mortgage (4) as consolidated was thereafter assigned by Grand Pacific Finance Corp. to Chinatrust Bank (U.S.A.) by assignment dated March 28, 2007 recorded in the New York City Register on April 20, 2007 in CRFN No. 2007000205934.

Which mortgage was thereafter modified, amended and restated by Amended and Restated Acquisition Loan Mortgage in the principal sum of $3,000,000.00 between 11 East 36, LLC, Carnegie Holdings LLC and Chinatrust Bank (U.S.A.) dated March 28, 2007 recorded in the New York City Register on April 20, 2007 in CRFN No. 2007000205935.

Which mortgage 4 in the reduced principal balance of $3,000,000.00 is being assigned by Chinatrust Bank (U.S.A.) to First Central Savings Bank by assignment dated March 18, 2008 and intended to be recorded in the City Register's Office, New York County, immediately prior hereto.

2

4)   Mortgage from Mortgagor to Mortgagee dated the date hereof in the original principal amount of $464,437.48 and intended to be recorded in the City Register's office in the County of New York, immediately prior hereto.

(all of such mortgages being collectively referred to herein as the "Mortgages");

AND on which bonds or notes and Mortgages there is now due and owing the principal sum of Ten Million Dollars ($10,000,000.00) with interest thereon from the date hereof;

AND the Mortgagor and the Mortgagee hereby agree that the liens of the Mortgages are hereby spread so that they shall all cover all of the premises described on Schedule A annexed hereto and made a part hereof,

AND the Mortgagor and the Mortgagee do hereby covenant and agree that the liens of the Mortgages are hereby consolidated and coordinated so that together they shall hereafter constitute in law but one first mortgage, a single lien (hereinafter referred to, together with the liens referenced in the following three paragraphs, as the "Lien") upon all of the property set forth on Schedule A annexed hereto and made a part hereof (referred to herein as the "Premises");

AND the Mortgagor and Mortgagee do further agree that the Mortgages as consolidated hereby shall also be a lien upon all right, title and interest of the Mortgagor in and to the land lying in the streets and roads in front of and adjoining said Premises;

AND also a lien upon all fixtures, chattels and articles of personal property now or hereafter attached to or used in connection with said premises, including but not limited to furnaces, boilers, oil burners, radiators and piping, coal stokers, plumbing and bathroom fixtures, refrigeration, air conditioning and sprinkler systems, wash-tubs, sinks, gas and electric fixtures, stoves, ranges, awnings, screens, window shades, elevators, motors, dynamos, refrigerators, kitchen cabinets, incinerators, plants and shrubbery and all other equipment and machinery, appliances, fittings, and fixtures of every kind in or used in the operation of the buildings standing on said Premises, together with any and all replacements thereof and additions thereto;

AND also a lien upon all awards heretofore and hereafter made to the Mortgagor for taking by eminent domain the whole or any part of said Premises or any easement therein, including any awards for changes of grade of streets, which said awards are hereby assigned to the Mortgagee, who is hereby authorized to collect and receive the proceeds of such awards and to give proper receipts and acquittances therefor, and to apply the same toward the payment of the Indebtedness, as hereinafter defined, notwithstanding the fact that the amount owing thereon may not then be due and payable; and the said Mortgagor hereby agrees, upon request, to make, execute and deliver any and all assignments and other instruments sufficient for the purpose of assigning said awards to the Mortgagee, free, clear and discharged of any encumbrances of any kind or nature whatsoever.

3

**AND** the Mortgagor and the Mortgagee do further agree that said principal sum in the amount of $10,000,000.00 shall be secured by the Mortgages and this Agreement and by the Lien and that the repayment of said principal sum is hereby extended and modified so that it shall be payable in installments, with interest at the rate of 6.375% per annum through April 1, 2013, and with the interest rate on said principal sum to adjust on such date until April 1, 2018, when the entire principal balance plus interest thereon shall be due and payable, all in accordance with the terms and conditions of a Substitute Promissory Note (the "Note") from the Mortgagor to the Mortgagee of even date herewith.

**PROVIDED, HOWEVER**, that the Mortgagor shall comply with all the terms, covenants and conditions of said notes and Mortgages hereinabove mentioned, as modified hereby and shall also comply with all the terms, covenants and conditions contained herein and in said Substitute Promissory Note,

**AND IN CONSIDERATION THEREOF**, the Mortgagor does hereby assume, covenant and agree to pay said principal sum and interest as above set forth,

**AND** the Mortgagor does further covenant with the Mortgagee and agree as follows:

1.    **Warranties**:  Mortgagor warrants and certifies to Mortgagee as follows:

    (a)    The full amount of principal and accrued interest now owing on the Mortgages consolidated hereby and on the Note is Ten Million Dollars ($10,000,000.00) (the unpaid balance of which, from time to time, including accrued but unpaid interest, and all other amounts due and owing from Mortgagor to Mortgagee under the Note and this Agreement are sometimes referred to in this Agreement as the "Indebtedness").

    (b)    There are no defenses, counterclaims, cross-claims or other claims, demands or offsets of any nature whatsoever which can be asserted to: (i) reduce or eliminate all or any part of Mortgagor's liability under the Note or (ii) seek affirmative relief or damages from Mortgagee.

    (c)    All of the provisions of the Note, this Agreement and the Mortgages, and any guaranty thereof are in full force and effect.

    (d)    Any and all liens and security interests in real and personal property held by the Mortgagee to secure all or any part of the Indebtedness are first priority liens or security interests, in full force and effect, and there are no defenses to such liens or security interests.

    (e)    Neither the Mortgagor nor any guarantor has (i) filed a petition seeking relief under any provision of any bankruptcy, reorganization, arrangement or dissolution law of any jurisdiction; (ii) made any assignments for the benefit of creditors; (iii) had a receiver, custodian, liquidator or trustee appointed by court order; or (iv) failed to pay, or admitted in writing an inability to pay debts, generally as they have become due.

4

(f)    Each Mortgagor is a limited liability company duly organized under the laws of the State of New York each with the full power and authority to own and operate the Premises. The execution and delivery of this Agreement, the Note and any building loan agreement, security agreement or other agreement purporting to be executed by Mortgagor in connection with the Note or the loan evidenced thereby (collectively referred to herein as the "Loan Documents") have been duly authorized by Mortgagor and all of the Loan Documents constitute the valid and binding obligations of the Mortgagor, enforceable in accordance with their terms.

(g)    The Mortgagor does further covenant that the Mortgagor will pay the Indebtedness, as hereinbefore provided, and as set forth herein and in the Note.

(h)    It is not, and, after making due inquiry, no person who owns a controlling interest in or otherwise controls Mortgagor is, (i) listed on the Specially Designed Nationals and Blocked Persons List maintained by the U.S. Treasury Department Office of Foreign Assets Control ("OFAC"), and/or on any other similar list maintained by the OFAC pursuant to any authorizing statute, Executive Order or regulation; or (ii) a person either (A) included within the term "designated national" as defined in the Cuban Assets Control Regulations, 31 C.F.R. Part 515, or (B) designated under Sections 1(a), 1(b), 1(c) or 1(d) of Executive Order No. 13224, 66 Fed. Reg. 49079 (published September 25, 2001) or similarly designated under any related enabling legislation or any other similar Executive Orders.

(i)    It has taken reasonable measures appropriate to the circumstances (and in any event as required by law), with respect to each holder of a direct or indirect interest in Mortgagor, to assure that funds invested by such holders in Mortgagor are derived from legal sources.

(j)    To its actual knowledge after making due inquiry, neither Mortgagor nor any holder of a direct or indirect interest in Mortgagor (i) is under investigation by any governmental authority for, or has been charged with, or convicted of, money laundering under 18 U.S.C. §§ 1956 and 1957, drug trafficking, terrorist-related activities or other money laundering predicate crimes, or any violation of the Bank Secretary Act, 31 U.S.C. §§ 5311 et seq. (ii) has been assessed civil penalties under and anti-money laundering laws, or (iii) has had any of its funds seized or forfeited in an action under any anti-money laundering laws.

(k)    It has taken reasonable measures appropriate to the circumstances (in any event as required by law), to ensure that Mortgagor is in compliance with all current and future anti-money laundering laws and laws, regulations and government guidance for the prevention of terrorism, terrorist financing and drug trafficking.

2.    **Partial Payment.** If the Mortgagee shall receive from or on behalf of the Mortgagor any sum less than the full amount then due and payable, the Mortgagee may, but shall

5

not be obligated to, accept the same (regardless of any endorsement or condition expressed by Mortgagor with respect to such partial payment) and if it elects to accept any such payment, it may hold the same or any part thereof, without liability for interest, in a special account and it may from time to time apply the same or any part thereof to the Indebtedness or to the payment of any taxes, assessments, sewer or water charges or insurance premiums desirable to maintain the Lien or to any expenses, including costs and reasonable attorneys' fees and disbursements, incurred by the Mortgagee in attempting to collect any amount owing on the Indebtedness and in bringing foreclosure proceedings with respect to this Agreement. The acceptance of partial payment shall in no way waive any right of Mortgagee to insist upon the full payment of all amounts due and owing. The acceptance of partial payments after default, acceleration or maturity by the Mortgagee shall not waive such default or acceleration, extend the maturity or reinstate the ability of the Mortgagor to pay the Note in installments.

3.    **Insurance.** (a) The Mortgagor will keep the buildings on the Premises insured against loss by fire for the benefit of the Mortgagee; the Mortgagor will assign and deliver the policies to the Mortgagee; and the Mortgagor will reimburse the Mortgagee for any premiums paid for insurance made by the Mortgagee on the Mortgagor's default in so insuring the buildings or in so assigning and delivering the policies. All renewal policies shall be delivered, and premiums paid, at least ten (10) days before the expiration of the prior insurance policy. Anything herein to the contrary notwithstanding, no duty to maintain such insurance shall be implied against or imposed on the Mortgagee. Fire insurance shall equal not less than the greater of (i) 100% of the full insurable value of the buildings and improvements on the Premises or (ii) the remaining balance of the Indebtedness. Mortgagor shall carry such additional insurance as Mortgagee shall request, including but not limited to, war risk, business interruption or, if Mortgagor undertakes any form of rehabilitation or reconstruction of the Premises, builder's risk insurance. Mortgagor shall also at all times maintain general liability insurance covering its operations in an amount not less than $1,000,000 per occurrence, $2,000,000 aggregate, with reasonable deductibles, naming the Mortgagee as an additional insured. All insurance carriers are subject to prior approval of Mortgagee.

(b)    If the Mortgagee by reason of such insurance receives any money for loss or damage, then the Mortgagee shall have the right in its sole discretion either to apply the proceeds of such insurance in reduction of the amount owed under the Note and this Agreement, or in lieu thereof to allow the provisions of Section 254 of the New York Real Property Law to apply to the determination of whether and how such proceeds shall be available to the Mortgagor. The Mortgagee shall not be obligated to see to the proper application of any amount paid over to the Mortgagor, and if the Mortgagee receives and retains insurance money for loss or damage to the Premises, the Lien shall be reduced only by the amount of such insurance money received and retained by the Mortgagee. If any provision under this paragraph shall be interpreted by a court of competent jurisdiction as an unlawful waiver of any statutory right of a third party, then such provision shall be deemed ineffective.

6

(c)    All policies of insurance, including the unearned premiums paid thereon, are hereby assigned to the Mortgagee as further security for the Indebtedness and the Lien shall continue as a lien against the proceeds of any such insurance.

(d)    On Mortgagee's demand, Mortgagor will deliver to Mortgagee a certificate of adequacy or other proof acceptable to Mortgagee showing that the fire or any other insurance coverage is equal to the percentage of insurable value so required.

(e)    All insurance policies shall be in such form and amount, and with such carriers, as is satisfactory to Mortgagee.

(f)    All fire insurance policies shall contain the usual extended coverage endorsement.

(g)    Mortgagor shall notify Mortgagee within fourteen (14) days of the occurrence of any event giving rise to a right to make any claim under any such insurance policy.

4.    **Alterations.**  No building on the Premises shall be materially altered, removed or demolished without the consent of the Mortgagee.

5.    **Maintenance of Premises.**  The Mortgagor shall maintain the Premises in good condition and repair, shall not commit or suffer any waste of the Premises, and neither the value of the Premises nor the Lien will be diminished or impaired in any way by any act or omission of the Mortgagor.  The Mortgagor will not do or permit to be done to, in, upon or about said Premises or any part thereof, anything that may in any way impair or depreciate the value thereof, or any part thereof, or weaken, diminish or impair the security of this Agreement or the Lien or increase any fire, casualty or other hazard risk to the Premises.  Mortgagor shall comply with, or cause to be complied with, all statutes, ordinances and requirements of any governmental authority relating to the Premises.  The Mortgagor shall promptly repair, restore, replace or rebuild any part of the Premises now or hereafter subject to the Lien which may be damaged or destroyed by any casualty whatsoever, or which may be affected by any proceeding in the nature of condemnation.  Mortgagor shall not seek, obtain or consent to any restrictive covenant, zoning change, variance, landmark designation or other similar matter which could have the effect of limiting the improvement, use, occupancy or transferability of the premises.  If the use of the Premises constitutes, or at any time hereafter constitutes, a non-conforming use under any zoning ordinance, then Mortgagor may not take any action which would cause such non-conforming use to be abandoned or waived, or which would cause the Premises to lose the right to continue such non-conforming use.

6.    **Danger of Loss.**  If, in the opinion of the Mortgagee, the Premises, or any building, structure, improvement, fixture or personal property thereon, are in danger of destruction or deterioration, the Mortgagee may, without notice or demand, enter upon the Premises and may perform such acts thereon or with respect thereto as it may deem suitable for preservation or protection of the Premises or such building, structure, improvement, fixture or personal property.  Mortgagee may thereafter leave the Premises or hold possession thereof at its

7

option, provided, however, that, if prior advance notice or demand is required by law, Mortgagor agrees that five (5) days advance notice of intent to enter the Premises shall at all times be deemed reasonable unless a shorter period is permitted by law.

7.    **Default.** The whole of said principal sum and interest shall become due at the option of the Mortgagee: after default in the payment of any installment of principal or of interest for fifteen (15) days; or after default in the payment of any tax, water rate, sewer rent or assessment for thirty (30) days after notice and demand; or after default after notice and demand either in assigning and delivering the policies insuring the buildings against loss by fire or in reimbursing the Mortgagee for premiums paid on such insurance, as hereinbefore provided; or after default upon request in furnishing a statement of the amount due on this Agreement and whether any offsets or defenses exist against the Indebtedness. An assessment which has been made payable in installments at the application of the Mortgagor or lessee of the Premises shall nevertheless, for the purpose of this paragraph, be deemed due and payable in its entirety on the day the first installment becomes due or payable or a lien.

8.    **Additional Defaults.** In addition to the defaults set forth in paragraph 7, the whole of said principal sum and the interest and all other amounts secured by the Lien or this Agreement shall become due at the option of the Mortgagee, without further notice except as expressly set forth herein:

(a)    after failure to provide to the Mortgagee, within fifteen (15) days after demand, copies of receipts showing payment of all taxes, water rates, sewer rents and assessments; or

(b)    after the actual or threatened demolition, removal or material alteration (other than a planned alteration as described in a building loan contract, if any, between Mortgagor and Mortgagee of even date herewith) of any building on the Premises without the written consent of the Mortgagee; or

(c)    after the assignment of the rents of the Premises or any part thereof without the written consent of the Mortgagee; or

(d)    if the buildings, fixtures and equipment on said Premises are not maintained in reasonably good repair; or

(e)    after failure to comply with any requirement or order or notice or violation of law or ordinance issued by any governmental department claiming jurisdiction over the Premises within three months from the issuance thereof; or

(f)    if, on application of the Mortgagee, two or more fire insurance companies lawfully doing business in the State of New York refuse to issue policies insuring the buildings on the Premises; or

8

(g)    in the event of the removal, demolition or destruction in whole or in part of any of the fixtures, chattels or articles of personal property covered hereby, unless the same are promptly replaced by similar fixtures, chattels or articles of personal property of equal value and suitability, owned by Mortgagor free of security interests, liens or other encumbrances thereon and free from any reservation of title thereto; or

(h)    after thirty (30) days' notice to the Mortgagor, in the event of the passage of any law deducting from the value of land, for the purposes of taxation, of any lien thereon, or changing in any way the taxation of mortgages or debts secured thereby for state or local purposes; or

(i)    if the Mortgagor fails to keep, observe and perform any of the other covenants, conditions or agreements contained in the Loan Documents, or if an event of default occurs under any of them, or if any representation contained therein shall be false, or if any warranty contained therein shall be breached; or

(j)    after use of the Premises in any way that violates any governmental law, ordinance, rule, regulation or requirement or which could result in the commencement of forfeiture proceedings with respect to the Premises; or

(k)    if any representation, warranty, certificate, statement, or financial data heretofore or hereafter furnished by or on behalf of the Mortgagor pursuant to or in connection with this Agreement (including, without limitation, representations and warranties contained herein or in the Loan Documents) proves to be or have been false or misleading in any material respect or to have omitted any substantial contingent or unliquidated liability or claim against the Mortgagor; or

(l)    in the event any action is commenced for the forfeiture of all or any part of the Premises or to foreclose upon any mortgage, lease, or lien affecting the Premises which is, in whole or in part, either superior or subordinate to the Lien; or

(m)    if the intended use of the Premises existing as of the date hereof shall hereafter be changed in any material respect; or

(n)    if, by order of a court of competent jurisdiction, a trustee, receiver or liquidator of the Premises, or any part thereof, shall be appointed, or if at any time the Mortgagor, or any partner of Mortgagor (if a partnership) or any guarantor of the Note, this Agreement, or the other Loan Documents shall be insolvent, shall grant a general assignment for the benefit of creditors, shall be placed in receivership, shall file or have filed against it a petition for relief under the United States Bankruptcy Code, or shall be dissolved, or if the filing of any petition by or against the Mortgagor with respect to any of the foregoing shall occur; or

(o)    if final judgment for the payment of money shall be rendered against Mortgagor, or any guarantor of the Note, this Agreement, or and of the other Loan Documents,

9

in an amount in excess of $25,000.00, and Mortgagor or such guarantor shall not discharge the same or cause it to be discharged within sixty (60) days from the entry thereof, or shall not appeal therefrom or from the order, decree or process upon which or pursuant to which said judgment was granted, based or entered, and secure and maintain a stay of execution of such judgment; or

(p)     if it shall be illegal for Mortgagor to pay any tax, assessment, charge, fee, rent or other expense required to be paid under the Note or this Agreement or if the payment of such tax, assessment, charge, fee, rent or other expense by Mortgagor would result in the violation of applicable usury laws; or

(q)     if Mortgagor, or any guarantor of the Note, this Agreement or any of the other Loan Documents, shall be in default under any of the terms, covenants or conditions of any note, mortgage, instrument or document evidencing, securing or executed in connection with any other indebtedness owed by Mortgagor or such guarantor to Mortgagee; or

(r)     if Mortgagor fails to publish their names in accordance with the New York Limited Liability Company Law and fails to file an affidavit of publication and furnish the Mortgagee with a copy of same within six (6) weeks from the date hereof.

(s)     If Mortgagor fails to deliver to Mortgagee on or before March 31, 2008 a new temporary certificate of occupancy for the Premises and continues to deliver to Mortgagee prior to the expiration of each successive temporary certificate of occupancy a new temporary certificate of occupancy until such time as a permanent certificate of occupancy is issued for the Premises.

9.     **Sale in One Parcel.** In case of a foreclosure sale, said Premises, or so much thereof as may be affected by the Lien, may be sold in one parcel.  If, in a foreclosure sale, the Premises are not sold in one parcel, then Mortgagee shall be permitted to have the same sold in such order as Mortgagee determines, at the same time or separately, in Mortgagee's sole discretion.  Mortgagee shall not be required to obtain a deficiency judgment, or any other court approval, after the sale of any parcel in order for any other parcel to be sold.  Neither Mortgagee nor any referee shall be required to submit any report to the court or account for the proceeds from the sale of any parcel until all parcels are sold.  Mortgagee shall have the right, if it so elects, to foreclose the Lien and this Agreement as to a portion of the Premises without foreclosing the same as to the remainder of the Premises, and upon doing so this Agreement and the Lien shall remain a valid and enforceable lien against the portion of the Premises not subject to such foreclosure for the full amount remaining owed to Mortgagee.

10.     **Collection Costs.** In any action to foreclose the Lien or this Agreement or any of the Mortgages, or any action to collect any debt secured by the Lien or this Agreement or created hereunder, or any other action arising hereunder, or any action to foreclose any interest or lien prior in right or claimed to be prior in right to all or part of the Lien, Mortgagor shall be liable for and shall pay to Mortgagee, in addition to any other liability which may be established in such

10

action, all of Mortgagee's court costs and attorneys fees in the prosecution or defense of such action, plus interest thereon at the Alternate Interest Rate (as defined below), and the amount thereof shall be secured by the Lien and this Agreement. Such attorneys fees shall include, in addition to fees incurred directly in such action or proceeding, any reasonable attorneys fees incurred, before or after the commencement of such action or proceeding, in the course of negotiating any extension, modification or work-out of the Note and any expenses customarily billed by such attorneys.

11. **Counterclaims.** Mortgagor, in any action to foreclose the Lien or this Agreement or any of the Mortgages, waives the right to interpose any counterclaim against Mortgagee, all of which counterclaims must be asserted in a separate action against Mortgagee which shall not be consolidated with such foreclosure action.

12. **Other Litigation and Related Expenses.** If any action or proceeding be commenced (except an action to foreclose the Lien, this Agreement or any of the Mortgages, or to collect any debt secured by the Lien or this Agreement), to which action or proceeding the Mortgagee is made a party by virtue of its status as holder of the Note, this Agreement or any of the other Loan Documents, or in which it becomes necessary to defend or uphold the Lien including, without limitation, any condemnation or eminent domain proceedings, all sums paid by the Mortgagee for the expense of any such litigation (including reasonable attorneys fees and expenses customarily billed by such attorneys) shall be paid by the Mortgagor, together with interest at the Alternate Interest Rate, and shall be a lien on the Premises, prior to any right, or title to, interest in or claim upon said Premises attaching or accruing subsequent to the Lien and this Agreement, and shall be deemed to be secured by the Lien and this Agreement.

13. **Receiver.** The holder of this Agreement, in any action to foreclose it or the Lien, shall be entitled to the appointment of a receiver. Mortgagee shall have the right to nominate a receiver for appointment by the court, but such nomination shall in no way cause the receiver to be an agent of Mortgagee, nor shall Mortgagee be liable for any actions taken by such receiver. Under no circumstances shall Mortgagee be considered a mortgagee in possession by virtue of the appointment of a receiver nominated by Mortgagee.

14. **Continuance of Obligation.** The obligations of this Agreement and the Note shall continue until the entire debt owed thereon is paid, notwithstanding any action or actions of partial foreclosure which may be brought to recover any amount or for taxes, assessments, water rates, sewer rents or fire insurance premiums due and payable hereunder.

15. **Taxes.** The Mortgagor will pay all taxes, assessments, sewer rents or water rates, and in default thereof, the Mortgagee may pay the same. Mortgagee may, from time to time in its sole discretion, file grievances, appeals, tax certiorari proceedings or similar legal proceedings seeking to reduce the real property tax assessment for the premises and the costs of any such proceedings including, without limitation, court costs, attorneys fees and the expenses of appraisals and other experts, shall be paid first out of any recovery in such action and any remaining amount shall be paid by Mortgagor. Mortgagor will co-operate with Mortgagee in

11

prosecuting any such proceeding. Mortgagee shall have no liability to Mortgagor with respect to any such proceeding or the resolution thereof by settlement or otherwise, it being understood that Mortgagor may protect its interests by bringing such proceeding itself. Such costs, with interest, shall be a lien on the Premises prior to any right or title to, interest in or claim upon said premises attaching or accruing subsequent to the Lien and this Agreement, and shall be deemed to be secured by the Lien and this Agreement and Mortgagor hereby assigns to Mortgagee as additional security for all amounts due and owing under the Note or this Agreement any and all refunds of real estate taxes arising out of any tax grievance, tax certiorari proceeding or similar action with respect to any period from and after the date of this Agreement.

16.   **Tax Escrow.** At the option of the Mortgagee, the Mortgagor shall pay, on the first day of each month a sum equal to one-twelfth (1/12) of the annual insurance premiums, real estate taxes, water rates and sewer rates to be held and applied by the Mortgagee to the payment of said items; and in addition thereto, Mortgagor will pay to and deposit with Mortgagee such additional reserve as may be necessary so that such sum, added together with the monthly payments, shall make up a fund sufficient to pay all the aforesaid items on their respective due dates and also sufficient to establish a cushion equal to one-twelfth of the annual amount payable. The determination of the amount payable under this paragraph by Mortgagor may be based upon either the single item or aggregate method of analysis, at Mortgagee's option. Such escrow account shall not bear interest and may be mingled with the general funds of the Mortgagee; and in the event of any default in the monthly payment of one-twelfth of such insurance premiums, taxes, water rates and sewer rates, or any failure to pay on demand any additional sums necessary to fully discharge said items, the same shall constitute in all respects a default in the terms hereof and, at the option of the Mortgagee, all of the liabilities of the Mortgagor on the Note and this Agreement, whether matured or unmatured, absolute or contingent, shall become immediately due after any such default for a period of five (5) days without notice or demand. In the event of any default under this Agreement or the Note, the amount held by the Mortgagee pursuant to this paragraph may be applied, without further notice or demand, in reduction of the Indebtedness.

17.   **Application of Escrow Funds.** If there shall be a default under any of the provisions of this Agreement resulting in the public sale of the Premises covered hereby or if the Mortgagee shall acquire the Premises otherwise after default, the Mortgagee shall have the right to apply the balance of any funds held by it in escrow, either as a credit against the balance of the Indebtedness then remaining unpaid or to the payment of any other charges, without any obligation to account therefor to the Mortgagor.

18.   **Proof of Payment.** Mortgagor shall deliver to Mortgagee, within thirty (30) days after the due date thereof, copies of paid receipts for all taxes, special assessments, water and sewer charges applicable to the Premises.

19.   **Protective Advances.** If the Mortgagee shall pay or incur any expense in order to maintain the security of the Lien or this Agreement or to cure any default under the Loan Documents, including, without limitation, the payment of any real estate taxes, water rates, sewer

12

rents, assessments, insurance premiums, or expenses of repairing, securing, or remedying any adverse condition on the Premises, any such payments shall bear interest at the Alternate Interest Rate, but not to exceed the maximum rate allowed by law, and shall, with such interest, be secured by the Lien and this Agreement. Nothing contained herein shall require Mortgagee to incur any such expenses. Notwithstanding any other provision hereof, the Mortgagee may pay any such items without advance notice to the Mortgagor if Mortgagee determines in its sole discretion that it would be appropriate to do so. If any such sums are paid by Mortgagee then Mortgagee may, at its sole option and in addition to any other rights it may have, declare the entire amount due and owing under the Note and this Agreement, including such sums as may have been paid as aforesaid, and any and all other sums which shall be payable hereunder, due and payable with interest, or place such sums with an attorney for collection without accelerating the Indebtedness, whereupon Mortgagor shall be liable for all attorneys fees, expenses customarily billed by such attorneys, and court costs incurred in such collection.

20.    **Payment of Other Liens.** If Mortgagor fails to pay when due any amounts owed on any mortgage or similar lien superior or subordinate to the Lien when such installment becomes due, then Mortgagee may pay such installment, and Mortgagor on demand will repay the amount so paid with interest thereon at the Alternate Interest Rate, and the same shall be added to the Indebtedness and secured by the Lien and this Agreement. Mortgagor covenants that it shall comply with all of the terms and conditions of any such superior or subordinate mortgage or lien. The failure to do so shall constitute an event of default hereunder.

21.    **Statement of Amount Due.** The Mortgagor within five (5) days upon request in person or within ten (10) days upon request by mail will furnish a written statement duly acknowledged of the amount due on this Agreement and the Note and whether any offsets or defenses exist against the Indebtedness or any of Mortgagee's rights under any of the Loan Documents.

22.    **Warranty of Title.** The Mortgagor warrants the title to the Premises.

23.    **Mortgage Priority.** Mortgagor warrants that the Lien is and shall remain a first mortgage lien on the Premises. Mortgagor shall not suffer or allow any other or further liens, easements, restrictions, encumbrances or encroachments against the Premises without the prior written consent of Mortgagee. Mortgagor may obtain a second mortgage from Mortgagee secured by the Premises provided the Mortgagor is not then in default under the terms of the Note, the Agreement and the Loan Documents and the aggregate principal balance of this Mortgage and any second mortgage does not exceed eighty (80%) percent of the appraised value of the Premises as determined by an appraiser selected by the Mortgagee at the time the second mortgage is requested and the combined debt service coverage ratio does not exceed 1.25%. Any appraisal conducted by the Mortgagee in connection with a second mortgage shall be conducted at the sole expense of the Mortgagor.

24.    **Other Liens.** Mortgagor covenants that it shall notify Mortgagee in writing of any mechanics liens or any other liens asserted against the Premises of which it becomes aware.

13

If Mortgagor shall fail to eliminate such liens by bonding or otherwise, within ninety (90) days of the date it becomes aware of such liens, Mortgagee, in its sole discretion, may declare the entire amount due and owing under the Note and this Agreement immediately due and payable with interest.

25.    **Assignment of Rents.**  The Mortgagor hereby assigns to the Mortgagee the rents, issues and profits of the Premises as further security for the payment of all amounts due and owing under the Note and this Agreement, and the Mortgagor grants to the Mortgagee the right to enter upon and to take possession of the Premises for the purpose of collecting the same and to let the Premises or any part thereof, and to apply the rents, issues and profits, after payment of all necessary charges and expenses, on account of the Indebtedness.  This assignment and grant shall continue in effect until the Indebtedness is paid in full.  The Mortgagee hereby waives the right to enter upon and to take possession of said Premises for the purpose of collecting said rents, issues and profits, and the Mortgagor shall be entitled to collect and receive said rents, issues and profits until default under any of the covenants, conditions or agreements contained in the Loan Documents, and agrees to use such rents, issues and profits in payment of taxes, assessments, sewer rents, water rates and carrying charges becoming due against said Premises, but such right of the Mortgagor may be revoked by the Mortgagee upon any default. The Mortgagor will not, without the written consent of the Mortgagee, receive or collect rent from any tenant of said Premises or any part thereof for a period of more than one month in advance. In the event of any default under this Agreement, Mortgagor will pay monthly in advance to the Mortgagee, or to any receiver appointed to collect said rents, issues and profits, the fair and reasonable rental value for the use and occupancy of said Premises or of such part thereof as may be in the possession of the Mortgagor or any affiliated entity or person, or any officer, director or employee of any of same, or any of their family members.  Upon default in any such payment, the person occupying the Premises must vacate and surrender the possession of said Premises to the Mortgagee or to such receiver, and in default thereof may be evicted by summary proceedings.  Whenever for any purpose it shall become necessary to determine the fair and reasonable rental value of any portion of the Premises occupied by Mortgagor or any other person or entity, then the same shall be determined by an appraiser or appraisers selected by Mortgagee.  The costs of any such appraisal shall be borne by Mortgagor and shall be secured by the Lien and this Agreement.

26.    **Rentals.**  Mortgagor represents and warrants that: (a) no rental for the Premises or any portion thereof has been paid by any tenants or occupants thereof except rental that has become due prior to the date hereof; (b) there is no pledge or assignment of any of the rents, issues or profits of the Premises or of any portion thereof now outstanding, and Mortgagor will make no such pledge or assignment, except to the Mortgagee, as long as any portion of the Indebtedness remains unpaid.  So long as this Agreement is held of record by the original named Mortgagee or any successor federally insured depository institution, the Mortgagor agrees to deposit into an account with Mortgagee or such successor all tenant lease security deposits heretofore or hereafter made by tenants under leases affecting the Premises and to keep such security account or accounts with the Mortgagee or such successor.

14

27.     **Tenancies.** The Mortgagor will not cancel, abridge or otherwise modify tenancies, sub-tenancies, leases or subleases of the Premises nor accept prepayments of installments of rent without the prior written consent of the Mortgagee. Reference is hereby made to Section 291(f) of the Real Property Law of the State of New York and Mortgagee shall have all the rights given to Mortgagees pursuant to such Section 291(f). Prior to letting, or consenting to the sub-letting, of all or any part of the Premises, Mortgagor shall submit to Mortgagee the form of lease or sub-lease to be used, and shall also submit to Mortgagee detailed information regarding the intended use of the Premises by tenant. Mortgagee shall have the right to reject any lease if the same is not an arms length transaction or is at less than fair market rent.

28.     **Leases.** If Mortgagor shall lease any portion or all of the Premises, Mortgagor shall include in such lease or leases a provision subordinating such lease or leases to the Lien and the provisions of this Agreement and any renewals, amendments, supplements, modifications, consolidations, replacements or extensions thereof.

29.     **Right to Enter.** Mortgagee or any of its agents or employees shall have the right to enter and inspect the Premises at all reasonable times.

30.     **Eminent Domain.** (a) The Mortgagor does hereby assign unto the Mortgagee any and all awards heretofore made and hereafter to be made by any public or quasi-public authority to the present and all subsequent owners of the Premises, for the taking by eminent domain of the whole or any part of the Premises or any easement therein, including any awards for any changes of grade of streets affecting the Premises; and the Mortgagee, at its option, is hereby authorized, directed and empowered to collect and receive the proceeds of any such awards from the authority making the same and to give proper receipts and acquittances therefor, and to apply the same toward the payment of the amount owing on the Note and this Agreement notwithstanding the fact that the amount owing on the Note and this Agreement may not then be due and payable, but the same shall not affect the obligation of the Mortgagor to continue to make the scheduled installment payments required hereunder. The Mortgagor hereby covenants and agrees to and with the Mortgagee, upon request, to make, execute and deliver any and all assignments and other instruments sufficient for the purpose of assigning the aforesaid awards to the holder of this Agreement free, clear and discharged of any and all encumbrances of any kind or nature whatsoever. Mortgagor shall promptly notify Mortgagee of the actual or threatened commencement of any condemnation or eminent domain proceedings affecting all of any part of the Premises. Mortgagor shall fully cooperate with Mortgagee in realizing the value of the Premises in any such proceeding.

(b)     Notwithstanding any taking by eminent domain, change of grade of streets, or other injury to or decrease in value of Premises by any public or quasi-public authority or corporation, the obligations of Mortgagor to Mortgagee under the Note shall continue to bear interest at the rate set forth therein on the entire principal sum until any such award or payment shall have been actually received by the Mortgagee and any reduction in the principal sum resulting from the application by the Mortgagee of such award or payment as hereinafter set forth shall be deemed to take effect only on the date of such receipt; said award or payment may,

15

at the option of the Mortgagee, be retained and applied by the Mortgagee toward payment of the Indebtedness, or be paid over wholly or in part to the Mortgagor for the purpose of altering, restoring or rebuilding any part of the Premises which may have been altered, damaged or destroyed as a result of any such taking, change of grade or other injury to the Premises, or for any other purpose or object satisfactory to the Mortgagee, but the Mortgagee shall not be obligated to see to the application of any amount paid over to the Mortgagor. If, prior to the receipt by the Mortgagee of such award or payment, the Premises shall have been sold on foreclosure of the Lien or this Agreement or any of the Mortgages, the Mortgagee shall have the right to receive said award or payment, to the extent of any deficiency found to be due upon such sale, with legal interest thereon, whether or not a deficiency judgment shall have been sought or recovered or denied, and of the counsel fees, costs and disbursements incurred by the Mortgagee in connection with the collection of such award or payment.

31.    **Due on Sale.** If the Mortgagor shall sell, assign or transfer all or any part of, or any interest in the Premises in any manner (including any sale by what is commonly known as a land contract under which title does not pass until the consideration is paid in installments), or if the intended use of the Premises existing as of the date hereof shall hereafter be changed, all of the liabilities of the Mortgagor on the Note and this Agreement, whether matured or unmatured, absolute or contingent, shall, at the option of the Mortgagee, become immediately due, without further notice except as expressly set forth herein, and such occurrence shall be deemed an event of default hereunder. Any sale or other transfer of 50% or more in equity ownership of Mortgagor, in one or more sales or transfers such that 50% or more of Mortgagor shall then be owned by persons other than the stockholders, partners, members or beneficiaries of Mortgagor, as applicable, on the date hereof, shall constitute a sale of an interest in the Premises in violation of this paragraph. Notwithstanding the foregoing, a transfer of an interest in any of the Mortgagors to the immediate family members of Ben Bobker only shall not constitute a violation under this paragraph if and only if Ben Bobker retains a fifty one (51%) interest in each of the individual Mortgagors.

32.    **Indemnification.** Mortgagor hereby indemnifies and holds harmless Mortgagee from and against all damages, liabilities, claims, penalties, causes of action, costs and expenses (including, without limitation, reasonable attorneys fees) which may be imposed upon or asserted against Mortgagee and arising, directly or indirectly, out of (a) the ownership, use or operation of the Premises; (b) any personal injury or property damage occurring in, on or about the Premises or otherwise related to the Premises; (c) any action or inaction which constitutes a default hereunder or a breach of any of the provisions hereof; or (d) the presence, manufacture, disposal or discharge of any Hazardous Substance on, in, around or from the Premises. All sums paid by Mortgagee for which Mortgagor owes indemnification pursuant to this paragraph shall be paid by Mortgagor upon demand by Mortgagee, with interest at the Alternate Interest Rate, and shall be a lien on the Premises, prior to any right, or title to, interest in or claim upon the Premises attaching or accruing subsequent to the Lien and this Agreement and shall be secured thereby. The provisions of this paragraph shall survive the payment of the Note and any other amount secured and shall survive any satisfaction or discharge of the Lien, this Agreement, or any of the Mortgages.

16

33.    **Environmental Matters.** For the purposes of this Agreement, the term
"Hazardous Substance" shall mean any "hazardous substance" as defined in Title 42 United
States Code Section 9601(14), or any other substance the manufacture, use, storage or disposal
of which may be subject to any municipal, state or federal law, rule or regulation by virtue of the
hazardous nature thereof. The term "Environmental Protection Law" shall mean any municipal,
state or federal law, rule or regulation regulating the manufacture, use, storage or disposal of
substances by virtue of the hazardous nature thereof. Mortgagor shall at all times comply with
all Environmental Protection Laws, now existing or hereafter adopted, as the same affect the use,
occupancy or operation of Premises. Mortgagor shall not use, occupy or operate the Premises, or
suffer or permit the Premises to be used, occupied or operated, in any manner so as to create or
manufacture any Hazardous Substance thereon. Mortgagor shall not store on the Premises, or
discharge on, into or about the Premises, any Hazardous Substance. If there shall be any
Hazardous Substance on the Premises, Mortgagor shall promptly remove the same, and in such
removal, shall comply with all applicable municipal, state and federal laws, rules and regulations
applicable thereto. Mortgagor shall deliver to Mortgagee once each year a certification that it
has fully complied with all of its obligations of this paragraph. Mortgagee shall have the right, at
any time, to conduct on-site environmental and general inspections of the Premises by an expert
of the Mortgagee's choosing to determine the presence of Hazardous Substances on or affecting
the premises and Mortgagor shall permit access to the Premises for such purpose. Such
inspections may include the removal of samples for testing. If such expert believes that the
Premises may contain Hazardous Substances, Mortgagee reserves the right to have additional
environmental testing conducted so as to determine the presence and extent of the Hazardous
Substances. In the event of the presence of such Hazardous Substances, Mortgagee shall have
the right to demand immediate payment in full of all amounts due and owing, or which could
become due and owing, whether matured or unmatured, absolute or contingent, under the Note
and this Agreement and such presence shall constitute an event of default hereunder. In addition
to the foregoing, and notwithstanding that the Premises may be sold at a foreclosure sale,
Mortgagor shall remain liable to Mortgagee, and any future owner of the Premises, for the cost
of removal of any Hazardous Substances left, stored or discharged on the Premises during the
term of this Agreement, or during any period in which the Mortgagor, or any successor or assign
of the Mortgagor owns, is in possession of, or is operating the Premises. The obligation to pay
for all of such costs shall be secured by the Lien and this Agreement, and any such costs of
removal which are incurred by Mortgagee shall bear interest at the Alternate Interest Rate until
paid. This paragraph shall not be interpreted to prohibit the use on the Premises of small
amounts of substances otherwise included within the definition of Hazardous Substances as the
same may be normally used in the legal operation of the Premises for non-hazardous purposes,
such as substances used for cleaning and cooking, provided, however, that at all times the
amount of such Hazardous Substances maintained on the Premises shall be reasonable in
amount, the same shall be stored and used in a safe and prudent manner, and upon their use shall
be legally disposed of off the Premises. Mortgagor and Mortgagee acknowledge that nothing
contained in this Agreement shall be deemed to constitute Mortgagee as an owner or operator of
the Premises and all provisions hereof shall be deemed to be for the benefit of the Mortgagee as a
secured party.

17

34.    **Financial Data.** (a) Within one hundred twenty (120) days after the end of each fiscal year, the Mortgagor shall deliver, and shall cause each and every person or entity that is a maker or guarantor of the Note to deliver, to the Mortgagee either (i) annual financial statements (including without limitation, an income and expense statement for the Premises) of Mortgagor and such makers and guarantors prepared in accordance with generally accepted accounting principles, consistently applied containing such additional information as is reasonably requested by the Mortgagee, with such financial statements to be reviewed or certified by a certified public accountant, or (ii) the annual federal and state income tax returns of Mortgagor and such makers and guarantors for such year together with annual internally prepared financial statements of such Mortgagor and such makers and guarantors on the Mortgagee's standard form. All financial statements delivered pursuant to the preceding sentence shall be certified as true, complete and accurate by an executive officer of the corporation for corporate financial statements, a partner of the partnership for partnership financial statements, by the named individual for personal financial statements, by a member (for member managed) or by a manager (for manager managed) of the limited liability company for limited liability company financial statements and by a comparable authorized person for other entities. If any person desires to exercise the option set forth in clause (ii) above to deliver tax returns and has filed for and obtained an extension for the filing of its tax returns, then tax returns will not be required to be delivered to the Mortgagee until they are filed with the IRS and the State of New York, provided, however, that if the Mortgagor or guarantor obtains an extension for filing tax returns beyond one hundred twenty (120) days after the end of the fiscal year, then the Mortgagor, or any maker or guarantor of the Note must provide financial statements no later than one hundred twenty (120) days after the end of that fiscal year. The Mortgagee may also require additional periodic financial information to be produced. There will be a default fee of $1,000.00 per month for each of the first three (3) months that the required financial statements or tax returns are not provided by the Mortgagor, or any maker or guarantor of the Note to the Mortgagee and the interest rate under the Note will increase to sixteen (16%) percent as a default fee for each month thereafter that the Mortgagor or any maker or guarantor of the Note to the Mortgagee fails to deliver the required financial statements or tax returns to the Mortgagee. Once the Mortgagor, or any maker or guarantor of the Note to the Mortgagee submits the required completed tax returns or financial statements as set forth herein, the rate of interest applicable under the Note will be reinstated, effective on the first day of the following month of the Note term. A separate fee shall be payable for each person or entity that has not provided the required financial statements or tax returns. Any amounts due hereunder shall be payable on demand and Mortgagee's rights under this subsection (a) shall be in addition to any other rights it may have based upon Mortgagor's failure to perform, including without limitation, the right to accelerate Mortgagor's obligations under the Note.

(b) The Mortgagor, or the then owner of the Premises, shall also provide to the Mortgagee, within one hundred twenty (120) days of the end of each fiscal year, a statement in reasonable detail, certified as true, complete and accurate in like manner, setting forth the names of all tenants of the Premises, identifying the space they occupy, the lease expiration dates, all rent and additional rent that each such tenant is then obligated to pay, any past due rent with

18

respect to any tenant, and all scheduled increases in such rent. Financial statements shall also be provided at other times upon reasonable request of Mortgagee.

35.   **Security Interest.** This Agreement shall also constitute, and be effective as a financing statement in accordance with the terms of New York Uniform Commercial Code Section 9-402(6). Mortgagor hereby grants, and Mortgagee shall have, a continuing security interest in the following, and all proceeds, products, additions, accessions, replacements or substitutions, if any, and all books and records, now existing or hereafter arising, relating to the following, whether now or hereafter owned by the Mortgagor or in which it now or hereafter has an interest or as to which Mortgagee may now or hereafter control possession by documents of title or otherwise:

(a)   All Mortgagor's machinery, equipment, materials, appliances, fixtures, work in process, finished goods, findings or component materials, used, produced or kept by Mortgagor on or in connection with the operation of the Premises; and

(b)   All Mortgagor's books, records, accounts, contract rights, notes, drafts, acceptances, instruments, documents of title, chattel paper, and general intangibles, whether now existing or hereafter acquired or arising, and all the proceeds and products thereof, and any or all insurance policies and proceeds, unearned insurance premiums and condemnation awards, arising out of or related to the use, ownership or operation of the Premises.

All of the foregoing shall include items of the same class now or hereafter owned or acquired by the Mortgagor and all increases, parts, accessories, attachments, special tools, additions and accessions thereto, and all proceeds thereof in any form. Mortgagee's security interest shall also include all documents of title evidencing any part of said accounts, contract rights, notes drafts, acceptances, instruments and chattel paper, as well as all cash and noncash proceeds, immediate or remote, of any sale or other disposition of the premises or any part thereof.

36.   **Notices.** No notice shall be required to be given by Mortgagee except as expressly provided in this Agreement. Any notices required or permitted to be given hereunder shall be: (a) personally delivered or (b) given by registered or certified mail, postage prepaid, return receipt requested, or (c) forwarded by nationally recognized overnight courier service, in each instance addressed to the addresses set forth at the beginning of this Agreement or such other addresses as the parties may for themselves designate in writing as provided herein for the purpose of receiving notices hereunder. All notices shall be in writing and shall be deemed given, in the case of notice by personal delivery, upon actual delivery, and in the case of appropriate mail or courier service, three days after deposit with the U.S. Postal Service or one day after delivery to the courier service.

37.   **Action by Mortgagee.** If any claim is made that Mortgagee has failed to act reasonably or with reasonable dispatch under circumstances in which under any of the Loan Documents or by law Mortgagee is required to act reasonably, then the sole remedy of

19

Mortgagor against Mortgagee shall be for mandatory injunctive relief requiring Mortgagee to act reasonably, and no claim for monetary damages shall be made.

38.      **Mortgagee Approval.** Whenever in this Agreement or any other Loan Document Mortgagee has any option or election, or the approval or consent of Mortgagee is required, then unless there is express provision contained herein or in such Loan Document that the Mortgagee must act reasonably or with reasonable dispatch, no such requirement shall be implied and Mortgagee may act or fail to act in its sole and unilateral discretion.

39.      **General Provisions.** This Agreement may not be changed or terminated orally. The covenants contained in this Agreement shall run with the land and bind the Mortgagor, its successors and assigns of the Mortgagor and all subsequent owners, encumbrances, tenants and subtenants of the premises, and shall enure to the benefit of and be binding upon the Mortgagee, the personal representatives, successors and assigns of the Mortgagee and all subsequent holders of this Agreement. The word "Mortgagor" shall be construed as if it read "Mortgagors" and the word "Mortgagee" shall be construed as if it read "Mortgagees" whenever the sense of this Agreement so requires.

40.      **Construction and Interpretation.** The clauses and covenants contained herein which are construed by Section 254 of the Real Property Law (without regard to any non-substantive grammatical differences between the clauses hereof and the clauses construed in Section 254 and without regard to the use of defined terms herein) shall be construed as provided in that section except where a different construction is specified herein and provisions in this Agreement which are substantially similar to the provisions of Section 254 shall be interpreted based upon Section 254 after giving effect to the differences in language contained in this Agreement. The additional clauses and covenants contained herein shall afford rights to the Mortgagee supplemental to, and not exclusive of, the rights conferred by the clauses and covenants construed by such Section 254 and shall not impair, modify, alter or defeat such rights notwithstanding that such additional clauses and covenants may relate to the same subject matter or provide for different or additional rights in the same or similar contingency as the clauses and covenants construed by Section 254. The rights of the Mortgagee arising under the clauses and covenants contained in this Agreement shall be separate, distinct and cumulative and none of them shall be in exclusion of the other. No act of the Mortgagee shall be construed as an election to proceed under any one provision herein to the exclusion of any other provision, anything herein or otherwise to the contrary notwithstanding. The rights granted to Mortgagee by Mortgagor hereunder are cumulative and in addition to the rights granted by every other agreement which Mortgagor has heretofore or may hereafter execute with or deliver to Mortgagee, and no such agreement shall be read or construed to limit, restrict or otherwise modify in any way the rights given hereby, except as the intent to limit is expressly set forth in such agreement, and likewise no provision of this Agreement shall be deemed to limit, restrict or otherwise modify in any way any rights granted to Mortgagee by other agreement of Mortgagor. All agreements herein contained and contained in any such other agreement, whether typed or otherwise, shall be fully effective and fully enforceable in favor of Mortgagee and against Mortgagor, except that if there be a conflict in the degree of identical items to be provided to

20

Mortgagee, the agreement requiring the higher or greater degree shall prevail, but if there be such conflict in the provision of items which are similar but not identical, they shall be read and interpreted separately and Mortgagor shall furnish all such items to Mortgagee as required by both or all such provisions. If any provision of this Agreement is interpreted by a court to be unlawful or unenforceable, then the obligation such provision imposes upon Mortgagor shall be deemed reduced to the extent, but only to the extent, necessary to cause such provision to be enforceable, and if the same shall not be possible, then such provision shall be severed from this Agreement and the remainder of this Agreement shall be enforced.

41.    **Retention and Exercise of Rights.** Any failure by the Mortgagee to insist upon the strict performance by the Mortgagor of any of the terms and provisions hereof shall not be deemed to be a waiver of any of the terms and provisions hereof. The Mortgagee, notwithstanding any such failure, shall have the right thereafter to insist upon the strict performance by the Mortgagor of any and all of the terms and provisions of this Agreement and the Note to be performed by the Mortgagor without any special or additional notice being required. Neither the Mortgagor nor any other person now or hereafter obligated for the payment of the whole or any part of the sums now or hereafter secured by the Lien or this Agreement shall be relieved of such obligation (a) by reason of the failure of the Mortgagee to comply with any request of the Mortgagor, or of any other person so obligated, to take action to foreclose the Lien, this Agreement or any of the Mortgages or otherwise enforce any of the provisions of this Agreement, or (b) by reason of the release, regardless of consideration, of the whole or any part of the security held for the Indebtedness, or (c) by reason of any agreement or stipulation extending the time of payment or modifying the terms of the Note or this Agreement or any other Loan Document without first having obtained the consent of the Mortgagor or such other person. In any such event, the Mortgagor and all such other persons shall continue to be liable to make the payments and satisfy the other obligations under the Loan Documents, subject only to the terms of any such agreement of extension or modification, unless expressly released and discharged in writing by the Mortgagee. Regardless of consideration, and without the necessity for any notice to or consent by the holder of any subordinate lien on the premises, the Mortgagee may release the obligation of anyone at any time liable for any of the Indebtedness, or any part of the security held for the Indebtedness and may extend the time of payment or otherwise modify the terms of the Note, this Agreement or any other collateral for the Note without in any way impairing or affecting the Lien or this Agreement or the priority of the Lien as security for the payment of the Indebtedness as it may be so extended or modified, over any subordinate lien. The holder of any subordinate lien shall have no right to terminate any lease affecting the premises whether or not such lease be subordinate to the Lien or this Agreement. The Mortgagee may resort for the payment of the Indebtedness to any security therefor held by the Mortgagee in such order and manner as the Mortgagee may elect. If this Agreement covers more than one parcel, such parcels may be sold in foreclosure in such order as Mortgagee may determine in its sole discretion, without regard to the nature and extent of any subordinate liens on all or any part of the Premises, and without regard to any sequential order of sale preferred by Mortgagor, any guarantor, or any subordinate lien holder.

21

42.    **Waivers; No Oral Agreements.**  No waiver of any right set forth in this Agreement or any of the other Loan Documents shall be deemed effective unless in writing and signed by an officer of Mortgagee and any modification, amendment or termination shall be valid only if in writing and signed by a duly authorized officer of Mortgagee.  The failure by Mortgagee to enforce any of its rights under any of the Loan Documents if a default occurs shall not affect the ability of Mortgagee to exercise such rights in the event of any subsequent default. No discussions, negotiations or oral statements by Mortgagee or between Mortgagor and Mortgagee with respect to the subject matter of any of the Loan Documents, or with respect to the refinancing of any of the Indebtedness, shall be valid and binding against Mortgagee, nor shall the same create a binding obligation on Mortgagee to lend money to or take any other action with respect to Mortgagor unless the same is reduced to writing and signed by a duly authorized officer of Mortgagee.

43.    **Conditions of Waiver.**  Mortgagee shall have in addition to any other rights, the right to require an increase in the interest rate payable on the Indebtedness as a condition to agreeing to waive its right to accelerate pursuant to any provision of this Agreement or the Note.

44.    **Future Changes.**  If any agreement is hereafter entered into modifying or changing the terms of this Agreement in any particular, the rights of the parties to such an agreement shall be superior to the rights of the holder of any subordinate lien or interest in the premises.

45.    **Joint and Several Liability.**  If more than one party joins in the execution of this Agreement, the covenants and agreements herein contained shall be the joint and several obligations of each and all of them and of their respective heirs, executors, administrators, successors and assigns, and relative words herein shall be read as if written in the plural when appropriate.

46.    **Additional Acts and Documents.**  The Mortgagor will, at its sole cost and expense, within five (5) days following request by Mortgagee, do, execute, acknowledge and deliver all and every such further acts deeds, conveyances, mortgages, assignments, notices of assignment, subordinations, transfers and assurances as Mortgagee shall from time to time reasonably require, for the better assuring, conveying, assigning, transferring and confirming unto Mortgagee, the premises, property and rights hereby conveyed or assigned or intended now or hereafter so to be, or which Mortgagor may be or may hereafter become bound to convey or assign to Mortgagee, or for carrying out the intention or facilitating the performance of the terms of this Agreement or for filing, registering, correcting any error in or recording this Agreement.

47.    **Alternate Interest Rate.**  For the purposes of this Agreement, the term "Alternate Interest Rate" shall mean twenty-four (24%) percent per annum, but in no event more than the maximum rate allowed by law.

48.    **Lien Law Covenant.**  The Mortgagor will, in compliance with Section 13 of the Lien Law, receive the advances secured hereby and will hold the right to receive such advances

22

as a trust fund to be applied first for the purpose of paying the cost of the improvement and will apply the same first to the payment of the cost of the improvement before using any part of the total of the same for any other purpose.

49.   **Cost.**  All costs of recording this Agreement or taxes imposed upon the recording hereof shall be borne by Mortgagor.

50.   **Action by Representative.**  Whenever in this Agreement a right is granted to Mortgagee, that right may be exercised by Mortgagee, its representative, or its assignee.

51.   **Right of First Refusal.**  Mortgagor agrees that, until the Maturity Date, it will (i) within five (5) days of receipt, provide Mortgagee with a copy of any letter of intent or commitment letter from any other lender offering financing to be secured by the Mortgage Deed and Security Agreement, the real estate referenced by them or the Collateral and (ii) grant Mortgagee the right of first refusal to match the financial terms of such offer from such lender(s). If Mortgagee, within five (5) days of receipt by it of a copy of such letter of intent or commitment letter, informs Mortgagor that it will meet the financial terms of such offer(s), then the terms of the existing financing arrangement which would be replaced by the other lender will be amended or the terms of a different credit prepared and executed, as appropriate, matching the terms offered by the other lender.  The Mortgagee is not obligated to meet such terms, however, and, if it declines to do so, its decision will not relieve the Mortgagor from its obligations under this and all other Loan Documents in effect between it and the Mortgagee.

52.   **Release of Condominium Units.** Mortgagee shall release the individual condominium units from the lien of this Agreement upon the satisfaction of the following conditions:

(a) Thirty (30) days prior to the delivery of each release the Mortgagor shall deliver to the Mortgagee a copy of each contract of sale for the individual condominium unit sought to be released and such other information that the Mortgagee shall require in order to calculate the release price defined hereinbelow.

(b) The release must be in connection with a bona fide arms length sale. The Mortgagor must pay to the Mortgagee, in reduction of the principal balance owed on the Note, a minimum amount of 90% of the sale price for each unit sought to be released as the release price and not less than 1.250% of the principal associated with the condominium unit being released and in connection with the sale of units 306, 406, 606 and 1206 the Mortgagor shall pay 125% of that portion of the principal balance of the loan then outstanding allocable to the unit being released as determined by the Mortgagee in its sole and absolute discretion (the "Release Price").

(c) In addition to the Release Price, the Mortgagor shall pay to Mortgagee a one (1%) percent prepayment penalty on the amount prepaid for each condominium unit released during the term of this Agreement.

23

(d) The Mortgagor must not then be in default of any of its obligations to the Mortgagee under the Note or any of the Loan Documents.

(e) The payment of the Release Price and prepayment penalty shall not offset or reduce in any way the obligation of Mortgagor to pay any other amounts due and owing on the Note.

(f) The Mortgagor shall pay to the Mortgagee all costs, expenses, and fees including but not limited to legal fees incurred by the Mortgagee in connection with each condominium unit released.

(g) At no time during the term of this Agreement shall the Mortgagee's loan to value ratio be less than seventy five (75%) percent on the remaining condominium units after each requested release.

   53.    **Satisfaction or Assignment**- If the Mortgagor is not then in default under the Note, this Agreement or the Loan Documents upon payment of the Note in full the Mortgagor may request a satisfaction or assignment of this Mortgage provided the Mortgagor pays to the Mortgagee all fees, costs, expenses including but not limited to attorneys fees incurred by the Mortgagee in connection with the preparation and delivery of any satisfaction or assignment.

   **IN WITNESS WHEREOF,** this Agreement has been duly executed by the Mortgagor and the Mortgagee.

**11 East 36th, LLC, a New York Limited Liability Company**

By: Madison Condos, LLC, its Sole Member

By: Bluebell Assets, LLC its Managing Member

By: _____
   Ben Bobker, Sole Member

**Morgan Lofts, LLC, a New York Limited Liability Company**

By: 11 East 36th LLC, its Sole Member

By: Madison Condos, LLC, its Sole Member

By: Bluebell Assets, LLC, its Managing Member
By: _____
   Ben Bobker, Sole Member

24

**Bay Condos, LLC, a New York Limited
Liability Company**

**By: Hancock Park, LLC its Manager**

By: _____

Name: Avi Bobker

Title: Managing Member

STATE OF NEW YORK        )

                          ) ss:

COUNTY OF New York        )

On the 20th day of March in the year 2008 before me, the undersigned, personally appeared **Ben Bobker**, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual, or the persons upon behalf of which the individual acted, executed the instrument.

Notary Public

PATRICIA J. McCARTHY
NOTARY PUBLIC, State of New York
No. 30-4840587
Qualified in Nassau County
Commission Expires November 30, 2004

STATE OF NEW YORK        )

                          ) ss:

COUNTY OF New York        )

On the 20th day of March in the year 2008 before me, the undersigned, personally appeared **Avi Bobker**, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual, or the persons upon behalf of which the individual acted, executed the instrument.

Notary Public

PATRICIA J. McCARTHY
NOTARY PUBLIC, State of New York
No. 30-4840587
Qualified in Nassau County
Commission Expires November 30, 2004

25

**FIRST CENTRAL SAVINGS BANK**

By: _____

    Joseph Pistilli, President, CEO and Chairman
    Of the Board

STATE OF NEW YORK          )
                           ) ss:
COUNTY OF NASSAU           )

On the 17 day of March in the year 2008 before me, the undersigned, personally appeared **Joseph Pistilli**, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

_____
              Notary Public

JAMES C. DOUGHERTY
NOTARY PUBLIC, State of New York
No. 01DO4506613
Qualified in Queens County
Commission Expires January 21st, 20__

26

File No: **2735CNY**

## LEGAL DESCRIPTION

*AMENDED 3-12-2008*

The condominium unit (hereinafter referred to as the "Unit") known as Unit Nos. (see Schedule A-1 annexed) in the building (hereinafter referred to as the "Building") known as *The Morgan Lofts Condominium*, said units being designated and described as Unit Nos. (see Schedule A-1 annexed) in a certain declaration dated 10/23/2006 pursuant to article 9-B of the Real Property Law of the State of New York (hereinafter referred to as the "Condominium Act"), establishing a plan for condominium ownership of the Building and the land (hereinafter referred to as the "Land") upon which the Building is situate (which Land is more particularly described below and by this reference made a part hereof), which declaration was recorded in the New York County Office of the Register of the City of New York on 11/22/2006 in Reel / CRFN No. 2006000650189, as (which declaration and amendments thereto are hereinafter collectively referred to as the "Declaration").

This/These units is/are also designated as Tax Lot Nos. (see Schedule A-1 annexed) in Block 866 of the Borough of Manhattan on the Tax Map of the Real Property Assessment Department of the City of New York and on the Floor Plans of the building, certified by Steven Kratchman Architect, PC and filed in the City Register's Office on 11/22/2006 as Condominium Plan No. 1617.

**Together With** an combined undivided 48.72 percent interest in the common elements (as such term is defined in the Declaration).

The Land on which the Building is situate is described as follows:

All that certain plot, piece or parcel of land, situate, lying and being in the Borough of Manhattan, City, County and State of New York, bounded and described as follows:

BEGINNING AT A POINT ON THE SOUTHERLY SIDE OF EAST 37TH STREET, DISTANT 202 FEET EASTERLY FROM THE CORNER FORMED BY THE INTERSECTION OF THE SOUTHERLY SIDE OF 37TH STREET AND THE EASTERLY SIDE OF 5TH AVENUE;

RUNNING THENCE EASTERLY ALONG THE SOUTHERLY SIDE OF 37TH STREET, 24 FEET;

THENCE SOUTHERLY PARALLEL WITH THE EASTERLY SIDE OF 5TH AVENUE AND PART OF THE DISTANCE THROUGH A PARTY WALL, 98 FEET 9 INCHES TO THE CENTER LINE OF THE BLOCK;

THENCE EASTERLY ALONG THE CENTER LINE OF THE BLOCK, 24 FEET;

THENCE SOUTHERLY PARALLEL WITH THE EASTERLY SIDE OF 5TH AVENUE, 98 FEET 9 INCHES TO THE NORTHERLY SIDE OF EAST 36TH STREET;

THENCE WESTERLY ALONG THE NORTHERLY SIDE OF EAST 36TH STREET, 50 FEET;

THENCE NORTHERLY PARALLEL WITH THE EASTERLY SIDE OF 5TH AVENUE, 98 FEET 9 INCHES TO THE CENTER LINE OF THE BLOCK;

THENCE EASTERLY ALONG SAID CENTER LINE OF THE BLOCK, 2 FEET;

THENCE NORTHERLY AGAIN PARALLEL WITH THE EASTERLY SIDE OF 5TH AVENUE, 98 FEET 9 INCHES TO THE SOUTHERLY SIDE OF 37TH STREET AT THE POINT OR PLACE OF BEGINNING.

# SCHEDULE A-1

| UNIT NUMBER | TAX LOT NUMBER | % COMMON INTEREST |
|---|---|---|
| **COMMERCIAL SPACE** | | |
| 101 | 1202 | 7.26 |
| 102 | 1203 | 1.91 |
| **2ND FLOOR** | | |
| 201 | 1204 | 1.49 |
| 202 | 1205 | 1.20 |
| 203 | 1206 | 0.71 |
| 204 | 1207 | 1.01 |
| 205 | 1208 | 1.51 |
| 206 | 1209 | 1.60 |
| **RESIDENTIAL UNITS** | | |
| 306 | 1215 | 1.60 |
| 406 | 1220 | 1.60 |
| 606 | 1232 | 1.60 |
| 701 | 1233 | 1.43 |
| 801 | 1239 | 1.41 |
| 803 | 1241 | 0.73 |
| 804 | 1242 | 1.01 |
| 903 | 1247 | 0.77 |
| 904 | 1248 | 1.01 |
| 1003 | 1253 | 0.73 |
| 1004 | 1254 | 1.01 |
| 1103 | 1259 | 0.77 |
| 1104 | 1260 | 1.01 |
| 1206 | 1268 | 1.60 |
| **CELLAR SPACE** | | |
| CS1 | 1271 | 0.045 |
| CS2 | 1272 | 0.045 |
| CS3 | 1273 | 0.045 |
| CS4 | 1274 | 0.045 |
| CS5 | 1275 | 0.045 |
| CS6 | 1276 | 0.045 |
| CS7 | 1277 | 0.045 |
| CS8 | 1278 | 0.045 |
| CS9 | 1279 | 0.045 |
| CS10 | 1280 | 0.045 |
| CS11 | 1281 | 0.045 |
| CS12 | 1282 | 0.045 |
| CS13 | 1283 | 0.045 |
| CS14 | 1284 | 0.045 |

continued   28

| UNIT NUMBER | TAX LOT NUMBER | % COMMON INTEREST |
|---|---|---|
| CS15 | 1285 | 0.045 |
| CS16 | 1286 | 0.045 |
| CS17 | 1287 | 0.045 |
| CS18 | 1288 | 0.045 |
| CS19 | 1289 | 0.045 |
| CS20 | 1290 | 0.045 |
| CS21 | 1291 | 0.045 |
| CS22 | 1292 | 0.045 |
| CS23 | 1293 | 0.045 |
| CS24 | 1294 | 0.045 |
| CS25 | 1295 | 0.045 |
| CS26 | 1296 | 0.045 |
| CS27 | 1297 | 0.045 |
| CS28 | 1298 | 0.045 |
| CS29 | 1299 | 0.045 |
| CS30 | 1300 | 0.045 |
| CS31 | 1301 | 0.045 |
| CS32 | 1302 | 0.045 |
| CS33 | 1303 | 0.045 |
| CS34 | 1304 | 0.045 |
| CS35 | 1305 | 0.045 |

**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**



2008032800445019003SFE4D

| SUPPORTING DOCUMENT COVER PAGE | PAGE 1 OF 1 |
|---|---|

**Document ID: 2008032800445019**     Document Date: 03-20-2008          Preparation Date: 04-22-2008
Document Type: AGREEMENT

**SUPPORTING DOCUMENTS SUBMITTED:**

Page Count

255 MORTGAGE TAX EXEMPT AFFIDAVIT                                                                    3

## SECTION 255 AFFIDAVIT

Ben Bobker and Avi Bobker, being duly sworn, depose(s) and say(s):

1. Ben Bobker is the managing member of the sole member of Morgan Lofts, LLC and the managing member of the sole member of 11 East 36th LLC and Avi Bobker is the manager of the sole member of Bay Condos, LLC and we are fully familiar with all the facts and circumstances set forth below.

2. On this date, March 20, 2008, 11 East 36th, LLC, Morgan Lofts, LLC and Bay Condos, LLC executed and delivered a mortgage (the "Mortgage") in the amount of $464,437.48 to First Central Savings Bank ("First Central') as security for a loan in that amount. The Mortgage is being delivered to the New York City Register, New York County for recording simultaneously with this Affidavit and the full mortgage tax in the amount of $9,520.97 due upon the recording of the Mortgage is being paid. *13,005.20 @

3. Also on this date, Borrower executed and delivered a Modification, Extension and Consolidation Agreement (the "Agreement") with First Central which consolidates the lien of the Mortgage with the lien of the prior mortgages listed on the annexed Schedule of Mortgages on the premises to form a single lien in the amount of $10,000,000.00. The Agreement does not create any new or additional indebtedness nor did First Central advance any additional funds to Borrower on account thereof.

4. Also on this date, Borrower has executed and delivered to First Central an Assignment of Rents and Leases affecting the same premises covered by the Mortgage as additional security for the same loan secured by the Mortgage and the Agreement. The Assignment of Rents and Leases does not create or secure any additional indebtedness other than the indebtedness secured by the Mortgage and the Agreement.

5. Therefore, I respectfully request that the Agreement and Assignment of Rents and Leases be accepted for recording without the payment of any additional tax in accordance with the provisions of Section 255 of the New York Tax Law.

_____
Ben Bobker

_____
Avi Bobker

Sworn to before me this
20th day of March, 2008

_____
Notary Public

PATRICIA J. McCARTHY
NOTARY PUBLIC, State of New York
No. 30-4840587
Qualified in Nassau County
Commission Expires November 30, 2009

SEAL

# SCHEDULE OF MORTGAGES

1)     Original named mortgagor: 11 East 36th LLC and Carnegie Holdings LLC
Original named mortgagee: Chinatrust Bank (U.S.A.)
Dated: March 28, 2007
Original principal amount of: $4,500,000.00
Recorded in the office of: New York City Register, New York County
Recording Date: April 20, 2007
CRFN No. 2007000205936
mtg tx pd 126,000-
Which mortgage was severed and split by mortgage splitter agreement dated March 18,
2008 between 11 East 36th, LLC, Morgan Lofts, LLC and Bay Condos, LLC and
Chinatrust Bank (U.S.A.) into two separate mortgages Substitute Mortgage A in the
reduced principal sum of $3,620,000.00 and Substitute Mortgage B in the reduced
principal sum of $880,000.00.

2)     Original named mortgagor: 11 East 36th, LLC, Morgan Lofts, LLC and Bay Condos, LLC
Original named mortgagee: Chinatrust Bank (U.S.A.)
Dated: March 18, 2008
Original principal amount: $3,620,000.00
To be recorded in the New York City Registers Office immediately prior hereto.

Which mortgage 2 in the reduced principal balance of $3,620,000.00 is being assigned by
Chinatrust Bank (U.S.A.) to First Central Savings Bank by assignment dated March 18,
2008 to be immediately recorded prior hereto with the New York City Register, New
York County.

3)     Original named mortgagor: 11 East 36th, LLC and Carnegie Holdings LLC
Original named mortgagee: Chinatrust Bank (U.S.A.)
Dated: August 18, 2006
Original principal amount: 11,761,150.00
Recorded in the office of: New York City Register, New York County
Recording date: 12/08/06
CRFN No. 2006000675701
Mtg tx pd 329,310.81
Which mortgage in the reduced principal balance of $ 2,915,562.52 is being assigned by
Chinatrust Bank (U.S.A.) to First Central Savings Bank by assignment dated March 18, 2008 to
be immediately recorded prior hereto with the New York City Register, New York County.

4)     Original named mortgagor: 11 East 36th, LLC and Carnegie Holdings LLC
Original named mortgagee: Grand Pacific Finance Corp.
Dated: November 23, 2004
Original principal amount: 2,300,000.00
Recorded in the office of: New York City Register, New York County
Recording date: July 25, 2005
CRFN No. 2005000415069
Mtg tx pd 63,250-

Which mortgage by its terms was modified consolidated and extended by Mortgage, Assignment of Leases and Rents, security Agreement and Fixture Filing, Consolidation, Modification and Extension Agreement dated August 16, 2006 between 11 East 36th, LLC and Carnegie Holdings LLC and Grand Pacific Finance Corp., in the consolidated amount of $3,000,000.00 recorded on December 8, 2006 with the New York City Register in CRFN No. 2006000675708.

Mtg txed 19,600.—

Which mortgage (4) as consolidated was thereafter assigned by Grand Pacific Finance Corp. to Chinatrust Bank (U.S.A.) by assignment dated March 28, 2007 recorded in the New York City Register on April 20, 2007 in CRFN No. 2007000205934.

Which mortgage was thereafter modified, amended and restated by Amended and Restated Acquisition Loan Mortgage in the principal sum of $3,000,000.00 between 11 East 36, LLC, Carnegie Holdings LLC and Chinatrust Bank (U.S.A.) dated March 28, 2007 recorded in the New York City Register on April 20, 2007 in CRFN No. 2007000205935.

Which mortgage 4 in the reduced principal balance of $3,000,000.00 is being assigned by Chinatrust Bank (U.S.A.) to First Central Savings Bank by assignment dated March 18, 2008 and intended to be recorded in the City Register's Office, New York County, immediately prior hereto.

4)      Mortgage from Mortgagor to Mortgagee dated the date hereof in the original principal amount of $464,437.48 and intended to be recorded in the City Register's office in the County of New York, immediately prior hereto.

3

Exhibit E

# FIRST CENTRAL ✦ SAVINGS BANK

*70 Glen Street Glen Cove, New York 11542   TEL: (516)609-3500 FAX (516)609-3638*

December 7, 2011

**BY CERTIFIED MAIL, RETURN
RECEIPT REQUESTED**

11 East 36th, LLC
Morgan Lofts, LLC
Bay Condos, LLC
11 East 36th Street, Suite 1101
New York, New York 10016

> Subject:  11 East 36th Street
>                  Loan number 0100009091

Dear Sirs:

As of the close of business on December 6, 2011, there is an outstanding principal balance of $9,836,240.14. Currently, the following payments are past due:

| | |
|---|---|
| Interest Payment due on 10/1/11: | $40,937.33 |
| Interest Payment due on 11/1/11: | $40,984.33 |
| Interest Payment due on 12/1/11: | $40,984.33 |
| Late Charges: | $23,991.38 |
| * Current escrow payment due for taxes due on 12/31/11: | $115,078.35 |
| *Payments for Real Estate Taxes paid by First Central Savings  for taxes due: | $205,103.25 |
| TOTAL DUE: | $467,078.97 |

* See attached schedule for details

Formal demand is hereby made upon you for the foregoing payments. Please be advised that in the event that First Central Savings Bank ("First Central") does not receive the past due amounts by 5:00 P.M., December 14, 2011, First Central shall pursue all available remedies.

This letter shall in no way be construed as an estoppel or waiver of any of First Central Savings Bank's rights or remedies. In addition, nothing contained herein shall constitute a waiver of any default under any of the subject Loan Documents or a waiver of Lender's right to declare a default based of any facts and circumstance that otherwise constitute or constituted a default under the Loan Documents.

Sincerely,

Pilar Valenzuela
Vice President – Senior Lending Officer

Cc: B. Bobker
    E. Bobker

| Date | Type | Receipts | Payments | Balance |
|---|---|---|---|---|
| | **11 East 36th Street** | | | |
| | **Schedule of Escrow Due** | | | |
| 9/9/2009 | Initial Depost | | | 7,552.78 |
| 9/11/2011 | Payments | | (64,746.94) | (57,194.16) |
| 9/29/2009 | Escrow Receipt | 15,644.89 | | (41,549.27) |
| 9/30/2009 | Escrow Receipt | 682.34 | | (40,866.93) |
| 10/15/2009 | Escrow Receipt | 16,327.23 | | (24,539.70) |
| 11/12/2009 | Escrow Receipt | 16,327.23 | | (8,212.47) |
| 12/8/2009 | Escrow Receipt | 700.07 | | (7,512.40) |
| 12/8/2009 | Escrow Receipt | 7,299.93 | | (212.47) |
| 12/15/2009 | Escrow Receipt | 23,627.16 | | 23,414.69 |
| 12/22/2009 | Payments | | (99,112.43) | (75,697.74) |
| 1/13/2010 | Escrow Receipt | 23,627.16 | | (52,070.58) |
| 2/12/2010 | Escrow Receipt | 23,627.16 | | (28,443.42) |
| 3/12/2010 | Escrow Receipt | 23,627.16 | | (4,816.26) |
| 3/12/2010 | Payments | | (69,614.67) | (98,058.09) |
| 4/15/2010 | Escrow Receipt | 23,627.16 | | (74,430.93) |
| 5/14/2010 | Escrow Receipt | 23,627.16 | | (50,803.77) |
| 6/15/2010 | Escrow Receipt | 23,627.16 | | (27,176.61) |
| 6/21/2010 | Payments | | (111,210.92) | (138,387.53) |
| 7/15/2010 | Escrow Receipt | 23,627.16 | | (114,760.37) |
| 8/15/2010 | Escrow Receipt | 23,627.16 | | (91,133.21) |
| 9/15/2010 | Escrow Receipt | 23,627.16 | | (67,506.05) |
| 9/22/2010 | Payments | | (65,948.14) | (133,454.19) |
| 9/27/2010 | Escrow Receipt | 6,251.32 | | (127,202.87) |
| 10/15/2010 | Escrow Receipt | 23,627.16 | | (103,575.71) |
| 11/17/2010 | Escrow Receipt | 23,627.16 | | (79,948.55) |
| 12/16/2010 | Escrow Receipt | 23,627.16 | | (56,321.39) |
| 12/20/2010 | Payments | | (102,162.41) | (158,483.80) |
| 2/4/2011 | Escrow Receipt | 23,015.67 | | (135,468.13) |
| 2/15/2011 | Escrow Receipt | 23,015.67 | | (112,452.46) |
| 3/15/2011 | Escrow Receipt | 23,015.67 | | (89,436.79) |
| 3/16/2011 | Payments | | (66,828.51) | (156,265.30) |
| 4/15/2011 | Escrow Receipt | 23,015.67 | | (133,249.63) |
| 5/18/2011 | Escrow Receipt | 23,015.67 | | (110,233.96) |
| 6/29/2011 | Payments | | (118,512.43) | (228,746.39) |
| 7/13/2011 | Escrow Receipt | 15.68 | | (228,730.71) |
| 9/20/2011 | Payments | | (54,206.91) | (282,937.62) |
| 9/26/2011 | Payments | 54,206.91 | | (228,730.71) |
| | | | | (205,103.25) |

| | | | | |
|---|---|---|---|---|
| December's 2011 Tax Estimate | | | (118,512.43) | (118,512.43) |
| Escrow payments Due: | | | | (118,512.43) |
| 8/1/2011 | | 23,015.67 | | (95,496.76) |
| 9/1/2011 | | 23,015.67 | | (72,481.09) |
| 10/1/2011 | | 23,015.67 | | (49,465.42) |
| 11/1/2011 | | 23,015.67 | | (26,449.75) |
| 12/1/2011 | | 23,015.67 | | (3,434.08) |
| | | 115,078.35 | | |

Exhibit F

# FIRST CENTRAL ✦ SAVINGS BANK

70 Glen Street, Glen Cove, NY 11542 Telephone: 516-609-3500 Fax 516-609-3635

By Certified Mail, Return                                           December 15th.2011
Receipt Requested

11 East 36th, LLC
Morgan Lofts, LLC
Bay Condos, LLC
11 East 36th Street, suite 1101
New York, NY 10016

Subject:        11 East 36th Street
                Loan number 0100009091

Dear Sirs:

This is being sent in response to the emails of December 13 and 14, 2011, sent from Mr. Joe
Bobker to Mr. Marc Leno of First Central Savings Bank (the "Bank").

You have been in arrears in the payment of this loan since September 1st 2010. We have, in good
faith, withheld acceleration of the loan and given you a more than fair opportunity to preserve
your equity. And as you are aware, this is not the first time in the history of this loan that we
have extended both good faith and patience. However, our good faith appears to have been
abused. Your responses are less driven to resolution of open issues, and more intent
upon creating some misbegotten and inaccurate record for the litigation, you repeatedly threaten.

With all due respect, please, for all concerned, do not focus on what this loan may or may not be
worth to this Bank or anyone else. Focus on the fact that your time to cure the defaults, which
was courteously extended until December 14, 2011 without any obligation to do so, has now
passed, and that the loan may be accelerated. Moreover, who owns this loan is irrelevant to the
obligations you have consciously and strategically allowed to remain outstanding, when monies
which are apparently available to you, could bring the loan current. Finally, on this point, your
offer to have this loan discounted to $9,150,000 is not only unacceptable, but puzzling too, when
you simultaneously admit that "for the moment" you have an undisclosed party willing to pay off
all or substantially all of the mortgage within 30 days. The only consistent message in all of this
is that you have no intention of paying all that is due and owing.

As to your comment that you met with one of *our* "potential buyers", it appears to be just another
effort to be provocative, without saying anything of relevance. Whomever you spoke to and what
was said is irrelevant to the Bank, and the Bank neither instigated any such discussion, nor have
any idea with whom or about what you spoke. In any event, in yet another good faith effort, we
will extend your time to pay the sum of $394,663.24 until close of business December 16, 2011,
time of essence. You are to wire the monies to the same destination to which you wired the
$123,000 last week.

The requir____ mount is clear, the deadline is clear, the mode of payment is clear, and the parties' respective ob__ __tions and consequences are clear. We genuinely hope you avail yourself of this opportunity. I ____ also attaching, as per your request, a payoff letter.

Lastly, as previously directed, please direct any further correspondence to our legal counsel, Jeffrey A. Gangemi, Esq., of Coritsidis & Lambros, PLLC, 46 Trinity Place, 4th Floor, New York, New York 10006.

This letter shall in no way be construed as an estoppel or waiver of any of First Central Savings Bank's rights or remedies. In addition, nothing contained herein shall constitute a waiver of any default under any of the subject Loan Documents or a waiver of Lender's right to declare a default based of any facts and circumstance that otherwise constitute or constituted a default under the Loan Documents.

Sincerely yours,

Thomas J. Stevens
Vice President, Chief Lending Officer

# FIRST CENTRAL ✦ SAVINGS BANK

7 Gle Street, Glen Cove, NY 11542  Telephone: 516-609-3500  Fax 516-609-3635

1./15/2011

11 East 36th St. LLC
11 East 36th St.
New York, NY 10016

Re: 11 East 36th St. LLC
11 East 36th St.
New York, NY 10016
CML # 0100009091

Dear Borrower:

As per your request, the following are necessary amounts to payoff the above referenced loan.

| | | |
|---|---|---:|
| Principal: | | $ 9,836,240.14 |
| Accrued Interest thru 12/16/11: | | 20,492.17 |
| Unpaid Late Charges: | | $ 33,591.38 |
| Escrow (negative) | | $ 205,009.24 |
| Pay Off Letter: | | $ 50.00 |
| Satisfaction Fee | | $ 450.00 |
| Total Payoff Amount Through - | 12/16/2011 | $ 10,095,832.93 |

Int. Rate=    5.00%

Per diem:    1,366.14

Should you have any questions, please do not hesitate to contact me at 516-609-3500 ext.320.

Sincerely,

Joseph Caiazzo
Loan Servicing Supervisor
First Central Savings Bank

# FIRST CENTRAL SAVINGS BANK

*70 Glen Street, Glen Cove, New York 11542  Tel: (516) 609-3600  Fax: (516) 609-3641*

December 22, 2011

**Certified and First Class Mail**

11 East 36th LLC
Morgan Lofts, LLC
Bay Condos, LLC
11 East 36th Street, suite 1101
New York, New York 10016

Re:   First Central Savings Bank ("Mortgagee") Mortgage Loan in the original
      principal amount of $10,000,000.00 to 11 East 36th, LLC, Morgan Lofts, LLC,
      and Bay Condos, LLC ("Borrower"); Loan number 0100009091

| | |
|---|---|
| Past Due Amounts: | $265,923.51 |
| Outstanding Principal Amount: | $9,836,240.14 |
| Total Outstanding Amount as of 12/21/11: | $10,102,663.65 |

Dear Sirs/Madams:

As you are aware, the referenced mortgage loan (the "Loan") is currently in default.
Among other things, you have failed to pay the Past Due Amounts, referenced above.

As a result, you are hereby notified that the Mortgagee has elected and does hereby elect
to declare the entire principal balance of the Loan immediately due and payable, together
with accrued interest and other amounts due. Formal demand is hereby made upon you
for the immediate payment of the $10,102,663.65. The daily default interest is $6,557.49.

In any event, legal action may be commenced against you, without further notice.

Please guide yourselves accordingly.

This letter shall in no way be construed as an estoppel or waiver of any of First Central
Savings Bank's rights or remedies.

Sincerely yours,

*Thomas J. Stevens*
Thomas J. Stevens
Vice President, Chief Lending Officer

# FIRST CENTRAL ✦ SAVINGS BANK

70 Glen Street, Glen Cove, NY 11542 Telephone: 516-609-3500 Fax 516-609-3639

January 4, 2012

11 EAST 36TH STREET LLC
11 E 36TH ST STE 1101
NEW YORK, NY 10016

RE: Loan # 100009091

Dear Sir/Madam:

Please note that our records indicate that your account is thirty (30) days past due as of January 4, 2011 and also will be categorized as seriously delinquent.   Therefore, please remit immediate payment of $118,209.12 to us so as to bring your account current as soon as possible.  (You have an option to wire funds, if so, please call us.)

**If a payment has already been mailed to us please disregard this notice**

* All residential loans Under the Homeownership Counseling Act we are advising you that you can contact 1-800-569-4287 to locate an approved housing counselor or visit the HUD internet website for a list of counselors at http://www.hud.gov/offices/hsg/sfh/hcc/hccprof14.cfm for homeownership counseling if you are experiencing difficulty making your payments. *We have told a credit bureau about a late payment, missed payment or other default on your account. This information may be reflected in your credit report.*

If this is a commercial loan, according to the mortgage note First Central Savings Bank has the right to immediately impose the *maximum interest of 24%,* which will go in effect within the next ten (10) business days if we are not in receipt of full payment.

Thank you for your business, as we endeavor to provide you with the best service possible.

Regards,

Chuck Scott

Chuck Scott (Ext. 325)
Collection Department
First Central Savings Bank

cc. Legal File

* Applies only to residential 1-4 family homeowners.

Exhibit G

| 11 East 36 Note Buyer - Legal Bills | | |
|---|---|---|
| Damon Morey | $ | 7,500.00 |
| Damon Morey | $ | 24,990.00 |
| Damon Morey | $ | 2,588.95 |
| Damon Morey | $ | 21,770.64 |
| Wenig Saltiel | $ | 1,500.00 |
| Einig & Bush | $ | 12,030.00 |
| Einig & Bush | $ | 4,687.50 |
| Einig & Bush | $ | 12,000.00 |
| Einig & Bush | $ | 8,000.00 |
| Deluca | $ | 25,017.00 |
| Deluca | $ | 90,593.10 |
| Deluca | $ | 26,404.69 |
| Frankel | $ | 136,319.86 |
| Frankel | $ | 57,747.89 |
| Total | $ | 431,149.63 |

THE AVANT BUILDING >> SUITE 1200 >> 200 DELAWARE AVENUE >> BUFFALO NY 14202-2150  p> 716.856.5500  f> 716.856.5510  w> damonmorey.com

*Paio #7,500*
*2/13/13*

WILLIAM F. SAVINO
PARTNER
wsavino@damonmorey.com
716.858.3790

**DAMON MOREY.**
ATTORNEYS AT LAW

BUFFALO >> CLARENCE >> ROCHESTER

February 13, 2013

Michael K. Shah, CEO                    VIA E-MAIL & FIRST CLASS MAIL
DelShah Capital, LLC,
114 E. 13th Street, Front 1
New York, New York  10003

> Re:    *GHC NY Corp. - File No. 19470.0007*
> *12-S-05 Sussman & DLG Sheriff's Auction 12 Parcels – File No. 19470.0016*
> *Cross Island Plaza – File No. 19470.0017*

Dear Mike:

Initially, we are very disappointed that no payment has been transmitted from you despite your e-mail advice of January 29, 2013 that you would be reviewing our statements and putting same in line for payment. We have received nothing since December 4, 2012, over ten weeks ago. Your long overdue accounts receivable balance on all matters (not including the enclosed statements) is $181,193.01 and is being scrutinized by our firm's Finance Committee. With your several open, active matters we cannot continue to perform absent receipt of significant payment of these outstanding charges. We urge you to immediately authorize payment of this balance before my travel to New York on February 28th to argue the GHC motion.

Secondly, enclosed herewith are our statements in respect to the above-referenced matters as follows:

*55 6ans.*

*$15,000*    1.    On the GHC NY Corp. file (19470.0007) for the month of January, 2013 in the amount of $1,674.21. Please note, the outstanding accounts receivable on this matter is $31,508.51 (representing our charges through December, 2012) and brings the total balance now due on this matter to $33,182.72;

*? larry*    2.    On the 12-S-05 Sussman matter (19470.0016) for the month of January, 2013 in the amount of $940.00. Please note, the outstanding accounts receivable on this matter is $4,970.00 (representing our charges through December, 2012) and brings the total balance now due on this matter to $5,910.00; and

*3 larry N/A*    3.    On the Cross Island Plaza matter (19470.0017) for the period of December 19, 2012 through January 31, 2013 in the amount of $1,950.00.

Again, for your review, we have itemized below the outstanding account receivable balances on the following (not being billed at this time) other matters:

*what are these?*    A.    On the Miscellaneous/General file (19470.0005) for the month of March, 2012 in the amount of $880.00. These outstanding charges are now nearly one year old;
B.    On the 163 W 80 LLC file (19470.0006) for time charges as billed through October, 2012 in the amount of $655.00; *To evaluate whether there is an appeal*

**>> progressive.firm.**

Michael K. Shah, CEO
February 13, 2013
Page 2

C.   On the Personal Trust Matters file (19470.0008) for time charges as billed through December, 2012 in the amount of $18,356.82;

D.   On the Morgan Lofts LLC file (19470.0009) for time charges as billed through October, 2012 in the amount of $13,364.16;

E.   On the 166 West 75th Street, LLC file (19470.0011) for time charges as billed through December, 2012 in the amount of $17,110.00;

F.   On the 22 Renwick-Actions file (19470.0012) for time charges as billed through December, 2012 in the amount of $35,623.76;

G.   On the GHC Foreclosure file (19470.0013) for time charges as billed through July, 2012 in the amount of $24,211.00;

H.   On the Bedford Avenue file (19470.0014) for time charges as billed through December, 2012 in the amount of $28,668.76;

I.   On the Brighton First LLC file (19470.0015) for time charges as billed through November, 2012 in the amount of $5,845.00.

Inclusive of the five above-referenced matters, not being further billed at this time, and the three enclosed statements, the total accounts receivable balance due Damon Morey LLP is now $185,757.11. A six-digit wire, similar to December's, received before this month's end and my commitment to traveling to New York to argue the GHC motion, would help to bring some of these now overdue matters current. Please advise if you or Lucia Lammers (who is copied on this at your instruction) require copies of any of these past-due invoices to facilitate payment thereof.

If you have any questions about the enclosures or the foregoing, please do not hesitate to contact me. We value your engagement and our relationship, but your attention to the foregoing is strongly advised and would be greatly appreciated.

Very truly yours,

William F. Savino
for DAMON MOREY LLP

WFSsam
encls.
cc: Ms. Lucia Lammers, Payables Dept.

Doc #1782723.1

THE AVANT BUILDING ≫ SUITE 1200 ≫ 200 DELAWARE AVENUE ≫ BUFFALO NY 14202-2150  p> 716.856.5500  f> 716.856.5510  w> damonmorey.com



Paid 24,990.00
8/8/12

**WILLIAM F. SAVINO**
PARTNER
wsavino@damonmorey.com
716.856.3790

DAMON MOREY LLP
ATTORNEYS AT LAW

BUFFALO ≫ CLARENCE ≫ ROCHESTER

May 1, 2012

Michael K. Shah, CEO,                    VIA E-MAIL & FIRST CLASS MAIL
DelShah Capital, LLC,
11 East 36 Note Buyer, LLC,          *11 Note Buyer*
Griffon V LLC,
Jointly and Severally
114 E. 13th Street, Front 1
New York, New York  10003

                                                                        OK

        Re:    *Morgan Lofts, LLC, et al.* – *Our File No. 19470.0009*

Dear Mike:

        Enclosed herewith is our interim statement in respect to the Morgan Lofts, LLC, et al. file
(19470.0009) for the four-month period of January 1 through April 30, 2012 in the amount of
$24,990.00 for legal services only.  Please be advised that Damon Morey has yet to receive
and/or process the various disbursement charges to be paid on your behalf relative to this
matter (i.e. filing fees, publishing fees, etc.).  We will be billing these disbursements along with
any final wrap-up charges we may incur on this matter at a later date.  We trust you will find this
statement for legal services only to be satisfactory.  At your instruction we are forwarding (via e-
mail) a copy of this bill to Lucia Lammers to facilitate payment.  Due to our billing system please
return the enclosed Remittance Copy with your payment.

        Please feel free to give Marc or me a call should you have any questions regarding the
foregoing or the enclosure.

                                                Very truly yours,

                                                William F. Savino
                                                for DAMON MOREY LLP

WFSsam
encls.
cc: Ms. Lucia Lammers (via e-mail)
      Payables Dept., DelShah Capital, LLC
      Michael Lupo
icc: Marc J. Krawiec, Esq.


≫ progressive.firm.

# DAMON MOREY LLP

The Avant Building — Suite 1200
200 Delaware Avenue
Buffalo, New York 14202 - 2150
716-856-5500
Fax 716-856-5510
FEI: 16-0734852

**REMITTANCE COPY**

April 30, 2012
Invoice Number: 259648

Michael K. Shah, CEO
DelShah Capital, LLC
11 East 36 Note Buyer, LLC
Griffon V LLC,
Jointly and Severally
114 E. 13th Street, Front 1
New York, NY 10003

RE:    Morgan Lofts, LLC, et al.
       Our File No.: 19470.0009  WFS

**REMITTANCE COPY** FOR PROFESSIONAL SERVICES RENDERED in the above matter from
January 1, 2012 through April 30, 2012, as summarized below and detailed on the attached schedule:

Total Services                                                    $24,990.00

SMLO
#1692458

# DAMON MOREY LLP

**The Avant Building – Suite 1200**
**200 Delaware Avenue**
**Buffalo, New York 14202 - 2150**
**716-856-5500**
**Fax 716-856-5510**
**FEI: 16-0734852**

April 30, 2012
Invoice Number: 259648

Michael K. Shah, CEO
DelShah Capital, LLC
11 East 36 Note Buyer, LLC
Griffon V LLC,
Jointly and Severally
114 E. 13th Street, Front 1
New York, NY 10003

RE:   Morgan Lofts, LLC, et al.
      Our File No.: 19470.0009  WFS

FOR PROFESSIONAL SERVICES RENDERED in the above matter from January 1, 2012 through
April 30, 2012, as summarized below and detailed on the attached schedule:

## SUMMARY OF SERVICES

|     | Timekeeper | Hours | Rate | Value |
|-----|------------|------:|-----:|------:|
| FWH | HELLER, FRANKLIN W.    | 4.80  | 300.00 | 1,440.00 |
| WFS | SAVINO, WILLIAM F.     | 10.10 | 300.00 | 3,030.00 |
| JTK | KOLAGA, JOHN T.        | 3.30  | 250.00 | 825.00 |
| BS  | SCHENKLER, BERNARD     | 24.30 | 250.00 | 6,075.00 |
| MJK | KRAWIEC, MARC J.       | 68.10 | 200.00 | 13,620.00 |
|     | Total Hours           | 110.60 | | |

Total Services                                               $24,990.00

SMLO
#1692458

Michael K. Shah, CEO
April 30, 2012
Page 2

Morgan Lofts, LLC, et al.
19470.0009

| Date | Description | Atty | Hours |
|---|---|---|---|
| January 16, 2012 | Extended telephone conference with Michael K. Shah, Esq.; reviewed numerous e-mail correspondence from Michael K. Shah, Esq.; began research regarding recourse against membership units; gathered case law on substantive consolidation, injunction versus attachment, and dissolution of a limited liability company; prepared e-mail correspondence to client regarding same and attaching copies of landmark decision. | WFS | 0.90 |
| February 13, 2012 | Reviewed various e-mail correspondence from client. | WFS | 0.20 |
| February 29, 2012 | Exchanged e-mail correspondence with Michael K. Shah, Esq. | WFS | 0.10 |
| March 5, 2012 | Several telephone conferences with Michael K. Shah, Esq.; analyzed Bay Condos bankruptcy case including various schedules and affidavits filed therein; reviewed all e-mail; began review of Deed restrictions; worked on strategy; reviewed various organization chart. | WFS | 0.90 |
| March 6, 2012 | Reviewed e-mails and researched issues regarding single asset bankruptcy case including non-debtor property in Chapter 11 restructuring. | BS | 2.10 |
| March 6, 2012 | Prepared Memorandum with all open issues and questions including research assignments; repeatedly exchanged e-mail correspondence regarding status; reviewed e-mail correspondence regarding Essex Operating Agreement. | WFS | 0.70 |
| March 7, 2012 | Continued review of issues regarding Bay Condo bankruptcy and Morgan Lofts and prepared initial memorandum. | BS | 4.90 |
| March 8, 2012 | Continued research regarding Chapter 11 issues raised in Bay Condos - Morgan Lofts. | BS | 3.90 |

Michael K. Shah, CEO
April 30, 2012
Page 3   .

Morgan Lofts, LLC, et al.
19470.0009

| Date | Description | Atty | Hours |
|------|-------------|------|-------|
| March 9, 2012 | Continued review and revisions to memorandum regarding Morgan Lofts and Bay Condo's bankruptcy. | BS | 4.10 |
| March 9, 2012 | Edited Memorandum to client and repeatedly exchanged e-mail correspondence in respect thereof. | WFS | 0.60 |
| March 12, 2012 | Reviewed e-mail from Michael K. Shah, Esq. regarding whether Section 506(b) includes non-debtor property; researched and prepared memorandum regarding effect of Section 506(b). | BS | 5.50 |
| March 12, 2012 | Edited memorandum to client. | WFS | 0.40 |
| March 13, 2012 | Further revisions to Section 506(b) memorandum and transmittal to Michael K. Shah, Esq. and Lorenzo DeLuca, Esq. | BS | 1.80 |
| March 13, 2012 | Repeatedly exchanged e-mail correspondence with Michael K. Shah, Esq.; worked on 506(c) Memorandum; reviewed and approved final revisions thereto. | WFS | 0.30 |
| March 14, 2012 | Conference call with Michael K. Shah, Esq., etc. regarding Bay Condo issues; reviewed additional issues regarding Section 1124 and post-petition default interest. | BS | 0.70 |
| March 14, 2012 | Conference call with Michael K. Shah, Esq. and Marc Frankel, Esq. | WFS | 0.40 |
| March 26, 2012 | Exchanged e-mail correspondence with Michael K. Shah, Esq.; reviewed e-mail correspondence from Lorenzo DeLuca, Esq. | WFS | 0.10 |
| March 29, 2012 | Assembled all documents and information for analysis. | WFS | 0.50 |

Michael K. Shah, CEO
April 30, 2012
Page 4

Morgan Lofts, LLC, et al.
19470.0009

| Date | Description | Atty | Hours |
|------|-------------|------|-------|
| April 2, 2012 | Reviewed term sheet and documents from Michael K. Shah, Esq. regarding structure of Morgan Lofts transaction; telephone call with lender's counsel to discuss matters related to loan agreement. | MJK | 1.90 |
| April 2, 2012 | Read numerous bankruptcy filings; deed; operating agreement, memoranda, etc. to prepare for extended call with Kaye Scholer, Esq.; very extended conference call with Louis Hait, Esq. and Erin Allardyce, Esq. and Michael Lupo, etc.; further telephone conference with Michael Lupo; arranged for circulation of compact discs; extended telephone conference with Michael K. Shah, Esq. | WFS | 1.80 |
| April 12, 2012 | Reviewed closing check list from Aaron Allardyce, Esq. and briefly reviewed same. | WFS | 0.10 |
| April 13, 2012 | Reviewed loan closing checklist and documents sent by Michael K. Shah, Esq. concerning obligations of borrower securing loan from LoanCore Capital. | MJK | 2.50 |
| April 14, 2012 | Exchanged e-mail correspondence with Michael K. Shah, Esq. | WFS | 0.10 |
| April 15, 2012 | Exchanged e-mail correspondence with Michael K. Shah, Esq. regarding assignment. | WFS | 0.10 |
| April 16, 2012 | Reviewed issues regarding Morgan Condos; conference call with Michael K. Shah, Esq. regarding current Chapter 11 issues. | BS | 1.30 |
| April 16, 2012 | Reviewed Michael K. Shah, Esq.'s 1/16/12 correspondence regarding pending collection action and foreclosure action regarding 11-E. 36th and Morgan Lofts; conference regarding same; examined 2nd Dept. opinion in Griffon U LLC v. 11 East 36th Street; reviewed authorities (treatise and cases) regarding election of remedies provisions in RPAPL 1301; conference regarding same. | FWH | 4.40 |

Michael K. Shah, CEO
April 30, 2012
Page 5

Morgan Lofts, LLC, et al.
19470.0009

| Date | Description | Atty | Hours |
|------|-------------|------|-------|
| April 16, 2012 | Conference to discuss borrower bankruptcy issues related to Morgan Lofts financing transaction; conference to discuss due diligence matters related to Morgan Lofts acquisition; reviewed underlying loan documents related to proposed acquisition and previous acquisition completed by Griffon V, LLC; prepared summary of underlying loan documents in preparation for work on financing agreements. | MJK | 4.40 |
| April 16, 2012 | Reviewed key documents; reviewed numerous e-mail correspondence; extended conference call with client; formulated responses to Loan Core Corporation; reviewed foreclosure by First Central Savings; reviewed all bankruptcy papers; reviewed letter from condominium association attorney; reviewed motion for extension; reviewed motion to set bar; repeatedly exchanged e-mail correspondence with Michael K. Shah, Esq.; repeatedly exchanged e-mail correspondence with Michael Lupo; repeatedly exchanged e-mail correspondence with Marc Frankel. | WFS | 1.90 |
| April 17, 2012 | Prepared New York applications for authority for 11 East 36 entities; started work on limited liability company agreement of borrower; reviewed additional due diligence materials related to underlying loan documents and collateral being pledged in connection with acquisition financing; reviewed closing checklist prepared by lender's counsel; telephone call with lender's counsel to discuss closing requirements for acquisition financing. | MJK | 4.40 |
| April 18, 2012 | Reviewed draft of loan agreement from Jeffries LoanCore and prepared changes and comments to same; telephone calls with lender's counsel to discuss loan agreement provisions and impact of existing Griffon V financing on nature of collateral pledged to Jeffries; telephone call with Mr. Lupo to | MJK | 9.80 |

Michael K. Shah, CEO
April 30, 2012
Page 6

Morgan Lofts, LLC, et al.
19470.0009

| Date | Description | Atty | Hours |
|------|-------------|------|-------|
| | discuss initial draft of loan agreement; made additional revisions to loan agreement based on calls with lender's counsel and Mr. Lupo. | | |
| April 18, 2012 | Reviewed various e-mail correspondence from Michael K. Shah, Esq.; exchanged various e-mail correspondence regarding Bobker judgment and hearing. | WFS | 0.20 |
| April 19, 2012 | Completed revisions to initial draft of loan agreement for Morgan Lofts loan acquisition financing; prepared e-mail to lender's counsel regarding organizational information for Griffon V, LLC; prepared e-mail to United Corporate Services regarding organization of borrower and parent entities for transaction; prepared IRS forms SS-4 and EIN authorizations for borrower and parent entities. | MJK | 5.50 |
| April 20, 2012 | Telephone call with Mr. Lupo to discuss revisions to draft of loan agreement with Jeffries LoanCore; made further revisions to draft of loan agreement based on discussion with Mr. Lupo; telephone conference with Mr. Lupo, Mr. Allardyce, and Mr. Schulte to discuss various open business issues related to loan agreement; made further revisions to loan agreement based on discussions during conference; telephone conference with Mr. Shah and Mr. Lupo to discuss additional open issues related to draft of loan agreement. | MJK | 3.90 |
| April 21, 2012 | Made final changes to initial draft of Jeffries LoanCore loan agreement and prepared e-mail to lender's counsel regarding same. | MJK | 1.10 |
| April 23, 2012 | Reviewed drafts of ancillary loan documents sent by counsel to Jeffries LoanCore and prepared comments and changes concerning same; telephone call with IRS to obtain employer identification number for 11 East 36 Note Buyer LLC; telephone calls with counsel to lender to discuss closing requirements for acquisition financing; telephone calls with Mr. | MJK | 5.90 |

Michael K. Shah, CEO
April 30, 2012
Page 7 .

Morgan Lofts, LLC, et al.
19470.0009

| Date | Description | Atty | Hours |
|------|-------------|------|-------|
| | Shah and Mr. Lupo to discuss comments on ancillary loan documents. | | |
| April 24, 2012 | Reviewed updated closing checklist sent by Mr. Allardyce in connection with Jeffries LoanCore loan; prepared consents of borrower and parent entities authorizing loan documents; prepared general certificates of borrower and parent entities; reviewed escrow and interest rate protection pledge agreements sent by lender's counsel; prepared draft of opinion letter for loan closing; telephone calls with Mr. Lupo and Mr. Allardyce to discuss matters related to closing of loan agreement; prepared e-mail to issuer of UCC insurance policy concerning organization of borrower entities. | MJK | 4.80 |
| April 25, 2012 | Conference regarding terms of provision in collateral assignment of mortgage regarding return of same upon payment of debt secured thereby, and issue of status of collateral assignee upon default in mortgagor's payment of underlying loan; examined additional opinions regarding issue of assigned mortgage. | FWH | 0.40 |
| April 25, 2012 | Reviewed redline; revised further and conference thereon. | JTK | 2.90 |
| April 25, 2012 | Reviewed and revised loan agreement and ancillary loan documents related to Jeffries LoanCore loan; telephone calls with Mr. Shah, Mr. Lupo and Mr. Allardyce to discuss various open issues related to loan closing; organized signature pages for Mr. Shah and prepared for closing of loan transaction. | MJK | 9.90 |
| April 25, 2012 | Exchanged e-mail correspondence with Michael K. Shah, Esq. and Lorenzo DeLuca, Esq. | WFS | 0.10 |
| April 26, 2012 | Attended to various matters related to closing of financing for Morgan Lofts loan acquisition; telephone calls with Mr. Lupo and Mr. Allardyce regarding same. | MJK | 8.80 |

Michael K. Shah, CEO
April 30, 2012
Page 8

Morgan Lofts, LLC, et al.
19470.0009

| Date | Description | Atty | Hours |
|------|-------------|------|-------|
| April 26, 2012 | Repeatedly exchanged e-mail correspondence with Michael K. Shah, Esq. regarding Proof of Claim. | WFS | 0.20 |
| April 27, 2012 | Four telephone conferences and reviewed Seller's contract changes. | JTK | 0.40 |
| April 27, 2012 | Attended to closing of financing for acquisition of Morgan Lofts loan. | MJK | 3.80 |
| April 27, 2012 | Telephone conference with Michael K. Shah, Esq.; exchanged e-mail correspondence with Michael K. Shah, Esq. | WFS | 0.20 |
| April 28, 2012 | Repeatedly exchanged e-mail correspondence with Michael K. Shah, Esq.; reviewed e-mail correspondence from Marc Frankel, Esq.; confirmed adjournment. | WFS | 0.20 |
| April 29, 2012 | Repeatedly exchanged e-mail correspondence with Michael K. Shah, Esq. | WFS | 0.10 |
| April 30, 2012 | Attended to post-closing matters related to Morgan Lofts transaction financing; prepared e-mails to Mr. Lupo and Mr. Allardyce regarding same. | MJK | 1.40 |
| | Total Hours | | 110.60 |
| | Total Services | | $24,990.00 |

THE AVANT BUILDING >> SUITE 1200 >> 200 DELAWARE AVENUE >> BUFFALO, NY 14202-2150  p> 716.856.5500  f> 716.856.5510  w> damonmorey.com

*Paid 2,588.95*
*8/8/12*

**WILLIAM F. SAVINO**
PARTNER
wsavino@damonmorey.com
716.858.3790

**DAMON MOREY**
ATTORNEYS AT LAW

June 18, 2012

Michael K. Shah, CEO                    *N Note Buyer*          VIA E-MAIL & FIRST CLASS MAIL
DelShah Capital, LLC
149 Madison Avenue, Suite 701
New York, New York  10016

> **Re:    *Morgan Lofts, LLC, et al. - Our File No. 19470.0009***
> ***166 West 75th Street, LLC – Our File No. 19470.0011***

Dear Mike:

Enclosed herewith are our interim statements in respect to the above-referenced matters as follows:

1.    On the Morgan Lofts, LLC matter (19470.0009) for the two-month period of April 1 through May 31, 2011 in the amount of $1,195.00 for services and $1,393.95 for disbursements paid out of pocket for a total of $2,588.95. We trust you will find this statement to be satisfactory.  Please note, there remains an outstanding accounts receivable balance of $24,990.00 (representing our charges through March, 2012) and bringing the total balance now due on this matter to $27,578.95;  *ok*

2.    On the 166 West 75th Street, LLC matter (19470.0011) for the month of May, 2012 in the amount of $995.00.  Larry brought us in last week on drafting for state court on opposing the referee's report.  We got Larry our proposed Memorandum of Law on Friday.  *ok*

We trust you will find these statements to be satisfactory.  Due to our billing system please return the enclosed Remittance Copy with your total payment of $28,573.95 to bring these matters current through May, 2012.

Please feel free to give me a call should you have any questions regarding the enclosures. Thank you.

Very truly yours,

William F. Savino
for DAMON MOREY LLP

WFSsam
encls.
cc: Ms. Lucia Lammers (via e-mail)
    Payables Dept., DelShah Capital, LLC
icc: Marc J. Krawiec, Esq.
Doc #1706230.1

**>> progressive.firm.**

## DAMON MOREY LLP

The Avant Building – Suite 1200
200 Delaware Avenue
Buffalo, New York 14202 - 2150
716-856-5500
Fax 716-856-5510
FEI: 16-0734852

**REMITTANCE COPY**

June 11, 2012
Invoice Number: 261568

Michael K. Shah, CEO
DelShah Capital, LLC
114 E. 13th Street, Front 1
New York, NY 10003

---

RE:    Morgan Lofts, LLC, et al.
       Our File No.: 19470.0009 WFS

**REMITTANCE COPY** FOR PROFESSIONAL SERVICES RENDERED in the above matter from
April 1, 2012 through May 31, 2012, as summarized below and detailed on the attached schedule:

Total Services                                           $1,195.00

Total Disbursements                                      $1,393.95

TOTAL SERVICES AND DISBURSEMENTS                         $2,588.95

SMLO

# DAMON MOREY LLP

The Avant Building – Suite 1200
200 Delaware Avenue
Buffalo, New York 14202 - 2150
716-856-5500
Fax 716-856-5510
FEI: 16-0734852

June 11, 2012
Invoice Number: 261568

Michael K. Shah, CEO
DelShah Capital, LLC
114 E. 13th Street, Front 1
New York, NY 10003

RE:   Morgan Lofts, LLC, et al.
      Our File No.: 19470.0009 WFS

FOR PROFESSIONAL SERVICES RENDERED in the above matter from April 1, 2012 through
May 31, 2012, as summarized below and detailed on the attached schedule:

## SUMMARY OF SERVICES

|     | Timekeeper | Hours | Rate | Value |
|-----|------------|------:|-----:|------:|
| WFS | SAVINO, WILLIAM F. | 1.70 | 300.00 | 510.00 |
| BS | SCHENKLER, BERNARD | 2.10 | 250.00 | 525.00 |
| MJK | KRAWIEC, MARC J. | 0.80 | 200.00 | 160.00 |
|     | Total Hours | 4.60 |  |  |

| | |
|---|---:|
| Total Services | $1,195.00 |
| Total Disbursements | $1,393.95 |
| TOTAL SERVICES AND DISBURSEMENTS | $2,588.95 |

SMLO

Michael K. Shah, CEO
June 11, 2012
Page 4

Morgan Lofts, LLC, et al.
19470.0009

| Disbursements | Value | |
|---|---|---|
| Certificate of Good Standing:  United Corporate Services, Inc. | 1010.00 | |
| Filing Fees:  United Corporate Services, Inc. | 74.00 | |
| Service Bureau Fees:  United Corporate Services, Inc. | 309.95 | |
| Total Disbursements | | $1,393.95 |
| TOTAL SERVICES AND DISBURSEMENTS | | $2,588.95 |

Michael K. Shah, CEO
June 11, 2012
Page 2

Morgan Lofts, LLC, et al.
19470.0009

| Date | Description | Atty | Hours |
|------|-------------|------|-------|
| April 30, 2012 | Conference call with Michael K. Shah, Esq., Mark Frankel, Esq., Lorenzo DeLuca, Esq., etc.; repeatedly exchanged e-mail correspondence regarding motion on exclusivity; reviewed numerous e-mail correspondence from Michael K. Shah, Esq.; reviewed several e-mail correspondence from Mark Frankel, Esq.; reviewed two e-mail correspondence from Lorenzo DeLuca, Esq. | WFS | 0.70 |
| May 1, 2012 | Reviewed additional issues regarding Bay Condos, motion for exclusivity and proposed opposition. | BS | 1.50 |
| May 1, 2012 | Prepared e-mails to lender's counsel and issuer of UCC insurance policy regarding post closing matters related to issuance of UCC policy; prepared e-mail to Mr. Lupo regarding post closing matters; reviewed correspondence regarding motion in Morgan Lofts bankruptcy case. | MJK | 0.80 |
| May 1, 2012 | Prepared letter to client; repeatedly exchanged e-mail correspondence regarding violation of escrow agreement; exchanged e-mail correspondence with Michael K. Shah, Esq. regarding Bay condos bankruptcy; reviewed various e-mail correspondence from Lorenzo DeLuca, Esq. regarding credit bidding. | WFS | 0.30 |
| May 3, 2012 | Conference call with client and counsel for the condominium association; prepared e-mail Memorandum of the contents of the conference call; further telephone conference with Michael K. Shah, Esq.; reviewed e-mail correspondence from client. | WFS | 0.50 |
| May 8, 2012 | Reviewed opposition papers in Bay Condo's bankruptcy. | BS | 0.60 |

Michael K. Shah, CEO
June 11, 2012
Page 3

Morgan Lofts, LLC, et al.
19470.0009

| Date | Description | Atty | Hours |
|------|-------------|------|-------|
| May 14, 2012 | Reviewed numerous e-mail correspondence from client; reviewed e-mail correspondence regarding Bobker family history; exchanged voice mail with Mark Frankel, Esq. | WFS | 0.20 |
| | Total Hours | | 4.60 |
| | Total Services | | $1,195.00 |

*[handwritten top right: Paid $21,770.64  10/9/13]*

# DAMON MOREY LLP

Avant Building, Suite 1200
200 Delaware Avenue
Buffalo, New York 14202-2150
716-856-5500
Fax: 716-856-5534
FEI: 16-0734852

# STATEMENT
## Tuesday, October 08, 2013

DelShah Capital, LLC
114 E. 13th Street, Front 1
New York, NY 10003

Client No.:    19470
Client Name:

| Invoice Date | Invoice Number | Amount Billed | Amount Paid | Balance Due |
|---|---|---|---|---|
| .0003 | 19 Stanton Street, LLC | | | |
| Claim Number: | N/A | | | |
| 6/11/2013 | 0277662 | $390.00 | $0.00 | $390.00 |
| | | | Matter Total: | $390.00 |
| 0007 | GHC NY Corp. | | | |
| Claim Number: | N/A | | | |
| 6/11/2013 | 0277673 | $8,483.99 | $0.00 | $8,483.99 |
| 7/12/2013 | 0279464 | $555.00 | $0.00 | $555.00 |
| 8/8/2013 | 0280607 | $7,275.00 | $0.00 | $7,275.00 |
| 9/10/2013 | 0281784 | $13,985.22 | $0.00 | $13,985.22 |
| | | | Matter Total: | $30,299.21 |
| 0009 | Morgan Lofts, LLC, et al. | | | |
| Claim Number: | N/A | | | |
| 6/11/2013 | 0277664 | $980.00 | $0.00 | $980.00 |
| 7/12/2013 | 0279469 | $13,085.42 | $0.00 | $13,085.42 |
| 8/8/2013 | 0280605 | $5,635.00 | $0.00 | $5,635.00 |
| 9/10/2013 | 0281946 | $2,070.22 | $0.00 | $2,070.22 |
| | | | Matter Total: | $21,770.64 |
| | | | Total Due: | $52,459.85 |

*[handwritten annotations: "Courtesy" next to first matter; "HOLDINGS" near GHC NY Corp.; "Bill Add to Morgan Lofts Payoff" at right; "Del Buyer" near Morgan Lofts]*

This statement includes all outstanding invoices.  Thank you for your continued business.

If you have any questions, please contact Maureen Flanagan at 716-858-3704 or e-mail her at mflanagan@damonmorey.com.

**We now accept Mastercard and Visa**

# DAMON MOREY LLP

The Avant Building – Suite 1200
200 Delaware Avenue
Buffalo, New York 14202 - 2150
716-856-5500
Fax 716-856-5510
FEI: 16-0734852

**REMITTANCE COPY**

June 11, 2013
Invoice Number: 277664

Michael K. Shah, CEO
DelShah Capital, LLC
114 E. 13th Street, Front 1
New York, NY 10003

RE:    Morgan Lofts, LLC, et al.
       Our File No.: 19470.0009  WFS

**REMITTANCE COPY** FOR PROFESSIONAL SERVICES RENDERED in the above matter from
November 1, 2012 through May 31, 2013, as summarized below and detailed on the attached schedule:

Total Services                                                          $980.00

MEF

### DAMON MOREY LLP

The Avant Building – Suite 1200
200 Delaware Avenue
Buffalo, New York 14202 - 2150
716-856-5500
Fax 716-856-5510
FEI: 16-0734852

June 11, 2013
Invoice Number: 277664

Michael K. Shah, CEO
DelShah Capital, LLC
114 E. 13th Street, Front 1
New York, NY 10003

RE:    Morgan Lofts, LLC, et al.
       Our File No.: 19470.0009  WFS

FOR PROFESSIONAL SERVICES RENDERED in the above matter from November 1, 2012 through
May 31, 2013, as summarized below and detailed on the attached schedule:

### SUMMARY OF SERVICES

|     | Timekeeper | Hours | Rate | Value |
|-----|------------|------:|-----:|------:|
| WFS | SAVINO, WILLIAM F. | 1.60 | 300.00 | 480.00 |
| BS  | SCHENKLER, BERNARD | 2.00 | 250.00 | 500.00 |
| WFS | SAVINO, WILLIAM F. | 0.50 | 0.00 | 0.00 |
|     | Total Hours | 4.10 | | |

Total Services                                                        $980.00

MEF

Michael K. Shah, CEO
June 11, 2013
Page 2

Morgan Lofts, LLC, et al.
19470.0009

| Date | Description | Atty | Hours |
|---|---|---|---|
| November 8, 2012 | Prepared letter to client (no charge). | WFS | 0.20 |
| January 10, 2013 | Reviewed revised objection to Amended Disclosure Statement and comments to Mark Frankel, Esq. | BS | 0.70 |
| February 1, 2013 | Repeatedly exchanged e-mail correspondence with Michael K. Shah, Esq. (no charge). | WFS | 0.20 |
| February 2, 2013 | Exchanged e-mail correspondence with Lorenzo DeLuca, Esq. and Michael K. Shah, Esq. (no charge). | WFS | 0.10 |
| April 16, 2013 | Reviewed and commented on Bay Condo's draft objection. | BS | 0.30 |
| May 22, 2013 | Conference with Michael K. Shah, Esq. and Lorenzo DeLuca, Esq.; very extended conference call with Mark Frankel, Esq.; reviewed e-mail correspondence. | WFS | 0.80 |
| May 30, 2013 | Extended conference call with client and Mark Frankel, Esq.; formulated strategy; reviewed numerous e-mail correspondence from Michael K. Shah, Esq.; started research. | WFS | 0.80 |
| May 31, 2013 | Research regarding application of rents by a mortgagee in possession. | BS | 1.00 |
| | Total Hours | | 4.10 |
| | Total Services | | $980.00 |

# DAMON MOREY LLP

The Avant Building – Suite 1200
200 Delaware Avenue
Buffalo, New York 14202 - 2150
716-856-5500
Fax 716-856-5510
FEI: 16-0734852

**REMITTANCE COPY**

July 12, 2013
Invoice Number: 279469

Michael K. Shah, CEO
DelShah Capital, LLC
114 E. 13th Street, Front 1
New York, NY 10003

---

RE:   Morgan Lofts, LLC, et al.
      Our File No.: 19470.0009 WFS

**REMITTANCE COPY** FOR PROFESSIONAL SERVICES RENDERED in the above matter from
June 1, 2013 through June 30, 2013, as summarized below and detailed on the attached schedule:

| | |
|---|---:|
| Total Services | $12,885.00 |
| Total Disbursements | $200.42 |
| TOTAL SERVICES AND DISBURSEMENTS | $13,085.42 |

MEF

# DAMON MOREY LLP

The Avant Building – Suite 1200
200 Delaware Avenue
Buffalo, New York 14202 - 2150
716-856-5500
Fax 716-856-5510
FEI: 16-0734852

Michael K. Shah, CEO
DelShah Capital, LLC
114 E. 13th Street, Front 1
New York, NY 10003

July 12, 2013
Invoice Number: 279469

RE:  Morgan Lofts, LLC, et al.
     Our File No.: 19470.0009  WFS

FOR PROFESSIONAL SERVICES RENDERED in the above matter from June 1, 2013 through
June 30, 2013, as summarized below and detailed on the attached schedule:

## SUMMARY OF SERVICES

|     | Timekeeper | Hours | Rate | Value |
|-----|------------|-------|------|-------|
| FWH | HELLER, FRANKLIN W. | 6.80 | 300.00 | 2,040.00 |
| WFS | SAVINO, WILLIAM F. | 3.90 | 300.00 | 1,170.00 |
| BS  | SCHENKLER, BERNARD | 38.70 | 250.00 | 9,675.00 |
|     | Total Hours | 49.40 |      |       |

| Total Services | $12,885.00 |
|----------------|------------|
| Total Disbursements | $200.42 |
| TOTAL SERVICES AND DISBURSEMENTS | $13,085.42 |

MEF

Michael K. Shah, CEO
July 12, 2013
Page 2

Morgan Lofts, LLC, et al.
19470.0009

| Date | Description | Atty | Hours |
|------|-------------|------|-------|
| June 3, 2013 | Reviewed cases regarding mortgage in possession duty to pay condominium fees. | BS | 0.80 |
| June 4, 2013 | Telephone conference with Lorenzo DeLuca, Esq. regarding Morgan Bay execution issues regarding Marshal Bienstock and researched Article 78 action to compel Marshal to conduct auction sale after levy. | BS | 1.50 |
| June 4, 2013 | Researched issues regarding mortgage in possession duty to pay condo association fees. | BS | 3.00 |
| June 4, 2013 | Examined various correspondence regarding proposed proceeding to compel Marshall to levy execution on judgment debtor, etc. | FWH | 0.20 |
| June 4, 2013 | Reviewed e-mail correspondence from Michael K. Shah, Esq. with organizational chart, member certificates, judgments, etc.; reviewed a summary of status report from Lorenzo DeLuca, Esq.; exchanged e-mail correspondence with client; followed up on execution; worked on memorandum regarding membership units. | WFS | 0.50 |
| June 5, 2013 | Prepared various e-mails to Lorenzo DeLuca, Esq. and reviewed law; prepared memorandum regarding issues raised to compel Marshal Bienstock to conduct auction sale and mortgagee's duty to pay condominium fees. | BS | 4.50 |
| June 5, 2013 | Checked authorities regarding alternatives for potential action (Art. 78 against Marshall, 5223 Special Proceeding v judgment debtor and 11 E36th LLC, etc.); reviewed case authorities regarding creditor's limited right of access to debtor's interest in LLCs; worked on memorandum to Michael K. Shah, Esq. and Lorenzo DeLuca, Esq. | FWH | 0.80 |

Michael K. Shah, CEO
July 12, 2013
Page 3

Morgan Lofts, LLC, et al.
19470.0009

| Date | Description | Atty | Hours |
|------|-------------|------|-------|
| June 5, 2013 | Worked on Memorandum to Michael K. Shah, Esq.; worked on e-mail correspondence to Michael K. Shah, Esq.; worked on strategy; skimmed Marshals' Handbook; reviewed client's comments to Memorandum. | WFS | 0.60 |
| June 6, 2013 | Prepared memorandum regarding mortgagee in possession duties; continued reviewing issues regarding Mandamus against Marshal Bienstock; telephone conferences with Lorenzo DeLuca, Esq. and Jonathan Schwartzman, Esq. regarding execution issues; reviewed foreclosure docket against 11 E 36th, LLC. | BS | 5.80 |
| June 6, 2013 | Examined correspondence from Michael K. Shah, Esq. and Lorenzo DeLuca, Esq. in response regarding restrictions of LLC law, 2/19/13 decision of Justice Driscoll in Griffon V LLC collection action against 11 East 36th LLC, et al.; reviewed RPAPL 1301; extended conference regarding alternatives for action in light of said decision and bankruptcy case filed by 11 East 36th LLC; analyzed documents received from Jonathan Schwartzman, Esq., pleadings in Article 78 proceeding against Marshall Bienstock, etc.; reviewed CPLR 5232 (a); strategized regarding procedural status and alternatives for action. | FWH | 2.80 |
| June 7, 2013 | Telephone conferences with Jonathan Schwartzman, Esq., exchanged e-mails and telephone conference with Lorenzo DeLuca, Esq. and Michael K. Shah, Esq.; continued reviewing issues of how to enforce executors against Morgan Condos and prepared e-mail memorandum regarding options. | BS | 6.90 |
| June 7, 2013 | Examined correspondence, executions, etc. received from Jonathan Schwartzman, Esq.; | FWH | 1.40 |

Michael K. Shah, CEO
July 12, 2013
Page 4

Morgan Lofts, LLC, et al.
19470.0009

| Date | Description | Atty | Hours |
|------|-------------|------|-------|
| | prepared memorandum regarding perfection of levy under 5232(a); participated in conference call with Michael K. Shah, Esq.; worked on memorandum to Lorenzo DeLuca, Esq. regarding alternatives and recommendation for future action; briefly examined followup correspondence. | | |
| June 7, 2013 | Worked on memorandum to client regarding options; two telephone conferences with Michael K. Shah, Esq.; checked CPLR. | WFS | 0.90 |
| June 10, 2013 | Continued drafting memorandum regarding mortgagee in possession issue and reviewed updated pleadings in 11 E. 36th and Morgan Lofts bankruptcy cases. | BS | 5.50 |
| June 10, 2013 | Worked on and approved memorandum to client regarding mortgagee in possession and obligations regarding condominium association fee; prepared e-mail to Lorenzo DeLuca, Esq. | WFS | 0.40 |
| June 11, 2013 | Finalized and submitted memorandum regarding condo fees and mortgagee in possession to Michael K. Shah, Esq. and Lorenzo DeLuca, Esq. | BS | 0.30 |
| June 12, 2013 | Prepared letter to client. | WFS | 0.10 |
| June 17, 2013 | Conference regarding whether new execution against Madison Condo's membership interest in Madison Lofts, etc. had been delivered to Marshall Bienstock and further proceedings once execution is served by him. | FWH | 0.20 |
| June 18, 2013 | Prepared various e-mails to Lorenzo DeLuca, Esq. and Jonathan Schwartzman, Esq. regarding new execution and began preparing Order to Show Cause for mandamus against Marshal Bienstock. | BS | 1.50 |

Michael K. Shah, CEO
July 12, 2013
Page 5

Morgan Lofts, LLC, et al.
19470.0009

| Date | Description | Atty | Hours |
|------|-------------|------|-------|
| June 18, 2013 | Repeatedly exchanged e-mail with Michael K. Shah, Esq. regarding writ of mandamus; reviewed various e-mail from Mark Frankel, Esq. | WFS | 0.20 |
| June 19, 2013 | Drafted Order to Show Cause and Verified Petition regarding mandamus; telephone conferences with Lorenzo DeLuca, Esq. and Jonathan Schwartzman, Esq. and reviewed documents regarding Bienstock levy. | BS | 5.90 |
| June 19, 2013 | Reviewed and revised order to show cause, petition and Attorney's Affirmation in support of petition. | FWH | 0.40 |
| June 19, 2013 | Reviewed objection regarding mortgagee in possession and payment of condominium fee and revisions proposed thereto; telephone conference with Michael K. Shah, Esq.; prepared e-mail correspondence to client; added to and revised Order to Show Cause; added to and revised Attorney's Affidavit regarding Mandamus; added to and revised petition regarding Mandamus. | WFS | 0.90 |
| June 20, 2013 | Prepared draft Affirmation for Jonathan Schwartzman, Esq. and responses to draft Verified Complaint and Order to Show Cause regarding Marshal Bienstock. | BS | 0.90 |
| June 20, 2013 | Worked on form of and proposed revisions to papers to commence mandamus proceeding against Marshall Bienstock; briefly reviewed proposed supporting affidavit for Jonathan Schwartzman, Esq. | FWH | 0.30 |
| June 20, 2013 | Reviewed new version of writ of mandamus and exchanged e-mail correspondence in respect thereof. | WFS | 0.10 |

Michael K. Shah, CEO
July 12, 2013
Page 6

Morgan Lofts, LLC, et al.
19470.0009

| Date | Description | Atty | Hours |
|------|-------------|------|-------|
| June 24, 2013 | Repeatedly exchanged e-mail with Michael K. Shah, Esq.; reviewed e-mail correspondence to Lorenzo DeLuca, Esq.; obtained authority to pursue writ of mandamus. | WFS | 0.20 |
| June 25, 2013 | Prepared e-mail to Michael K. Shah, Esq. regarding Queens filing and reviewed response from Michael K. Shah, Esq. regarding mandamus; reviewed procedure in Queens County for Order to Show Cause; reviewed e-mail forwarded by Lorenzo DeLuca, Esq. regarding Marshal's report; reviewed updated docket in 11 E 36th LLC. | BS | 1.20 |
| June 25, 2013 | Annotated Marshall Bienstock's 6/13/13 report regarding service of execution. | FWH | 0.20 |
| June 27, 2013 | Extended conference regarding proposed Article 78 proceeding against Marshall Bienstock and regarding additional information required from Lorenzo DeLuca, Esq. | FWH | 0.30 |
| June 28, 2013 | Telephone conference with Lorenzo DeLuca, Esq. regarding update on Bienstock; revised and transmitted to Jonathan Schwartzman, Esq. with Affirmation regarding mandamus. | BS | 0.90 |
| June 28, 2013 | Examined various correspondence regarding conference with Lorenzo DeLuca, Esq. regarding 5225 proceeding, Marshall Bienstock's report, 90 day period to perfect levy under 5232(a), etc. | FWH | 0.20 |

Total Hours                                                     49.40

Total Services                                            $12,885.00

Michael K. Shah, CEO
July 12, 2013
Page 7

Morgan Lofts, LLC, et al.
19470.0009

| Disbursements | Value |
|---|---|
| Annual Service Fee for DE Registered Agent:  United Corporate Services, Inc. | 200.42 |
| Total Disbursements | $200.42 |
| | |
| TOTAL SERVICES AND DISBURSEMENTS | $13,085.42 |

# DAMON MOREY LLP

The Avant Building – Suite 1200
200 Delaware Avenue
Buffalo, New York 14202 - 2150
716-856-5500
Fax 716-856-5510
FEI: 16-0734852

**REMITTANCE COPY**

August 8, 2013
Invoice Number: 280605

Michael K. Shah, CEO
DelShah Capital, LLC
114 E. 13th Street, Front 1
New York, NY 10003

RE:    Morgan Lofts, LLC, et al.
       Our File No.: 19470.0009  WFS

**REMITTANCE COPY** FOR PROFESSIONAL SERVICES RENDERED in the above matter from
July 1, 2013 through July 31, 2013, as summarized below and detailed on the attached schedule:

| | |
|---|---|
| Total Services | $5,285.00 |
| Total Disbursements | $350.00 |
| TOTAL SERVICES AND DISBURSEMENTS | $5,635.00 |

MEF

# DAMON MOREY LLP

The Avant Building -- Suite 1200
200 Delaware Avenue
Buffalo, New York 14202 - 2150
716-856-5500
Fax 716-856-5510
FEI: 16-0734852

August 8, 2013
Invoice Number: 280605

Michael K. Shah, CEO
DelShah Capital, LLC
114 E. 13th Street, Front 1
New York, NY 10003

RE:    Morgan Lofts, LLC, et al.
       Our File No.: 19470.0009  WFS

FOR PROFESSIONAL SERVICES RENDERED in the above matter from July 1, 2013 through July 31, 2013, as summarized below and detailed on the attached schedule:

## SUMMARY OF SERVICES

|      | Timekeeper            | Hours | Rate   | Value    |
|------|-----------------------|-------|--------|----------|
| FWH  | HELLER, FRANKLIN W.    | 3.10  | 300.00 | 930.00   |
| WFS  | SAVINO, WILLIAM F.     | 0.60  | 300.00 | 180.00   |
| BS   | SCHENKLER, BERNARD     | 16.70 | 250.00 | 4,175.00 |
| WFS  | SAVINO, WILLIAM F.     | 0.50  | 0.00   | 0.00     |
|      | Total Hours           | 20.90 |        |          |

Total Services                                            $5,285.00

Total Disbursements                                        $350.00

TOTAL SERVICES AND DISBURSEMENTS                          $5,635.00

MEF

Michael K. Shah, CEO
August 8, 2013
Page 2

Morgan Lofts, LLC, et al.
19470.0009

| Date | Description | Atty | Hours |
|------|-------------|------|-------|
| July 3, 2013 | Telephone conference with Jonathan Schwartzman, Esq. regarding Bienstock claim and reviewed Schwartzman revised Affirmation. | BS | 0.80 |
| July 3, 2013 | Reviewed e-mail correspondence from John Schwartzman, Esq. (no charge). | WFS | 0.10 |
| July 5, 2013 | Reviewed changes in mandamus papers and issues regarding service of Petition; prepared Request for Judicial Intervention. | BS | 1.70 |
| July 5, 2013 | Revised and finalized additional text for all papers in connection with Special Proceeding for writ of mandamus; examined authorities in connection with same; prepared proposed order to show cause. | FWH | 2.90 |
| July 8, 2013 | Revised mandamus papers in final form with exhibits and prepared for uploading to docket; telephone conferences with Clerk's Office in Queens regarding filing issues; reviewed confirmation to forward to Michael K. Shah, Esq.; reviewed assigned docket number and uploaded Request for Judicial Intervention. | BS | 5.50 |
| July 8, 2013 | Reviewed several e-mail correspondence from client (no charge). | WFS | 0.10 |
| July 9, 2013 | Reviewed Bay Condos pleadings and e-mails regarding responding to proposed action in bankruptcy case; prepared e-mails to Mark Frankel, Esq. regarding Gingerman lease; telephone conferences with Queen Clerk regarding getting judge for mandamus action; revised and uploaded Order to Show Cause to docket; reviewed and responded to e-mail from Lorenzo DeLuca, Esq. regarding caption. | BS | 3.00 |

Michael K. Shah, CEO
August 8, 2013
Page 3

Morgan Lofts, LLC, et al.
19470.0009

| Date | Description | Atty | Hours |
|------|-------------|------|-------|
| July 9, 2013 | Reviewed various e-mail from Michael K. Shah, Esq.; reviewed e-mail from Mark Frankel, Esq. (no charge). | WFS | 0.10 |
| July 10, 2013 | Reviewed dockets in Queens County regarding mandamus issues; reviewed exchange of e-mails in Bay Condos. | BS | 0.90 |
| July 10, 2013 | Exchanged e-mail with Michael K. Shah, Esq.; reviewed several e-mails from Michael K. Shah, Esq.; reviewed several e-mails from Mark Frankel, Esq. (no charge). | WFS | 0.20 |
| July 11, 2013 | Telephone conference with ex parte clerk regarding update on mandamus Order to Show Cause; reviewed e-mails from Mark Frankel, Esq. regarding Gingerman lease and how to deal with bidder. | BS | 0.80 |
| July 12, 2013 | Reviewed E-law regarding appointment of Justice Pineda-Kirwan to mandamus action; submitted details to Michael K. Shah, Esq. and Lorenzo DeLuca, Esq. | BS | 0.30 |
| July 12, 2013 | Analyzed reviews of Justice Diccia T. Pineda-Kirwan; reviewed exchange of e-mail correspondence in respect thereof; worked on letter to client. | WFS | 0.20 |
| July 15, 2013 | Prepared letter to client. | WFS | 0.10 |
| July 18, 2013 | Prepared e-mail to Michael K. Shah, Esq. and Lorenzo DeLuca, Esq. regarding update on Article 78 Petition in Queens. | BS | 0.30 |
| July 19, 2013 | Reviewed confirmation Order and e-mailed a question to Mark Frankel, Esq. | BS | 0.40 |
| July 25, 2013 | Reviewed Order entered by Judge Pineda-Kirwan regarding Order to Show Cause and circulated to all counsel; prepared corrected | BS | 2.40 |

Michael K. Shah, CEO
August 8, 2013
Page 4

Morgan Lofts, LLC, et al.
19470.0009

| Date | Description | Atty | Hours |
|------|-------------|------|-------|
| | Order to Show Cause and supporting Affirmation; telephone conferences with ex parte clerk in Queens County and electronic filing department regarding uploading corrected Order to Show Cause and getting it to the Judge; reviewed and responded to e-mails regarding alternatives. | | |
| July 25, 2013 | Examined series of e-mails regarding order to show cause in Article 78 proceeding against Sheriff Bienstock, alternatives for action in light of assigned judge's conduct, etc. | FWH | 0.20 |
| July 25, 2013 | Reviewed four separate e-mails from Michael K. Shah, Esq. regarding Mandamus petition; reviewed e-mail from Lorenzo DeLuca, Esq. regarding Mandamus petition. | WFS | 0.20 |
| July 30, 2013 | Reviewed additional docket entries regarding mandamus action and status e-mail to Michael K. Shah, Esq. | BS | 0.60 |
| July 30, 2013 | Exchanged e-mail with Michael K. Shah, Esq. regarding Mandamus. | WFS | 0.10 |
| | Total Hours | | 20.90 |
| | Total Services | | $5,285.00 |

Michael K. Shah, CEO
August 8, 2013
Page 5

Morgan Lofts, LLC, et al.
19470.0009

| Disbursements | Value | |
|---|---|---|
| Index No. and Request for Judicial Intervention:  Queens County Supreme Court | 305.00 | |
| Motion and Cross-Motion Fee:  Queens County Supreme Court | 45.00 | |
| Total Disbursements | | $350.00 |
| TOTAL SERVICES AND DISBURSEMENTS | | $5,635.00 |

# DAMON MOREY LLP

The Avant Building – Suite 1200
200 Delaware Avenue
Buffalo, New York 14202 - 2150
716-856-5500
Fax 716-856-5510
FEI: 16-0734852

**REMITTANCE COPY**

September 10, 2013
Invoice Number: 281946

Michael K. Shah, CEO
DelShah Capital, LLC
114 E. 13th Street, Front 1
New York, NY 10003

---

RE:   Morgan Lofts, LLC, et al.
      Our File No.: 19470.0009 WFS

**REMITTANCE COPY** FOR PROFESSIONAL SERVICES RENDERED in the above matter from
August 1, 2013 through August 31, 2013, as summarized below and detailed on the attached schedule:

| | |
|---|---|
| Total Services | $1,975.00 |
| Total Disbursements | $95.22 |
| TOTAL SERVICES AND DISBURSEMENTS | $2,070.22 |

MEF

# DAMON MOREY LLP

The Avant Building – Suite 1200
200 Delaware Avenue
Buffalo, New York 14202 - 2150
716-856-5500
Fax 716-856-5510
FEI: 16-0734852

September 10, 2013
Invoice Number: 281946

Michael K. Shah, CEO
DelShah Capital, LLC
114 E. 13th Street, Front 1
New York, NY 10003

RE:    Morgan Lofts, LLC, et al.
       Our File No.: 19470.0009 WFS

FOR PROFESSIONAL SERVICES RENDERED in the above matter from August 1, 2013 through
August 31, 2013, as summarized below and detailed on the attached schedule:

## SUMMARY OF SERVICES

| | Timekeeper | Hours | Rate | Value |
|---|---|---|---|---|
| FWH | HELLER, FRANKLIN W. | 0.50 | 300.00 | 150.00 |
| BS | SCHENKLER, BERNARD | 7.30 | 250.00 | 1,825.00 |
| | Total Hours | 7.80 | | |

Total Services                                                $1,975.00

Total Disbursements                                              $95.22

TOTAL SERVICES AND DISBURSEMENTS                             $2,070.22

MEF

Michael K. Shah, CEO
September 10, 2013
Page 2

Morgan Lofts, LLC, et al.
19470.0009

| Date | Description | Atty | Hours |
|------|-------------|------|-------|
| August 5, 2013 | Prepared and transmitted "work copy" of Order to Show Cause and Petition to Queens Supreme Court Clerk. | BS | 0.80 |
| August 6, 2013 | Reviewed draft motion regarding confirmation regarding Bay Condos and comments to Mark Frankel, Esq. | BS | 0.30 |
| August 7, 2013 | Reviewed draft motion to vacate stay regarding 11 E. 36th LLC. | BS | 0.40 |
| August 12, 2013 | Reviewed lift of stay regarding motion regarding Morgan Lofts. | BS | 0.70 |
| August 13, 2013 | Reviewed Order denying Order to Show Cause regarding mandamus against Bienstock and telephone conferences with ex parte clerk and Queens part 36 clerk regarding remedy; reviewed comments regarding lifting stay motion. | BS | 0.90 |
| August 14, 2013 | Telephone conferences with Queens County Clerk's office and prepared revised Order to Show Cause and uploaded to docket; prepared hard copies of Order to Show Cause and papers and transmitted to Clerk in Jamaica, New York and Part 36 clerk in Long Island City, New York. | BS | 2.60 |
| August 15, 2013 | Telephone conference with Queens Part 36 Clerk and Ex Parte Clerk regarding status of Order to Show Cause; reviewed docket notice and transmitted to Michael K. Shah. Esq. | BS | 0.60 |
| August 19, 2013 | Telephone conference with Connie Li, Part 36 clerk regarding update on Order to Show Cause. | BS | 0.20 |
| August 29, 2013 | Telephone conference with Connie Li, Part 36 | BS | 0.80 |

Michael K. Shah, CEO
September 10, 2013
Page 3

Morgan Lofts, LLC, et al.
19470.0009

| Date | Description | Atty | Hours |
|------|-------------|------|-------|
| | Clerk; reviewed e-mails from Michael K. Shah, Esq. and Lorenzo DeLuca, Esq. regarding Queens status and alternative service on Marshall Daly. | | |
| August 29, 2013 | Strategized regarding future action regarding execution delivered to Marshall on 6/14/13 in light of 1) 9/13 being date for expiration of 90 day period provided by CPLR 5232(a) (regarding sale of interest in LLC) and 2) Justice Pineda-Kirwan failing to act regarding order to show cause; examined subsequent correspondence between Michael K. Shah, Esq., Lorenzo DeLuca, Esq., etc. regarding same. | FWH | 0.50 |
| Total Hours | | | 7.80 |
| Total Services | | | $1,975.00 |

Michael K. Shah, CEO
September 10, 2013
Page 4

Morgan Lofts, LLC, et al.
19470.0009

| Disbursements | Value |
|---|---|
| Express Mail Charges:  Federal Express | 50.22 |
| Motion and Cross-Motion Fee:  Queens County Supreme Court | 45.00 |
| Total Disbursements | $95.22 |

| TOTAL SERVICES AND DISBURSEMENTS | $2,070.22 |
|---|---|

*Paid  #1500.00*
*#₹# 4/3/13*

# Wenig Saltiel LLP

*attorneys at law*

26 COURT STREET – SUITE 1200
BROOKLYN, NEW YORK 11242

PHONE: (718) 797-5700

## MASTER RETAINER FOR LEGAL SERVICES

<u>Griffon V & 11 East 36th Note Buyer</u> by <u>Michael Shah</u>, with an office located at <u>114 East 13th Street FRNT 1</u> ("Client") does hereby retains the legal services of Wenig Saltiel LLP, ("Counsel"), 26 Court Street, Suite 1200 as its attorney to represent it exclusively on all summary non-payment and summary holdover proceedings to be commenced within <u>11 East 36th Street, New York, NY</u> (Subject Premises") on or after March 5, 2013 upon the following terms and conditions:

- Preparation and service of residential summary non-payment proceedings not including index number: $300.00; ($100.00 per Rent Demand & $200.00 per Petition)
- Preparation and service of residential summary holdover proceedings, not including index number and including one court conference appearance:  $1,250.00;
- Residential Non-payment conference court appearances $350.00 each morning or afternoon;
- Residential Holdover conference court appearances $350.00 each morning or afternoon;
- Commercial Demand/Petition not including service or index number fees (including lease review): $750.00
- Commercial holdover or nonpayment conference court appearance :$500.00 per half day
- Trial appearances preparation of motions or responding papers relating to summary proceedings: $400.00/hour for partners; $300.00/hour for associates $100.00/hour for paralegal time;
- Attorney Service of papers: $200.00 per attempt.

- $200.00 to order warrants; $200.00 for each service of a warrant; $200.00 for execution of each warrant
- Disbursements such as Service of process, index numbers, and filing fees to be paid as billed.

Client hereby engages Counsel for a period of two (2) years commencing March 5, 2013 and renewable at the option of the Client and upon agreement of counsel for an additional two (2) years pending the rewarding of a request for proposals for legal services.

Either party may terminate and cancel this contract on ten (10) days notice to the other and in such event Counsel shall be entitled to receive compensation as specified herein for all work completed and accepted prior to termination or cancellation and in additional an equitable adjustment shall be made for any work performed but not accepted by the Client.

The scope of this retainer is limited to any and all cases which have commenced on or after March 4, 2013. Any other cases for which a specific retainer has already been negotiated and entered into shall be honored as superior, independent and apart from this retainer agreement.

Client will tender the amount of $3,000.00 which shall be applied to the foregoing charges and disbursements and shall pay subsequent bills that are rendered on this action within fifteen (15) days of receipt. Client understands that failure to timely pay bills for services rendered may result in Counsel seeking to be discharged as counsel by the Court. Should Client have a dispute over any bill, Client will notify Counsel of said dispute in writing within ten (10) days of receipt of the bill, or the bill will be deemed final in all respects. All legal fees and disbursements to be paid at time of closing.

In the event that Counsel is required to bring a legal action to collect any bill, then the prevailing party in such litigation shall be entitled to recover legal fees from the other. If a dispute arises between us relating to our fees, you may have the right to arbitration of the dispute pursuant to Part 137 of the Rules of the Chief Administrator of the Courts, a copy of which will be provided to you upon request.

Client has been advised of the hazards and of the high cost of litigation and that despite Counsel's best efforts there is no guarantee or assurance of the outcome of these matters. Client-Seller understands that any expression of outcome relative to this matter by Counsel is purely opinion.

This agreement may only be modified in writing. Client represents that in executing this agreement that it is not relying on any oral representations and that all the understandings of the Client and Counsel are contained herein.

While we cannot guarantee any particular result, we do promise to use our best professional efforts and those of our staff on your behalf in order to resolve this matter

quickly and efficiently. You also agree to fully cooperate with our staff and provide any information which we request on a timely basis.  Client has read and understands the above agreement and accepts all of its terms.

Client shall pay bills that are rendered on this action within twenty (20) days of receipt. Client understands that failure to timely pay bills for services rendered may result in Counsel seeking to be discharged as counsel by the Court.  Should Client have a dispute over any bill, Client will notify Counsel of said dispute in writing within twenty (20) days of receipt of the bill, or the bill will be deemed final in all respects.

While we cannot guarantee any particular result, we do promise to use our best professional efforts and those of our staff on your behalf in order to resolve matter quickly and efficiently.  You also agree to fully cooperate with our staff and provide any information which we request on a timely basis.  Authority has read and understands the above agreement and accepts all of its terms.

**Dated:** March 6, 2013
New York, New York

_____
MICHAEL SHAH
Managing Member,
Griffon V & 11 East 36th Note Buyer

*Paid 12,030.00*
*8/5/2013*

**EINIG & BUSH LLP**
420 Lexington Ave. Suite 2320
New York, NY 10170
(212) 983-8866 ext 114

Dated:  July 8, 2013

To:

MR. MICHAEL SHAH
c/o DelShah Capital, LLC
114 East 13th Street, Front 1
New York, NY 10003

## STATEMENT OF ACCOUNT

| | |
|---|---|
| Morgan I | |
| Invoice dated May 12, 2013 | $ 4,687.50 |
| Morgan II | |
| Invoice dated May 12, 2013 | $12,030.00 |
| Romanoff | |
| Invoice dated April 21, 2013 | $25,727.00 |
| Total | $42,444.50 |
| Paid | $ 0 |
| Balance Due | $42,444.50 |

*[Please advise us immediately if you dispute this amount owed: if you fail to object within seven*
*(7) days we will assume that you agree with the amount stated above.]*

# EINIG & BUSH, LLP
*420 Lexington Avenue*
*New York, NY  10170*
*(212) 983-8866*
*TELECOPIER (212) 983-1039*

May 12, 2013

11 East 36th Notebuyer LLC
c/o Delshah Capital
114 East 13th Street
New York, New York 10003
Att.: Michael Shah

---

## FEES

for foreclosure action on property known as 11 East 36th Street, New York, New York (:Notebuyer') including preparation of summons and complaint and filing theredof, obtaining service on defendants, receipt and review of defendants'answer as well as answer from the board of managers, negotiated withdraal of Board's answer, preparation and submission of motion for summary judgment, receipt and review of bankruptcy fling, withdrawal of motion without prejudice, communications with attorneys for Defendants, Board, prior counsel

28.20 hours @ $375.00.................................................................................................$10.575.00

Disbursements

| | | | |
|---|---|---|---|
| Indes #/Lis Pendens | $435.00 | | |
| Process Service Fees................................ | $660.00 | | |
| RJI.................................................. | $195.00 | | |
| Motion Fee......................................... | $45.00 | | |
| Copying/Prinitng.................................. | $110.00 | | |
| Court Service..................................... | $ 10.00........................... | 1,455.00 | |

Total.......................................................................................................$12,030.00

*PAID 12,000*
*5/3/12*

## GENERAL RETAINER AGREEMENT

This Retainer Agreement, dated April    , 2012 by and between

  Michael Shah
  Del Shah Capital

          ("Client" or "You") and

Einig & Bush LLP
420 Lexington Avenue
New York, N.Y. 10170          ("Attorney" or "Us").

We agree as follows:

1. Engagement of Attorney. You hereby formally engage us to represent you foreclosure litigation and other related matters. This retainer does not cover due di,ligence or fees related to the acquisition of defaulted m ortgages.  They will be billed as incurred.

2. Representations. . You represent that you are authorized to retain us.

3. Compensation of Attorney.   You agree to compensate us for time expended on your matters, at the rate of $350 per hour.

4. Reimbursement of Expenses.  You agree to reimburse us for reasonable expenses which we incur on your behalf, including but not limited to,  court filing fees(approximately $200-500), referee's fees($750.00), advertisement of sale( $2,000.00 - $3,000.00) (including transcripts), overnight delivery (e.g. fedex), courier charges, unusual postage (e.g. certified mail),  United Lawyers Service service fees, and Lexis computer research.  You also agree, upon our request, to directly contract for, advance and/or pay for, the services of experts and court reporters and any other items of expense which may be required, upon request.

5. Invoices.  We will send you periodic invoices and you agree that our invoices are chargeable ahainost the retainer and if the retainer is exhausted payable on receipt.

6. Client's Rights. You acknowledge that you have received a copy of the Statement of Client Rights. You also acknowledge that you may have a right to arbitration in the event of any fee dispute.

7. Mutual Right to Terminate. Subject to court rules, this engagement is terminable by either party at will:  upon termination we will send you a final bill for services rendered prior to termination, which you agree to pay upon presentation.

8. Retainer.  We require that you advance us funds to be applied to legal fees, so that a credit balance is maintained by you.  We will advise you of amounts required to be paid

from time to time. The eneral retainer fee is $12,000. Please bear in mind that there could be time-intensive litigation, and unless there is a settlement, we will be requiring additional advance payments, and that if not paid, we will request the Court to permit us to stop representing you in the lawsuit. At the conclusion of the litigation, any balance not applied to fees and expenses shall be returned.

9. Legal Fees in Foreclosure Actions Counties and Courts vary as to the award of legal fees and disbursement. The Court's may award all or part of said fees and disbursements.

Such awards do not change your obligation to this firm for the fees invoiced. In the event of a settlement of the foreclosure action, all efforts will be made to recover all fees and disbursements from the defendant. However the ultimate responsibility for fees remains with the client.

10. Not the subject of bankruptcy. You represent you are not the debtor in any pending bankruptcy or reorganization or assignment for creditors proceedings.

11. Outcome Uncertain. We do not guarantee any particular results in litigation of success. .

If the foregoing is acceptable, please sign and return, with a check in the amount of $12,000.

Attorney: EINIG & BUSH

_____
by Michael R. Bush

_____
Michael Shah

*Paid 8,000*
*5/2/12*

## EINIG & BUSH, LLP

*Attorneys at Law*
*420 Lexington Avenue*
*New York, NY 10170*

STEVEN L. EINIG

MICHAEL R. BUSH

*(212) 983-8866  (x114)*
*TELECOPIER (212) 983-1050*

April 24, 2012

11 East 36 Note Buyer LLC

FOR PROFESSIONAL SERVICES RENDERED:

Legal Services Rendered in due diligence and acquisdition of mortgages and notes on Property known as 11 East 36th Street
.......................................................$8,000.00

*OK*
*approved*

GENERAL RETAINER AGREEMENT

This Retainer Agreement, dated April    , 2012 by and between

Michael Shah
Del Shah Capital

                ("Client" or "You") and

Einig & Bush LLP
420 Lexington Avenue
New York, N.Y. 10170              ("Attorney" or "Us").

We agree as follows:

1. Engagement of Attorney.  You hereby formally engage us to represent you foreclosure litigation and other related matters. This retainer does not cover due di,ligence or fees related to the acquisition of defaulted m ortgages.  They will be billed as incurred.

2. Representations. . You represent that you are authorized to retain us.

3. Compensation of Attorney.  You agree to compensate us for time expended on your matters, at the rate of $350 per hour.

4. Reimbursement of Expenses.  You agree to reimburse us for reasonable expenses which we incur on your behalf, including but not limited to,  court filing fees(approximately $200-500), referee's fees($750.00), advertisement of sale( $2,000.00 - $3,000.00) (including transcripts), overnight delivery (e.g. fedex), courier charges, unusual postage (e.g. certified mail),  United Lawyers Service service fees, and Lexis computer research.  You also agree, upon our request, to directly contract for, advance and/or pay for, the services of experts and court reporters and any other items of expense which may be required, upon request.

5. Invoices.  We will send you periodic invoices and you agree that our invoices are chargeable ahaionst the retainer and if the retainer is exhausted payable on receipt.

6. Client's Rights.  You acknowledge that you have received a copy of the Statement of Client Rights. You also acknowledge that you may have a right to arbitration in the event of any fee dispute.

7. Mutual Right to Terminate. Subject to court rules, this engagement is terminable by either party at will:  upon termination we will send you a final bill for services rendered prior to termination, which you agree to pay upon presentation.

8. Retainer.  We require that you advance us funds to be applied to legal fees, so that a credit balance is maintained by you.  We will advise you of amounts required to be paid

from time to time.  The eneral retainer fee is $12,000.  Please bear in mind that there could be time-intensive litigation, and unless there is a settlement, we will be requiring additional advance payments, and that if not paid, we will request the Court to permit us to stop representing you in the lawsuit.  At the conclusion of the litigation, any balance not applied to fees and expenses shall be returned.

9. Legal Fees in Foreclosure Actions Counties and Courts vary as to the award of legal fees and disbursement.  The Court's may award all or part of said fees and disbursements.

Such awards do not change your obligation to this firm for the fees invoiced.  In the event of a settlement of the foreclosure action, all efforts will be made to recover all fees and disbursements from the defendant.  However the ultimate responsibility for fees remains with the client.

10. Not the subject of bankruptcy.  You represent you are not the debtor in any pending bankruptcy or reorganization or assignment for creditors proceedings.

11. Outcome Uncertain.  We do not guarantee any particular results in litigation of success. .

If the foregoing is acceptable, please sign and return, with a check in the amount of $12,000.

Attorney: EINIG & BUSH

_____
by Michael R. Bush

_____
Michael Shah

# Lorenzo A. DeLuca, Esq.

Attorney at law
575 Madison Avenue, 10th Floor
New York, NY 10022
212-239-2339
212-239-7440 (fax)

Griffon V LLC
11 East 36th Note Buyer LLC
c/o Delshah Capital LLC                                        February  5, 2014
114 East 13th Street                                    Account No      1469- 0011
New York, NY 10003                                      Statement No.                3

Re:   Various litigation involving Griffon V and 11 East 36th Notebuyer LLC with
        11 East 36th LLC/Bay Condos/ Morgan Lofts LLC

LAD                                                                    Hours

TOTAL HOURLY CHARGES                                                   103.50

                              Recapitulation

| Timekeeper | Hours | Rate | Total |
|---|---|---|---|
| L DeLuca | 103.5 | $435 | $45,022 |
| less 10% as agreed | | | (4,502) |

              TOTAL CURRENT WORK                        $ 40,520

              Balance due Prior Bills                        4,039

              Sub total                                    $ 44,559

Less Payments received since                               $ 40,000

              BALANCE DUE                              $    4,559

*26,404.69 for Notebuyer*

*14,115.31 for Griffon V*

# Lorenzo A. DeLuca, Esq.

Attorney at law
575 Madison Avenue, 10th Floor
New York, NY 10022
212-239-2339
212-239-7440 (fax)

Griffon V LLC
11 East 36th Note Buyer LLC
c/o Delshah Capital LLC                                    October 10, 2013
114 East 13th Street                          Account No    1469- 0011
New York, NY 10003                            Statement No.          1

Re:  <u>Various litigation involving Griffon V and 11 East 36th Notebuyer LLC with
      11 East 36th LLC/Bay Condos/ Morgan Lofts LLC</u>

LAD                                                        Hours

TOTAL HOURLY CHARGES      (See Attached)                  355.10

                          Recapitulation

| Timekeeper | Hours | Rate | Total |
|---|---|---|---|
| L DeLuca | 355.10 | $435 | $154,469 |
| less 10% as agreed | | | (15,447) |

          TOTAL CURRENT WORK                              $139,022

          PRIOR BILLS                                     _25,017_

          Sub total                                       $164,039

Less Payments received                                    $160,000


          BALANCE DUE                                $    4,039

| Date | Client | Description | Hours |
|------|--------|-------------|-------|
| 3/22/2012 | GV | TC JS and DC re TRO motion | 0.30 |
| 3/22/2012 | GV | TC WFS MKS | 0.60 |
| 3/26/2012 | GV | Research and analyse net worth statements, tax returns underlying mortgages | 4.50 |
| 3/27/2012 | GV | Research and Review Bobker related legal matters | 7.80 |
| 4/4/2012 | GV | email exchange DC re judgment | 0.20 |
| | GV | | |
| 4/6/2012 | GV | Review Application to Employ Accountant | 0.50 |
| 4/6/2012 | GV | TC MKS, Lupo | 0.30 |
| 4/9/2012 | GV | Bankruptcy analysis and status MKS ML Schulte | 1.50 |
| 4/10/2012 | GV | Meeting MKS, Lupo Savino Lift Stay exclusivity and motion for summary judgment | 0.60 |
| 4/10/2012 | GV | Review Chicago Title Report research 2.8% ownership  memo to chicago title re correction | 4.30 |
| 4/11/2012 | GV | Discuss Referee appointment JS and MKS | 0.30 |
| 4/11/2013 | GV | Research reversionary interest and claim bay Condos | 2.50 |
| 4/12/2012 | GV | TC JS and DC re judgment | 0.20 |
| 4/14/2012 | GV | Review Motion to Extend Exclusivity | 1.40 |
| 4/16/2012 | GV | TC MKS, Lupo, MF, WS | 0.40 |
| 4/16/2012 | GV | Prepare  title seizure action plan | 0.60 |
| 4/18/2012 | GV | TC with co-counsel  re signed judgment and need to corect and enforcement steps | 0.20 |
| 4/19/2012 | GV | TC fcsb re motion to extend exclusivity | 0.50 |
| 4/22/2012 | GV | Research and Review Objection to Motion to Extend Exclusivity | 4.20 |
| 4/24/2012 | 11E | TC MF, ML, MKS, WG re p o c | 0.40 |

| Date | Client | Description | Hours |
|------|--------|-------------|-------|
| 4/25/2012 | GV | TC Condo Board re Sheriff's sle | 0.30 |
| 4/25/2012 | GV | Review various legal fees for fee inquest | 1.20 |
| 4/25/2012 | 11E | Review Proof of Claim form | 0.20 |
| 4/27/2012 | 11E | TC re BK status conference | 0.30 |
| 4/28/2012 | 11E | Draft BK litigation plan | 0.70 |
| 4/27/2012 | GV | Research and prepare Exhibits to Objection | 1.80 |
| 4/30/2012 | 11E | Meeting  Delshah objection to exclusivity WS | 0.80 |
| 5/1/2012 | 11E | emails to WS re crdit bidding | 0.50 |
| 5/2/2012 | 11E | TC MF re exclusivity objection draft affidavit for MKS research exhibts | 4.40 |
| 5/2/2012 | 11E | Research Gallo Representation in state court matters conflict of interest | 3.60 |
| 5/3/2012 | 11E | TC draft objection by Lo sardo | 0.80 |
| 5/4/2012 | 11E | Meeting At Delshah with Bobkers | 1.10 |
| 5/6/2012 | 11E | Draft declarations and review final objection | 2.20 |
| 5/7/2012 | GV | TC MKS, ML, JS and DC re corrected judgment and calculation of interest Review affimration in suport of TRO | 1.20 |
| 5/7/2012 | 11E | Research and review Condo Objection/litigation/ AG status | 3.30 |
| 5/8/2012 | 11E | Review Loan History and Correspondence FCSB paper files | 4.80 |
| 5/10/2012 | 11E | Court Hearing re exclusivity | 3.20 |
| 5/11/2012 | GV | prepare and serve restraiing notices to Bobker entities | 1.70 |
| 5/11/2012 | GV | TC  enforcement review Ben Bobker financial statement | 0.50 |
| 5/13/2012 | 11E | Review Real estate Tax payments and common charge arrears | 1.60 |
| 5/16/2012 | 11E | Review plan meeting MKS, ML, | 0.80 |

| Date | Client | Description | Hours |
|------|--------|-------------|-------|
| 5/18/2012 | 11E | Review appraisals TC MKS MF | 1.30 |
| 5/19/2012 | 11E | conference Settlement proposal to Bobkers | 0.60 |
| 5/23/2012 | GV | TC JS  Prepare and serve Restraining Notices to debtors | 0.90 |
| 5/23/2012 | 11E | meeting delshah MKS  Bay condos sale | 0.60 |
| 5/24/2012 | 11E | Conference call  re proposed 11 plan | 0.40 |
| 5/25/2012 | 11E | TC partial sale research partial release of collateral | 2.60 |
| 5/28/2012 | GV | Research execution and sale of LLC interests | 3.00 |
| 5/30/2012 | GV | Review and revise turnover motion | 0.90 |
| 5/31/2012 | GV | TC JS MKS Review final Turnover Motion | 0.60 |
| 6/5/2012 | GV | Research and review Marshall writ of mandamus Queens county | 3.40 |
| 6/6/2012 | GV | TC DM, BS, WS, JS re executi0ns and levies | 0.30 |
| 6/7/2012 | GV | TC counsel for Grand Pacific | 0.40 |
| 6/8/2012 | GV | Research FCSB files for bank account info TC JS re info subpoenas | 1.80 |
| 6/18/2012 | 11E | Review Foreclosure Search | 0.50 |
| 6/19/2012 | 11E | TC MF re cash collateral operating reports email state law issues | 0.40 |
| 6/21/2012 | GV | Review all Grand Pacific judgmetns ltitgation counterclaims re asset seizures | 10.40 |
| 6/25/2012 | GV | letter to Marshall Bienstock | 0.40 |
| 6/25/2012 | 11E | TC creditor's plan | 0.20 |
| 6/25/2012 | GV | Review opposition to turnover motion Bobker Deposition research memo in reply | 1.80 |
| 6/26/2012 | GV | TC JS  execution startegy and Nassau County procedures | 1.90 |
| 6/27/2012 | GV | TC MKS JS re Grand Pacific | 0.40 |

| Date | Client | Description | Hours |
|------|--------|-------------|-------|
| 6/27/2012 | 11E | TC MKS MF, WS review and comment Plan and Disclosure Statement | 3.70 |
| 6/28/2012 | 11E | Research Memo Re Bay condos Ownership 97.2% email and TC Chicago Title EHurwitz | 3.80 |
| 6/30/2012 | GV | Review and Research Grand pacific's OSC in Hale action | 0.60 |
| 7/2/2012 | GV | TC JS re executions claims Research priority of lien claims TC  bobker judgment creditor Friedman Research involuntary BK | 2.20 |
| 7/2/2012 | GV | TC with Martshal Bienstock and Vickie re executions | 0.30 |
| 7/2/2012 | 11E | Meeting Delshah plan and stipulation | 1.40 |
| 7/3/2012 | GV | Execution to Bienstock to seize bank accounts and LLC interests | 0.50 |
| 7/10/2012 | GV | Review Research GP motions in New York County Attend TRO hearing | 4.20 |
| 7/11/2012 | 11E | Research reversionary interest in Bay condos | 4.40 |
| 7/12/2012 | 11E | Review draft objection to plan and disclosure statement | 2.50 |
| 7/13/2012 | GV | TC Bill Fiore re GP | 0.50 |
| 7/15/2012 | 11E | Review Bay condos leases | 1.60 |
| 7/16/2012 | GV | Research election of remedies re Judgment on Note | 1.50 |
| 7/16/2012 | 11E | Review Foreclosure Search TC MB | 0.60 |
| 7/16/2012 | 11E | Review default, acceleration and correspondence for draft foreclosure complaint | 2.60 |
| 7/17/2012 | 11E | TC MKS, BS, WS, MF re lift stay plan | 1.00 |
| 7/20/2012 | 11E | Review and Comment draft Plan and Disclosure statement | 2.20 |
| 7/21/2012 | GV | Email exchange Fiore | 0.70 |
| 7/23/2012 | 11E | TC JL re unpaid common charges | 0.30 |
| 7/23/2012 | GV | Research and Review Adversary proceeding to enjoin state enforcement proceedings | 2.10 |
| 7/24/2012 | GV | TC marshal re execution sale | 0.40 |

| Date | Client | Description | Hours |
|------|--------|-------------|-------|
| 7/25/2012 | 11E | Conference call  MKS, WS, BS, MF re plan strategy | 1.00 |
| 7/26/2012 | GV | order judgment and lien searches Bobker org chart | 0.50 |
| 7/26/2012 | 11E | conference  re case status Kaye Sholer | 0.40 |
| 7/27/2012 | 11E | draft answer | 1.30 |
| 7/29/2012 | GV | TC MKS Meredith Friedman Wiliam Fiore counsel to GP | 0.80 |
| 7/31/2012 | GV | Review Judgment and Lien searches | 0.50 |
| 8/5/2012 | 11E | Review Motion to approve Disclosure atatement | 1.70 |
| 8/5/2012 | 11E | Identify and Prepare Exhibits to lift stay motion TC MKS MF | 2.50 |
| 8/6/2012 | GV | TC and emails MKS re Grand pacific | 0.90 |
| 8/7/2012 | GV | Review affidavit of Ben bobker re seized funds Bluebell assets email s with JS TC Marshal re amount held | 0.70 |
| 8/7/2012 | 11E | Review Operating Reports | 1.20 |
| 8/8/2012 | 11E | TC MF | 0.20 |
| 8/10/2012 | GV | review procees of execution | 0.20 |
| 8/13/2012 | 11E | Review pay-off calculations  research reinstatement of deafult interest to original default date | 2.60 |
| 9/7/2012 | 11E | Review motion for Bidding Procedures and contract of sale . | 2.30 |
| 9/8/2012 | 11E | Review motion for Objection to Claims | 5.10 |
| 9/11/2012 | GV | TC JS, Marshal re sale of LLC units | 0.60 |
| 9/12/2012 | GV | TC JS review memo of law turnover | 0.90 |
| 9/13/2012 | GV | Review Turnover motion | 0.50 |
| 9/21/2012 | 11E | drafting claims objection opposition and objection to sale motion | 1.40 |
| 9/22/2012 | 11E | Review compare Leitner appraisals TC outside brokers re current conditions provide draft value narrative | 2.40 |

| Date | Client | Description | Hours |
|------|--------|-------------|-------|
| 9/22/2012 | 11E | TC with RE financing bureau NY AG  TC Condo Plan counsel | 0.80 |
| 9/23/2012 | 11E | Research Munitalp contract M&M broker and relationships | 1.20 |
| 9/24/2012 | 11E | Review Edit Objection to Debtor's motion to approve Disclosure Statement | 0.80 |
| 9/24/2012 | 11E | Review Operating Reports | 0.50 |
| 9/27/2012 | 11E | Research 502(b) | 0.80 |
| 10/1/2012 | 11E | Meeting with MKS Delshah review Opposition to lift stay motion | 1.10 |
| 10/2/2012 | 11E | TC MF, MKS WS  re hearing | 0.30 |
| 10/3/2012 | 11E | Court hearing lift stay and disclosure  meeting MKS | 4.80 |
| 10/8/2012 | GV | Review Bobker CTB litigation | 3.80 |
| 10/8/2012 | 11E | meeting Delshah re strategy | 0.60 |
| 10/9/2012 | 11E | TC MF re settlement meetings | 0.20 |
| 10/10/2012 | GV | TC NYC sheriff JS revise language for execution sales | 0.80 |
| 10/11/2012 | GV | File Transcript of Judgment NY Co | 1.20 |
| 10/11/2012 | 11E | TC  MF | 0.50 |
| 10/12/2012 | GV | TC MKS JS real property sale | 0.50 |
| 10/18/2012 | 11E | TC MF re settlement meetings | 0.30 |
| 10/19/2012 | GV | Conferences re sheriff sales | 1.20 |
| 10/23/2012 | 11E | Mediation meeting | 2.10 |
| 10/24/2012 | 11E | prepare settlement proposals | 0.90 |
| 11/8/2012 | 11E | Review draft scheduling order | 0.30 |
| 11/13/2012 | GV | Description of property to be sold by Sheriff | 0.80 |

| Date | Client | Description | Hours |
|------|--------|-------------|-------|
| 11/18/2012 | 11E | Review Answer Foreclosure proceeding | 0.40 |
| 11/19/2012 | GV | Revise executions | 0.70 |
| 11/20/2012 | 11E | TC re discovery demands | 0.30 |
| 11/26/2012 | 11E | Prepare litigation update memo shulte | 1.20 |
| 11/26/2012 | 11E | Conference call ML BBWG emails re condo fees | 0.70 |
| 11/27/2012 | 11E | Prepare list of discovery demands | 1.50 |
| 11/27/2012 | GV | Revise description of property to be sold TC JS | 0.50 |
| 11/28/2012 | GV | draft narrative for Bobker Fraudulent Conveyance locate review and assemble exhibits | 2.80 |
| 11/29/2012 | GV | TC JS re NOP | 0.40 |
| 11/30/2012 | GV | Review and edit complaint NOP | 1.30 |
| 12/2/2012 | 11E | Review and Edit amended Disclosure statement and plan | 1.30 |
| 12/3/2012 | 11E | Review final document demands | 0.50 |
| 12/4/2012 | GV | Review and revise Loan oganization chart | 0.70 |
| 12/6/2012 | 11E | Review amended Disclosure Statement and Plan filed by Debtor | 0.90 |
| 12/7/2012 | 11E | mediation meeting | 3.60 |
| 12/11/2012 | 11E | Bobker pay off letter | 0.60 |
| 12/13/2012 | 11E | Review Condo unit owner's letters | 0.40 |
| 12/20/2012 | 11E | Review Bobker counter proposals | 0.50 |
| 1/2/2013 | 11E | emails kevin Nash re bobker proposals | 0.50 |
| 1/8/2013 | 11E | prepare exhibts for objection draft narrative | 2.60 |
| 1/10/2013 | GV | TC deputy Sheriff re sheriif's sale | 0.50 |

| Date | Client | Description | Hours |
|------|--------|-------------|-------|
| 1/10/2013 | 11E | Draft narrative for Objection | 1.20 |
| 1/15/2013 | 11E | Review condo Board litigation AG correspondence emails with MF | 2.20 |
| 1/15/2013 | GV | Research and Review Turnover Decision | 1.20 |
| 1/16/2013 | 11E | Counter proposal to takeover marekting and sales | 0.50 |
| 2/2/2013 | GV | conference ML MKS re liquidation plan for bobker entities sheriff's sales etc. | 1.30 |
| 2/7/2013 | 11E | Review drafts of disclosure statemtn with MF DM emails | 1.40 |
| 2/8/2013 | 11E | Review Operating Reports | 1.00 |
| 2/10/2013 | 11e | Review draft 2nd Disclosure statement | 1.30 |
| 2/18/2013 | 11E | Review 3rd Amended Disclosure | 0.60 |
| 2/19/2013 | GV | order and review judgment and lien seraches | 1.80 |
| 2/19/2013 | GV | Review Discoll opionion research appeal | 3.00 |
| 2/20/2013 | 11E | Review operating Report | 0.20 |
| 2/20/2013 | GV | Review and place ads for sheriff's sale | 0.80 |
| 3/1/2013 | 11E | Add tenant names to service list emails MF | 0.40 |
| 3/5/2013 | 11E | prepare exhibits for Motion for Summary Judgment foreclosure review draft affidavit- Loan History | 3.80 |
| 3/11/2013 | GV | Confirm NY Post Advertising and affidavit of publication | 0.60 |
| 3/12/2013 | 11E | TC MF re discovery subpoenas contents  and service  Revised sale notice | 1.60 |
| 3/19/2013 | GV | Confirm NY Post advertising | 0.40 |
| 3/25/2013 | 11E | TC re  Bay condos auction various | 1.50 |
| 3/28/2013 | 11E | TC Rami Carmeli send leases and terms of sale emails research 2.8% TIC rights | 2.80 |
| 3/29/2013 | 11E | TC Carmeli re terms of sale | 0.40 |

| Date | Client | Description | Hours |
|------|--------|-------------|-------|
| 3/29/2013 | 11E | TC Jay Yackow, Esq. re Malekan Bid 2.8% | 0.80 |
| 3/29/2013 | 11E | emails with MF re terms of sale | 0.80 |
| 4/2/2013 | 11e | TC Eric Berlliner re purchase of 2.8% Possession of premises | 0.70 |
| 4/3/2013 | 11E | Review commitment letter and comment research Lender  review appraisal compar to earlier appraisals | 4.30 |
| 4/3/2013 | 11E | Various TC re Bay Condos auction | 1.50 |
| 4/4/2013 | 11E | Various TC re Bay Condos auction | 1.80 |
| 4/4/2013 | 11E | tc, emails Losardo re condo opposition to Bobker plan | 0.30 |
| 4/4/2013 | 11E | Review Pay off letter | 0.20 |
| 4/5/2013 | 11E | TCs rami, yackow, MKS, and others re bidding | 2.10 |
| 4/8/2013 | 11E | emal=ILS Rami re bidding | 0.30 |
| 4/8/2013 | 11E | Attend auction for credit bid | 2.50 |
| 4/9/2013 | 11E | TC MKS MF re strategy | 0.70 |
| 4/10/2013 | 11 E | review claims objection | 2.20 |
| 4/14/2013 | 11E | Review and revise response to claim obj | 2.40 |
| 4/16/2013 | 11E | Review filed resposne | 0.30 |
| 4/17/2013 | 11E | Review Bobker Loan contingencies | 0.80 |
| 4/18/2013 | 11E | Review Gallo conflict of interest | 2.50 |
| 4/23/2013 | 11E | to court with MF for hearing | 3.30 |
| 4/23/2013 | 11E | Review Goldberg objection | 0.50 |
| 4/30/2013 | 11E | CC with MKS WFS MF etc. emails with same | 0.60 |
| 5/1/2013 | 11E | TC WFS and various email exhanges | 0.30 |

| Date | Client | Description | Hours |
|------|--------|-------------|-------|
| 5/1/2013 | 11E | Review confirmation order and affidavit | 1.20 |
| 5/1/2013 | 11E | Revise confirmation affidavit | 1.20 |
| 5/6/2013 | 11E | Edit confirmation affidavit | 0.50 |
| 5/6/2013 | 11E | Review Hearing Notes | 0.40 |
| 5/7/2013 | GV | Review proposed bid for Sheriff auction | 0.30 |
| 5/7/2012 | GV | TC NYC sheriff Review OSC to stay sheriff's sale,  hearing for in Nassau County TC Dan Rice Michael Bush | 8.30 |
| 5/8/2013 | 11E | Review operating Reports | 0.30 |
| 5/8/2013 | 11E | TC rami carmeli | 0.30 |
| 5/9/2013 | 11E | court hearing confirmation | 3.80 |
| 5/13/2013 | 11E | Review Marcus  & Millichap motion | 1.10 |
| 5/13/2013 | 11E | TC MAF re M&M  research realted parties sharon bands and Bobker group | 1.60 |
| 5/14/2013 | 11E | TC MF re Gingerman letter and related issues | 2.40 |
| 5/14/2013 | 11E | TC carmeli | 0.30 |
| 5/28/2013 | 11E | Review Gallo objection to motion | 0.30 |
| 5/29/2013 | 11E | draft narrtive for 543 motion | 2.10 |
| 5/30/2013 | 11E | Review title report Bay condos | 0.60 |
| 5/30/2013 | 11E | conference call re AG status Martin Shaw, MKS emails review amendmetns and floor plans | 2.80 |
| 5/31/2013 | 11E | respond to 701 unpaid rent  prepare notice to tenants | 0.70 |
| 6/3/2013 | 11E | TC emails draft affidavit Losardo | 1.30 |
| 6/3/2013 | 11E | Review M &M response | 0.50 |
| 6/3/2013 | 11E | Review Gallo email re tenatn letter CC MKS | 0.60 |

| Date | Client | Description | Hours |
|------|--------|-------------|-------|
| 6/4/2013 | 11E | Attend hearing | 3.40 |
| 6/4/2013 | 11E | draft narrative for motion for preliminary injunction | 2.30 |
| 6/4/2013 | 11E | Preapre accounting presentation for Gallo | 0.90 |
| 6/4/2013 | 11E | Research 339-kk rights of condo board | 2.20 |
| 6/5/2013 | 11E | Review all filings for Morgan Lfts & 11 Est 36 LLC  adversary proceeding TC MF | 1.90 |
| 6/5/2013 | 11E | TC furnished Quarters | 0.20 |
| 6/7/2013 | GV | TC shenkler, JS | 0.40 |
| 6/11/2013 | GV | TC JS re marchal execution research same | 0.80 |
| 6/14/2013 | 11E | review opposition to motion for PI | 0.50 |
| 6/18/2013 | 11E | Response to oppostion | 2.20 |
| 6/18/2013 | GV | emails with exhibits to MF | 0.80 |
| 6/19/2013 | GV | Review draft OSC TC DM | 1.50 |
| 6/19/2013 | 11E | Review Losardo affirmation | 0.20 |
| 6/20/2013 | 11E | attend hearing re continuation of Mortgagee in possession | 4.50 |
| 6/21/2013 | 11E | Review proposed consent order | 0.30 |
| 6/24/2013 | 11E | TC MF MKS re dishi sale Munitalp etc. | 0.90 |
| 6/28/2013 | 11E | CC status conference | 0.50 |
| 6/28/2013 | GV | conference calls BS re Art 78 proceeding | 1.20 |
| 7/9/2013 | 11E | TC MAF re settlemtn | 0.30 |
| 7/11/2013 | 11E | TC MAF order confirming plan | 0.60 |
| 7/17/2013 | 11E | Research Common law rights of tenants from TICs | 3.10 |
| 7/18/2013 | 11E | Reviewed writ of mandamus final | 1.20 |

| Date | Client | Description | Hours |
|------|--------|-------------|-------|
| 7/29/2013 | 11E | Review Operating reports | 0.50 |
| 8/6/2013 | 11E | Review motion to determine rights | 0.50 |
| 8/14/2013 | 11E | Lift Stay motion draft narrative with exhibits | 4.70 |
| 8/15/2013 | 11E | Review Operating Reports | 0.40 |
| 8/19/2013 | 11E | Research ejectment vs summary non pay proceedings | 1.70 |
| 8/202103 | 11E | research tenatn security deposits | 1.00 |
| 8/27/2013 | 11E | Review Gallo fee application TC Gallo | 0.50 |
| 9/3/2013 | 11E | Review motion to compel assumption of contract Munitalp | 0.80 |
| 9/3/2013 | GV | TC Bill Daley | 0.30 |
| 9/5/2013 | 11E | Review Debtor Plan | 1.20 |
| 9/6/2013 | GV | TC Henry Daley Marshal | 0.50 |
| 9/9/2013 | GV | review Pilson objection | 0.80 |
| 9/10/2013 | 11E | Review Gingerman response | 1.60 |
| 9/13/2013 | GV | TC schwartzman re execution | 0.40 |
| 9/13/2013 | GV | Review Execution and entities | 0.70 |
| 9/16/2013 | 11E | Review Operating Reports | 0.40 |
| 9/16/2013 | 11E | Review victoria Guthrie claim  Research rights priority  TC Reisman  TC MF, MKS | 4.30 |
| 9/17/2013 | 11E | Attend hearing | 3.80 |
| 9/17/2013 | 11E | TC Reisman TC DM | 0.90 |
| 9/26/2013 | 11E | Review Debtor disclosure statement | 1.40 |
| 10/4/2013 | GV | Review Bobker equity holders  obtain proff for Marshal | 1.00 |
| 10/7/2013 | 11E | Prepare TOE letter re Dishi | 1.00 |

| Date | Client | Description | Hours |
|------|--------|-------------|-------|
|      |        | Total Hours | 355.10 |

| | | | |
|---|---|---|---|
| | | Total Due @ 435 | $ 154,469 |
| | | less 10% | $ 15,447 |
| | | Total Due | $ 139,022 |

# Lorenzo A. DeLuca, Esq.

Attorney at law
575 Madison Avenue, 10th Floor
New York, NY 10022
212-239-2339
212-239-7440 (fax)

| | |
|---|---|
| 11 East 36th Note Buyer LLC | Page 1 |
| c/o Delshah Capital LLC | May 29, 2012 |
| 114 East 13th Street | Account No        1469- 0011 |
| New York, NY 10003 | Statement No.                1 |

Re:    11 East 36th Street/Bay Condos

| LAD | | Hours |
|---|---|---|
| 01/08/2012 | Review Bankruptcy petition and related filings mortgage documents, | 4.4 |
| 01/09/2012 | Meeting at Delshah MKS, Lupo | .8 |
| 01/09/2012 | Letter to FCSB | 1.2 |
| 01/10/2012 | TC with MKS MB and Mark Frankel | .6 |
| 01/16-18/12 | Review and comment FCSB contract | 6.3 |
| 1/25/2012 | TC MKS, Lupo re FCSB purchase | .4 |
| 1/26/2012 | Review final contract | 1.2 |
| 1/26/2012 | TC MB, MKS and Serchuk | 1.6 |
| 1/30-31/12 | Research and Review Reversion of title to 11 East 36th LLC | 7.2 |
| 2/06/2012 | TC MKS et al | .5 |
| 2/07/2012 | TC  Chinatrust Bank Re Omnibus Assignment | .8 |
| 2/08/2012 | Research, Prepare revised assignment | 2.5 |
| 2/09/2012 | Meeting @ Delshah | 1.5 |
| 2/10-29/2012 | Various TC Joe Bobker, Chinatrust, MKS  re settlement | 2.8 |

11 East 36th Note Buyer                                                    Page 2
c/o Delshah Capital LLC                                             May 29, 2012
114 East 13th Street                              Account No      1469- 0011
New York, NY 10003                                Statement No.            1

| Date | Description | Hours |
|---|---|---|
| 2/16/2012 | TC Serchuk letter to FCSB re default interest | .6 |
| 2/29/2012 | Review Operating Reports | .5 |
| 2/29/2012 | TC  JS re Griffon Judgment | .4 |
| 03/01/2012 | Research ALR, Restraining Notice | 3.5 |
| 03/02/2012 | Research organization charts seizure of Membership interests Fraudulent transfers | 8.7 |
| 03/05-06/12 | Research and review case law statutes re Default interest | 6.1 |
| 03/07/12 | Meeting Delshah MKS, Lupo | 1.8 |
| 03/15/12 | Review commercial leases appraisals and Research Termination in Plan or outside of Plan | 7.4 |
| 03/15/12 | Meeting Delshah MKS,Lupo | 2.3 |
| 03/21/12 | TC JS, MKS | .8 |

TOTAL HOURLY CHARGES                               63.9

### Recapitulation

| Timekeeper | Hours | Rate | Total |
|---|---|---|---|
| L DeLuca | 63.9 | $435 | $27,796 |
| less 10% as agreed | | | (2,779 |

TOTAL CURRENT WORK                                 $25,017

PRIOR BALANCE DUE                                          0

Payments                                                        0

BALANCE DUE                                        $25,017

### Backenroth Frankel Krinsky
800 Third Avenue
11th Floor
New York, NY 10022
Telephone: 212-593-1100
Fax: 212-644-0544

February 19, 2014
Invoice No. 625

Michael Shah
DelShah Capital
149 Madison Avenue
Suite 701
New York, NY 10016

Client Number: 709 Michael Shah
Matter Number 1227 Morgan Loft
**For Services Rendered Through 2/19/2014.**

## Fees

| Date | Timekeeper | Description | Hours | Amount |
|------|-----------|-------------|-------|--------|
| 5/24/2013 | MAF | Teleconference client re case strategy and drafting 243 motion | 0.00 | $0.00 |
| 5/28/2013 | MAF | Teleconference Deluca re reciever motion | 0.10 | $50.50 |
| 5/29/2013 | MAF | Drafted 543, lift stay, and exclusivity motion | 8.80 | $4,444.00 |
| 5/30/2013 | MAF | C/C client and Sarino re 543 motion, lift stay, and terminate exclusivity | 1.10 | $555.50 |
| 6/3/2013 | MAF | Revised application and drafted complaint, OSC, order, affidavit, and verif. re 543 motion (4.0); t/c's chambers re same (.2); emails Gallo re same (.3) | 4.50 | $2,272.50 |
| 6/4/2013 | MAF | To court on status re rents | 2.00 | $1,010.00 |
| 6/5/2013 | MAF | Teleconferences and emails Shah re discovery and ownership of debtors and Ch. 11 strategy (.4); drafting document and depo subpoenas (2.5) | 2.90 | $1,464.50 |
| 6/6/2013 | YE | Proof of service | 3.00 | $375.00 |
| 6/17/2013 | MAF | Drafting reply debtor obj | 2.80 | $1,414.00 |
| 6/18/2013 | MAF | Drafted reply | 5.50 | $2,777.50 |
| 6/19/2013 | MAF | Completed reply and prep for 6/20 hearing | 5.00 | $2,525.00 |
| 6/20/2013 | MAF | To court on 543 motion | 3.00 | $1,515.00 |

**Continued On Next Page**

Client Number:    709                                                                                    2/19/2014
Matter Number:    1227                                                                                   Page:  2

| Date | | Description | Hours | Amount |
|------|---|-------------|-------|--------|
| 8/2/2013 | MAF | Emails client re 362(d)(3) and strategy | 0.30 | $151.50 |
| 8/13/2013 | MAF | Emails and t/c's client re lift stay motion and op reports | 0.40 | $202.00 |
| 8/15/2013 | MAF | Completed, assembled, filed and served lift stay motion | 4.00 | $2,020.00 |
| 8/16/2013 | YE | Proof of service | 1.00 | $125.00 |
| 9/12/2013 | MAF | Reviewed Guthrie claim & email client re same | 0.20 | $101.00 |
| 9/16/2013 | MAF | Prep for 9/17 hearing (1.9) reviewed new pleadings filed re same (.4) email & t/c client re same (.5) | 2.80 | $1,414.00 |
| 9/17/2013 | MAF | To court on Lift Stay (1.5) c/c client re same & re membership interests (.3) | 1.80 | $909.00 |
| 9/18/2013 | MAF | Letter to respondents re discovery | 0.90 | $454.50 |
| 10/9/2013 | MAF | Research re affect of assumption/rejection of Munitlap contract (1.5) t/c Gallo re same (.3) | 1.80 | $909.00 |
| 10/9/2013 | MAF | Research re affect of assumption/rejection of __ __ (1.5); t/c Gallo re same (.3) | 1.80 | $909.00 |
| 10/18/2013 | MAF | T/c DeLuca re 10/22 hearing (.3) review motion to reduce (.7) | 1.00 | $505.00 |
| 10/18/2013 | MAF | Teleconference Dlucca re 10/22 hrs (.3); reviewed motion to reduce (.7) | 1.00 | $505.00 |
| 10/22/2013 | MAF | Prep & to Court on Lift Stay | 4.00 | $2,020.00 |
| 10/22/2013 | MAF | Prep and to court on lift stay | 4.00 | $2,020.00 |
| 10/25/2013 | MAF | Drafted Lift Stay Order (2.1) emails client, Cardo, & Gallo re same (.3) | 2.40 | $1,212.00 |
| 10/25/2013 | MAF | Drafted lift staly order (2.1); emails client, condo and Gallo re same (.3) | 2.40 | $1,212.00 |
| 10/28/2013 | MAF | Prep re 10/29 hearing & reviewed new pleadings re same (.5) | 0.50 | $252.50 |
| 10/28/2013 | MAF | Prep of 10/29 hearing and reviewed new pleadings re same | 0.50 | $252.50 |
| 10/29/2013 | MAF | T/c Bush re claim obj. (.3) to Court on Lift Stay Order (.8) memo to tenant re response to claim obj. (1.1) | 2.20 | $1,111.00 |
| 10/29/2013 | MAF | Telecnference Bush claim obj (.3); to court on lift stay order (.8); memo to team re response to claim obj (1.1) | 2.20 | $1,111.00 |
| 10/30/2013 | MAF | T/c & email Bush re claim obj (.1) t/c Shah re same & re 10/29 hearing (.2) revised conditional order and email Gallo re same (.3) | 0.60 | $303.00 |
| 10/30/2013 | MAF | Telecoference Bush re  cliam obj (.1); email and t/c Shah re same and re 10/29 hearing (.2); rejected contractors order and email Gallo re same (.3) | 0.60 | $303.00 |

**Continued On Next Page**

| | | | | |
|---|---|---|---|---|
| 10/31/2013 | MAF | T/c Bush re claim obj. (.1) t/c Reisman re Humphries claim (.3) | 0.40 | $202.00 |
| 10/31/2013 | MAF | Teleconference Bush re obj (.1); t/c Reismand re _ claim (.3); emails client team re same (1.3); t/c Gallo re L. Morrison (.1) | 1.80 | $909.00 |
| 11/4/2013 | MAF | Drafting Ch. 11 plan and disclosure statement (5.0) emails and t/c's Bush re claim re claim of respoinse (.5); t/c __ Morrison re status and email client re same (.6) | 6.10 | $3,080.50 |
| 11/5/2013 | MAF | Drafting plan disclosusre statement and sale procedues | 4.80 | $2,424.00 |
| 11/6/2013 | MAF | Revisions claim response, plan and disclousure statement (5.8); t/c client re same (.3); reviewed order re lift stay and email client re strategy (.7) | 6.80 | $3,434.00 |
| 11/7/2013 | MAF | Teleconference Morrison re 363 sale | 0.40 | $202.00 |
| 11/8/2013 | MAF | O/C client re claim obj | 0.90 | $454.50 |
| 11/12/2013 | MAF | Reviewed sale motion and email and t/c client re same | 1.00 | $505.00 |
| 11/14/2013 | MAF | Teleconference Morrison re plan and disclosure statement | 0.50 | $252.50 |
| 11/21/2013 | MAF | Revised claim obj and sent to client with strategy memo | 1.30 | $656.50 |
| 11/25/2013 | MAF | Teleconference Shah re sale strategy and claim obj response (4); email Morrison re same (.1); t/c Losardo re __ on pland on promise to make whole (.3); emails client re same (1.0) | 1.80 | $909.00 |
| 11/26/2013 | MAF | Teleconference Morrison re adk (.1); t/C Deluca re claim obj and plan | 0.50 | $252.50 |
| 12/2/2013 | MAF | Reviewed debtor letter to court and emails client re same | 0.30 | $151.50 |
| 12/3/2013 | MAF | Revising plan and discloure statement drafted NOS and served same | 4.00 | $2,020.00 |
| 12/4/2013 | MAF | Teleconference Mike Peak re letter to court (.1); t/c Lasordo re same (.1); reviewed condo letter (1.5); emails client re same and re claim obj (.2) | 1.90 | $959.50 |
| 12/18/2013 | MAF | Email client re _ and case strategy (.5); email Morrison re sale forms and claim obj; (.1); t/c DeLuca re same (.5) | 1.10 | $555.50 |
| 12/19/2013 | MAF | Email ALasado re 1/6 hearing date | 0.10 | $50.50 |
| 12/20/2013 | MAF | Reviewed debtor motion, research re rule 60 and drfafted email to client re strategy | 1.50 | $757.50 |
| 12/24/2013 | MAF | Emails client re response to claim obj | 0.40 | $202.00 |
| 12/26/2013 | MAF | Review __ obj to disclosure statement and email client re same | 1.20 | $606.00 |

**Continued On Next Page**

| Date | | Description | Hours | Amount |
|---|---|---|---|---|
| 12/27/2013 | MAF | Draftig obj to reconsideration motion (3.5); emails r erevisons to response to claim obj (1.8) | 5.30 | $2,676.50 |
| 12/30/2013 | MAF | Teleconference client re claim obj response | 0.10 | $50.50 |
| 1/2/2014 | MAF | Teleconference Morrison re adj of claims obj | 0.10 | $50.50 |
| 1/2/2014 | MAF | | 0.00 | $0.00 |
| 1/5/2014 | MAF | Drafting, filing and serving disclosure statement reply and amended plan and disclosure statement | 6.00 | $3,030.00 |
| 1/6/2014 | MAF | Prep for 1/7 hearing | 1.50 | $757.50 |
| 1/7/2014 | MAF | To court on disclosure statement hearing (2.5); email morrison plan and disclosure statement (.1); email __ re sale procedures (.1) | 2.70 | $1,363.50 |
| 1/9/2014 | MAF | Emails re meeting with debtor to discuss sale procedures | 0.80 | $404.00 |
| 1/12/2014 | MAF | Revised sale procedures and email client re same | 3.50 | $1,767.50 |
| 1/13/2014 | MAF | O/C__ and Morrison re sale (1.0); c/c Morrison and __ re same (.5); c/c Shaw re same (.2); reviewed reply brief with Districe Court (.5) | 2.20 | $1,111.00 |
| 1/14/2014 | MAF | Revised co-counsel to AG | 0.50 | $252.50 |
| 1/16/2014 | MAF | Email Shaw re AG status | 0.10 | $50.50 |
| 1/21/2014 | MAF | Teleconference M. Peak of __ re holding date | 0.10 | $50.50 |
| 1/22/2014 | MAF | Teleconference court re 1/23 conf (.1); t/c Morrison re same (.1); t/c client and Shaw re same (.5) | 0.70 | $353.50 |
| 1/28/2014 | MAF | Teleconference Shaw re AG and slae (.2); emails Losado re same (.1) | 0.30 | $151.50 |
| 2/3/2014 | MAF | Teleconference Morrison re adj and settlement status | 0.30 | $151.50 |
| 2/3/2014 | MAF | | 0.00 | $0.00 |
| 2/10/2014 | MAF | Teleconferences client re 2/14 status conf and motion to estate | 0.50 | $252.50 |
| 2/11/2014 | MAF | Revised Shaw letter to NYAG | 0.30 | $151.50 |

|  | | Billable Hours / Fees: | 136.90 | $67,614.50 |

## Timekeeper Summary

Timekeeper MAF worked 132.90 hours at $505.00 per hour, totaling $67,114.50.
Timekeeper YE worked 4.00 hours at $125.00 per hour, totaling $500.00.

Continued On Next Page

Client Number:    709

Matter Number:    1227

2/19/2014

Page:    5

## Cost Detail

| Date | Description | Amount | Check No. |
|---|---|---|---|
| 6/5/2013 | Bankruptcy Court Filing Fee | $586.00 | |
| 6/21/2013 | Westlaw Legal Research May 2013 | $198.08 | 13197 |
| | **Payee:** WESTLAW | | |
| 6/21/2013 | Federal Express 6/5/13 | $127.60 | 13201 |
| | **Payee:** Federal Express | | |
| 6/24/2013 | Messenger to Bankruptcy Court 6/19/13 | $13.00 | 13218 |
| | **Payee:** Wynn Adams Express | | |
| 8/5/2013 | Westlaw Legal Research June 2013 | $137.67 | 13291 |
| | **Payee:** WESTLAW | | |
| 8/15/2013 | Postage | $23.76 | |
| 8/15/2013 | Photocopies | $252.00 | |
| 9/9/2013 | Messenger 8/16/13 | $8.00 | 13379 |
| | **Payee:** Wynn Adams Express | | |
| 9/17/2013 | Lift Stay Motion Filing Fee | $176.00 | 13411 |
| | **Payee:** American Express | | |
| | **Total Costs** | **$1,522.11** | |

Current Fees:        $67,614.50

Costs Advanced:      $1,522.11

TOTAL AMOUNT DUE: $69,136.61

Pro rata based on Claim Amount

11 E. 36 Note buyer → 57,747.89

Griffon V → 11,388.72

Thank You for Letting Us Serve You.
Payment Due Upon Receipt.

### Backenroth Frankel Krinsky

800 Third Avenue
11th Floor
New York, NY 10022
Telephone: 212-593-1100
Fax: 212-644-0544

February 19, 2014
Invoice No. 624

Michael Shah
DelShah Capital
149 Madison Avenue
Suite 701
New York, NY 10016

Client Number: 709  Michael Shah
Matter Number  1231  Bay Condo
**For Services Rendered Through 2/19/2014.**

## Fees

| Date | Timekeeper | Description | Hours | Amount |
|------|-----------|-------------|-------|--------|
| 3/5/2012 | MAF | Teleconference client re RWN as investor | 0.40 | $194.00 |
| 3/6/2012 | MAF | O/C re strategy (1.0); reviewed notes re same(.5) | 1.50 | $727.50 |
| 3/13/2012 | MAF | O/C client re allowance of interest in Ch. 11 | 0.50 | $242.50 |
| 4/13/2012 | MAF | Research re exclusivity extension and reviewed debtor's motion re same | 0.70 | $339.50 |
| 4/24/2012 | MAF | Teleconference client re basis for claim and documentation | 0.40 | $194.00 |
| 4/25/2012 | MAF | Email client re proof of claim | 0.30 | $145.50 |
| 4/27/2012 | MAF | Teleconference client re status of mortgage purcahse and 4/1 status conf | 0.30 | $145.50 |
| 4/30/2012 | MAF | o/c client re exclusivity obj | 0.80 | $388.00 |
| 5/2/2012 | MAF | Teleconference client re history (.3); drafting exclusivity obj (5.5) | 5.80 | $2,813.00 |
| 5/3/2012 | MAF | Drafting obj to motion to extend exclusivity (7.0); drafting p.o.c.'s (1.0) | 8.00 | $3,880.00 |
| 5/4/2012 | MAF | Letter to court re objection | 0.10 | $48.50 |
| 5/8/2012 | MAF | Prep re 5/10 hearing | 0.60 | $291.00 |
| 5/10/2012 | MAF | To court on exclusivity (3.5); t/c's client re same (.2) | 3.70 | $1,794.50 |

**Continued On Next Page**

Client Number:    709
Matter Number:    1231

2/19/2014
Page:    2

| | | | | |
|---|---|---|---|---|
| 5/14/2012 | MAF | Teleconference Anthony Gallo re Ch. 11 status | 0.10 | $48.50 |
| 5/15/2012 | MAF | Drafting, plan disclosure statement , application for sale procedures and exclusivity | 10.90 | $5,286.50 |
| 5/18/2012 | MAF | Teleconferences client re plan and appraisal | 0.30 | $145.50 |
| 5/23/2012 | MAF | Emails re sale of property and t/c client re same | 0.40 | $194.00 |
| 5/24/2012 | MAF | Teleconference client re Ch. 11 plan strategy | 0.30 | $145.50 |
| 5/25/2012 | MAF | Teleconference client re sale of less than all units (.2); research re same (.5) | 0.70 | $339.50 |
| 6/1/2012 | MAF | Teleconference Gallo re buyer for unit(.3); email client re same (.4) | 0.70 | $339.50 |
| 6/20/2012 | MAF | Letter to debtor re op reports and cash collateral | 0.20 | $97.00 |
| 6/25/2012 | MAF | Conf call re Ch. 11 plan | 0.30 | $145.50 |
| 6/27/2012 | MAF | Reviewed disclosure statement and plan (.5); email client re same (.2) | 0.70 | $339.50 |
| 7/2/2012 | MAF | o/c client re plan (1.2); reviewed mortage, debtor plan and cash coll stip re same (1.5) | 2.70 | $1,309.50 |
| 7/11/2012 | MAF | Reviewed comments to plan andidslcosre and email client re same | 1.10 | $533.50 |
| 7/12/2012 | MAF | Revised and filed P.O.C.'s | 1.00 | $485.00 |
| 7/15/2012 | MAF | Revisions re client comments to plan, disclosure statement and sale application | 1.80 | $873.00 |
| 7/16/2012 | MAF | Revising disclosure statement and seael motion and email client re same | 2.50 | $1,212.50 |
| 7/17/2012 | MAF | Teleconferenc3e client re Ch. 11 strategy | 1.00 | $485.00 |
| 7/18/2012 | MAF | Drafting lift stay motion | 3.50 | $1,697.50 |
| 7/19/2012 | MAF | Teleconference client re pleadings revison | 0.10 | $48.50 |
| 7/23/2012 | MAF | Reviewed complant by debtor and email client re same (1.1); drafted ltft stay motion (6.0) | 7.10 | $3,443.50 |
| 7/25/2012 | MAF | Emails re 7/25 meeting (.1); c/c re same (.5) | 0.60 | $291.00 |
| 7/26/2012 | MAF | O/c re Ch. 11 strategy (.3); review documents & revisions re same (.8) | 1.10 | $533.50 |
| 8/1/2012 | MAF | Revised plan, disclosure statement and motion re comments from client and co counsel (3.5); o/c Condo atty re same (.3) | 3.80 | $1,843.00 |
| 8/2/2012 | MAF | Email client re revisons for plan, disclosure statement and motions | 0.30 | $145.50 |

**Continued On Next Page**

Client Number:    709                                                                          2/19/2014
Matter Number:    1231                                                                         Page:   3

| | | | | |
|---|---|---|---|---|
| 8/6/2012 | MAF | Revisions to pleading and email client re same | 0.80 | $388.00 |
| 8/7/2012 | MAF | Final pleading revisions and t/c client re same | 0.40 | $194.00 |
| 8/8/2012 | MAF | Assembled and filed pleadings (.9); t/c DeLuca re same (.1) | 1.00 | $485.00 |
| 9/7/2012 | MAF | Revised claim obj and emails and research re same | 4.90 | $2,376.50 |
| 9/21/2012 | MAF | Drafting obj to sale motion and claim obj motion | 6.60 | $3,201.00 |
| 9/25/2012 | MAF | Drafting obj re 10/3 hearing | 5.50 | $2,667.50 |
| 9/26/2012 | MAF | revised and filed and served objection re 10/3 hearing | 1.50 | $727.50 |
| 10/2/2012 | MAF | Telconferences client re 10/3 hearing | 0.40 | $194.00 |
| 10/3/2012 | MAF | To court on lift stay & disclosure statement (3.5); emails client and research same (2.7) | 6.20 | $3,007.00 |
| 10/5/2012 | MAF | Emails client re settlement and scheduling | 0.10 | $48.50 |
| 10/8/2012 | MAF | O/C re Ch. 11 strategy | 0.60 | $291.00 |
| 10/9/2012 | MAF | Email parties re settlement meeting | 0.10 | $48.50 |
| 10/11/2012 | MAF | Teleconference De Luca re settlement and re Ch. 11 scheduling order (.3); emails parties re same (.2) | 0.50 | $242.50 |
| 10/12/2012 | MAF | Teleconference Veronica re settlement meeting (.1); emails re same (.3) | 0.40 | $194.00 |
| 10/18/2012 | MAF | Teleconference De Luca re settlement and re scheduling order | 0.30 | $145.50 |
| 10/23/2012 | MAF | To mediation | 1.50 | $727.50 |
| 11/1/2012 | MAF | Email debtor re pay off | 0.20 | $97.00 |
| 11/8/2012 | MAF | Drafted scheduling order | 1.40 | $679.00 |
| 11/11/2012 | MAF | Emails re scheduling order | 0.20 | $97.00 |
| 11/16/2012 | MAF | Email Gallo | 0.20 | $97.00 |
| 11/19/2012 | MAF | Scheduling stip to debtor (.1); t/c court re same (.1); emails re schedudling order and settlement meeting (.4) | 0.60 | $291.00 |
| 11/20/2012 | MAF | Scheduling order to court | 0.30 | $145.50 |
| 11/21/2012 | MAF | Email re discovery | 0.10 | $48.50 |
| 11/27/2012 | MAF | Teleconference Stacy Luftis re hearing dates | 0.10 | $48.50 |
| 11/28/2012 | MAF | Drafting discovery demands (2.5); t/c Gallo adj (.1) | 2.60 | $1,261.00 |
| 11/29/2012 | MAF | Emails Gallo re extension of time | 0.10 | $48.50 |

**Continued On Next Page**

| | | | | |
|---|---|---|---|---|
| Client Number: | 709 | | | 2/19/2014 |
| Matter Number: | 1231 | | | Page: 4 |

| | | | | |
|---|---|---|---|---|
| 12/3/2012 | MAF | Drafting discovery demands | 9.90 | $4,801.50 |
| 12/5/2012 | MAF | Revised disclosure statement | 5.70 | $2,764.50 |
| 12/7/2012 | MAF | To settlement meeting | 3.00 | $1,455.00 |
| 12/10/2012 | MAF | Drafted NOH and o/c YE re service | 0.70 | $339.50 |
| 12/12/2012 | MAF | Email Gallos re settlement | 0.10 | $48.50 |
| 12/14/2012 | MAF | Emails re info for broker | 0.20 | $97.00 |
| 1/4/2013 | MAF | Email Gallo re 1/17 hearing | 0.20 | $101.00 |
| 1/10/2013 | MAF | Drafted object to debtor's amended disclosure statement and email term re same | 4.50 | $2,272.50 |
| 1/11/2013 | MAF | Revised and filed disclosure statement obj | 1.10 | $555.50 |
| 1/15/2013 | MAF | Teleconference Nash and client re settlement | 0.60 | $303.00 |
| 1/16/2013 | MAF | Reviewed settlement letters with Nash (.2); prep for 1/17 hearing (2.8) | 3.00 | $1,515.00 |
| 1/17/2013 | MAF | To court on disclosure statement hearing (2.0); emails and t/c's client and Nash re settlement (.7) | 2.70 | $1,363.50 |
| 1/22/2013 | MAF | Teleconference Gallo re claim obj | 0.20 | $101.00 |
| 2/7/2013 | MAF | Revised disclosure statement (2.0); email client re comments (.3) | 2.30 | $1,161.50 |
| 2/8/2013 | MAF | Reviewed operating report and email client re same | 0.20 | $101.00 |
| 2/11/2013 | MAF | Revised disclosure statement re op reports (1.1); t/c De Luca re same (.2); email Gallo re same (.1); t/c court re hearing date (.1) | 1.50 | $757.50 |
| 2/12/2013 | MAF | Letter to court re order disclosure statement (.1); filed disclosure statement re same (.5); drafted ballot re same (.3) | 0.90 | $454.50 |
| 2/14/2013 | MAF | Teleconferences court re revisions to disclosure statement | 0.10 | $50.50 |
| 2/19/2013 | MAF | Drafted and filed further disclosure statement and plan revisions  and sent to court (3.5); emails NYC re same (.2) | 3.70 | $1,868.50 |
| 3/1/2013 | MAF | Arranged for service of disclosure statement | 0.50 | $252.50 |
| 3/11/2013 | MAF | Revised subpoenas and arranged for service (2.8); t/c's and emails client re same (.5) | 3.30 | $1,666.50 |
| 3/12/2013 | MAF | Teleconference De Luca re subpoena service (.2); revised sale notice and arranged for advertising (.8) | 1.00 | $505.00 |
| 3/13/2013 | MAF | Email client re potential purchasers | 0.10 | $50.50 |
| 3/14/2013 | MAF | Teleconference Roberto Ortiz re sale, t/c Richard Farb re same | 0.10 | $50.50 |

**Continued On Next Page**

Client Number:    709
Matter Number:    1231

2/19/2014
Page:    5

| Date | | Description | | |
|---|---|---|---|---|
| 3/20/2013 | MAF | Teleconference McGill re sale | 0.10 | $50.50 |
| 3/25/2013 | MAF | Teleconference Melody Malekin re sale of asset | 0.20 | $101.00 |
| 3/28/2013 | MAF | Teleconference Rami Weiscarmelli re sale (.2); emails re same (.5); t/c DeLuca re same (.3) | 1.00 | $505.00 |
| 3/29/2013 | MAF | Email client re terms of sale (.7); t/c buyer re leases (.2); prepared and forwarded leases (.4) | 1.30 | $656.50 |
| 4/3/2013 | MAF | Emails client re sale and debtor email re term sheets, contract amount, disposition of claims, & due diligence | 1.80 | $909.00 |
| 4/4/2013 | MAF | Teleconference Rami re sale (.1); t/c other potential purchasers re same (.3) t/c DeLuca re same (.3) | 0.70 | $353.50 |
| 4/5/2013 | MAF | Teleconference Gallo re sale | 0.20 | $101.00 |
| 4/8/2013 | MAF | Teleconference Gerard re terms of sale (.1); t/c Yakov re auction (.1); t/c DeLuca re Dishi (.1) conducted sale of property & t/c client re same (2.5) | 2.80 | $1,414.00 |
| 4/9/2013 | MAF | Emails client re claim obj. strategy | 2.50 | $1,262.50 |
| 4/10/2013 | MAF | Emails client re claim obj | 0.90 | $454.50 |
| 4/11/2013 | MAF | Teleconference Nash re Goldberg offer and Ch. 11 strategy (.3); email client memos re same (.1) | 0.40 | $202.00 |
| 4/15/2013 | MAF | Drafting response to claim obj | 8.00 | $4,040.00 |
| 4/16/2013 | MAF | Revised and filed claim obj | 4.00 | $2,020.00 |
| 4/17/2013 | MAF | Email NYC law department re conf order (.1); emails client re conf objs and response (2.2); t/c Nash re adj (.1); emails client re same (.1) | 2.50 | $1,262.50 |
| 4/22/2013 | MAF | Teleconference Nash re adj (.1); t/c's and emails parties re same (.7); prep for 4/23 hearing (2.1) | 2.90 | $1,464.50 |
| 4/23/2013 | MAF | To court on claim obj hearing (3.5); emails client re obj filed by Goldberg (.6) | 4.10 | $2,070.50 |
| 4/24/2013 | MAF | Emails re Dishi and debtor new deal and confirmation | 0.80 | $404.00 |
| 4/25/2013 | MAF | Teleconference & emails client and GWFG re adjournment and new deal with Dishi | 0.40 | $202.00 |
| 5/1/2013 | MAF | Draft conf affidavit (7.0); coordination with Cornau re support for plan (.2) | 7.20 | $3,636.00 |
| 5/2/2013 | MAF | Revisions to conf affidavit | 1.50 | $757.50 |
| 5/3/2013 | MAF | Conf hearing prep re review of case files and materials | 3.50 | $1,767.50 |
| 5/6/2013 | MAF | Emails client re 5/9 hearing (.1); drafting hearing notes re same (6.1) | 6.20 | $3,131.00 |

**Continued On Next Page**

Client Number:    709                                                                                    2/19/2014
Matter Number:   1231                                                                                    Page:   6

| Date | | Description | Hours | Amount |
|---|---|---|---|---|
| 5/7/2013 | MAF | Drafting conf order (3.0); email client re same and re conf affidavit and conf notes (.1); t/c NYC re 1146 language (.1); t/c Gallo re Ch. 11 petitions (.3); email and t/c client re same (.7) | 4.20 | $2,121.00 |
| 5/8/2013 | MAF | Email client re conf affidavit (.1); t/c's client, Nash, & Gallo re settlement (1.5); prep re 5/9 hearing (5.1) | 7.70 | $3,888.50 |
| 5/9/2013 | MAF | To court on conf hearing (3.5) circulated conf order and emails re same (.7) | 4.20 | $2,121.00 |
| 5/13/2013 | MAF | Reviewed M&M motion & email client re same (.4); t/c Winters re Gingerman & email client re same (.5) | 0.90 | $454.50 |
| 5/14/2013 | MAF | Emails & doc review re Dishi to purchase 2.8% | 1.60 | $808.00 |
| 5/17/2013 | MAF | Teleconference Mike Pasik re lease issue (.1); emails client re same (.8) | 0.90 | $454.50 |
| 5/20/2013 | MAF | Teleconference Berliner re lease with Gingerman (.1); t/c Nash re same (.2) | 0.30 | $151.50 |
| 5/22/2013 | MAF | Teleconference court re status of lease | 0.10 | $50.50 |
| 5/24/2013 | MAF | Teleconference Berliner re Gingerman, t/c and email client re same | 0.60 | $303.00 |
| 5/28/2013 | MAF | Drafted and filed obj to M&M motion (3.5); t/c Rami re Gingerman lease (.1); t/c Winters re Gingerman lease (.2) | 3.80 | $1,919.00 |
| 5/31/2013 | MAF | Teleconference Nash re settlement | 0.10 | $50.50 |
| 6/3/2013 | MAF | Emails Berliner re settlement with Gingerman(.6); prep for 6/4 hearing (.8) | 1.40 | $707.00 |
| 6/4/2013 | MAF | To court on M&M application and conf order | 2.00 | $1,010.00 |
| 6/13/2013 | MAF | Teleconference Berliner re settlement and conf call (.2); emails parties re same (.5); to settlement meeting (1.5); t/c Nash Goldberg purchaser (.2) | 2.40 | $1,212.00 |
| 6/14/2013 | MAF | C/C court re status (.2); emails client re same and re settlement (2.0) | 2.20 | $1,111.00 |
| 6/17/2013 | MAF | Emails re settlement (.5); t/c's court re status conf (.1) | 0.60 | $303.00 |
| 6/19/2013 | MAF | To court re adj status date | 0.10 | $50.50 |
| 6/24/2013 | MAF | Teleconference client re sale and c/c client and Nash re sale (.7); email debtor and Carlebach re insurance and payment to DIP account (.8) | 1.50 | $757.50 |
| 6/25/2013 | MAF | Teleconferences and emails client and Nash and Dishi counsel re settlement | 1.40 | $707.00 |
| 6/26/2013 | MAF | Reviewed and forwarded Gallo fee application to client | 0.50 | $252.50 |

**Continued On Next Page**

Client Number:    709                                                                                   2/19/2014
Matter Number:    1231                                                                                  Page:   7

| Date | | Description | Hours | Amount |
|---|---|---|---|---|
| 6/27/2013 | MAF | Emails and t/c's re 6/28 conf call settlement | 2.90 | $1,464.50 |
| 6/28/2013 | MAF | O/C court re status (.3); c/c Nash and Berliner re same (.3); t/c Shah re same (.1); t/c Gallo re same and re fee application adj (.3) | 0.70 | $353.50 |
| 7/1/2013 | MAF | Teleconference Berliner re settlement meeting (.1); t/c Rosenbloom re same (.1); email parties re same (.2) | 0.40 | $202.00 |
| 7/2/2013 | MAF | Email Gallo re fee application (.1) emails re settlement meeting (.3) | 0.40 | $202.00 |
| 7/3/2013 | MAF | Email parties re settlement meeting | 0.10 | $50.50 |
| 7/8/2013 | MAF | Email Gallo re fee application adj (.1); email client re settlement strategy (.5) | 0.60 | $303.00 |
| 7/9/2013 | MAF | Teleconference DeLuca re settlement meeting (.1); email Schankler re strategy (.2); t/c Berliner re settlement (.2); t/c Nash re same (.2); emails and t/c's cleint re same (.3) | 1.00 | $505.00 |
| 7/10/2013 | MAF | Teleconference Berliner re settlement (.3); t/c Rami re same (.2); t/c client and Cornau re same (.2); emails client re same (.9) | 1.60 | $808.00 |
| 7/11/2013 | MAF | Teleconference De Luca re order confirming plan (.4); t/c Winters re same (.3); email client re same (.2) | 0.90 | $454.50 |
| 7/12/2013 | MAF | Teleconference Nash re settlement | 0.10 | $50.50 |
| 7/15/2013 | MAF | Teleconference court re telephone conf (.1); t/c Pilsin re same (.3); t/c cleint re conf and strategy (.2) | 0.60 | $303.00 |
| 7/17/2013 | MAF | Email Winters re 365(h) issues (.2); reviewed case law and email client re same (.4) | 0.60 | $303.00 |
| 7/18/2013 | MAF | Teleconferences & emails Cornau and Winters re conf order | 0.40 | $202.00 |
| 7/22/2013 | MAF | Teleconference Mike Paek re 7/23 conf call | 0.10 | $50.50 |
| 7/23/2013 | MAF | C/C court re status | 0.30 | $151.50 |
| 7/29/2013 | MAF | Emails re settlement meeting (.1); t/c client re same (.1); | 0.20 | $101.00 |
| 8/1/2013 | MAF | O/C parties re settlement and procedure | 1.00 | $505.00 |
| 8/2/2013 | MAF | Draft letter to court re sesttlement and motion practice | 0.50 | $252.50 |
| 8/6/2013 | MAF | Drafting lift stay motion | 4.80 | $2,424.00 |
| 8/7/2013 | MAF | Revised filed and served motion for order in aid of confirmation (1.0); t/c court re hearing date (.1); cover letter to court re same (.1) | 1.20 | $606.00 |
| 8/15/2013 | MAF | Email Gallo re adj | 0.10 | $50.50 |
| 9/4/2013 | MAF | Reviewed debtor plan and email client re same | 1.50 | $757.50 |

**Continued On Next Page**

Client Number:   709                                                         2/19/2014
Matter Number:   1231                                                        Page:  8

| Date | | Description | Hours | Amount |
|---|---|---|---|---|
| 9/9/2013 | MAF | Teleconference Deluca re Dishi obj (.2); reviewed same and emails re same (.5) | 0.70 | $353.50 |
| 9/10/2013 | MAF | Reviewed responses re lease issues | 1.00 | $505.00 |
| 9/12/2013 | MAF | Teleconferences and email client re worst case scenario on lease case | 0.40 | $202.00 |
| 9/16/2013 | MAF | Prep for 9/17 hearing | 0.40 | $202.00 |
| 9/17/2013 | MAF | To court on lease resolution (1.5); order to court re same (.1) | 1.60 | $808.00 |
| 9/23/2013 | MAF | Teleconference Mike Poet re order re revisions to conf order | 0.10 | $50.50 |
| 10/2/2013 | MAF | Emails client and Dishi re closing | 0.30 | $151.50 |
| 10/4/2013 | MAF | Teleconference client and Dishi counsel re closing (.3) emails re same (.3) | 0.60 | $303.00 |
| 10/8/2013 | MAF | Teleconferences client re closing (.4); t/c Rami re same (.1) email Gallo re same (.1); reviewed NOA and email client re same (.1) | 0.70 | $353.50 |
| 10/9/2013 | MAF | Teleconference Gallo re 10/10 closing (.2); reviewed emails re closing from Dishi, reviewed sale materials and research re same, email client re same (1.4) | 1.60 | $808.00 |
| 10/10/2013 | MAF | Teleconference Lew Siegel re Standstill (.1); emails re same (.3); attended closing (2.0); document prep re same (1.5);t/c's client re same (1.0); emails client re same (.6); research re time of essence and party obstacle to condition procedure (3.5) | 9.00 | $4,545.00 |
| 10/11/2013 | MAF | Emails Siegel re standstill agmnt (.2);c/c client re settlement and litigation strategy (1.5) | 1.70 | $858.50 |
| 10/14/2013 | MAF | Teleconferences and emails client and Dishi re closing | 0.40 | $202.00 |
| 10/15/2013 | MAF | T/c client re closing | 0.40 | $202.00 |
| 10/16/2013 | MAF | Emails research and t/c's re Dishi Motion and alternatives | 4.10 | $2,070.50 |
| 10/17/2013 | MAF | Emails and t/c's and research re Dishi demand for injunctive relief re closing | 3.60 | $1,818.00 |
| 10/21/2013 | MAF | Teleconference John Whelan re adj (.1); prep for 10/22 hearing (.7) | 0.80 | $404.00 |
| 10/22/2013 | MAF | Drafted declaratory judgment obj | 3.80 | $1,919.00 |
| 10/28/2013 | MAF | Teleconference Bush re p.o.c. (.1); emails re same (.2); prep re 10/29 hearing (.3) | 0.60 | $303.00 |
| 10/29/2013 | MAF | To court on declaratory judgment motion | 0.80 | $404.00 |
| 10/30/2013 | MAF | T/c Shah re 10/29 hearing | 0.10 | $50.50 |

**Continued On Next Page**

**Client Number:** 709
**Matter Number:** 1231

2/19/2014
Page: 9

| | | | | |
|---|---|---|---|---|
| 11/5/2013 | MAF | Teleconference client re real estate taxes | 0.10 | $50.50 |
| 12/5/2013 | MAF | Teleconference Josh Lasado re __ on debtor's ability to sell pending submission of __ and review by drafted email response to debtor's letter to bad faith | 0.80 | $404.00 |
| 12/18/2013 | MAF | Email client re appeal brief (.1); t/c Deluca re same (.3) | 0.40 | $202.00 |
| 12/24/2013 | MAF | Drafting appeal brief | 3.50 | $1,767.50 |
| 12/26/2013 | MAF | Emails client re appraisal brief and revisions to same | 6.50 | $3,282.50 |
| 12/27/2013 | MAF | Revised appeal brief | 2.80 | $1,414.00 |
| 12/28/2013 | MAF | Drafting obj to motion | 6.00 | $3,030.00 |
| 12/30/2013 | MAF | Completed, filed and served appeal brief | 3.00 | $1,515.00 |
| 1/27/2014 | MAF | Teleconference Morrison re sale procedures | 0.10 | $50.50 |
| 2/3/2014 | MAF | Email condo board re assement | 0.40 | $202.00 |
| 2/4/2014 | MAF | Teleconference __ re AG and sale | 0.30 | $151.50 |
| 2/5/2014 | MAF | Email Shulte re starus | 0.20 | $101.00 |
| 2/10/2014 | MAF | Email Shane and DeLucca re 2/14 status conf and re sale procedures | 0.30 | $151.50 |

**Billable Hours / Fees:** 313.10   $155,705.50

## Timekeeper Summary

Timekeeper MAF worked 192.60 hours at $505.00 per hour, totaling $97,263.00.

Timekeeper MAF worked 120.50 hours at $485.00 per hour, totaling $58,442.50.

## Cost Detail

| Date | Description | Amount | Check No. |
|---|---|---|---|
| 6/28/2012 | Westlaw Legal Research May 2012<br>**Payee:** WESTLAW | $861.00 | 12247 |
| 8/28/2012 | Westlaw Legal Research July 2012<br>**Payee:** WESTLAW | $51.15 | 12380 |
| 8/28/2012 | Car Service 7/18/12<br>**Payee:** Skyline Credit Ride, Inc. | $43.52 | 12384 |
| 8/28/2012 | Car Service 7/23/12<br>**Payee:** Skyline Credit Ride, Inc. | $79.28 | 12384 |
| 11/15/2012 | Car Service 9/24/12<br>**Payee:** Skyline Credit Ride, Inc. | $79.28 | 12589 |

**Continued On Next Page**

| Client Number: | 709 | | 2/19/2014 |
| Matter Number: | 1231 | | Page: 10 |

| | | | |
|---|---|---|---|
| 11/15/2012 | Car Service 10/3/12 | $79.28 | 12589 |
| | Payee: Skyline Credit Ride, Inc. | | |
| 12/10/2012 | Postage | $7.20 | |
| 12/19/2012 | Westlaw Legal Research November 2012 | $4.00 | 12707 |
| | Payee: WESTLAW | | |
| 1/15/2013 | Car Service 12/3/2012 | $89.25 | 12758.1 |
| | Payee: Skyline Credit Ride, Inc. | | |
| 2/21/2013 | Messenger 2/12/13 | $10.00 | 12849 |
| | Payee: Wynn Adams Express | | |
| 3/1/2013 | Photocopies | $240.00 | |
| 3/1/2013 | Postage | $48.00 | |
| 4/22/2013 | March 19, 2013  Notice of Sale in NY Times | $5,248.00 | 13024 |
| | Payee: American Express | | |
| 5/28/2013 | Westlaw Legal Research April 2013 | $240.00 | 13128 |
| | Payee: WESTLAW | | |
| 8/15/2013 | Westlaw Legal Research July 2013 | $39.00 | 13304 |
| | Payee: WESTLAW | | |
| 8/19/2013 | Messenger 8/7/13 | $10.00 | 13326 |
| | Payee: Wynn Adams Express | | |
| 8/31/2013 | Westlaw Legal Research August 2013 | $52.66 | |
| 10/23/2013 | Westlaw Legal Research September 2013 | $317.00 | 1A |
| | Payee: WESTLAW | | |

| | |
|---|---|
| Total Costs | $7,498.62 |

| | |
|---|---|
| Current Fees: | $155,705.50 |
| Advanced Costs: | $7,498.62 |
| **TOTAL AMOUNT DUE:** | **$163,204.12** |

Pro Rata Base on Claim $

~~11 E.36~~ Note buyer → 136,319.86

Griffon √           → 26,884.26

Thank You for Letting Us Serve You.
Payment Due Upon Receipt.

| Griffon V - Legal Bills | | |
|---|---|---|
| Deluca | $ | 48,428.55 |
| Deluca | $ | 14,115.31 |
| Frankel | $ | 26,884.26 |
| Frankel | $ | 11,388.72 |
| Wenig Saltiel | $ | 1,500.00 |
| Advance Fee for Marshall | $ | 1,000.00 |
| Cordova & Schwartzman | $ | 2,148.65 |
| Cordova & Schwartzman | $ | 10,139.50 |
| Cordova & Schwartzman | $ | 8,628.49 |
| Cordova & Schwartzman | $ | 2,021.00 |
| Cordova & Schwartzman | $ | 3,375.00 |
| Cordova & Schwartzman | $ | 1,446.68 |
| Cordova & Schwartzman | $ | 810.00 |
| Einig & Bush | $ | 4,937.50 |
| Total | $ | 136,823.66 |

# Lorenzo A. DeLuca, Esq.

Attorney at law
575 Madison Avenue, 10th Floor
New York, NY 10022
212-239-2339
212-239-7440 (fax)

Griffon V LLC
11 East 36th Note Buyer LLC
c/o Delshah Capital LLC                                      February 5, 2014
114 East 13th Street                              Account No     1469- 0011
New York, NY 10003                               Statement No.            3

Re:  Various litigation involving Griffon V and 11 East 36th Notebuyer LLC with
     11 East 36th LLC/Bay Condos/ Morgan Lofts LLC

LAD                                                                    Hours

TOTAL HOURLY CHARGES                                                  103.50

### Recapitulation

| Timekeeper | Hours | Rate | Total |
|---|---|---|---|
| L DeLuca | 103.5 | $435 | $45,022 |
| less 10% as agreed | | | (4,502) |

TOTAL CURRENT WORK                                              $ 40,520

Balance due Prior Bills                                            4,039

Sub total                                                      $ 44,559

Less Payments received since                                   $ 40,000

BALANCE DUE                                                    $  4,559

26,404.69 for Notebuyer
14,115.31 for Griffon V

# Lorenzo A. DeLuca, Esq.
Attorney at law
575 Madison Avenue, 10th Floor
New York, NY 10022
212-239-2339
212-239-7440 (fax)

Griffon V LLC
11 East 36th Note Buyer LLC
c/o Delshah Capital LLC                                      October 10, 2013
114 East 13th Street                          Account No      1469- 0011
New York, NY 10003                              Statement No.              1

Re:  <u>Various litigation involving Griffon V and 11 East 36th Notebuyer LLC with</u>
<u>11 East 36th LLC/Bay Condos/ Morgan Lofts LLC</u>

LAD                                                          Hours

TOTAL HOURLY CHARGES      (See Attached)                     355.10

Recapitulation

| Timekeeper | Hours | Rate | Total |
|---|---|---|---|
| L DeLuca | 355.10 | $435 | $154,469 |
| less 10% as agreed | | | (15,447) |

TOTAL CURRENT WORK                           $139,022

PRIOR BILLS                                   25,017

Sub total                                    $164,039

Less Payments received                       $160,000

BALANCE DUE                                  $   4,039

90,593.10 for Notebuyer
48,428.55 for Griffon V

| Date | Client | Description | Hours |
|------|--------|-------------|-------|
| 3/22/2012 | GV | TC JS and DC re TRO motion | 0.30 |
| 3/22/2012 | GV | TC WFS MKS | 0.60 |
| 3/26/2012 | GV | Research and analyse net worth statements, tax returns underlying mortgages | 4.50 |
| 3/27/2012 | GV | Research and Review Bobker related legal matters | 7.80 |
| 4/4/2012 | GV | email exchange DC re judgment | 0.20 |
| | GV | | |
| 4/6/2012 | GV | Review Application to Employ Accountant | 0.50 |
| 4/6/2012 | GV | TC MKS, Lupo | 0.30 |
| 4/9/2012 | GV | Bankruptcy analysis and status MKS ML Schulte | 1.50 |
| 4/10/2012 | GV | Meeting MKS, Lupo Savino Lift Stay exclusivity and motion for summary judgment | 0.60 |
| 4/10/2012 | GV | Review Chicago Title Report research 2.8% ownership  memo to chicago title re correction | 4.30 |
| 4/11/2012 | GV | Discuss Referee appointment JS and MKS | 0.30 |
| 4/11/2013 | GV | Research reversionary interest and claim bay Condos | 2.50 |
| 4/12/2012 | GV | TC JS and DC re judgment | 0.20 |
| 4/14/2012 | GV | Review Motion to Extend Exclusivity | 1.40 |
| 4/16/2012 | GV | TC MKS, Lupo, MF, WS | 0.40 |
| 4/16/2012 | GV | Prepare  title seizure action plan | 0.60 |
| 4/18/2012 | GV | TC with co-counsel  re signed judgment and need to corect and enforcement steps | 0.20 |
| 4/19/2012 | GV | TC fcsb re motion to extend exclusivity | 0.50 |
| 4/22/2012 | GV | Research and Review Objection to Motion to Extend Exclusivity | 4.20 |
| 4/24/2012 | 11E | TC MF, ML, MKS, WG re p o c | 0.40 |

| Date | Client | Description | Hours |
|------|--------|-------------|-------|
| 4/25/2012 | GV | TC Condo Board re Sheriff's sle | 0.30 |
| 4/25/2012 | GV | Review various legal fees for fee inquest | 1.20 |
| 4/25/2012 | 11E | Review Proof of Claim form | 0.20 |
| 4/27/2012 | 11E | TC re BK status conference | 0.30 |
| 4/28/2012 | 11E | Draft BK litigation plan | 0.70 |
| 4/27/2012 | GV | Research and prepare Exhibits to Objection | 1.80 |
| 4/30/2012 | 11E | Meeting  Delshah objection to exclusivity WS | 0.80 |
| 5/1/2012 | 11E | emails to WS re crdit bidding | 0.50 |
| 5/2/2012 | 11E | TC MF re exclusivity objection draft affidavit for MKS research exhibts | 4.40 |
| 5/2/2012 | 11E | Research Gallo Representation in state court matters conflict of interest | 3.60 |
| 5/3/2012 | 11E | TC draft objection by Lo sardo | 0.80 |
| 5/4/2012 | 11E | Meeting At Delshah with Bobkers | 1.10 |
| 5/6/2012 | 11E | Draft declarations and review final objection | 2.20 |
| 5/7/2012 | GV | TC MKS, ML, JS and DC re corrected judgment and calculation of interest Review affirmation in suport of TRO | 1.20 |
| 5/7/2012 | 11E | Research and review Condo Objection/litigation/ AG status | 3.30 |
| 5/8/2012 | 11E | Review Loan History and Correspondence FCSB paper files | 4.80 |
| 5/10/2012 | 11E | Court Hearing re exclusivity | 3.20 |
| 5/11/2012 | GV | prepare and serve restraiing notices to Bobker entities | 1.70 |
| 5/11/2012 | GV | TC  enforcement review Ben Bobker financial statement | 0.50 |
| 5/13/2012 | 11E | Review Real estate Tax payments and common charge arrears | 1.60 |
| 5/16/2012 | 11E | Review plan meeting MKS, ML, | 0.80 |

| Date | Client | Description | Hours |
|------|--------|-------------|-------|
| 5/18/2012 | 11E | Review appraisals TC MKS MF | 1.30 |
| 5/19/2012 | 11E | conference Settlement proposal to Bobkers | 0.60 |
| 5/23/2012 | GV | TC JS  Prepare and serve Restraining Notices to debtors | 0.90 |
| 5/23/2012 | 11E | meeting delshah MKS  Bay condos sale | 0.60 |
| 5/24/2012 | 11E | Conference call  re proposed 11 plan | 0.40 |
| 5/25/2012 | 11E | TC partial sale research partial release of collateral | 2.60 |
| 5/28/2012 | GV | Research execution and sale of LLC interests | 3.00 |
| 5/30/2012 | GV | Review and revise turnover motion | 0.90 |
| 5/31/2012 | GV | TC JS MKS Review final Turnover Motion | 0.60 |
| 6/5/2012 | GV | Research and review Marshall writ of mandamus Queens county | 3.40 |
| 6/6/2012 | GV | TC DM, BS, WS, JS re executi0ns and levies | 0.30 |
| 6/7/2012 | GV | TC counsel for Grand Pacific | 0.40 |
| 6/8/2012 | GV | Research FCSB files for bank account info TC JS re info subpoenas | 1.80 |
| 6/18/2012 | 11E | Review Foreclosure Search | 0.50 |
| 6/19/2012 | 11E | TC MF re cash collateral operating reports email state law issues | 0.40 |
| 6/21/2012 | GV | Review all Grand Pacific judgmetns ltitgation counterclaims re asset seizures | 10.40 |
| 6/25/2012 | GV | letter to Marshall Bienstock | 0.40 |
| 6/25/2012 | 11E | TC creditor's plan | 0.20 |
| 6/25/2012 | GV | Review opposition to turnover motion Bobker Deposition research memo in reply | 1.80 |
| 6/26/2012 | GV | TC JS  execution startegy and Nassau County procedures | 1.90 |
| 6/27/2012 | GV | TC MKS JS re Grand Pacific | 0.40 |

| Date | Client | Description | Hours |
|------|--------|-------------|-------|
| 6/27/2012 | 11E | TC MKS MF, WS review and comment Plan and Disclosure Statement | 3.70 |
| 6/28/2012 | 11E | Research Memo Re Bay condos Ownership 97.2% email and TC Chicago Title EHurwitz | 3.80 |
| 6/30/2012 | GV | Review and Research Grand pacific's OSC in Hale action | 0.60 |
| 7/2/2012 | GV | TC JS re executions claims Research priority of lien claims TC bobker judgment creditor Friedman Research involuntary BK | 2.20 |
| 7/2/2012 | GV | TC with Martshal Bienstock and Vickie re executions | 0.30 |
| 7/2/2012 | 11E | Meeting Delshah plan and stipulation | 1.40 |
| 7/3/2012 | GV | Execution to Bienstock to seize bank accounts and LLC interests | 0.50 |
| 7/10/2012 | GV | Review Research GP motions in New York County Attend TRO hearing | 4.20 |
| 7/11/2012 | 11E | Research reversionary interest in Bay condos | 4.40 |
| 7/12/2012 | 11E | Review draft objection to plan and disclosure statement | 2.50 |
| 7/13/2012 | GV | TC Bill Fiore re GP | 0.50 |
| 7/15/2012 | 11E | Review Bay condos leases | 1.60 |
| 7/16/2012 | GV | Research election of remedies re Judgment on Note | 1.50 |
| 7/16/2012 | 11E | Review Foreclosure Search TC MB | 0.60 |
| 7/16/2012 | 11E | Review default, acceleration and correspondence for draft foreclosure complaint | 2.60 |
| 7/17/2012 | 11E | TC MKS, BS, WS, MF re lift stay plan | 1.00 |
| 7/20/2012 | 11E | Review and Comment draft Plan and Disclosure statement | 2.20 |
| 7/21/2012 | GV | Email exchange Fiore | 0.70 |
| 7/23/2012 | 11E | TC JL re unpaid common charges | 0.30 |
| 7/23/2012 | GV | Research and Review Adversary proceeding to enjoin state enforcement proceedings | 2.10 |
| 7/24/2012 | GV | TC marshal re execution sale | 0.40 |

| Date | Client | Description | Hours |
|------|--------|-------------|-------|
| 7/25/2012 | 11E | Conference call  MKS, WS, BS, MF re plan strategy | 1.00 |
| 7/26/2012 | GV | order judgment and lien searches Bobker org chart | 0.50 |
| 7/26/2012 | 11E | conference  re case status Kaye Sholer | 0.40 |
| 7/27/2012 | 11E | draft answer | 1.30 |
| 7/29/2012 | GV | TC MKS Meredith Friedman Wiliam Fiore counsel to GP | 0.80 |
| 7/31/2012 | GV | Review Judgment and Lien searches | 0.50 |
| 8/5/2012 | 11E | Review Motion to approve Disclosure atatement | 1.70 |
| 8/5/2012 | 11E | Identify and Prepare Exhibits to lift stay motion TC MKS MF | 2.50 |
| 8/6/2012 | GV | TC and emails MKS re Grand pacific | 0.90 |
| 8/7/2012 | GV | Review affidavit of Ben bobker re seized funds Bluebell assets email s with JS TC Marshal re amount held | 0.70 |
| 8/7/2012 | 11E | Review Operating Reports | 1.20 |
| 8/8/2012 | 11E | TC MF | 0.20 |
| 8/10/2012 | GV | review procees of execution | 0.20 |
| 8/13/2012 | 11E | Review pay-off calculations  research reinstatement of deafult interest to original default date | 2.60 |
| 9/7/2012 | 11E | Review motion for Bidding Procedures and contract of sale . | 2.30 |
| 9/8/2012 | 11E | Review motion for Objection to Claims | 5.10 |
| 9/11/2012 | GV | TC JS, Marshal re sale of LLC units | 0.60 |
| 9/12/2012 | GV | TC JS review memo of law turnover | 0.90 |
| 9/13/2012 | GV | Review Turnover motion | 0.50 |
| 9/21/2012 | 11E | drafting claims objection opposition and objection to sale motion | 1.40 |
| 9/22/2012 | 11E | Review compare Leitner appraisals TC outside brokers re current conditions provide draft value narrative | 2.40 |

| Date | Client | Description | Hours |
|------|--------|-------------|-------|
| 9/22/2012 | 11E | TC with RE financing bureau NY AG  TC Condo Plan counsel | 0.80 |
| 9/23/2012 | 11E | Research Munitalp contract M&M broker and relationships | 1.20 |
| 9/24/2012 | 11E | Review Edit Objection to Debtor's motion to approve Disclosure Statement | 0.80 |
| 9/24/2012 | 11E | Review Operating Reports | 0.50 |
| 9/27/2012 | 11E | Research 502(b) | 0.80 |
| 10/1/2012 | 11E | Meeting with MKS Delshah review Opposition to lift stay motion | 1.10 |
| 10/2/2012 | 11E | TC MF, MKS WS  re hearing | 0.30 |
| 10/3/2012 | 11E | Court hearing lift stay and disclosure  meeting MKS | 4.80 |
| 10/8/2012 | GV | Review Bobker CTB litigation | 3.80 |
| 10/8/2012 | 11E | meeting Delshah re strategy | 0.60 |
| 10/9/2012 | 11E | TC MF re settlement meetings | 0.20 |
| 10/10/2012 | GV | TC NYC sheriff JS revise language for execution sales | 0.80 |
| 10/11/2012 | GV | File Transcript of Judgment NY Co | 1.20 |
| 10/11/2012 | 11E | TC  MF | 0.50 |
| 10/12/2012 | GV | TC MKS JS real property sale | 0.50 |
| 10/18/2012 | 11E | TC MF re settlement meetings | 0.30 |
| 10/19/2012 | GV | Conferences re sheriff sales | 1.20 |
| 10/23/2012 | 11E | Mediation meeting | 2.10 |
| 10/24/2012 | 11E | prepare settlement proposals | 0.90 |
| 11/8/2012 | 11E | Review draft scheduling order | 0.30 |
| 11/13/2012 | GV | Description of property to be sold by Sheriff | 0.80 |

| Date | Client | Description | Hours |
|------|--------|-------------|-------|
| 11/18/2012 | 11E | Review Answer Foreclosure proceeding | 0.40 |
| 11/19/2012 | GV | Revise executions | 0.70 |
| 11/20/2012 | 11E | TC re discovery demands | 0.30 |
| 11/26/2012 | 11E | Prepare litigation update memo shulte | 1.20 |
| 11/26/2012 | 11E | Conference call ML BBWG emails re condo fees | 0.70 |
| 11/27/2012 | 11E | Prepare list of discovery demands | 1.50 |
| 11/27/2012 | GV | Revise description of property to be sold TC JS | 0.50 |
| 11/28/2012 | GV | draft narrative for Bobker Fraudulent Conveyance locate review and assemble exhibits | 2.80 |
| 11/29/2012 | GV | TC JS re NOP | 0.40 |
| 11/30/2012 | GV | Review and edit complaint NOP | 1.30 |
| 12/2/2012 | 11E | Review and Edit amended Disclosure statement and plan | 1.30 |
| 12/3/2012 | 11E | Review final document demands | 0.50 |
| 12/4/2012 | GV | Review and revise Loan oganization chart | 0.70 |
| 12/6/2012 | 11E | Review amended Disclosure Statement and Plan filed by Debtor | 0.90 |
| 12/7/2012 | 11E | mediation meeting | 3.60 |
| 12/11/2012 | 11E | Bobker pay off letter | 0.60 |
| 12/13/2012 | 11E | Review Condo unit owner's letters | 0.40 |
| 12/20/2012 | 11E | Review Bobker counter proposals | 0.50 |
| 1/2/2013 | 11E | emails kevin Nash re bobker proposals | 0.50 |
| 1/8/2013 | 11E | prepare exhibts for objection draft narrative | 2.60 |
| 1/10/2013 | GV | TC deputy Sheriff re sheriif's sale | 0.50 |

| Date | Client | Description | Hours |
|------|--------|-------------|-------|
| 1/10/2013 | 11E | Draft narrative for Objection | 1.20 |
| 1/15/2013 | 11E | Review condo Board litigation AG correspondence emails with MF | 2.20 |
| 1/15/2013 | GV | Research and Review Turnover Decision | 1.20 |
| 1/16/2013 | 11E | Counter proposal to takeover marekting and sales | 0.50 |
| 2/2/2013 | GV | conference ML MKS re liquidation plan for bobker entities sheriff's sales etc. | 1.30 |
| 2/7/2013 | 11E | Review drafts of disclosure statemtn with MF DM emails | 1.40 |
| 2/8/2013 | 11E | Review Operating Reports | 1.00 |
| 2/10/2013 | 11e | Review draft 2nd Disclosure statement | 1.30 |
| 2/18/2013 | 11E | Review 3rd Amended Disclosure | 0.60 |
| 2/19/2013 | GV | order and review judgment and lien seraches | 1.80 |
| 2/19/2013 | GV | Review Discoll opionion research appeal | 3.00 |
| 2/20/2013 | 11E | Review operating Report | 0.20 |
| 2/20/2013 | GV | Review and place ads for sheriff's sale | 0.80 |
| 3/1/2013 | 11E | Add tenant names to service list emails MF | 0.40 |
| 3/5/2013 | 11E | prepare exhibits for Motion for Summary Judgment foreclosure review draft affidavit- Loan History | 3.80 |
| 3/11/2013 | GV | Confirm NY Post Advertising and affidavit of publication | 0.60 |
| 3/12/2013 | 11E | TC MF re discovery subpoenas contents  and service  Revised sale notice | 1.60 |
| 3/19/2013 | GV | Confirm NY Post advertising | 0.40 |
| 3/25/2013 | 11E | TC re  Bay condos auction various | 1.50 |
| 3/28/2013 | 11E | TC Rami Carmeli send leases and terms of sale emails research 2.8% TIC rights | 2.80 |
| 3/29/2013 | 11E | TC Carmeli re terms of sale | 0.40 |

| Date | Client | Description | Hours |
|------|--------|-------------|-------|
| 3/29/2013 | 11E | TC Jay Yackow, Esq. re Malekan Bid 2.8% | 0.80 |
| 3/29/2013 | 11E | emails with MF re terms of sale | 0.80 |
| 4/2/2013 | 11e | TC Eric Berlliner re purchase of 2.8% Possession of premises | 0.70 |
| 4/3/2013 | 11E | Review commitment letter and comment research Lender  review appraisal compar to earlier appraisals | 4.30 |
| 4/3/2013 | 11E | Various TC re Bay Condos auction | 1.50 |
| 4/4/2013 | 11E | Various TC re Bay Condos auction | 1.80 |
| 4/4/2013 | 11E | tc, emails Losardo re condo opposition to Bobker plan | 0.30 |
| 4/4/2013 | 11E | Review Pay off letter | 0.20 |
| 4/5/2013 | 11E | TCs rami, yackow, MKS, and others re bidding | 2.10 |
| 4/8/2013 | 11E | emal=ILS Rami re bidding | 0.30 |
| 4/8/2013 | 11E | Attend auction for credit bid | 2.50 |
| 4/9/2013 | 11E | TC MKS MF re strategy | 0.70 |
| 4/10/2013 | 11 E | review claims objection | 2.20 |
| 4/14/2013 | 11E | Review and revise response to claim obj | 2.40 |
| 4/16/2013 | 11E | Review filed resposne | 0.30 |
| 4/17/2013 | 11E | Review Bobker Loan contingencies | 0.80 |
| 4/18/2013 | 11E | Review Gallo conflict of interest | 2.50 |
| 4/23/2013 | 11E | to court with MF for hearing | 3.30 |
| 4/23/2013 | 11E | Review Goldberg objection | 0.50 |
| 4/30/2013 | 11E | CC with MKS WFS MF etc. emails with same | 0.60 |
| 5/1/2013 | 11E | TC WFS and various email exhanges | 0.30 |

| Date | Client | Description | Hours |
|------|--------|-------------|-------|
| 5/1/2013 | 11E | Review confrimation order and affidavit | 1.20 |
| 5/1/2013 | 11E | Revise confirmation affidavit | 1.20 |
| 5/6/2013 | 11E | Edit confirmation affidavit | 0.50 |
| 5/6/2013 | 11E | Review Hearing Notes | 0.40 |
| 5/7/2013 | GV | Review proposed bid for Sheriff auction | 0.30 |
| 5/7/2012 | GV | TC NYC sheriff Review OSC to stay sheriff's sale,  hearing for in Nassau County TC Dan Rice Michael Bush | 8.30 |
| 5/8/2013 | 11E | Review operating Reports | 0.30 |
| 5/8/2013 | 11E | TC rami carmeli | 0.30 |
| 5/9/2013 | 11E | court hearing confirmation | 3.80 |
| 5/13/2013 | 11E | Review Marcus  & Millichap motion | 1.10 |
| 5/13/2013 | 11E | TC MAF re M&M  research realted parties sharon bands and Bobker group | 1.60 |
| 5/14/2013 | 11E | TC MF re Gingerman letter and related issues | 2.40 |
| 5/14/2013 | 11E | TC carmeli | 0.30 |
| 5/28/2013 | 11E | Review Gallo objection to motion | 0.30 |
| 5/29/2013 | 11E | draft narrtive for 543 motion | 2.10 |
| 5/30/2013 | 11E | Review title report Bay condos | 0.60 |
| 5/30/2013 | 11E | conference call re AG status Martin Shaw, MKS emails review amendmetns and floor plans | 2.80 |
| 5/31/2013 | 11E | respond to 701 unpaid rent  prepare notice to tenants | 0.70 |
| 6/3/2013 | 11E | TC emails draft affidavit Losardo | 1.30 |
| 6/3/2013 | 11E | Review M &M response | 0.50 |
| 6/3/2013 | 11E | Review Gallo email re tenatn letter CC MKS | 0.60 |

| Date | Client | Description | Hours |
|------|--------|-------------|-------|
| 6/4/2013 | 11E | Attend hearing | 3.40 |
| 6/4/2013 | 11E | draft narrative for motion for preliminary injunction | 2.30 |
| 6/4/2013 | 11E | Preapre accounting presentation for Gallo | 0.90 |
| 6/4/2013 | 11E | Research 339-kk rights of condo board | 2.20 |
| 6/5/2013 | 11E | Review all filings for Morgan Lfts & 11 Est 36 LLC  adversary proceeding TC MF | 1.90 |
| 6/5/2013 | 11E | TC furnished Quarters | 0.20 |
| 6/7/2013 | GV | TC shenkler, JS | 0.40 |
| 6/11/2013 | GV | TC JS re marchal execution research same | 0.80 |
| 6/14/2013 | 11E | review opposition to motion for PI | 0.50 |
| 6/18/2013 | 11E | Response to opposton | 2.20 |
| 6/18/2013 | GV | emails with exhibits to MF | 0.80 |
| 6/19/2013 | GV | Review draft OSC TC DM | 1.50 |
| 6/19/2013 | 11E | Review Losardo affirmation | 0.20 |
| 6/20/2013 | 11E | attend hearing re continuation of Mortgagee in possession | 4.50 |
| 6/21/2013 | 11E | Review proposed consent order | 0.30 |
| 6/24/2013 | 11E | TC MF MKS re dishi sale Munitalp etc. | 0.90 |
| 6/28/2013 | 11E | CC status conference | 0.50 |
| 6/28/2013 | GV | conference calls BS re Art 78 proceeding | 1.20 |
| 7/9/2013 | 11E | TC MAF re settlemtn | 0.30 |
| 7/11/2013 | 11E | TC MAF order confirming plan | 0.60 |
| 7/17/2013 | 11E | Research Common law rights of tenants from TICs | 3.10 |
| 7/18/2013 | 11E | Reviewed writ of mandamus final | 1.20 |

| Date | Client | Description | Hours |
|------|--------|-------------|-------|
| 7/29/2013 | 11E | Review Operating reports | 0.50 |
| 8/6/2013 | 11E | Review motion to determine rights | 0.50 |
| 8/14/2013 | 11E | Lift Stay motion draft narrative with exhibits | 4.70 |
| 8/15/2013 | 11E | Review Operating Reports | 0.40 |
| 8/19/2013 | 11E | Research ejectment vs summary non pay proceedings | 1.70 |
| 8/202103 | 11E | research tenatn security deposits | 1.00 |
| 8/27/2013 | 11E | Review Gallo fee application TC Gallo | 0.50 |
| 9/3/2013 | 11E | Review motion to compel assumption of contract Munitalp | 0.80 |
| 9/3/2013 | GV | TC Bill Daley | 0.30 |
| 9/5/2013 | 11E | Review Debtor Plan | 1.20 |
| 9/6/2013 | GV | TC Henry Daley Marshal | 0.50 |
| 9/9/2013 | GV | review Pilson objection | 0.80 |
| 9/10/2013 | 11E | Review Gingerman response | 1.60 |
| 9/13/2013 | GV | TC schwartzman re execution | 0.40 |
| 9/13/2013 | GV | Review Execution and entities | 0.70 |
| 9/16/2013 | 11E | Review Operating Reports | 0.40 |
| 9/16/2013 | 11E | Review victoria Guthrie claim  Research rights priority  TC Reisman  TC MF, MKS | 4.30 |
| 9/17/2013 | 11E | Attend hearing | 3.80 |
| 9/17/2013 | 11E | TC Reisman TC DM | 0.90 |
| 9/26/2013 | 11E | Review Debtor disclosure statement | 1.40 |
| 10/4/2013 | GV | Review Bobker equity holders  obtain proff for Marshal | 1.00 |
| 10/7/2013 | 11E | Prepare TOE letter re Dishi | 1.00 |

| Date | Client | Description | Hours |
|------|--------|-------------|-------|
|      |        | Total Hours | 355.10 |

| | | | |
|---|---|---|---|
| | | Total Due @ 435 | $ 154,469 |
| | | less 10% | $  15,447 |
| | | Total Due | $ 139,022 |

# Backenroth Frankel Krinsky

800 Third Avenue
11th Floor
New York, NY 10022
Telephone: 212-593-1100
Fax: 212-644-0544

February 19, 2014
Invoice No. 625

Michael Shah
DelShah Capital
149 Madison Avenue
Suite 701
New York, NY 10016

Client Number: 709 Michael Shah
Matter Number 1227 Morgan Loft
**For Services Rendered Through 2/19/2014.**

## Fees

| Date | Timekeeper | Description | Hours | Amount |
|------|-----------|-------------|-------|--------|
| 5/24/2013 | MAF | Teleconference client re case strategy and drafting 243 motion | 0.00 | $0.00 |
| 5/28/2013 | MAF | Teleconference Deluca re reciever motion | 0.10 | $50.50 |
| 5/29/2013 | MAF | Drafted 543, lift stay, and exclusivity motion | 8.80 | $4,444.00 |
| 5/30/2013 | MAF | C/C client and Sarino re 543 motion, lift stay, and terminate exclusivity | 1.10 | $555.50 |
| 6/3/2013 | MAF | Revised application and drafted complaint, OSC, order, affidavit, and verif. re 543 motion (4.0); t/c's chambers re same (.2); emails Gallo re same (.3) | 4.50 | $2,272.50 |
| 6/4/2013 | MAF | To court on status re rents | 2.00 | $1,010.00 |
| 6/5/2013 | MAF | Teleconferences and emails Shah re discovery and ownership of debtors and Ch. 11 strategy (.4); drafting document and depo subpoenas (2.5) | 2.90 | $1,464.50 |
| 6/6/2013 | YE | Proof of service | 3.00 | $375.00 |
| 6/17/2013 | MAF | Drafting reply debtor obj | 2.80 | $1,414.00 |
| 6/18/2013 | MAF | Drafted reply | 5.50 | $2,777.50 |
| 6/19/2013 | MAF | Completed reply and prep for 6/20 hearing | 5.00 | $2,525.00 |
| 6/20/2013 | MAF | To court on 543 motion | 3.00 | $1,515.00 |

**Continued On Next Page**

Client Number:   709                                            2/19/2014
Matter Number:   1227                                      Page:   2

| Date | | Description | Hours | Amount |
|------|---|-------------|-------|--------|
| 8/2/2013 | MAF | Emails client re 362(d)(3) and strategy | 0.30 | $151.50 |
| 8/13/2013 | MAF | Emails and t/c's client re lift stay motion and op reports | 0.40 | $202.00 |
| 8/15/2013 | MAF | Completed, assembled, filed and served lift stay motion | 4.00 | $2,020.00 |
| 8/16/2013 | YE | Proof of service | 1.00 | $125.00 |
| 9/12/2013 | MAF | Reviewed Guthrie claim & email client re same | 0.20 | $101.00 |
| 9/16/2013 | MAF | Prep for 9/17 hearing (1.9) reviewed new pleadings filed re same (.4) email & t/c client re same (.5) | 2.80 | $1,414.00 |
| 9/17/2013 | MAF | To court on Lift Stay (1.5) c/c client re same & re membership interests (.3) | 1.80 | $909.00 |
| 9/18/2013 | MAF | Letter to respondents re discovery | 0.90 | $454.50 |
| 10/9/2013 | MAF | Research re affect of assumption/rejection of Munitlap contract (1.5) t/c Gallo re same (.3) | 1.80 | $909.00 |
| 10/9/2013 | MAF | Research re affect of assumption/rejection of __ __ (1.5); t/c Gallo re same (.3) | 1.80 | $909.00 |
| 10/18/2013 | MAF | T/c DeLuca re 10/22 hearing (.3) review motion to reduce (.7) | 1.00 | $505.00 |
| 10/18/2013 | MAF | Teleconference Dlucca re 10/22 hrs (.3); reviewed motion to reduce (.7) | 1.00 | $505.00 |
| 10/22/2013 | MAF | Prep & to Court on Lift Stay | 4.00 | $2,020.00 |
| 10/22/2013 | MAF | Prep and to court on lift stay | 4.00 | $2,020.00 |
| 10/25/2013 | MAF | Drafted Lift Stay Order (2.1) emails client, Cardo, & Gallo re same (.3) | 2.40 | $1,212.00 |
| 10/25/2013 | MAF | Drafted lift staly order (2.1); emails client, condo and Gallo re same (.3) | 2.40 | $1,212.00 |
| 10/28/2013 | MAF | Prep re 10/29 hearing & reviewed new pleadings re same (.5) | 0.50 | $252.50 |
| 10/28/2013 | MAF | Prep of 10/29 hearing and reviewed new pleadings re same | 0.50 | $252.50 |
| 10/29/2013 | MAF | T/c Bush re claim obj. (.3) to Court on Lift Stay Order (.8) memo to tenant re response to claim obj. (1.1) | 2.20 | $1,111.00 |
| 10/29/2013 | MAF | Telecnference Bush claim obj (.3); to court on lift stay order (.8); memo to team re response to claim obj (1.1) | 2.20 | $1,111.00 |
| 10/30/2013 | MAF | T/c & email Bush re claim obj (.1) t/c Shah re same & re 10/29 hearing (.2) revised conditional order and email Gallo re same (.3) | 0.60 | $303.00 |
| 10/30/2013 | MAF | Telecoference Bush re cliam obj (.1); email and t/c Shah re same and re 10/29 hearing (.2); rejected contractors order and email Gallo re same (.3) | 0.60 | $303.00 |

Continued On Next Page

Client Number:    709
Matter Number:    1227

2/19/2014
Page:    3

| Date | | Description | Hours | Amount |
|------|---|-------------|-------|--------|
| 10/31/2013 | MAF | T/c Bush re claim obj. (.1) t/c Reisman re Humphries claim (.3) | 0.40 | $202.00 |
| 10/31/2013 | MAF | Teleconference Bush re obj (.1); t/c Reismand re _ claim (.3); emails client team re same (1.3); t/c Gallo re L. Morrison (.1) | 1.80 | $909.00 |
| 11/4/2013 | MAF | Drafting Ch. 11 plan and disclosure statement (5.0) emails and t/c/s Bush and client re claim of respoinse (.5); t/c __ Morrison re status and email client re same (.6) | 6.10 | $3,080.50 |
| 11/5/2013 | MAF | Drafting plan disclousure statement and sale procedures | 4.80 | $2,424.00 |
| 11/6/2013 | MAF | Revisions claim response, plan and disclousure statement (5.8); t/c client re same (.3); reviewed order re lift stay and email client re strategy (.7) | 6.80 | $3,434.00 |
| 11/7/2013 | MAF | Teleconference Morrison re 363 sale | 0.40 | $202.00 |
| 11/8/2013 | MAF | O/C client re claim obj | 0.90 | $454.50 |
| 11/12/2013 | MAF | Reviewed sale motion and email and t/c client re same | 1.00 | $505.00 |
| 11/14/2013 | MAF | Teleconference Morrison re plan and disclosure statement | 0.50 | $252.50 |
| 11/21/2013 | MAF | Revised claim obj and sent to client with strategy memo | 1.30 | $656.50 |
| 11/25/2013 | MAF | Teleconference Shah re sale strategy and claim obj response (4); email Morrison re same (.1); t/c Losardo re __ on pland on promise to make whole (.3); emails client re same (1.0) | 1.80 | $909.00 |
| 11/26/2013 | MAF | Teleconference Morrison re adk (.1); t/C Deluca re claim obj and plan | 0.50 | $252.50 |
| 12/2/2013 | MAF | Reviewed debtor letter to court and emails client re same | 0.30 | $151.50 |
| 12/3/2013 | MAF | Revising plan and disclosure statement drafted NOS and served same | 4.00 | $2,020.00 |
| 12/4/2013 | MAF | Teleconference Mike Peak re letter to court (.1); t/c Lasordo re same (.1); reviewed condo letter (1.5); emails client re same and re claim obj (.2) | 1.90 | $959.50 |
| 12/18/2013 | MAF | Email client re _ and case strategy (.5); email Morrison re sale forms and claim obj; (.1); t/c DeLuca re same (.5) | 1.10 | $555.50 |
| 12/19/2013 | MAF | Email ALasado re 1/6 hearing date | 0.10 | $50.50 |
| 12/20/2013 | MAF | Reviewed debtor motion, research re rule 60 and drfafted email to client re strategy | 1.50 | $757.50 |
| 12/24/2013 | MAF | Emails client re response to claim obj | 0.40 | $202.00 |
| 12/26/2013 | MAF | Review __ obj to disclosure statement and email client re same | 1.20 | $606.00 |

**Continued On Next Page**

Client Number:    709                                                                                            2/19/2014
Matter Number:    1227                                                                                          Page:    4

| Date | | Description | Hours | Amount |
|------|------|-------------|-------|--------|
| 12/27/2013 | MAF | Draftig obj to reconsideration motion (3.5); emails r erevisons to response to claim obj (1.8) | 5.30 | $2,676.50 |
| 12/30/2013 | MAF | Teleconference client re claim obj response | 0.10 | $50.50 |
| 1/2/2014 | MAF | Teleconference Morrison re adj of claims obj | 0.10 | $50.50 |
| 1/2/2014 | MAF | | 0.00 | $0.00 |
| 1/5/2014 | MAF | Drafting, filing and serving disclosure statement reply and amended plan and disclosure statement | 6.00 | $3,030.00 |
| 1/6/2014 | MAF | Prep for 1/7 hearing | 1.50 | $757.50 |
| 1/7/2014 | MAF | To court on disclosure statement hearing (2.5); email morrison plan and disclosure statement (.1); email __ re sale procedures (.1) | 2.70 | $1,363.50 |
| 1/9/2014 | MAF | Emails re meeting with debtor to discuss sale procedures | 0.80 | $404.00 |
| 1/12/2014 | MAF | Revised sale procedures and email client re same | 3.50 | $1,767.50 |
| 1/13/2014 | MAF | O/C__ and Morrison re sale (1.0); c/c Morrison and __ re same (.5); c/c Shaw re same (.2); reviewed reply brief with Districe Court (.5) | 2.20 | $1,111.00 |
| 1/14/2014 | MAF | Revised co-counsel to AG | 0.50 | $252.50 |
| 1/16/2014 | MAF | Email Shaw re AG status | 0.10 | $50.50 |
| 1/21/2014 | MAF | Teleconference M. Peak of __ re holding date | 0.10 | $50.50 |
| 1/22/2014 | MAF | Teleconference court re 1/23 conf (.1); t/c Morrison re same (.1); t/c client and Shaw re same (.5) | 0.70 | $353.50 |
| 1/28/2014 | MAF | Teleconference Shaw re AG and slae (.2); emails Losado re same (.1) | 0.30 | $151.50 |
| 2/3/2014 | MAF | Teleconference Morrison re adj and settlement status | 0.30 | $151.50 |
| 2/3/2014 | MAF | | 0.00 | $0.00 |
| 2/10/2014 | MAF | Teleconferences client re 2/14 status conf and motion to estate | 0.50 | $252.50 |
| 2/11/2014 | MAF | Revised Shaw letter to NYAG | 0.30 | $151.50 |

Billable Hours / Fees:    136.90    $67,614.50

## Timekeeper Summary

Timekeeper MAF worked 132.90 hours at $505.00 per hour, totaling $67,114.50.
Timekeeper YE worked 4.00 hours at $125.00 per hour, totaling $500.00.

Continued On Next Page

Client Number:    709
Matter Number:    1227

2/19/2014
Page:    5

## Cost Detail

| Date | Description | Amount | Check No. |
|------|-------------|--------|-----------|
| 6/5/2013 | Bankruptcy Court Filing Fee | $586.00 | |
| 6/21/2013 | Westlaw Legal Research May 2013 | $198.08 | 13197 |
| | Payee:  WESTLAW | | |
| 6/21/2013 | Federal Express 6/5/13 | $127.60 | 13201 |
| | Payee:  Federal Express | | |
| 6/24/2013 | Messenger to Bankruptcy Court 6/19/13 | $13.00 | 13218 |
| | Payee:  Wynn Adams Express | | |
| 8/5/2013 | Westlaw Legal Research June 2013 | $137.67 | 13291 |
| | Payee:  WESTLAW | | |
| 8/15/2013 | Postage | $23.76 | |
| 8/15/2013 | Photocopies | $252.00 | |
| 9/9/2013 | Messenger 8/16/13 | $8.00 | 13379 |
| | Payee:  Wynn Adams Express | | |
| 9/17/2013 | Lift Stay Motion Filing Fee | $176.00 | 13411 |
| | Payee:  American Express | | |
| | **Total Costs** | **$1,522.11** | |

| | |
|---|---|
| Current Fees: | $67,614.50 |
| Costs Advanced: | $1,522.11 |
| TOTAL AMOUNT DUE: | $69,136.61 |

Pro rata based on Claim Amount
11 E. 36 Note buyer → 57,747.89
Griffon V → 11,388.72

Thank You for Letting Us Serve You.
Payment Due Upon Receipt.

### Backenroth Frankel Krinsky

800 Third Avenue
11th Floor
New York, NY  10022
Telephone: 212-593-1100
Fax: 212-644-0544

February 19, 2014
Invoice No. 624

Michael Shah
DelShah Capital
149 Madison Avenue
Suite 701
New York, NY  10016

Client Number:  709  Michael Shah
Matter Number  1231  Bay Condo
**For Services Rendered Through 2/19/2014.**

### Fees

| Date | Timekeeper | Description | Hours | Amount |
|------|-----------|-------------|-------|--------|
| 3/5/2012 | MAF | Teleconference client re RWN as investor | 0.40 | $194.00 |
| 3/6/2012 | MAF | O/C re strategy (1.0); reviewed notes re same(.5) | 1.50 | $727.50 |
| 3/13/2012 | MAF | O/C client re allowance of interest in Ch. 11 | 0.50 | $242.50 |
| 4/13/2012 | MAF | Research re exclusivity extension and reviewed debtor's motion re same | 0.70 | $339.50 |
| 4/24/2012 | MAF | Teleconference client re basis for claim and documentation | 0.40 | $194.00 |
| 4/25/2012 | MAF | Email client re proof of claim | 0.30 | $145.50 |
| 4/27/2012 | MAF | Teleconference client re status of mortgage purcahse and 4/1 status conf | 0.30 | $145.50 |
| 4/30/2012 | MAF | o/c client re exclusivity obj | 0.80 | $388.00 |
| 5/2/2012 | MAF | Teleconference client re history (.3); drafting exclusivity obj (5.5) | 5.80 | $2,813.00 |
| 5/3/2012 | MAF | Drafting obj to motion to extend exclusivity (7.0); drafting p.o.c.'s (1.0) | 8.00 | $3,880.00 |
| 5/4/2012 | MAF | Letter to court re objection | 0.10 | $48.50 |
| 5/8/2012 | MAF | Prep re 5/10 hearing | 0.60 | $291.00 |
| 5/10/2012 | MAF | To court on exclusivity (3.5); t/c's client re same (.2) | 3.70 | $1,794.50 |

**Continued On Next Page**

Client Number:    709                                                                                                           2/19/2014
Matter Number:    1231                                                                                                          Page:   2

| Date | | Description | Hours | Amount |
|------|---|-------------|-------|--------|
| 5/14/2012 | MAF | Teleconference Anthony Gallo re Ch. 11 status | 0.10 | $48.50 |
| 5/15/2012 | MAF | Drafting, plan disclosure statement , application for sale procedures and exclusivity | 10.90 | $5,286.50 |
| 5/18/2012 | MAF | Teleconferences client re plan and appraisal | 0.30 | $145.50 |
| 5/23/2012 | MAF | Emails re sale of property and t/c client re same | 0.40 | $194.00 |
| 5/24/2012 | MAF | Teleconference client re Ch. 11 plan strategy | 0.30 | $145.50 |
| 5/25/2012 | MAF | Teleconference client re sale of less than all units (.2); research re same (.5) | 0.70 | $339.50 |
| 6/1/2012 | MAF | Teleconference Gallo re buyer for unit(.3); email client re same (.4) | 0.70 | $339.50 |
| 6/20/2012 | MAF | Letter to debtor re op reports and cash collateral | 0.20 | $97.00 |
| 6/25/2012 | MAF | Conf call re Ch. 11 plan | 0.30 | $145.50 |
| 6/27/2012 | MAF | Reviewed disclosure statement and plan (.5); email client re same (.2) | 0.70 | $339.50 |
| 7/2/2012 | MAF | o/c client re plan (1.2); reviewed mortage, debtor plan and cash coll stip re same (1.5) | 2.70 | $1,309.50 |
| 7/11/2012 | MAF | Reviewed comments to plan andidslcosre and email client re same | 1.10 | $533.50 |
| 7/12/2012 | MAF | Revised and filed P.O.C.'s | 1.00 | $485.00 |
| 7/15/2012 | MAF | Revisions re client comments to plan, disclosure statement and sale application | 1.80 | $873.00 |
| 7/16/2012 | MAF | Revising disclosure statement and seael motion and email client re same | 2.50 | $1,212.50 |
| 7/17/2012 | MAF | Teleconferenc3e client re Ch. 11 strategy | 1.00 | $485.00 |
| 7/18/2012 | MAF | Drafting lift stay motion | 3.50 | $1,697.50 |
| 7/19/2012 | MAF | Teleconference client re pleadings revison | 0.10 | $48.50 |
| 7/23/2012 | MAF | Reviewed complant by debtor and email client re same (1.1); drafted ltft stay motion (6.0) | 7.10 | $3,443.50 |
| 7/25/2012 | MAF | Emails re 7/25 meeting (.1); c/c re same (.5) | 0.60 | $291.00 |
| 7/26/2012 | MAF | O/c re Ch. 11 strategy (.3); review documents & revisions re same (.8) | 1.10 | $533.50 |
| 8/1/2012 | MAF | Revised plan, disclosure statement and motion re comments from client and co counsel (3.5); o/c Condo atty re same (.3) | 3.80 | $1,843.00 |
| 8/2/2012 | MAF | Email client re revisons for plan, disclosure statement and motions | 0.30 | $145.50 |

<div align="center">

**Continued On Next Page**

</div>

Client Number:    709                                                                                    2/19/2014
Matter Number:    1231                                                                                   Page:   3

| 8/6/2012 | MAF | Revisions to pleading and email client re same | 0.80 | $388.00 |
|---|---|---|---|---|
| 8/7/2012 | MAF | Final pleading revisions and t/c client re same | 0.40 | $194.00 |
| 8/8/2012 | MAF | Assembled and filed pleadings (.9); t/c DeLuca re same (.1) | 1.00 | $485.00 |
| 9/7/2012 | MAF | Revised claim obj and emails and research re same | 4.90 | $2,376.50 |
| 9/21/2012 | MAF | Drafting obj to sale motion and claim obj motion | 6.60 | $3,201.00 |
| 9/25/2012 | MAF | Drafting obj re 10/3 hearing | 5.50 | $2,667.50 |
| 9/26/2012 | MAF | revised and filed and served objection re 10/3 hearing | 1.50 | $727.50 |
| 10/2/2012 | MAF | Telconferences client re 10/3 hearing | 0.40 | $194.00 |
| 10/3/2012 | MAF | To court on lift stay & disclosure statement (3.5); emails client and research same (2.7) | 6.20 | $3,007.00 |
| 10/5/2012 | MAF | Emails client re settlement and scheduling | 0.10 | $48.50 |
| 10/8/2012 | MAF | O/C re Ch. 11 strategy | 0.60 | $291.00 |
| 10/9/2012 | MAF | Email parties re settlement meeting | 0.10 | $48.50 |
| 10/11/2012 | MAF | Teleconference De Luca re settlement and re Ch. 11 scheduling order (.3); emails parties re same (.2) | 0.50 | $242.50 |
| 10/12/2012 | MAF | Teleconference Veronica re settlement meeting (.1); emails re same (.3) | 0.40 | $194.00 |
| 10/18/2012 | MAF | Teleconference De Luca re settlement and re scheduling order | 0.30 | $145.50 |
| 10/23/2012 | MAF | To mediation | 1.50 | $727.50 |
| 11/1/2012 | MAF | Email debtor re pay off | 0.20 | $97.00 |
| 11/8/2012 | MAF | Drafted scheduling order | 1.40 | $679.00 |
| 11/11/2012 | MAF | Emails re scheduling order | 0.20 | $97.00 |
| 11/16/2012 | MAF | Email Gallo | 0.20 | $97.00 |
| 11/19/2012 | MAF | Scheduling stip to debtor (.1); t/c court re same (.1); emails re scheduling order and settlement meeting (.4) | 0.60 | $291.00 |
| 11/20/2012 | MAF | Scheduling order to court | 0.30 | $145.50 |
| 11/21/2012 | MAF | Email re discovery | 0.10 | $48.50 |
| 11/27/2012 | MAF | Teleconference Stacy Luftis re hearing dates | 0.10 | $48.50 |
| 11/28/2012 | MAF | Drafting discovery demands (2.5); t/c Gallo adj (.1) | 2.60 | $1,261.00 |
| 11/29/2012 | MAF | Emails Gallo re extension of time | 0.10 | $48.50 |

Continued On Next Page

| | | | | |
|---|---|---|---|---|
| 12/3/2012 | MAF | Drafting discovery demands | 9.90 | $4,801.50 |
| 12/5/2012 | MAF | Revised disclosure statement | 5.70 | $2,764.50 |
| 12/7/2012 | MAF | To settlement meeting | 3.00 | $1,455.00 |
| 12/10/2012 | MAF | Drafted NOH and o/c YE re service | 0.70 | $339.50 |
| 12/12/2012 | MAF | Email Gallos re settlement | 0.10 | $48.50 |
| 12/14/2012 | MAF | Emails re info for broker | 0.20 | $97.00 |
| 1/4/2013 | MAF | Email Gallo re 1/17 hearing | 0.20 | $101.00 |
| 1/10/2013 | MAF | Drafted object to debtor's amended disclosure statement and email term re same | 4.50 | $2,272.50 |
| 1/11/2013 | MAF | Revised and filed disclosure statement obj | 1.10 | $555.50 |
| 1/15/2013 | MAF | Teleconference Nash and client re settlement | 0.60 | $303.00 |
| 1/16/2013 | MAF | Reviewed settlement letters with Nash (.2); prep for 1/17 hearing (2.8) | 3.00 | $1,515.00 |
| 1/17/2013 | MAF | To court on disclosure statement hearing (2.0); emails and t/c's client and Nash re settlement (.7) | 2.70 | $1,363.50 |
| 1/22/2013 | MAF | Teleconference Gallo re claim obj | 0.20 | $101.00 |
| 2/7/2013 | MAF | Revised disclosure statement (2.0); email client re comments (.3) | 2.30 | $1,161.50 |
| 2/8/2013 | MAF | Reviewed operating report and email client re same | 0.20 | $101.00 |
| 2/11/2013 | MAF | Revised disclosure statement re op reports (1.1); t/c De Luca re same (.2); email Gallo re same (.1); t/c court re hearing date (.1) | 1.50 | $757.50 |
| 2/12/2013 | MAF | Letter to court re order disclosure statement (.1); filed disclosure statement re same (.5); drafted ballot re same (.3) | 0.90 | $454.50 |
| 2/14/2013 | MAF | Teleconferences court re revisions to disclosure statement | 0.10 | $50.50 |
| 2/19/2013 | MAF | Drafted and filed further disclosure statement and plan revisions  and sent to court (3.5); emails NYC re same (.2) | 3.70 | $1,868.50 |
| 3/1/2013 | MAF | Arranged for service of disclosure statement | 0.50 | $252.50 |
| 3/11/2013 | MAF | Revised subpoenas and arranged for service (2.8); t/c's and emails client re same (.5) | 3.30 | $1,666.50 |
| 3/12/2013 | MAF | Teleconference De Luca re subpoena service (.2); revised sale notice and arranged for advertising (.8) | 1.00 | $505.00 |
| 3/13/2013 | MAF | Email client re potential purchasers | 0.10 | $50.50 |
| 3/14/2013 | MAF | Teleconference Roberto Ortiz re sale, t/c Richard Farb re same | 0.10 | $50.50 |

Continued On Next Page

Client Number:    709
Matter Number:    1231

2/19/2014
Page:    5

| | | | | |
|---|---|---|---|---|
| 3/20/2013 | MAF | Teleconference McGill re sale | 0.10 | $50.50 |
| 3/25/2013 | MAF | Teleconference Melody Malekin re sale of asset | 0.20 | $101.00 |
| 3/28/2013 | MAF | Teleconference Rami Weiscarmelli re sale (.2); emails re same (.5); t/c DeLuca re same (.3) | 1.00 | $505.00 |
| 3/29/2013 | MAF | Email client re terms of sale (.7); t/c buyer re leases (.2); prepared and forwarded leases (.4) | 1.30 | $656.50 |
| 4/3/2013 | MAF | Emails client re sale and debtor email re term sheets, contract amount, disposition of claims, & due diligence | 1.80 | $909.00 |
| 4/4/2013 | MAF | Teleconference Rami re sale (.1); t/c other potential purchasers re same (.3) t/c DeLuca re same (.3) | 0.70 | $353.50 |
| 4/5/2013 | MAF | Teleconference Gallo re sale | 0.20 | $101.00 |
| 4/8/2013 | MAF | Teleconference Gerard re terms of sale (.1); t/c Yakov re auction (.1); t/c DeLuca re Dishi (.1) conducted sale of property & t/c client re same (2.5) | 2.80 | $1,414.00 |
| 4/9/2013 | MAF | Emails client re claim obj. strategy | 2.50 | $1,262.50 |
| 4/10/2013 | MAF | Emails client re claim obj | 0.90 | $454.50 |
| 4/11/2013 | MAF | Teleconference Nash re Goldberg offer and Ch. 11 strategy (.3); email client memos re same (.1) | 0.40 | $202.00 |
| 4/15/2013 | MAF | Drafting response to claim obj | 8.00 | $4,040.00 |
| 4/16/2013 | MAF | Revised and filed claim obj | 4.00 | $2,020.00 |
| 4/17/2013 | MAF | Email NYC law department re conf order (.1); emails client re conf objs and response (2.2); t/c Nash re adj (.1); emails client re same (.1) | 2.50 | $1,262.50 |
| 4/22/2013 | MAF | Teleconference Nash re adj (.1); t/c's and emails parties re same (.7); prep for 4/23 hearing (2.1) | 2.90 | $1,464.50 |
| 4/23/2013 | MAF | To court on claim obj hearing (3.5); emails client re obj filed by Goldberg (.6) | 4.10 | $2,070.50 |
| 4/24/2013 | MAF | Emails re Dishi and debtor new deal and confirmation | 0.80 | $404.00 |
| 4/25/2013 | MAF | Teleconference & emails client and GWFG re adjournment and new deal with Dishi | 0.40 | $202.00 |
| 5/1/2013 | MAF | Draft conf affidavit (7.0); coordination with Cornau re support for plan (.2) | 7.20 | $3,636.00 |
| 5/2/2013 | MAF | Revisions to conf affidavit | 1.50 | $757.50 |
| 5/3/2013 | MAF | Conf hearing prep re review of case files and materials | 3.50 | $1,767.50 |
| 5/6/2013 | MAF | Emails client re 5/9 hearing (.1); drafting hearing notes re same (6.1) | 6.20 | $3,131.00 |

**Continued On Next Page**

| Date | | Description | Hours | Amount |
|---|---|---|---|---|
| 5/7/2013 | MAF | Drafting conf order (3.0); email client re same and re conf affidavit and conf notes (.1); t/c NYC re 1146 language (.1); t/c Gallo re Ch. 11 petitions (.3); email and t/c client re same (.7) | 4.20 | $2,121.00 |
| 5/8/2013 | MAF | Email client re conf affidavit (.1); t/c's client, Nash, & Gallo re settlement (1.5); prep re 5/9 hearing (5.1) | 7.70 | $3,888.50 |
| 5/9/2013 | MAF | To court on conf hearing (3.5) circulated conf order and emails re same (.7) | 4.20 | $2,121.00 |
| 5/13/2013 | MAF | Reviewed M&M motion & email client re same (.4); t/c Winters re Gingerman & email client re same (.5) | 0.90 | $454.50 |
| 5/14/2013 | MAF | Emails & doc review re Dishi to purchase 2.8% | 1.60 | $808.00 |
| 5/17/2013 | MAF | Teleconference Mike Pasik re lease issue (.1); emails client re same (.8) | 0.90 | $454.50 |
| 5/20/2013 | MAF | Teleconference Berliner re lease with Gingerman (.1); t/c Nash re same (.2) | 0.30 | $151.50 |
| 5/22/2013 | MAF | Teleconference court re status of lease | 0.10 | $50.50 |
| 5/24/2013 | MAF | Teleconference Berliner re Gingerman, t/c and email client re same | 0.60 | $303.00 |
| 5/28/2013 | MAF | Drafted and filed obj to M&M motion (3.5); t/c Rami re Gingerman lease (.1); t/c Winters re Gingerman lease (.2) | 3.80 | $1,919.00 |
| 5/31/2013 | MAF | Teleconference Nash re settlement | 0.10 | $50.50 |
| 6/3/2013 | MAF | Emails Berliner re settlement with Gingerman(.6); prep for 6/4 hearing (.8) | 1.40 | $707.00 |
| 6/4/2013 | MAF | To court on M&M application and conf order | 2.00 | $1,010.00 |
| 6/13/2013 | MAF | Teleconference Berliner re settlement and conf call (.2); emails parties re same (.5); to settlement meeting (1.5); t/c Nash Goldberg purchaser (.2) | 2.40 | $1,212.00 |
| 6/14/2013 | MAF | C/C court re status (.2); emails client re same and re settlement (2.0) | 2.20 | $1,111.00 |
| 6/17/2013 | MAF | Emails re settlement (.5); t/c's court re status conf (.1) | 0.60 | $303.00 |
| 6/19/2013 | MAF | To court re adj status date | 0.10 | $50.50 |
| 6/24/2013 | MAF | Teleconference client re sale and c/c client and Nash re sale (.7); email debtor and Carlebach re insurance and payment to DIP account (.8) | 1.50 | $757.50 |
| 6/25/2013 | MAF | Teleconferences and emails client and Nash and Dishi counsel re settlement | 1.40 | $707.00 |
| 6/26/2013 | MAF | Reviewed and forwarded Gallo fee application to client | 0.50 | $252.50 |

**Continued On Next Page**

Client Number:   709
Matter Number:   1231

2/19/2014
Page:   7

| Date | | Description | Hours | Amount |
|---|---|---|---|---|
| 6/27/2013 | MAF | Emails and t/c's re 6/28 conf call settlement | 2.90 | $1,464.50 |
| 6/28/2013 | MAF | O/C court re status (.3); c/c Nash and Berliner re same (.3); t/c Shah re same (.1); t/c Gallo re same and re fee application adj (.3) | 0.70 | $353.50 |
| 7/1/2013 | MAF | Teleconference Berliner re settlement meeting (.1); t/c Rosenbloom re same (.1); email parties re same (.2) | 0.40 | $202.00 |
| 7/2/2013 | MAF | Email Gallo re fee application (.1) emails re settlement meeting (.3) | 0.40 | $202.00 |
| 7/3/2013 | MAF | Email parties re settlement meeting | 0.10 | $50.50 |
| 7/8/2013 | MAF | Email Gallo re fee application adj (.1); email client re settlement strategy (.5) | 0.60 | $303.00 |
| 7/9/2013 | MAF | Teleconference DeLuca re settlement meeting (.1); email Schankler re strategy (.2); t/c Berliner re settlement (.2); t/c Nash re same (.2); emails and t/c's cleint re same (.3) | 1.00 | $505.00 |
| 7/10/2013 | MAF | Teleconference Berliner re settlement (.3); t/c Rami re same (.2); t/c client and Cornau re same (.2); emails client re same (.9) | 1.60 | $808.00 |
| 7/11/2013 | MAF | Teleconference De Luca re order confirming plan (.4); t/c Winters re same (.3); email client re same (.2) | 0.90 | $454.50 |
| 7/12/2013 | MAF | Teleconference Nash re settlement | 0.10 | $50.50 |
| 7/15/2013 | MAF | Teleconference court re telephone conf (.1); t/c Pilsin re same (.3); t/c cleint re conf and strategy (.2) | 0.60 | $303.00 |
| 7/17/2013 | MAF | Email Winters re 365(h) issues (.2); reviewed case law and email client re same (.4) | 0.60 | $303.00 |
| 7/18/2013 | MAF | Teleconferences & emails Cornau and Winters re conf order | 0.40 | $202.00 |
| 7/22/2013 | MAF | Teleconference Mike Paek re 7/23 conf call | 0.10 | $50.50 |
| 7/23/2013 | MAF | C/C court re status | 0.30 | $151.50 |
| 7/29/2013 | MAF | Emails re settlement meeting (.1); t/c client re same (.1); | 0.20 | $101.00 |
| 8/1/2013 | MAF | O/C parties re settlement and procedure | 1.00 | $505.00 |
| 8/2/2013 | MAF | Draft letter to court re sesttlement and motion practice | 0.50 | $252.50 |
| 8/6/2013 | MAF | Drafting lift stay motion | 4.80 | $2,424.00 |
| 8/7/2013 | MAF | Revised filed and served motion for order in aid of confirmation (1.0); t/c court re hearing date (.1); cover letter to court re same (.1) | 1.20 | $606.00 |
| 8/15/2013 | MAF | Email Gallo re adj | 0.10 | $50.50 |
| 9/4/2013 | MAF | Reviewed debtor plan and email client re same | 1.50 | $757.50 |

**Continued On Next Page**

Client Number:    709                                                                          2/19/2014
Matter Number:    1231                                                                         Page:   8

| Date | | Description | | |
|---|---|---|---|---|
| 9/9/2013 | MAF | Teleconference Deluca re Dishi obj (.2); reviewed same and emails re same (.5) | 0.70 | $353.50 |
| 9/10/2013 | MAF | Reviewed responses re lease issues | 1.00 | $505.00 |
| 9/12/2013 | MAF | Teleconferences and email client re worst case scenario on lease case | 0.40 | $202.00 |
| 9/16/2013 | MAF | Prep for 9/17 hearing | 0.40 | $202.00 |
| 9/17/2013 | MAF | To court on lease resolution (1.5); order to court re same (.1) | 1.60 | $808.00 |
| 9/23/2013 | MAF | Teleconference Mike Poet re order re revisions to conf order | 0.10 | $50.50 |
| 10/2/2013 | MAF | Emails client and Dishi re closing | 0.30 | $151.50 |
| 10/4/2013 | MAF | Teleconference client and Dishi counsel re closing (.3) emails re same (.3) | 0.60 | $303.00 |
| 10/8/2013 | MAF | Teleconferences client re closing (.4); t/c Rami re same (.1) email Gallo re same (.1); reviewed NOA and email client re same (.1) | 0.70 | $353.50 |
| 10/9/2013 | MAF | Teleconference Gallo re 10/10 closing (.2); reviewed emails re closing from Dishi, reviewed sale materials and research re same, email client re same (1.4) | 1.60 | $808.00 |
| 10/10/2013 | MAF | Teleconference Lew Siegel re Standstill (.1); emails re same (.3); attended closing (2.0); document prep re same (1.5);t/c's client re same (1.0); emails client re same (.6); research re time of essence and party obstacle to condition procedure (3.5) | 9.00 | $4,545.00 |
| 10/11/2013 | MAF | Emails Siegel re standstill agmnt (.2);c/c client re settlement and litigation strategy (1.5) | 1.70 | $858.50 |
| 10/14/2013 | MAF | Teleconferences and emails client and Dishi re closing | 0.40 | $202.00 |
| 10/15/2013 | MAF | T/c client re closing | 0.40 | $202.00 |
| 10/16/2013 | MAF | Emails research and t/c's re Dishi Motion and alternatives | 4.10 | $2,070.50 |
| 10/17/2013 | MAF | Emails and t/c's and research re Dishi demand for injunctive relief re closing | 3.60 | $1,818.00 |
| 10/21/2013 | MAF | Teleconference John Whelan re adj (.1); prep for 10/22 hearing (.7) | 0.80 | $404.00 |
| 10/22/2013 | MAF | Drafted declaratory judgment obj | 3.80 | $1,919.00 |
| 10/28/2013 | MAF | Teleconference Bush re p.o.c. (.1); emails re same (.2); prep re 10/29 hearing (.3) | 0.60 | $303.00 |
| 10/29/2013 | MAF | To court on declaratory judgment motion | 0.80 | $404.00 |
| 10/30/2013 | MAF | T/c Shah re 10/29 hearing | 0.10 | $50.50 |

**Continued On Next Page**

Client Number:  709                                                                      2/19/2014
Matter Number:  1231                                                                     Page:  9

| Date | | Description | Hours | Amount |
|------|---|-------------|-------|--------|
| 11/5/2013 | MAF | Teleconference client re real estate taxes | 0.10 | $50.50 |
| 12/5/2013 | MAF | Teleconference Josh Lasado re __ on debtor's ability to sell pending submission of __ and review by drafted email response to debtor's letter to bad faith | 0.80 | $404.00 |
| 12/18/2013 | MAF | Email client re appeal brief (.1); t/c Deluca re same (.3) | 0.40 | $202.00 |
| 12/24/2013 | MAF | Drafting appeal brief | 3.50 | $1,767.50 |
| 12/26/2013 | MAF | Emails client re appraisal brief and revisions to same | 6.50 | $3,282.50 |
| 12/27/2013 | MAF | Revised appeal brief | 2.80 | $1,414.00 |
| 12/28/2013 | MAF | Drafting obj to motion | 6.00 | $3,030.00 |
| 12/30/2013 | MAF | Completed, filed and served appeal brief | 3.00 | $1,515.00 |
| 1/27/2014 | MAF | Teleconference Morrison re sale procedures | 0.10 | $50.50 |
| 2/3/2014 | MAF | Email condo board re assement | 0.40 | $202.00 |
| 2/4/2014 | MAF | Teleconference __ re AG and sale | 0.30 | $151.50 |
| 2/5/2014 | MAF | Email Shulte re starus | 0.20 | $101.00 |
| 2/10/2014 | MAF | Email Shane and DeLucca re 2/14 status conf and re sale procedures | 0.30 | $151.50 |

Billable Hours / Fees:    313.10    $155,705.50

## Timekeeper Summary

Timekeeper MAF worked 192.60 hours at $505.00 per hour, totaling $97,263.00.
Timekeeper MAF worked 120.50 hours at $485.00 per hour, totaling $58,442.50.

## Cost Detail

| Date | Description | Amount | Check No. |
|------|-------------|--------|-----------|
| 6/28/2012 | Westlaw Legal Research May 2012<br>Payee: WESTLAW | $861.00 | 12247 |
| 8/28/2012 | Westlaw Legal Research July 2012<br>Payee: WESTLAW | $51.15 | 12380 |
| 8/28/2012 | Car Service 7/18/12<br>Payee: Skyline Credit Ride, Inc. | $43.52 | 12384 |
| 8/28/2012 | Car Service 7/23/12<br>Payee: Skyline Credit Ride, Inc. | $79.28 | 12384 |
| 11/15/2012 | Car Service 9/24/12<br>Payee: Skyline Credit Ride, Inc. | $79.28 | 12589 |

**Continued On Next Page**

Client Number:    709                                      2/19/2014
Matter Number:    1231                                 Page:   10

| Date | Description | Amount | Ref |
|---|---|---|---|
| 11/15/2012 | Car Service 10/3/12 | $79.28 | 12589 |
| | Payee: Skyline Credit Ride, Inc. | | |
| 12/10/2012 | Postage | $7.20 | |
| 12/19/2012 | Westlaw Legal Research November 2012 | $4.00 | 12707 |
| | Payee: WESTLAW | | |
| 1/15/2013 | Car Service 12/3/2012 | $89.25 | 12758.1 |
| | Payee: Skyline Credit Ride, Inc. | | |
| 2/21/2013 | Messenger 2/12/13 | $10.00 | 12849 |
| | Payee: Wynn Adams Express | | |
| 3/1/2013 | Photocopies | $240.00 | |
| 3/1/2013 | Postage | $48.00 | |
| 4/22/2013 | March 19, 2013 Notice of Sale in NY Times | $5,248.00 | 13024 |
| | Payee: American Express | | |
| 5/28/2013 | Westlaw Legal Research April 2013 | $240.00 | 13128 |
| | Payee: WESTLAW | | |
| 8/15/2013 | Westlaw Legal Research July 2013 | $39.00 | 13304 |
| | Payee: WESTLAW | | |
| 8/19/2013 | Messenger 8/7/13 | $10.00 | 13326 |
| | Payee: Wynn Adams Express | | |
| 8/31/2013 | Westlaw Legal Research August 2013 | $52.66 | |
| 10/23/2013 | Westlaw Legal Research September 2013 | $317.00 | 1A |
| | Payee: WESTLAW | | |

|  |  |
|---|---|
| **Total Costs** | **$7,498.62** |

| | |
|---|---|
| Current Fees: | $155,705.50 |
| Advanced Costs: | $7,498.62 |
| **TOTAL AMOUNT DUE:** | **$163,204.12** |

*Pro Rata Base on Claim #*

*~~Registered~~ 11 E.36 Note buyer → 136,319.86*

*Griffon ✓       →    26,884.26*

Thank You for Letting Us Serve You.
Payment Due Upon Receipt.

*Paid*

*$ 1500*

*4/3/3*

# Wenig Saltiel LLP

## attorneys at law

### 26 COURT STREET – SUITE 1200
### BROOKLYN, NEW YORK 11242

#### PHONE: (718) 797-5700

## MASTER RETAINER FOR LEGAL SERVICES

Griffon V & 11 East 36th Note Buyer by Michael Shah, with an office located at 114 East 13th Street FRNT 1 ("Client") does hereby retains the legal services of Wenig Saltiel LLP, ("Counsel"), 26 Court Street, Suite 1200 as its attorney to represent it exclusively on all summary non-payment and summary holdover proceedings to be commenced within 11 East 36th Street, New York, NY (Subject Premises") on or after March 5, 2013 upon the following terms and conditions:

- Preparation and service of residential summary non-payment proceedings not including index number: $300.00; ($100.00 per Rent Demand & $200.00 per Petition)
- Preparation and service of residential summary holdover proceedings, not including index number and including one court conference appearance:  $1,250.00;
- Residential Non-payment conference court appearances $350.00 each morning or afternoon;
- Residential Holdover conference court appearances $350.00 each morning or afternoon;
- Commercial Demand/Petition not including service or index number fees (including lease review): $750.00
- Commercial holdover or nonpayment conference court appearance :$500.00 per half day
- Trial appearances preparation of motions or responding papers relating to summary proceedings: $400.00/hour for partners; $300.00/hour for associates $100.00/hour for paralegal time;
- Attorney Service of papers: $200.00 per attempt.

- $200.00 to order warrants; $200.00 for each service of a warrant; $200.00 for execution of each warrant

- Disbursements such as Service of process, index numbers, and filing fees to be paid as billed.

H:\Downloads\griffon v retainer.docx

Client hereby engages Counsel for a period of two (2) years commencing March 5, 2013 and renewable at the option of the Client and upon agreement of counsel for an additional two (2) years pending the rewarding of a request for proposals for legal services.

Either party may terminate and cancel this contract on ten (10) days notice to the other and in such event Counsel shall be entitled to receive compensation as specified herein for all work completed and accepted prior to termination or cancellation and in additional an equitable adjustment shall be made for any work performed but not accepted by the Client.

The scope of this retainer is limited to any and all cases which have commenced on or after March 4, 2013. Any other cases for which a specific retainer has already been negotiated and entered into shall be honored as superior, independent and apart from this retainer agreement.

Client will tender the amount of $3,000.00 which shall be applied to the foregoing charges and disbursements and shall pay subsequent bills that are rendered on this action within fifteen (15) days of receipt. Client understands that failure to timely pay bills for services rendered may result in Counsel seeking to be discharged as counsel by the Court. Should Client have a dispute over any bill, Client will notify Counsel of said dispute in writing within ten (10) days of receipt of the bill, or the bill will be deemed final in all respects. All legal fees and disbursements to be paid at time of closing.

In the event that Counsel is required to bring a legal action to collect any bill, then the prevailing party in such litigation shall be entitled to recover legal fees from the other. If a dispute arises between us relating to our fees, you may have the right to arbitration of the dispute pursuant to Part 137 of the Rules of the Chief Administrator of the Courts, a copy of which will be provided to you upon request.

Client has been advised of the hazards and of the high cost of litigation and that despite Counsel's best efforts there is no guarantee or assurance of the outcome of these matters. Client-Seller understands that any expression of outcome relative to this matter by Counsel is purely opinion.

This agreement may only be modified in writing. Client represents that in executing this agreement that it is not relying on any oral representations and that all the understandings of the Client and Counsel are contained herein.

While we cannot guarantee any particular result, we do promise to use our best professional efforts and those of our staff on your behalf in order to resolve this matter

H:\Downloads\griffon v retainer.docx

quickly and efficiently. You also agree to fully cooperate with our staff and provide any information which we request on a timely basis. Client has read and understands the above agreement and accepts all of its terms.

Client shall pay bills that are rendered on this action within twenty (20) days of receipt. Client understands that failure to timely pay bills for services rendered may result in Counsel seeking to be discharged as counsel by the Court. Should Client have a dispute over any bill, Client will notify Counsel of said dispute in writing within twenty (20) days of receipt of the bill, or the bill will be deemed final in all respects.

While we cannot guarantee any particular result, we do promise to use our best professional efforts and those of our staff on your behalf in order to resolve matter quickly and efficiently. You also agree to fully cooperate with our staff and provide any information which we request on a timely basis. Authority has read and understands the above agreement and accepts all of its terms.

**Dated:** March 6, 2013
New York, New York

MICHAEL SHAH
Managing Member,
Griffon V & 11 East 36th Note Buyer

*Paid $1,000*
*9/24/13*



*1000*

# HENRY DALEY

### MARSHAL, CITY OF NEW YORK
1 CROSS ISLAND PLAZA
ROSEDALE, N.Y. 11422
(718) 978-8070
FAX # (718) 978-6719
BADGE #39

September 24, 2013

CORDOVA & SCHWARTZMAN, LLP
SUITE 700
666 OLD COUNTRY RD.
GARDEN CITY NY 11530

**JUDGMENT CREDITOR**

GRIFFON V, LLC ASSIGNEE OF THE
RIGHTS OF CHINATRUST BANK(USA)

**VS**

11 EAST 36TH LLC, MORGAN LOFTS
LLC, MADISON CONDOS LLC,
BLUEBELL ASSETS LLC, ELI & BEN

**JUDGMENT DEBTOR**

Balance: 3,315,909.94

The above captioned judgment debtor has failed to respond after
repeated efforts to collect the balance due.

This office now recommends that a Marshal's sale be held in order to
collect the funds due.

Kindly forward a recently dated execution or, if the existing
execution is still valid, a letter extending the execution 60
additional days.

An advance fee of $1,000.00 for advertising and auctioneer expenses is
necessary, along with hold harmless letters signed by the creditor and
by you that indemnify the Marshal's office in the event of subsequent
claims or actions by the judgment debtor or third parties. It is also
necessary to do a UCC search. The creditor must also have a
representative present at the auction, the date of which will be
provided to you as soon as possible.

Reference No. P67661

HENRY DALEY
Marshal, City of New York
Badge No.39

*P g o*

*4/30/12*

*2898.65*
*-750.00*

*$2,148.65*

# CORDOVA & SCHWARTZMAN, LLP
### ATTORNEYS AT LAW
666 OLD COUNTRY ROAD
SUITE 301
GARDEN CITY, NEW YORK 11530
(516) 741-0070

FACSIMILE (516) 741-4225

Griffin V LLC
149 Madison Avenue
Suite 701
New York NY 10016

April 01, 2012

In Reference To:      Bobker

Invoice #   12471

Professional Services

| | | Hours | Amount |
|---|---|---|---|
| 3/5/2012 | Prepare for attorneys' fees hearing tomorrow; conference with client (D. Shah) re: preparation for same; teleconference with M. Bush re: same. | 2.00 | 750.00 |
| 3/6/2012 - | Attend and conduct attorneys' fees hearing; draft Order arising from same; draft Judgment. | 4.10 | 1,537.50 |
| 3/8/2012 - | Review interest calculations with client; revise judgment in accordance with same. | 0.70 | 262.50 |
| - | Teleconference with client re: whether to inform opposing counsel that we are deducting taxes from rent collected to judgment amount and discontinuing action in total; client agrees that we should inform opposing counsel so as to avoid delays in filing judgment. | 0.20 | 75.00 |
| 3/9/2012 - | Draft e-mail to opposing counsel re: manner in which amount set forth in judgment was calculated, and that we have no affirmative claim for taxes if said manner is acceptable. | 0.30 | 112.50 |
| 3/13/2012 - | Teleconference with Court re: Court wants a teleconference, and status of action after attorneys' fees hearing. | 0.20 | 75.00 |
| 3/14/2012 - | Teleconference with Court and all counsel re: status of TRO motion and action in light of attorneys' fees hearing and judgment; drat Notice of Settlement of Judgment and Notice of Settlement of Order; draft submission letter for same. | 1.80 | 675.00 |
| 3/21/2012 - | Teleconference with Court re: letter re: delaying decision on TRO motion; draft same. | 0.30 | 112.50 |

13-11506-jlg    Doc 82    Filed 02/25/14    Entered 02/25/14 19:49:22    Main Document
Pg 292 of 310


CORDOVA & SCHWARTZMAN, LLP

Griffin V LLC                                                            Page        2

|                                         | Hours | Amount       |
|-----------------------------------------|-------|--------------|
| For professional services rendered      | 9.60  | ~~$3,600.00~~ |

*x 300*
*= 2880*

Additional Charges :

| 3/14/2012 - | Overnight documents (Notice of Settlement of Judgment and Order) to Court. | 18.65 |
|---|---|---|
| | Total costs | $18.65 |

| | Amount |
|---|---|
| Total amount of this bill | *(2898.65)* ~~$3,618.65~~ |
| Previous balance | $59,357.40 |
| | *OK* |
| Balance due | $62,976.05 |

# CORDOVA & SCHWARTZMAN, LLP

ATTORNEYS AT LAW
666 OLD COUNTRY ROAD
SUITE 301
GARDEN CITY, NEW YORK 11530
(516) 741-0070
FACSIMILE (516) 741-4225

Griffin V LLC
149 Madison Avenue
Suite 701
New York NY 10016

June 01, 2012

In Reference To:   Bopker

Invoice # 12493

Professional Services

| | Hours | Amount |
|---|---|---|
| 4/12/2012 - Telephone conference to court to confirm that judgment not yet signed. Email to client regarding same. | 0.20 | 75.00 |
| 4/18/2012 - Teleconference with co-counsel (L. Deluca) re: judgment was signed and next steps to enforcement. | 0.20 | 75.00 |
| 5/7/2012 - Travel to Clerk's Office to obtain Judgment; travel to Supreme Court to discuss Judgment with Referee; teleconferences with client re: need to correct Judgment and amount of interest due and calculation of interest; draft Notice of Motion to Correct Judgment; draft attorney affirmation for same; draft attorney certification for same; draft submission letter for same. | 6.70 | 2,512.50 |
| 5/11/2012 - Teleconference with co-counsel (L. Deluca) re: action s necessary to enforce the judgment and targets for same. | 0.40 | 150.00 |
| 5/16/2012 - Court Appearance in Nassau Supreme Court for conference and arguments on motion to correct judgment; motion submitted. | 1.60 | 600.00 |
| 5/23/2012 - Draft restraining notices and CPLR 5222(e) notices to debtors; teleconference with client (L. Deluca) re: same and filing motion instead; mail CPLR 5222(e) notices to debtors. | 1.30 | 487.50 |
| 5/30/2012 - Draft notice of turn-over motion; draft client affidavit for same; legal research re: turn over order for LLC membership units. | 3.10 | 1,162.50 |
| 5/31/2012 - Edit Notice of Motion and client affidavit in support of turn over motion in accordance with discussion with client and e-mail. | 0.90 | 337.50 |

8/28/12

1,121.80
4,685.47
4,333.35
$10,139.50

CORDOVA & SCHWARTZMAN, LLP

Griffin V LLC

Page   2

|  | Hours | Amount |
|---|---|---|
| For professional services rendered | 14.40 | $4,400.00 |

*(handwritten: 14 x $200)*

Additional Charges :

| | | |
|---|---|---|
| 5/7/2012 | - Overnight documents (Motion to Correct Judgment) to Court, client and counsel. | 113.34 |
| 5/11/2012 | - Overnight document (Transcript of Judgment) to client. | 18.89 |

| Total costs | $132.23 |
|---|---|

*(handwritten: OK)*

| Total amount of this bill | $5,532.23 |
|---|---|
| Previous balance | $62,976.05 |
| 5/4/2012 Payment - thank you. Check No. 1050 | ($8,547.30) |
| 5/4/2012 Payment - thank you. Check No. 1049 | ($2,898.65) |
| Total payments and adjustments | ($11,445.95) |
| Balance due | $57,062.33 |

*(handwritten circled: $4,333.43)*

# CORDOVA & SCHWARTZMAN, LLP

ATTORNEYS AT LAW
666 OLD COUNTRY ROAD
SUITE 301
GARDEN CITY, NEW YORK 11530
(516) 741-0070
FACSIMILE (516) 741-4225

Griffin V LLC
149 Madison Avenue
Suite 701
New York NY 10016

July 01, 2012

In Reference To:     Bobker

Invoice # 12497

Professional Services

| | Hours | Amount |
|---|---|---|
| 6/5/2012 - Begin drafting attorney affirmation for motion for turnover order. | 0.70 | 262.50 |
| 6/6/2012 - Edit and finalize attorney affirmation for motion pursuant to CPLR 5225; legal research for same; draft attorney certification; draft affirmation of service; draft submission letter to Court; forward to Court, opposing counsel, and defendants pursuant to CPLR 5225. | 2.10 | 787.50 |
| 6/8/2012 - Review file for subpoenas; teleconferences with client (L. Deluca) re: same and other enforcement methods; draft restraining notices and information subpoenas to HSBC, Citibank, TD Bank and Sterling national Bank; forward same. | 3.00 | 1,125.00 |
| 6/21/2012 - Teleconference with counsel for Grand Pacific re: they will oppose our turn over motion; teleconference with co-counsel (D. Deluca) re: same and strategy for proceeding with asset seizures. | 1.00 | 375.00 |
| 6/25/2012 - Review opposition to turnover motion by Grand Pacific, including deposition testimony of B. Bobker; draft Executions to Sheriff for LLC membership units. | 2.00 | 750.00 |
| 6/26/2012 - Finish reading Ben Bobker's deposition; edit and finalize Property Executions; teleconference with NYC Marshal re: nature of property to be executed on; form of Property Executions and service of same; teleconference with Nassau County Sheriff's Office re: same; teleconference with client (L. Deluca) re: same and strategy for proceeding with judgment collection. | 4.90 | 1,837.50 |

CORDOVA & SCHWARTZMAN, LLP

Griffin V LLC                                                                                   Page    2

|  | | Hours | Amount |
|---|---|---|---|
| 6/27/2012 | - | Teleconference with client (M. Shah and L. Deluca) re: Grand Pacific's opposition to turnover motion and executions served upon defendants. | 0.40 | 150.00 |
| 6/28/2012 | - | Review Bankruptcy Debtor Disclosure and Plan of Reorganization. | 0.30 | 112.50 |
| 6/30/2012 | - | Review Grand Pacific's OSC in the Hale action. | 0.30 | 112.50 |

For professional services rendered                    14.70    $5,512.50

*(handwritten: 14.70 x 360 = 4320)*

Additional Charges :

| 6/9/2012 | - | Motion Fee-CPLR 5225 motion. | 45.00 |
| | | Postage-mail motion to opposing counsel. | 8.40 |
| | | Overnight documents (Motion) to Court | 18.89 |
| | | Postage- send CPLR 5225 motion to defendants via certified mail, return receipt requested. | 44.40 |
| 6/8/2012 | - | Postage-serve banks subpoenas on opposing counsel and defendants. | 21.00 |
| 6/18/2012 | - | Process Server Fee-obtain transcript of judgment for filing in NY County. | 55.00 |
| 6/26/2012 | - | Overnight documents (Property Executions) to Nassau Sheriff and NY City Marshal. | 37.78 |
| | | Postage-mail executions to opposing counsel and judgement debtors. | 15.00 |
| | | Sheriff's Fees-to NYC Marshal | 40.00 |
| | | Sheriff's Fees-to Nassau County Sheriff | 80.00 |

Total costs                                                                            $365.47

Total amount of this bill                                                      $5,877.97

Previous balance                                                               $57,062.33

Balance due                                                                       $62,940.30

*(handwritten circled: $4,485.47   ok)*

# CORDOVA & SCHWARTZMAN, LLP

ATTORNEYS AT LAW
666 OLD COUNTRY ROAD
SUITE 700
GARDEN CITY, NEW YORK 11530
PHONE (516) 741-0070 • FACSIMILE (516) 741-4225

—————

cslegal@optonline.net

Griffin V LLC
149 Madison Avenue
Suite 701
New York NY 10016

August 01, 2012

In Reference To:    Bobker

Invoice # 12513

## Professional Services

| | Hours | Amount |
|---|---|---|
| 7/2/2012 - Teleconferences with client (L. Deluca) re: executions filed on defendants, OSC filed by Grand Pacific in Hale action and priority of our claims in regard to same. | 0.50 | 187.50 |
| 7/3/2012 - Review client documents; draft executions to HSBC bank and TD Bank; teleconferences with Marshal's office re: same; forward to same. | 1.40 | 525.00 |
| 7/10/2012 - Teleconference with Court re: Court adjourned turnover motion and filing Amended Notice of Motion; draft Amended notice of Motion and serve same. | 1.10 | 412.50 |
| 7/24/2012 - Telephone conference with marshal's office regarding adjournment of sale. Advised that the marshal is going to be on vacation and that the office requires certain paperwork, which it will send, prior to execution. Telephone conference with Bobker's attorney and in house counsel regarding same. | 0.60 | 225.00 |
| For professional services rendered | 3.60 | $1,350.00 |

Additional Charges :

| | |
|---|---|
| 7/3/2012 - Postage-mail executions to opposing counsel and defendants. | 13.00 |
| - Overnight documents (executions) to Marshal. | 21.00 |
| 7/10/2012 - Postage-service of Amended Notice of Motion. | 7.80 |

CORDOVA & SCHWARTZMAN, LLP

Griffin V LLC

Page 2

| | Amount |
|---|---|
| Total costs | $41.80 |
| Total amount of this bill | ~~$1,391.80~~ |
| Previous balance | $62,940.30 |
| Balance due | $64,332.10 |

1080
41.80
1121.80

# CORDOVA & SCHWARTZMAN, LLP

ATTORNEYS AT LAW
666 OLD COUNTRY ROAD
SUITE 700
GARDEN CITY, NEW YORK 11530
PHONE (516) 741-0070 • FACSIMILE (516) 741-4225

cs.legal@opionline.net

Griffin V LLC
149 Madison Avenue
Suite 701
New York NY 10016

October 01, 2012

In Reference To:    Bobker

Invoice #  12546

## Professional Services

| | Hours | Amount |
|---|---|---|
| 9/10/2012 - Draft submission letter to Court for stipulation of discontinuance; for same to Court for filing. | 0.20 | 75.00 |
| 9/11/2012 - Teleconferences with client (L. Deluca) and Marshal's office re: sale of LLC membership units and documents needed for same; continue drafting memorandum of law in reply for turn over motion, legal research for same. | 1.10 | 412.50 |
| 9/12/2012 - Continue drafting memorandum of law in reply for turn over motion, legal research for same; teleconference with client (L. Deluca) re: same. | 2.10 | 787.50 |
| 9/13/2012 - Draft, edit and finalize memorandum of law in reply for turn over motion, legal research for same re: case law re: sale of LLC membership units and priority of creditors; draft reply attorney affirmation; draft affirmation of service; draft submission letter to Court. | 3.60 | 1,350.00 |
| 9/25/2012 - Teleconferences with marshal's office and co-counsel (L. Deluca) re: going forward with sale of LLC membership interests and record searches needed for same. | 0.40 | 150.00 |
| For professional services rendered | 7.40 | $2,775.00 |

X 700 = 2220

CORDOVA & SCHWARTZMAN, LLP

Griffin V LLC

Page : 2

Additional Charges :

| | | Amount |
|---|---|---|
| 9/10/2012 - | Filing Fee for filing stipulation of discontinuance. | 35.00 |
| 9/13/2012 - | Postage-mail reply to turnover motion to opposing counsel. | 7.60 |
| - | Overnight documents to (reply for turnover motion) to Court. | 18.40 |
| | Total costs | $61.00 |
| | Total amount of this bill | $2,336.00 |
| | Previous balance | [illegible] |
| | Balance due | $59,424.25 |

# CORDOVA & SCHWARTZMAN, LLP
ATTORNEYS AT LAW
666 OLD COUNTRY ROAD
SUITE 700
GARDEN CITY, NEW YORK 11530
PHONE (516) 741-0070 • FACSIMILE (516) 741-4225

cslegal@optonline.net

Griffin V LLC
149 Madison Avenue
Suite 701
New York NY 10016

September 01, 2012

In Reference To:   Bobker

Invoice #  12528

## Professional Services

|  | Hours | Amount |
|---|---|---|
| 8/10/2012 -  Teleconferences with Marshal's office re: amounts collected and documents needed to levy on all LLC memberships; draft executions for same. | 1.00 | 375.00 |
| 8/14/2012 -  Begin drafting reply memorandum of law for turnover motion; conference in Nassau Supreme Court re: status of action and defendants discontinuing claims against Griffin; draft Stipulation of Discontinuance of claims against Griffin. | 4.40 | 1,650.00 |
| 8/21/2012 -  Teleconference with client and co-counsel re: selling debtors' real property and strategy for proceeding with judgment enforcement. | 0.30 | 112.50 |

For professional services rendered | 5.70 | $2,137.50 |

## Additional Charges :

| | |
|---|---|
| 8/10/2012 -  Process Server Fee-obtain judgment and obtain transcript of judgment. | 90.00 |
| -  Fees for 4 copies of judgment and 2 copies of transcript of judgment. | 30.00 |
| -  Overnight documents to | 18.15 |
| 8/29/2012 -  Process Server Fee-obtain certified copies of corrected judgment. | 65.00 |
| -  Process Server Fee-obtain copies of transcript of judgment. | 55.00 |

Total costs | $258.15 |

Total amount of this bill | $2,395.65 |

# CORDOVA & SCHWARTZMAN, LLP

ATTORNEYS AT LAW
666 OLD COUNTRY ROAD
SUITE 700
GARDEN CITY, NEW YORK 11530
PHONE (516) 741-0070 • FACSIMILE (516) 741-4225

———

cslegal@optonline.net

Griffin V LLC
149 Madison Avenue
Suite 701
New York NY 10016

December 01, 2012

In Reference To:        Bobker

Invoice # 12560

Professional Services

| | Hours | Amount |
|---|---|---|
| 10/3/2012 - Teleconference with co-counsel re: documents needed for marshal's sale of LLC units, and strategy for dealing with same. | 0.50 | 187.50 |
| 10/4/2012 - Draft executions for 11 East 36 and Morgan Lofts; teleconference with co-counsel re: same and strategy for proceeding enforcement actions. | 1.10 | 412.50 |
| 10/5/2012 - Finalize and forward executions to Nassau County Sheriff. | 0.50 | 187.50 |
| 10/9/2012 - Review Chinatrust's motion to dismiss cross-claims; review letter from Grand Pacific to Court with Justice Feinman's Decision and Order attached; review Justice Feinman's Decision and Order; review affirmations submitted in support of Justice Feinman's Decision and Order; draft response to same and forward to Court. | 2.30 | 862.50 |
| 10/10/2012 - Teleconference with Nassau County Sheriff's Office re: executions on 11 East 36th and Morgan Lofts; teleconferences with New York City Sheriff's Office re: executions to sell defendant's real property; teleconferences with client (L. Deluca) re: same. | 1.10 | 412.50 |
| 10/11/2012 - Teleconference with client (L. Deluca) re: units to be sold by NYC Sheriff; procedure for same and need for transcript; begin drafting real property execution. | 0.80 | 300.00 |
| 10/12/2012 - Teleconferences with client (M. Shah and D. Deluca) re: proceeding with real property sale, and other judgment enforcement methods. | 0.40 | 150.00 |

CORDOVA & SCHWARTZMAN, LLP

Griffin V LLC

Page 2

| | Hours | Amount |
|---|---|---|
| 10/19/2012 - Travel to Nassau County Sheriff's office regarding their rejection of executions; conference with Deputy Prudente re: same; Sheriff accepted executions for filing and service. | 1.10 | 412.50 |
| 10/25/2012 - Court conference. | 1.10 | 412.50 |
| 11/13/2012 - Multiple teleconferences with client (L. Deluca) re: units subject to real property executions; form of same and revisions to same. | 2.10 | 787.50 |
| 11/19/2012 - Teleconferences with client (M. Shah) and co-counsel re: enforcement procedures; teleconference with NYC Sheriff's office re: form of executions; forward same to sheriff. | 1.00 | 375.00 |
| 11/27/2012 - Teleconference with Sheriff's office re: sale of real property and documents and procedures for same; teleconference with co-counsel (L. Deluca) re: same; revise documents in accordance with same; draft description of property for Sheriff; draft letter to Sheriff re: submission of documents necessary. | 1.50 | 562.50 |
| 11/28/2012 - Teleconference with NYC Sheriff's office (K. Williams) re: documents to effectuate sale of property; draft description of property to be sold, by debtor. | 0.40 | 150.00 |

For professional services rendered    13.90    $5,212.50

*[handwritten: 13.90 x 300 = 4170]*

Additional Charges :

| | |
|---|---|
| 10/5/2012 - Overnight documents to Nassau County Sheriff. | 18.73 |
| - Sheriff's Fees for service of executions. | 60.09 |
| 11/27/2012 - Sheriff's Fees for real property executions. | 130.00 |

*[handwritten: OK]*

Total costs    $209.34

Total amount of this bill    $5,421.84    *[handwritten: 4,679.84]*

Previous balance    $59,424.25

Balance due    $64,846.09

# CORDOVA & SCHWARTZMAN, LLP
ATTORNEYS AT LAW
666 OLD COUNTRY ROAD
SUITE 700
GARDEN CITY, NEW YORK 11530
PHONE (516) 741-0070 • FACSIMILE (516) 741-4225

cslegal@optonline.net

Griffin V LLC
149 Madison Avenue
Suite 701
New York NY 10016

February 01, 2013

In Reference To:    Bobker Fraudulent Conveyance Action

Invoice # 12572

Professional Services

|  | Hours | Amount |
|---|---|---|
| 12/3/2012 - Edit and finalize Notice of Pendency; deliver to process server for filing. | 1.00 | 300.00 |
| For professional services rendered | 1.00 | $300.00 |

Additional Charges :

| | |
|---|---|
| 12/3/2012 - Filing Fee for filing Notice of Pendency. | 35.00 |
| 1/25/2013 - Process Server Fee for filing Notice of Pendency and serving defendants. | 136.00 |
| - Fee to Secretary of State for service upon defendants. | 80.00 |
| Total costs | $251.00 |

| | |
|---|---|
| Total amount of this bill | $551.00 |
| Previous balance | $1,470.00 |
| Balance due | $2,021.00 |

OK

Paid 2021.00 4/3/2013

# CORDOVA & SCHWARTZMAN, LLP
### ATTORNEYS AT LAW
666 OLD COUNTRY ROAD
SUITE 700
GARDEN CITY, NEW YORK 11530
PHONE (516) 741-0070 • FACSIMILE (516) 741-4225

cslegal@optonline.net

Griffin V LLC
149 Madison Avenue
Suite 701
New York NY 10016

December 01, 2012

In Reference To:  Bobker Fraudulent Conveyance Action

Invoice # 12556

*Sign & Mail*

*Return To Client :*
*(Sign To Client)*

## Professional Services

|  | Hours | Amount |
|---|---|---|
| 11/29/2012 - Begin drafting fraudulent conveyance action for Units PH1 and PH 2 | 1.10 | 330.00 |
| 11/30/2012 - Edit and finalize complaint; draft summons; draft e-filing notice; e-file with Court; begin drafting Notice of Pendency. | 3.10 | 930.00 |
| For professional services rendered | 4.20 | $1,260.00 |

Additional Charges :

| | | |
|---|---|---|
| 11/30/2012 - Index Number Fee. | | 210.00 |
| Total costs | | $210.00 |

| | | |
|---|---|---|
| Total amount of this bill | OK | $1,470.00 |
| Balance due | | $1,470.00 |

Griffin V LLC
149 Madison Avenue
Suite 701
New York NY 10016

May 08, 2013

In Reference To:    Bobker

Invoice # 12612

## Professional Services

| | Hours | Amount |
|---|---|---|
| 4/25/2013  -  Teleconference with counsel for Condo board re: status of action against Bobkers and scheduled sale of units. | 0.20 | 75.0 |
| 5/7/2013  -  Review defendants' order to show cause to stay sheriff's sale tomorrow; review cases cited by defendants in support of same; teleconferences with co-counsel (L. Deluca) re: same; teleconferences with foreclosure counsel (M. Bush) re: same; prepare for oral arguments on TRO application; attend oral arguments on TRO application. | 8.10 | 3,037.5 |
| -  Review of documents from opposing counsel. Review of argument for court. | 0.70 | 262.5 |

For professional services rendered    9.00    $3,375.0

Previous balance    $59,883.2

Balance due    $63,258.2

Cordova &
Schwartzman

Pd 5/9/13

OK #3,375.00

Dao    1,446.68
7/23/13

# CORDOVA & SCHWARTZMAN, LLP

ATTORNEYS AT LAW
666 OLD COUNTRY ROAD
SUITE 700
GARDEN CITY, NEW YORK 11530
PHONE (516) 741-0070 • FACSIMILE (516) 741-4225

cslegal@optonline.net

Griffin V LLC
149 Madison Avenue
Suite 701
New York NY 10016

July 22, 2013

In Reference To:    Bobker

Invoice #  12630

Professional Services

|  | | Hours | Amount |
|---|---|---|---|
| 6/6/2013 | - Teleconference with counsel from Damon Morey (B. Schenkler) re: circumstances surrounding Court's decision on turn over motion, legal effects of same, and executions given the NYC Marshall Bienstock. | 0.20 | 75.00 |
| 6/7/2013 | - Teleconference with B. Schenkler re: writ of mandamus and procedural history of judgment enforcement. | 0.40 | 150.00 |
| 6/11/2013 | - Court Appearance in Nassau County Supreme Court for conference on TRO application; motion is stayed by bankruptcy filing; draft executions for service upon Marshal; teleconferences with client (L. Deluca) re: same and parties to be executed upon; draft letter to Marshal demanding execution on membership interests. | 2.80 | 1,050.00 |
| 6/25/2013 | - Review of report from Bienstock with client. Emailed client same. | 0.30 | 112.50 |

For professional services rendered    3.70    $1,387.50

Additional Charges :    $\mathcal{OK}$

| | | |
|---|---|---|
| 6/11/2013 | - Marshal's Fees for service of Execution. | 40.00 |
| | - Overnight documents (Executions) to Marshal. | 19.18 |

Total costs    $\mathcal{OK}$    $59.18

CORDOVA & SCHWARTZMAN, LLP

Griffin V LLC

| | Amount |
|---|---|
| Total amount of this bill | $1,446.68 |
| Previous balance | $59,995.78 |
| Balance due | $61,442.46 |

# CORDOVA & SCHWARTZMAN, LLP
### ATTORNEYS AT LAW
666 OLD COUNTRY ROAD
SUITE 700
GARDEN CITY, NEW YORK 11530
PHONE (516) 741-0070 • FACSIMILE (516) 741-4225

cslegal@optonline.net

Griffin V LLC
149 Madison Avenue
Suite 701
New York NY 10016

November 01, 2013

In Reference To: Bobker

Invoice # 12680

### Professional Services

| | Hours | Amount |
|---|---|---|
| 10/4/2013 - Email to client to advise that our firm did not intend, nor ever would intend to indemnify anyone in any case. | 0.10 | NO CHARGE |
| - Teleconferences with client re: documents needed to proceed with sale; teleconferences with Marshal Daley's office re: same; forward same to marshal. | 1.10 | 412.50 |
| 10/8/2013 - Court Appearance in Queens Supreme for mandamus action to force Marshal to sell LLC interests. | 1.50 | 562.50 |
| For professional services rendered | 2.70 | $975.00 |
| Previous balance | | $64,329.88 |
| Balance due | | $65,304.88 |

*4,937.50*

*Paid*
*8/5/13*

# EINIG & BUSH, LLP

*420 Lexington Avenue*
*New York, NY 10170*
*(212) 983-8866(x114)*
*TELECOPIER (212) 983-1050*

May 12, 2013

Griffon V LLC
Delshah Capital
114 East 13th Street
New York, New York 10003
Att.: Michael Shah

---

FEES

for foreclosure action on property known as 11 East 36th Street, New York, New York ("Morgan Lofts') including review of Court decisions and Orders, ordering and receiving transcript of inquest before refferee, appearance in Nassau County Supreme Court as to Defendant's attempt to stay judicial sale of membership interests pursuant to order of Supreme Court Nassau County, various communications with defendant's counsel, counsel for other creditors, and clients 12.5 hours @ $375.00...................................................................$4.687.50

Disbursements

Transcript        ...... .........................$250.00

Total.............................................................................................................. $4,937.50